1 | CENTER FOR PUBLIC INTEREST LAW
University of San Diego School of Law
2 |   Robert C. Fellmeth, SBN 49897
  Ed Howard, SBN 151936
3 | 5998 Alcala Park
San Diego, CA 92110
4 | Telephone:    (619) 260-4806
Facsimile:    (619) 260-4753
5 | cpil@sandiego.edu

6 | SULLIVAN, HILL, LEWIN, REZ & ENGEL
A Professional Law Corporation
7 |   Donald G. Rez, SBN 82615
550 West "C" Street, Suite 1500
8 | San Diego, California 92101
Telephone:    (619) 233-4100
9 | Facsimile:    (619) 231-4372
rez@shlaw.com

10 |

11 | HULETT HARPER STEWART LLP
  Dennis Stewart, SBN 99152
  Kirk Hulett, SBN 110726
12 | 550 West "C" Street, Suite 1600
San Diego, CA 92101
13 | Telephone:    (619) 338-1133
Facsimile:    (619) 338-1139
14 | dstewart@huletharper.com

15 | Attorneys for Plaintiffs

FILED

2007 NOV 14   AM 10: 20

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY_____ DEPUTY

16 | **UNITED STATES DISTRICT COURT**

17 | **SOUTHERN DISTRICT OF CALIFORNIA**

18 | MICHAEL SHAMES; GARY
GRAMKOW, on behalf of themselves and
19 | on behalf of all persons similarly situated,

20 | Plaintiffs,

21 | v.

22 | THE HERTZ CORPORATION, a
Delaware corporation; DOLLAR
23 | THRIFTY AUTOMOTIVE GROUP, INC.,
a Delaware corporation; AVIS BUDGET
24 | GROUP, INC., a Delaware corporation;
VANGUARD CAR RENTAL USA, INC.,
25 | an Oklahoma corporation; ENTERPRISE
RENT-A-CAR COMPANY, a Missouri
26 | corporation; FOX RENT A CAR, INC., a
California corporation; COAST LEASING
27 | CORP., a Texas corporation; THE

28 |

Case No. **'07 CV 2174 H    BLM**

**[CLASS ACTION]**

**COMPLAINT FOR INJUNCTION,
MONEY DAMAGES AND
DECLARATORY RELIEF**

**TRIAL BY JURY DEMANDED**

**ORIGINAL**

::ODMA\PCDOCS\PCDOCS\275074\9

1   CALIFORNIA TRAVEL AND TOURISM    )
2   COMMISSION and CAROLINE BETETA  )
                                 )
              Defendants.           )
3                                     )

# INTRODUCTION

1.     This action is for redress by consumers for an antitrust conspiracy engaged in by passenger rental car companies operating at certain California airports (those California airports collecting an Airport Concession Fee). These Rental Car Defendants have entered into a horizontal price-fixing agreement among competitors, a *per se* violation of the antitrust laws, by which they have agreed to raise, stabilize and fix the prices which they charge consumers for the rental of automobiles at those California airports. The price-fixing agreement has two independently wrongful components. First, Defendants, and each of them, reached an agreement to surcharge consumers 2.5% of the price of a car rental and not to compete with each other with respect to this 2.5% surcharge. Defendants misrepresent to consumers that this 2.5% assessment is owed by the consumer to the California Travel and Tourism Commission ("CTTC"). In fact, this assessment is owed by Defendants, not consumers. The 2.5% charge Defendants uniformly impose on consumers is the product of a horizontal agreement among competitors and constitutes a *per se* unlawful agreement to fix prices, as well as unfair competition and false advertising. Defendants have further unlawfully conspired to raise, stabilize and fix prices by agreeing to and actually passing on to consumers a fee known as the Airport Concession Fee. Prior to January 2007, that fee was bundled into the total rental price charged consumers and Defendants competed for business on a total base price, which included the Airport Concession Fee. As described more fully below, in January 2007, the Legislature allowed the Rental Car Defendants at airports to "unbundle" that charge and separately itemize it on the bill. The Rental Car Defendants seized upon this opportunity to collectively increase prices. The Rental Car Defendants, and each of them, agreed to pass this charge of approximately 9% on to consumers by essentially maintaining the level of the previously bundled base rates and charging, as a separately identified and additional fee, the previously bundled 9% Airport Concession Fee thus increasing each of their prices and ultimately their profits concomitantly. Finally, the CTTC Defendants, an entity which has facilitated the illegal antitrust activities above, have consistently violated California's Bagley-Keene Open Meeting Act.

2.     Plaintiffs bring this action for injunctive relief, damages suffered by them and all Class members trebled pursuant to statute, and attorneys' fees for antitrust violations by the Rental

::ODMA\PCDOCS\PCDOCS\275074\9

1    Car Defendants, and each of them, and for injunctive relief and restitution under this Court's pendent

2    jurisdiction for violations of California's Unfair Competition Laws, and for violations of the Bagley-

3    Keene Open Meeting Act, according to proof. Plaintiffs bring this action on their behalf, and on

4    behalf of the class of persons similarly situated. All facts herein are pled on information and belief

5    except with respect to the allegations pertaining to the named Plaintiffs.

6                                    **JURISDICTION AND VENUE**

7            3.        Jurisdiction of this Court is based upon its jurisdiction to hear "any civil action or

8    proceeding arising under any Act of Congress regulating commerce or protecting trade and

9    commerce against restraints and monopolies." 28 U.S.C. § 1337. The Complaint is filed under

10   Sections 4 and 16 of the Clayton Act (15 U.S.C. Sections 15 and 26) to recover damages the Plaintiff

11   Class has incurred due to violations by the Defendants, as hereinafter alleged, of Section 1 of the

12   Sherman Act (15 U.S.C. Section 1) and to obtain equitable relief and attorneys' fees. There is also

13   general federal subject matter jurisdiction under 28 U.S.C. § 1331. Pursuant to Rule 23 of the

14   Federal Rules of Civil Procedure, this case is brought as a class action.

15           4.        This Court also has diversity jurisdiction over the class defined herein pursuant to 28

16   U.S.C. § 1332(d)(2) and (6) (Class Action Fairness Act of 2005) because one or more members of

17   the class defined herein are citizens of a State different from one or more Defendants and the

18   aggregate amount in controversy exceeds five million dollars ($5,000,000), exclusive of interest and

19   costs.

