CENTER FOR PUBLIC INTEREST LAW
UNIVERSITY OF SAN DIEGO SCHOOL OF LAW
ROBERT C. FELLMETH, SBN 49897
cpil@sandiego.edu
ED HOWARD, SBN 151936
JULIANNE D'ANGELO FELLMETH, SBN: 109288
5998 Alcala Park
San Diego, CA  92110
Telephone:      (619) 260-4806
Facsimile:      (619) 260-4753

SULLIVAN, HILL, LEWIN, REZ & ENGEL
A Professional Law Corporation
DONALD G. REZ, SBN 82615
rez@shlaw.com
550 West "C" Street, Suite 1500
San Diego, CA  92101
Telephone:      (619) 233-4100
Facsimile:      (619) 231-4372

Attorneys for Plaintiffs

HULETT HARPER STEWART LLP
DENNIS STEWART, SBN: 99152
dstewart@hulettharper.com
JENNIFER A. KAGAN, SBN: 234554
jenni@hulettharper.com
550 West C Street, Suite 1600
San Diego, CA  92101
Telephone:      (619) 338-1133
Facsimile:      (619) 338-1139

# IN THE UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

MICHAEL SHAMES; GARY GRAMKOW;
JOHN DOE 1, on behalf of themselves and on
behalf of all persons similarly situated,

                    Plaintiffs,

v.

HERTZ CORPORATION, et al.,

                    Defendants.

Case No. 07CV2174H(BLM)

**MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF
PLAINTIFF MICHAEL SHAMES'S
MOTION FOR PRELIMINARY
INJUNCTION**

DATE:        January 7, 2008
TIME:        10:30 a.m.
JUDGE:       Honorable Marilyn L. Huff
CTRM:        13

1

## TABLE OF CONTENTS

I.    INTRODUCTION ......................................................................................................1

II.   BACKGROUND .......................................................................................................1

      A.    The CTTC .....................................................................................................1

      B.    General Provisions of the Bagley-Keene Open Meeting Act ...................2

III.  ARGUMENT ............................................................................................................4

      A.    This Court Has Jurisdiction to Rule on This Request for a Preliminary
            Injunction .....................................................................................................4

      B.    The CTTC Has in Numerous Ways, and Repeatedly, Violated the Act ...4

            1.    The CTTC Has Violated Section 11125(a) Regarding Inclusion of
                  Internet Posting Address on Written Notices of Meeting ...........4

            2.    The CTTC Has Violated Section 11125(b) Regarding When
                  Agendas Must Be Posted on the Internet ....................................6

            3.    The CTTC Has Violated Section 11125(a) by Failing to Give Ten
                  Days Notice of Meetings...............................................................8

            4.    The CTTC Has Violated Section 11125(b) Regarding Agenda
                  Specificity ....................................................................................8

            5.    The CTTC Has Violated Section 11123(b)(1)(C) Regarding
                  Teleconferences...........................................................................9

            6.    The CTTC Has Violated Section 11124 Regarding Meeting Pre-
                  Registration ................................................................................10

            7.    The CTTC Has Violated Section 11125(b) Regarding Closed
                  Sessions .....................................................................................11

      C.    Plaintiff Is Entitled to a Preliminary Injunction....................................12

            1.    Standard of Review.....................................................................12

            2.    Plaintiff is Likely to Succeed on the Merits...............................13

            3.    Plaintiff Will Be Irreparably Harmed .........................................14

            4.    The Equities Strongly Support Issuing a Preliminary Injunction .............15

IV.   CONCLUSION........................................................................................................16

i

# TABLE OF AUTHORITIES

## CASES

*Baykeeper v. U.S. Army Corps of Eng'rs,*
   No. Civ. S-06-1908 FCD/GGH, 2006 U.S. Dist. LEXIS 67483
   (E.D. Cal. Sept. 20, 2006) ........................................................................ 14

*Clear Channel Outdoor, Inc. v. City of L.A.,*
   340 F.3d 810 (9th Cir. 2003) ..................................................................... 12

*Earth Island Inst. v. U.S. Forest Serv.,*
   442 F.3d 1147 (9th Cir. 2006) ................................................................... 14

*Executive Software N. Am. v. U.S. Dist. Court,*
   24 F.3d 1545 (9th Cir. 1994) ....................................................................... 4

*Ft. Funston Dog Walkers v. Babbitt,*
   96 F. Supp. 2d 1021 (N.D. Cal. 2000) ...................................................... 13

*Homans v. Albuquerque,*
   264 F.3d 1240 (10th Cir. 2001) ................................................................. 15

*Iowa Right to Life Comm., Inc. v. Williams,*
   187 F.3d 963 (8th Cir. 1999) ..................................................................... 16

*Johnson v. Cal. State Bd. of Accountancy,*
   72 F.3d 1427 (9th Cir. 1995)l .................................................................... 12

*NAACP, Inc. v. Town of E. Haven,*
   70 F.3d 219 (2d Cir. 1995) ........................................................................ 13

*Qualcomm, Inc. v. Motorola, Inc.,*
   185 F.R.D. 285 (S.D. Cal. 1999) ............................................................... 12

*Raich v. Gonzales,*
   500 F.3d 850 (9th Cir. 2007) ..................................................................... 12

*Republic of Philippines v. Marcos,*
   862 F.2d 1355 (9th Cir. 1988) ................................................................... 12

*S. Or. Barter Fair v. Jackson County,*
   372 F.3d 1128 (9th Cir. 2004) ................................................................... 13

*Sammartano v. First Judicial Dist. Court,*
   303 F.3d 959 (9th Cir. 2002) ..................................................................... 15

*Save Our Sonoran, Inc. v. Flowers,*
   408 F.3d 1113 (9th Cir. 2005) ............................................................. 12, 14

*Sierra On-Line, Inc. v. Phoenix Software, Inc.,*
   739 F.2d 1415 (9th Cir. 1984) ................................................................... 12

