Michael L. Weiner (*Pro hac vice*)
SKADDEN ARPS SLATE MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036-6522
Telephone: (212) 735-3000

Douglas B. Adler (Cal. Bar No. 130749)
SKADDEN ARPS SLATE MEAGHER & FLOM LLP
300 South Grand Avenue, Suite 3400
Los Angeles, California 90071-3144
Telephone: (213) 687-5000

Sara L. Bensley (*Pro hac vice*)
SKADDEN ARPS SLATE MEAGHER & FLOM LLP
1440 New York Avenue, N.W.
Washington, D.C. 20005-2111
Telephone: (202) 371-7000

Attorneys for Defendant
AVIS BUDGET GROUP, INC.

[Additional Counsel Listed on Signature Page]

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

**MICHAEL SHAMES; GARY GRAMKOW, on behalf of themselves and on behalf of all persons similarly situated,**

**Plaintiffs,**

**v.**

**THE HERTZ CORPORATION, a Delaware corporation; DOLLAR THRIFTY AUTOMOTIVE GROUP, INC., a Delaware corporation; AVIS BUDGET GROUP, INC., a Delaware corporation; VANGUARD CAR RENTAL USA, INC., an Oklahoma corporation; ENTERPRISE RENT-A-CAR COMPANY, a Missouri corporation; FOX RENT A CAR, INC., a California corporation; COAST LEASING CORP., a Texas corporation; THE CALIFORNIA TRAVEL AND TOURISM COMMISSION and CAROLINE BETETA**

**Defendants.**

Case No. 07 CV 2174 H BLM

[Class Action]

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE RENTAL CAR DEFENDANTS' MOTION TO DISMISS**

Date: March 17, 2008
Time: 10:30 a.m.
Place: Courtroom 13
**Honorable Marilyn L. Huff**

# TABLE OF CONTENTS


I. PRELIMINARY STATEMENT ........ 1

II. BACKGROUND ........ 4

A. The Legislature Enacted AB 2592 to Allow Additional Funding for the CTTC, While Also Returning Millions of Dollars to California's General Fund ........ 4

B. AB 2592 Allows the Rental Car Defendants to Separately State, and Pass On to Customers, The Airport Concession Fee and the CTTC Assessment ........ 5

C. Plaintiffs Allege That the Rental Car Defendants Lobbied in Favor of AB 2592, and Plaintiffs' Counsel Lobbied Against It. ........ 5

D. Plaintiffs Allege that the Rental Car Defendants Complied with AB 2592 and Acted as Their Counsel Predicted. ........ 6

E. State Senator Migden Recently Introduced a Bill That, if Enacted, Would Address Plaintiffs' Concerns. ........ 6

III. ARGUMENT ........ 7

A. This Court Should Dismiss Plaintiffs' Purported Sherman Act Claim. ........ 7

1. Plaintiffs Fail to Plead a Sherman Act Claim Because They Fail to Allege Facts Sufficient to Show the Requisite Agreement ........ 7

2. No Antitrust Liability Can Attach to Lobbying Efforts or the Acceptance of the CTTC Assessment. ........ 12

3. This Court Should Dismiss Plaintiffs' Purported Sherman Act Claim With Prejudice, Because Any Amendment Would Be Futile. ........ 14

B. This Court Should Dismiss Plaintiffs' Purported California Unfair Competition Law Claim. ........ 15

1. Plaintiffs' Purported UCL Claim Is Barred by the Government Code ........ 15

2. Plaintiffs Do Not and Cannot Allege Facts Sufficient to Establish a UCL Violation. ........ 16

3. Plaintiffs Do Not and Cannot Allege Facts Sufficient to Show that the Rental Car Defendants Acted Unfairly. ........ 18

4. Plaintiffs Do Not and Cannot Allege Facts Sufficient to Show UCL Fraud. ........ 20

IV. CONCLUSION ........ 21

# TABLE OF AUTHORITIES

## CASES

*In re Airport Car Rental Antitrust Litig.*, 693 F.2d 84 (9th Cir. 1982) .......... 13

*Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519 (1983) .......... 3, 14

*Bardin v. DaimlerChrysler Corp.*, 136 Cal. App. 4th 1255 (2006) .......... 4, 19

*Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007) .......... *passim*

*Buckland v. Threshold Enters., Ltd.*, 155 Cal. App. 4th 798 (2007) .......... 20, 21

*Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163 (1999) .......... 3, 4, 16, 18, 19

*Charley's Taxi Radio Dispatch Corp. v. SIDA of Haw. Inc.*, 810 F.2d 869 (9th Cir. 1987) .......... 3, 13

*Chavez v. Whirlpool Corp.*, 93 Cal. App. 4th 363 (2001) .......... 17

*In re Citric Acid Litig.*, 191 F.3d 1090 (9th Cir. 1999) .......... 11

*Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961) .......... 3, 12

*In re Elevator Antitrust Litig.*, 502 F.3d 47 (2d Cir. 2007) .......... 10

*Ernest W. Hahn, Inc. v. Codding*, 615 F.2d 830 (9th Cir. 1980) .......... 12

*In re Graphics Processing Units Antitrust Litig.*, No. C 06-07417, 2007 WL 2875686 (N.D. Cal., Sept. 27, 2007) .......... 10, 11

*Khoury v. Maly's of Cal., Inc.*, 14 Cal. App. 4th 612 (1993) .......... 4, 17

*In re Late Fee and Over-Limit Fee Litig.*, No. C 07-0634, 2007 WL 4106353 (N.D. Cal. Nov. 16, 2007) .......... 9, 11

*Ludwig v. Superior Court*, 37 Cal. App. 4th 8 (1995) .......... 19

*Multimedia Patent Trust v. Microsoft Corp.*, No. 07-CV-0747, 2007 WL 2696675 (S.D. Cal. Sept. 10, 2007) .......... 17, 20

*New.Net, Inc. v. Lavasoft*, 356 F. Supp. 2d 1090 (2001) .......... 17

*Parrino v. FHP, Inc.*, 146 F.3d 699 (9th Cir. 1998), *superseded by statute on other grounds as stated in Abrego Abrego v. Dow Chem. Co.*, 443 F.3d 676 (9th Cir. 2006) .......... 18

*Pfizer, Inc. v. Superior Court*, 141 Cal. App. 4th 290 (2006) .......... 20

*Pfizer, Inc. v. Superior Court*, 51 Cal. Rptr. 3d 707 (2006) .......... 21

*Schnall v. Hertz Corp.*, 78 Cal. App. 4th 1144 (2000) .......... 18

*Swartz v. KPMG LLP*, 476 F.3d 756 (9th Cir. 2007) .......... 18, 21

*Stop Youth Addiction, Inc. v. Lucky Stores, Inc.*, 17 Cal. 4th 553 (1998), *superseded by statute on other grounds as stated in Californians for Disability Rights v. Mervyn's, LLC*, 39 Cal. 4th 223 (2006) .......... 16

*Temple v. Circuit City Stores, Inc.*, Nos. 06 CV 5303, 5304, 2007 WL 2790154 (E.D.N.Y. Sept. 25, 2007).......... 10

*Theatre Enters., Inc. v. Paramount Film Distrib. Corp.*, 346 U.S. 537 (1954).......... 7

*In re Travel Agent Comm'n Antitrust Litig.*, No. MDL Docket No. 1561,1:03 CV 30000, 2007 WL 3171675 (N.D. Ohio Oct. 29, 2007) .......... 11

*In re Vantive Corp. Sec. Litig.*, 283 F.3d 1079 (9th Cir. 2002) .......... 14

*Zimomra v. Alamo Rent-A-Car, Inc.*, 111 F.3d 1495 (10th Cir. 1997) .......... 13

## STATUTES

Sherman Act, 15 U.S.C. § 1 .......... 2

Chapter 790, 2006-6C Cal. Adv. Legis. Serv. (Deering) (Assembly Bill 2592).......... 4, 5, 6

California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200.......... 2, 16

Cal. Bus. & Prof. Code § 17204 .......... 4, 20

Cal. Bus. & Prof. Code § 17500 .......... 21

Cal. Civ. Code § 1936.01 .......... 1, 6, 9, 14, 19, 20

Cal. Gov't Code § 13995.65.......... *passim*

Cal. Gov't Code § 13995.90.......... 3, 16, 17

Cal. Gov't Code § 13995.92.......... 13

Defendants The Hertz Corporation, Dollar Thrifty Automotive Group Inc., Avis Budget Group Incorporated, Vanguard Car Rental USA Inc., Enterprise Rent-A-Car Company, Fox Rent-A-Car Incorporated, and Coast Leasing Corp. (collectively, the "Rental Car Defendants") respectfully submit this Memorandum of Points and Authorities in Support of their Motion to Dismiss.

