REQUEST FOR JUDICIAL NOTICE
IN SUPPORT OF RENTAL CAR DEFENDANTS' MOTION TO DISMISS

**EXHIBITS**

|  |  | Page |
|---|---|---|
| Exhibit A | Assembly Floor Analysis of AB 2592 | E-1 |
| Exhibit B | Letter from Robert C. Fellmeth, Esq. to The Honorable Mark Leno, dated August 23, 2006 | E-7 |
| Exhibit C | Senate Floor Analysis of AB 2592 on the Third Reading of the bill in the Senate | E-11 |
| Exhibit D | S. 1057, 2007-2008 Sess. (Cal. 2008) | E-23 |
| Exhibit E | Rental Agreement No. 911587707, between Alamo and Michael Shames, rental date Sept. 13, 2007 | E-29 |
| Exhibit F | Rental Agreement No. D438269, between Enterprise Rent-A-Car Company of San Francisco and Gary Gramkow, rental date July 24, 2007 | E-31 |



**Legislative Research Incorporated**

1107 9th Street, Suite 220, Sacramento, CA 95814
(800) 530.7613 · (916) 442.7660 · fax (916) 442.1529
www.lrihistory.com · intent@lrihistory.com

---

*Legislative History of*

# CALIFORNIA CIVIL CODE § 1936.01

*As Added By*
Statutes of 2006, Chapter 790, § 1
Assembly Bill 2592 – Leno



# Legislative Research Incorporated

1107 9th Street, Suite 220, Sacramento, CA 95814
(800) 530.7613 · (916) 442.7660 · fax (916) 442.1529
www.lrihistory.com · intent@lrihistory.com

---

*Authentication of the Records and Annotated Index*
Legislative History Research Report[1] Regarding:
CALIFORNIA CIVIL CODE § 1936.01
*As Added By* Statutes of 2006, Chapter 790, § 1, AB 2592 – Leno

I, Lisa Hampton, declare that this report includes:

- *Historical documents surrounding the adoption of the above enactment.* These documents were obtained by the staff of Legislative Research, Incorporated and are true and correct copies of the originals obtained from the designated official, public sources in California unless another source is indicated, with the following exceptions: In some cases, pages may have been reduced in size to fit an 8 ½" x 11" sized paper. Or, for readability purposes, pages may have been enlarged or cleansed of black marks or spots. Lastly, paging and relevant identification have been inserted.

  Legislative Research, Incorporated was established in 1983 (formerly Legislative Research Institute), and is a firm which specializes in the historical research surrounding the adoption, amendment and/or repeal of California statutes, regulations and constitutional provisions pursuant to California Code of Civil Procedure § 1859 which states in pertinent part: "In the construction of a statute the intention of the Legislature ... is to be pursued, if possible ...." Legislative Research, Incorporated has been cited by name as the source of records relied upon by the court in *Redlands Community Hospital v. New England Mutual Life Insurance Co,* 23 Cal. App.4th 899 at 906 (1994).

- *An annotated index of the documents.* This index cites the sources of the documents and provides points and authorities in endnote form to assist in gaining judicial notice as necessary. These are provided for general information only and are not intended to supply legal advice or an exhaustive summary of the law with respect to the courts' use of the various records provided herein. Furthermore, use of same does not create an attorney-client relationship and LRI assumes no liability whatsoever in connection with their use.

I declare under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct and that I could and would so testify in a court of law if called to be a witness.

Executed November 29, 2007, in Sacramento, California.

Lisa Hampton, Research Director

iv

Exhibit A
E02

AB 2592
Page 1

CONCURRENCE IN SENATE AMENDMENTS
AB 2592 (Leno)
As Amended August 24, 2006
Majority vote

**FILE COPY**

| ASSEMBLY: | 64-3 | (May 4, 2006) | SENATE: | 37-3 | (August 29, 2006) |

ARTS, SPORTS, ENTERTAINMENT
COMMITTEE VOTE:   8-0   (August 30, 2006)        RECOMMENDATION:  Concur

Original Committee Reference:   A.,E.,S.,T. & I.M.

