Thadd A. Blizzard, State Bar No. 83297
Michael A. Kvarme, State Bar No. 90749
W. Scott Cameron, State Bar No. 229828
weintraub genshlea chediak
a law corporation
400 Capitol Mall, 11th Floor
Sacramento, CA 95814
(916) 558-6000 – Main
(916) 446-1611 – Facsimile

EDMUND G. BROWN JR.
Attorney General of the State of California
W. DEAN FREEMAN
FELIX E. LEATHERWOOD
Supervising Deputy Attorneys General
RONALD N. ITO, State Bar No. 71322
DIANE SPENCER SHAW, State Bar No. 73970
LISA W. CHAO, State Bar No. 198536
Deputy Attorneys General
300 South Spring Street, Suite 1702
Los Angeles, CA 90013
(213) 897-2477 – Main
(213) 897-5775 – Facsimile

Attorneys for Defendant
The California Travel and Tourism Commission

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

MICHAEL SHAMES; GARY GRAMKOW, on behalf of themselves and on behalf of all persons similarly situated,

Plaintiffs,

vs.

THE HERTZ CORPORATION, a Delaware corporation; DOLLAR THRIFTY AUTOMOTIVE GROUP, INC., a Delaware corporation; AVIS BUDGET GROUP, INC., a Delaware corporation; VANGUARD CAR RENTAL USA, INC., an Oklahoma corporation; ENTERPRISE RENT-A-CAR COMPANY, a Missouri corporation; FOX RENT A CAR, INC., a California corporation; COAST LEASING CORP., a Texas corporation; THE CALIFORNIA TRAVEL AND TOURISM COMMISSION and CAROLINE BETETA,

Defendants.

Case No. 07 CV 2174 H BLM

[CLASS ACTION]

**MEMORANDUM OF POINTS AND AUTHORITIES OF DEFENDANT CALIFORNIA TRAVEL AND TOURISM COMMISSION IN SUPPORT OF MOTION TO DISMISS**

Date: April 1, 2008
Time: 10:30 a.m.
Place: Courtroom 13

The Honorable Marilyn L. Huff

weintraub genshlea chediak
LAW CORPORATION

# TABLE OF CONTENTS

| | | | | Page |
|---|---|---|---|---|
| I. | INTRODUCTION | | | 1 |
| II. | BACKGROUND | | | 2 |
| | A. | Statutes and Regulations Applicable to the Commission | | 2 |
| | B. | Antitrust Allegations in the Complaint Relating to the Commission | | 5 |
| III. | LEGAL ARGUMENT | | | 6 |
| | A. | The Legal Standard for This Motion Requires More Than Conclusory Allegations | | 6 |
| | B. | Defendant Commission Is Immune from Antitrust Liability Under the State Action Immunity Doctrine Expressed in *Parker v. Brown* | | 6 |
| | | 1. | The Commission Is a Political Subdivision | 8 |
| | | 2. | The California Tourism Marketing Act Expresses a Clearly-Articulated State Policy | 10 |
| | | 3. | The Commission Is Immune from Antitrust Liability for the Imposition of the 2.5% Commission Assessment | 11 |
| | | 4. | The Commission Is Immune from Antitrust Liability for the Rental Car Defendants' Decision to Pass Through the 2.5% Assessment to Their Customers | 14 |
| | | 5. | The Commission Is Also Immune from Antitrust Liability for the Rental Car Defendants' Decision, if any, to Pass Through the Airport Concession Fee to Their Customers | 14 |
| | | 6. | The Antitrust Claim Should Be Dismissed With Prejudice | 15 |
| | B. | The Complaint Fails to Allege a Conspiracy or Combination and Should Be Dismissed Under the Standard Articulated in *Twombly* | | 15 |
| | | 1. | Plaintiffs' Complaint Utterly Fails to Plead Facts Sufficient to Establish an Agreement Involving the Commission | 15 |
| | | | a. Under *Twombly*, Allegations of "Parallel Conduct" Are Insufficient | 15 |

weintraub genshlea chediak LAW CORPORATION

b. Under *Twombly*, Allegations of "Opportunity" Are Also Insufficient ..... 16

c. Under *Twombly*, Antitrust Allegations Are Closely Scrutinized ..... 16

2. The Complaint Fails to Allege any Facts Showing That the Commission Entered Into any Agreement with the Defendants ..... 17

C. Antitrust Liability Cannot Attach to the Commission for the Legislative Lobbying Efforts of the Rental Car Defendants ..... 19

D. The Complaint Fails to State a Claim for Unfair Competition ..... 19

1. The Commission Is Immune from UCL Liability Because, as a Public Entity, It Is not a "Person" for UCL Purposes ..... 20

2. The UCL Claim Should Be Dismissed Because the Government Code Contains an Express Grant of Immunity ..... 21

E. The Court Should Dismiss the Bagley-Keene Open Meeting Act Claim or Decline to Exercise Supplemental Jurisdiction Over It ..... 21

1. Any Claim that Bagley-Keene Act Violations Facilitated the Alleged Antitrust Conspiracy Is Time-Barred ..... 22

2. The Allegations of Bagley-Keene Act Violations in the Third Cause of Action Are Not Transactionally Related to the Antitrust Allegations and, Therefore, Do Not Form Part of the Same Case or Controversy as Those Alleged in the Other Causes of Action ..... 22

3. The Court Should Decline to Exercise Supplemental Jurisdiction Over the California Bagley-Keene Act Claim under Comity Principles ..... 23

IV. CONCLUSION ..... 25

weintraub genshlea chediak LAW CORPORATION

# TABLE OF AUTHORITIES

Page

## Federal Cases

*Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters* 459 U.S. 519 (1983) ..... 6

*Automated Salvage Transport, Inc. v. Wheelabrator Environmental Systems, Inc.* 155 Fd 59 (2d Cir. 1998) ..... 10

*Bankers Ins. Co. v. Fla. Residential Property and Casualty Joint Underwriting Assoc.* 137 F.3d 1293 (11th Cir. 1998) ..... 6, 8, 9

*Baer v. First Options of Chicago, Inc.* 72 F.3d 1294 (7th Cir. 1995) ..... 23

*Bell Atlantic Corp. v. Twombly* ______ U.S. ____, 127 S.Ct. 1955 (2007 ..... 2, 6, 15, 16, 17, 18

*Cal. Retail Liquor Dealers Assoc. v. Midcal Aluminum, Inc.* 445 U.S. 97 (1980) ..... 7, 14

*Charley's Taxi Radio Dispatch Corp. v. SIDA of Haw. Inc.* 810 F.2d 869 (9th Cir. 1987) ..... 12, 13

*Cine 42nd Street Theater Corp. v. Nederlander Organization* 790 F.2d 1032 (2d Cir. 1986) ..... 13

*City of Chicago v. International College of Surgeons* 522 U.S. 156 (1997) ..... 23

*Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc.* 365 U.S. 127 (1961) ..... 19

*Ernest W. Hahn, Inc. v. Codding* 615 F.2d 830 (1980) ..... 19

*Executive Software No. America, Inc. v. United States District Court (Page)* 24 F.3d 1545 (9th Cir. 1994) ..... 23

*Goldfarb v. Va. State Bar* 421 U.S. 773 (1975) ..... 12

*Hass v. Oregon State Bar* 883 F.2d 1453 (1989) ..... 8, 11, 12, 14

*Hoover v. Ronwin* 466 U.S. 558 (1984) ..... 6, 7

*In re Citric Acid Litig.* 191 F.3d 1090 (9th Cir. 1999) ..... 18

*In re Graphics Processing Units Antitrust Litig.* No. C 06-07417, 2007 WL 2875686 ..... 18

weintraub genshlea chediak LAW CORPORATION

*In re Late Fee & Over-Limit Fee Litig.* No. C 07-0634, 2007 WL 4106353 .......... 18

*In re Vantive Corp. Sec. Litig.* 283 F.3d 1079 (9th Cir. 2002) .......... 15, 21

*In re Travel Agent Comm'n Antitrust Litig.* No. 1:03 CV 30000, 2007 WL 3171675, *9 (N.D. Ohio Oct. 29, 2007) .......... 18

