CENTER FOR PUBLIC INTEREST LAW
UNIVERSITY OF SAN DIEGO SCHOOL OF LAW
ROBERT C. FELLMETH, SBN 49897
cpil@sandiego.edu
ED HOWARD, SBN 151936
JULIANNE D'ANGELO FELLMETH, SBN: 109288
5998 Alcala Park
San Diego, CA  92110
Telephone:     (619) 260-4806
Facsimile:     (619) 260-4753

SULLIVAN HILL LEWIN REZ & ENGEL
A Professional Law Corporation
DONALD G. REZ, SBN 82615
rez@shlaw.com
550 West "C" Street, Suite 1500
San Diego, CA  92101
Telephone:     (619) 233-4100
Facsimile:     (619) 231-4372

HULETT HARPER STEWART LLP
DENNIS STEWART, SBN : 99152
dstewart@hulettharper.com
JENNIFER A. KAGAN, SBN: 234554
jenni@hulettharper.com
550 West C Street, Suite 1600
San Diego, CA  92101
Telephone:     (619) 338-1133
Facsimile:     (619) 338-1139

Attorneys for Plaintiffs

**IN THE UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MICHAEL SHAMES; GARY GRAMKOW, on behalf of themselves and on behalf of all persons similarly situated,<br><br>             Plaintiffs,<br><br>v.<br><br>THE HERTZ CORPORATION, et al.,<br><br>             Defendants. | Case No. 07CV2174H(BLM)<br><br>**<u>CLASS ACTION</u>**<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT CALIFORNIA TRAVEL AND TOURISM COMMISSION'S MOTION TO DISMISS**<br><br>DATE:      April 1, 2008<br>TIME:       10:30 a.m.<br>JUDGE:    Honorable Marilyn L. Huff<br>CTRM:     13 |

## I. INTRODUCTION

Plaintiffs file this brief in Opposition to the Motion to Dismiss filed by Defendant California Travel and Tourism Commission ("CTTC").[1] The majority of the arguments presented by the CTTC are addressed in Plaintiffs' Opposition to Motions to Dismiss, filed in conjunction herewith.[2] To the extent that the CTTC has presented unique arguments, they are addressed here.

## II. PLAINTIFFS' STATE LAW CLAIMS ARE PROPERLY BEFORE THIS COURT

### A. This Court Should Exercise Supplemental Jurisdiction over Plaintiffs' Bagley-Keene Act Claim

This Court should exercise pendent, or what is now referred to as supplemental, jurisdiction pursuant to 28 U.S.C. § 1367(a) over Plaintiffs' Bagley-Keene Act claim[3] because that claim shares a common nucleus of operative facts with the Plaintiffs' federal Sherman Act claim and because judicial economy, convenience, and fairness would be undermined by litigating the Bagley-Keene Act claim in a new, parallel lawsuit in state court. *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966) ("*Gibbs*"); *Exec. Software N. Am. v. U.S. Dist. Court*, 24 F.3d 1545, 1551 (9th Cir. 1994).

Analysis of supplemental jurisdiction begins with 28 U.S.C. § 1367(a), which provides:

> (a) Except as provided in subsections (b)[4] and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

---

[1] Plaintiffs agree to dismiss Caroline Beteta from this action. Plaintiffs will also agree to dismiss their UCL claim against the CTTC.

[2] Specifically, Defendants' arguments regarding state action immunity under *Parker v. Brown* and the *Twombly* standard on a motion to dismiss are addressed in Plaintiffs' Opposition to Motions to Dismiss.

[3] Because Plaintiffs have agreed to dismiss its UCL claim against Beteta and the CTTC and the Rental Car Defendants have not challenged the Court's supplemental jurisdiction over the UCL claim, Plaintiffs will not address that claim.

[4] Subdivision (b) is inapplicable here because it governs supplemental jurisdiction when federal jurisdiction is based on diversity pursuant to § 1332. Here, this Court's jurisdiction is based on the federal questions raised by Plaintiffs' Sherman Act claim over which this Court has original jurisdiction pursuant to 28 U.S.C. §§ 1337 and 1331.

28 U.S.C. § 1367(a). The exercise of this supplemental jurisdiction in the first instance rests in the sound discretion of this Court, but that discretion must be infused with and impelled by certain practical and common-sense considerations that are at its foundation. As the Supreme Court stressed in *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343 (1988):

> Under *Gibbs*, a federal court should consider and weigh in each case, at every stage of the litigation, *the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction over a case brought in that court involving pendent state law claims*. When the balance *of these factors* indicates that a case properly belongs in state court, *as* when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction . . . . As articulated by *Gibbs*, the doctrine of pendent jurisdiction thus is a doctrine of flexibility, designed to allow courts to deal with cases involving pendent claims in the manner that *most sensibly accommodates a range of concerns and values*.

