Thadd A. Blizzard, State Bar No. 83297
Michael A. Kvarme, State Bar No. 90749
W. Scott Cameron, State Bar No. 229828
**weintraub** genshlea chediak
a law corporation
400 Capitol Mall, 11th Floor
Sacramento, CA  95814
(916) 558-6000 – Main
(916) 446-1611 – Facsimile

EDMUND G. BROWN JR.
Attorney General of the State of California
W. DEAN FREEMAN
FELIX E. LEATHERWOOD
Supervising Deputy Attorneys General
RONALD N. ITO, State Bar No. 71322
DIANE SPENCER SHAW, State Bar No. 73970
LISA W. CHAO, State Bar No. 198536
Deputy Attorneys General
300 South Spring Street, Suite 1702
Los Angeles, CA  90013
(213) 897-2477 – Main
(213) 897-5775 – Facsimile

Attorneys for Defendant
The California Travel and Tourism Commission

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL SHAMES; GARY GRAMKOW, on behalf of themselves and on behalf of all persons similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>THE HERTZ CORPORATION, a Delaware corporation; DOLLAR THRIFTY AUTOMOTIVE GROUP, INC., a Delaware corporation; AVIS BUDGET GROUP, INC., a Delaware corporation; VANGUARD CAR RENTAL USA, INC., an Oklahoma corporation; ENTERPRISE RENT-A-CAR COMPANY, a Missouri corporation; FOX RENT A CAR, INC., a California corporation; COAST LEASING CORP., a Texas corporation; THE CALIFORNIA TRAVEL AND TOURISM COMMISSION and CAROLINE BETETA,<br><br>Defendants. | Case No. 07 CV 2174 H BLM<br><br>[CLASS ACTION]<br><br>DEFENDANT CTTC'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF MICHAEL SHAMES'S MOTION FOR PRELIMINARY INJUNCTION<br><br>Date:     April 1, 2008<br>Time:    10:30 a.m.<br>Place:   Courtroom 13<br><br>The Honorable Marilyn L. Huff |

TABLE OF CONTENTS

I. INTRODUCTION .................................................................................................. 1

II. FACTS .................................................................................................................. 2

    A. Some Of The "Violations" Of The Bagley-Keene Act At Issue Here Are Not Violations .................................................................. 2

    B. Any Procedures Inconsistent With The Bagley-Keene Act Were Corrected By CTTC ......................................................................... 4

III. ARGUMENT ........................................................................................................ 5

    A. The Court Should Decline To Exercise Supplemental Jurisdiction Over This Claim .............................................................. 5

        1. There Is No Common Nucleus Of Operative Facts Between The Federal Claims And The Bagley-Keene Claim .................... 6

        2. The Court Should Also Decline to Exercise Supplemental Jurisdiction Over the California Bagley-Keene Act Claim Under Principles of Comity ............................................................ 8

    B. Plaintiff Lacks Standing To Seek This Injunction ............................................ 9

        1. In The Present Case, The Plaintiff Has Alleged No Injury To Himself .................................................................................. 10

        2. Federal Courts Do Not Issue Advisory Opinions ........................ 11

    C. Plaintiff Has Not Met The Standard For Issuance Of A Preliminary Injunction .................................................................. 12

    D. A Preliminary Injunction Would Require Excessive Court Supervision, Which Warrants Denying The Motion ...................... 13

IV. CONCLUSION .................................................................................................. 15

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Allegheny General Hospital v. NLRB*, 608 F.2d 965 (3rd Cir. 1979) .............................. 14

*Arcamuzi v. Continental Air Lines, Inc.*, 819 F.2d 935 (9th Cir. 1987) .......................... 12

*Baer v. First Options of Chicago, Inc.*, 72 F.3d 1294 (7th Cir. 1995) ........................ 5, 8

*City of Chicago v. International College of Surgeons*, 522 U.S. 156 (1997) ................... 8

*Crow Creek Sioux Tribe v. Brownlee*, 331 F.3d 912 (D.C. Cir. 2003) ............................. 9

*Department of Parks and Recreation for the State of California v.
    Bazaar del Mundo*, 448 F.3d 1118 (9th Cir. 2006) ............................................ 12

*Executive Software Number America, Inc. v. United States District Court (Page)*,
    24 F.3d 1545 (9th Cir. 1994) ................................................................. 8

*Kersner v. Clemens*, 225 F.3d 227 (2nd Cir. 2000) ................................................ 7

*Lawson Products, Inc. v. Avnet, Inc.*, 782 F.2d 1429 (7th Cir. 1986) ........................... 14

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ............................................ 10

*Lyon v. Wissman*, 45 F.3d 758 (3rd Cir. 1995) ................................................... 7

*Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270 ................................. 12

