Thadd A. Blizzard, State Bar No. 83297
Michael A. Kvarme, State Bar No. 90749
W. Scott Cameron, State Bar No. 229828
**weintraub** genshlea chediak
a law corporation
400 Capitol Mall, 11th Floor
Sacramento, CA  95814
(916) 558-6000 – Main
(916) 446-1611 – Facsimile

EDMUND G. BROWN JR.
Attorney General of the State of California
W. DEAN FREEMAN
FELIX E. LEATHERWOOD
Supervising Deputy Attorneys General
RONALD N. ITO, State Bar No. 71322
DIANE SPENCER SHAW, State Bar No. 73970
LISA W. CHAO, State Bar No. 198536
Deputy Attorneys General
300 South Spring Street, Suite 1702
Los Angeles, CA  90013
(213) 897-2477 – Main
(213) 897-5775 – Facsimile

Attorneys for Defendant
The California Travel and Tourism Commission

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL SHAMES; GARY GRAMKOW, on behalf of themselves and on behalf of all persons similarly situated, <br><br> Plaintiffs, <br><br> vs. <br><br> THE HERTZ CORPORATION, a Delaware corporation; DOLLAR THRIFTY AUTOMOTIVE GROUP, INC., a Delaware corporation; AVIS BUDGET GROUP, INC., a Delaware corporation; VANGUARD CAR RENTAL USA, INC., an Oklahoma corporation; ENTERPRISE RENT-A-CAR COMPANY, a Missouri corporation; FOX RENT A CAR, INC., a California corporation; COAST LEASING CORP., a Texas corporation; THE CALIFORNIA TRAVEL AND TOURISM COMMISSION and CAROLINE BETETA, <br><br> Defendants. | Case No. 07 CV 2174 H BLM <br><br> [CLASS ACTION] <br><br> DEFENDANT CTTC'S MEMORANDUM OF POINTS AND AUTHORITIES IN REPLY TO OPPOSITION TO DEFENDANT CTTC'S MOTION TO DISMISS <br><br> [Fed. R. Civ. P. 12(b)(6)] <br><br> Date:  April 1, 2008 <br> Time:  10:30 a.m. <br> Place:  Courtroom 13 <br><br> The Honorable Marilyn L. Huff |

I.   REPLY ARGUMENT

A.   THE FIRST CAUSE OF ACTION BASED ON ALLEGED VIOLATION OF SECTION ONE OF THE SHERMAN ACT SHOULD BE DISMISSED.

Plaintiffs contend that CTTC is not entitled to state action immunity under *Parker v. Brown*, 317 U.S. 341 (1943) ("*Parker*"). Plaintiffs' Opposition to Motions To Dismiss ("Opp."), pp. 9-10, 14-16. Plaintiffs also contend that the Complaint meets the heightened pleading requirements of *Bell Atlantic Corp. v. Twombly*, ___ U.S. ___, 127 S.Ct. 1955, 1965 (2007) ("*Twombly*"). Opp., pp. 4-9. Plaintiffs are wrong on both counts.

1.   All Of CTTC's Conduct Alleged In The Complaint Is Protected By Parker State Action Immunity.

California statutes compel the very action that CTTC is alleged to have taken in the Complaint. CTTC held meetings as directed by law. CTTC is shielded from any anti-trust liability for its part in holding those meetings, even if it had held the meetings with the purpose and intent of facilitating the Rental Car Defendants' alleged agreement. *City of Columbia v. Omni Outdoor Advertising, Inc.*, 499 U.S. 365, 371-72 (1991). In *City of Columbia*, defendant Columbia Outdoor Advertising, Inc. ("COA") dominated the billboard advertising market in Columbia, South Carolina. "COA was a local business owned by a family with deep political roots in the community, and enjoyed close relations with the city's political leaders." *Id.* at 367. When plaintiff Omni sought to enter the market, part of COA's response was to meet with city officials to have zoning ordinances changed to place restrictions on construction of new billboards, and the city passed such ordinances. *Id.* at 368. At trial, Omni obtained a verdict against both COA and the city for antitrust violations, and the jury specifically found that the city and COA had conspired to restrain trade and monopolize the market. *Id.* at 369. Despite these jury findings, the Supreme Court overturned the verdict, *inter alia* finding as a matter of law that the city was protected by state action immunity against the antitrust claims. *Id.* at 374.

