CENTER FOR PUBLIC INTEREST LAW
UNIVERSITY OF SAN DIEGO SCHOOL OF LAW
ROBERT C. FELLMETH, SBN 49897
cpil@sandiego.edu
ED HOWARD, SBN 151936
JULIANNE D'ANGELO FELLMETH, SBN: 109288
5998 Alcala Park
San Diego, CA  92110
Telephone:      (619) 260-4806
Facsimile:      (619) 260-4753

SULLIVAN HILL LEWIN REZ & ENGEL
A Professional Law Corporation
DONALD G. REZ, SBN 82615
rez@shlaw.com
550 West "C" Street, Suite 1500
San Diego, CA  92101
Telephone:      (619) 233-4100
Facsimile:      (619) 231-4372

HULETT HARPER STEWART LLP
DENNIS STEWART, SBN: 99152
dstewart@hulettharper.com
JENNIFER A. KAGAN, SBN: 234554
jenni@hulettharper.com
550 West C Street, Suite 1600
San Diego, CA  92101
Telephone:      (619) 338-1133
Facsimile:      (619) 338-1139

Attorneys for Plaintiffs

**IN THE UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MICHAEL SHAMES; GARY GRAMKOW, on behalf of themselves and on behalf of all persons similarly situated,<br><br>                    Plaintiffs,<br><br>v.<br><br>THE HERTZ CORPORATION, et al.,<br><br>                    Defendants. | Case No. 07CV2174H(BLM)<br><br>**CLASS ACTION**<br><br>**PLAINTIFF'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**<br><br>DATE:       April 1, 2008<br>TIME:       10:30 a.m.<br>JUDGE:     Honorable Marilyn L. Huff<br>CTRM:      13 |

# **TABLE OF CONTENTS**

I.  THE CTTC'S ACTIVE INVOLVEMENT IN THE ALLEGED CONSPIRACY IS A SUFFICIENT BASIS FOR JURISDICTION ........................................................................ 1

II.  DEFENDANT CTTC'S BAGLEY-KEENE ACT VIOLATIONS ARE NUMEROUS, SERIOUS, LONGSTANDING, AND HAVE CONTINUED SUBSEQUENT TO THIS COURT'S APPROVAL OF THE PARTIES' STIPULATED INTERIM ORDER ........................................................................ 3

III. PLAINTIFF HAS STANDING TO PROCURE A PRELIMINARY INJUNCTION ........................................................................ 7

IV. PLAINTIFF HAS MET HIS BURDEN UNDER THE STANDARDS GOVERNING PRELIMINARY INJUNCTIONS ........................................................................ 11

    A.  A Preliminary Injunction Remains Appropriate Despite the CTTC's Claim that It Is Now in Compliance with the Bagley-Keene Act ........................................................................ 11

    B.  Court Supervision Is a Non-Issue ........................................................................ 12

V.  CONCLUSION ........................................................................ 13

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**CASES**

4

*Chicago v. International College of Surgeons,*
    522 U.S. 156 (1997) ........................................................................................................ 8

5

6

*Dep't of Parks & Recreation v. Bazaar del Mundo, Inc.,*
    448 F.3d 1118 (9th Cir. 2006) ...................................................................................... 11

7

*Finlan v. City of Dallas,*
    888 F. Supp. 779 (N.D. Tex. 1995) ............................................................................... 9

8

9

*FTC v. Affordable Media, LLC,*
    179 F.3d 1228 (9th Cir. 1999) ............................................................................... 11, 12

10

*Goldfarb v. Virginia State Bar,*
    421 U.S. 773 (1975) ........................................................................................................ 8

11

12

*International Fed'n of Prof'l & Tech. Eng'rs, Local 21, AFL-CIO v. Superior Court,*
    42 Cal. 4th 319 (2007) ................................................................................................... 9

13

*Knudsen Corp. v. Nevada State Diary Comm'n,*
    676 F.2d 374 (9th Cir. 1982) ......................................................................................... 8

14

15

*Linda R.S. v. Richard D.,*
    410 U.S. 614 (1973) ........................................................................................................ 9

16

*Massachusetts v. EPA,*
    127 S. Ct. 1438 (2007) ................................................................................................... 9

17

18

*MedImmune, Inc. v. Genentech, Inc.,*
    127 S. Ct. 764 (2007) ................................................................................................... 10

19

20

*Natural Resources Defense Council, Inc. v. United States EPA,*
    966 F.2d 1292 (9th Cir. 1992) ..................................................................................... 12

21

*Norman-Bloodsaw v. Lawrence Berkeley Lab.,*
    135 F.3d 1260 (9th Cir. 1998) ..................................................................................... 12

22

23

*Public Citizen v. U.S. Department of Justice,*
    491 U.S. 440 (1989) ..................................................................................................... 10