20           5.        This Court has pendent jurisdiction over the claims of Plaintiffs arising out of alleged

21   violations of California Business & Professions Code sections 17200 and 17500 (the "Unfair

22   Competition Law" and the "False Advertising Law"). And the Court has pendent jurisdiction over

23   the claims of Plaintiffs arising out of alleged violations of the Bagley-Keene Open Meeting Act

24   (California Government Code Sections 11120, *et seq.* )

25                                           **DEFINITIONS**

26           6.        As used in this Complaint, the following definitions apply:

27           A.        "Rental Car Defendants" means the first seven named Defendants in the

28   caption and listed below. Each of these seven entities rents passenger cars to members of the class

::ODMA\PCDOCS\PCDOCS\275074\9

from locations at California airports [venues]. Each of them pays an "Airport Concession Fee" to respective airport authorities for airport access, for solicitation, rental, return and related business purposes.

B.    "Base Rate" refers to the base charge to rent a car charged by the Rental Car Defendants before any specified additional charges. Prior to 2007, that base rate was required by law in California to include all charges except taxes, a customer facility charge, and mileage charges; but it included the Airport Concession Fee.

C.    "Bundling" of rental car charges refers to the requirement that rental car companies include in their respective and advertised "base rate" charges, fees and costs that may be calculated in advance as part of their consumer billing.

D.    CTTC "surcharge" or "fee" refers to a charge added to the car rental bills of consumers by Rental Car Defendants in connection with assessments levied on Rental Car Defendants to provide contribution to the California Travel and Tourism Commission ("CTTC").

E.    "Airport Concession Fee" means a charge collected by Rental Car Defendants from renters that is purportedly the renter's proportionate share of the amount paid by the rental company to the owner or operator of an airport for the right or privilege of conducting a vehicle rental business on the airport's premises (Civil Code section 1936.01(a)(1)).

F.    Section references. Unless otherwise specified, all section references pertain to the California Government Code.

## CLASS ALLEGATIONS AND REPRESENTATIVES

7.    Plaintiffs bring this suit as a class action pursuant to Rules 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure, on behalf of themselves and a Plaintiff Class ("the Class") composed of and defined as follows:

> All individuals or entitles who purchased rental car services from the Rental Car Defendants from a California situs airport after January 1, 2007. Specifically excluded from this Class are the Defendants; the officers, directors or employees of any Defendant; any entity in which any Defendant has a controlling interest; and any affiliate, legal representative, heir or assign of any Defendant.

::ODMA\PCDOCS\PCDOCS\275074\9

8.     This action has been brought and may be properly maintained as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure for the following reasons:

a.     The Class is ascertainable and there is a well-defined community of interest among the members of the Class;

b.     Based upon the nature and the numbers of rental car customers, Plaintiffs believe that the members of the Class number in the thousands, and therefore is sufficiently numerous that joinder of all Class members is not practicable;

c.     Plaintiffs' claims are typical of the claims of the members of the Class because each of the Plaintiffs rented a car from one or more of the Rental Car Defendants from a California situs airport after January 1, 2007, and therefore Plaintiffs' claims arise from the same common course of conduct giving rise to the claims of the members of the Class and the relief sought is common to the Class;

d.     The following common questions of law or fact, among others, exist as to the members of the Class:

i.     Whether Defendants formed and operated a combination or conspiracy to fix, raise, maintain or stabilize the prices of, or allocate the market for, car rental services operating in conjunction with California airports;

ii.     Whether the combination or conspiracy caused the prices of car rental services operating in conjunction with California airports to be higher than they would have been in the absence of Defendants' conduct;

iii.     The operative time period of Defendants' combination or conspiracy;

iv.     Whether Defendants' conduct caused injury to the business or property of Plaintiffs and the members of the Class;

v.     The appropriate measure of damages suffered by the Class;

vi.     Whether Defendants' conduct violates Section 1 of the Sherman Act;

vii.     Whether Defendants' conduct violates California's Unfair Competition Law;

::ODMA\PCDOCS\PCDOCS\275074\9

4

viii.    Whether Defendants' conduct violates California's Bagley-Keene Open Meeting Act; and

ix.    The appropriate nature of class-wide equitable relief.

e.    These and other questions of law or fact which are common to the members of the Class predominate over any questions affecting only individual members of the Class;

f.    Plaintiffs will fairly and adequately protect the interests of the Class in that Plaintiffs have no interests that are antagonistic to other members of the Class and have retained counsel competent and experienced in the prosecution of class actions and antitrust litigation to represent themselves and the Class;

g.    A class action is superior to other available methods for the fair and efficient adjudication of this litigation since individual joinder of all damaged Class members is impractical. The damages suffered by individual Class members are relatively small, given the expense and burden of individual prosecution of the claims asserted in this litigation. Thus, absent the availability of class action procedures, it would not be feasible for Class members to redress the wrongs done to them. Even if the Class members could afford individual litigation, the court system could not. Further, individual litigation presents the potential for inconsistent or contradictory judgments and would greatly magnify the delay and expense to all parties and to the courts system. Therefore, the class action device presents far fewer case management difficulties and will provide the benefits of unitary adjudication, economy of scale and comprehensive supervision by a single court;

9.    Plaintiff Michael Shames is a member of the Class, with a claim typical of the class claims. After January 1, 2007, he rented a vehicle from one of the Rental Car Defendants who is a part of the instant combination and was billed for and paid both the CTTC surcharge and the Airport Concession Fee add-on. He is an adequate representative of the Class. He is also a citizen, a long-standing resident of California and a taxpayer.

10.    Plaintiff Gary Gramkow is a member of the Class, with a claim typical of the class claims. After January 1, 2007, he rented a vehicle from one of the Rental Car Defendants who is a part of the instant combination and was billed for and paid both the CTTC surcharge and the Airport Concession Fee add-on. He is an adequate representative of the Class. He is also a citizen, a long-standing resident of California and a taxpayer.

**DEFENDANTS**

11.    The Hertz Corporation does business as and through its Hertz Rent-a-Car division, with corporate headquarters at 225 Brae Boulevard, Park Ridge, NJ 07656. The Hertz Corporation is a publicly traded Delaware corporation licensed to do business and doing business throughout the State of California and in San Diego, California.

12.    Dollar Thrifty Automotive Group Incorporated (DTG) does business as Dollar Rent-a-Car and as Thrifty Rent-a-Car. It is a publicly traded Delaware corporation headquarted at 5330 East 31st Street, Tulsa, Oklahoma 74135. It is licensed to do business and doing business throughout the State of California and in San Diego, California.

13.    Avis Budget Group Incorporated does business as Avis Rent-a-Car and Budget Rent-a-Car. It is a publicly traded Delaware Corporation headquartered at 6 Sylvan Way, Parsippany, N.J. 07054. It is licensed to do business and doing business throughout the State of California and in San Diego, California.

14.    Vanguard Car Rental USA Incorporated does business as Alamo Rent-a-Car and as National Rent-a-Car. Vanguard is an Oklahoma Corporation headquartered at 6929 N. Lakewood Avenue, #100, Tulsa, Oklahoma 74112. Its California headquarters is at 778 Burlway Road, Burlingame, California 94010. It is licensed to do business and doing business throughout the State of California and in San Diego, California.