*Time Warner Cable v. Bloomberg L.P.,*
   118 F.3d 917 (2d Cir. 1997) ...................................................................... 13

*Univ. of Tex. v. Camenisch*,
    451 U.S. 390 (1981) ............................................................................................ 13

*Warsoldier v. Woodford*,
    418 F.3d 989 (9th Cir. 2005) ............................................................................. 15


## STATUTES, RULES & REGULATIONS

28 U.S.C.
    § 1367(a) .............................................................................................................. 3

California Code of Regulations
    10 C.C.R. § 5350(w) ............................................................................................ 2
    10 C.C.R. § 5352 .................................................................................................. 2
    10 C.C.R. § 5352(e) ............................................................................................. 2

California Constitution
    Art. 1 § 3(b) ........................................................................................................ 15
    Art. 1 § 3(b)(1) ............................................................................................... 2, 15
    Art. 1 § 3(b)(2) ..................................................................................................... 2

California Government Code
    § 11120 ........................................................................................................... 1, 14
    § 11121 .................................................................................................................. 2
    § 11121(c) ...................................................................................................... 2, 4, 5
    § 11123 ............................................................................................................. 9, 10
    § 11123(a) ............................................................................................................. 1
    § 11123(b)(1)(C) ............................................................................................. 9, 14
    § 11124 ........................................................................................................... 10, 14
    § 11125.1(b) ......................................................................................................... 9
    § 11125(a) .................................................................................................... *passim*
    § 11125(b) .................................................................................................... *passim*
    § 11127 .................................................................................................................. 2
    § 11130 .................................................................................................................. 4
    § 11132 ................................................................................................................ 11
    § 13995 .................................................................................................................. 1
    § 13995.40(b)(1) ................................................................................................... 2
    § 13995.40(b)(2 .................................................................................................... 2
    § 13995.40(f) ........................................................................................................ 2
    § 13995.40(q) .................................................................................................... 2, 3
    § 13995.41 ............................................................................................................. 2
    § 13995.43(a) ........................................................................................................ 2
    § 13995.43(b) ........................................................................................................ 2
    § 13995.43(c) ........................................................................................................ 2


## SECONDARY AUTHORITIES

California Attorney Genernal's Office,
    *A Handy Guide to the Bagley-Keene Open Meeting Act 2004* ............................. 2

California Department of Consumer Affairs,
    *Open Meeting Law: Guide to the Bagley-Keene Open Meeting Act* ..................... 16

iii

## I.    **INTRODUCTION**

By this Motion, Plaintiff Michael Shames ("Plaintiff") seeks a preliminary injunction ordering the California Travel and Tourism Commission (hereinafter, the "CTTC") to refrain from violating the Bagley-Keene Open Meeting Act, found at California Government Code §§ 11120, *et seq.*[1] (hereinafter, the "Act").  As detailed below, the CTTC − charged by law with fostering California's vital tourism industry − has repeatedly violated numerous provisions of the Act, an important measure that seeks to ensure that the California public has a voice in state government decisions that affect their lives and businesses.

More specifically, and for example, the CTTC has unlawfully failed to include, on its written notices of meetings, the Internet address where it posts notices of meetings electronically; has unlawfully failed to post agendas for meetings on the Internet; has unlawfully obscured the nature of the business to be conducted at meetings by using vague agenda descriptions such as "other business"; has illegally failed to disclose locations for meetings convened by teleconference; has unlawfully failed to justify closed sessions; and has illegally required members of the public to pre-register for CTTC meetings.

Unless enjoined, the CTTC will continue to deny Californians the benefits of this important law, a law which enforces and facilitates the California constitutional right of access to information concerning the conduct of the people's business.  Cal. Const. Art. 1 § 3(b).

Because the CTTC's violations are all documented, and the legal strictures violated are so unambiguous, Plaintiff is likely to succeed on the merits of his claim.  Moreover, the equities are all in the Plaintiff's favor.  He and the California public will be irreparably harmed if the CTTC is permitted to continue shutting them out of its decision-making, and the injunction can impose no conceivable harm on the CTTC, which is duty-bound to abide by the Act in any event.

## II.    **BACKGROUND**

### A.    **The CTTC**

The CTTC was created by the California Tourism Marketing Act in 1995 (§§ 13995, *et*

---

[1]  Unless otherwise indicated, all "§" references are to the California Government Code.

1  *seq*.).  The purpose of the CTTC is to expand and develop tourism spending in California for the

2  benefit of the tourism industry and the consumers of the state.  § 13995.41.

3       The CTTC is chaired by the Secretary of the Business, Transportation and Housing

4  Agency.  § 13995.40(b)(1).  Of the thirty-seven Commissioners, twelve are persons from trades or

5  professions directly related to tourism and appointed by the Governor, one for each of twelve

6  designated geographic "tourism regions."  The remaining twenty-four Commissioners are selected

7  by the industry, without nomination or selection by any elected or appointed public official.

8  § 13995.40(b)(2).

9       These industry members come from five industry segments contributing to the CTTC's

10  budget:  (a) accommodations, (b) restaurants and retail, (c) attractions and recreation,

11  (d) transportation and travel services (defined in § 5352, Title 10 of the California Code of

12  Regulations).  The fifth segment − "passenger car rental industry" − was added by emergency

13  regulation effective January 1, 2007.  *See* 10 C.C.R. §§ 5350(w), 5352(e).  Commissioners serve

14  four-year terms, with a two-term limit.  § 13995.40(f).

15       The CTTC's Executive Director must be a "tourism industry professional" recommended

16  by the CTTC, approved by the Governor, and serves at the pleasure of both and is charged with

17  implementing the plans and policies of the CTTC.  § 13995.43(a)-(c).