## I. <u>PRELIMINARY STATEMENT</u>

Plaintiffs' Complaint is an attempt to re-raise in this Court a policy concern that Plaintiffs' counsel already raised – and lost – in the California Legislature. Plaintiffs seek to challenge the alleged effects of Assembly Bill 2592, enacted by the Legislature in 2006 to increase the budget of the California Travel and Tourism Commission ("CTTC"), which promotes California tourism.

Prior to the enactment of AB 2592, rental car companies were required to charge an Airport Concession Fee at certain airports, and to include this fee in the quoted base rate price of the rental. AB 2592 provides that if the rental car industry accepted a funding assessment that would enable the CTTC to meet a legislatively-established funding goal,[1] rental car companies would be allowed, effective on January 1, 2007, to (1) separately state the Airport Concession Fee in their billings; and (2) pass on both the Airport Concession Fee and the CTTC assessment to their customers. *See* Cal. Civ. Code § 1936.01(b)(4); Cal. Gov't Code § 13995.65(f).

Plaintiffs' counsel predicted in a letter to Assembly Member Mark Leno, that AB 2592 would result in precisely the situation that Plaintiffs' Complaint alleges has occurred:

> [W]hat the bill essentially allows is an immediate rake-off of 10% in additional monies for the industry. The [rental car] companies merely maintain their current price levels, but instead of including the airport concession fee in the initial charge, it is now added on at the end – on top of the charge that currently included it. The end result is going to be an industry-wide price hike of 10% – all of it new profit for the industry.

---

[1] Noting that California ranked 37th in the nation in overall state spending for the promotion of tourism, Assembly Member Mark Leno proposed AB 2592 to provide for a rental car industry referendum that would allow (1) the budget for the CTTC to be brought up to $25 million in fiscal year 2006-2007 and $50 million in fiscal year 2007-2008; and (2) $6.3 million to be returned to California's general fund. *See* The Rental Car Defendants' Request for Judicial Notice ("RJN"), filed herewith, Exhibit ("Ex.") A.

RJN, Exs. B & C. Thus, Plaintiffs' counsel acknowledged a fact that dooms Plaintiffs' Complaint: The alleged conduct of which Plaintiffs now complain resulted from the language of AB 2592 and independent business decisions made by each of the Rental Car Defendants in their individual economic self-interest. Having lost the legislative battle,[2] Plaintiffs now claim that the same alleged conduct violates (1) Section 1 of the Sherman Act, 15 U.S.C. §1; and (2) California's Unfair Competition Law (the "UCL"), Cal. Bus. & Prof. Code § 17200 *et seq*. Neither claim is viable.[3]

Plaintiffs' purported Sherman Act claim should be dismissed for two principal reasons:

*First*, Plaintiffs do not and cannot meet the pleading requirements for antitrust claims recently articulated by the Supreme Court in *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007). Plaintiffs make only conclusory allegations that the Rental Car Defendants somehow "agreed" to separately state and pass on to customers both the Airport Concession Fee and CTTC assessment, without making any commensurate reduction in their base rates. In attempting to support their allegation as to the purported "agreement," Plaintiffs allege only parallel conduct and an opportunity to conspire. As *Twombly* makes clear, however, mere allegations of parallel conduct and an opportunity to conspire are *not* sufficient to state an antitrust claim, because parallel pricing can be equally consistent with natural competitive behavior and independent economic decisions. To survive a motion to dismiss, an antitrust plaintiff must plead additional facts sufficient to make an inference of an actual antitrust conspiracy plausible. Plaintiffs do not allege any such facts. Nor could they, because their own counsel has argued that the conduct of which Plaintiffs complain would be the natural result of AB 2592. *See* RJN, Exs. B & C.

---

[2] Plaintiffs, however, may have yet another opportunity to re-fight the legislative battle, as State Senator Migden recently introduced Senate Bill 1057, which would address Plaintiffs' concerns. *See* RJN, Ex. D. Senator Migden's proposed bill, like Plaintiffs' counsel's letter, expressly recognizes that the conduct of which Plaintiffs complain – the passing on of the Airport Concession Fee and the CTTC assessment without reducing the underlying base rate for car rentals – is allowed under existing law.

[3] Notably, the Complaint focuses almost entirely on the operations of the CTTC and the Defendants' efforts to pass the legislation at issue. Allegations of conduct relevant to the Sherman Act and UCL claims are essentially limited to paragraph 35 of the Complaint.

*Second*, to the extent that Plaintiffs seek to support their Sherman Act claim with the Rental Car Defendants' support for AB 2592 or the adoption of the CTTC assessment, they are precluded from doing so. Defendants' lobbying activities are absolutely immune from antitrust liability under the *Noerr-Pennington* doctrine. *See Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 136 (1961) ("[T]he Sherman Act does not prohibit two or more persons from associating together in an attempt to persuade the legislature. . . to take particular action with respect to a law that would produce a restraint or a monopoly."). Any challenge to the adoption of the 2.5% CTTC assessment would also be barred because this action was specifically authorized by state law. *See Charley's Taxi Radio Dispatch Corp. v. SIDA of Haw. Inc.*, 810 F.2d 869, 876 (9th Cir. 1987). Finally, Plaintiffs also cannot challenge the Rental Car Defendants' adoption of the CTTC assessment because any alleged agreement to accept the assessment did not directly affect Plaintiffs. As a consequence, Plaintiffs have not suffered the direct antitrust injury required for standing. *See Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519 (1983).

Plaintiffs' purported UCL claim should be dismissed for four reasons:

*First*, Plaintiffs allege facts sufficient to show that the Rental Car Defendants complied with the California Tourism Marketing Act (the "CTMA"), which allows the Rental Car Defendants to separately state the CTTC assessment and to pass it on to customers. *See* Cal. Gov't Code § 13995.65(f). Since the Rental Car Defendants complied with the CTMA, they are immune from liability for "[a]ny rule of statutory or common law against monopolies or combinations in restraint of trade." *Id*. § 13995.90(c). Plaintiffs may not plead around such an absolute bar by attempting to plead their claims under the UCL. *See Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 182 (1999).

*Second*, Plaintiffs do not and cannot plead facts sufficient to show that the Rental Car Defendants violated the Sherman Act or any other law.

*Third*, no claim of UCL unfairness may lie, because the Legislature expressly allowed the conduct at issue and immunized conduct compliant with the CTMA. *See Cel-Tech*, 20 Cal. 4th at 182.

*Fourth*, Plaintiffs do not and cannot plead facts sufficient to show UCL fraud, or even that Plaintiffs have standing to pursue such a claim. *See* Cal. Bus. & Prof. Code § 17204; *Bardin v. DaimlerChrysler Corp.*, 136 Cal. App. 4th 1255, 1275 (2006); *Khoury v. Maly's of Cal., Inc.*, 14 Cal. App. 4th 612, 619 (1993).

## II. BACKGROUND

### A. The Legislature Enacted AB 2592 to Allow Additional Funding for the CTTC, While Also Returning Millions of Dollars to California's General Fund.

The CTTC is responsible for promoting California tourism. Plaintiffs allege that the purpose of the CTTC is to expand and develop tourism spending in California for the benefit of the tourism industry and the consumers of the state. Complaint for Injunction, Money Damages and Declaratory Relief ("Compl. ") ¶ 25. Under the CTMA, "the CTTC was to be funded by a combination of industry and general fund contributions." *Id.*

The Legislature enacted AB 2592 to provide an additional funding source for the CTTC, which also would allow millions of dollars to be returned to California's general fund. *See id.* ¶ 32. In particular, AB 2592 allowed for a CTTC assessment that, if accepted by the rental car industry through a referendum conducted by the CTTC, would be charged on vehicles rented at airports. *See id.* ¶¶ 1, 32; *see also* Chapter 790, 2006-6C Cal. Adv. Legis. Serv., at 536 (Deering).