SUMMARY: Modifies the conditions and terms of appointees and elected members of the California Travel and Tourism Commission (CTTC), broadens industry segments which may voluntary participate in CTTC programs, and clarifies certain assessment and referendum procedures. Additionally, the bill makes changes to the way the passenger car rental industry is assessed by the CTTC which will permit rental car companies to separately state specified fees in advertising, quotes and charges for rental cars which become operational only if the rental car industry agrees to increase its Tourism Marketing Assessment (assessment) to specified levels.

The Senate amendments:

1) Permit rental car companies to take the following actions if those companies approve a referendum that increases the assessment paid by rental car companies to a level sufficient for the CTTC's budget to be brought up to $25 million in fiscal year 2006-07 and $50 million in fiscal year 2007-08:

   a) Advertise rental rates that include the entire charge, except taxes and customer facility and mileage charges, which a renter must pay to hire or lease a vehicle.

   b) Separately state in a quote or separately charge the rental rate, taxes, customer facilities charges, airport concession fees, tourism commission assessments and mileage charges which a renter must pay to hire or lease a vehicle.

   c) Require additional specified actions at the time a quote is given, at the time and place the rental commences, or if a rental is provided by a third party, if customer facility charges, airport concession fees, or tourism commission assessments are imposed.

   d) Prohibit additional charges for:

      i) additional drivers on a car rental agreement;

      ii) the period of time which occurs between the time a vehicle being delivered leaves the rental car facility and arrives at the location of the customer, or, when the rental company picks up a vehicle, the interval between the time the renter notifies the rental company the vehicle is available for pick up and the time it is picked up; and

Provided by Legislative Research Incorporated (800) 530-7613

LRI
2006-790
Page 196 of 417

Exhibit A
E03

AB 2592
Page 2

    iii) transporting a renter to a location where a rented vehicle will be delivered, unless permitted as part of a customer facility charge.

  e) Permit a car renter to bring a civil action against a rental car company for specified violations including damage waivers and disclosure, quote and advertising requirements; the prevailing party is entitled to recover attorney's fees and costs.

2) Permit the CTTC to take the following actions if rental car companies approve a referendum that increases the assessment paid by those companies to a level sufficient for the CTTC's budget to be brought up to $25 million in fiscal year 2006-07 and $50 million in fiscal year 2007-08:

  a) Establish a separate category of assessment for passenger rental car companies.

  b) Establish differing caps on assessments for each industry category or segment.

  c) Allow commissioners elected from each industry category to be determined by the weighted percentage of assessment from that category with a cap of six commissioners from the passenger rental car category.

  d) Allow the weighted percentage assigned to a business in the passenger car rental category that pays an assessment greater than the cap, to be the same as though its assessment were equal to the highest maximum assessment.

  e) Restrict assessments on the passenger car rental category to rental transactions that commence at an airport, hotel, or overnight lodging facility.

3) Revert $6.3 million to the General Fund from the CTTC if rental car companies approve a referendum that increases the assessment paid by those companies to a level sufficient for the CTTC's budget to be brought up to $25 million in fiscal year 2006-07 and $50 million in fiscal year 2007-08.

4) Revise the terms of office for commissioners elected to the CTTC to July 1 through June 30.

5) Automatically extend the terms of office for elected commissioners which expire December 31, 2006, to June 30, 2007.

6) Clarify that voluntary assessments shall be "proportionally" equivalent to the assessment levied from an assessed business.

7) Provide that if the CTTC delivers a resolution to the Secretary of the Business, Transportation, and Housing Agency (Secretary), then the Secretary may call a referendum at any time.

8) Require the Secretary to identify, to the extent reasonably feasible, those businesses that would become newly assessed due to a change sought in a referendum, and provide those businesses the opportunity to vote in that referendum.