*Kersner v. Clemens* 225 F.3d 227 (2nd Cir. 2000) .......... 23

*Lyon v. Wissman* 45 F.3d 758 (3d Cir. 1995) .......... 23

*Mello v. Great Seneca Financial Corp.* ____ F.Supp.2d ___, 2007 WL 4340990 (C.D. Cal. Nov. 5, 2007) .......... 6

*Parker v. Brown* 317 U.S. 341, 63 S.Ct. 307 (1943) .......... 2, 6 14

*Quackenbush v. Allstate Ins. Co.* 517 U.S. 706 (1996) .......... 23

*Sanders v. Brown* 504 F.3d 903 (9th Cir. 2007) .......... 7, 13, 14, 19

*Southern California Edison Co. v. Lynch* 307 F.3d 794 (9th Cir. 2002) .......... 23, 24

*Southern Motor Carriers Rate Conf. v. United States* 471 U.S. 48 (1985) .......... 11

*Theatre Enters., Inc. v. Paramount Film Distrib. Corp.* 346 U.S. 537 (1954) .......... 15

*Town of Hallie v. City of Eau Claire* 471 U.S. 34 (1985) .......... 7, 9 12, 14

*United Mine Workers v. Gibbs* 383 U.S. 715 (1966) .......... 22

<u>*California Cases*</u>

*Gillespie v. San Francisco Pub. Library Commission* 67 Cal.App.4th ll65 (1998) .......... 24

*People for the Ethical Treatment of Animals, Inc. v. California Milk Producers Advisory Board*, 125 Cal.App.4th 871 .......... 20

*Regents of the University of California v. Superior Court* 20 Cal.4th 509 (1999) .......... 22

*Santa Monica Rent Control Board v. Bluvshtein* 230 Cal.App.3d 308 (1991) .......... 20

*Trinkle v. California State Lottery*
71 Cal.App.4th 1198 (1999) ........ 20

## *Federal Statutes*

15 U.S.C.
§ 1 (The Sherman Act) ........ 15, 16

28 U.S.C.
§ 1367(a) ........ 22

Internal Revenue Code
§501(c)(6) ........ 9

## *California Statutes*

Cal. Code Regs. tit. 10
§ 5356 ........ 5
§ 5357 ........ 5
§ 5357.1 ........ 18
§ 5357.2 ........ 5
§ 5357(b) ........ 5, 10
§ 5358 ........ 5

Civil Code
§ 193601(a)(3) ........ 14
§ 193601(b)(2) ........ 7

Government Code
§ 11130 ........ 21
§ 111309 ........ 21
§ 11130(c) ........ 21, 22
§ 11130.3(a) ........ 21, 22
§§ 13995.1 (Cal. Tourism Marketing Act) ........ *passim*

Revenue & Taxation Code
§ 23701e ........ 9

weintraub genshlea chediak LAW CORPORATION

## I. INTRODUCTION

A review of Plaintiffs' Complaint reveals two fatal flaws to their causes of action. First, Plaintiffs assume that some "evil" was perpetrated by Rental Car Defendants in convincing the California legislature and Governor to pass A.B. 2592, allowing (1) "unbundling" of rental car charges, and (2) amending the California Tourism Marketing Act (the "CTMA") (Statutes 1995, Chapter 871 now at Gov't Code §§ 13995.1 *et seq.*).[1] Plaintiffs' opinion that "unbundling" is wrong, compared to the previously-required "bundling," is not a proper basis for legal action. An equally compelling argument can be made that providing more detail and disclosure to consumers provides a more accurate and competitive rental car market. Just because Plaintiffs do not like the State of California's decision with respect to "allowing" unbundling does not give rise to recourse through litigation. This dispute is exactly the type of policy decision that is within the province of the legislature to make and executive branch to implement; it is not Plaintiffs' decision to make.

Second, Plaintiffs assert that defendant California Travel and Tourism Commission ("Commission") somehow "conspired" with the Rental Car Defendants, but have failed to allege even the barest grounds for their assertion beyond identifying the Commission's statutory role in following the Legislature's directive to implement California law. The United States Supreme Court has addressed this issue, as discussed in detail below, in antitrust and other contexts, and determined that state-created entities such as the Commission are immune from antitrust claims because they constitute political subdivisions.

Rather than assisting a broad class of California's citizenry, Plaintiffs' volunteer action relies upon a hypothesized conspiracy in an attempt to second guess the State of California's legislative decision to bolster its economy and stretch valuable resources in a time of budget challenges and economic decline. The Court should dismiss the Complaint without leave to amend, allowing the State of California to pursue a policy adopted by its elected officials. Any leave to amend in this matter is futile and must be rejected.

/ / /

[1] Unless otherwise indicated, all statutory references are to the California Government Code.

weintraub genshlea chediak LAW CORPORATION

## II. BACKGROUND

The suit alleges antitrust violations against all defendants for an alleged horizontal price fixing conspiracy among the Rental Car Defendants, unfair competition based on the alleged antitrust violations against all defendants, and violations of the Bagley-Keene Open Meeting Act against the Commission. At its core, the Complaint challenges the unbundling of an Airport Concession Fee allowed by statutory amendment, and what Plaintiffs perceive as an unfair increase in rental car prices as a result.

Plaintiffs' Complaint fails to state a claim upon which relief may be granted against the Commission for several reasons. As to the antitrust claim, the Commission is entitled to immunity as a "state actor" pursuant to *Parker v. Brown*, 317 U.S. 341, 63 S.Ct. 307 (1943), and its progeny. Moreover, the Complaint fails to meet the pleading requirements of an antitrust claim pursuant to the Supreme Court's recent decision in *Bell Atlantic Corp. v. Twombly*, ___ U.S. ___, 127 S.Ct. 1955 (2007). In fact, the Complaint is devoid of allegations of anticompetitive conduct on the Commission's part; there are no allegations detailing any alleged agreement or combination.

The unfair competition claim, which is nothing more than an improper attempt at an end-run around the Commission's immunity to the antitrust claim, also fails. The Commission is immune to that claim as well as a "state actor." The allegations in the Complaint do not establish any illegal conduct on the Commission's part.

The Bagley-Keene Act claim should also be dismissed because supplemental jurisdiction over it is not appropriate. It is not sufficiently factually related to the antitrust claim or the unfair competition claim. The Bagley-Keene Act claim should be left to the California state courts under the principles of comity.

### A. Statutes and Regulations Applicable to the Commission

The Commission was created by the CTMA in 1995 to implement, fund, and manage a marketing plan aimed at increasing travel and tourism to the State of California. § 13995.45. Tourism is the state's third largest industry, and even in 1995 contributed $52 billion and 700,000 jobs to the State's economy. § 13995.1. Increasing tourism to the State was declared

by the legislature to be "vital to the welfare of the state's economy." § 13995.1. The legislature also determined that businesses most directly involved with the tourism industry should pay for the majority of the marketing endeavors <u>and</u> that they may be allowed to pass some or all of this cost on to their customers. § 13995.65(f). The CTMA accomplishes this goal through a series of industry-approved assessments on such businesses. The Secretary of the Business, Transportation and Housing Agency ("BTH"), based on a resolution adopted by the Commission, calls a referendum (§§ 13995.60(b) and (c)) and assesses businesses within the travel and tourism industry (§ 13995.65(d)). These funds, together with funds allocated from the State of California general fund, are used to satisfy the Commission's budget. § 13995.70. The adoption and implementation of the budget and marketing plan are conducted with full public notice and participation and are subject to approval by the Secretary of BTH. § 13995.45. In forming the Commission, the California State Legislature determined that: "[I]t is in the <u>state's public interest</u> and <u>vital to the welfare of the state's economy</u> to expand the market for, and develop, California tourism through a cooperative partnership funded in part by the state that will allow generic promotion and communication programs." § 13995.1(b), emphasis added. California lawmakers purposefully formed the Commission with significant government controls, attributes and functions.[2]

The Commission was created by the CTMA to carry out a clearly-articulated state policy in coordination with California's executive branch. The CTMA required the Governor to appoint a Tourism Selection Committee ("Selection Committee") comprised of individuals representing different travel and tourism related industries. § 13995.30(a). The Selection Committee was staffed by the Office of Tourism ("Office") within the BTH.[3] § 13995.30(a). The Selection

---

[2] For example, the CTMA expressly confers state agency status on the Commission for First Amendment Purposes: "This chapter creates a mechanism to fund generic promotions that, pursuant to the required supervision and oversight of the secretary as specified in this chapter, <u>further specific state governmental goals</u>, as established by the Legislature, and result in a promotion program that produces nonideological and commercial communication that bears the characteristics of, and <u>is entitled to all of the privileges and protections of, government speech</u>." § 13995.1(d)(7). Moreover, the Commission is specifically subject to the California Political Reform Act, § 13995.40(p), and Bagley-Keene Open Meeting Act, § 13995.40(q), which by its terms is only applicable to state bodies. § 11121.