*Id*. at 350 (citation and footnote omitted, emphasis added) (quoted and cited with approval, *Exec. Software N. Am.*, 24 F.3d at 1553 ("[*Gibbs*] establishes that pendent jurisdiction doctrine is designed to enable courts to handle cases involving state law claims in the way that *will best accommodate the values of economy, convenience, fairness, and comity*, and *Gibbs* further establishes that the Judicial Branch is to shape and apply the doctrine in that light.") (citing *Gibbs*, 383 U.S. at 351) (emphasis in original)); *see also Hagans v. Lavine*, 415 U.S. 528, 545 (1974).[5]

As the Supreme Court also observed in *Carnegie-Mellon*, when the balance of these practical considerations "indicates that a case properly belongs in state court, as when the federal claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction." *Carnegie-Mellon Univ.*, 484 U.S. at 350 (footnote omitted). But the mirror image is also true: When it "will best accommodate the values

---

[5] The statute reads broadly because it is meant to be broad. As one commentator explains:

> Subsection (a) of the supplemental jurisdiction statute is a broad grant of supplemental jurisdiction, extending to the full extent of Article III. Subject to the exceptions provided in subsections (b) and (c), or as expressly provided otherwise by federal statute, in any civil action in which the district court has original jurisdiction, it also has supplemental jurisdiction over "'all other claims that are so related to claims in the action within original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."

16-106, James Wm. Moore, et al., *Moore's Federal Practice*, Civil ¶ 106 (3d ed. 2007).

of economy, convenience, fairness, and comity" the federal court should not require the filing of another lawsuit and should retain jurisdiction over state law claims. *See id*. at 351. In point of fact, Congress has carefully limited those instances where otherwise proper supplemental jurisdiction may be denied.

The Ninth Circuit explained the relationship between section 1367(a), where supplemental jurisdiction "shall" exist, and the enumerated exceptions to that mandate in subdivision (c), in *Executive Software North America*:

> Congress, in codifying supplemental jurisdiction, has chosen to codify as well the discretionary factors that warrant declining jurisdiction. Section 1367(a), providing that "the district courts *shall* have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution," confers power to entertain supplemental jurisdiction in mandatory terms. By use of the word "shall," the statute makes clear that if power is conferred under section 1367(a), and its exercise is not prohibited by section 1367(b), a court can decline to assert supplemental jurisdiction over a pendent claim only if one of the four categories specifically enumerated in section 1367(c) applies . . . . By selecting this statutory structure, it is clear that Congress intended section 1367(c) to provide the exclusive means by which supplemental jurisdiction can be declined by a court.

24 F.3d at 1555-56 (citation and footnote omitted; emphasis in original).

In sum, when considering whether the CTTC is correct that Plaintiffs' Bagley-Keene Act claim should be litigated in another, parallel state court proceeding, they must demonstrate that the values of judicial economy, convenience, and fairness to the litigants would not be offended by such a result. *Hagans*, 415 U.S. at 545.

**B.     The Court Should Not Require Plaintiffs to File a Separate Lawsuit Seeking to Block the CTTC from Unlawfully Meeting in Secret**

Plaintiffs' state claim alleging that the Defendants (including the CTTC) together all conspired *in secret* to violate the Sherman Act in a way that violates California's open meeting laws logically has a common nucleus of operative fact to Plaintiffs' claim of an unlawful conspiracy to violate the Sherman Act.

Moreover, the values of judicial economy, convenience, and fairness to the litigants as well as comity to state courts persuade that Plaintiffs should not have to file a parallel lawsuit blocking

3

the CTTC from unlawfully meeting in secret because Plaintiffs' Bagley-Keene Act state law claim has already substantially been resolved while in this federal court. The CTTC and Beteta Defendants sought from Plaintiffs an interim resolution governing their future meetings after Plaintiffs filed their motion for a preliminary injunction in this Court seeking enforcement of the Bagley-Keene Act. Thus, the Plaintiffs and Defendants cooperatively *and under the aegis of this federal court* jointly moved for an interim order addressing many of the Plaintiffs' Bagley-Keene Act allegations. This Court signed the order on December 12, 2007. While some issues remain, and there are questions about whether the Court's order was obeyed, this Court's interim order if made permanent would resolve most of this state claim.