*Natural Resources Defense Council, Inc. v. U.S. E.P.A.*,
    966 F.2d 1292 (9th Cir. 1992) ......................................................... 13, 14, 15

*O'Shea v. Littleton*, 414 U.S. 488 (1974) .................................................. 10, 11

*Peiser v. Newkirk*, 422 U.S. 395 (1975) ......................................................... 12

*Pryor v. National Collegiate Athletic Association*, 288 F.3d 548 (3d Cir. 2002) ............... 10

*Quackenbush v. Allstate Insurance Co.*, 517 U.S. 706 (1996) ...................................... 8

*Sampson v. Murray*, 415 U.S. 61 (1974) .......................................................... 13

*Sierra On-Line, Inc. v. Phoenix Software, Inc.* (9th Cir. 1984) 739 F.2d 1415 ................. 13

*Southern California Edison Co. v. Lynch*, 307 F.3d 794 (9th Cir. 2002) ....................... 8, 9

*United Mine Workers v. Gibbs*, 383 U.S. 715 (1966)..................................................................5

*Upholstered Furniture Action Council v. California Bureau of Home Furnishing*,
    442 F. Supp. 565 (E.D.Cal.1977) ........................................................................14

### STATE CASES

*Gillespie v. San Francisco Public Library Commission*,
    67 Cal. App. 4th 1165 (1998) ..............................................................................9

### FEDERAL STATUTES

28 U.S.C. § 1367(a)........................................................................................................5

I. INTRODUCTION

This brief is submitted on behalf of defendant California Travel and Tourism Commission ("CTTC") [1] in opposition to the motion of plaintiff Michael Shames ("Plaintiff") for preliminary injunction (the "Motion") relating to alleged violations of the Bagley-Keene Act, California Government Code sections 11120, et seq.[2] For several reasons, the preliminary injunction should be denied.

First, the Court lacks supplemental jurisdiction over this dispute. Because there is no common nucleus of facts between the federal anti-trust claim and the Bagley-Keene claim, the Court should refrain from exercising jurisdiction over this unrelated state law matter. Additionally, the Court should decline to enter into adjudication of these state law issues for reasons of comity, and because it would require excessive supervision by the court.

Second, Plaintiff lacks standing to bring this Motion. Plaintiff has not demonstrated, and cannot demonstrate, that he was harmed by any activity of CTTC relating to its meeting procedures under the Bagley-Keene Act. Plaintiff has not shown, or even alleged, that he was personally denied adequate notice for any meeting, or that any of the claimed violations affected him in any way. The Motion is supported by declarations of law students, who were asked to search for technical violations as part of a law school project. Plaintiff is not even signed up to receive notice of CTTC meetings.

In addition to the issues of jurisdiction and standing, there is no showing of irreparable injury or likelihood of success on the merits, as required for a preliminary injunction. Some of the asserted "violations" are in fact not violations. For example, CTTC sends courtesy reminders of meetings that are incorrectly presumed in this Motion to have been sent less than 10 days

---

[1] Defendant Caroline Beteta was not mentioned in the Motion and it does not appear that Plaintiff intended the Motion to apply to defendant Beteta. However, if the Motion was previously intended by Plaintiff to be applicable to defendant Beteta, it plainly is no longer applicable to her. In footnote 1 on page 1 of the Plaintiffs' Opposition To Defendant California Travel and Tourism Commission's Motion to Dismiss, the Plaintiffs represent that they agree to dismiss defendant Beteta from this lawsuit, and, consistent with their representation, Plaintiffs have not filed any opposition to the Motion To Dismiss filed in this lawsuit by defendant Beteta.

[2] All statutory references are to the California Government Code unless otherwise indicated.

{10824/16392/RM/1022336.DOC;}    1    MPAs of CTTC In Oppo to Shames's M/Preliminary Inj

prior to the meetings. In fact written notices were in all instances mailed to everyone in conformity with the 10 day notice requirement. As to other alleged violations of Bagley-Keene, for example the posting of agendas on the Internet, no one had ever complained or brought this to the CTTC's attention (though apparently law students were tracking it). Upon learning of these issues through this lawsuit, CTTC promptly changed its procedures as to all issues raised in this case, agreed to an interim order to that effect, is following, and will continue to follow such procedures hereafter, without the need for court supervision.

In sum, this is a state law matter unrelated to the alleged federal anti-trust claim, that Plaintiff lacks standing to bring, and that contains no on-going controversy that would support any finding of irreparable injury or likelihood of success on the merits. The injunction should be denied.