Two important points come from *City of Columbia*. First, *Parker* antitrust immunity for state actors is based on principles of federalism which are offended if federal courts "review state or local activity whenever it is alleged that the governmental body, though possessing the power

to engage in the challenged conduct, has actually exercised its power in a manner not authorized by state law." *Id.* at 372. The Supreme Court based its ruling on the fact that the city had authority to do what it actually did: pass zoning ordinances. Thus, such action, even if it is done for an improper purpose and with procedural deficiencies, was immune from antitrust liability. *Id.* Similarly, Plaintiffs here cannot succeed or a theory that CTTC acted outside its authority or for an improper purpose.

The Complaint alleges that CTTC held Commission meetings. Complaint, ¶¶ 44(c), 46. CTTC is authorized, and in fact directed, by statute to do that. Cal. Gov't Code § 13995.40. The Complaint alleges that Rental Car Defendants were present at these meetings. Complaint, ¶ 44(c). Again, the statute authorizes, even compels, the meetings to be held open to the public. Cal. Gov't Code § 13995.40(q). Thus, even if CTTC had held these meetings for an improper purpose, and with some procedural deficiencies,[1] its conduct is immune from antitrust liability. *City of Columbia v. Omni Outdoor Advertising, Inc.*, 499 U.S. at 371-72. As in *City of Columbia*, the federal courts should not review this State entity's authorized actions. *Id.*[2]

The second principle from *City of Columbia* is that there is no "conspiracy exception" to the *Parker* immunity afforded state agencies. *Id.* at 374. Thus, in *City of Columbia*, despite the jury finding that the governmental entity had acted in conspiracy with a private entity to restrain trade and monopolize the market, it did not lose immunity: "Since it is both inevitable and desirable that public officials often agree to do what one or another group of private citizens urges upon them, [a conspiracy exception] would virtually swallow up the *Parker* rule: All anticompetitive regulation would be vulnerable to a 'conspiracy' charge." *Id.* at 375.

///

---

[1] See CTTC's opposition to Plaintiff's Motion for Preliminary Injunction for a discussion of the minor, technical nature of the claimed deficiency.

[2] In *Lafayette v. Louisiana Power & Light Co.*, 435 U.S. 389, 414 (1978), the Supreme Court extended *Parker* immunity to municipalities where their acts are authorized by the state. In *City of Columbia*, the Court cautioned against using *Lafayette* as a basis for a broad review of state agencies, stating "[w]e should not lightly assume that *Lafayette's* authorization requirement dictates transformation of state administrative review into a federal antitrust job". *City of Columbia*, 499 U.S. at 372 (internal quotation omitted).

*Goldfarb v. Virginia State Bar*, 421 U.S. 773 (1975) relied upon by Plaintiffs does not prevent a finding of state action immunity in this case. In Goldfarb, the Virginia State Bar issued rulings stating that failing to follow county bar minimum fee schedules would lead to disciplinary action. *Id.* at 791. The Supreme Court found that this conduct was not immune from antitrust liability because the Virginia Supreme Court had previously issued ethical rules that "explicitly directed lawyers not 'to be controlled' by fee schedules." *Id.* at 789. Because the State Bar actions in *Goldfarb* were directly at odds with the Virginia Supreme Court, the arm of the state for which it acts, the Court found that the State Bar could not have been acting pursuant to state policy and therefore was not entitled to immunity. *Id.* at 790.

Here, unlike the State Bar in *Goldfarb*, CTTC was acting pursuant to California statutes in holding Commission meetings and in calling for a referendum on the rental car industry for an assessment. Cal. Gov't Code §§ 13995.40, 13995.51, 13995.60. Moreover, as detailed in CTTC's Memorandum of Points and Authorities in Support of its Motion to Dismiss (pp. 10-11), CTTC was acting pursuant to clearly articulated state policy in calling for a referendum establishing the assessment and in holding meetings which the Rental Car Defendants may have attended. The Complaint contains no allegations that CTTC's acts were directly at odds with this statutory authority and policy.