24

25

*Walker v. County of Santa Clara,*
    No. C-04-02211 RMW, 2005 WL 2437037 (N.D. Cal. Sept. 30, 2005) ...................... 9

26

*Zenith Radio Corp. v. Hazeltine Research,*
    395 U.S. 100 (1969) ....................................................................................................... 7

27

28

ii

## STATUES, RULES, & REGULATIONS

15 U.S.C.
  § 26 ............................................................................................................. 7, 8

California Constitution
  Art. 1, § 3(b)(1) ................................................................................................ 9

California Government Code
  § 11120 ............................................................................................................ 3
  § 11123 ......................................................................................................... 5, 7
  § 11124 ............................................................................................................ 5
  § 11125(a) ........................................................................................................ 5
  § 11125(b) ................................................................................................. 2, 4, 5
  § 11130 ............................................................................................................ 4
  § 11130(a) .................................................................................................. 8, 12
  § 11130.7 ......................................................................................................... 7
  § 13995.40(q) .................................................................................................. 3
  § 13995.40.5(a) ............................................................................................... 3
  § 13995.65(f) ................................................................................................... 1

## SECONDARY AUTHORITIES

Antitrust Law, *Antitrust Law Developments* (6th ed. 2007) ........................................... 7

1  **I.    THE CTTC'S ACTIVE INVOLVEMENT IN THE ALLEGED CONSPIRACY IS A**
2     **SUFFICIENT BASIS FOR JURISDICTION**

3        The CTTC asserts that this Court lacks jurisdiction, claiming a lack of any relationship
4  between its Bagley-Keene Act violations and Plaintiffs' antitrust allegations.  This directly
5  contradicts the Rental Car Defendants, who attempt to rely upon the CTMA and CTTC
6  involvement as a claim for immunity.  *See, e.g.*, Mem. of Points and Authorities in Support of the
7  Rental Car Defendants Motion to Dismiss at 15-16.  While affording no basis for immunity, the
8  CTTC is, in fact, inextricably involved in the alleged conspiracy, and its violations of the open
9  meeting provisions of the Bagley-Keene Act furthered both the conspiracy and its secret nature.
10  While the CTTC wishes to distance itself from the alleged conspiracy, the facts show otherwise.

11        The communications among the rental car companies specifying their agreement to pass the
12  segment assessment to consumers in the first place is explicit in the ballot which the defendants used to
13  approve the assessment in late 2006.  Declaration of Donald G. Rez in Support of Reply Brief re
14  Motion for Preliminary Injunction ("Rez Decl."), Ex. E.  This ballot was circulated to the Rental Car
15  Defendants, pursuant to a memorandum of understanding signed by each of the Rental Car
16  Defendants.  Rez Decl., Ex. C (memorandum of understanding); *see also* Rez Decl., Ex. D (e-mail
17  string regarding negotiation of terms of MOU).  The ballot question put to each of the Rental Car
18  Defendants explicitly sought a vote on whether the assessment will be "collected *by* each car rental
19  company"; not collected "from" each rental car company. Rez Decl., Ex. E (emphasis added).  The
20  statute in no way authorized or compelled the defendants to agree that they would collect a charge
21  *from consumers*; it merely permitted Defendants to agree among themselves what they would pay *to*
22  *the fund.*[1]  Similarly, an excerpt of the agenda for the October 3, 2006 CTTC Executive Committee
23  meeting lists as the first item of business under Government Affairs Update: "Rental Car Pass through
24  Fees" (not assessment of the industry, but the charging by the rental car companies of a "pass through"
25  fee to consumers), Rez. Decl. Ex. F, and the minutes state: "the rental car companies would like to start

26  _____
27  [1]  As has been discussed in other filings, no provision of the law authorizing the assessment on the
   car rental companies required that the assessment be passed to consumers; only that companies
   may pass on some or all of their obligation as a customer charge as individually determined.  *See*
28  Cal. Gov't Code § 13995.65(f).

                                          1

1   passing on the fees beginning January 1, 2007," as well as that "the CTTC has acquired a partnership

2   with the rental car industry." Rez Decl., Ex. G.

3          Perhaps an even more striking example of the CTTC's facilitation of the conspiracy is an

4   email string dated January 15-16, 2007 from a representative of National Car Rental (one of the

5   dbas of Defendant Vanguard Car Rental USA Inc.) to Terri Toohey of the CTTC using the CTTC

6   to police the conspiracy. In that email, the National representative complains to the CTTC: "Our

7   competitor Avis is not charging the Tourism Fee here. They didn't tell me, but I can see [it] when

8   I shop their rates. **What can be done about that? It makes us look like our rates are higher,**

9   **and they are not**." Rez Decl., Ex. A (emphasis added). The CTTC's Toohey responded that she

10  had sent the forms "to the controllers of all the passenger car rental companies last week to insure

11  that they have been informed of the assessment." *Id*. She goes on to state, "**I will discuss the**