15.    Enterprise Rent-a-Car Company does business as Enterprise Rent-a-Car and through Enterprise Rent-a-Car Company of Los Angeles, Enterprise Rent-a-Car Company of Sacramento, and Enterprise Rent-a-Car Company of San Francisco. It is a private held Missouri corporation headquartered at 600 Corporate Park Dr., St. Louis, MO 63105. It is licensed to do business and doing business throughout the State of California and in San Diego, California.

16.    Fox Rent a Car Incorporated does business as Payless Rent-a-Car. It is a California Corporation, with corporate locations and doing business at airports in California requiring payment of an Airport Concession Fee.

17.    Coast Leasing Corp. is a privately held Texas Corporation and does business as Advantage Rent-a-Car. It is headquartered at 6660 First Park Ten Blvd., #116, San Antonio, Texas

78213-4211. It is licensed to do business and doing business throughout the State of California and in San Diego, California.

18. The California Travel and Tourism Commission (CTTC) is a California non-profit corporation authorized in California Government Code Section 13995.40, *et seq.*

19. Caroline Beteta serves as the Executive Director of the California Travel and Tourism Commission.

## TRADE AND COMMERCE

20. This *per se* antitrust case involves the passenger car rental business operating at those California airports requiring an Airport Concession Fee.

21. The activities of Defendants and their co-conspirators, as described in this Complaint, were within the flow of, and substantially affected, interstate commerce.

22. During the period covered by this Complaint, Defendants and their co-conspirators contracted to rent and rented cars to customers located throughout the United States for use in and affecting interstate commerce.

23. During the period covered by this Complaint, contracts, invoices for payment, payment and other documents essential to the provision of car rental agreements were transmitted in interstate trade and commerce between and among the offices of the Defendants and their customers located in and throughout the United States and between and among the offices of the Defendants' co-conspirators and their customers located in and throughout the United States.

24. During the period covered by this Complaint, Defendants and their co-conspirators used instrumentalities of interstate commerce to market their rental cars and contracted to rent cars in the United States.

## CALIFORNIA TRAVEL AND TOURISM COMMISSION (CTTC)

25. The California Travel and Tourism Commission was created by the California Tourism Marketing Act ("CTMA") in 1995 (California Government Code Sections 13995, *et seq.*) The purpose of the Commission is to expand and develop tourism spending in California for the benefit of the tourism industry and the consumers of the state. Under the CTMA, the CTTC was to be funded by a combination of industry and general fund contributions.

::ODMA\PCDOCS\PCDOCS\275074\9

26.    The CTTC is a separate, independent California non-profit mutual benefit corporation.  Although nominally under the Office of Tourism of the California Business, Transportation and Housing Agency, it operates independently from determinative control by the state.  The Commission consists of 37 members who serve co-extensively both as commissioners and as the Board of Directors of the corporation.  The CTMA does not require the CTTC to comply with the Administrative Procedure Act, but it is subject to the Bagley-Keene Open Meeting Act.  Government Code § 13995.40(q).

27.    The CTTC is chaired by the Secretary of the Business, Transportation and Housing Agency.  Of the 37 commissioners (and directors), 12 are persons from trades or professions directly related to tourism and appointed by the Governor, one for each of 12 designated geographic "tourism regions."  **The remaining 24 commissioners are selected by the industry, without nomination or selection by any elected or appointed public official.**  These industry members come from five industry segments contributing to the CTTC budget:  (a) accommodations, (b) restaurants and retail, (c) attractions and recreation, (d) transportation and travel services (defined in section 5352, Title 10 of the California Code of Regulations).  The fifth segment - "passenger car rental industry" - was added by emergency regulation effective January 1, 2007.  Commissioners serve four-year terms, with a two-term limit.  (Section 13995.40(f).)  The CTTC Executive Director must be a "tourism industry professional" recommended by the CTTC, approved by the Governor, serves at the pleasure of both and is charged with implementing the plans and policies of the CTTC.  (Section 13995.43(a)-(c).)

28.    The CTTC sets industry assessment levels for its budget and develops an annual "written marketing plan" to expend those monies.  As to the assessments, every two years, the CTTC proposes a slate of levels for each of the travel and tourism industry segments listed above.  Those segments then vote by referenda on those specific assessment level proposals, which vary by segment (Section 13995.64).  The assessment levels that receive the most weighted votes (weighted by business volume) become effective and enforceable (Sections 13995.64(a); 13995.65(d)).  Importantly, those assessment levels are delegated to industry decision but are state required assessments once approved.  They must be paid by all those conducting business over a minimum

1   level in each of the respective tourism-related segments as each is defined.  (Sections 13995.44,

2   13995.45, 113995.65(e), and 13995.68(a).)

3         29.    The second major authority of the CTTC is to develop the "marketing plan" for the

4   expenditure of the assessed monies.  Those plans detail the advertising campaigns and other

5   functions of the CTTC and account for the expenditure of most of the annual budget.  In preparing

6   the plan, the CTTC must consider recommendations from "industry marketing advisory committees"

7   that the CTTC establishes pursuant to CTMA.  The CTTC's plans that guide its operations and

8   spending are subject to the CTTC chair's approval (the Secretary of the Business, Transportation and

9   Housing Agency).  However, any disapproval by this public official as to the major functions of the

10  CTTC, including marketing plans and budget may be overridden by a 3/5 vote of the CTTC.  **The 24**

11  **industry selected members have final, controlling decision-making power within the CTTC.**

12  (Section 13995.45(d).)

13        30.    The publicly appointed Chairperson (the Secretary of the Business, Transportation

14  and Housing Agency) has only limited powers.  He may "remove any elected commissioner

15  following a hearing at which the commissioner is found guilty of moral turpitude"

16  (Section 13995.40(e)).  Second, he or she oversees the biennial referendum process through which

17  assessed businesses choose new commissioners and set assessment rates.  But that function is

18  ministerial in nature, with the referendum decision-making delegated to the relevant industry sectors.