18       **B.       General Provisions of the Bagley-Keene Open Meeting Act**

19       The Act firmly establishes the policy of the State of California as follows:

20  It is the public policy of this state that public agencies exist to aid in the conduct of
21  the people's business and the proceedings of public agencies be conducted openly
    so that the public may remain informed.

22  In enacting this article the Legislature finds and declares that it is the intent of the
    law that actions of state agencies be taken openly and that their deliberation be
23  conducted openly.

24  The people of this state do not yield their sovereignty to the agencies which serve
    them.  The people, in delegating authority, do not give their public servants the
25  right to decide what is good for the people to know and what is not good for them
    to know.  The people insist on remaining informed so that they may retain control
26  over the instruments they have created.

27  § 11120.  To this end, § 11123(a) commands: "All meetings of a state body shall be open and

28  public and all persons shall be permitted to attend any meeting of a state body except as otherwise

                                             2

1  provided in this article."  § 11123(a).

2          The Act applies to the CTTC specifically.  § 13995.40(q) ("Commission meetings shall be

3  subject to the requirements of the Bagley-Keene Open Meeting Act . . . .").

4          Moreover, the CTTC is a "state body" under the Act, bound by its strictures.  Section

5  11121 provides as follows:

6          As used in this article, "state body" means each of the following:

7          (a)     Every state board, or commission, or similar multimember body of the state
               that is created by statute or required by law to conduct official meetings and every
8              commission created by executive order.

           (b)     A board, commission, committee, or similar multimember body that
9              exercises any authority of a state body delegated to it by that state body.

10  § 11121.  Section 11127 states, "[e]ach provision of this article shall apply to every state body

11  unless the body is specifically excepted from that provision by law or is covered by any other

12  conflicting provision of law."  § 11127.

13          Here, of course, the CTTC is explicitly subject to the Act.  § 13995.40(q).  Indeed, as of

14  November 2, 2004 Proposition 59 was added to the state Constitution so that "the people have the

15  right of access to information concerning the conduct of the people's business."  Cal. Const. Art. 1

16  § 3(b)(1).  Therefore, "[a] statute, court rule, or other authority, including those in effect on the

17  effective date of this subdivision shall be broadly construed if it furthers the people's right of

18  access, and narrowly construed if it limits the right of access."  Cal. Const. Art. 1 § 3(b)(2).

19  Access is a constitutional right enforced and effectuated by the Act.

20          The Act applies to meetings of CTTC committees that consist of three or more persons.

21  *See* § 11121(c) ("An advisory board, advisory commission, advisory committee, advisory

22  subcommittee, or similar multimember advisory body of a state body, if created by formal action

23  of the state body or of any member of the state body, and if the advisory body so created consists

24  of three or more persons.").

25          The Act represents an important public policy.  As the California Attorney General has

26  explained:

27          [T]he Legislature said that when a body sits down to develop its consensus, there
               needs to be a seat at the table reserved for the public.  By reserving this place for
28              the public, the Legislature has provided the public with the ability to monitor and

                                               3

1
2
participate in the decision-making process.  If the body were permitted to meet in secret, the public's role in the decision-making process would be negated.

3   Cal. Attorney Gen.'s Office, *A Handy Guide to the Bagley-Keene Open Meeting Act 2004*, at 2,

4   *available at* http://www.cfac.org/AG%20Bagley-Keene%20Guide.pdf (citation omitted).

5   The next scheduled meeting of the full CTTC will take place on January 23-24, 2008.  This

6   Motion seeks an injunction preliminarily forcing the CTTC to refrain from violating the Act, as the

7   Act applies to this imminent meeting and all future meetings. § 11130.

8   **III.    ARGUMENT**

9
10
    **A.    This Court Has Jurisdiction to Rule on This Request for a Preliminary Injunction**

11   Pursuant to 28 U.S.C. § 1367(a), the Court has pendent jurisdiction over Plaintiff's claims

12   arising out of alleged violations of the Act.  *Executive Software N. Am. v. U.S. Dist. Court*, 24 F.3d

13   1545, 1557 (9th Cir. 1994).

14       **B.    The CTTC Has in Numerous Ways, and Repeatedly, Violated the Act**

15
16
        **1.    The CTTC Has Violated Section 11125(a) Regarding Inclusion of Internet Posting Address on Written Notices of Meeting**

17   Upon request, the CTTC must provide to members of the public written meeting notices

18   that include an Internet site address where legally required notices are posted.  Section 11125(a)

19   provides:

20
21
22
The state body shall provide notice of its meeting to any person who requests that notice in writing.  Notice shall be given and also made available *on the Internet at least 10 days in advance of the meeting . . . .  The written notice shall additionally include the address of the Internet site where notices required by this article are made available*.

23   § 11125(a) (emphasis added).

24   On September 6, 2007, CTTC emailed a "save the date" notice of its October 23-24, 2007

25   meeting in Newport Beach to interested parties (in each instance, "interested parties" includes

26   declarant Muhlenkamp, who had requested such notice and forwarded the notices to declarant

27   Fellmeth).  *See* Declaration of Julianne D'Angelo Fellmeth (hereinafter "Fellmeth Decl.") ¶ 5,

28   Ex. B; Declaration of Crystal Muhlenkamp (hereinafter "Muhlenkamp Decl.") ¶ 4.  In violation of

4

1  § 11125(a), that written notice does not include the address of the Internet site where notices of
2  CTTC meetings are posted.

3      On September 20, 2007, CTTC emailed a "Meeting Registration" document regarding its
4  October 23-24, 2007 meeting to interested parties.  *See* Fellmeth Decl. ¶ 5, Ex. B.  In violation of
5  § 11125(a), that written notice does not include the address of the Internet site where notices of
6  CTTC meetings are posted.

7      On September 27, 2007, CTTC emailed a "Meeting Registration Reminder" regarding its
8  October 23-24, 2007 meeting to interested parties.  *See id.* ¶ 5, Ex. B.  In violation of § 11125(a),
9  that written notice does not include the address of the Internet site where notices of CTTC
10 meetings are posted.