The CTTC conducted the legislatively-mandated referendum and the rental car industry voted to accept the assessment. *See* Compl. ¶ 34. As a result, the CTTC's budget was increased, and the general fund was relieved of "almost all of its current and future contributions." *Id.* ¶ 32. Because of AB 2592, and the rental car industry's acceptance of the CTTC assessment, $6.3 million was to be returned to the general fund. *See id.*

**B. AB 2592 Allows the Rental Car Defendants to Separately State, and Pass On to Customers, The Airport Concession Fee and the CTTC Assessment.**

Prior to January 1, 2007, California law required car rental companies to quote passenger vehicle rental customers a base rate that excluded only taxes and, if applicable, a customer facility charge and a mileage charge. *See* Compl. ¶ 1. As enacted,[4] AB 2592 provides that, if the rental car industry accepted the CTTC assessment, then, as of January 1, 2007, "when a rental company provides a quote or imposes a charge, it may separately state the rental rate, taxes, customer facility charge, *airport concession fee, tourism commission assessment*, as defined, and mileage charge." 2006-6C Cal. Adv. Legis. Serv., at 536 (Deering) (emphasis added).

Because the rental car industry voted to accept the CTTC assessment, California law now allows rental car companies to separately state and pass through to customers two charges: (1) the previously existing Airport Concession Fee that is remitted to the relevant airport authority, and (2) the new CTTC assessment for the promotion of California tourism, which is defined by statute as "the charge collected by a rental company from a renter that has been established by the California Travel and Tourism Commission pursuant to [the referendum procedure specified in] Section 13995.65 of the Government Code." *Id.* (codified at Cal. Civil Code § 1936.01(a)(3)).

**C. Plaintiffs Allege That the Rental Car Defendants Lobbied in Favor of AB 2592, and Plaintiffs' Counsel Lobbied Against It.**

Plaintiffs allege that the Rental Car Defendants lobbied in favor of AB 2592, because it would allow the Rental Car Defendants to "unbundle" the Airport Concession Fee from the base rate and to state it as a separate charge. *See* Compl. ¶¶ 32, 36. Conversely, Plaintiffs' counsel lobbied against AB 2592 by arguing that it would result in the precise situation that Plaintiffs now allege has occurred. In his letter to Assembly Member Leno, Plaintiffs' counsel argued that the enactment of AB 2592 would result in the Rental Car Defendants separately stating and passing on

---

[4] The California Senate passed AB 2592 on August 29, 2006 (by a vote of 37-3), *see* Senate Ballot for A.B. 2592 (Cal. 2006), *at* http://www.leginfo.ca.gov/pub/05-06/bill/asm/ab_ 2551-2600/ab_2592_vote_20060829_0240PM_sen_floor.html, and the California Assembly on August 31, 2006 (by a vote of 68-8), Assembly Ballot for AB 2592 (Cal. 2006), *at* http://www.leginfo.ca.gov/pub/05-06/bill/asm/ab_2551-2600/ab_2592_vote_20060831_ 0243PM_asm_floor.html. Governor Schwarzenegger signed the bill into law on September 29, 2006. *See* 2006-6C Cal. Adv. Legis. Serv., at 535 (Deering).

to customers the Airport Concession Fee, without reducing their base rates. *See* RJN, Exs. B & C. Plaintiffs' counsel was clear: AB 2592 "allows" for this result and it was "going to" occur if AB 2592 were enacted. *Id.* Rather than arguing that this result would also require some antitrust conspiracy, Plaintiffs' counsel argued that it would be a natural consequence of the bill.

**D. Plaintiffs Allege that the Rental Car Defendants Complied with AB 2592 and Acted as Their Counsel Predicted.**

Plaintiffs' Complaint alleges that the Rental Car Defendants acted exactly as Plaintiffs counsel predicted they would.

First, Plaintiffs allege that the rental car industry accepted the CTTC assessment, which allowed operative provisions of AB 2592 to go into effect. *See* Compl. ¶ 34.

Second, Plaintiffs allege that the Rental Car Defendants separately stated the CTTC assessment and the Airport Concession Fee, and passed on these charges to customers, on the date AB 2592 allowed the Rental Car Defendants to do so. *See* Compl. ¶¶ 1, 32, 35; *see also* Cal. Civ. Code § 1936.01(b)(4); Cal. Gov't Code § 13995.65(f).

Third, Plaintiffs allege that the Rental Car Defendants did not make any commensurate reduction in their individual base rates when they unbundled the Airport Concession Fee, which Plaintiffs' counsel stated would be a natural consequence allowed by AB 2592. *See* Compl. ¶ 1; RJN, Exs. B & C.

**E. State Senator Migden Recently Introduced a Bill That, if Enacted, Would Address Plaintiffs' Concerns.**

On January 7, 2008, State Senator Carole Migden introduced Senate Bill 1057 ("SB 1057"). *See* RJN, Ex. D. SB 1057 acknowledges that existing law allows the alleged conduct of which Plaintiffs complain, and proposes to amend existing law to address Plaintiffs' concerns by prohibiting rental car companies from "unbundling" or separately stating the Airport Concession Fee and charging customers the CTTC assessment. *See id.* ("This bill would . . . require a rental company to only advertise, quote, and charge a rental rate that includes the entire amount, except taxes, that a renter must pay for a rental car, as specified, and would delete the authority of a rental

company to separately state those amounts. The bill would also prohibit a rental company from charging a renter a tourism commission assessment, as defined.").

## III. ARGUMENT

### A. This Court Should Dismiss Plaintiffs' Purported Sherman Act Claim.

#### 1. Plaintiffs Fail to Plead a Sherman Act Claim Because They Fail to Allege Facts Sufficient to Show the Requisite Agreement.

Where, as here, a plaintiff purports to allege a horizontal price-fixing conspiracy, the "crucial question" is whether the facts alleged demonstrate an "agreement" among competitors, as opposed to parallel conduct that "stemmed from independent decision." *Theatre Enters., Inc. v. Paramount Film Distrib. Corp.*, 346 U.S. 537, 540-41 (1954). Plaintiffs fail to meet this test.

##### a) *Twombly* Mandates the Dismissal of Plaintiffs' Claim.

In *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1966 (2007), the Supreme Court articulated the requirements for pleading an "agreement" under Section 1 of the Sherman Act, as Plaintiffs sought to do here. *Twombly* is directly on point and controlling. Since Plaintiffs fail to plead the facts required by *Twombly*, their Sherman Act claim should be dismissed.

In *Twombly*, users of local telephone services sued four major telecommunications companies (called the Incumbent Local Exchange Carriers ("ILECs")), alleging that they had conspired to refrain from entering each other's regions and to block entry by other new competitors into their own regions. The *Twombly* plaintiffs sought to support their claim by alleging parallel conduct – *i.e.*, that none of the ILECs were trying to compete in another's territory – and by making conclusory allegations that the ILECs "agreed" to so refrain. *See id*. at 1962-63.

Agreeing with the district court's dismissal of the *Twombly* complaint, the Supreme Court held that allegations of parallel conduct, coupled with a conclusory allegation of an agreement, fail to state a claim under Section 1 of the Sherman Act. *Id.* at 1966. Finding that the alleged parallel conduct was as consistent with each ILEC's independent business interests as it was with a conspiracy, the Supreme Court stated that "there is no reason to infer that the companies had agreed among themselves to do what was only natural anyway." *Id*. at 1971.

*Twombly* establishes that, to survive a motion to dismiss, a Section 1 claim must allege more than simply parallel conduct, which is what Plaintiffs allege here:

> Without more, parallel conduct does not suggest conspiracy, and a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality. Hence, when allegations of parallel conduct are set out in order to make a § 1 claim, they must be placed in a context that raises a suggestion of a preceding agreement, not merely parallel conduct that could just as well be independent action.

*Id*. at 1966.

*Twombly* also establishes that alleging an opportunity to conspire is not sufficient, even if such an opportunity is pled in conjunction with allegations of parallel conduct. *See id.* at 1971& n.12. Furthermore, conclusory allegations of an alleged agreement are not sufficient: A complaint must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. at 1964-65.

To survive a motion to dismiss, a complaint alleging a violation of Section 1 of the Sherman Act must allege sufficient additional *facts* to make an inference of conspiracy plausible. *Id.* at 1966. These additional factual allegations must suggest an agreement among the defendants, "as distinct from identical, independent action." *Id.* at 1961. Even parallel conduct "consciously undertaken" is not sufficiently suggestive of the "meeting of the minds" necessary for Section 1 liability. *Id.* at 1966. If the allegations of the complaint are "consistent with conspiracy, but just as much in line with a wide swath of rational and competitive business strategy unilaterally prompted by common perceptions of the market," the Section 1 claim must be dismissed. *Id.* at 1964.