9) Provide procedures for persons sharing common ownership, management, or control of more than one assessed business to calculate, administer, and pay the assessment owed by each business.

Provided by Legislative Research Incorporated (800) 530-7613

LRI
2006-790
Page 197 of 417

Exhibit A
E04

AB 2592
Page 3

10) Specify that the threshold for small businesses to be exempt from assessment ($1,000,000 in total California gross annual revenue) may be lowered by referendum, but is never to be set lower than $500,000.

11) Make other technical and clarifying changes.

EXISTING LAW:

1) Requires rental car companies to advertise, quote, and charge a renter for the entire rental rate a consumer must pay to hire or lease a vehicle, except for taxes.

2) Permits a car renter to bring a civil action against a rental car company for specified violations including damage waivers and disclosure, quote and advertising requirements; the prevailing party is entitled to recover attorney's fees and costs.

3) Creates the California Tourism Marketing Act of 1995 (Act) and the California Division of Tourism in the Business, Transportation and Housing Agency (BTHA) to promote travel and tourism to and within California.

4) Establishes CTTC, a separate, independent, nonprofit corporation consisting of 37 members (BTHA Secretary, 12 members appointed by the Governor, and 24 commissioners elected by industry category in a referendum).

5) Authorizes the CTTC to levy assessments on specified businesses which benefit from travel and tourism spending, according to referendum of the assessed businesses for the purpose of producing a variety of marketing activities, including: a) advertising; b) visitor publications; and, c) cooperative programs.

6) Authorizes the CTTC to levy assessments on specified businesses which benefit from travel and tourism spending according to referendum of the "assessed businesses" for the purpose of producing a variety of marketing activities.

7) Exempts persons or businesses with less than $1 million in California gross annual revenue from assessment.

AS PASSED BY THE ASSEMBLY, this bill modified the conditions and terms of appointees and elected members to the CTTC, and broadened industry segments which may voluntary participate in the program.

FISCAL EFFECT: According to the Assembly Appropriations Committee

COMMENTS:

1) Purpose. According to the author, this bill is necessary to update and make clarifying changes to the Act with respect to the CTTC including the parameters for serving as a commissioner and allowing gaming interests to participate in the program on a voluntary basis. More critically, the author reports that "California now stands at 37[th] in the nation in overall state public spending/investment to promote tourism and attract visitors. It falls behind Illinois, West Virginia and Arkansas. It has been proven that the level of tourism funding is reflected in market

Provided by Legislative Research Incorporated (800) 530-7613

LRI
2006-790
Page 198 of 417

Exhibit A
E05

AB 2592
Page 4

share. For example, from 1998-2002 when the tourism budget was fully funded by the CTTC and the State of California, California's market share increased from 9.7 percent to 11.5 percent. This resulted in an additional $8.7 billion in visitor spending, 120,833 jobs and approximately $539 million in direct tax revenues. Conversely, when funding was either eliminated or inconsistent during the late 1980s and early 1990s, California experienced a dramatic decline of domestic and international market share amongst competing states and destinations. This resulted in approximately $2.5 billion less spending, approximately $100 million less tax revenue, and approximately 35,000 less jobs."

The author opines that "AB 2592 would – for the first time ever – assure a stable funding source that would produce $25 million in FY 2006-2007 and $50 million in FY 2007-2008. AB 2592 would also save the General Fund money since the enactment of the bill would reduce the state's General Fund appropriation from $7.3 million to $1 million."

2) California Travel & Tourism Commission. The Legislature adopted the Act to allow the self-imposition of an assessment by businesses that benefit from travel and tourism. It also authorized the establishment of a non-profit, public benefit corporation, CTTC, to oversee the promotion of California as a premier travel destination. The primary focus of CTTC is to develop and implement a marketing plan that promotes travel to and within California. In support of this purpose, the plan is divided into four program areas: 1) Research and Rural Tourism Marketing; 2) Communications and Visitor Information (i.e., media relations, web site, welcome centers, and collateral and fulfillment); 3) National Advertising and Cooperative Marketing Activities; and, 4) International Travel, Trade Development and Marketing.