[3] Former § 15372.65(g) defined the Office as an office in the California Trade and Commerce Agency and former § 15372.65(j) defined the Secretary as the Secretary of the California Trade and Commerce Agency. The

weintraub genshlea chediak LAW CORPORATION

Committee proposed allocations and formulas for an assessment to be levied on various tourism-related industry groups. § 13995.30(b). The report was reviewed and approved by the Secretary of Trade and Commerce. § 13995.30(g). Based on the recommendations and findings of the report, the Secretary of Trade and Commerce, through the Office, conducted a referendum of tourism-related industry groups. The result of this referendum was the imposition of the assessment and the creation of the Commission as a nonprofit mutual benefit corporation operating under the supervision of the Office of Tourism. § 13995.40.

The Commission operates concurrently and cooperatively with the Office now situated within BTH. The Secretary is the chairperson of the Commission's board. § 13995.40(b)(1). By statute, the executive director of the Commission "shall report" to the Secretary, and serves simultaneously as the director of the Office and as Deputy Secretary of Tourism of the BTH, serving at the pleasure of the Governor. § 13995.43. Twelve of the Commissioners are appointed by the Governor and the other twenty-four are elected by the various assessed business. §§ 13995.40(b)(2)(A), (B).

In addition to chairing the Commission's board, the Secretary's office enjoys statutory discretion relative to various central Commission functions. The Secretary may require that assessed businesses provide requested information and may hold hearings or issue subpoenas for the production of books, records, or other documents in connection with the assessment. §§ 13995.53, 13995.55. It is a violation of state law for any person to furnish a false or fraudulent report, statement or record to the Secretary under the CTMA. § 13995.83. The Secretary is authorized to remove Commissioners under certain circumstances. § 13995.40(e). The Commission's budget and annual marketing plan are subject to review and approval by the Secretary. §§ 13995.44, 13995.45. Moreover, the decisions of the Secretary cannot be overridden with respect to the budget and annual marketing plan except by a three-fifths vote of the Commissioners. §§ 13995.44, 13995.45.

/ / /

California Trade and Commerce Agency was abolished in 2003, pursuant to Statutes 2003, Chapter 229 (AB 1757) which transferred the Office of Tourism to the BTH and redesignated the Secretary as the Secretary of Business, Transportation and Housing.

weintraub genshlea chediak LAW CORPORATION

In addition to the extensive government regulation set forth in the Government Code, the Commission's rules of operation are codified in the California Code of Regulations. Cal. Code Regs. tit. 10, §§ 5350 *et seq*. The regulations set forth the respective roles of both the Secretary and the Office in connection with periodic referenda, including the Secretary's duty to call a referendum every two years, the Office's duty to mail the referenda ballots to all eligible businesses, and the Secretary's duty to count and tabulate the ballots and certify the referenda results. Cal. Code Regs. tit. 10, § 5356. The regulations further provide that the assessment rate "shall be adjusted annually by the Office and such adjustment shall not be subject to annual referendum." Cal. Code Regs. tit. 10, § 5357(b). Moreover, all assessments must be submitted to the Office, which may impose late penalties for tardy assessment payments. Cal. Code Regs. tit. 10, § 5357.2. "All information or data provided by the Passenger Car Rental Industry Segment shall be maintained by the Office and will be confidential." Cal. Code Regs. tit. 10, § 5358.

## B. Antitrust Allegations in the Complaint Relating to the Commission

An amendment to the CTMA in 2006, A.B. 2596, required the Office and Commission to establish an assessment rate sufficient to raise $35,000,000 for fiscal year 2006-2007 and $50,000,000 for fiscal year 2007-2008 when added to other Commission funding. Regulations were formally adopted to implement the law, Cal. Code Regs. tit. 10, §§ 5357 *et seq*., and the Office conducted a referendum as required by statute. Plaintiffs' conspiracy theory alleges that the Commission's performance of its legally-required functions (largely through the Office) constitutes an illegal price-fixing conspiracy. The Complaint contains no allegations, however, of any actual conduct by the Commission which could form the basis of a complaint against it. The Complaint contains only a few conclusory assertions, lacking description of any specific conduct alleged to have been taken by the Commission.[4]

---

[4] The complaint alleges only that:

> ***To the extent the CTTC was involved*** to coordinate communications and to facilitate that pricing increase, that Commission (a) lacks statutory authority to coordinate a horizontal price fix by the Rental Car Defendants, or otherwise among its membership, and (b) lacks independent state supervision status due to its control by private parties. The scheme of the Rental Car Defendants involved a conspiracy in which the CTTC participated by, *inter alia*, facilitating the two unlawful price fixes: (a) a 2.5% CTTC assessment, and (b) the 9% Airport Concession Fee, not as an

weintraub genshlea chediak LAW CORPORATION

## III. LEGAL ARGUMENT

### A. The Legal Standard for This Motion Requires More Than Conclusary Allegations.

Federal Rules of Civil Procedure, Rule 12(b)(6) provides that a complaint is to be dismissed for "failure to state a claim upon which relief can be granted." In antitrust cases, a claimant's "obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Mello v. Great Seneca Financial Corp.*, ___ F.Supp.2d ___, 2007 WL 4340990, *2 (C.D. Cal. Nov. 5, 2007) (quoting *Bell Atlantic Corp v. Twombly*, 127 S.Ct. at 1965. The Court need not "assume that the [plaintiff] can prove facts that it has not alleged or that the defendants have violated . . . laws in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

### B. Defendant Commission Is Immune from Antitrust Liability Under the State Action Immunity Doctrine Expressed in *Parker v. Brown*.

A state actor is shielded from antitrust liability for acts taken in a state's sovereign capacity. *Parker v. Brown*, 317 U.S. 341, 350-51 (1943). Case law has established three different categories of actors eligible for *Parker* immunity. First, acts taken by the states themselves are completely immune. *See Hoover v. Ronwin*, 466 U.S. 558, 569 (1984). Next, Political subdivisions such as municipalities and state agencies are afforded immunity "if their anticompetitive acts follow a clearly articulated and affirmatively expressed state policy." *Bankers Ins. Co. v. Fla. Residential Property and Casualty Joint Underwriting Assoc.*, 137 F.3d 1293, 1296 (11th Cir. 1998). The defense is even available to private parties when acting pursuant to a clearly-articulated state policy and actively supervised by the state. *Cal. Retail*

---

Defendants CTTC and Beteta, in her capacity as the Executive Director of the CTTC, had knowledge of, facilitated and participated in the combination, contract and conspiracy, including the formation and implementation thereof. Complaint, ¶ 43.

Defendants "communicat[ed] and agree[d] with each other regarding prices to be charged consumers for the CTTC surcharge and car rental rates." Complaint ¶ 44(b).
Plaintiffs allege that Defendants "facilitate[ed] and coordinat[ed] communication among the Car Rental Defendants to fix surcharge levels. Complaint, ¶ 44(e).

Defendants and each of them have furthered the scheme through acts of concealment, including violation of the Bagley-Keene Act.... Complaint, ¶ 46.

weintraub genshlea chediak LAW CORPORATION

pursuant to a clearly-articulated state policy and actively supervised by the state. *Cal. Retail Liquor Dealers Assoc. v. Midcal Aluminum, Inc.* 445 U.S. 97, 105 (1980).

In this case, the Commission is a "state agency" or a "political subdivision" entitled to immunity because it follows a clearly-articulated state policy. *Town of Hallie v. City of Eau Claire*, 471 U.S. 34, 45-46 & n. 10 (1985). In *Town of Hallie* it was held that a political subdivision is immune from antitrust claims for actions taken pursuant to clearly-articulated state policy, regardless of whether the state actively supervises the activity. *Id*.