That the parties have negotiated and submitted a joint order to this Court – and that this Court issued such an order − is what distinguishes this case from *Southern California Edison Co. v. Lynch*, 353 F.3d 648 (9th Cir. 2003), relied upon by the CTTC. CTTC Mem. at 24. Here, the parties appear to have reached at least a tentative resolution of most of the outstanding Bagley-Keene Act claims. They have done so by mutually invoking the ongoing authority of this Court. In *Edison*, by contrast, the parties were still contesting vigorously the Bagley-Keene Act claim. Moreover, the issue in *Edison* was both legal and novel: whether the Bagley-Keene Act is violated when public officials agree to settle a case in closed session. In vast contrast, as revealed both by the provisions of the joint order, the Complaint, and even the barest review of Plaintiffs' Motion for a Preliminary Injunction, the allegations here are both almost exclusively factual and factually incontestable.

Furthermore, while CTTC is correct that in *Edison* the Ninth Circuit certified the Bagley-Keene Act issue to the California Supreme Court, the Ninth Circuit retained jurisdiction over the matter and it was that federal court that issued the dispositive ruling. *S. Cal. Edison Co.*, 353 F.3d 648.[6]

Having already largely addressed this important claim in this federal court, it would be wasteful to begin the process of adjudicating and resolving it afresh in state court. Indeed, to

---

[6] The CTTC cites the same Ninth Circuit's Per Curiam opinion (CTTC Mem. at 24) but does not acknowledge that the federal appellate court retained jurisdiction when it certified the issue to the California Supreme Court.

prevent just such a needless waste of time, money, and resources, federal District Courts in this Circuit have sensibly retained jurisdiction over state claims in some instances *even when the underlying federal claims have been entirely dismissed*.

Thus, in *Ponce v. GMC*, No. CV-01-56-ST, 2002 U.S. Dist. LEXIS 27974 (D. Or. Nov. 13, 2002), the only remaining claims were state ones for assault and battery and intentional infliction of emotional distress. Pointing to exactly the kind of common-sense factors stressed in *Gibbs* and its progeny, the Magistrate (in reasoning adopted by the District Court) reasoned that the values of "economy, convenience, fairness and comity" were served by retaining jurisdiction over the state law claims even though all of the federal claims had been dismissed.

> Here, this court's continuing exercise of jurisdiction will serve "the values of economy, convenience, fairness and comity." Discovery has been completed and dispositive motions have been filed. Once these motions are decided, the parties will be ready for trial. Although Ponce initially filed this action in state court, indicating his preference for that jurisdiction, a return to state court may jeopardize his ability to obtain a timely trial. The Multnomah County Circuit Court for the State of Oregon has recently announced that due to a budgetary crisis, it may suspend all civil trials for an extended period of time. Therefore, this court recommends retaining jurisdiction of the two remaining state law claims against Kaleikilo.

*Ponce*, 2002 U.S. Dist. LEXIS 27974, at *42. Moreover, in *La Patagonia Compania Argentina de Seguros, S.A. v. Empresa Lineas Maritimas Argentinas, S.A.*, Case No. C 91-2634 BAC, 1992 U.S. Dist. LEXIS 15281, at *10-*11 (N.D. Cal. Apr. 7, 1992), the District Court in the interest of judicial economy, exercised supplemental jurisdiction over supplemental state claims, even though the statute of limitations had run on the principal federal claim.[7]

### C. While the CTTC Argues that It Is Distant from the Case in Controversy, the Rental Car Defendants' Motion to Dismiss Argues Otherwise

The CTTC argues that "[i]f there is any inference to be drawn from the facts alleged by Plaintiffs, it is that the Commission has absolutely no interest in the prices being set by the Rental Car Companies and has no relationship whatsoever to the Airport Concession Fees." CTTC Mem.

---

[7] The CTTC does not argue that the conditions for dismissal under 28 U.S.C. § 1367(c) are met. The Bagley-Keene Act claim does not "substantially predominate" over the Sherman Act claim. This Court has not dismissed the federal claim and the CTTC has not pointed to "exceptional" or other "compelling" reasons to deny supplemental jurisdiction.

5

at 18 (emphasis omitted).  But, in contrast, the Rental Car defendants place the CTTC at the epicenter of their Motion to Dismiss.  Indeed, they cast the 2.5% assessment not as one assessed by the Defendants on themselves but repeatedly as the "CTTC assessment."  *See, e.g.*, Rental Car Defs.' Mem. at 3, 6, 12.