## II.   FACTS

A.   Some Of The "Violations" Of The Bagley-Keene Act At Issue Here Are Not Violations.

Plaintiff asserts that several notices were emailed by CTTC that did not include the address of the Internet site where notices of CTTC meetings are posted. (Plaintiff's Memorandum of Points and Authorities in support of the Motion (the "MPA") III. B. 1, pp. 4-6.) However, none of the notices in question were intended to be the statutory notice of the meeting required under section 11125(a).[3] For example, Plaintiff refers to "save the date" notices, "reminder" notices and other notices of subcommittees of the CTTC. (MPA, pp. 4-6.)

As explained in the Declaration of Matthew Sabbatini, Operations Manager and Commission Liaison for the CTTC since October 2006, these notices are not the statutorily-required public notices of CTTC commission meetings, but rather are reminders and courtesy copies for interested parties. (Sabbatini Dec., ¶¶ 4, 5, 6.) Each official "Public Notice of the CTTC Commission Meeting" sent by Mr. Sabbatini was, and is, mailed by using the United States Postal Service, first class mail, no later than 10 days prior to every CTTC meeting. (Id.,

---

[3] Section 11125(a) provides "the state body shall provide notice of its meeting to any person who requests that notice in writing. Notice shall be given and also made available on the Internet at least 10 days in advance of the meeting . . . . The written notice shall additionally include the address of the Internet site where notices required by this article are made available.

¶ 6.) Nothing in the Bagley-Keene Act prohibits such informal additional notices. Courtesy notices of the same mailed "public notice" are also emailed, but not necessarily within the 10-day limit, since they are not statutorily-required notices. (Id. at ¶ 12.)

Plaintiff also complains that the CTTC has violated section 11124 regarding meeting pre-registration. (MPA, pp. 10-11.) The statute prohibits requiring a person "as a condition to attendance at a meeting of a state body, to register his or her name, to provide other information, to complete a questionnaire, or otherwise to fill any condition precedent to his or her attendance." (Section 11124.) Plaintiff also asserts that, if a person did not preregister, he or she would not get "meeting materials prior to the meeting." (MPA, p. 11.)

There is no statutory requirement for materials to be provided to the public prior to a meeting. As Mr. Sabbatini explains, prior to this lawsuit meeting notices were sent to members of the public who requested such notice, clearly stating that the notices to them were, "for informational purposes only." (Sabbatini Dec., ¶ 13.) No person has been turned away from a meeting or denied access for failing to RSVP before the meeting. (Id. at ¶ 14.) Nor has any person been denied meeting materials for failure to register or RSVP prior to a meeting. (Id.) There have always been extra copies of all meeting materials available to anyone who attends. (Id.) Extra copies have been left over after each meeting since Mr. Sabbatini became Operations Manager (id.), indicating that no one in attendance has been denied materials for any reason.[4]

The former Deputy Director of the Division of Tourism, responsible for the CTTC's assessment program and drafting regulations for the CTTC until December 2007, has provided a declaration disputing the suggestion that she told the two law students who provided

---

[4] Additionally, meeting materials are available on the Internet through the CTTC website. (Sabbatini Dec., ¶ 9.) The RSVP procedure used by CTTC in the past was only for the purpose of insuring that the room for the meeting was large enough to accommodate everyone, that there were sufficient meeting materials and handouts, and that there would be sufficient food (the CTTC provides lunch for the commissioners and all other attendees including members of the public). (Sabbatini Dec., ¶ 8.) This was never intended to inhibit anyone's attendance, rather it was simply a planning matter. Since this issue was raised, CTTC has changed its policy to now provide a clear statement that no RSVP is required to attend. (Sabbatini Dec., ¶ 17.)

{10824/16392/RM/1022336.DOC;}    3    MPAs of CTTC In Oppo to Shames's M/Preliminary Inj

1  declarations in support of the Motion that there were no meeting materials for them or that a
2  meeting had been held that was closed to the public. (Toohey Dec., ¶¶ 2-4.) In addition, Mr.
3  Sabbatini corroborates in his declaration that the only meeting held earlier on the day in
4  question was open to the public and was in fact held in a different location. (Sabbatini Dec.,
5  ¶ 26.)

**B. Any Procedures Inconsistent With The Bagley-Keene Act Were Corrected By CTTC.**

During the 12 months prior to the filing of this lawsuit, no one had ever complained to the CTTC about the matters Plaintiff refers to in support of this Motion. (Sabbatini Dec., ¶¶ 16, 17, 19, 21, 24.) All of these minor procedural matters, when brought to CTTC's attention, resulted in prompt changes in CTTC's procedures that fully comply with the Bagley-Keene Act, and will continue to do so. (Id., ¶¶ 15, 16, 17, 18, 19, 21, 23, 24.)