Plaintiffs also cite *Goldfarb v. Virginia State Bar* to support their contention that because nothing in the statute required the anticompetitive conduct of which they complain, the 'clear articulation of a state policy to authorize anticompetitive conduct' requirement is not met. Plaintiffs again miss the mark. Sixteen years after *Goldfarb*, *City of Columbia*, clearly "rejected the contention that this requirement can be met only if the delegating statute explicitly permits the displacement of competition. It is enough . . . if suppression of competition is the 'foreseeable result' of what the statute authorizes." 499 U.S. at 372-73. Plaintiffs' counsel himself demonstrated that suppression of competition was the foreseeable result of Assembly Bill 2592 in a letter which is now a part of the legislative history of the statute. Request for Judicial Notice in Support of Car Rental Defendants' Motion to Dismiss, Exhibits B and C. Thus, CTTC's actions, including holding Commission meetings, are immune from antitrust liability under the

*Parker* state action immunity doctrine, as applied under *City of Columbia*. Accordingly, the Section 1 Sherman Act claim against CTTC should be dismissed. The dismissal should be without leave to amend, since Plaintiffs cannot amend their Complaint to avoid such immunity.

2. **The Complaint Fails To Meet The *Twombly* Requirement For Pleading Evidentiary Facts Sufficient To Establish That An Agreement Or Conspiracy Is Plausible.**

*Twombly* establishes a higher pleading standard for antitrust cases, requiring a plaintiff to plead evidentiary facts to support its claim of an agreement or conspiracy. *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. at 1965. After *Twombly*, a claimant's "obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Mello v. Great Seneca Financial Corp.*, ___ F.Supp.2d ___, 2007 WL 4340990, *2 (C.D. Cal. Nov. 5, 2007) (quoting *Twombly*, 127 S.Ct. at 1965). This pleading requirement is grounded in the reality that "discovery in antitrust cases frequently causes substantial expenditures and gives the plaintiff the opportunity to extort large settlements even where he does not have much of a case." *Kendall v. VISA U.S.A., Inc.*, ___ F.3d ___, 2008 WL 613924, *3 (9th Cir. 2008). "A bare allegation of a conspiracy is almost impossible to defend against, particularly where the defendants are large institutions with hundreds of employees entering into contracts and agreements daily." *Id*.

a. **The Complaint Does Not Allege Any Evidentiary Facts Showing CTTC Joined In Any Agreement Or Conspiracy.**

The Complaint in this case does not allege a single evidentiary fact that would make it plausible that CTTC took part in any agreement or conspiracy with the Rental Car Defendants concerning fees charged to car renters in California. It contains no allegations of evidentiary facts regarding any such conduct on CTTC's part. Rather, all allegations regarding CTTC are mere conclusions and a formulaic recitation of anti-trust claim elements, which do not meet the *Twombly* pleading standard. *Kendall v. VISA U.S.A., Inc.*, 2008 W.L. 613924 at *3. The Complaint alleges merely that CTTC "facilitate[ed] the two unlawful price fixes . . . " (Complaint, ¶ 37; that CTTC "had knowledge of, facilitated, and participated in the combination, contract, and conspiracy, including the formation and implementation thereof.)" (Complaint, ¶ 43; and

that unnamed defendants, "facilitate[ed] and coordinat[ed] communication among the Rental Car Defendants to fix surcharge levels." Complaint, ¶ 44(e). Nowhere in the Complaint, however, is there any allegation of what CTTC actually did to facilitate these price fixes other than holding Commission meetings. CTTC does not have the ability to set prices for any of the Rental Car Defendants, and has no interest in what those prices may be. CTTC is not a competitor. CTTC would not carry out any alleged agreement to fix prices. Plaintiffs fail to plead evidentiary facts which, if true, establish an actionable role CTTC played in this alleged conspiracy. *Kendall v. VISA U.S.A., Inc.*, 2008 WL 613924, *3.

        b.    The Alleged Bagley-Keene Act Violations Do Not Show CTTC Facilitated Or Provided Support For Any AntiTrust Agreement Or Conspiracy.