12  **issue with our Executive Director. We also have a meeting planned with the industry next**

13  **week and I will put it on the agenda**." *Id*. (emphasis added). The National representative then

14  thanks the CTTC representative for dealing with her complaint. *Id.*

15         As is evident from this exchange, the CTTC, acting in connection with its meetings, actively

16  facilitated the conspiracy alleged in the complaint, i.e., to charge a uniform fee to renters in connection

17  with the CTTC assessment, a discussion which obviously never found its way onto any agenda.[2]

18         Finally, the CTTC's website contained an explicit admission of the conspiracy to pass on

19  the fee to consumers and CTTC's involvement in it until it was removed from the site after this

20  lawsuit was filed. Under the sub-title "Passenger Car Rental Industry Tourism Assessment

21  Program," the website read:

22         A new tourism assessment program for the Passenger Car Rental Industry was
           enacted in 2006 and becomes effective January 1, 2007. . . . The Passenger Car

23  _____

24  [2] There does not appear to be any notice or agenda for a formal CTTC meeting two weeks hence.
    However, public documents reveal a Jan. 31 notice (about 2 weeks following the email) of a

25  Feb. 14, 2007 Executive Committee meeting. Rez Decl., Ex. B. There is only one thing on the
    agenda of that meeting – a closed session entitled "Analysis of Legal Issues on Various Funding

26  Requests and Proposals." This is an illegal closed session under Bagley-Keene: (1) the agenda
    does not disclose the section of the Government Code that authorizes the private meeting; and

27  (2) this entry − far from "specific" − is impermissibly vague. *See* Gov't Code § 11125(b). But for
    the violations of the Bagley-Keene Act, the public might have sooner learned that the CTTC was

28  using its offices as a means to police compliance with the conspiracy.

2

Rental Industry shall have an industry specific assessment rate, adjusted annually. *This assessment rate shall be passed through to the customer.*

Rez. Decl., Exs. H and I (emphasis added).[3]

In light of the above evidence, it is clear that the CTTC has played an integral role in the conspiracy among the Rental Car Defendants to impose on renters a 2.5% charge designed to recover their assessment requirement, a conspiracy which is nowhere either compelled or authorized by the statute.[4]  Despite its efforts to distance itself from the allegations, the CTTC's involvement in the alleged conspiracy and its violations of the Bagley-Keene Act are central to the current controversy.[5]

**II.    DEFENDANT CTTC'S BAGLEY-KEENE ACT VIOLATIONS ARE NUMEROUS, SERIOUS, LONGSTANDING, AND HAVE CONTINUED SUBSEQUENT TO THIS COURT'S APPROVAL OF THE PARTIES' STIPULATED INTERIM ORDER**

Enacted in 1967, the Bagley-Keene Open Meeting Act, Gov't Code §§ 11120, *et seq.*, is the premiere "sunshine statute" governing the functioning of state regulatory bodies in California. Defendant CTTC is fully subject to the Bagley-Keene Act (*see* Gov't Code § 13995.40(q)) and has been since its creation in 1995 (*see* SB 256 (Johnston) (Chapter 871, Statutes of 1995)).  The Bagley-Keene Act is neither new, nor complex.  It is the subject of two well-known interpretive

[3]  These documents also expose Defendants' *Twombly* motion for what it is: an attempt to dismiss this matter on a technical pleading ground in order to protect the unearthing of further evidence of the conspiracy.

[4]  Discovery has not yet begun in the case, and the evidence set forth here comes only from documents which the plaintiff has been able to gather through public sources.  Rez Decl. ¶¶ 2-3. Discovery will doubtlessly reveal even more information showing the CTTC's central role in the conspiracy.

[5]  The Rental Car Defendants, of course, permeate the CTTC.  They occupy four seats on the CTTC and are statutorily authorized (and expected) to increase to six.  The CTTC Bylaws provide that Commission industry membership is to be proportional to financial contribution (Article IV, Section 5).  AB 2592 added Government Code Section 13995.40.5(a) to provide for a maximum of six rental car members.  The current four include representatives of defendants Dollar/Thrifty (Brian Carpenter), Avis/Budget (Bob Muhs), Hertz (Brian Kennedy), and Enterprise (Kathy Turner).  Further, the CTTC receives 79% of its budget from the rental car firms; all of which emanates from the price fixed consumer charge.    http://renew.visitcalifornia.com/library/ PDF/CTTC_PalmCard_STATEWIDE.pdf.  Rez Decl., Ex. L.  Further arguments relating to this Court's supplemental jurisdiction over the Bagley-Keene Act claims can be found in Plaintiffs' Opposition to Defendant California Travel and Tourism Commission's Motion to Dismiss.