19  And if the Secretary fails to fulfill these duties, the Commissioners may themselves call referenda

20  and certify results (Section 13995.51(a)(1)).  Third, the CTTC Chair may veto certain travel and

21  expense costs incurred by Commissioners where they involve a conflict of interest, the use of state

22  general fund monies (now reduced to minimal levels as alleged *infra*), and any contracts entered into

23  between the CTTC and Commissioners (Section 13995.51(b)(1)(4)).  The Secretary, however,

24  possesses no other veto powers (Section 13995.51(b)(1)-(4)).  **In sum, the privately chosen and**

25  **controlled CTTC exercises determinative, final and effectively state-unchecked power in the**

26  **assessment of monies under state authority, the enforcement of that collection on businesses**

27  **regardless of their preference, and the expenditure of that mandatorily assessed money.**

28

## CALIFORNIA RENTAL CAR COMPANY BILLING PRACTICES

31.     During the 1980s consumers complained about certain billing practices by the rental car industry.  Included among these was a pattern of advertising daily or mileage rates, and then adding additional charges to final bills at point of invoice - charges that were unanticipated by some consumers and were not part of advertised rates.  To cure this problem, legislation was enacted in California during the 1990s to require a "base rate" to be advertised to California consumers by all rental car companies doing business in the state.  This "base rate" would necessarily be a "bundled" rate - required to include all charges to be billed (except for taxes, a customer facility charge, and mileage charge, *see* Civil Code Section 1936.01(a)-(b)).  That requirement meant consumers would know in advance what their charge would be, and competitors would engage in price competition on the total amount billed to the consumer, taking into account all of the Rental Car Defendants' costs, including any fees the car rental company was required to pay such as the Airport Concession Fee.

32.     In 2006, the Rental Car Defendants proposed end-of-session substantial changes to an uncontroversial bill, AB 2592 (Leno).  On August 23 and 24, ten pages and multiple sections were added to the bill, after the committee and floor consideration process timelines had expired within the legislative process.  The measure was then enacted in its just-revised form near the end of session.  It included two relevant elements.  First, it provided for a fifth industry sector for CTTC inclusion - airport rental car firms (the Rental Car Defendants herein).  It provided for an unsupervised "referendum" to be held among the Rental Car Defendants to approve a contribution to the budget of the CTTC.  That contribution would both increase the budget of the Commission, and relieve the general fund of almost all of its current and future contribution.  The contribution from the Rental Car Defendants would allow a total CTTC budget of $25 million in 2006-07 and $50 million in 2007-08 and presumably thereafter (Government Code Section 13995.92(a)).  The Rental Car Defendants proposing this arrangement agreed to its terms, and the State general fund contribution of $6.7 million would be returned by the CTTC to the general fund for 2006-07.  A somewhat larger rental car contribution was scheduled for 2007-08 and included in the industry agreement sufficient to bring the 2007-08 CTTC budget to $50 million and accomplish general fund savings commensurate with those of 2006-2007.  And, because industry segment representation on

::ODMA\PCDOCS\PCDOCS\275074\9

1   the CTTC is proportional to the total assessments paid by that segment, AB 2592 also entitled the

2   passenger rental car industry to six Commission seats.  (*See* Section 13995.40.5(a)).

3       33.    The second relevant change from AB 2592 was its provision to allow the Rental Car

4   Defendants to disaggregate the "Airport Concession Fee" they all pay from the base rental rate (Civil

5   Code Section 1936.01(b)(2)).  This Airport Concession Fee had been bundled within the base rate by

6   legal requirement in order to inhibit unexpected cost "add-ons" at point of billing and to stimulate

7   accurate price competition based on a uniform definition of charges.  That fee when itemized

8   traditionally amounts to just over 9% of the charges of the Rental Car Defendants ("approximately

9   9%").

10      34.    AB 2592 also provided that the new Airport Concession Fee disaggregation provision

11  would become effective only if the passenger rental car industry **assessed itself** new rates that they

12  set and that would increase the CTTC's funding (Civil Code Section 1936.01(e)).  To that end the

13  Rental Car Defendants entered into an agreement by which they agreed to a 2.5% self-assessment.

14      35.    Taking matters one step further, however, they also agreed among themselves to pass

15  this assessment on to consumers and not absorb it or otherwise compete with each other on that

16  portion of the price charged to consumers.  In sum, the Rental Car Defendants combined in restraint

17  of trade to satisfy their own obligation to provide CTTC funding by adding a price-fixed consumer

18  assessment to all of their bills to consumers with no contribution from the Rental Car Defendants

19  whatever, and to use the disaggregation of the Airport Concession Fee not as a clarification of the

20  source of charges, but as a mechanism to add 9% to 2006 extant base charges - by and for each of

21  the Rental Car Defendants - accomplishing artificial and unlawful profits.

22      36.    The Rental Car Defendants offered the Legislature a *quid pro quo* of industry

23  contribution to the CTTC budget (and modest general fund relief) in return for what was purportedly

24  a mere clarification of consumer billing format.  And AB 2592 authorizes the separation (or

25  unbundling) of the "Airport Concession Fee" from the base charge allowing it to be separately listed

26  on bills to consumers.  Nothing in the statute authorizes any pricing level change or price

27  coordination whatever by the Rental Car Defendants.  However, starting in January 2007, exactly

28  coincident with the effective date of the statute, the Rental Car Defendants combined to fix prices

::ODMA\PCDOCS\PCDOCS\275074\9

1  approximately 9% higher, not by separating out the Airport Concession Fee from the base rate in

2  billing, but by adding it on to the base rate as a separate and *additional* charge. The Rental Car

3  Defendants vary among themselves in their base rates and will individually vary from published

4  (Internet or otherwise) rates to business accounts or for consumers with bargaining power, or where

5  excess capacity commends price reductions. However, the Internet and otherwise posted initial

6  offering charge was altered by each of the Rental Car Defendants starting in January 2007 to

7  increase offered rental car prices by the approximate 9% amount of the "Airport Concession Fee."

8  As a result rental rates at California airports rose in January 2007 from December 2006, while they

9  declined on average in the United States. The fixing of any part of a formula upon which prices are

10  based is *per se* unlawful.

11      37.    The combination to add the amount of the Airport Concession Fee (approximately

12  9%) on to consumer bills by the Rental Car Defendants were neither authorized by nor a necessary

13  consequence of any state statute. Rather, they are independent price-fixing agreements. Moreover,

14  to the extent the CTTC was involved to coordinate communications and to facilitate that pricing

15  increase, that Commission (a) lacks the statutory authority to coordinate a horizontal price fix by the

16  Rental Car Defendants, or otherwise among its membership, and (b) lacks independent state

17  supervision status due to its control by private parties. The scheme of the Rental Car Defendants

18  involved a conspiracy in which the CTTC participated by, *inter alia*, facilitating the two unlawful

19  price fixes: (a) a 2.5% CTTC assessment, and (b) the 9% Airport Concession Fee, not as an

20  authorized billing format change, but as a substantive charge add-on of the newly disaggregated fee.

21  Compounding the violation, the CTTC itself is determinatively selected and controlled by private

22  industry, and lacks required state independent supervision for "state action" immunity.