11     On October 15, 2007, CTTC emailed notices and agendas for meetings of the full CTTC,
12 its Marketing Advisory Committee, its Executive Committee, and its Audit Committee − all of
13 which were scheduled to take place on October 23-24, 2007 − to interested parties.  *See id.* ¶ 5,
14 Ex. B.  In violation of § 11125(a), none of these written notice or agendas include the address of
15 the Internet site where notices of CTTC meetings are posted.

16     Additionally, on July 20, 2007, CTTC emailed a notice of an August 1, 2007 meeting of its
17 Nominating Committee to interested parties.  *See id.* ¶ 6, Ex. C.[2]  Also on July 20, 2007, CTTC
18 emailed a notice of an August 2, 2007 meeting of its Governance Committee to interested parties.
19 *See id.* ¶ 7, Ex. D.[3]

20     Likewise, on September 17, 2007, CTTC emailed a notice of a September 24, 2007
21 meeting of the entire CTTC to interested parties.  *See id.* ¶ 8, Ex. E.  On September 17, 2007,
22 CTTC emailed a notice of a September 24, 2007 meeting of its Executive Committee to interested

23

24

25 [2]  The Nominating Committee consists of seven Commission members (*see* Fellmeth Decl. ¶ 4,
26 Ex. A) and is thus subject to the requirements of the Act under § 11121(c).

27 [3]  The Governance Committee consists of four Commission members (*see* Fellmeth Decl. ¶ 4,
28 Ex. A) and is thus subject to the requirements of the Bagley-Keene Open Meeting Act under
   § 11121(c).

1  parties.  *See id.* ¶ 9, Ex. F.[4]

2      As well, on October 11, 2007, CTTC emailed a notice of an October 19 meeting of its

3  Governance Committee to interested parties.  *See id.* ¶ 10, Ex. G.  Also on October 11, 2007,

4  CTTC emailed a notice of an October 19, 2007 meeting of its Nominating Committee to interested

5  parties.  *See id.* ¶ 11, Ex. H.

6      On none of these notices from July through October did CTTC include the address of the

7  Internet site where notices of CTTC meetings are posted, all in violation of § 11125(a).

8      Finally, Exhibits to the Declarations of Bradley Johnson (hereinafter "Johnson Decl.") and

9  Muhlenkamp demonstrate that CTTC failed to comply with § 11125(a)'s Internet address

10  requirement regarding notices of meetings during the spring of 2007.  *See* Johnson Decl. ¶¶ 4.a.i,

11  4.b.i, 4.c.i, 4.d.i, 4.e.i, 4.f.i, 4.g.i, 4.h.i, 4.i.i, Exs. A, C, E, G, I, K, M, O, Q; Muhlenkamp Decl.

12  ¶¶ 5.a.i, 5.b.i, 5.c.i, 5.d.i, 5.f.i, 5.g.i, 5.h.i, 5.i.i, 5.j.i, Exs. A, C, E, G, K, M, O, Q, S.

13
14
    **2.      The CTTC Has Violated Section 11125(b) Regarding When Agendas Must Be Posted on the Internet**

15      Even if the CTTC had provided addresses to Internet postings as required by law, members

16  of the public would still have been frustrated in their efforts to determine whether they could or

17  should attend.

18      The CTTC must post on the Internet, ten days in advance of the meeting, specific agendas

19  that properly apprise the public of what will be discussed at a meeting.  § 11125(a)-(b).

20      The CTTC has in numerous instances simply failed to post its agendas on the Internet as

21  required.  Although CTTC released written agendas in advance of its meetings on August 1, 2007

22  (Nominating Committee) (*see* Fellmeth Decl. ¶ 6, Ex. C), August 2, 2007 (Governance

23  Committee) (*see id.* ¶ 7, Ex. D), September 24, 2007 (full CTTC) (*see id.* ¶ 8, Ex. E),

24  September 24, 2007 (Executive Committee) (*see id.* ¶ 9, Ex. F), October 19, 2007 (Governance

25  Committee) (*see id.* ¶ 10, Ex. G), and October 19, 2007 (Nominating Committee) (*see id.* ¶ 11,

26

27  [4]  The Executive Committee consists of eight Commission members (*see* Fellmeth Decl. ¶ 4, Ex. A) and is thus subject to the requirements of the Bagley-Keene Open Meeting Act under

28  § 11121(c).

1    Ex. H), it failed to post any of these agendas anywhere on the Internet, as required by § 11125(b).

2    *See id.* Exs. M, N (documents under the "Agendas/Minutes" and "Meeting Materials" links on the

3    CTTC's Web site).

4         As detailed in the Johnson and Muhlenkamp declarations, it was their practice to search

5    both the Business, Transportation and Housing Agency's and CTTC's websites approximately ten

6    days before and two weeks after scheduled meetings, looking for agendas posted on the Internet.

7    They found none.  Johnson Decl. ¶ 4.j; Muhlenkamp Decl. ¶ 5.k.

8         The CTTC did post "notice" of its October 23-24, 2007 meetings on the Internet.

9    However, that notice is accessible from the CTTC's Web site[5] only via a circuitous route that no

10   one would reasonably find.   Rather than posting notices and agendas of its meetings in a

11   reasonable and logical place on its Web site (or even on the Web site of its parent agency, the

12   Business, Transportation and Housing Agency), CTTC requires a member of the public to access

13   meeting notices via the following route:

14        1.       At www.visitcalifornia.ca.gov, scroll to the bottom of the page and click on

15   "Travel Industry."

16        2.       At the next screen, the logical link to access meeting agendas would appear to be

17   "Agendas/Minutes."  However, no agendas for upcoming meetings are posted there.  A researcher

18   must click on "CTTC Publications."