Because antitrust litigation is unusually costly and burdensome, the Supreme Court instructed in *Twombly* that courts must scrutinize closely the adequacy of a complaint's allegations of an "agreement." *Id.* at 1964. Noting that "[i]t is no answer to say" that meritless claims can be weeded out in the discovery process, the Supreme Court cautioned that "it is only by taking care to require allegations that reach the level suggesting conspiracy that we can hope to avoid the potentially enormous expense of discovery" in meritless cases. *Id.* at 1267.

Here, Plaintiffs allege only parallel conduct and an opportunity to conspire. Plaintiffs do *not* allege any additional facts that would make an inference of an antitrust conspiracy plausible. Accordingly, the Court should dismiss Plaintiffs' purported Sherman Act claim.

**b) Plaintiffs Fail to Allege Facts Sufficient to Show That the Rental Car Defendants "Agreed" to Separately State Charges and Pass Them On to Customers.**

Plaintiffs make only conclusory allegations that the Rental Car Defendants "agreed" to separately state the Airport Concession Fee and the CTTC assessment and to pass these charges on to customers:

- Plaintiffs allege that Defendants "agreed among themselves to pass this [tourism commission] assessment on to consumers" (Compl. ¶ 35);
- Plaintiffs allege that Defendants "agree[d] to charge prices at certain levels and otherwise to fix, increase, maintain or stabilize components of the prices for airport car rentals in California affecting U.S. commerce, including the 2.5% (CTTC) surcharge and the 9% Airport Concession Fee" (*id.* ¶ 44(a));
- Plaintiffs allege that Defendants "communicat[ed] and agree[d] with each other regarding prices to be charged consumers for the CTTC surcharge and car rental rates" (*id.* ¶ 44(b)); and
- Plaintiffs allege that "Defendants implemented their unlawful scheme by (i) meeting and agreeing to charge a 2.5% CTTC surcharge to consumers and to refrain from competing on the amount of the surcharge . . . ." (*id.* ¶ 46).

Plaintiffs' formulaic and conclusory allegations of the alleged "agreement" fail to satisfy the pleading requirements articulated in *Twombly*. *See Twombly*, 127 S. Ct. at 1964-65.

Plaintiffs' allegations of parallel conduct – *i.e.* allegations that the Rental Car Defendants each separately stated the charges and passed them on to customers – also do not suffice. *See id.* at 1966. California law expressly allows the Rental Car Defendants to separately state and pass on to customers both the Airport Concession Fee and the CTTC assessment. *See* Cal. Civ. Code § 1936.01(b)(4); Cal. Gov't Code § 13995.65(f).[5] Indeed, Plaintiffs allege that the Rental Car Defendants lobbied the Legislature to obtain this result. *See* Compl. ¶¶ 32, 36.

---

[5] The Northern District of California recently dismissed a Section 1 claim where the alleged "price-fixing" was explainable by changes in banking regulations. In *In re Late Fee and Over-Limit Fee Litig.*, No. C 07-0634, 2007 WL 4106353 (N.D. Cal. Nov. 16, 2007), the plaintiffs claimed that "the defendants conspired to fix the terms and pricing of late fees, " based on the

*(cont'd)*

Since Plaintiffs allege that the Rental Car Defendants acted in ways expressly allowed by law, and since Plaintiffs allege that the Rental Car Defendants lobbied the Legislature to obtain these allowances, it is unquestionable that the Rental Car Defendants' alleged parallel conduct is "as much in line with a wide swath of rational and competitive business strategy unilaterally prompted by common perceptions of the market" as it is with some purported conspiracy. *Twombly*, 127 S. Ct. at 1964; *see also In re Elevator Antitrust Litig.*, 502 F.3d 47, 51 (2d Cir. 2007) (applying this quoted holding from *Twombly* to pricing and contract language); *Temple v. Circuit City Stores, Inc.*, Nos. 06 CV 5303, 5304, 2007 WL 2790154, at *7 (E.D.N.Y. Sept. 25, 2007) (decision by each defendant to pass on charges to customers "could be due to an independent economic decision by the defendants . . ."); *In re Graphics Processing Units Antitrust Litig.*, No. C 06-07417, 2007 WL 2875686, at *11 (N.D. Cal., Sept. 27, 2007) (dismissing Sherman Act claim where allegations of lockstep pricing "are consistent with conspiracy but they are equally consistent with lawful conduct").

Thus, Plaintiffs' conclusory allegations that the Rental Car Defendants "agreed" to separately state and pass on to customers the Airport Concession Fee and the CTTC assessment, which the Rental Car Defendants are expressly allowed to do under California law, fail to state a Sherman Act claim.

**c) Plaintiffs Fail to Allege Facts Sufficient to Show That the Rental Car Defendants "Agreed" to Refrain from Lowering the Base Rate**

Plaintiffs also make only conclusory allegations that the Rental Car Defendants "agreed" to refrain from lowering the base rate when "unbundling" the Airport Concession Fee:

- Plaintiffs allege that "the Rental Car Defendants combined in restraint of trade . . . to use the disaggregation of the Airport Concession Fee . . . as a mechanism to add 9% to 2006 extant base charges" (Compl. ¶ 35);

---

(cont'd from previous page)
alleged lockstep pricing of late fees and allegations that the defendants had "opportunities and incentives . . . to enter into agreements about pricing. " *Id.* at *5. In dismissing the complaint, the court noted that the complaint itself provided a non-conspiratorial explanation for the coincident timing of the fee increases: A new banking regulation that permitted increased late fees went into effect in 1995, the year when the alleged fee increases began. *See id.* at *9.

- Plaintiffs allege that Defendants "agree[d] to charge prices at certain levels and otherwise to fix, increase, maintain or stabilize components of the prices for airport car rentals. . . ." (*id.* ¶ 44(a));

- Plaintiffs allege that Defendants "communicat[ed] and agree[d] with each other regarding prices to be charged consumers for the CTTC surcharge and car rental rates" (*id.* ¶ 44(b)); and

- Plaintiffs allege that "Defendants implemented their unlawful scheme by . . . meeting and agreeing to fix, stabilize and/or maintain prices at approximately 9% higher than the 2006 rates . . . ." (*id.* ¶ 46).

Plaintiffs allege *no* facts about the alleged "agreement." Like the *dismissed* complaints in *Twombly* and in *In re Late Fee & Over-Limit Fee Litig.*, Plaintiffs' Complaint provides "several conclusory allegations that the defendants agreed . . . , but it provides no details as to when, where, or by whom this alleged agreement was reached." *In re Late Fee & Over-Limit Fee Litig.*, 2007 WL 4106353 at *7; *see Twombly*, 127 S. Ct. at 1971 n.10. Indeed, the only specific meetings among Defendants that are alleged in the Complaint took place *after* January 1, 2007, the date on which the alleged parallel conduct began. *See* Compl. ¶¶ 51-68 (referring to various CTTC meetings held between August 2007 and October 2007).[6]

Furthermore, Plaintiffs' allegations of parallel conduct are just as explainable in terms of the language of AB 2592 and each Rental Car Defendant's own independent business decisions as they are by some alleged conspiracy. Plaintiffs' counsel has even acknowledged this point:

---

[6] Plaintiffs also cannot support their claim that there was such an "agreement" by alleging that the Rental Car Defendants had an opportunity to conspire, such as when they allegedly lobbied the Legislature or at the time of the CTTC referendum. *Twombly* and its progeny establish that allegations of a mere opportunity to conspire are not sufficient. *Twombly*, 127 S. Ct. at 1971 & n.12; *In re Late Fee & Over-Limit Fee Litig.*, 2007 WL 4106353, at *8; *In re Travel Agent Comm'n Antitrust Litig.*, No. MDL Docket No. 1561, 1:03 CV 30000, 2007 WL 3171675, at *9 (N.D. Ohio Oct. 29, 2007) (allegations in complaint detailing private meetings, industry events, trade shows, business ventures, and golf outings failed to satisfy *Twombly* pleading standards because "[p]roof that Defendants had an opportunity to conspire does not satisfy Plaintiff's burden of proving a price-fixing agreement"); *In re Graphics Processing Units Antitrust Litig.*, 2007 WL 2875686, at *11 ("Attendance at industry trade shows and events is presumed legitimate and is not a basis from which to infer a conspiracy, without more."); *see also In re Citric Acid Litig.*, 191 F.3d 1090, 1098 (9th Cir. 1999) (finding evidence of participation in trade association insufficient evidence of conspiracy at summary judgment stage).