In 2001, assessed businesses voted to continue industry assessments by an 84% margin and will subsequently be renewable by industry vote every six years. The act intended that the state would match industry assessments, but budget limitations have severely reduced the state's participation.

3) Passenger Rental Car Industry. This measure affects the rental car industry in two significant ways. First, it modifies disclosure requirements for the advertising, quoting and charging of rental cars. Industry representatives indicate that the companies are not currently required to disclose, as part of a telephonic or Internet quote a total out-the-door price for the rental and that these changes will bring California's disclosure statutes into conformity with those of other states. Significantly, this "rebundling" will allow the industry to separate the CTTC assessment and airport concession fees from the rental car charge.

This bill will also result in a referendum to the rental car industry to substantially increase its CTTC assessment. The new industry assessment would significantly increase current funding for tourism marketing and supplant much of the CTTC's General Fund support. As originally crafted, the Act called for a match of general fund support with the industry assessments. Since the deterioration of the state's fiscal condition, the state's match has declined dramatically, even though support from the travel and tourism industry has remained constant.

Analysis Prepared by:   Kellie Smith / A.,E.,S.,T. & I.M. / (916) 319-3450

FN: 0017651

Provided by Legislative Research Incorporated (800) 530-7613

LRI
2006-790
Page 199 of 417

Exhibit A
E06



# Legislative Research Incorporated

1107 9th Street, Suite 220, Sacramento, CA 95814
(800) 530.7613 · (916) 442.7660 · fax (916) 442.1529
www.lrihistory.com · intent@lrihistory.com

---

*Legislative History of*

## CALIFORNIA CIVIL CODE § 1936.01

*As Added By*
Statutes of 2006, Chapter 790, § 1
Assembly Bill 2592 – Leno



# Legislative Research Incorporated

1107 9th Street, Suite 220, Sacramento, CA 95814
(800) 530.7613 · (916) 442.7660 · fax (916) 442.1529
www.lrihistory.com · intent@lrihistory.com

---

*Authentication of the Records and Annotated Index*
Legislative History Research Report[1] Regarding:
CALIFORNIA CIVIL CODE § 1936.01
*As Added By* Statutes of 2006, Chapter 790, § 1, AB 2592 – Leno

I, Lisa Hampton, declare that this report includes:

- *Historical documents surrounding the adoption of the above enactment.* These documents were obtained by the staff of Legislative Research, Incorporated and are true and correct copies of the originals obtained from the designated official, public sources in California unless another source is indicated, with the following exceptions: In some cases, pages may have been reduced in size to fit an 8 ½" x 11" sized paper. Or, for readability purposes, pages may have been enlarged or cleansed of black marks or spots. Lastly, paging and relevant identification have been inserted.

    Legislative Research, Incorporated was established in 1983 (formerly Legislative Research Institute), and is a firm which specializes in the historical research surrounding the adoption, amendment and/or repeal of California statutes, regulations and constitutional provisions pursuant to California Code of Civil Procedure § 1859 which states in pertinent part: "In the construction of a statute the intention of the Legislature ... is to be pursued, if possible ...." Legislative Research, Incorporated has been cited by name as the source of records relied upon by the court in *Redlands Community Hospital v. New England Mutual Life Insurance Co,* 23 Cal. App.4th 899 at 906 (1994).

- *An annotated index of the documents.* This index cites the sources of the documents and provides points and authorities in endnote form to assist in gaining judicial notice as necessary. These are provided for general information only and are not intended to supply legal advice or an exhaustive summary of the law with respect to the courts' use of the various records provided herein. Furthermore, use of same does not create an attorney-client relationship and LRI assumes no liability whatsoever in connection with their use.