Unlike the cases struggling to determine whether an executive office or political subdivision such as the Commission qualifies for *Parker* immunity (see e.g., *Sanders v. Brown*, 504 F.3d 903,917 (9th Cir. 2007), the actions complained of by the Plaintiffs here are those authorized by the State legislature acting in its sovereign capacity. A.B. 2592 <u>specifically authorizes</u> the Rental Car Defendants to <u>pass on</u> the 2.5% tourism assessment fee to consumers (§ 13995.65(f))[5] and separately bill the 9% Airport Concession Fee to consumers. Cal. Civ. Code § 1936.01(b)(2).[6] The State of California authorized these acts and not the Commission.[7]

In determining the amount of the assessment mandated by the legislature, the Commission is acting on behalf of the sovereign. "Once it is clear that state authorization exists, there is no need to require the State to supervise actively the municipality's execution of what is a properly delegated function." *Town of Hallie v. City of Eau Claire, supra,* 471 U.S. at 47; *Bankers Insurance Co. v. Florida Residential Property and Casualty Joint Underwriting Association,* 137 F.3d at 1298 (stating "[c]oerced participation is yet another clue that the Association is an entity created by Florida's legislature to serve public interests and not a private, anti-competitive alliance formed with the state's blessing." *Id* at 1297).

/ / /

/ / /

---

[5] "Notwithstanding any other provision of law, an assessed business may pass on some or all of the assessment to customers." § 13995.65(f).

[6] "When providing a quote, or imposing charges for a rental, the rental company may separately state the rental rate . . . airport concession fee, if any, tourism commission, if any, . . . that a renter must pay to hire or lease the vehicle . . .." Cal. Civ. Code § 193601(b)(2).

[7] "[W]hen a state legislature adopts legislation, its actions constitute those of the state . . . and ipso facto are exempt from the operation of antitrust laws." *Hoover v. Ronwin*, 466 U.S. 558, 567-68.

weintraub genshlea chediak LAW CORPORATION

1.    The Commission Is a Political Subdivision.

An entity such as the Commission is considered a political subdivision of the State for antitrust immunity purposes if it is sufficiently "government-like" to merit a finding that it acts as an arm of the state.  *Bankers Ins. Co. v. Fla. Residential Property and Casualty Joint Underwriting Assoc.*, 137 F.3d at 1296; *see also Hass v. Oregon State Bar*, 883 F.2d at 1460.  The Commission was formed by legislation as a nonprofit mutual benefit corporation to take over the majority of the marketing functions of the Division of Tourism.  Case law following *Parker* and *Midcal* has developed several factors in analyzing whether an entity is sufficiently "government-like" to be considered a political subdivision.  In *Hass v. Oregon State Bar*, the Ninth Circuit found the Oregon Bar to be a political subdivision because: (1) the Bar was organized for the benefit of the public; (2) the records kept by the Bar were open to the public and available for inspection; (3) the Bar's accounts were subject to audit; (4) the board of directors of the Bar was required to give public notice of its meetings and the meetings were open to the public; and (5) members of the Bar's board of directors were public officials.  *Hass v. Oregon State Bar*, 883 F.3d at 1460.

The Commission shares all of these "government-like" qualities.  The CTMA was "enacted in the exercise of the police powers of the state for the purpose of protecting the health, peace, safety, and general welfare of the people of this state."  § 13995.50.  The Commission was created by the State legislature to implement legislative policies concerning the retention and expansion of the California tourism industry, which the legislature declared to be "in the state's public interest and vital to the welfare of the state's economy."  §§ 13995.1, 13995.41.  Other than information pertaining to assessed businesses, the Commission's records are subject to the Public Records Act.  § 13994.54.  The Commission's accounts containing the assessed funds must be audited and publicly reported annually.  § 13997.70. The Commission is required to comply with the Bagley-Keene Open Meeting Act, providing public notice of, and access to, Commission meetings and requiring decision making in an open public forum.  § 13995.40(q).  The Secretary serves as the chairperson of the Commission, and the Commission Executive Director is the Deputy Secretary of Tourism of the BTH, thus both are

public officials. §§ 13995.20, 13995.43. Twelve of the Commissioners are appointed by the Governor. § 13995.40(b).[8] All Commissioners are required to comply with the Political Reform Act applicable to public officials. § 13995.40(o).

Other Circuits have analyzed similar factors and reached the same conclusion. In *Bankers Ins. Co. v. Fla. Residential Property and Casualty Joint Underwriting Assoc.*, the Eleventh Circuit found the Florida Residential Property and Casualty Joint Underwriting Association was "not short on public entity trappings that suggest it is entitled to political-subdivision status." 137 F.3d at 1297. These "trappings" included: (1) the fact that the Association was created by act of the Florida Legislature; (2) the Association is subject to Florida's "sunshine laws" requiring open meetings; (3) the Association is tax-exempt; (4) the Association operates under a detailed plan that must be approved by the Department of Insurance; and (5) the supervision by a board of governors that included representatives appointed by the insurance commissioner. *Id.*

The Commission shares these "trappings" as well. As explained above, the Commission was established by act of the California Legislature and is subject to the Bagley-Keene Open Meeting Act.[9] The CTMA mandated formation of the Commission, as a non-profit mutual benefit corporation, § 13995.40, which qualifies as a tax-exempt entity under federal (Internal Revenue Code § 501(c)(6)), and state law (Cal. Rev. & Tax Code § 23701e). The Commission also operates under a detailed marketing plan, which is subject to public notice, review, and comment, and which must be approved by the Commission and Secretary. § 13995.45. Also, like the Florida Association, the Commission is comprised in part of members appointed by the Governor. §§ 13995.40(b)(2)(A), 13995.40(r), 13995.43.

/ / /

[8] Plaintiffs insinuate that the conduct of voting by referendum under the CTMA is indicative of an antitrust violation. By contrast, the Supreme Court in its state action cases has found such provisions to be an exercise of democratic principals and indicative of state action. *Town of Hallie v. City of Eau Claire,* 471 U.S. 34, 37, 105 S.Ct. 1713 (1985) (e.g. when "a majority of individuals in the area vote by referendum election to have their homes annexed by the City"); *Parker v. Brown,* 317 U.S. 341,352, 63 S.Ct. 307 (1943) ("the state itself exercises its legislative authority in making the regulation and in prescribing the conditions of its application. The required vote on the referendum is one of these condition.")

[9] The Bagley-Keene Act applies only to a "state body" which is defined as: "every state board, commission, or similar multimember body of the state that is created by statute." § 11121(a) (emphasis added).

weintraub genshlea chediak LAW CORPORATION

In *Automated Salvage Transport, Inc. v. Wheelabrator Environmental Systems, Inc.*, the Second Circuit held that the Connecticut Resource Recovery Authority ("CRRA") was a political subdivision of the State for *Parker* immunity purposes. *Id.* at 71. The court based its determination on several characteristics of the CRRA: (1) The "CRRA is a body politic and corporate, constituting a public instrumentality and political subdivision of the State of Connecticut established and created for the performance of an essential public and governmental function" (*id.* at 69); (2) The CRRA was created with statewide jurisdiction "to implement a uniform statewide waste disposal policy," and granted police powers to carry out that charge (*id.* at 70); and, (3) The CRRA "is politically accountable to the State, and by extension, to the electorate," (*id.*) in that "[t]he chairman serves at the pleasure of the Governor, and any board member may be removed by the Governor for inefficiency, neglect of duty, or misconduct in office." *Id.* at 71. As described above, the Commission shares these characteristics.

The CTMA expressly confers upon the Secretary broad powers in carrying out the duties and responsibilities of the Commission. § 13995.51. Included in these powers, "the secretary may hold hearings, take testimony, administer oaths, subpoena witnesses, and issue subpoenas for the production of books, records, or documents of any kind." § 13995.55. The tourism assessment rate of which Plaintiffs complain, is, by regulation, set annually by the Office and not subject to referendum. Cal. Code Regs. tit. 10, § 5357(b). The Secretary is charged with approving the contents of and calling referenda, collecting assessments levied on the assessed businesses, pursuing enforcement actions and penalties connected with assessments, and generally "exercise the police powers of the State." § 13995.68. See, also, §§ 13995.51(a), 13995.72, 13995.82, 13995.55. The Commission is, therefore, a political subdivision for antitrust purposes.