Moreover, the Rental Car defendants argue that the *Noerr-Pennington* doctrine shields them from Sherman Act liability because the assessment was not an assessment of companies on each other but really an effort to "lobby" the CTTC (Rental Car Defs.' Mem. at 12) and they argue that "legislatively-sanctioned decision of the CTTC's rental car members to impose a 2.5% self-assessment to fund the CTTC is immune from [liability]."  *Id.* at 13.

Indeed, the Rental Car defendants argue that business-run CTTC – far from being a bystander in the case − stood to benefit by tens of millions of dollars from the assessments the Defendants agreed to charge each other.  *Id.* at 4.  While the Rental Car defendants for some reason do not say precisely how much the CTTC stands to benefit (*id.* at 4, referencing only an "increase" in funding) the Assembly Floor analysis they seek the court to notice makes clear the dimensions of the CTTC's stake:  a nearly ten-fold increase in its funding from about $7 million to $50 million.  All this extra money is for an "agency" that is not run by or funded by any government and that, if the CTTC is to be believed, is also somehow a stranger to the facts that give rise to its substantial increase in funding.

    **D.**    **Plaintiffs' Bagley-Keene Act Claim Is Not Time-Barred, as Defendants' Violations Are Ongoing**

CTTC argues that Plaintiffs' Bagley-Keene Act cause of action is time-barred because it supposedly is based upon those violations that are alleged to have occurred in furtherance and as a part of the conspiracy to violate the Sherman Act.  CTTC Mem. at 22.  This argument must be rejected for three reasons:

First, in the Complaint (¶ 69), Plaintiffs allege that the violations of the Bagley-Keene Act are "continuing."  Since the claim alleges "continuing" violations of the Act, it is not applying just to "past conduct" as CTTC argues (CTTC Mem. at 23) and instead applies to "present or future conduct" (*id.*) which is by definition not time-barred.

6

Second, the Bagley-Keene Act cause of action is based upon this Court's supplemental jurisdiction, as the CTTC itself acknowledges. *Id.* at 23. It is a state law claim that exists and may be adjudicated apart from Plaintiffs' Sherman Act claim. Indeed, under the authorities discussed above, Plaintiffs' Bagley-Keene Act claim may be adjudicated by this Court even if the federal claim for some reason fails. Thus, because the claim alleges continuing violations of a state law that has force and effect independent of the facts that gave rise to the Sherman Act claim, this Court has jurisdiction of those Bagley-Keene Act violations that are ongoing and that might not have occurred in furtherance of the alleged conspiracy.

Phrased differently, the time for filing a complaint based on alleged *continuing* violations of the Act cannot be timed from the date of those violations that are alleged to have played a role in the antitrust conspiracy.

Third, this Court has already signed a joint motion of the parties for an interim order requiring the CTTC to abide by various portions of the Act. This interim order follows the filing of Plaintiffs' Motion for a Preliminary Injunction to enforce the Act, which has yet to be finally adjudicated. The order states that "the parties stipulate and agree that the following will be binding on both CTTC and its committees until the hearing on Plaintiffs' [Motion for a Preliminary Injunction]." Order at 1. Respectfully, the CTTC would not likely have agreed to the detailed provisions of the interim order governing their future hearings if the CTTC in fact believed that the entire claim was time-barred. They would have, instead, opposed the motion for a preliminary injunction on statute of limitations grounds.

### III. CONCLUSION

For the foregoing reasons and those expressed in Plaintiffs' Opposition to the Rental Car Defendants' Motion to Dismiss, the CTTC's motion must be denied.

DATED: March 11, 2008  HULETT HARPER STEWART LLP
DENNIS STEWART
JENNIFER A. KAGAN

   /s/Dennis Stewart
DENNIS STEWART

7

550 West C Street, Suite 1600
San Diego, CA 92101
Telephone: (619) 338-1133
Facsimile: (619) 338-1139


CENTER FOR PUBLIC INTEREST LAW
UNIVERSITY OF SAN DIEGO
  SCHOOL OF LAW
ROBERT C. FELLMETH
ED HOWARD
JULIANNE D'ANGELO FELLMETH
5998 Alcala Park
San Diego, CA 92110
Telephone: (619) 260-4806
Facsimile: (619) 260-4753

SULLIVAN, HILL, LEWIN, REZ & ENGEL
A Professional Law Corporation
DONALD G. REZ
550 West "C" Street, Suite 1500
San Diego, CA 92101
Telephone: (619) 233-4100
Facsimile: (619) 231-4372

Attorneys for Plaintiffs