For example, Mr. Sabbatini was unaware, prior to the filing of this lawsuit, of the need to post meeting agendas on the Internet 10 days in advance of the meeting. (Sabbatini Dec., ¶ 19.) To his knowledge, no one had ever complained to the CTTC about that, nor had anyone ever requested that the CTTC post the agenda on the Internet. (Id.) Since learning of this issue, the CTTC has changed its policy, and Mr. Sabbatini now posts agendas for the meetings on the Internet 10 days in advance of all meetings. (Id.)

Plaintiff complained of lack of agenda "specificity." (MPA, pp. 8-9.) Now that this issue has been raised, CTTC has changed its policy to be more specific about agenda items. (Sabbatini Dec., ¶ 18.) The process of creating the agenda has been changed to require a more detailed procedure for developing agenda items and ensures that they are described with more specificity. (Id.)

Plaintiff has taken issue with CTTC's teleconference procedures. (MPA, pp. 9-10.) CTTC has now changed its policy to require that all CTTC commissioners attend teleconferences from a location that is identified in the notice and agenda, and which the public is permitted to attend. (Sabbatini Dec., ¶ 23.)

Finally, Plaintiff asserted that CTTC was violating section 11125(b) regarding closed sessions, by failing to identify which statute allows the closed session. (MPA, pp. 11-12.) The

only alleged violations are debatable at best. Plaintiff points to agenda items for "annual executive director review," and "personnel committee report on executive director contract." These sessions were closed to discuss the personnel matter of the executive directors' performance and employment, as allowed by the Bagley-Keene Act. (Gov't C. § 11126(a)(1) [allowing closed session to "consider the appointment, employment [or] evaluation of performance . . . of a public employee . . . ."].) The CTTC has now amended its policies to provide statutory authority when closed sessions are held. (Sabbatini Dec., ¶ 24.)

### III.   ARGUMENT

#### A.   The Court Should Decline To Exercise Supplemental Jurisdiction Over This Claim.

Plaintiff does not meet his burden of showing a basis for the extension of federal supplemental jurisdiction to state law claims. Supplemental jurisdiction is only proper where the relationship between the federal and state claims is such that they form "part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). The longstanding rule has been that a single case exists for this purpose when the state and federal claims arose from a "common nucleus of operative facts" such that Plaintiff would ordinarily be expected to try them in a single judicial proceeding. *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966). "The statute extends the jurisdiction of a federal district court to all claims sufficiently related to the claim on which its original jurisdiction is based to be part of the same case or controversy within the meaning of Article III of the Constitution." *Baer v. First Options of Chicago, Inc.*, 72 F.3d 1294, 1299 (7th Cir. 1995).

Rather than identifying a common nucleus of operative facts between the Bagley-Keene claim and the alleged federal anti-trust claim, the Motion fails to make any connection to the federal claim at all. A conclusory assertion of pendent jurisdiction appears in a single sentence, nothing more. (MPA, p. 4.)

///
///
///
///

1. **There Is No Common Nucleus Of Operative Facts Between The Federal Claims And The Bagley-Keene Claim.[5]**

Plaintiff's Motion papers make no attempt to establish the required connection. The Complaint contains only conclusory allegations that Defendants met while attending the CTTC Commission meetings, and allegedly agreed among themselves "to fix, increase, maintain or stabilize components of the process for airport car rentals . . . ." Complaint, ¶ 44(a). There is no allegation that Bagley-Keene violations occurred in any meeting when such alleged anti-trust agreement occurred.

In the Complaint, Plaintiff alleges vaguely, without specificity, that the alleged anti-trust activities were "furthered" through acts "including violation of the Bagley-Keene Act as more fully set forth in the Third Cause of Action herein" (Complaint, ¶ 46), and that the defendants [including the car rental companies] violated the Sherman Act, *inter alia*, by "meeting with each other, including under the guise of attending CTTC meetings in order to keep the existence of the conspiracy unknown so as to foster the illegal anti-competitive conduct described herein and facilitating violations of the Bagley-Keene Open Meeting Act as set forth in the Third Cause of Action herein to further such concealment." (Complaint, ¶ 44(c).)

The Third Cause of Action however does nothing to specify a connection between the anti-trust claims and the Bagley-Keene issues. Nowhere are any facts alleged in the Third Cause of Action that any Bagley-Keene "violation" furthered any conduct in connection with the alleged anti-trust conspiracy.