Plaintiffs attempt to tie CTTC's alleged Bagley-Keene Act violations to the antitrust claims by claiming that these violations somehow allowed the Rental Car Defendants to meet in secret and reach their agreement. Complaint, ¶ 46. This claim is unsupportable, however, because the alleged Bagley-Keene Act violations in the Complaint did not, and could not, result in "secret meetings" and all took place months after the alleged agreement was in place.

The Complaint contains only conclusory allegations that Defendants allegedly agreed among themselves "to fix, increase, maintain or stabilize components of the process for airport car rentals . . . ." Complaint, ¶ 44(a). But there is no allegation that Bagley-Keene violations occurred in any meeting when such alleged antitrust agreement occurred nor that any Bagley-Keene violation facilitated the purported violation of the Sherman Act. Plaintiffs allege vaguely, without specificity, that the anti-trust activities were "furthered" through acts "including violation of the Bagley-Keene Act as more fully set forth in the Third Cause of Action herein" (Complaint, ¶ 46), and that all defendants violated the Sherman Act, *inter alia*, by "meeting with each other, including under the guise of attending CTTC meetings in order to keep the existence of the conspiracy unknown so as to foster the illegal anti-competitive conduct described herein and facilitating violations of the Bagley-Keene Open Meeting Act as set forth in the Third Cause of Action herein to further such concealment." Complaint, ¶ 44(c).

///

Nowhere, however, are any facts alleged showing any connection between the anti-trust claims and any claimed Bagley-Keene violations. The allegations in the Complaint actually lack any temporal connection between the Bagley-Keene violations and the anti-trust claim. The anti-trust violation is alleged to have occurred from a date unknown, "but at least from January 1, 2007 . . . ." Complaint, ¶ 43. The alleged price-fixing agreement is stated to have resulted in prices increasing "in January 2007 . . . ." Complaint, ¶ 36. In contrast, the purported violations of the Bagley-Keene Act fall within a time period months later, in August, September and October 2007. Complaint, ¶¶ 53-68.

Although the Complaint alleges that both the purported anti-trust and Bagley-Keene violations are "continuing," Complaint, ¶¶ 43, 69, there is no allegation that factually links the alleged anti-trust conspiracy that is said to have arisen by January 1, 2007 to the Bagley-Keene matters occurring eight or more months after the alleged base rate increase. Plaintiffs' Third Cause of Action provides no further allegations to connect the Bagley-Keene matters to Plaintiffs' antitrust claim. Complaint, ¶¶ 51 - 69.

Moreover, the allegations in the Complaint regarding the specific violations of Bagley-Keene do not provide a basis for any reasonable inference that they could have contributed in any way to the alleged anti-trust agreement or resulted in the concealment of any such agreement. The Complaint alleges technical shortcomings in notices of meetings that have no logical connection to "furthering" or "facilitating" an anti-trust agreement. For example, the Complaint asserts that the meeting notices were "inadequate" because the notices: (1) did not include an Internet address in notices (Complaint, ¶¶ 53, 54); (2) failed to post agendas on the Internet (*id.*, ¶¶ 56, 57); (3) failed to give ten days notice of meetings (*id.*, ¶ 59); (4) did not have agenda "specificity" (*id*, ¶¶ 60, 61.); (5) had improper notices for teleconferences (*id.*, ¶ 68); (6) had improper language regarding preregistration; (*id.*, ¶¶ 63, 64); and (7) failed to provide a citation to the statutory authority for holding meetings in closed session. (*Id.*, ¶ 66.)

Nowhere is it alleged that any meeting was held "secretly" as a result of any alleged Bagley-Keene violation. Technical flaws in meeting notices logically have no connection to a price fixing conspiracy. The alleged Bagley-Keene violations do not provide any of the missing

evidentiary facts necessary to state a claim under *Twombly*.

B.   **THE THIRD CAUSE OF ACTION BASED ON ALLEGED VIOLATION OF THE BAGLEY-KEENE OPEN MEETING ACT IS NOT PROPERLY BEFORE THIS COURT.**

Plaintiff Shames contends that his claims under California law are properly before this Court.[3] Opp. to CTTC, p. 1. This contention is without merit.