3

1    guides followed by all California multimember regulatory boards.[6]

2          The November 14, 2007 complaint alleges multiple serious violations of the Bagley-Keene

3    Act by Defendant CTTC, which violations have deprived Plaintiff and the public of the ability to

4    monitor CTTC and its dealings with the tourism industry – and specifically the passenger rental

5    car industry.    Among the dozens of violations alleged are illegal closed sessions (private

6    meetings), repeated failure to comply with simple notice and agenda requirements, and illegal

7    teleconference meetings.    After Plaintiff filed his motion for preliminary injunction, Defendant

8    quickly agreed to the Court's December 12, 2007 Order prohibiting the CTTC from further

9    violating the Act.

10          In response to Plaintiff's motion, Defendant CTTC (and its counsel, the Attorney General's

11    Office, which is responsible for enforcing the Act, *see* Gov't Code § 11130) now misdirects this

12    Court by "cherry-picking" certain of Plaintiff's allegations, denying that it has violated the Act,

13    and/or incomprehensibly asserting an "I didn't know what the law requires" defense by Declarant

14    Sabbatini,[7] while completely ignoring the numerous serious violations that Plaintiff has

15    documented *on the face of Defendant's own documents*.    These violations strike at the heart of the

16    Bagley-Keene Act and its requirements for transparency in state board meetings, deliberations, and

17    decisionmaking.    Even disregarding Defendant's alleged "non-violations," Plaintiffs have

18    documented the following undisputed violations through the declarations of Fellmeth, Johnson,

19    and Muhlenkamp (and Defendant's own documents attached as exhibits thereto):

20          • **six (6) violations of Gov't Code § 11125(b)** for failure to post meeting agendas on the

21               Internet at all (s*ee* Fellmeth Decl., ¶¶ 6-11 and Exs. C-H, M, N.);

22

23    [6]  *See* the Department of Consumer Affairs' *Guide to the Bagley-Keene Open Meeting Act*,
      <www.dca.ca.gov/publications/bagleykeene_meetingact.pdf>; *see also A Handy Guide to the*

24    *Bagley-Keene Open Meeting Act 2004*, <www.ag.ca.gov/publications/bagleykeene2004_ada.pdf>
      written by Defendant's own belatedly-added counsel, the Office of the Attorney General.

25    [7]  Specifically, Declarant Sabbatini avers that "I was not aware of the requirement to include an
      Internet address" on written notices of meetings.    Sabbatini Decl. ¶ 15.    The Internet address

26    requirement was added in 1999 by AB 1234 (Shelley) (Chapter 393, Statutes of 1999).    The *Handy*

27    *Guide* of the Attorney General, which is supposed to be advising CTTC and Mr. Sabbatini, states
      clearly: "The notice for a meeting must also be posted on the Internet, and the web site address

28    must be included on the written agenda." *Handy Guide* at 8.

- **five (5) violations of Gov't Code § 11125(a)** for failing to post meeting agendas on the Internet ten days in advance of the meeting (*see* Fellmeth Decl., ¶¶ 8-19 and Exs. E-Q);

- **four (4) violations of Gov't Code § 11125(b)** for holding illegal "closed sessions" (*see* Fellmeth Decl., ¶¶ 9, 19 and Exs. F, P; *see also* Johnson Decl., ¶¶ 4(a)(iii), 4(f)(iii) and Exs. B, L);

- **eleven (11) violations of Gov't Code § 11123** for noncompliance with the Act's teleconference provisions (*see* Fellmeth Decl., ¶¶ 6-11 and Exs. C-H; *see also* Johnson Decl., ¶¶ 4(a)(i), 4(b)(i), 4(e)(i), 4(f)(i) and Exs. A, C, I, K; Muhlenkamp Decl., ¶ 5(e)(2) and Exs. I, J);

- **a continuous violation of Gov't Code section 11125(a)** for failing to post meeting notices and agendas on the Internet in a place where a reasonble and interested member of the public would actually − until required to do so by the interim order (*see* Fellmeth Decl., ¶ 12; Johnson Decl., ¶ 4(j); Muhlenkamp Decl., ¶ 5(k));

- **sixteen (16) violations of Gov't Code § 11125(a)** for failure to print − on official meeting notices − the Internet address of the site where meeting notices are electronically available (*see* Fellmeth Decl., ¶¶ 5-11 and Exs. B-H; *see also* Johnson Decl., ¶¶ 4(a)(i), 4(b)(i), 4(c)(i), 4(d)(i), 4(e)(i), 4(f)(i), 4(g)(i), 4(h)(i), 4(i)(i) and Exs. A, C, E, G, I, K, M, O, Q; Muhlenkamp Decl., ¶ 5(j)(i) and Ex. S);