23                                    **EFFECTS**

24      38.    The unlawful contract, combination or conspiracy alleged above had, *inter alia*, the

25  following effects:

26          (a)    Prices charged by the airport Rental Car Defendants to Plaintiffs and the Class
                   members for car rentals at airports were maintained at artificially high and
27                 noncompetitive levels; and

28

(b)    Plaintiffs and Class members have been and are required to pay more for airport car rentals at California airports than they would have paid in a competitive marketplace unfettered by Rental Car Defendants collusive and unlawful price fixing.

39.    Beginning in January 2007 and continuing throughout the period of the contract, combination or conspiracy alleged in the Complaint, Plaintiffs and Class members directly purchased car rental services in and affecting interstate commerce.

40.    Plaintiffs and other Class members paid more for airport car rentals than they would have paid under conditions of free and open competition.

41.    As a direct and proximate result of the illegal combination, contract or conspiracy alleged herein, Plaintiffs and Class members have been injured and financially damaged in their business and property, in amounts that are not presently determinable.

## FIRST CAUSE OF ACTION

### (Sherman Act Price Fixing Violations (15 U.S.C. § 1))

42.    Plaintiffs reallege and incorporate each and every allegation set forth above as if fully set forth herein.

43.    From a date unknown, but at least from January 1, 2007, and continuing through the present, the Rental Car Defendants and their co-conspirators combined, conspired and/or contracted to restrain trade in and affecting interstate commerce in violation of 15 U.S.C. § 1. Defendants CTTC and Beteta, in her capacity as the Executive Director of the CTTC, had knowledge of, facilitated and participated in the combination, contract and conspiracy, including the formation and implementation thereof.

44.    In furtherance of the unlawful contract, combination or conspiracy, upon information and belief, each of the Defendants has committed one or more overt acts, including *inter alia*:

(a)    agreeing to charge prices at certain levels and otherwise to fix, increase, maintain or stabilize components of the prices for airport car rentals in California affecting U.S. commerce, including the 2.5% (CTTC) surcharge and the 9% Airport Concession Fee add-on;

(b)    communicating and agreeing with each other regarding prices to be charged consumers for the CTTC surcharge and car rental rates;

::ODMA\PCDOCS\PCDOCS\275074\9

(c)     meeting with each other, including under the guise of attending CTTC meetings in order to keep the existence of the conspiracy unknown so as to foster the illegal anticompetitive conduct described herein and facilitating violations of the Bagley-Keene Open Meeting Act as set forth in the Third Cause of Action herein to further such concealment;

(d)     refraining from competition by refusing to offer airport car rentals without including in the bill to the consumer the 2.5% surcharge and the 9% Airport Concession Fee; and

(e)     facilitating and coordinating communication among the Rental Car Defendants to fix surcharge levels.

45.     Rental Car Defendants engaged in the activities described above for the purpose of effectuating unlawful arrangements to fix, maintain, raise and/or stabilize prices of airport car rentals to consumers.

46.     Defendants implemented their unlawful scheme by (i) meeting and agreeing to charge a 2.5% CTTC surcharge to consumers and to refrain from competing on the amount of the surcharge; and (ii) meeting and agreeing to fix, stabilize and/or maintain prices at approximately 9% higher than the 2006 rates. Defendants and each of them have furthered the scheme through acts of concealment, including violation of the Bagley-Keene Act as more fully set forth in the Third Cause of Action herein. As a direct and proximate result of this price-fixing conspiracy, Defendants have restrained competition in the airport car rental market and injured Plaintiffs and each Class member in their business and property in that they have paid a higher price for airport car rentals than they would have paid absent the concerted unlawful activity.

47.     The conduct of Defendants and their co-conspirators constitutes a *per se* violation of 15 U.S.C. § 1.

48.     Pursuant to statute, damages should be awarded and trebled, injunctive relief should be entered and attorneys' fees awarded. 15 U.S.C. §§ 15 and 26.

## SECOND CAUSE OF ACTION

### (California Unfair Competition Act Violations)

49.     Plaintiffs repeat herein, as though fully set forth, paragraphs 1 through 48 of this Complaint. The practices complained of above constitute violations of California's Unfair

::ODMA\PCDOCS\PCDOCS\275074\9

1  Competition Law (Business & Professions Code Section 17200, *et seq.*), and False Advertising Law

2  (Business & Professions Code Section 17500, *et. seq.*). Plaintiff Class brings this Second Cause of

3  Action for such unfair acts in competition under said statute, including:

4          A.    The violations of 15 U.S.C. Section 1 alleged above, and each of them, also

5  constitute "unfair and/or unlawful" acts in competition in violations of Business & Professions Code

6  Section 17200, *et seq.*; and

7          B.    Defendants misrepresent to consumers that the 2.5% surcharge on car rentals

8  is owed by consumers to the CTTC. In fact, the only assessment which is owed is owed by the

9  Defendants, not consumers. Moreover, upon information and belief, Defendants are wrongfully

10  collecting more money from the surcharge than they are turning over to the CTTC. The CTTC fee

11  monies collected exceed the amounts contributed to the CTTC budget by the Rental Car Defendants,

12  in violation of California law. Thus, Rental Car Defendants' advertising and public statements

13  concerning the CTTC fee and the Airport Concession Fee as set forth herein are illegal and/or

14  misleading, in violation of Business & Professions Code Sections 17200 and 17500.

15      50.    The wrongful conduct alleged in this cause of action is continuing, and Rental Car

16  Defendants will not cease such conduct. There is no plain, speedy or adequate remedy at law which

17  will end the unlawful activity. Injunctive relief and disgorgement are proper and necessary pursuant

18  to 17203 of the California Business & Professions Code. And this request will result in the

19  enforcement of an important right affecting the public interest such that attorneys' fees should be

20  awarded pursuant to the provisions of Section 1021.5 of the California Code of Civil Procedure.

21

22  **THIRD CAUSE OF ACTION**

23  **(As to California Travel and Tourism Commission and Defendant**

24  **Beteta Only; Declaratory and Injunctive Relief for Violation of**

25  **California Bagley-Keene Open Meeting Act by Plaintiff Shames Only)**

26      51.    Plaintiff Shames repeats herein, as though fully set forth, paragraph 1 through 50 of

27  this Complaint. Meetings of the CTTC are subject to the requirements of the Bagley-Keene Open

28  Meeting Act (Act) (Section 11120, et seq.). *See* Section 13995.40(q). *See also*, "Bylaws of the

1    California Travel and Tourism Commission." By its terms, the Act applies not only to meetings of

2    the full Commission but also to meetings of Commission committees that consist of three or more

3    persons (Section 11121(c)). CTTC announced its intent to hold and held a Commission meeting and

4    meetings of various CTTC committees that consist of three or more persons on October 23-24, 2007

5    in Newport Beach. With respect to those meetings, CTTC violated numerous provisions of the

6    Bagley-Keene Open Meeting Act. CTTC has also repeatedly violated the Bagley-Keene Act in a

7    multitude of ways regarding Commission and CTTC committee meetings prior to the October 23-24,

8    2007 meeting, as follows:

9    **A.    Failure to Include Internet Site Address on Written Notices of Meetings.**

10    52.    The Act requires every "state body" (including CTTC) to "provide notice of its

11    meeting to any person who requests that notice in writing....The written notice shall additionally

12    include the address of the Internet site where notices required by this article are made available"

13    (Section 11125(a)).