19        3.       At the next screen, click on "CTTC Insights − Monthly Online Newsletter."

20        4.       Scroll to the very bottom of that page and click on "CTTC October CTTC

21   Meeting."  There, one will find a bare notice of the CTTC's October 23-24, 2007 meeting.  *See*

22   Fellmeth Decl. ¶ 12, Ex. I (a copy of this notice); *see also* Johnson Decl. ¶ 4.j; Muhlenkamp Decl.

23   ¶ 5.k.

24        This incomprehensible route constitutes no Internet notice at all in violation of § 11125(a).

25        However, even if the Court concludes that the CTTC posted notice of its October 23-24,

26   2007 meetings on its Web site in compliance with the section 11125(a)'s Internet posting

27   

28   _____
     [5] www.visitcalifornia.ca.gov.

7

requirement, it still failed to post the specific agendas of those meetings at least ten days prior to the meetings, in violation of the requirement in § 11125(b).  Indeed, CTTC failed to post agendas of its October 23-24, 2007 meetings on the Internet until October 18, 2007.  *See* Fellmeth Decl. ¶¶ 13-19, Exs. J-Q.

For all these reasons, CTTC's failure to post the agendas of its October 23-24, 2007 meetings on the Internet on or before October 18, 2007 renders the meetings unlawful.

### 3. The CTTC Has Violated Section 11125(a) by Failing to Give Ten Days Notice of Meetings

Section 11125(a) requires the CTTC to "provide notice of its meeting to any person who requests that notice . . . at least ten days in advance of the meeting."  On several occasions, the CTTC failed to provide ten days notice of its meetings.  For example, CTTC emailed notice of its September 24, 2007 meeting on September 17, 2007 (seven days notice).  *See* Fellmeth Decl. ¶ 8, Ex. E.  Likewise, CTTC emailed notice of its Executive Committee's September 24, 2007 meeting on September 17, 2007 (seven days notice).  *See id.* ¶ 9, Ex. F.  On October 11, 2007, the CTTC emailed notice of the October 19, 2007 meeting of its Governance Committee (eight days notice).  *See id.* ¶ 10, Ex. G.  Also on October 11, 2007, the CTTC emailed notice of the October 19, 2007 meeting of its Nominating Committee (eight days notice).  *See id.* ¶ 11, Ex. H.  Obviously, these notices fail to comply with the ten-day notice requirement in section 11125(a).

### 4. The CTTC Has Violated Section 11125(b) Regarding Agenda Specificity

Section 11125(b) also requires the CTTC to include with its notice of a meeting that is posted on the Internet ten days in advance of a meeting "a specific agenda . . . containing a brief description of the items of business to be transacted or discussed in either open or closed session." § 11125(b).

CTTC agendas have repeatedly violated this requirement because they routinely fail to apprise a member of the public of the specific topic to be discussed and/or acted upon.  The CTTC's Internet notice of its October 23-24 meeting − buried under the four unrecognizable clicks described above − is merely that: a bare notice of the time and date of CTTC and CTTC

8

committee meetings, and not, as required, "a specific agenda for the meeting, containing a brief description of the items of business to be transacted or discussed in either open or closed session" as required by binding statute. *See* § 11125(b).

Furthermore, CTTC often uses vague phrases such as "other business" (*see, e.g.*, Fellmeth Decl. ¶ 6, Ex. C; Johnson Decl. ¶ 4.e.iii, Ex. J; Muhlenkamp Decl. ¶ 5.f.iii, Ex. L), "other financial matters" (*see, e.g.*, Johnson Decl. ¶¶ 4.b.iii, 4.d.iii, 4.f.iii, 4.g.iii, 4.i.iv, Exs. D, H, L, N, R; Muhlenkamp Decl. ¶¶ 5.b.iii, 5.d.iii, 5.g.iii, 5.h.iii, 5.j.iv, Exs. D, H, N, P, T), "legal issues" (*see, e.g.*, Johnson Decl. ¶ 4.d.iii, Ex. H; Muhlenkamp Decl. ¶ 5.d.iii, Ex. H), "other legal matters" (*see, e.g.*, Johnson Decl. ¶¶ 4.g.iii, 4.i.iv, Exs. N, R; Muhlenkamp Decl. ¶¶ 5.h.iii, 5.j.iv, Exs. P, T), and "research update" (*see, e.g.*, Johnson Decl. ¶ 4.h.iv, Ex. P; Muhlenkamp Decl. ¶ 5.i.iv, Ex. R).

These vague terms are insufficient to apprise members of the public of the nature of the items to be discussed and decided and, consequently, are unlawful. *See* 67 Op. Atty Gen. 85, Opinion 83-912 (1984) (agenda item of State Board of Food and Agriculture reading "Tuolumne River − San Joaquin River Flood Control Problem" was "inadequate" under the Act because "[a] member of the public would have to have been either clairvoyant or have had collateral information to know that the Board intended to consider the resolution which it actually did at its July 14, 1983, meeting").

### 5. The CTTC Has Violated Section 11123(b)(1)(C) Regarding Teleconferences

The CTTC, if it wants to meet via teleconference, must post agendas at all teleconference locations, identify each teleconference location in the notice and agenda, and provide public access to each teleconference location. § 11123(b)(1)(C). Furthermore, members of the CTTC may not attend the teleconference from an office, home, or other location unless that location is identified in the notice and agenda, and the public is permitted to attend at those locations. *Id*.

Nevertheless, the CTTC violated § 11123 when it noticed and held teleconference meetings on August 1, 2007 (Nominating Committee) (*see* Fellmeth Decl. ¶ 6, Ex. C), August 2, 2007 (Governance Committee) (*see id.* ¶ 7, Ex. D), September 24, 2007 (CTTC meeting) (*see id.* ¶ 8, Ex. E), September 24, 2007 (Executive Committee) (*see id.* ¶ 9, Ex. F), October 19, 2007

1   (Governance Committee) (*see id.* ¶ 10, Ex. G), and October 19 (Nominating Committee) (*see id.*

2   ¶ 11, Ex. H).   None of these notices identify each teleconference location.   Instead, all of the

3   notices invite the Commissioners to attend the teleconference meeting from unidentified locations

4   that are not open to the public, in violation of § 11123.