> [W]hat the bill essentially allows is an immediate rake-off of 10% in additional monies for the industry. The [rental car] companies merely maintain their current price levels, but instead of including the airport concession fee in the initial charge, it is now added on at the end – on top of the charge that currently included it. The end result is going to be an industry-wide price hike of 10% – all of it new profit for the industry.

RJN, Exs. B & C. Thus, Plaintiffs' counsel expressly recognized that the alleged conduct of which Plaintiffs now complain is explainable without any antitrust conspiracy. Indeed, Plaintiffs' counsel predicted that this alleged conduct would be a natural consequence of AB 2592.

Plaintiffs fail to allege any facts suggesting an agreement among Defendants, "as distinct from identical, independent action." *Twombly*, 127 S. Ct. at 1961. Their purported Sherman Act claim should therefore be dismissed.

**2. No Antitrust Liability Can Attach to Lobbying Efforts or the Acceptance of the CTTC Assessment.**

To the extent that Plaintiffs seek to support their Section 1 claim with the activities of the Rental Car Defendants in supporting AB 2592 or in adopting the CTTC assessment, they are precluded from doing so.

**a) Plaintiffs' Allegations as to the Rental Car Defendants' Lobbying Activities Provide No Basis for Antitrust Liability.**

While Plaintiffs' allegations arguably seek to implicate the Rental Car Defendants' lobbying activities in connection with AB 2592, *see* Compl. ¶¶ 32, 36, petitioning the government is a fundamental First Amendment right and even concerted lobbying activity is immune from antitrust liability. *Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 136 (1961). As the Supreme Court expressly stated in *Noerr*, it is "clear that the Sherman Act does not prohibit two or more persons from associating together in an attempt to persuade the legislature or the executive to take particular action with respect to a law that would produce a restraint or a monopoly." *Id.*; *see also Ernest W. Hahn, Inc. v. Codding*, 615 F.2d 830, 834 n.1 (9th Cir. 1980) ("The Noerr-Pennington doctrine establishes the general rule that lobbying or other efforts by businessmen to obtain legislative, executive, or judicial action will not violate the antitrust laws, even though the purpose of their efforts may be to eliminate competition or otherwise restrain trade.").

In a case that is directly on point, the Tenth Circuit held that the *Noerr-Pennington* doctrine bars antitrust claims that are based on allegations that rental car companies lobbied for and received an ordinance requiring airport usage fees. *See Zimomra v. Alamo Rent-A-Car, Inc.*, 111 F.3d 1495 (10th Cir. 1997); *see also In re Airport Car Rental Antitrust Litig.*, 693 F.2d 84 (9th Cir. 1982) (holding that the *Noerr-Pennington* doctrine bars antitrust claims based on allegations that rental car companies lobbied for airport lease restrictions). Similarly, Sherman Act liability cannot result from the Rental Car Defendants' alleged lobbying support for AB 2592.

**b) Plaintiffs Cannot Base an Antitrust Claim on the Rental Car Defendants' Acceptance of the CTTC Assessment Because Such Conduct Was Authorized by State Law.**

Action authorized by state law is immune from antitrust liability. *See, e.g.*, *Charley's Taxi Radio Dispatch Corp. v. SIDA of Haw. Inc.*, 810 F.2d 869, 876 (9th Cir. 1987) (private taxi owner-operators have antitrust immunity in connection with exclusive dealing contract authorized by state law). Thus, the legislatively-sanctioned decision of the CTTC's rental car members to impose a 2.5% self-assessment to fund the CTTC is immune from antitrust attack because the Legislature specifically authorized such conduct. Section 13995.92 of the California Government Code specifically required the CTTC to "submit a referendum to the passenger rental car industry as soon as possible, but not later than March 31, 2007." *See* Compl. ¶ 32. In conducting this referendum, the law commanded the CTTC to set the proposed assessment rate "at a level determined by the [CTTC] that will generate funding that will be sufficient, when aggregated together with other funding for the [CTTC], . . . for a spending plan for the 2006-07 fiscal year of twenty-five million dollars . . . and for the 2007-08 fiscal year of fifty million dollars." Cal. Gov't Code § 13995.92; *see also* Compl. ¶ 32 (describing statute). Accordingly, any attempt by Plaintiffs to resuscitate their Sherman Act claim through reliance on the alleged actions of the Rental Car Defendants in participating in the referendum and agreeing on the 2.5% CTTC assessment must fail.

**c) Plaintiffs Cannot Base an Antitrust Claim on the Adoption of the CTTC Assessment Because Such Conduct Did Not Cause Direct Injury to Plaintiffs.**

Plaintiffs also cannot challenge the adoption of the CTTC assessment because they do not and cannot allege that they were directly affected by that alleged agreement and, therefore, they have not suffered the direct antitrust injury required under the Sherman Act. *See Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519 (1983). The harm about which Plaintiffs complain is not the adoption of the travel commission assessment by the CTTC, but the alleged pass-through of the assessment to customers. Indeed, Plaintiffs concede that the CTTC referendum, which resulted in the approval of the CTTC assessment, was *not* an agreement to pass the assessment on to renters, and would *not* injure consumers in the absence of a further alleged agreement among the Rental Car Defendants to pass the fees on to renters. *See* Compl. ¶ 1. Because the Complaint does not – and indeed cannot – allege that the industry referendum that approved the CTTC assessment was an agreement that injured *them,* Plaintiffs lack the direct antitrust injury necessary to challenge that approval.

**3. This Court Should Dismiss Plaintiffs' Purported Sherman Act Claim With Prejudice, Because Any Amendment Would Be Futile.**

"Leave to amend need not be granted when an amendment would be futile." *In re Vantive Corp. Sec. Litig.*, 283 F.3d 1079, 1097 (9th Cir. 2002). Plaintiffs cannot amend their Complaint to meet the pleading requirements articulated in *Twombly* because the conduct of which they complain is "just as much in line with a wide swath of rational and competitive business strategy unilaterally prompted by common perceptions of the market" as it is with some purported "conspiracy." *Twombly*, 127 S. Ct. at 1964. Since any amendment would be futile, Plaintiffs' Sherman Act claim should be dismissed with prejudice.

*First,* California law expressly allows the Rental Car Defendants to separately state and pass on to customers both the Airport Concession Fee and the CTTC assessment. *See* Cal. Civ. Code § 1936.01(b)(4); Cal. Gov't Code § 13995.65(f). Since Plaintiffs allege that the Rental Car Defendants lobbied the Legislature to obtain this result, *see* Compl. ¶¶ 32, 36, Plaintiffs must

concede that it is economically rational for each of the Rental Car Defendants to do what the law allows, without any conspiratorial agreement to do so.

*Second*, Plaintiffs' own counsel stated to the Legislature that AB 2592 would result in each of the Rental Car Defendants' "unbundling" the Airport Concession Fee and not reducing their individual base rates, arguing that such conduct would be the inevitable result of the bill. *See* RJN, Exs. B & C. As a consequence, Plaintiffs must concede that the Rental Car Defendants' conduct is as consistent with the explanation provided by their own counsel as it is with some alleged "conspiracy." Thus, any amendment would be futile.

**B. This Court Should Dismiss Plaintiffs' Purported California Unfair Competition Law Claim.**

Plaintiffs do not and cannot state a claim under California's Unfair Competition Law (the "UCL"). First, Plaintiffs' purported UCL claim is barred by an express grant of immunity stated in the California Government Code. Second, Plaintiffs do not and cannot allege facts sufficient to satisfy any of the UCL's prongs.

**1. Plaintiffs' Purported UCL Claim Is Barred by the Government Code.**

Where a defendant complies with the CTMA, which was amended by AB 2592, that defendant is immunized from *any* liability that might otherwise be based on application of the antitrust laws (which likely explains why Plaintiffs did not attempt to state a claim under California's antitrust statute, the Cartwright Act). Plaintiffs cannot evade this immunity by attempting to recast their purported claim as one under the UCL.