I declare under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct and that I could and would so testify in a court of law if called to be a witness.

Executed November 29, 2007, in Sacramento, California.

*/s/ Lisa Hampton*
Lisa Hampton, Research Director

iv

Exhibit B
E08



Legislative Research Incorporated

1107 9th Street, Suite 220, Sacramento, CA 95814
(800) 530.7613 · (916) 442.7660 · fax (916) 442.1529
www.lrihistory.com · intent@lrihistory.com

# Assembly Policy Committee Materials

Legislative Research Incorporated hereby certifies that the accompanying record/s is/are true and correct copies of the original/s obtained from one or more official, public sources in California unless another source is indicated, with the following exceptions : In some cases, pages may have been reduced in size to fit an 8 ½" x 11" sized paper. Or, for readability purposes, pages may have been enlarged or cleansed of black marks or spots. Lastly, for ease of reference, paging and relevant identification have been inserted.

Provided by Legislative Research Incorporated (800) 530-7613

LRI
2006-790
Page 204 of 417

Exhibit B
E09

08/24/2006 01:04 FAX 9163192113    ASSEMBLYMAN LENO                 ☒002/003
08/23/2006 16:26   6192604753       CPIL/CAI USD                    PAGE 02/02



# FILE COPY

## University of San Diego

| Center for Public Interest Law | Children's Advocacy Institute | Energy Policy Initiatives Center |

The Honorable Mark Leno  
State Capitol, Room 3146  
Sacramento, CA 95814

August 23, 2006

**AB 2592 (OPPOSE)**

Dear Assemblymember Leno,

We write to respectfully oppose AB 2592, as amended after June 8, 2006.

Current law requires rental car companies to include their charges in a properly bundled total. Those charges include the rental company's underlying rate for a given model and car – including a possible daily and mileage price, and including the airport concession fee *et al.* This last is important because it commonly adds 10% to the final price of the rental. The bundled price is the number that is advertised and included in initial contract, to allow easy comparison and healthy, fair competition.

As we read AB 2592 (as now proposed for end-of-session amendment), it allows the rental car industry to disaggregate the airport concession fee (as well as the customer facility charge) from the identified charge of the rental company. The bill does require advertising disclosure of the total amount to be charged including these charges and taxes. And it does require their itemization in the contract to the consumer. But what the bill essentially allows is an immediate rake-off of 10% in additional monies for the industry. The companies merely maintain their current price levels, but instead of including the airport concession fee in the initial charge, it is now added on at the end – on top of a charge that historically included it. The end result is going to be an industry-wide price hike of 10% – all of it new profit for the industry.

In an apparent and regrettable *quid pro quo* for this opportunity, the industry is agreeing to assess itself $50 million per year for the Office of Tourism within the Business, Transportation and Housing Agency. The juxtaposition of an "industry referendum" to make this assessment with the disaggregation of the airport concession fee lacks both merit and subtlety.

If the Office of Tourism properly warrants $50 million per year in general fund appropriations, or if it is appropriately special-funded from industry resources, the Legislature may accomplish this assessment without the voting consent of those assessed. If such a contribution is warranted, it should be enacted. It should not be connected to the implicit industry-wide price increases this measure would facilitate.

Very sincerely,

Robert C. Fellmeth  
Price Professor of Public Interest Law

5998 Alcalá Park, San Diego, California 92110-2492 • 619/260-4806 • Fax 619/260-4753  
717 K Street, Suite 509, Sacramento, California 95814-3406 • 916/444-3875 • Fax 916/444-6611  
CPIL website: www.cpil.org • CAI website: www.calchildlaw.org

Reply to:   ☐ San Diego Office   •   ☐ Sacramento Office

Provided by Legislative Research Incorporated (800) 530-7613

LRI
2006-790
Page 216 of 417

Exhibit B
E10