2. **The California Tourism Marketing Act Expresses a Clearly-Articulated State Policy.**

The CTMA expresses a "clearly-articulated state policy" enacted by California, entitling the Commission to antitrust immunity. In enacting the CTMA, the California Legislature declared that "Tourism is among California's biggest industries, contributing over fifty-two billion

weintraub genshlea chediak LAW CORPORATION

dollars ($52,000,000,000) to the state economy and employing nearly 700,000 Californians in 1993." § 13995.1(a). The Legislature further declared that "[i]n order to retain and expand the tourism industry in California, it is necessary to market travel to and within California. § 13995.1(b). "State funding, while an important component of marketing, has been unable to generate sufficient funds to meet the threshold levels of funding necessary to reverse recent losses of California's tourism market share." § 13995.1(c). Additionally, the Legislature declared that "[i]t is in the state's public interest and vital to the welfare of the state's economy to expand the market for, and develop, California tourism through a cooperative partnership funded in part by the state that will allow generic promotion and communication programs." § 13995.1(d)(1). It is the express purpose of the statute that "[a]n industry-approved assessment provides a private-sector financing mechanism that, in partnership with state funding, will provide the amount of marketing necessary to increase tourism marketing expenditures by California." § 13995.1(e).

Significantly, the California Legislature expressly immunized anyone acting in compliance with the CTMA, stating that compliance is a "complete defense to the action or proceeding" brought based upon "[a]ny rule of statutory or common law against monopolies or combinations in restraint of trade." § 13995.90(c). This statute evidences the legislature's intent that "the State as sovereign clearly intends to displace competition in a particular field with a regulatory structure," therefore satisfying the clearly-articulated state policy requirement. *Hass v. Oregon State Bar*, 883 F.2d at 1457 (quoting *Southern Motor Carriers Rate Conf. v. United States*, 471 U.S. 48, 64 (1985)).

**3. The Commission Is Immune from Antitrust Liability for the Imposition of the 2.5% Commission Assessment.**

The State of California amended the CTMA effective January 1, 2007, imposing a 2.5% assessment on rental car revenue to fund the Commission. The Commission is immune from antitrust liability for implementing that decision because it was commanded by statute. Section 13995.92 specifically required the Secretary to "call a referendum of the passenger rental car industry as soon as possible, but not later than March 31, 2007." *See* Complaint,

¶ 32. In conducting this referendum, the law commanded the Commission to set the proposed assessment rate "at a level determined by the Commission that will generate funding that will be sufficient, when aggregated together with other funding for the Commission, . . . for a spending plan for the 2006-07 fiscal year of twenty-five million dollars . . . and for the 2007-08 fiscal year of fifty million dollars." § 13995.92; *see, also,* Complaint, ¶ 32. The State of California also contributes funding to the Commission, § 13995.70, as well as administrative functions through the Office such as billing and collection of the assessments. §§ 13995.68, 13995.82.

The entire rental car assessment regime was thus a requirement imposed by the California Legislature and signed into law by the Governor. Under *Goldfarb v. Va. State Bar*, 421 U.S. 773, 791 (1975) "[t]he threshold inquiry in determining if an anticompetitive activity is state action of the type the Sherman Act was not meant to proscribe is whether the activity is required by the State acting as sovereign." When a political subdivision, such as the Commission, acts at the direction of the state legislature, it is entitled to state action immunity "regardless of whether these particular actions or their anticompetitive effects were contemplated by the legislature." *Charley's Taxi Radio Dispatch Corp. v. SIDA of Haw. Inc.*, 810 F.2d 869, 876 (9th Cir. 1987); *see also Town of Hallie*, 471 U.S. at 42.

The California Legislature evinced a policy to augment State funding of its tourism agency with assessments collected from passenger car rental companies, among others. *See* § 13995.92; Complaint, ¶ 32. As in *Hass*, the legislature left the effectuation of this policy to the Commission. *See id.* Therefore, the Commission-run referendum, through which the passenger car rental industry approved the 2.5% assessment level, is conduct not only contemplated but <u>mandated</u> by California's statutory directive. *See Town of Hallie*, 471 U.S. at 44.

Because the Commission is, for these purposes, a political subdivision, its conduct here – determining the statutorily required level of assessment, conducting the referendum, and collecting the assessment and necessary work to accomplish those mandates – is immune from Sherman Act liability without the need for any active state supervision. *Hass v. Oregon State Bar*, 883 F.2d at 1460. Plaintiffs' allegation that some of the Commission members are private

parties does not change this conclusion, because the Commission imposed the assessment on the car rental companies and the Commission is clearly a state entity. For instance, in *Charley's Taxi Radio Dispatch Corp.*, 810 F.2d at 876, the Ninth Circuit immunized private taxi owner-operators for possessing an exclusive franchise to provide service along a particular route because the Court recognized that the State Department of Transportation had immunity for granting the franchise, and the Department of Transportation did not lose its immunity due to the presence of private parties. *See, also, Cine 42nd Street Theater Corp. v. Nederlander Organization*, 790 F.2d 1032, 1048 (2d Cir. 1986) (extending state action immunity to a private party acting under the direction of a governmental unit, without inquiry into active supervision by the state).

Indeed, conduct of a state actor, even if it facilitates anticompetitive activity, is immune from antitrust liability. This is well illustrated by the recent case of *Sanders v. Brown*, 504 F.3d 903, 915 (9th Cir. 2007). At issue in that case was the settlement agreement between California and major tobacco companies. *Id.* at 906. The settlement agreement provided that defendants would pay billions of dollars each year to the State. It was clear, however, that the defendants would raise cigarette prices to pay the settlement, and were concerned that non-participating tobacco companies would undercut their prices. The settlement included legislation requiring such non-settling companies to pay an amount similar to what they would have paid under the settlement into an escrow account if these companies increased their market share after the settlement was finalized. *Id.* at 907. This scheme, which is clearly anticompetitive, was held immune from antitrust liability because it was undertaken by the State. *Id.* at 918. Moreover, because it was not a private party asserting the state actor immunity doctrine, no showing of state supervision was necessary even though the ultimate anti-competitive activity-raising prices was performed by private companies. The same result

///

///

///

///

weintraub genshlea chediak LAW CORPORATION

must apply here, where the state actor, an arm of the Business, Transportation and Housing Agency, undertakes the activity at issue. [10]

4. The Commission Is Immune from Antitrust Liability for the Rental Car Defendants' Decision to Pass Through the 2.5% Assessment to Their Customers.

The Commission is also immune from any antitrust claim stemming from the Rental Car Defendants' passing the 2.5% assessment through to their customers. The CTMA expressly permits this pass-through. § 13995.65(f); Cal. Civil Code § 1936.01(a)(3). Thus, as in establishing the 2.5% assessment, any agreement to which the Commission allegedly was a party to pass through the assessment was also authorized by statute. As outlined above, the CTMA represents a clearly-articulated state policy to promote tourism throughout California. Thus, the Commission is shielded from antitrust liability under the *Parker* doctrine. *See Hass v. Oregon State Bar*, 883 F.2d at 1457 (stating "[t]he legislature will be deemed to have contemplated the challenged activity if the statutes confer 'express authority to take action that *foreseeably* will result in anticompetitive effects.'" *Id.* quoting *Town of Hallie v. City of Eau Claire*, 471 U.S. at 43).

5. The Commission Is Also Immune from Antitrust Liability for the Rental Car Defendants' Decision, if any, to Pass Through the Airport Concession Fee to Their Customers.

The Complaint also alleges that the pass-through of the 9% Airport Concession Fee to customers by the Rental Car Defendants was a horizontal price-fixing scheme. The Commission is also immune from any liability for this. The only acts that the Commission is alleged to have committed were to hold Commission meetings. This conduct is commanded by statute. § 13995.40. The Rental Car Defendants are permitted by statute to pass through this fee to the customers. This conduct, even if it were to facilitate anticompetitive activity, is therefore immune under *Parker*. *Sanders v. Brown*, 504 F.3d at 915.