The Complaint on its face actually shows a lack of temporal connection between any Bagley-Keene issue and the anti-trust claim. The anti-trust violation is alleged to have occurred from a date unknown, "but at least from January 1, 2007 . . . ." (Complaint, ¶ 43.) The alleged price-fixing agreement is stated to have resulted in prices rising "in January 2007 . . . ." (Complaint, ¶ 36.) By contrast, the Bagley-Keene issues fall within the time period of August, September and October 2007. (Complaint, ¶¶ 53-68.) While the Complaint alleges that both

---

[5] In papers filed on March 11, 2007 by plaintiff in opposition to the CTTC's motion to dismiss, plaintiff stated (in fn. 1) that the California Unfair Competition Law claim would be dismissed as to the CTTC. As a result, the only claims remaining against the CTTC are the Sherman Act anti-trust claim (First Cause of Action) and the Bagley-Keene Act claim (the Third Cause of Action).

the alleged anti-trust and Bagley-Keene issues are "continuing" (Complaint, ¶¶ 43, 69), there is no allegation that factually links the alleged anti-trust conspiracy that is said to have arisen by January 1, 2007 to the Bagley-Keene matters occurring eight or more months later.

Any agreement to fix prices, the crux of Plaintiffs' federal price fixing allegations, must logically have occurred prior to January 1, 2007, the date on which Plaintiffs allege that the Rental Car Defendants raised their prices. (Complaint, ¶ 36.) All of the complained-of Bagley-Keene issues are alleged to have occurred on or after August 1, 2007, eight months after the price increase. Plaintiffs' Third Cause of Action, mirrored in the current Motion, provides no further allegations to connect the Bagley-Keene matters to Plaintiffs' antitrust claim. (Complaint, ¶¶ 51 - 69.)

Absent such allegations, and because the antitrust conduct referenced in the Complaint allegedly occurred in a time period inconsistent with the Bagley-Keene conduct, there is no "common nucleus of operative facts" between them. *Kersner v. Clemens*, 225 F.3d 227, 239 (2nd Cir. 2000); *Lyon v. Wissman*, 45 F.3d 758, 760 (3rd Cir. 1995). Further, Bagley-Keene allegations do not provide a basis for any reasonable inference that they could have contributed in any way to the alleged anti-trust agreement. The Complaint alleges shortcomings in notices of meetings that have no logical connection to "furthering" or "facilitating" an anti-trust agreement. For example, the Complaint asserts that the meeting notices were "inadequate" because they: (1) did not include an Internet address in notices (MPA, p. 4); (2) failed to post agendas on the Internet (*id.*, p. 6); (3) failed to give ten days notice of meetings[6] (*id.*, p. 8); (4) did not have agenda "specificity" (*id.*); (5) had improper notices for teleconferences (*id.*, p. 9); (6) and had improper language regarding preregistration. (*Id.*, p. 10.) The only remaining Bagley-Keene assertion relates to allegedly inappropriate "closed session" meetings, in which the subject of the meeting was disclosed (the executive director's contract), but there was a "violation" by failing to provide a statutory basis for the closed-session meeting. (*Id.*, p. 11.)

---

[6] This is untrue, the CTTC has always provided at least ten days notice of meetings by mail. (Sabbatini Dec., ¶ 11.)

Such violations, if any, of the Bagley-Keene Act have nothing to do with the price-fixing allegations. Not even a "loose factual connection" exists between the antitrust claims and the Bagley-Keene Act claim. Technical flaws in meeting notices logically have no connection to a price fixing conspiracy. There is no allegation of unnoticed or secret meetings. A connection between the federal and state claims is the very minimum needed to support the Court's exercise of supplemental jurisdiction. *Baer v. First Options of Chicago, Inc., supra,* 72 F.3d at 1299. Supplemental jurisdiction over the alleged Bagley-Keene Act violations in the Third Cause of Action is therefore not proper, and Plaintiff has not alleged any independent basis for federal jurisdiction over this claim.

    2.    The Court Should Also Decline to Exercise Supplemental Jurisdiction Over the California Bagley-Keene Act Claim Under Principles of Comity.

It has been "established that pendent (supplemental) jurisdiction is a doctrine of discretion, not of plaintiff's right . . . ." *City of Chicago v. International College of Surgeons,* 522 U.S. 156, 172 (1997). The Court may decline to exercise jurisdiction simply on the basis of convenience, fairness to the parties, judicial economy and, most relevantly here, comity. *Executive Software No. America, Inc. v. United States District Court (Page),* 24 F.3d 1545, 1552-55 (9th Cir. 1994). In addition to the court's discretion under 28 U.S.C. section 1367 subdivision (c), where, as here, the relief sought is equitable or otherwise discretionary, the court may invoke abstention principles to decline jurisdiction altogether. *Quackenbush v. Allstate Ins. Co.,* 517 U.S. 706, 717-22 (1996).