1.   **The Court Lacks Supplemental Jurisdiction Over The Bagley Keene Claim Because There Is No Common Nucleus Of Operative Facts Between The Federal Antitrust Claim And The Bagley-Keene Act Claim.**

Plaintiff Shames argues that this Court has discretion and should exercise supplemental jurisdiction over the Third Cause of Action under 28 U.S.C. § 1367(a). Opp. to CTTC, pp. 1-3. Contrary to Plaintiff Shames' contention, the Court does not have such discretion because the Bagley Keene claim is not factually related to the Sherman Act claim upon which original federal jurisdiction is based. It is not part of the same case or controversy under Article III of the United States Constitution, and the Court may not exercise supplemental jurisdiction. 28 U.S.C. § 1367(a).

A single case exists when the state and federal claims arise from a "common nucleus of operative facts" such that the plaintiff would ordinarily be expected to try them in a single judicial proceeding. *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966). "The statute extends the jurisdiction of a federal district court to all claims sufficiently related to the claim on which its original jurisdiction is based to be part of the same case or controversy within the meaning of Article III of the Constitution." *Baer v. First Options of Chicago, Inc.*, 72 F.3d 1294, 1299 (7th Cir. 1995). Plaintiffs must therefore establish that the supplemental claim is so related to the federal claim that it forms part of the same case or controversy. *See, e.g., Hudson v. Delta Air lines*, 90 F.3d 451 (11th Cir. 1996) [breach of contract claim not related to federal claims under

---

[3] Plaintiffs have agreed "to dismiss Caroline Beteta from this action," and "also agree to dismiss their UCL claim against the CTTC." (Opp. to CTTC, p. 1, fn. 1.) Therefore, the Court should dismiss defendant Caroline Beteta from this lawsuit entirely, and inter alia, dismiss the CTTC from the Second Cause of Action for purported violation of the California Unfair Competition Law, California Business and Professions Code section 17200. The only remaining claim based on California law is the Third Cause of Action brought individually by plaintiff Michael Shames for alleged violations of the Bagley Keene Act.

ERISA]. Here, the alleged Bagley Keene violations are separate and distinct from, and do not form part of, the same case or controversy as the federal anti-trust claim.

Without citation to the Complaint, Plaintiff Shames argues that, "Plaintiffs' [sic] state a claim alleging that Defendants (including CTTC) together all conspired *in secret* to violate the Sherman Act in a way that violates California's open meeting laws logically has a common nucleus of operative fact to Plaintiffs' claim of an unlawful conspiracy to violate the Sherman Act." Opp. to CTTC, p. 3. This contention is not supported by allegations in the Complaint. There is absolutely no link alleged between the alleged violations of Bagley-Keene <u>meeting requirements</u> and the purported conspiracy violating the Sherman Act. The federal anti-trust claim focuses on the conduct of the Rental Car Defendants either immediately preceding or immediately after amendments to the Tourism And Marketing Act and addition of Civil Code section 1936.01 became effective on January 1, 2007, while the Bagley-Keene claim focuses on conduct of CTTC that occurred <u>after</u> August 1, 2007.

As discussed earlier, the Complaint contains only conclusory allegations that Defendants met while attending CTTC Commission meetings, and allegedly agreed among themselves "to fix, increase, maintain or stabilize components of the process for airport car rentals . . . ." Complaint, ¶ 44(a). There is no allegation that Bagley-Keene violations occurred in any meeting when such alleged anti-trust agreement occurred nor that any Bagley-Keene violation facilitated the purported violation of the Sherman Act. The Complaint alleges that the antitrust conduct occurred in a time period inconsistent with the purported violations of the Bagley-Keene Act. There is no "common nucleus of operative facts" between them. A connection between the federal and state claims is the very minimum needed to support the existence of supplemental jurisdiction. *Baer v. First Options of Chicago, Inc., supra,* 72 F.3d at 1299.