- **twenty (20) violations of Gov't Code § 11124** for issuing meeting notices requiring attendees to "register" or "RSVP" "so that we can ensure that pertinent meeting materials reach you," and/or actually requiring attendees to sign in at meetings without telling them that sign-in is optional (*see* Fellmeth Decl., ¶¶ 5 and Exs. B-H; *see also* Johnson Decl., ¶¶ 4(a)(ii), 4(b)(ii), 4(b)(v), 4(c)(ii), 4(c)(v), 4(d)(ii), 4(e)(ii) and Exs. A, C, E, G, I, K, M, O; Muhlenkamp Decl., ¶¶ 5(e)(iii), 5(j)(ii) and Exs. I, S.); and

- **seventeen (17) violations of Gov't Code § 11125(b)** for failing to post a "specific agenda" that fairly apprizes the public of the items to be discussed and decided (*see*

5

1  Fellmeth Decl., Exs. B-H; *see also* Johnson Decl., Exs. B, D, H, J, L, N, P, R;

2  Muhlenkamp Decl., Ex. S).

3      Defendant's noncompliance with the Bagley-Keene Act has continued even after this Court

4  approved the joint interim order.  On Friday, November 30, 2007 (after the instant complaint was

5  filed), Defendant sent an email informing the members of the CTTC's Executive Committee of the

6  need to reschedule a teleconference meeting that had been set for December 12, 2007.  *See* Rez

7  Decl., Ex. M.   The email reflects a proper understanding of Bagley-Keene's teleconference

8  provision and clearly conveys it to the Commissioners:

9
10        Unfortunately, open meeting laws require that at least one Commissioner be physically present in the CTTC office in order to hold a meeting via teleconference. That [is] not possible on December 12. . . . Our legal counsel has
11  informed us that our public meeting notices must indicate the address and phone number of each location from which any meeting attendee will participate in the meeting via conference call, and that *participating in meetings via cell phone from*
12  *a car is prohibited.*  In addition, we are informed that once the notice is disseminated, commissioners are prohibited from changing the mode or location of
13  their participation in the meeting.

14  *Id*. (emphasis added).

15      As a result of this email, the CTTC − on Monday, December 3 − published a notice and agenda

16  of an Executive Committee teleconference meeting scheduled for December 14, 2007.  The notice

17  included all of the teleconference locations from which Executive Committee members would be

18  participating, and indicated that Commission Chair (and Business, Transportation and Housing

19  Agency Secretary) Dale Bonner would be participating from the CTTC's Sacramento office.  *See* Rez

20  Decl., Ex. N.

21      This Court approved the joint interim order on December 12, 2007.  In that order, Defendant

22  CTTC agreed that, for future teleconference meetings, "[t]he CTTC shall identify each teleconference

23  location by its address in the notices and agendas, and it shall provide public access to each

24  teleconference location.   Furthermore, *members of the CTTC may only attend meetings via*

25  *teleconference at locations that have been noticed and are accessible to the public.*"  Order Granting

26  Joint Motion for an Interim Order (Dec. 12, 2007), ¶ 5 (emphasis added).

27      On December 14, 2007, while the interim order was in effect, Secretary Bonner

28  participated in the teleconference meeting via his cell phone.  In other words, Defendant not only

6

violated § 11123's requirement that all members participate from one of the noticed locations that is accessible to the public; it also violated the stipulated interim order.  In fact, because the members of the CTTC Executive Committee had been informed of the law in writing prior to the meeting and then violated it with knowledge of that law, they are arguably guilty of a misdemeanor under Gov't Code § 11130.7.[8]  On December 27, 2007, Plaintiffs' counsel brought this matter to the attention of Defendant's counsel.  Rez Decl., Ex. N.  In a response dated January 4, 2008, Defendant's counsel admitted that Mr. Bonner had participated from a location other than the one specified in the meeting notice, and that the vague agenda items banned by the interim order had been used.  *Id*. Although counsel offered excuses for these violations, they are irrelevant to the fact that both the law and the interim order had been violated.

### III.    PLAINTIFF HAS STANDING TO PROCURE A PRELIMINARY INJUNCTION

There can be no doubt that Plaintiff has standing to procure injunctive relief against ongoing violations of the Bagley-Keene Open Meetings Act by the CTTC.  Critically, the violations by the CTTC of open meetings law have facilitated the antitrust violations complained of herein.  By secretly conducting meetings and by failing to provide Internet notice of the actual topics discussed at the meetings (etc.), the CTTC has facilitated the orchestration of the price fixing of the CTTC assessment.  Plaintiff has standing under the Clayton Act to procure injunctive relief to put an end to this facilitating mechanism.  15 U.S.C. § 26.  Standing under section 16 of the Clayton Act (15 U.S.C. § 26) requires only that plaintiff allege there is a threatened loss or injury cognizable in equity proximately resulting from alleged antitrust violations which constitute antitrust injury.  *Zenith Radio Corp. v. Hazeltine Research*, 395 U.S. 100, 130 (1969).  "Injunctive remedies under section 16 of the Clayton Act may be as broad as necessary to terminate the illegal conduct, prevent or eliminate its consequences, *and ensure that violations do not recur*."  ABA Section of Antitrust Law, *Antitrust Law Developments* (6th ed. 2007) at 851 (emphasis added).  Nor does the CTTC's claim that it is a state agency (its own literature asserts that it is an

---

[8]  Defendant's agenda also violated both the Bagley-Keene Act and the joint interim order in that it listed as agenda items the impermissibly vague topics of "other financial matters" and "other business," which are expressly forbidden by paragraph 4 of the December 12, 2007 interim order.