14    53.    CTTC emailed notices of its October 23-24, 2007 meeting on September 6, 2007;

15    September 20, 2007; September 27, 2007; and October 15, 2007. Not one of these notices includes

16    the address of the Internet site where notices of CTTC meetings are posted, in violation of

17    Section 11125(a).

18    54.    CTTC also violated Section 11125(a) when it released written notices of the

19    following meetings that failed to include the address of the Internet site where notices of CTTC

20    meetings are posted: August 1, 2007 meeting of the Nominating Committee; August 2, 2007 meeting

21    of the Governance Committee; September 24, 2007 meeting of the full Commission; September 24,

22    2007 meeting of the Executive Committee; October 19, 2007 meeting of the Governance

23    Committee; October 19, 2007 meeting of the Nominating Committee.

24    **B.    Failure to Adequately Post Notices and Agendas of Meetings on the Internet.**

25    55.    Under Section 11125(a) of the Act, notice of a meeting must be posted on the Internet

26    ten (10) days prior to the meeting. Under Section 11125(b) of the Act, the notice of the meeting

27    described in Section 11125(a) and required to be posted on the Internet ten (10) days in advance of

28

1  the meeting "shall include a specific agenda for the meeting, containing a brief description of the

2  items of business to be transacted or discussed in either open or closed session."

3        56.    Although the CTTC posted notice of its October 23-24, 2007 meeting on the Internet,

4  that notice was buried in a location where no reasonable member of the public is likely to look;

5  Plaintiff Shames contends this notice did not comply with the Act's Internet posting requirement.

6  Additionally, CTTC failed to post on the Internet a "specific agenda" of the topics of discussion at its

7  October 23-24, 2007 meeting, in violation of Section 11125(b).

8        57.    CTTC further violated Section 11125(b) by failing to post either a notice or an agenda

9  of the following meetings on the Internet:  August 1, 2007 meeting of the Nominating Committee;

10  August 2, 2007 meeting of the Governance Committee; September 24, 2007 meeting of the full

11  Commission; September 24, 2007 meeting of the Executive Committee; October 19, 2007 meeting

12  of the Governance Committee; and October 19, 2007 meeting of the Nominating Committee.

13  **C.    Inadequate Notice of Commission and Committee Meetings.**

14        58.    Section 11125(a) of the Act requires CTTC to "provide notice of its meeting to any

15  person who requests that notice in writing.  Notice shall be given and also made available on the

16  Internet at least ten (10) days in advance of the meeting, and shall include the name, address, and

17  telephone number of any person who can provide further information prior to the meeting."

18        59.    CTTC violated the ten-day advance notice requirement on at least the following

19  occasions: (1) it failed to email the notice of the September 24, 2007 Commission meeting until

20  September 17, 2007; (2) it failed to email the notice of the September 24, 2007 Executive Committee

21  meeting until September 17, 2007; (3) it failed to email the notice of the October 19, 2007

22  Governance Committee meeting until October 11, 2007; and (4) it failed to email the notice of the

23  October 19, 2007 Nominating Committee meeting until October 11, 2007.

24  **D.    Topics on Agendas Are Insufficiently Described.**

25        60.    Government Code § 11125(b) requires a state body to include with its notice of a

26  meeting that is posted on the Internet ten (10) days in advance of a meeting "a specific agenda ...

27  containing a brief description of the items of business to be transacted or discussed in either open or

28

1 | closed session." Inasmuch as CTTC did not published on the Internet a "specific agenda" of its

2 | October 23-24, 2007 meeting in Newport Beach, it violated this requirement.

3 |      61.    Past CTTC agendas have also violated this requirement in that they fail to adequately

4 | apprise members of the public of the specific topic to be discussed and/or acted upon. CTTC's use

5 | of vague phrases such as "other business" (*see, e.g.*, August 1, 2007 Nominating Committee

6 | meeting), "next steps" (*see e.g.*, August 14, 2007 Congressional Reception Steering Committee

7 | meeting), "financial reports," "legal issues," and "other financial matters" are insufficient to notify

8 | members of the public of the nature of the items to be discussed and decided.

9 | **E.    Illegal Registration / RSVP Requirement.**

10 |      62.    Section 11124 of the Act provides that "[n]o person shall be required, as a condition

11 | to attendance at a meeting of a state body, to register his or her name, to provide other information,

12 | to complete a questionnaire, or otherwise to fulfill any condition precedent to his or her attendance.

13 | If an attendance list, register, questionnaire, or other similar document is ... circulated to persons..., it

14 | shall state clearly that the signing, registering, or completion of the document is voluntary, and that

15 | all persons may attend the meeting regardless of whether a person signs, registers, or completes the

16 | document."

17 |      63.    On September 20, 2007, CTTC circulated a "CTTC Commission Meeting

18 | Registration" email to interested parties, requesting them to register in order to attend the

19 | October 23-24, 2007 Commission meeting. On September 27, 2007, CTTC circulated a "CTTC

20 | Commission Meeting Registration Reminder" email to interested parties, requesting them to register

21 | in order to attend the October 23-24, 2007 Commission meeting. Nowhere on either of these

22 | documents is a statement that registration is voluntary; nowhere on either of these documents is a

23 | statement that members of the public may attend the meeting even if they do not register. This

24 | registration requirement constitutes a violation of the Bagley-Keene Open Meeting Act.

25 |      64.    At prior meetings of the CTTC and its committees, an RSVP or registration was

26 | required of attendees; additionally, attendees were required to sign a sign-in sheet and to publicly

27 | identify themselves and the organization with which they are identified.

28 |

::ODMA\PCDOCS\PCDOCS\275074\9

**F.   Illegal Closed Sessions.**

65.     The Bagley-Keene Open Meeting Act permits state bodies to meet in "closed session" to discuss certain topics (generally set forth in Section 11126 of the Act), subject to several requirements.  For example, closed session items must be listed on the "specific agenda" that is required by Section 11125 (see, e.g., Section 11126.3); further, the listing of the closed session item on the agenda must be accompanied by "a description of an item to be transacted or discussed in closed session shall include a citation of the specific statutory authority under which a closed session is being held" (Section 11125(b)).