5       Additionally, exhibits. to the Johnson and Muhlenkamp Declarations reveal other illegal

6   teleconference meetings held by CTTC and/or its committees because the notices fail to identify

7   teleconference "locations" that are open to the public and instead permit Commissioners to attend

8   from wherever they are located. *See, e.g.*, Johnson Decl. ¶¶ 4.a.i, 4.b.i, 4.e.i, 4.f.i, Exs. A, C, I, K;

9   Muhlenkamp Decl. ¶¶ 5.a.i, 5.b.i, 5.e.ii, 5.f.i, 5.g.i, Exs. A, C, I, K, M.

10              **6.      The CTTC Has Violated Section 11124 Regarding Meeting Pre-
                          Registration**

11

12      The CTTC may not require members of the public to pre-register to attend its meetings:

13          No person shall be required, as a condition to attendance at a meeting of a state
            body, to register his or her name, to provide other information, to complete a
14          questionnaire, or otherwise to fulfill any condition precedent to his or her
            attendance.

15
            If an attendance list, register, questionnaire, or other similar document is . . .
16          circulated to persons . . . it shall state clearly that the signing, registering, or
            completion of the document is voluntary, and that all persons may attend the
17          meeting regardless of whether a person signs, registers, or completes the document.

18   § 11124.

19      On Thursday, September 20, 2007, CTTC circulated a "Meeting Registration" e-mail to

20   interested parties, requesting them to register in order to attend the October 23-24, 2007 CTTC

21   meeting. *See* Fellmeth Decl. ¶ 5, Ex. B. Nowhere on the document is a statement that registration

22   is voluntary.  Nowhere on the document is a statement that members of the public may attend the

23   meeting even if they do not register.  This registration requirement constitutes a violation of the

24   Act.

25      Likewise, on September 27, 2007, CTTC circulated a "Meeting Registration Reminder"

26   email to interested parties, requesting them to register in order to attend the October 23-24, 2007

27   CTTC meeting.  *See id.* ¶ 5, Ex. B.  Again, nowhere on the document is a statement that

28   registration is voluntary.  Nowhere on the document is a statement that members of the public may

                                              10

1  attend the meeting even if they do not register.

2      Additionally, the Johnson and Muhlenkamp Declarations aver that they were asked to

3  "RSVP" or register in order to attend CTTC meetings during February and March 2007-yet

4  another violation of the Act.  *See, e.g.*, Johnson Decl. ¶¶ 4.a.ii, 4.b.ii, 4.c.ii, 4.d.ii, 4.e.ii;

5  Muhlenkamp Decl. ¶¶ 5.a.ii, 5.b.ii, 5.c.ii, 5.d.ii, 5.e.iii, 5.f.ii, 5.g.ii, 5.h.ii, 5.i.ii, 5.j.ii.

6      Failure to "RSVP" or preregister resulted in their inability to secure meeting materials prior

7  to the meeting, contrary to § 11125.1(b), which states that "[w]ritings . . . that are distributed to

8  members of the state body prior to or during a meeting, pertaining to any item to be considered

9  during the meeting, shall be made available for public inspection at the meeting . . . ."  *See, e.g.*,

10  Johnson Decl. ¶¶ 4.b.v, 4.c.v; Muhlenkamp Decl. ¶¶ 5.b.v, 5.c.v, 5.e.iii.

11      Further, Johnson and Muhlenkamp declare that, at CTTC meetings and CTTC committee

12  meetings during the spring of 2007, they were required to (a) sign a sign-in sheet that failed to

13  notify attendees that signing in is optional or voluntary, and (b) publicly identify themselves and

14  their affiliation during a "roll call" portion of CTTC meetings, all of which constitute violations of

15  the Act.  Johnson Decl. ¶¶ 4.b.vi, 4.c.vi; Muhlenkamp Decl. ¶¶ 5.b.vi, 5.c.vi.

16          **7.      The CTTC Has Violated Section 11125(b) Regarding Closed Sessions**

17      The CTTC may not meet in closed session unless the closed session item is listed on the

18  agenda.  Further, "[a] description of an item to be transacted or discussed in closed session shall

19  include a citation of the specific statutory authority under which a closed session is being held."

20  § 11125(b); *see also* § 11132 ("Except as expressly authorized by this article, no closed session

21  may be held by any state body.").

22      On September 24, 2007, CTTC's Executive Committee met in closed session to discuss its

23  "annual executive director review."  *See* Fellmeth Decl. ¶ 9, Ex. F, Item XII.D.  On October 24,

24  2007, the CTTC met in closed session to discuss "personnel committee report on executive

25  director contract."  *See id.* ¶ 18, Ex. P, Item VII.c.  These closed sessions violate the Act in that the

26  agendas failed to identify the citation of the specific statutory authority under which a closed

27  session is being held.  § 11125(b).

28      Additionally, Exs. to the Johnson and Muhlenkamp Declarations demonstrate that CTTC

11

1    and its committees engaged in illegal closed sessions during February 2007, either because the

2    closed sessions were not noticed at all (*see, e.g.*, Johnson Decl. ¶¶ 4.b.iv-v; Muhlenkamp Decl.