Section 13995.90 of the California Government Code expressly provides:

> In any civil or criminal action or proceeding for violation of any of the following, proof that the act that is complained of was done in compliance with the provisions of [the CTMA] is a *complete defense* to the action or proceeding:
>
> (a) The Cartwright Act, Chapter 2 . . . .
>
> (b) The Unfair Practices Act, Chapter 4 . . . .
>
> (c) *Any rule of statutory or common law against monopolies or combinations in restraint of trade.*

Cal. Gov't Code § 13995.90 (emphases added). Here, Plaintiffs do not and cannot allege that the Rental Car Defendants violated the CTMA. Indeed, Plaintiffs' Complaint is premised entirely on the theory that the Rental Car Defendants lobbied the Legislature and then acted *exactly as the Legislature allowed* after the Legislature amended the CTMA with AB 2592. *See* Compl. ¶¶ 32-36. For example, Plaintiffs allege that the Rental Car Defendants "pass[ed] on" the CTTC assessment instead of "absorb[ing]" the cost of this assessment themselves. *See id.* ¶ 35. However, the CTMA expressly provides that "[n]otwithstanding any other provision of law, *an assessed business may pass on some or all of the assessment to customers*." Cal. Gov't Code § 13995.65(f) (emphasis added). Since Plaintiffs allege facts sufficient to show that the Rental Car Defendants' conduct complies with the CTMA, no antitrust claim may lie. *See* Cal. Gov't Code § 13995.90.

Plaintiffs may not circumvent the immunity provided by Section 13995.90 by attempting to restate their purported antitrust claim as a claim under the UCL. The California Supreme Court has made it clear that "[a] plaintiff may . . . 'not 'plead around' an 'absolute bar to relief' simply 'by recasting the cause of action as one for unfair competition.' " *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 182 (1999) (citation omitted); *see also Stop Youth Addiction, Inc. v. Lucky Stores, Inc.*, 17 Cal. 4th 553, 566 (1998) ("[T]he UCL cannot be used to state a cause of action the gist of which is absolutely barred under some other principle of law."), *superseded by statute on other grounds as stated in Californians for Disability Rights v. Mervyn's, LLC*, 39 Cal. 4th 223, 227 (2006). Since any purported antitrust claim is barred entirely by Section 13995.90, Plaintiffs' purported UCL claim is barred as well.

**2. Plaintiffs Do Not and Cannot Allege Facts Sufficient to Establish a UCL Violation.**

This Court also may dismiss Plaintiffs' UCL claim on the independent and alternative ground that Plaintiffs do not and cannot allege that they have a right to relief under any prong of Section 17200, which defines "unfair competition" to mean "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by" California's false advertising law. Cal. Bus. & Prof. Code § 17200.

**a) Plaintiffs Do Not and Cannot Allege Facts Sufficient to Show that Defendants Acted Unlawfully.**

**(1) Plaintiffs Do Not and Cannot State a Sherman Act Claim.**

Section 1 of the Sherman Act is the only law that Plaintiffs expressly allege that the Rental Car Defendants violated. Since Plaintiffs' Sherman Act claim fails for the reasons discussed above, Plaintiffs' claim of UCL unlawfulness fails as well. *See, e.g.*, *New.Net, Inc. v. Lavasoft*, 356 F. Supp. 2d 1090, 1111-12 (C.D. Cal. 2004); *Chavez v. Whirlpool Corp.*, 93 Cal. App. 4th 363, 374 (2001). Even if Plaintiffs could state a Sherman Act claim, which they cannot, the Legislature has immunized alleged violations of the antitrust laws where, as here, a Defendant complies with the CTMA. *See* Cal. Gov't Code § 13995.90. Since the California Legislature has barred liability where there is compliance with the CTMA, Plaintiffs may not use the Sherman Act as a basis for seeking liability under California law, including the UCL.

**(2) Plaintiffs Do Not and Cannot Allege Facts Sufficient to Show that the Rental Car Defendants Violated Some Unspecified California Law.**

Plaintiffs cannot state a claim of UCL unlawfulness based on their vague and conclusory allegations, made on information and belief, that "[t]he CTTC fee monies collected exceed the amounts contributed to the CTTC budget by the Rental Car Defendants, in violation of California law." Compl. ¶ 49.B.

A plaintiff alleging a UCL violation "must state with reasonable particularity the facts supporting the statutory elements of the violation." *Khoury v. Maly's of Cal., Inc.*, 14 Cal. App. 4th 612, 619 (1993); *see also Multimedia Patent Trust v. Microsoft Corp.*, No. 07-CV-0747, 2007 WL 2696675, at *12 (S.D. Cal. Sept. 10, 2007) (applying this standard). Here, as in *Khoury*, Plaintiffs' Complaint "identifies no particular section of the statutory scheme which was violated and fails to describe with any reasonable particularity the facts supporting violation." *Khoury*, 14 Cal. App. 4th at 619. Indeed, Plaintiffs fail to even identify *which* statutory scheme was allegedly violated, much less how the Rental Car Defendants purportedly violated that unidentified statutory scheme. Plaintiffs therefore fail to state a claim.

Furthermore, Plaintiffs cannot state a claim, because the Rental Car Defendants' own contracts demonstrate that they do *not* collect as CTTC assessments more than the amounts that they pass on to the CTTC.[7] Plaintiffs allege that the CTTC assessment is 2.5% of the rental price, *see* Compl. ¶ 1, and the Rental Car Defendants' contracts show that the Rental Car Defendants charge the CTTC assessment at exactly this amount:

- Plaintiff Shames' contract with Alamo states and assesses the "CA COMMISSION ASSESSMENT @ 2.5%". *See* RJN, Ex. E.
- Plaintiff Gramkow's contract with Enterprise Rent-A-Car Company of San Francisco ("ERAC-SF") states and assesses the "TOURISM FEE [at] 2.5%". *See* RJN, Ex. F.

**3. Plaintiffs Do Not and Cannot Allege Facts Sufficient to Show that the Rental Car Defendants Acted Unfairly.**

Plaintiffs cannot avoid their inability to plead a claim of UCL unlawfulness by attempting to allege that the Rental Car Defendants' conduct is somehow unfair. As the California Supreme Court has stated, "[s]pecific legislation may limit the judiciary's power to declare conduct unfair. *If the Legislature has permitted certain conduct or considered a situation and concluded no action should lie, courts may not override that determination*. When specific legislation provides a 'safe harbor,' plaintiffs may not use the general unfair competition law to assault that harbor." *Cel-Tech*, 20 Cal. 4th at 182 (emphasis added); *see also Schnall v. Hertz Corp.*, 78 Cal. App. 4th 1144, 1160-61 (2000) (Legislature created safe harbor in Cal. Civ. Code § 1936(m)(2)).

As shown above, the Legislature has immunized from liability *any* claim based on antitrust principles where, as here, a Defendant complied with the CTMA. Cal. Gov't Code § 13995.65(f).

---

[7] The Court may consider the contracts at issue in ruling on a motion to dismiss. *See Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007) ("[I]n order to '[p]revent[ ] plaintiffs from surviving a Rule 12(b)(6) motion by deliberately omitting . . . documents upon which their claims are based,' a court may consider a writing referenced in a complaint but not explicitly incorporated therein if the complaint relies on the document and its authenticity is unquestioned.") (citation omitted); *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998) (holding that, on a motion to dismiss, the court may consider documents not attached to the complaint yet crucial to the claim), *superseded by statute on other grounds as stated in Abrego Abrego v. Dow Chem. Co.*, 443 F.3d 676, 681-82 (9th Cir. 2006).

The Legislature also has expressly provided numerous safe harbors for the conduct at issue. First, the Legislature expressly allowed the Rental Car Defendants to pass on to customers both the Airport Concession Fee and the CTTC assessment. *See* Cal. Civ. Code § 1936.01(a)(1) (defining "'Airport Concession Fee'" as "a charge collected by a rental car company from a renter . . . ."); *id.* § 1936.01(b)(4) (allowing rental companies to charge customers the Airport Concession Fee and the CTTC assessment); Cal. Gov't Code § 13995.65(f) ("[A]n assessed business may pass on some or all of the assessment to customers."). Second, the Legislature expressly allowed the Rental Car Defendants to "unbundle" or state each of these charges separately from their base rates. *See* Cal. Civ. Code § 1936.01(b)(2) ("When providing a quote, or imposing charges for a rental, the rental company may separately state the rental rate, taxes, . . . airport concession fee, if any, [and] tourism commission assessment, if any . . . ."); Cal. Gov't Code § 13995.65(f) ("An assessed business that is passing on the assessment may . . . separately identify or itemize the assessment on any document provided to a customer.").