/ / /

[10] While not required to do so, the Commission could easily satisfy the "active supervision" requirement of the *Midcal* test. The Commission is chaired by the Secretary, the Executive Director of the Commission is the Deputy Secretary, the assessment rate is determined by the Office, twelve of the Commissioners are appointed by the Governor, the budget and the marketing plan must be approved by the Secretary, and the assessments are actually collected by state employees of the Office. This more than meets the supervision requirements in *Midcal*. 445 U.S. at 105-06.

weintraub genshlea chediak LAW CORPORATION

6. The Antitrust Claim Should Be Dismissed with Prejudice.

Plaintiffs cannot amend the Complaint to overcome the fact that the Commission is a political subdivision entitled to immunity for antitrust liability. "Leave to amend need not be granted when an amendment would be futile." *In re Vantive Corp. Sec. Litig.*, 283 F.3d 1079, 1097 (9th Cir. 2002).

B. The Complaint Fails to Allege a Conspiracy or Combination and Should Be Dismissed Under the Standard Articulated in *Twombly*.

Even if the Commission were somehow not subject to *Parker* immunity, the antitrust claim is still an insufficient pleading. In a horizontal price-fixing conspiracy case, the facts alleged must demonstrate an "agreement" among competitors, as opposed to conduct that "stemmed from independent decision." *Theatre Enters., Inc. v. Paramount Film Distrib. Corp.*, 346 U.S. 537, 540 (1954). A complaint that does not sufficiently allege facts to show this "agreement" is subject to dismissal. *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1966 (2007). Plaintiffs fail to meet this test.

1. Plaintiffs' Complaint Utterly Fails to Plead Facts Sufficient to Establish an Agreement Involving the Commission.

In *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, the Supreme Court articulated the requirements for pleading an "agreement" under Section 1 of the Sherman Act. In *Twombly*, users of local telephone services sued telecommunications companies alleging that they had conspired to refrain from entering each other's regions and to block entry by other new competitors. The *Twombly* plaintiffs sought to support their claim by alleging parallel conduct – *i.e.*, that none of the defendants were trying to compete in another's territory – and by making conclusory allegations that they had "agreed" to so refrain. *See id.* at 1962.

a. Under *Twombly*, Allegations of "Parallel Conduct" Are Insufficient.

A Section 1 claim must allege more than parallel conduct:

> Without more, parallel conduct does not suggest conspiracy, and a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality. Hence, when allegations of parallel conduct are set out in order to make a section 1 claim, they must be placed in a context that raises a suggestion of a preceding agreement, not merely parallel conduct that could just as well be independent action. *Id.* at 1966 (emphasis added).

weintraub genshlea chediak LAW CORPORATION

The Supreme Court stated that "there is no reason to infer that the companies had agreed among themselves to do what was only natural anyway." *Id.* at 1971. Finding that alleged parallel conduct was as consistent with defendant's independent business interests as it was with conspiracy, the Supreme Court held that alleged parallel conduct, coupled with conclusory allegations of an agreement, failed to state a claim under Section 1 of the Sherman Act. *Id.* at 1966. Even parallel conduct "consciously undertaken" is not sufficiently suggestive of the "meeting of the minds" necessary for Section 1 liability. *Id.*

b. Under *Twombly*, Allegations of "Opportunity" Are Also Insufficient.

*Twombly* also establishes that alleging an opportunity to conspire is not enough, even if the opportunity is pled in conjunction with allegations of parallel conduct. *See id.* at 1971 and fn. 12. To survive a motion to dismiss, a complaint alleging a violation of Section 1 of the Sherman Act must allege sufficient facts to make an inference of conspiracy plausible. *Id.* at 1966. To do so, the factual allegations must support an agreement among the defendants, "as distinct from identical, independent action." *Id.* at 1961. If the allegations of the complaint are "consistent with conspiracy but just as much in line with a wide swath of rational and competitive business strategy unilaterally prompted by common perceptions of the market," the Section 1 claim must be dismissed. *Id.* at 1964.

c. Under *Twombly*, Antitrust Allegations Are Closely Scrutinized.

Because antitrust litigation is unusually costly and burdensome, *Twombly* requires close scrutiny of the adequacy of allegations of an "agreement." *Id.* at 1964. "It is no answer to say" that meritless claims can be weeded out in the discovery process. *Id.*

Here, Plaintiffs allege only parallel conduct of <u>others</u> (the Car Rental Defendants), and an opportunity to conspire. Plaintiffs do not, and cannot, allege any such conduct on the part of the Commission because it is not involved in, and has absolutely no interest in, setting prices for car rentals in California. Plaintiffs do not allege any additional facts that would make it "plausible" that the Commission would engage in the alleged conspiracy.[11]

---

[11] Plaintiffs appear to allege that the Commission is conspiratorial because it is "controlled by private industry" and infer that Rental Car Defendants exercise that control. Complaint, ¶¶ 30, 37. Actually, Rental Car Defendants are limited to a total of six of thirty-seven Commissioners. § 12995.40.5(a).

weintraub genshlea chediak LAW CORPORATION

### 2. The Complaint Fails to Allege any Facts Showing That the Commission Entered Into any Agreement with the Defendants.

The Commission joins in the analysis of the Rental Car Defendants' motion to Dismiss filed on January 25, 2008. The Complaint contains even fewer factual allegations regarding any "agreement" to which the Commission was a party. The first allegation regarding the Commission is merely speculation as to whether the Commission even did anything:

> ***To the extent the CTTC was involved*** to coordinate communications and to facilitate that pricing increase, that CTTC (a) lacks statutory authority to coordinate a horizontal price fix by the Rental Car Defendants, or otherwise among its membership, and (b) lacks independent state supervision status due to its control by private parties. The scheme of the Rental Car Defendants involved a conspiracy in which the CTTC participated by, *inter alia*, facilitating the two unlawful price fixes: (a) a 2.5% CTTC assessment, and (b) the 9% Airport Concession Fee, not as an authorized billing format change, but as a substantive charge add-on of the newly disaggregated fee. Complaint, ¶ 37 (emphasis added).

This allegation conspicuously fails to allege that the Commission actually did anything at all.

The remaining allegations are merely formulaic and conclusory:

> Defendants CTTC and Beteta, in her capacity as the Executive Director of the CTTC, had knowledge of, <u>facilitated and participated in</u> the combination, contract and conspiracy, including the formation and implementation thereof. Complaint, ¶ 43 (emphasis added).

> Plaintiffs allege that Defendants "<u>communicat[ed] and agree[d]</u> with each other regarding prices to be charged consumers for the CTTC surcharge and car rental rates." Complaint, ¶ 44(b) (emphasis added).

> Plaintiffs allege that Defendants "<u>facilitate[ed] and coordinat[ed]</u> communication among the Car Rental Defendants to fix surcharge levels. Complaint, ¶ 44(e) (emphasis added).

> Defendants and each of them have furthered the scheme through <u>acts of concealment</u>, including violation of the Bagley-Keene Act . . .. Complaint, ¶ 46 (emphasis added).

These conclusory allegations that the Commission "facilitated," "participated," "communicated," "agreed," "coordinated," or "concealed" in a conspiracy with Rental Car Defendants do not satisfy the *Twombly* requirement of establishing that a conspiracy is plausible. Plaintiffs do not describe <u>how</u> the Commission "facilitated and participated" in any combination or conspiracy. Nor do they explain <u>when</u> or <u>what</u> they allegedly "communicated and agreed" regarding prices. Plaintiffs have not actually described any way in which the Commission

weintraub genshlea chediak
LAW CORPORATION

"facilitated and coordinated" any communication, except by holding meetings which it is required by statute to hold. § 13995.40. Plaintiffs also have not shown how any of the alleged Bagley-Keene Act violations, which they allege occurred between August 1, 2007, and November, 2007, could have "concealed" a scheme to increase prices on January 1, 2007, eight to ten months earlier.