The Third Cause of Action, seeking only injunctive and declaratory relief, would likely require this Court to interpret California's Bagley-Keene Act. The Bagley-Keene Act, despite having been enacted in 1967, is litigated extremely infrequently. The Ninth Circuit recently declined to interpret the Bagley-Keene Act in a similar situation. *Southern California Edison Co. v. Lynch,* 307 F.3d 794 (9th Cir. 2002). The question presented in *Lynch* was the enforceability of a settlement agreement, and the Ninth Circuit indicated that the agreement appeared to violate the Bagley-Keene Act because it was approved and signed in a closed meeting. *Id.* at 810-11. Rather than decide the Bagley-Keene issue, however, the Ninth Circuit

certified the question to the California Supreme Court, stating "[r]esolution of the state law issues involved in this litigation will have a substantial effect on California law and the citizens of California. Accordingly, principles of comity suggest that those decisions should be made by California courts." *Id.* at 812, emphasis added. The California Supreme Court, which the Ninth Circuit recognized as the proper forum to decide the issue, then ruled that no violation of State law had occurred. *Southern California Edison Co. v. Lynch*, 353 F.3d 648 (9th Cir. 2003).

The Bagley-Keene Act is an expression by the California Legislature that, in order to protect the citizens of California, meetings of its own government agencies should be held in the open. In harmony with the Brown Act, a counterpart statute applicable to local government bodies, these statutes are intended to protect the public's right to participate in the functioning of local and state government agencies and bodies. This is a fundamental public policy of the State of California. §§ 11120, 54950; *Gillespie v. San Francisco Pub. Library Commission*, 67 Cal.App.4th 1165, 1169 (1998).

The CTTC is a creation of, and is governed by, state law. §§ 13995 *et seq.* The question whether a state entity complied with the Bagley-Keene Act and held public meetings is one best left to the state courts. *Southern California Edison Co. v. Lynch, supra*, 307 F.3d at 811. This is especially true where, as here, the claimed violations have nothing to do with any alleged federal concerns before this Court. The Court should decline to exercise jurisdiction over this claim and require Plaintiffs to bring any such issues before the California state courts.

B.  **Plaintiff Lacks Standing To Seek This Injunction.**

Plaintiff has failed to establish the standing requirements necessary to pursue a claim for preliminary or permanent injunctive relief. Plaintiff fails to allege a concrete injury or a causal connection between his claims and the conduct of CTTC.

Section 11130, subdivision (a) provides in relevant part that, " . . . any interested person may commence an action by mandamus, injunction, or declaratory relief for the purpose of stopping or preventing violations or threatened violations of [the Bagley-Keene Act]." Constitutional standing is a necessary element of any claim for federal injunctive relief. An

applicant for preliminary injunctive relief, like all litigants who invoke federal court jurisdiction, must first show that he or she has standing to pursue the alleged claims in federal court. *Crow Creek Sioux Tribe v. Brownlee*, 331 F.3d 912, 915-18 (D.C. Cir. 2003). To establish constitutional standing, the plaintiff must show that (1) he suffered an "injury-in-fact", i.e. an injury which is concrete and particularized, and actual and imminent, not conjectural or hypothetical; (2) a causal connection exists between the injury and the challenged action of the defendant; and (3) the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992); *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 561 (3d Cir. 2002). The burden of establishing standing rests with the plaintiff. *Lujan*, 504 U.S. at 561. Where a plaintiff seeks injunctive relief, a natural outgrowth of these factors requires a showing by plaintiff of ongoing injury or an imminent threat of future injury. *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974) ["Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects"].

       1.    In The Present Case, The Plaintiff Has Alleged No Injury To Himself.

Nowhere in the papers filed in support of the Motion is any injury to Plaintiff mentioned. The only information provided anywhere regarding Plaintiff is found in the Complaint, namely, that "[a]fter January 1, 2007, he rented a vehicle from one of the Rental Car Defendants . . . and was billed for and paid both the CTTC surcharge and the Airport Concession Fee add-on." (Complaint, 5: 19-22) Plaintiff does not make any showing that he personally suffered any injury or inconvenience by virtue of the actions of the CTTC which he now seeks to enjoin. The Motion is supported entirely by the declarations of other people (Johnson, Muhlenkamp and Fellmeth). Nowhere in the Motion papers, or in the complaint, is there any allegation that plaintiff was affected by these alleged events, or was even aware of them. Plaintiff is not even on the list of people who have requested notice of CTTC meetings, nor does it appear from a search of the CTTC databases that Plaintiff ever requested such notice. (Taloff Declaration, ¶¶ 2, 3.)

///

The complained-of conduct by the CTTC was discovered as part of a law school program through the University of San Diego, in which two law students (Johnson and Muhlenkamp) were directed to monitor the CTTC for compliance with the Bagley-Keene Open Meeting Act. (See Fellmeth Dec., ¶¶ 1 and 2; Muhlenkamp Dec., ¶¶ 1 and 2; Johnson Dec., ¶¶ 1 and 2.) Thus, while the students were able to determine these occurrences (some of which, as described, are not Bagley-Keene violations), they provide no connection to the Plaintiff, or even to any effect on any member of the public who desired to actually attend any meeting or interact with CTTC.[7]

Nowhere is it stated that Plaintiff suffered any injury from matters in the Third Cause of Action or the acts described in the Motion. For example, Plaintiff does not allege that he ever tried to attend any of the CTTC meetings underlying the Motion, that any alleged Bagley-Keene issue affected him, or that he is imminently threatened with any future injury. Plaintiff did not even request notice of CTTC meetings. (Taloff Dec., ¶¶ 2, 3.) In the complete absence of such a showing, Plaintiff has no standing to seek the injunctive relief requested. *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974).