2.   The Stipulated Interim Order Does Not Confer Jurisdiction.

Without citation to any authority, Plaintiff argues that this Court has supplemental jurisdiction over the Bagley-Keene claim because the parties jointly moved for the Order Granting Joint Motion For An Interim Order ("Interim Order") relating to the procedures for CTTC meetings pending a hearing on the Motion for Preliminary Injunction. Plaintiff argues that

the Interim Order distinguishes this case from the two *Southern California Edison Co. v. Lynch* cases, 307 F.3d 794(9th Cir. 2002) and 307 F.3d 648 (9th Cir. 2003) in which the Ninth Circuit declined to interpret the Bagley-Keene Act. Opp. to CTTC, pp. 3-4, 7. Plaintiff Shames ignores his agreement that the "Stipulation is without prejudice to any claim or defense of the parties." Interim Order, p. 1. Moreover, it is well settled that, as a matter of law, issues regarding a Court's subject matter jurisdiction are never waived, *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006), and the parties cannot confer subject matter jurisdiction where none exists. *Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S 694, 702 (1982).

3. **Principles Of Economy, Convenience, Fairness, And Comity Do Not Favor The Court Exercising Jurisdiction Over The Bagley-Keene Act Claim.**

Plaintiff relies on two unpublished district court cases, *Ponce v. General Motors Corp.*, 2002 U.S. Dist. LEXIS 27974 (D. Or. 2002) and *La Patagonia Compania Argentina de Seguras, S.A. v. Empresa Lineas Maritimas Argentinas S.A.*, 1992 U.S. Dist. LEXIS 15281(N.D. Cal. Apr. 7, 1992), to support his position that the Court should exercise jurisdiction over the Bagley-Keene Act claim, even though it has no connection to the antitrust claim, because it would somehow promote the values of economy, convenience, fairness and comity. Opp. to CTTC, pp. 4-5, 7. Those two cases do not support Plaintiff Shames' contention. In *Ponce* and in *La Pata Compania Argentina de Seguras, S.A.* it was undisputed that the claims shared a common nucleus of operative facts, and that supplemental jurisdiction over the State claims was initially proper under 28 U.S.C. § 1367(a). The issue in both cases was whether the District Court should <u>continue</u> to exercise supplemental jurisdiction over the State claims after the federal claim that was the only basis of original federal jurisdiction was dismissed.[4] Plaintiff's quotation from *Ponce* shows exactly why the court retained jurisdiction in that case, and why it should refuse to do so here. Opp. To CTTC, p. 5. In *Ponce* discovery had been completed, dispositive motions

---

[4] Retaining supplemental jurisdiction after dismissal of all claims that initially conferred federal jurisdiction is not the norm, but rather, the exception. *Ponce v. GMC*, supra at p. 41 (citing *O'Connor v. State of Nevada*, 27 F.3d 357, 363 (9th Cir. 1994) and *Reynolds v. County of San Diego*, 84 F.3d 1162, 1171 (9th Cir. 1996)).

{10824/16392/WSC/1024822.DOC;}    9    Reply to Opp. to CTTC Motion to Dismiss

filed and briefed, the parties were ready for trial, and the state court had just issued notice that it might suspend all civil trials indefinitely due to a budgetary crisis. Id. None of these circumstances exist here.

Plaintiff Shames further apparently argues that this Court has supplemental jurisdiction over the Bagley-Keene claim because CTTC benefits from tourism assessments that are paid by the Rental Car defendants. Opp. to CTTC, pp. 5-6. This argument is meritless. The fact that CTTC receives tourism assessments under the Tourism and Marketing Act, including assessments from the Rental Car defendants, does not establish any nexus of common operative facts between the any alleged violation of the Bagley-Keene Act and the alleged violation of the Sherman Act.

### III. CONCLUSION

For the foregoing reasons, the CTTC respectfully requests that its motion to dismiss be granted without leave to amend.

Dated: March 24, 2008

Respectfully submitted,

WEINTRAUB GENSHLEA CHEDIAK
Law Corporation

By: /s/ Thadd S. Blizzard
Thadd A. Blizzard
California State Bar No. 83297
Attorneys for Defendant The California
Travel and Tourism Commission

EDMUND G. BROWN JR., Attorney General
of the State of California
W. DEAN FREEMAN
FELIX E. LEATHERWOOD
Supervising Deputy Attorneys General
RONALD N. ITO
DIANE SPENCER SHAW
LISA W. CHAO
Deputy Attorneys General

By: /s/ Ronald N. Ito
Ronald N. Ito
California State Bar No. 71322
Attorneys for Defendant California
Travel and Tourism Commission