7

"industry-led public/private partnership" − *see* Rez Decl., Exs. J, K) alter the analysis.  Under 15 U.S.C. § 26 the Court has the authority to preliminarily enjoin state agencies to even suspend enforcement of certain provisions of challenged statutes and regulatory schemes.  *Knudsen Corp. v. Nevada State Diary Comm'n*, 676 F.2d 374, 378 (9th Cir. 1982).  *See*, generally, *Goldfarb v. Virginia State Bar*, 421 U.S. 773 (1975) (approving injunction action against state bar).  A *fortiori* this Court has the authority to require the CTTC to fully comply with state sunshine statutes to help end an illegal price fix.  Here, an order that this agency comply with the state law will go far toward preventing a recurrence of antitrust wrongdoing.  Among other things, it is the illegal secrecy that facilitated the illegal cartel.  And an order requiring CTTC to obey the law is hardly invasive.

CTTC's contention that the Bagley-Keene violations are only before the Court by means of supplemental jurisdiction and that, as a "state agency," it should not be subject to federal court review is wrong for a second reason.  The Supreme Court disposed of that contention in *Chicago v. International College of Surgeons*, 522 U.S. 156, 165-66 (1997) ("The claims for review of the Commission's decisions are legal 'claims,' in the sense that that term is generally used in this context to denote a judicially cognizable cause of action.  And the state and federal claims 'derive from a common nucleus of operative fact,' namely, ICS's unsuccessful efforts to obtain demolition permits from the Chicago Landmarks Commission.  That is all the statute requires to establish supplemental jurisdiction . . . .") (citation omitted).  Thus, the supplemental jurisdiction of this Court extends to the Bagley-Keene claim because the Bagley-Keene violation is a part of the illegal price-fixing conspiracy.  And, as set forth above, injunction of state-related entities to thwart cartelization are absolutely appropriate.

Just as dispositively, the California Legislature has made the determination that "any interested person may commence an action by mandamus, injunction, or declaratory relief for the purpose of stopping or preventing violations or threatened violations of" the Bagley-Keene Act.  Government Code § 11130(a).  This is in furtherance of Plaintiff's constitutional right as follows: "The people have the right of access to information concerning the conduct of the people's business, and, therefore, the meetings of public bodies and the writings of public officials and

8

1   agencies shall be open to public scrutiny."  California Constitution Art. 1, § 3(b)(1).

2           Openness in government is essential to the functioning of a democracy.  "Implicit
3       in the democratic process is the notion that government should be accountable for
        its actions.  In order to verify accountability, individuals must have access to
        government files.  Such access permits checks against the arbitrary exercise of
4       official power and secrecy in the political process."

5   *International Fed'n of Prof'l & Tech. Eng'rs, Local 21, AFL-CIO v. Superior Court*, 42 Cal. 4th

6   319, 328-29 (2007).

7           Thus, a sufficient interest to invoke standing has been vested in Plaintiff by the Legislature.

8   *Finlan v. City of Dallas*, 888 F. Supp. 779, 784 (N.D. Tex. 1995) ("[a]n interested person may

9   bring an action by injunction to stop, prevent, or reverse a violation or threatened violation of the

10  TOMA [Texas Open Meetings Act] by members of a governmental body").  Where a litigant has a

11  statutory right to challenge agency action standing requirements have been fulfilled.

12  *Massachusetts v. EPA*, 127 S. Ct. 1438, 1453 (2007).  The Legislature may enact statutes creating

13  legal rights, the invasion of which creates standing, even though no injury would exist without the

14  statute creating the legal right.  *Linda R.S. v. Richard D.*, 410 U.S. 614, 617 n.3 (1973).  Hence, a

15  litigant that the Legislature has accorded a procedural right to protect his interests can assert that

16  right without meeting any other standing requirements.  *See Walker v. County of Santa Clara*, No.

17  C-04-02211 RMW, 2005 WL 2437037, at *7 (N.D. Cal. Sept. 30, 2005) (self-executing provisions

18  of California Constitution such as free speech clause may be enforced by a private plaintiff in

19  declaratory relief or injunction action).