66.     On September 24, 2007, CTTC's Executive Committee met in closed session to discuss its "annual executive director review."  On October 24, 2007, the Commission met in closed session to discuss "personnel committee report on executive director contract."  These agendas violate the Bagley-Keene Act in that they fail to identify the citation of the specific statutory authority under which a closed session is being held (Section 11125(b)).

**G.   Illegal Teleconference Meetings.**

67.     The Bagley-Keene Open Meeting Act permits a state body to meet via teleconference subject to certain requirements set forth in Section 11123(b).  For example, the state body must post agendas at all teleconference locations, identify each teleconference location in the notice and agenda, and provide public access to each teleconference location.  Members of the state body may not attend the teleconference from an office, home, or other location unless that location is identified in the notice and agenda, and the public is permitted to attend at those locations.

68.     The Commission violated Section 11123 when it held teleconference meetings on August 1, 2007 (Nominating Committee), August 2, 2007 (Governance Committee), September 24, 2007 (CTTC meeting), and September 24, 2007 (Executive Committee).  In addition to the violations already alleged in Paragraphs 55 (failure to include Internet address of site where meeting notices are posted on written notice) and 58 (failure to post notice and specific agenda on the Internet ten (10) days in advance of the meeting) above, not one of the written notices of these teleconference meetings identifies each teleconference location.  Instead, all of the notices invite the Commissioners to attend the teleconference meeting from unidentified locations that are not open to

1  the public, in violation of Section 11123. Additionally, the October 11, 2007 notices of the

2  October 19, 2007 teleconference meetings of the Governance Committee and the Nominating

3  Committee violate the Bagley-Keene Act, because they fail to identify each teleconference location.

4      69.    The illegal conduct alleged in this cause of action is continuing and Defendants

5  herein will not cease such conduct. There is no plain, speedy or adequate remedy at law which will

6  end the unlawful conduct. A Declaration that such conduct is unlawful and injunctive relief

7  prohibiting the recurrence of such wrongs are proper and necessary pursuant to, inter alia,

8  Government Code § 11130. Attorneys' fees should be awarded pursuant to Government Code

9  § 11130.5 and Code of Civil Procedure § 1021.5.

10  **PRAYER**

11  WHEREFORE, Plaintiffs and the Class pray:

12  **As to the First Cause of Action**

13      1.    An injunction halting all violations, and other equitable relief, including restitution

14  and disgorgement of unjust enrichment;

15      2.    Damages suffered by the Plaintiffs and the Class, trebled according to law.

16      3.    Attorneys' fees, costs of suit, and interest as permitted by law.

17  **As to the Second Cause of Action**

18      1.    An injunction halting all violations, and other equitable relief, including restitution

19  and disgorgement of unjust enrichment.

20      2.    Attorneys' fees pursuant to Section 1021.5 of the California Code of Civil Procedure.

21      3.    Costs of suit.

22  **As to the Third Cause of Action**

23      1.    An injunction halting all violations by the CTTC Defendants of the Bagley-Keene

24  Open Meeting Act pursuant to California Government Code Section 11130.

25      2.    Because a dispute has arisen between Plaintiff Shames and the CTTC Defendants as

26  to the application and interpretation of the Bagley-Keene Open Meeting Act to the proceedings of

27  the CTTC, declaratory relief specifying the obligations of the CTTC Defendants under the terms of

28  the statute.

::ODMA\PCDOCS\PCDOCS\275074\9

3.     Attorneys' Fees according to the fee provisions of the California Bagley-Keene Act (California Government Code Section 11130.5, and of Section 1021.5 of the California Code of Civil Procedure).

4.     Costs of suit.

**As to All Causes of Action**

Such other relief as the Court deems proper.

Dated: *11-13-07*

**CENTER FOR PUBLIC INTEREST LAW**
**University of San Diego School of Law**

By:    _____
Robert C. Fellmeth
Ed Howard
Attorneys for Plaintiff Class

Dated:

**SULLIVAN, HILL, LEWIN, REZ & ENGEL**
**A Professional Law Corporation**

By:    _____
Donald G. Rez
Attorneys for Plaintiff Class

Dated:

**HULETT HARPER STEWART LLP**

By:    _____
Dennis Stewart
Kirk Hulett
Attorneys for Plaintiff Class

::ODMA\PCDOCS\PCDOCS\275074\9

1    3.    Attorneys' Fees according to the fee provisions of the California Bagley-Keene Act

2   (California Government Code Section 11130.5, and of Section 1021.5 of the California Code of

3   Civil Procedure).

4    4.    Costs of suit.

5   **As to All Causes of Action**

6   Such other relief as the Court deems proper.

7

8   Dated:                                        **CENTER FOR PUBLIC INTEREST LAW**
                                                   **University of San Diego School of Law**
9

10                                                 By: _____
11                                                        Robert C. Fellmeth
                                                        Ed Howard
12                                                        Attorneys for Plaintiff Class

13

14   Dated:  *14 Nov 07*                           **SULLIVAN, HILL, LEWIN, REZ & ENGEL**
                                                   **A Professional Law Corporation**
15

16                                                 By: _____
17                                                        Donald G. Rez
                                                        Attorneys for Plaintiff Class
18

19   Dated:                                        **HULETT HARPER STEWART LLP**

20

21                                                 By: _____
22                                                        Dennis Stewart
                                                        Kirk Hulett
23                                                        Attorneys for Plaintiff Class

24

25

26

27

28

::ODMA\PCDOCS\PCDOCS\275074\9

21

1

## JURY TRIAL DEMANDED

2      A trial by jury is hereby demanded.

3   Dated:                              **SULLIVAN, HILL, LEWIN, REZ & ENGEL**
                 *14 Nov 07*           **A Professional Law Corporation**

4

5                                      By:    _Donald G. Rez_
6                                             Donald G. Rez
                                              Attorneys for Plaintiff Class
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I. (a) PLAINTIFFS**
MICHAEL SHAMES; GARY GRAMKOW, on behalf of themselves and on behalf of all persons similarly situated

**DEFENDANTS**
THE HERTZ CORPORATION, a Delaware corp.; DOLLAR THRIFTY AUTOMOTIVE GROUP, Inc. (see attached)

FILED

2007 NOV 14  AM 10: 22

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY_____ DEPUTY

**(b)** County of Residence of First Listed Plaintiff  San Diego
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Center for Public Interest Law
University of San Diego School of Law
5998 Alcala Park
San Diego, CA 92110
(619) 260-4806          (See attached)

Attorneys (If Known)

'07 CV 2174 H     BLM

**II. BASIS OF JURISDICTION** (Place an "X" in One Box Only)

- [ ] 1 U.S. Government Plaintiff
- [X] 3 Federal Question (U.S. Government Not a Party)
- [ ] 2 U.S. Government Defendant
- [ ] 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated or Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated and Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