3    ¶¶ 5.b.iv-v); or because the agendas of the closed session failed to identify the citation of the

4    specific statutory provision under which the closed session was authorized (*see, e.g.*, Johnson

5    Decl. Exs. B, L; Muhlenkamp Decl. Exs. B, N).

6        **C.        Plaintiff Is Entitled to a Preliminary Injunction**

7            **1.        Standard of Review**

8        "[A] preliminary injunction 'is a provisional remedy issued prior to a final disposition of

9    the litigation.'"    *Qualcomm, Inc. v. Motorola, Inc*., 185 F.R.D. 285, 287-88 (S.D. Cal. 1999)

10   (citation omitted).    A preliminary injunction "is not a preliminary adjudication on the merits but

11   rather a device for preserving the status quo and preventing the irreparable loss of rights before

12   judgment." *Sierra On-Line, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415, 1421 (9th Cir. 1984).

13       "'The standard for granting a preliminary injunction balances the plaintiff's likelihood of

14   success against the relative hardship to the parties.'"    *Raich v. Gonzales*, 500 F.3d 850, 857 (9th

15   Cir. 2007) (quoting *Clear Channel Outdoor, Inc. v. City of L.A.*, 340 F.3d 810, 813 (9th Cir.

16   2003)).    The Ninth Circuit has articulated two alternative standards for granting a preliminary

17   injunction.    "'Under the traditional criteria, a plaintiff must show (1) a strong likelihood of success

18   on the merits, (2) the possibility of irreparable injury to [the] plaintiff if preliminary relief is not

19   granted, (3) a balance of hardships favoring the plaintiff, and (4) advancement of the public

20   interest (in certain cases).'"    *Raich*, 500 F.3d at 857 (quoting *Save Our Sonoran, Inc. v. Flowers*,

21   408 F.3d 1113, 1120 (9th Cir. 2005)) (alterations in original).

22       In the alternative, a plaintiff can show "*either* a combination of probable success on the

23   merits and the possibility of irreparable injury *or* that serious questions are raised and the balance

24   of hardships tips sharply in his favor."    *Save Our Sonoran, Inc. v. Flowers*, 408 F.3d 1113, 1120

25   (9th Cir. 2005) (quoting *Johnson v. Cal. State Bd. of Accountancy*, 72 F.3d 1427, 1430 (9th Cir.

26   1995)) (emphasis in original).    "These are not two distinct tests, but rather the opposite ends of a

27   single continuum in which the required showing of harm varies inversely with the required

28   showing of meritoriousness."    *Republic of Philippines v. Marcos*, 862 F.2d 1355, 1362 (9th Cir.

1  1988) (internal quotations and citations omitted).

2      While at times a heightened standard applies to enjoining governmental action, that is not

3  the case here.  When the "moving party seeks to enjoin governmental action taken in the public

4  interest pursuant to a statutory or regulatory scheme," a heightened standard may apply, requiring

5  that "the moving party must establish both irreparable injury and a probability of success on the

6  merits." *Ft. Funston Dog Walkers v. Babbitt*, 96 F. Supp. 2d 1021, 1032 (N.D. Cal. 2000) (citing

7  *NAACP, Inc. v. Town of E. Haven*, 70 F.3d 219, 223 (2d Cir. 1995)).

8      The heightened standard should not apply here because the CTTC's actions were not taken

9  pursuant to a statutory or regulatory scheme − they are in patent violation of such a scheme − and

10 were not in the public interest.  In any event, "the lower preliminary injunction standard may be

11 applied where there are public interest concerns on both sides" which, at minimum, is the case

12 here.  *Ft. Funston*, 96 F. Supp. 2d at 1032 (citing *Time Warner Cable v. Bloomberg L.P.*, 118 F.3d

13 917, 923 (2d Cir. 1997)).

14          **2.      Plaintiff is Likely to Succeed on the Merits**

15     "Decisions on preliminary injunctions require the district court to assess the plaintiff's

16 likelihood of success on the merits, not whether the plaintiff has actually succeeded on the merits."

17 *S. Or. Barter Fair v. Jackson County*, 372 F.3d 1128, 1136 (9th Cir. 2004); *see also Univ. of Tex.*

18 *v. Camenisch*, 451 U.S. 390, 395 (1981).

19     Plaintiff here is likely to succeed on the merits because the violations detailed above are, in

20 the main, legally and factually incontestable.  To wit:

21     •      The violations of § 11125(a) (Internet address on written notice of meetings; ten

22 day notice requirement) are all based upon public records and the violations of the Act appear on

23 their face.

24     •      The violations of § 11125(b) (requirement of specific agenda descriptions) are also

25 visible from public records documents.  To impede the Plaintiff from prevailing on this claim, the

26 CTTC Defendant would have to persuade this Court that agenda references to "other business" and

27 "next steps" would satisfy the requirement that the CTTC's agendas be "specific" constituting "a

28 brief description of the items of business to be transacted or discussed in either open or closed

                                                     13

1    session."

2        •    The violations of § 11123(b)(1)(C) (teleconferences) are likewise self-evident.

3    The required disclosures of meeting locations simply are not provided.

4        •    Similarly, the violations of § 11124 (ban on pre-registration) are incontestable.  It

5    cannot be contested that the CTTC, in fact, demanded pre-registration for its meetings.  Such

6    demands appear on the face of the CTTC's own documents and emails.

7        •    Finally, and once more, the CTTC's own documents on their face establish

8    violations of § 11125(b) (closed sessions).  The documents simply do not cite the statutory

9    authority allowing the CTTC to close the sessions, as required by § 11125(b).

10                    **3.    Plaintiff Will Be Irreparably Harmed**

11        There are two dispositive points concerning irreparable injury.  First, because of the

12   overwhelming likelihood of success on the merits, this showing need only be minimal.  Second,

13   because the injury is to a fundamental right of the people (arising to a constitutionally protected

14   right) there is irreparable injury as a matter of law.