Again, Plaintiffs' Complaint is based on the theory that the Rental Car Defendants successfully lobbied the Legislature and then acted exactly as the Legislature allowed. *See* Compl. ¶¶ 32-36.[8] Since the Legislature has provided the Rental Car Defendants with a grant of immunity and express safe harbors – as made clear by Plaintiffs' own allegations – Plaintiffs cannot state a claim of UCL unfairness. *Cel-Tech*, 20 Cal. 4th at 182.[9]

---

8 Under the *Noerr-Pennington* doctrine, Plaintiffs cannot seek to impose UCL liability based on the Rental Car Defendants' alleged lobbying activities. *See Ludwig v. Superior Court*, 37 Cal. App. 4th 8, 21 n.17 (1995) (*Noerr-Pennington* "applies to virtually any tort, including unfair competition . . . . [T]he principle of constitutional law that bars litigation arising from injuries received as a consequence of First Amendment petitioning activity [should be applied], regardless of the underlying cause of action asserted by the plaintiffs. [T]o hold otherwise would effectively chill the defendants' First Amendment rights." (alterations in original) (citations and internal quotation marks omitted)).

9 Plaintiffs' claim of UCL unfairness also fails on the independent and alternative ground that Plaintiffs fail to "tether" their claim to some legislatively expressed policy and to allege facts sufficient to show that the benefits of the Rental Car Defendants' conduct do not outweigh any alleged harm to Plaintiffs. *See, e.g.*, *Bardin v. DaimlerChrysler Corp.*, 136 Cal. App. 4th 1255, 1260-61, 1264-74 (2006) (holding that claim of UCL unfairness should be dismissed under any test for "unfairness" that may apply).

**4. Plaintiffs Do Not and Cannot Allege Facts Sufficient to Show UCL Fraud.**

It is unclear from Plaintiffs' Complaint whether they are attempting to allege a fraud-based UCL claim. *See* Compl. ¶ 49.A & B (alleging that Defendants' actions were "unfair and/or unlawful" and "illegal and/or misleading"). To the extent Plaintiffs are attempting to state such a claim, that attempt fails.

Plaintiffs' only allegation that might implicate the UCL's fraud prong is Plaintiffs' vague and conclusory allegation that "[D]efendants misrepresent to consumers that the 2.5% surcharge on car rentals is owed by consumers to the CTTC" when "the only assessment which is owed is owed by the defendants, not consumers." Compl. ¶ 49.B. This allegation ignores that California law expressly defines the "'[t]ourism commission assessment'" as "the charge collected by a rental company from a renter that has been established by the California Travel and Tourism Commission pursuant to [the referendum procedure specified in] Section 13995.65 of the Government Code." Cal. Civil Code § 1936.01(a)(3).

This allegation also fails to state any claim. With the passage of Proposition 64, a consumer may bring a UCL claim only if the consumer "has suffered injury in fact and has lost money or property as a result of such unfair competition." Cal. Bus. & Prof. Code § 17204; *see also Multimedia Patent Trust v. Microsoft Corp.*, No. 07-CV-0747, 2007 WL 2696675, *12 (S.D. Cal. Sept. 10, 2007) ("To the extent that injunctive relief is sought, plaintiffs must also allege actual injury"); *Buckland v. Threshold Enters., Ltd.*, 155 Cal. App. 4th 798, 814 (2007) (stating that "[i]n approving Proposition 64, the voters declared their intent 'to prohibit private attorneys from filing lawsuits for unfair competition where they have no clients who has been injured in fact *under the standing requirements of the United States Constitution*.'" (citing Proposition 64)). Since Plaintiffs do not allege facts sufficient to show that they suffered injury in fact or lost money or property because of the alleged misrepresentations, Plaintiffs fail to state a claim of UCL fraud.[10]

---

[10] In *Pfizer, Inc. v. Superior Court*, 141 Cal. App. 4th 290 (2006), the California Court of Appeal held that the requirement that a plaintiff suffered "injury in fact" means that the plaintiff must have acted in reliance on the allegedly false or misleading representations or advertisements

*(cont'd)*

Plaintiffs also cannot state such a claim, because no misrepresentations were made to them. Plaintiff Shames' contract with Alamo simply states "CA COMMISSION ASSESSMENT @ 2.5%". *See* RJN, Ex. E. Plaintiff Gramkow's contract with ERAC-SF similarly states "TOURISM FEE 2.5%". *See* RJN, Ex. F.[11] Neither contract makes any misrepresentation as to who owes the CTTC assessment. Even if such a misrepresentation were made, Plaintiffs fail to allege that they lost money because of it – *i.e.*, that they would not have consummated the transaction without that alleged "misrepresentation."

Furthermore, Plaintiffs Shames and Gramkow do not and cannot allege that they even rented from Defendants Hertz, Avis Budget, Dollar Thrifty, Fox, or Coast at a California situs airport after January 1, 2007. *See Buckland*, 155 Cal. App. 4th at 812 (noting that the purpose of Proposition 64 was "to prevent abusive UCL actions by attorneys whose clients had not been 'injured in fact' or used the defendant's product or service"). Plaintiffs therefore cannot show that they lost money as a result of any representations made by these Rental Car Defendants, or that they have standing to pursue claims of UCL fraud against them. Insofar as Plaintiffs purport to assert a claim of UCL fraud, that claim should be dismissed.[12]

## IV. <u>CONCLUSION</u>

Plaintiffs' Complaint fails to state a viable Sherman Act or UCL claim. Plaintiffs' conclusory allegations of parallel conduct and an opportunity to conspire fall far short of the factual predicate required by the Supreme Court's holding in *Twombly* for a Sherman Act claim. This fatal deficiency cannot be remedied by reliance on the Rental Car Defendants' alleged lobbying efforts or their legislatively-authorized agreement to the CTTC assessment, which did not

---

(cont'd from previous page)
and as a result suffered injury. *Id.* at 307. The California Supreme Court granted a petition for review. *Pfizer, Inc. v. Superior Court*, 51 Cal. Rptr. 3d 707 (2006).

[11] Again, this Court may consider Plaintiffs' contracts with the Rental Car Defendants in ruling on this Motion to Dismiss. *See Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007).

[12] Plaintiffs do not and cannot allege any additional facts that implicate California's false advertising laws. Thus, this Court should dismiss not only Plaintiffs' UCL claim but also any claim that Plaintiffs purport to bring based on California Business & Professions Code Section 17500.

cause Plaintiffs direct injury. Plaintiffs' UCL claim likewise fails. That Plaintiffs' counsel disagrees that AB 2592 constitutes good public policy cannot change the fact that it is the law, that Defendants' alleged conduct complies with the law, and that the Legislature granted immunity to that alleged conduct. Plaintiffs and their counsel can seek their second bite at this policy apple through the bill recently introduced by Senator Migden, but they failed to plead claims enabling them to pursue their policy goals in this Court. Plaintiffs' Complaint fails to state a claim, and it should be dismissed with prejudice.

Dated: January 25, 2008

Respectfully submitted,

FOLGER LEVIN & KAHN LLP

By: [signature]
Gregory D. Call (Cal. Bar No. 120484)
Beatrice B. Nguyen (Cal. Bar No. 172961)

Embarcadero Center West
275 Battery Street, 23rd Floor
San Francisco, California 94111
Tel.: (415) 986-2800

Jennifer S. Romano (Cal. Bar No. 195953)
1900 Avenue of the Stars
28th Floor
Los Angeles, California 90067
Tel.: (310) 556-3700

Counsel for Defendants
ENTERPRISE RENT-A-CAR COMPANY and VANGUARD CAR RENTAL USA, INC.

SKADDEN ARPS SLATE MEAGHER & FLOM, LLP

By: ______________________
Michael L. Weiner (*Pro hac vice)*

Four Times Square
New York, New York 10036
Tel.: (212) 735-2632

Douglas B. Adler (Cal. Bar No. 130749)

300 South Grand Avenue
Suite 3400
Los Angeles, California 90071
Tel.: (213) 687-5120

Sara L. Bensley (*Pro hac vice*)

1440 New York Avenue, N.W.
Washington, D.C. 20005-2111
Tel.: (202) 371-7000

Counsel for Defendant
AVIS BUDGET Group, Inc.

cause Plaintiffs direct injury. Plaintiffs' UCL claim likewise fails. That Plaintiffs' counsel disagrees that AB 2592 constitutes good public policy cannot change the fact that it is the law, that Defendants' alleged conduct complies with the law, and that the Legislature granted immunity to that alleged conduct. Plaintiffs and their counsel can seek their second bite at this policy apple through the bill recently introduced by Senator Migden, but they failed to plead claims enabling them to pursue their policy goals in this Court. Plaintiffs' Complaint fails to state a claim, and it should be dismissed with prejudice.