Formulaic and conclusory allegations such as these do not permit an inference of conspiracy. *See, e.g., In re Late Fee & Over-Limit Fee Litig.*, No. C 07-0634, 2007 WL 4106353, at *8; *In re Travel Agent Comm'n Antitrust Litig.*, No. 1:03 CV 30000, 2007 WL 3171675, *9 (N.D. Ohio Oct. 29, 2007) (facts in complaint detailing private meetings, industry events, trade shows, business ventures, and golf outings failed to satisfy *Twombly* because "[p]roof that Defendants had an opportunity to conspire does not satisfy Plaintiff's burden of proving a price-fixing agreement"); *In re Graphics Processing Units Antitrust Litig.*, No. C 06-07417, 2007 WL 2875686, at*11 ("Attendance at industry trade shows and events is presumed legitimate and is not a basis for which to infer a conspiracy, without more."); *see also In re Citric Acid Litig.*, 191 F.3d 1090, 1098 (9th Cir. 1999) (finding evidence of participation in trade association insufficient evidence of conspiracy at summary judgment stage).

If there is any inference to be drawn from the facts alleged by Plaintiffs, it is that the Commission has absolutely no interest in the prices being set by the Rental Car Companies and has no relationship whatsoever to the Airport Concession Fees. As discussed above, the required rate was set by the Office, a referendum was called by the Secretary, and collections are made by the Office and its state employees. Cal. Code Regs. tit. 10, § 5357.1. Even the assumption which is the base of Plaintiffs' case – that unbundling hurts consumers – is conclusory. It can equally be argued that unbundling provides more complete market information and, as evidenced by the recent introduction of SB 1057 by Senator Migden, is a value judgment most appropriately left to the California Legislature. See Rental Car Defendants' Request for Judicial Notice.

/ / /

/ / /

**C. Antitrust Liability Cannot Attach to the Commission for the Legislative Lobbying Efforts of the Rental Car Defendants.**

The crux of Plaintiffs' Complaint is that the California Legislature passed legislation that Plaintiffs do not like and lobbied against. To the extent Plaintiffs' allegations seek to implicate the Commission with respect to anyone else's lobbying activities in connection with AB 2592 (see Complaint, ¶¶ 32, 36), petitioning the government is a fundamental First Amendment right and is immune from antitrust liability. *Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 136 (1961) ("[w]e think it ... clear that the Sherman Act does not prohibit two or more persons from associating together in an attempt to persuade the legislature or the executive to take particular action with respect to a law that would produce a restraint or a monopoly."); *see Ernest W. Hahn, Inc. v. Codding*, 615 F.2d 830, 834 n.1 ("[t]he *Noerr-Pennington* doctrine establishes the general rule that lobbying or other efforts by businessmen to obtain legislative, executive, or judicial action will not violate the antitrust laws, even though the purpose of their efforts may be to eliminate competition or otherwise restrain trade").[12]

**D. The Complaint Fails to State a Claim for Unfair Competition.**

Plaintiffs' claim under the Unfair Competition Law (the "UCL") must also fail. First, the Commission is immune from UCL liability because, as a public entity, it is not a "person" under the UCL. Second, Plaintiffs' purported UCL claim is barred by an express statutory grant of immunity. § 13995.90(c). Third, Plaintiffs do not and cannot allege facts sufficient to establish a UCL claim. The second and third bases for dismissal are fully briefed in the Rental Car Defendants' motion to dismiss, and the Commission joins in that motion. This brief will address the first basis, the Commission's immunity as a State actor.

/ / /

/ / /

/ / /

---

12 In fact, the Ninth Circuit has extended *Noerr-Pennington* to the by-products of petitioning the government, stating that "We have . . . explicitly held that *Noerr-Pennington* immunity protects a private party not only for the petition but also from injuries that result "directly" from valid government action taken on the petitioner's behalf." *Sanders v. Brown,* 504 F.3d 903, 914 (9th Cir. 2007). Thus, even if the state action doctrine does not protect Rental Car Defendants and Commission from setting the assessment and passing on the tourism assessment and Airport Concession Fee, *Noerr-Pennington* does.

weintraub genshlea chediak LAW CORPORATION

**1. The Commission Is Immune from UCL Liability Because, as a Public Entity, It Is not a "Person" for UCL Purposes.**

State agencies and public entities such as the Commission are not "persons" as defined by the UCL. *People for the Ethical Treatment of Animals, Inc. v. California Milk Producers Advisory Bd.*, 125 Cal.App.4th 871, 877-78 (2005) ("PETA v. CMAB"); *Trinkle v. California State Lottery*, 71 Cal.App.4th 1198, 1202 (1999); *Santa Monica Rent Control Board v. Bluvshtein*, 230 Cal.App.3d 308, 318 (1991). Public entities such as the Commission are not subject to suit under the UCL. *PETA v. CMAB*, 125 Cal.App.4th at 875.

In *PETA v. CMAB*, the court compared the UCL with the Unfair Practices Act ("UPA"). The UPA has "its own definition of 'person' to include 'any person, firm, association, organization, partnership, business trust, company, corporation, or *municipal or other public corporation*.'" *Id.* at 879. The court noted that the definition of "person" in section 17201 "omitted 'municipal or other public corporation.'" *Id.* "Therefore, had the Legislature wished to include governmental entities, such as CMAB [or the Commission], in its definition of 'person[s]' subject to UCL liability it would have done so." *Id.*

As outlined above, the Commission is a nonprofit, mutual benefit corporation formed for an express public purpose. It was established pursuant to California legislation to take over functions of the Office of Tourism within the California Business, Transportation and Housing Agency. § 13995.20(g). The Commission is strikingly similar to the California Milk Producers Advisory Board ("CMAB"), which was found to be immune from UCL liability as a public entity in *PETA v. CMAB*, 125 Cal.App.4th at 875. CMAB was "created by a marketing order issued by the California Department of Food and Agriculture" to promote California milk and dairy products. *PETA v. CMAB*, 125 Cal.App.4th at 875. CMAB promotes the California dairy industry through "advertising, merchandising, public relations, education and research." *Id.* In doing so, CMAB attempts to "increase the demand for milk produced by the California dairy farmers." *Id.* Similarly, the Commission was formed to promote tourism in California, a traditional governmental function. CMAB has UCL immunity despite having been established by a marketing order, whereas the Commission was established by statute, fully considered by both houses of the Legislature and signed by the Governor. Plaintiffs cannot amend the complaint to

overcome this defect. "Leave to amend need not be granted when an amendment would be futile." *In re Vantive Corp. Sec. Litig.*, 283 F.3d 1079, 1097 (9th Cir. 2002).

**2. The UCL Claim Should Be Dismissed Because the Government Code Contains an Express Grant of Immunity.**

The Rental Car Defendants' Motion to Dismiss sets forth the immunity granted by section 13995.90. See p. 15. Plaintiffs allege that the Commission held meetings. These meetings were held pursuant to statute. Thus, any actions alleged against the Commission were in compliance with the CTMA and therefore also immune. The Commission joins in the Rental Car Defendants' motion on this point, as well as the point that the Complaint fails to allege facts to show that defendants acted unlawfully. See pp. 16-21. The Complaint contains far fewer allegations of conduct by the Commission, and for the reasons explained in the Rental Car Defendants' motion, fails to establish unfair competition against the Commission.

**E. The Court Should Dismiss the Bagley-Keene Open Meeting Act Claim or Decline to Exercise Supplemental Jurisdiction Over It.**

The first two claims contain only the most conclusory allegations regarding the Bagley-Keene Open Meeting Act ("Bagley-Keene Act"). The Complaint alleges that Defendants met, under the guise of attending the Commission meetings, and agreed among themselves "to fix, increase, maintain or stabilize components of the process for airport car rentals . . .." Complaint, ¶ 44(a). The only allegation regarding any Bagley-Keene Act violations in conjunction with the antitrust claim is that the Bagley-Keene Act violations were done to further concealment of an agreement. Complaint, ¶¶ 44(c), 46. However, this claim is facially impossible. Any agreement to fix prices, the crux of Plaintiffs' horizontal price fixing allegations, must have occurred prior to January 1, 2007, the date on which Plaintiffs allege that all Rental Car Defendants simultaneously raised prices. All the Bagley-Keene Act violations Plaintiffs complain of in the third claim occurred on or after August 1, 2007[13], eight months after the price increase. You cannot conspire and agree to do something in the past.