2.  **Federal Courts Do Not Issue Advisory Opinions.**

Having failed to allege any injury, Plaintiff has essentially requested this Court to issue an advisory opinion regarding various provisions of the Bagley-Keene Act. Plaintiff is not seeking to overturn any action by the CTTC. In fact, such relief is barred by the applicable ninety day statute of limitations contained in the Act. (§ 11130.3)[8] Nor is Plaintiff seeking to enjoin specific ongoing behavior or stated policy of CTTC. Rather, Plaintiff's Motion seeks, in effect, interpretation of various provisions of the Bagley-Keene Act and the CTTC's prior actions based on procedures that have now changed, to determine whether they were indeed violations. This

---

[7] Noticeably absent, also, is any effort by any of these persons (including Plaintiff) to contact the CTTC to point out any of these matters, in an effort to bring them to CTTC's attention prior to the filing of this lawsuit. Mr. Sabbatini states that, if these matters had been brought to his attention earlier, he would have made the changes. (Sabbatini Dec., ¶¶ 16, 17, 21.)

[8] An injunction will issue only to prevent ongoing or future violations of the Bagley-Keene Act. § 11130(a). The statute of limitations to reverse an action of a state body is 90 days. § 11130.3(a).

is fundamentally improper. As the Supreme Court has stated:

> The exercise of judicial power under Art. III of the Constitution depends on the existence of a case or controversy. . . . [A] federal court has neither the power to render advisory opinions nor to decide questions that cannot affect the rights of litigants in the case before them. Its judgments must resolve a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts. . . . The rule in federal cases is that an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed. *Peiser v. Newkirk*, 422 U.S. 395, 401 (1975)

The Court cannot review the allegations unless "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant" relief. *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U. S. 270, 273. As discussed, no facts have been alleged in Plaintiff's motion that satisfy this standard. There are no ongoing policy disagreements to enjoin nor should the Court interpret CTTC's prior policies.

C. **Plaintiff Has Not Met The Standard For Issuance Of A Preliminary Injunction.**

To obtain injunctive relief in the Ninth Circuit, "the movant must demonstrate either: (1) a combination of probable success on the merits and the possibility of irreparable harm, or (2) that serious questions are raised as to the merits and that the balance of hardships tips in its favor." *Dept. of Parks and Recreation for the State of California v. Bazaar del Mundo*, 448 F.3d 1118, 1123 (9th Cir. 2006). These two tests, however, "'represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases.'" *Id.*, (quoting *Arcamuzi v. Cont'l Air Lines, Inc.*, 819 F.2d 935, 937 (9th Cir. 1987)). In this case, the preliminary injunction must be denied because Plaintiff cannot show either probable success on the merits or any irreparable harm. Further, as there has been nothing presented by Plaintiff to suggest any likelihood that future violations of the Bagley-Keene Act will occur, there is absolutely no hardship to Plaintiff in denying the preliminary injunction.

As discussed above, CTTC is in full compliance with the Bagley-Keene Act. Plaintiff has made no showing of any past or likely future harm to himself or anyone else relating to CTTC's practices under the Bagley-Keene Act. The CTTC promptly revised its procedures upon learning

of these issues. The Bagley-Keene Act specifically provides that, in connection with an action under section 11130.3, "nothing in this section shall be construed to prevent a state body from curing or correcting an action challenged pursuant to this section." This evidences a legislative intent encouraging changes of procedures to conform to Bagley-Keene requirements when issues are brought to a state agency's attention. The CTTC has done that.[9]

The person in charge of following CTTC notice and agenda procedures (Mr. Sabbatini) has explained how the CTTC now complies with the procedures and intends to do so hereafter. (Sabbatini Dec., ¶¶ 15, 16, 17, 18, 19, 21.) Under these circumstances, there is no need for this or any Court to intervene to provide monitoring or ongoing supervision, or to grant any relief in the form of injunction or declaratory interpretation.