20          Here, there is both a self-executing constitutional provision and the Legislature has

21  accorded Plaintiff the right to protect his interests both (a) in open government and (b) more

22  specifically in not having a government agency engage in secret price-fixing activities.  This

23  cartelization has been foisted precisely by the "arbitrary exercise of official power and secrecy in

24  the political process" that the legislation was designed to prevent.  And the relief requested will

25

26

27

28

9

1   redress the unlawful conduct.[9]

2          Moreover, Plaintiff Shames, by profession, is a consumer advocate; he heads the largest

3   consumer ratepayer organization in the state, the second largest in the nation.  *See* www.ucan.org.

4   The CTTC's suggestion that Plaintiff did not explicitly ask for anything before being denied

5   misses the entire point.  The violation is that the CTTC kept its activities secret, and did not

6   publish adequate notice of meetings or agendas so that "interested persons" would know of the

7   commission or its illegal and unlawful activities.  This is precisely why the Legislature allowed for

8   those "interested" such as Plaintiff here to pursue injunctive or declaratory relief to put an end to

9   violations because they cause those such as Plaintiff injury.[10]

10         Similarly, as the Supreme Court has recently reiterated, broad relief is available under the

11  declaratory relief statute:

12         Our decisions have required that the dispute be "definite and concrete, touching of
           the legal relations of parties having adverse legal interests" and that it be "real and
13         substantial" and "admi[t] of specific relief through a decree of a conclusive
           character, as distinguished from an opinion advising law would be upon a
14         hypothetical state of facts."

15  *MedImmune, Inc. v. Genentech, Inc.*, 127 S. Ct. 764, 771 (2007) (citations omitted).  Here the

16  California statute provides for declaratory relief, and Plaintiff clearly meets the *MedImune*

17  standards as a legal right has been violated, the dispute is definite and concrete, a real and

18  substantial right (a constitutional right!) has been violated, and this Court can admit the specific

19  relief by ordering the CTTC to comply with the law.  No more is needed.

20         There is no real issue regarding standing to pursue the requested injunctive relief.

21  _____

22  [9]  That others may have standing to assert claims for similar relief is irrelevant.  One injunction is
     all that is needed and "[t]he fact that other citizens or groups of citizens might make the same
23   complaint . . . does not lessen appellant's asserted injury, any more than the fact that numerous
     citizens might request the same information under the Freedom of Information Act . . . ."  *Public
24   Citizen v. U.S. Department of Justice,* 491 U.S.  440, 449-50 (1989).

25  [10]  The United States Supreme Court has noted that "Our decisions interpreting the Freedom of
     Information Act have never suggested that those requesting information under it need show more
26   than that they sought and were denied specific agency records."  *Public Citizen*, 491 U.S. at 449.
     Here: (1) Plaintiff as part of his profession as a watchdog relies on others to make requests and
27   then follows up if those requests are not honored, and (2) the agency was operating in secret and
     so no specific request could be made because they were not giving the notice they were required to
28   give under law - the watchdog has filed this action to put an end to that.

                                                    10

1    **IV.    PLAINTIFF HAS MET HIS BURDEN UNDER THE STANDARDS GOVERNING**
2          **PRELIMINARY INJUNCTIONS**

3          Although the CTTC correctly identifies the two-pronged test, they are wrong in their

4    assertion that Plaintiffs have not met it.  Indeed, its stipulation to this Court's Joint Interim Order

5    implicitly recognizes as much.  In any event, to obtain relief, "the movant must demonstrate either:

6    (1) a combination of probable success on the merits and the possibility of irreparable harm, or

7    (2) that serious questions are raised as to the merits and that the balance of hardships tips in its

8    favor."  *Dep't of Parks & Recreation v. Bazaar del Mundo, Inc.*, 448 F.3d 1118, 1123 (9th Cir.

9    2006).  As to the first prong, the CTTC's admitted ignorance of some of its obligations and of its

10   violations and the fact that it was only after Plaintiff filed this lawsuit and brought this motion that

11   CTTC agreed to change certain of its practices in the prior stipulated Order entered by this court,[11]

12   plainly satisfies the "likelihood of success" prong.  As to the second prong, the Shames class is

13   obviously disadvantaged by the antitrust violation (which is continuing) and the secrecy

14   facilitating it.  Not only did the Bagley-Keene Act violations enable the supracompetitive prices

15   charged by the Rental Car Defendants, but the violations also deprived the class of notice and

16   participation opportunity in CTTC meetings, which is exactly what the Act was intended to

17   prevent.  Further, the CTTC will clearly not suffer any hardship from an order to comply with an

18   Act it concedes fully applies to it.  It will only be doing what it is required to do under the law.

19          **A.    A Preliminary Injunction Remains Appropriate Despite the CTTC's Claim**
                    **that It Is Now in Compliance with the Bagley-Keene Act**
20

21          The CTTC's claim that it has ceased violating the Bagley-Keene Act is unavailing.  "[I]t is

22   actually well-settled 'that an action for an injunction does not become moot merely because the

23   conduct complained of was terminated, *if there is a possibility of recurrence*, since otherwise the

24   defendant's [sic] would be free to return to [their] old ways."  *FTC v. Affordable Media, LLC*, 179

25   F.3d 1228, 1237 (9th Cir. 1999) (quoting *FTC v. Am. Standard Credit Sys.*, 874 F. Supp. 1080,

26   1087 (C.D. Cal. 1994)) (alterations and emphasis in original).  To render the need for a

27

28   [11] *See* Order Granting Joint Motion for an Interim Order (Dec. 12, 2007).