**IV. NATURE OF SUIT** (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | [ ] 610 Agriculture | [ ] 422 Appeal 28 USC 158 | [ ] 400 State Reapportionment |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 362 Personal Injury - Med. Malpractice | [ ] 620 Other Food & Drug | | [X] 410 Antitrust |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability | [ ] 365 Personal Injury - Product Liability | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 423 Withdrawal 28 USC 157 | [ ] 430 Banks and Banking |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander | [ ] 368 Asbestos Personal Injury Product Liability | | **PROPERTY RIGHTS** | [ ] 450 Commerce |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers' Liability | | [ ] 630 Liquor Laws | [ ] 820 Copyrights | [ ] 460 Deportation |
| [ ] 151 Medicare Act | [ ] 340 Marine | **PERSONAL PROPERTY** | [ ] 640 R.R. & Truck | [ ] 830 Patent | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 152 Recovery of Defaulted Student Loans (Excl. Veterans) | [ ] 345 Marine Product Liability | [ ] 370 Other Fraud | [ ] 650 Airline Regs. | [ ] 840 Trademark | [ ] 480 Consumer Credit |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 350 Motor Vehicle | [ ] 371 Truth in Lending | [ ] 660 Occupational Safety/Health | **SOCIAL SECURITY** | [ ] 490 Cable/Sat TV |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle Product Liability | [ ] 380 Other Personal Property Damage | [ ] 690 Other | [ ] 861 HIA (1395ff) | [ ] 810 Selective Service |
| [ ] 190 Other Contract | [ ] 360 Other Personal Injury | [ ] 385 Property Damage Product Liability | **LABOR** | [ ] 862 Black Lung (923) | [ ] 850 Securities/Commodities/Exchange |
| [ ] 195 Contract Product Liability | | | [ ] 710 Fair Labor Standards Act | [ ] 863 DIWC/DIWW (405(g)) | [ ] 875 Customer Challenge 12 USC 3410 |
| [ ] 196 Franchise | | | [ ] 720 Labor/Mgmt. Relations | [ ] 864 SSID Title XVI | [ ] 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | [ ] 730 Labor/Mgmt. Reporting & Disclosure Act | [ ] 865 RSI (405(g)) | [ ] 891 Agricultural Acts |
| [ ] 210 Land Condemnation | [ ] 441 Voting | [ ] 510 Motion to Vacate Sentence | | **FEDERAL TAX SUITS** | [ ] 892 Economic Stabilization Act |
| [ ] 220 Foreclosure | [ ] 442 Employment | **Habeas Corpus:** | [ ] 740 Railway Labor Act | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | [ ] 893 Environmental Matters |
| [ ] 230 Rent Lease & Ejectment | [ ] 443 Housing/ Accommodations | [ ] 530 General | [ ] 790 Other Labor Litigation | [ ] 871 IRS - Third Party 26 USC 7609 | [ ] 894 Energy Allocation Act |
| [ ] 240 Torts to Land | [ ] 444 Welfare | [ ] 535 Death Penalty | [ ] 791 Empl. Ret. Inc. Security Act | | [ ] 895 Freedom of Information Act |
| [ ] 245 Tort Product Liability | [ ] 445 Amer. w/Disabilities-Employment | [ ] 540 Mandamus & Other | | | [ ] 900 Appeal of Fee Determination Under Equal Access to Justice |
| [ ] 290 All Other Real Property | [ ] 446 Amer. w/Disabilities-Other | [ ] 550 Civil Rights | | | [ ] 950 Constitutionality of State Statutes |
| | [ ] 440 Other Civil Rights | [ ] 555 Prison Condition | | | |

**V. ORIGIN** (Place an "X" in One Box Only)

- [X] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another district (specify)
- [ ] 6 Multidistrict Litigation
- [ ] 7 Appeal to District Judge from Magistrate Judgment

**VI. CAUSE OF ACTION**
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):  15 U.S.C.
Section 1
Brief description of cause:  Antitrust violation (price fixing agreement)

**VII. REQUESTED IN COMPLAINT:**  [X] CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23    DEMAND $ _____
CHECK YES only if demanded in complaint:
JURY DEMAND:  [X] YES  [ ] NO

**VIII. RELATED CASE(S) IF ANY**  (See instructions):    JUDGE _____    DOCKET NUMBER _____

DATE  November 14, 2007

SIGNATURE OF ATTORNEY OF RECORD  _____    Donald G. Rez

FOR OFFICE USE ONLY
RECEIPT #  1444450    AMOUNT $350    11/14/17 BU    APPLYING IFP _____    JUDGE _____    MAG. JUDGE _____

*Michael Shames, et al. v. Hertz Corporation, et al.*
USDC - Southern District of California

## ATTACHMENT I
## TO CIVIL COVER SHEET

Continuation of Defendants:

a Delaware corporation; AVIS BUDGET GROUP, INC., a Delaware corporation; VANGUARD CAR RENTAL USA, INC., an Oklahoma corporation; ENTERPRISE RENT-A-CAR COMPANY, a Missouri corporation; FOX RENT A CAR, INC., a California corporation; COAST LEASING CORP., a Texas corporation; THE CALIFORNIA TRAVEL AND TOURISM COMMISSION and CAROLINE BETETA

*Michael Shames, et al. v. Hertz Corporation, et al.*
USDC - Southern District of California

## ATTACHMENT I(c)
## TO CIVIL COVER SHEET

Continuation of Attorneys:

Center for Public Interest Law
University of San Diego School of Law
Robert C. Fellmeth (SBN 49897)
Ed Howard (SBN 151936)
5998 Alcala Park
San Diego, CA 92110
Telephone:     (619) 260-4806
Facsimile:     (619) 260-4753
cpil@sandiego.edu


Sullivan Hill Lewin Rez & Engel
Donald G. Rez (SBN 82615)
550 West "C" Street, Suite 1500
San Diego, CA 92101
Telephone:     (619) 233-4100
Facsimile:     (619) 231-4372
rez@shlaw.com


Hulett Harper Stewart LLP
Dennis Stewart (SBN 99152)
Kirk Hulett (SBN 110726)
550 West "C" Street, Suite 1600
San Diego, CA 92101
Telephone:     (619) 338-1133
Facsimile:     (619) 338-1139
dstewart@hulettharper.com

**UNITED STATES
DISTRICT COURT**
SOUTHERN DISTRICT OF CALIFORNIA
SAN DIEGO DIVISION

**# 144450    — BH**

**November 14, 2007
10:18:52**

**Civ Fil Non-Pris**
USAO #.: 07CV2174 CIVIL FILING
Judge..: MARILYN L HUFF
Amount.:                    $350.00 CK
Check#.: BC# 47385

**Total—>   $350.00**

FROM: SAHMES V. HERTZ
      CIVIL FILING