15        Due to the strong likelihood (if not certainty) of Plaintiff's success on the merits, Plaintiff's

16   required showing of a possibility of irreparable harm is minimal.  *See Save Our Sonoran*, 408 F.3d

17   at 1120.  In any event, to satisfy the irreparable injury prong, "a plaintiff need not show 'actual

18   harm,' the 'concrete probability of irreparable harm,' or the 'significant threat of irreparable

19   injury,' as such requirements impose too high a burden on the plaintiff." *Baykeeper v. U.S. Army*

20   *Corps of Eng'rs*, No. Civ. S-06-1908 FCD/GGH, 2006 U.S. Dist. LEXIS 67483, at *15-*16 (E.D.

21   Cal. Sept. 20, 2006) (citing *Earth Island Inst. v. U.S. Forest Serv.*, 442 F.3d 1147, 1158-59 (9th

22   Cir. 2006)).  "Rather, a plaintiff must demonstrate only the '*mere possibility of irreparable injury*'

23   in cases where *probable* likelihood of success on the merits exists." *Baykeeper*, 2006 U.S. Dist.

24   LEXIS 67483, at *16 (citing *Earth Island*, 442 F.3d at 1159) (emphasis in original).

25        The Plaintiff here and other members of the public will undeniably and irreparably be

26   harmed if future meetings do not comply with the Act.  This is more than a "mere possibility."

27   The Plaintiff's and the public's ability to affect whatever decisions will be made in the future, to

28   evaluate what is said and how and thus hold accountable who is most responsible for the decisions,

                                    14

the simple ability to discover and report back an in-person account of how the CTTC arrived at a particular decision − all essential if the public is to "retain control" over CTTC decision-making − will be at best impeded and at worst utterly thwarted by continuing violations of the Act, violations that each and together frustrate the ability of the Plaintiff and the public to participate meaningfully in CTTC decision-making.   Indeed, the public policy of the State of California concerning accessibility to the "conduct of the people's business" is so fundamental that in 2004 it was elevated to a Constitutional right.  Cal. Const. Art. 1 § 3(b).  Denial of such a right is *ipso facto* an irreparable injury.  It is tantamount to a First Amendment claim (freedom to petition government, freedom to assemble, right of political expression) and "'under the law of this circuit a party seeking preliminary injunctive relief in a First Amendment context can establish irreparable injury sufficient to merit the grant of relief by demonstrating the existence of a colorable First Amendment claim.'"   *Warsoldier v. Woodford*, 418 F.3d 989, 1001-02 (9th Cir. 2005) (citation omitted).

### 4.        The Equities Strongly Support Issuing a Preliminary Injunction

Not only is the Plaintiff likely to succeed on the merits and likely to be irreparably harmed by the CTTC's broad and persistent pattern of violating the Act, the equities are in his favor as well.   As detailed above, the Act embraces important public policies: accountability and transparency in state government and the ability of the public to have a voice in the decisions regarding an industry vital to the economic well-being of their State.  ("The people insist on remaining informed so that they may retain control over the instruments they have created." § 11120.)  Accessibility to the governmental bodies in California is a fundamental constitutional right. Cal. Const. Art. 1 § 3(b)(1).  The public interest inquiry primarily addresses impact on non-parties rather than parties.  The potential for impact on nonparties is plainly present here.  Courts considering requests for preliminary injunctions have consistently recognized the significant public interest in upholding First Amendment principles.  *See Homans v. Albuquerque*, 264 F.3d 1240, 1244 (10th Cir. 2001) ("[W]e believe that the public interest is better served by following binding Supreme Court precedent and protecting the core First Amendment right of political expression."); *see also Sammartano v. First Judicial Dist. Court*, 303 F.3d 959, 974 (9th Cir.

15

1   2002) (citing *Iowa Right to Life Comm., Inc. v. Williams*, 187 F.3d 963, 970 (8th Cir. 1999), which

2   found that "a district court did not abuse its discretion in granting a preliminary injunction"

3   because "the potential harm to independent expression and certainty in public discussion of issues

4   is great and the public interest favors protecting core First Amendment freedoms").

5        For all these reasons, it is literally in the public's interest to issue the injunction.

6        On the other hand, there will be no identifiable hardship placed on the CTTC at all by

7   issuing the sought-after injunction.   The practical impact of issuing the injunction will be to

8   require the CTTC prospectively to do that which it is plainly already legally obliged to do:  follow

9   the plain dictates of the Act, something required of nearly all other of the State's other boards and

10  CTTC.  *See* Cal. Dep't of Consumer Affairs, *Open Meeting Law: Guide to the Bagley-Keene Open

11  Meeting Act*, *available at* www.dca.ca.gov/publications/bagleykeene_meetingact.pdf.  The costs of

12  compliance are for all the violations alleged less than modest.  Nor can there any public interest in

13  allowing the CTTC to continue to violate a law that is intended to benefit the very same public, a

14  law enacted to prevent secret decision-making of the public's business.

15  **IV.    CONCLUSION**

16       For these reasons, a preliminary injunction should issue.

17  DATED: November 29, 2007                    HULETT HARPER STEWART LLP
                                                DENNIS STEWART
18                                              JENNIFER A. KAGAN

19

20                                               */s/ Dennis Stewart*
                                                DENNIS STEWART
21
                                                550 West C Street, Suite 1600
22                                              San Diego, CA  92101
                                                Telephone:    (619) 338-1133
23                                              Facsimile:     (619) 338-1139

24

25

26

27

28

16

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CENTER FOR PUBLIC INTEREST LAW
UNIVERSITY OF SAN DIEGO
 SCHOOL OF LAW
ROBERT C. FELLMETH
ED HOWARD
JULIANNE D'ANGELO FELLMETH,
5998 Alcala Park
San Diego, CA  92110
Telephone:     (619) 260-4806
Facsimile:      (619) 260-4753

SULLIVAN, HILL, LEWIN, REZ & ENGEL
A Professional Law Corporation
DONALD G. REZ
550 West "C" Street, Suite 1500
San Diego, CA  92101
Telephone:     (619) 233-4100
Facsimile:      (619) 231-4372

Attorneys for Plaintiffs