Dated: January 25, 2008

FOLGER LEVIN & KAHN LLP

By: ______________________________
Gregory D. Call (Cal. Bar No. 120484)
Beatrice B. Nguyen (Cal. Bar No. 172961)

Embarcadero Center West
275 Battery Street, 23rd Floor
San Francisco, California 94111
Tel.: (415) 986-2800

Jennifer S. Romano (Cal. Bar No. 195953)
1900 Avenue of the Stars
28th Floor
Los Angeles, California 90067
Tel.: (310) 556-3700

Counsel for Defendants
ENTERPRISE RENT-A-CAR COMPANY and VANGUARD CAR RENTAL USA, INC.

Respectfully submitted,

SKADDEN ARPS SLATE MEAGHER & FLOM, LLP

By: /s/ Michael L. Weiner
Michael L. Weiner (*Pro hac vice)*

Four Times Square
New York, New York 10036
Tel.: (212) 735-2632

Douglas B. Adler (Cal. Bar No. 130749)

300 South Grand Avenue
Suite 3400
Los Angeles, California 90071
Tel.: (213) 687-5120

Sara L. Bensley (*Pro hac vice*)

1440 New York Avenue, N.W.
Washington, D.C. 20005-2111
Tel.: (202) 371-7000

Counsel for Defendant
AVIS BUDGET Group, Inc.

JONES DAY

By: [signature]
Jeffrey A. LeVee (Cal. Bar No. 125863)

555 South Flower Street
Fiftieth Floor
Los Angeles, California 90071
Tel.: (213) 489-3939

Counsel for Defendant
DOLLAR THRIFTY AUTOMOTIVE GROUP, INC.

LONG, WILLIAMSON AND DELIS

By: ______________________
T. Patrick Long (Cal. Bar No. 182394)

400 N. Tustin Ave.
Suite 370
Santa Ana, California 92705
Tel: (714) 668-1400

Counsel for Defendant
COAST LEASING CORP. dba ADVANTAGE RENT A CAR, erroneously sued and served herein as Coast Leasing Corp., a Texas corporation

O'MELVENY & MYERS LLP

By: ______________________
Richard G. Parker (*Pro hac vice*)

1625 Eye Street, NW
Washington, D.C. 20006
Tel.: (202) 383-5300

Michael F. Tubach (Cal. Bar No. 145955)
Thomas P. Brown (Cal. Bar No. 182916)

Embarcadero Center West
275 Battery Street
Suite 2600
San Francisco, California 94111
Tel.: (415) 984-8700

Gerald A. Stein (*Pro hac vice*)

Times Square Tower
Seven Times Square
New York, New York 10036
Tel.: (212) 326-2000

Counsel for Defendant
HERTZ CORPORATION

WERTZ McDADE WALLACE MOOT & BROWER

By: ______________________
John H. Stephens (Cal. Bar No. 82971)

945 Fourth Avenue
San Diego, California 92101
Tel: (619) 233-1888

Counsel for Defendant
FOX RENT A CAR D/B/A PAYLESS RENT-A-CAR

JONES DAY

By: ______________________
Jeffrey A. LeVee (Cal. Bar No. 125863)

555 South Flower Street
Fiftieth Floor
Los Angeles, California 90071
Tel.: (213) 489-3939

Counsel for Defendant
DOLLAR THRIFTY AUTOMOTIVE GROUP, INC.

LONG, WILLIAMSON AND DELIS

By: ______________________
T. Patrick Long (Cal. Bar No. 182394)
Warren B. Campbell (Cal. Bar No.7037

400 N. Tustin Ave.
Suite 370
Santa Ana, California 92705
Tel: (714) 668-1400

Counsel for Defendant
COAST LEASING CORP. dba ADVANTAGE RENT A CAR, erroneously sued and served herein as Coast Leasing Corp., a Texas corporation

O'MELVENY & MYERS LLP

By: ______________________
Richard G. Parker (*Pro hac vice*)

1625 Eye Street, NW
Washington, D.C. 20006
Tel.: (202) 383-5300

Michael F. Tubach (Cal. Bar No. 145955)
Thomas P. Brown (Cal. Bar No. 182916)

Embarcadero Center West
275 Battery Street
Suite 2600
San Francisco, California 94111
Tel.: (415) 984-8700

Gerald A. Stein (*Pro hac vice*)

Times Square Tower
Seven Times Square
New York, New York 10036
Tel.: (212) 326-2000

Counsel for Defendant
HERTZ CORPORATION

WERTZ McDADE WALLACE MOOT & BROWER

By: ______________________
John H. Stephens (Cal. Bar No. 82971)

945 Fourth Avenue
San Diego, California 92101
Tel: (619) 233-1888

Counsel for Defendant
FOX RENT A CAR D/B/A PAYLESS RENT-A-CAR

JONES DAY

By: ______________________
Jeffrey A. LeVee (Cal. Bar No. 125863)

555 South Flower Street
Fiftieth Floor
Los Angeles, California 90071
Tel.: (213) 489-3939

Counsel for Defendant
DOLLAR THRIFTY AUTOMOTIVE GROUP, INC.

O'MELVENY & MYERS LLP

By: ______________________
Richard G. Parker (Cal. Bar No. #62356)

1625 Eye Street, NW
Washington, D.C. 20006
Tel.: (202) 383-5300

Michael F. Tubach (Cal. Bar No. 145955)
Thomas P. Brown (Cal. Bar No. 182916)

Embarcadero Center West
275 Battery Street
Suite 2600
San Francisco, California 94111
Tel.: (415) 984-8700

Gerald A. Stein (*Pro hac vice*)

Times Square Tower
Seven Times Square
New York, New York 10036
Tel.: (212) 326-2000

Counsel for Defendant
HERTZ CORPORATION

LONG, WILLIAMSON AND DELIS

By: ______________________
T. Patrick Long (Cal. Bar No. 182394)

400 N. Tustin Ave.
Suite 370
Santa Ana, California 92705
Tel: (714) 668-1400

Counsel for Defendant
COAST LEASING CORP. dba ADVANTAGE RENT A CAR, erroneously sued and served herein as Coast Leasing Corp., a Texas corporation

WERTZ McDADE WALLACE MOOT & BROWER

By: ______________________
John H. Stephens (Cal. Bar No. 82971)

945 Fourth Avenue
San Diego, California 92101
Tel: (619) 233-1888

Counsel for Defendant
FOX RENT A CAR D/B/A PAYLESS RENT-A-CAR

JONES DAY

By: ______________________
Jeffrey A. LeVee (Cal. Bar No. 125863)

555 South Flower Street
Fiftieth Floor
Los Angeles, California 90071
Tel.: (213) 489-3939

Counsel for Defendant
DOLLAR THRIFTY AUTOMOTIVE GROUP, INC.

LONG, WILLIAMSON AND DELIS

By: ______________________
T. Patrick Long (Cal. Bar No. 182394)

400 N. Tustin Ave.
Suite 370
Santa Ana, California 92705
Tel: (714) 668-1400

Counsel for Defendant
COAST LEASING CORP. dba ADVANTAGE RENT A CAR, erroneously sued and served herein as Coast Leasing Corp., a Texas corporation

O'MELVENY & MYERS LLP

By: ______________________
Richard G. Parker (*Pro hac vice*)

1625 Eye Street, NW
Washington, D.C. 20006
Tel.: (202) 383-5300

Michael F. Tubach (Cal. Bar No. 145955)
Thomas P. Brown (Cal. Bar No. 182916)

Embarcadero Center West
275 Battery Street
Suite 2600
San Francisco, California 94111
Tel.: (415) 984-8700

Gerald A. Stein (*Pro hac vice*)

Times Square Tower
Seven Times Square
New York, New York 10036
Tel.: (212) 326-2000

Counsel for Defendant
HERTZ CORPORATION

WERTZ McDADE WALLACE MOOT & BROWER

By: [signature]
John H. Stephens (Cal. Bar No. 82971)

945 Fourth Avenue
San Diego, California 92101
Tel: (619) 233-1888

Counsel for Defendant
FOX RENT A CAR D/B/A PAYLESS RENT-A-CAR