---

[13] Nor could the complaint competently allege otherwise. Plaintiffs pray for issuance of an injunction under Government Code § 11130. Complaint, 20:23-25. An injunction under Government Code § 11130 will issue only to prevent ongoing or future violations of the CTMA. § 111309(c). The statute of limitations to reverse an action of a state body is 90 days. §§ 11130(c) and 11130.3(a).

weintraub genshlea chediak LAW CORPORATION

**1. Any Claim that Bagley-Keene Act Violations Facilitated the Alleged Antitrust Conspiracy Is Time-Barred.**

Even assuming that (i) Bagley-Keene Act violations occurred and (ii) that they led to facilitating a conspiracy, Plaintiffs' claims in that regard are time-barred. The Bagley-Keene Act by its own terms applies to actions to reverse a prior action by a state body. Any injunction under section 11130 as requested by Plaintiffs applies only to present or future conduct, not to past conduct. *Regents of the University of California v. Superior Court,* 20 Cal.4th 509, 85 Cal.Rptr. 257 (1999) (overruled by statute on 30 day statute of limitations). Thus, the Bagley-Keene Act claims are either (i) factually unrelated to the antitrust and UCL allegations (a conspiracy alleged to have occurred months before the 90-day statute of limitations) or (ii) are completely unrelated to the antitrust and UCL allegations as completed acts not subject to injunction under the Bagley-Keene Open Meeting Act. The statute of limitations for Plaintiffs' claims is 90 days. §§ 11130(c) and 11130.3(a). Any meetings conspiring to fix prices as of January 1, 2007 obviously took place long before August 14, 2007 – the earliest date not time barred.

**2. The Allegations of Bagley-Keene Act Violations in the Third Cause of Action Are Not Transactionally Related to the Antitrust Allegations and, Therefore, Do Not Form Part of the Same Case or Controversy as Those Alleged in the Other Causes of Action.**

Plaintiffs' third cause of action is completely unrelated to Plaintiffs' antitrust or unfair competition claims. In fact, there is not even a logical allegation that any violation of the Bagley-Keene Act contributed to the first two claims complained of conduct. Supplemental jurisdiction is proper where the relationship between the federal and state claims is such that they form "part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). The longstanding rule has been that a single case existed in the constitutional sense wherever the state and federal claims arose from a "common nucleus of operative facts" such that plaintiff would ordinarily be expected to try them in a single judicial proceeding. *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966). "The statute extends the jurisdiction of a federal district court to all claims sufficiently related to the claim on which its original jurisdiction is based to be part of the same case or controversy within the meaning of

Article III of the Constitution." *Baer v. First Options of Chicago, Inc.*, 72 F.3d 1294, 1299 (7th Cir. 1995). There is no "common nucleus of operative facts" between the Bagley-Keene Act violations alleged in the third cause of action and the antitrust allegations in the rest of the Complaint as noted above, which occurred as alleged in the Complaint, in completely inconsistent time periods. *Kersner v. Clemens*, 225 F.3d 227, 239 (2nd Cir. 2000); *Lyon v. Wissman*, 45 F.3d 758, 760 (3rd Cir. 1995).[14]

### 3. The Court Should Decline to Exercise Supplemental Jurisdiction Over the California Bagley-Keene Act Claim under Comity Principles.

It has been clearly "established that pendent (supplemental) jurisdiction is a doctrine of discretion, not of plaintiff's right . . .." *City of Chicago v. International College of Surgeons*, 522 U.S. 156, 172 (1997). The Court may also decline to exercise jurisdiction simply on the basis of convenience, fairness to the parties, judicial economy and, most relevantly here, comity. *Executive Software No. America, Inc. v. United States District Court (Page)*, 24 F.3d 1545, 1552-55 (9th Cir. 1994). In addition to the Court's discretion under U.S.C. section 1367(c), where, as here, the relief sought is equitable or otherwise discretionary, the Court may invoke abstention principles to stay the action or to decline jurisdiction altogether by dismissing the action. *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 717-22 (1996).

The Third Cause of Action, seeking only injunctive and declaratory relief, will require the Court to interpret California's Bagley-Keene Act. The Bagley-Keene Act, despite having been enacted in 1967, is litigated extremely infrequently.

The Ninth Circuit recently declined to interpret the Bagley-Keene Act in a similar situation. *Southern California Edison Co. v. Lynch*, 307 F.3d 794 (9th Cir. 2002). The question presented

---

[14] Further, the Complaint does not allege that these defendants failed to give notice of meetings, but that the notices were "inadequate" or "insufficiently described," or that the CTTC failed "to identify the citation of the specific statutory authority under which a closed session is being held. Complaint, ¶ 66. Such violations, if any, of the Bagley-Keene Act, whether technical or substantive, have nothing to do with the price-fixing allegations. Thus, not even a "loose factual connection" exists between the antitrust claims and the State Bagley-Keene Act claim, against CTTC Defendants. Such a connection between the federal and state claims is the very minimum needed to support the Court's exercise of supplemental jurisdiction. *Baer v. First Options of Chicago, Inc.* 72 F.3d 1294, 1299.

Thus, as alleged in the Complaint, any Bagley-Keene Act violations had nothing to do with the alleged antitrust violations. The two are not transactionally related, and therefore are not part of the same claim or controversy. Supplemental jurisdiction is not properly exercised over the alleged Bagley-Keene Act violations, and Plaintiffs have not alleged any independent basis for federal jurisdiction over this claim.

weintraub genshlea chediak LAW CORPORATION

to the court was the enforceability of a settlement agreement, and the court indicated that the agreement appeared to violate the Bagley-Keene Act as it was approved and signed in a closed meeting. *Id.* at 810-11. The issue was whether the manner in which the meeting was held violated the Bagley-Keene Act. Rather than decide the issue, however, the Court certified the question to the California Supreme Court, stating "[r]esolution of the state law issues involved in this litigation will have a substantial effect on California law and the citizens of California. Accordingly, principles of comity suggest that those decisions should be made by California courts." *Id.* at 812. The California Supreme Court, which the Ninth Circuit recognized as the proper court to decide the issue, then ruled that no violation of State law had occurred. *Southern California Edison Co. v. Lynch*, 353 F.3d 648 (9th Cir. 2003).

The Bagley-Keene Act is an expression by the California Legislature that, in order to protect the citizens of California, meetings of its own government agencies should be held in the open. In harmony with the Brown Act, a counterpart statute is applicable to local government bodies, these schemes are intended to protect the public's right to participate in the functioning of local and state government agencies and bodies. This is a fundamental public policy of the State of California. §§ 11120, 54950; *Gillespie v. San Francisco Pub. Library Commission*, 67 Cal.App.4th 1165, 1169 (1998).

The Commission is a creation of, and is governed by, State law. §§ 13995 *et seq*. The question of whether the state agency complied with the statute and held its meetings in public is one best left to the state courts. *Southern California Edison Co. v. Lynch*, 307 F.3d at 811. This is especially true where, as here, the claimed violations have nothing to do with any federal concerns properly before this Court. The Court should decline to exercise jurisdiction over this claim and require Plaintiffs to bring any such issues before the California state courts.[15]

/ / /

[15] For example, one area cited by Plaintiffs is the Commission's use of "other business" in certain agendas. Complaint, ¶ 61. California's courts are best suited to determining whether such an agenda item is a violation or, as the Commission contends, an additional point of information for the public not required to even be included in the notice. Bagley-Keene does not require notice of non-action items. "The notice shall . . . include a brief description of the items of business to be <u>transacted</u> or <u>discussed</u>." § 11125(b) (emphasis added). It does not include items to be <u>reported</u>.

weintraub genshlea chediak LAW CORPORATION

## IV. CONCLUSION

For the foregoing reasons, the Commission respectfully requests that its motion to dismiss be granted without leave to amend.

Dated: February 8, 2008

Respectfully submitted,

WEINTRAUB GENSHLEA CHEDIAK
Law Corporation

By: /s/ Thadd S. Blizzard
Thadd A. Blizzard
California State Bar No. 83297
Attorneys for Defendant The California Travel and Tourism Commission

EDMUND G. BROWN JR., Attorney General of the State of California
W. DEAN FREEMAN
FELIX E. LEATHERWOOD
Supervising Deputy Attorneys General
RONALD N. ITO
DIANE SPENCER SHAW
LISA W. CHAO
Deputy Attorneys General

By: /s/ Ronald N. Ito
Ronald N. Ito
California State Bar No. 71322
Attorneys for Defendant California Travel and Tourism Commission

weintraub genshlea chediak
LAW CORPORATION