Plaintiff asks the Court to invoke its extraordinary powers to award temporary emergency relief by issuing a preliminary injunction aimed at requiring the CTTC to "refrain from violating the [Bagley-Keene] Act, as the Act applies to . . . all future meetings." (MPA, p. 4:6-7, emphasis added). A preliminary injunction is a provisional remedy issued prior to final disposition of the litigation. Its function is to preserve the status quo and to prevent irreparable loss of rights prior to judgment. *Sierra On-Line, Inc. v. Phoenix Software, Inc.* (9th Cir. 1984) 739 F2d 1415, 1422. It is frequently observed that a preliminary injunction is an extraordinary and drastic remedy, that should not be granted unless the movant, by a clear showing, carries the burden of persuasion. *Sampson v. Murray*, 415 U.S. 61 (1974).

Here, the Plaintiff can show neither a substantial likelihood of success on the merits nor irreparable harm if the injunction is not granted. There is no ongoing Bagley-Keene dispute to be litigated on the merits.

D. **A Preliminary Injunction Would Require Excessive Court Supervision, Which Warrants Denying The Motion.**

"Injunctions are an extraordinary remedy issued at a court's discretion when there is a compelling need." *Natural Resources Defense Council, Inc. v. U.S. E.P.A.*, 966 F.2d 1292,

---

[9] As noted earlier (see fn. 7, and accompanying text), Plaintiff has not attempted to overturn CTTC action under § 11130.3. However, the Legislature's encouragement of agencies to change procedures to conform to Bagley-Keene remains evident from this statutory language.

1300 (9th Cir. 1992). A request for such an "extraordinary remedy" should be denied when granting an injunction would require constant or excessive supervision by the court. *Id.* In *Natural Resources Defense Council*, plaintiff requested an injunction prohibiting the EPA from further extensions for permit applications. In denying the requested injunction, the Ninth Circuit held:

> At issue are deadlines for the three major categories of dischargers, each of which has a two-part application. The permitting process will go on for several years. While recognizing the importance of the interests involved, we nevertheless <u>decline to engage in the active management of such a remedy</u>. (Emphasis added.)
>
> In this situation, we must operate on the assumption that an agency will follow the dictates of Congress and the court. As noted above, the EPA does not have the authority to predicate future rules or deadlines in disagreement with this opinion. *See Allegheny General Hosp. v. NLRB*, 608 F.2d 965, 970 (3rd Cir. 1979). We presume that the EPA will duly perform its statutory duties. *See Upholstered Furniture Action Council v. California Bureau of Home Furnishing*, 442 F.Supp. 565, 568 (E.D.Cal.1977) (three judge court).

*Natural Resources Defense Council, Inc. v. U.S. E.P.A.*, 966 F.2d 1300. Similarly, the Court in this case should operate on the assumption that the CTTC will follow the dictates of the Bagley-Keene Act.

Indeed, the uncontroverted evidence shows that every potential violation of the Bagley-Keene Act that Plaintiff alleged to have occurred has been promptly investigated by the CTTC itself, and where appropriate and necessary, procedures changed to ensure compliance. The Court need not, and should not, entangle itself in Plaintiff's request to monitor, for an indefinite period, every action the CTTC takes for any potential technical violation of this complex statutory scheme. This is especially true where, as here, Plaintiff failed to take any available steps to prevent the claimed harm. *Lawson Products, Inc. v. Avnet, Inc.*, 782 F.2d 1429, 1440 (7th Cir. 1986) (denying injunction where plaintiff "had at its disposal the ability to take self-protective measures without judicial intervention"). Plaintiff did not even inquire with CTTC about his concerns prior to requesting judicial intervention and CTTC has shown a clear willingness to comply with the Act since having potential violations pointed out. Indeed, from the Motion it appears that Plaintiff was not aware of any of these claimed violations -- the individuals who claimed knowledge of the potential violations are the law students who, for some unspecified

reason, were tasked with monitoring the CTTC for compliance with the Bagley-Keene Act. Plaintiff now asks the Court to take over for the law students in the monitoring role. Plaintiff's request should be denied. *Natural Resources Defense Council, Inc. v. U.S. E.P.A.*, 966 F.2d 1300.

## IV. CONCLUSION

For the foregoing reasons, Defendant CTTC respectfully requests that the Court deny Plaintiff's Motion in its entirety.

Dated: March 14, 2008

Respectfully submitted,

WEINTRAUB GENSHLEA CHEDIAK
Law Corporation

By: /s/
Thadd A. Blizzard
California State Bar No. 83297
Attorneys for Defendant The California
Travel and Tourism Commission

EDMUND G. BROWN JR., Attorney General
of the State of California
W. DEAN FREEMAN
FELIX E. LEATHERWOOD
Supervising Deputy Attorneys General
RONALD N. ITO
DIANE SPENCER SHAW
LISA W. CHAO
Deputy Attorneys General

By: /s/
Ronald N. Ito
California State Bar No. 71322
Attorneys for Defendant California
Travel and Tourism Commission