11

1    preliminary injunction moot, the "heavy" burden is on the CTTC.  *See Norman-Bloodsaw v.*

2    *Lawrence Berkeley Lab.*, 135 F.3d 1260, 1274 (9th Cir. 1998)).  To meet its burden, the CTTC

3    must show "'subsequent events [have] made it absolutely clear that the allegedly wrongful

4    behavior cannot reasonably be expected to recur.'"  *Affordable Media*, 179 F.3d at 1238 (citation

5    omitted).

6        The CTTC has presented no evidence to suggest, much less to make it "absolutely clear,"

7    that it will not continue to violate the Bagley-Keene Act should the Court not intervene.  A reading

8    of the particulars of the violations, as presented in Plaintiff's moving papers, supports the

9    reasonable inference that they are longstanding and multifaceted, and, in fact, the CTTC's

10   minimization of these matters weighs decidedly against it.[12]  And, regrettably, violations have not

11   entirely ceased during the pendency of this motion and the stipulated interim order.  As such,

12   Court intervention is essential to ensure the CTTC's compliance with the Bagley-Keene Act.

13       **B.    Court Supervision Is a Non-Issue**

14       Finally, citing to an inapposite case not involving a preliminary injunction, the CTTC

15   contends that enforcement of the order would require "excessive court supervision."  In *Natural*

16   *Resources Defense Council, Inc. v. United States EPA*, 966 F.2d 1292 (9th Cir. 1992), the court

17   invoked its discretion and declined to issue an injunction due to the complex and multifarious

18   nature of the rules at issue there.  *See id.* at 1300.  By contrast, the present case would require no

19   court supervision.  Plaintiffs are fully capable of monitoring compliance and notifying the court of

20   any violation.[13]  Indeed, Plaintiff expects the Office of the Attorney General − whose *Handy*

21   *Guide* on the Bagley-Keene Act has apparently not been a part of agency consciousness or files −

22   to prevail upon the CTTC to accomplish a stipulated permanent order as to this matter.  That

23   [12]  *See*, *e.g.*, Rez Decl., Ex. N (Post letter).  Plaintiff acknowledges that Defendant CTTC has

24   improved its compliance over the last several months – including a web site location that is
     reasonably discoverable.  But this laudable performance occurs in the context of court review and

25   a stipulated order.  This agency has the disadvantage of little attorney oversight and, unlike other
     agencies, no secure advisory role by the Office of the Attorney General.

26   [13]  The Act specifically provides that, if an agency is not in compliance, "any interested person

27   may commence an action by mandamus, injunction, or declaratory relief for the purpose of
     stopping or preventing violations or threatened violations" of the Bagley-Keene Act.  Cal. Gov't

28   Code § 11130(a).

12

1   resolution would be regrettably set back should the Court turn aside the reasonable enforcement of

2   this seminal "sunshine" statute.

3   **V.      CONCLUSION**

4          For these reasons and the reasons stated in Plaintiff's opening memorandum, a preliminary

5   injunction should issue.

6   DATED:  March 24, 2008              HULETT HARPER STEWART LLP
                                        DENNIS STEWART
7                                       JENNIFER A. KAGAN

8

9
                                         */s/Dennis Stewart*
10                                      DENNIS STEWART

11                                      550 West C Street, Suite 1600
                                        San Diego, CA  92101
12                                      Telephone:    (619) 338-1133
                                        Facsimile:    (619) 338-1139
13

14                                      CENTER FOR PUBLIC INTEREST LAW
                                        UNIVERSITY OF SAN DIEGO
15                                        SCHOOL OF LAW
                                        ROBERT C. FELLMETH
16                                      ED HOWARD
                                        JULIANNE D'ANGELO FELLMETH
17                                      5998 Alcala Park
                                        San Diego, CA  92110
18                                      Telephone:    (619) 260-4806
                                        Facsimile:    (619) 260-4753
19

20                                      SULLIVAN, HILL, LEWIN, REZ & ENGEL
                                        A Professional Law Corporation
21                                      DONALD G. REZ
                                        550 West "C" Street, Suite 1500
22                                      San Diego, CA  92101
                                        Telephone:    (619) 233-4100
23                                      Facsimile:    (619) 231-4372

24

25                                      Attorneys for Plaintiffs

26

27

28

                                   13