1   Center for Public Interest Law
    University of San Diego School of Law
2     Robert C. Fellmeth, SBN 49897
      Ed Howard, SBN 151936
3   5998 Alcala Park
    San Diego, CA 92110
4   Telephone:    (619) 260-4806
    Facsimile:    (619) 260-4753
5   cpil@sandiego.edu

6   Sullivan, Hill, Lewin, Rez & Engel              Hulett Harper Stewart LLP
    A Professional Law Corporation                    Dennis Stewart, SBN 99152
7     Donald G. Rez, SBN 82615                         Kirk Hulett, SBN 110726
    550 West "C" Street, Suite 1500                    Jennifer Kagan, SBN 234554
8   San Diego, California 92101                      550 West "C" Street, Suite 1600
    Telephone:    (619) 233-4100                     San Diego, CA 92101
9   Facsimile:    (619) 231-4372                     Telephone:    (619) 338-1133
    rez@shlaw.com                                    Facsimile:    (619) 338-1139
10                                                   dstewart@hulettharper.com

11  Attorneys for Plaintiffs

12
                      UNITED STATES DISTRICT COURT
13
                    SOUTHERN DISTRICT OF CALIFORNIA
14

| | |
|---|---|
| MICHAEL SHAMES; GARY GRAMKOW, on behalf of themselves and on behalf of all persons similarly situated, | Case No. 07CV2174 H BLM |
| | **[CLASS ACTION]** |
| Plaintiffs, | |
| v. | **FIRST AMENDED COMPLAINT FOR INJUNCTION, MONEY DAMAGES AND DECLARATORY RELIEF** |
| THE HERTZ CORPORATION, a Delaware corporation; DOLLAR THRIFTY AUTOMOTIVE GROUP, INC., a Delaware corporation; AVIS BUDGET GROUP, INC., a Delaware corporation; VANGUARD CAR RENTAL USA, INC., an Oklahoma corporation; ENTERPRISE RENT-A-CAR COMPANY, a Missouri corporation; FOX RENT A CAR, INC., a California corporation; COAST LEASING CORP., a Texas corporation; and THE CALIFORNIA TRAVEL AND TOURISM COMMISSION | **TRIAL BY JURY DEMANDED** |
| Defendants. | |

::ODMA\PCDOCS\PCDOCS\283206\4                                    07CV2174 H BLM

## **INTRODUCTION**

1.      This action is for redress by consumers for an antitrust and unfair competition conspiracy engaged in by passenger rental car companies ("Rental Car Defendants") operating at certain California airports (those California airports collecting an Airport Concession Fee) and facilitated by and through the California Travel and Tourism Commission ("CTTC"). The CTTC consistently describes itself as "an industry-led public/private partnership."

2.      Exploiting a 2006 statutory change that permits them to (1) separate out - or "unbundle" - one specific charge (the Airport Concession Fee) from their advertised and quoted base rate, (2) assess themselves a separate fee to pay for a vastly increased budget for the CTTC, and (3) determine individually whether to pass those charges, or any part of those charges, on to consumers, the Rental Car Defendants - assisted by the CTTC, the "industry-led partnership" - have entered into a horizontal price-fixing agreement among competitors, a *per se* violation of the antitrust laws, by which they agreed to raise, stabilize and fix the prices which they charge consumers for the rental of automobiles at those California airports. No state law requires the Rental Car Defendants to pass on any charge whatsoever to their customers. Instead, California law governing the mechanics of CTTC assessments expressly provides that "[n]otwithstanding any other provision of law," the decision as to whether or not to pass on an assessment to a business' customers is in the competitive discretion of each individual company. And clearly, no state law allows the Rental Car Defendants to collude in making that decision.

3.      The price-fixing agreement complained of herein has two independently wrongful components. First, the Rental Car Defendants, and each of them, with the assistance of the CTTC reached an agreement to surcharge consumers 2.5% of the price of a car rental and not to compete with each other with respect to this 2.5% surcharge. This was accomplished through meetings, negotiations, e-mails and explicit agreements, including a written Memorandum of Agreement executed by each of the Rental Car Defendants and the CTTC (attached as Exhibit A), a ballot approved and agreed to by all the Defendants and an agreement as posted on the CTTC website that the "assessment rate shall be passed through to the customer" rather than allowing each company to decide for itself whether to pass through the assessment. Thereafter, when it appeared one of the

1   Defendants had briefly failed to charge consumers the assessment, another Defendant complained to

2   the CTTC of the violation of the agreement and the CTTC promised to address it and "put it on the

3   agenda" at the next industry meeting. That was done at a Passenger Car Rental Industry Tourism

4   Assessment Meeting in January 2007. Upon information and belief, no further breaches of the

5   agreement were noted nor reported. The surcharge price-fix had been effectuated and has

6   consistently been charged in the agreed amount.

7       4.       The first component of the price-fixing agreement described above is accompanied by

8   affirmative misrepresentations. Rental Car Defendants, with the assistance and complicity of the

9   CTTC, have misrepresented to consumers that this 2.5% assessment is owed by the consumer to the

10  CTTC. Indeed, the Defendants conspired to "[e]stablish [a] consistent name of [the] 'assessment

11  program' on the rental contract throughout the state" (*see* attached Exhibit B). In fact, this

12  assessment is owed by Defendants, and leaves to their independent competitive discretion the issue

13  whether to pass that assessment on to consumers. The 2.5% charge Defendants uniformly impose on

14  consumers is the product of a horizontal agreement among competitors and constitutes a *per se*

15  unlawful agreement to fix prices, as well as unfair competition and false advertising. Nothing in the

16  legislation which resulted in the charging of a CTTC assessment on the Rental Car Defendants either

17  requires the Rental Car Defendants to pass that charge, or any of it, to consumers, nor does it

18  authorize the Rental Car Defendants to horizontally agree to do so.

19      5.       Second, Defendants have further unlawfully conspired to raise, stabilize and fix

20  prices by agreeing to and actually passing on to consumers a fee known as the Airport Concession

21  Fee. Prior to January 2007, that fee was bundled into the total rental price charged consumers and

22  Defendants competed for business on a total base price, which included the Airport Concession Fee.

23  As described more fully below, in January 2007, the Legislature allowed the Rental Car Defendants

24  at airports to "unbundle" that charge and separately itemize it on the bill. The Rental Car

25  Defendants seized upon this opportunity to collectively increase prices. Prior to the unbundling, the

26  Rental Car Defendants competed on every aspect of price. Following the unbundling and the

27  meeting among the competitors to discuss pricing and the agreement to uniformly charge consumers

28  the CTTC surcharge, the Rental Car Defendants, and each of them, agreed to pass this charge of

::ODMA\PCDOCS\PCDOCS\283206\4                                                    07CV2174 H BLM

1  approximately 9% on to consumers by essentially maintaining the level of the previously bundled

2  base rates and charging, as a separately identified and additional fee, the previously bundled 9%

3  Airport Concession Fee thus increasing each of their prices and ultimately their profits

4  concomitantly. This constituted a significant change in behavior by Defendants and an aberrant

5  price movement for the industry. Nationwide, airport car rental rates declined in January of 2007; in

6  California they increased.

7        6.     Finally, the CTTC, an entity which has facilitated the illegal antitrust activities above,

8  benefited by acquiring a "partnership with the rental car industry to secure a long-term funding

9  solution for the CTTC," a solution that provides 79% of the CTTC budget from money collected

10  from consumers by the Rental Car Defendants and passed on, in part, to the CTTC through the

11  CTTC fee offense described above. The CTTC involvement has been facilitated and covered up by

12  its consistent violations of California's Bagley-Keene Open Meeting Act, which violations

13  themselves have been part of the facilitation of the antitrust conspiracy.

14        7.     Plaintiffs bring this action for injunctive relief, damages suffered by them and all

15  Class members trebled pursuant to statute, and attorneys' fees for antitrust violations by the Rental

16  Car Defendants, and each of them, and for injunctive relief and restitution under this Court's pendent

17  jurisdiction for violations of California's Unfair Competition Laws and Consumers Legal Remedies

18  Act,[1] and for violations of the Bagley-Keene Open Meeting Act, according to proof. Plaintiffs bring

19  this action on their behalf, and on behalf of the class of persons similarly situated. All facts herein

20  are pled on information and belief except with respect to the allegations pertaining to the named

21  Plaintiffs.

22                                       **JURISDICTION AND VENUE**

23        8.     Jurisdiction of this Court is based upon its jurisdiction to hear "any civil action or

24  proceeding arising under any Act of Congress regulating commerce or protecting trade and

25  commerce against restraints and monopolies." 28 U.S.C. § 1337. The Complaint is filed under

26

27  [1] Plaintiffs, at this time, seek only injunctive relief pursuant to the Consumers Legal Remedies Act claim.

28

1   Sections 4 and 16 of the Clayton Act (15 U.S.C. Sections 15 and 26) to recover damages the Plaintiff

2   Class has incurred due to violations by the Defendants, as hereinafter alleged, of Section 1 of the

3   Sherman Act (15 U.S.C. Section 1) and to obtain equitable relief and attorneys' fees. There is also

4   general federal subject matter jurisdiction under 28 U.S.C. § 1331. Pursuant to Rule 23 of the

5   Federal Rules of Civil Procedure, this case is brought as a class action.

6        9.    This Court also has diversity jurisdiction over the Class defined herein pursuant to 28

7   U.S.C. § 1332(d)(2) and (6) (Class Action Fairness Act of 2005) because one or more members of

8   the Class defined herein are citizens of a State different from one or more Defendants and the

9   aggregate amount in controversy exceeds five million dollars ($5,000,000), exclusive of interest and

10   costs.

11        10.    This Court has pendent jurisdiction over the claims of Plaintiffs arising out of alleged

12   violations of California Business & Professions Code sections 17200 and 17500 (the "Unfair

13   Competition Law" and the "False Advertising Law") and California Civil Code section 1750 *et seq.*

14   ("Consumers Legal Remedies Act"). And the Court has pendent jurisdiction over the claims of

15   Plaintiffs arising out of alleged violations of the Bagley-Keene Open Meeting Act (California

16   Government Code Sections 11120, *et seq.*)

17                               **DEFINITIONS**

18        11.    As used in this Complaint, the following definitions apply:

19             A.    "Rental Car Defendants" means the first seven named Defendants in the

20   caption and listed below. Each of these seven entities rents passenger cars to members of the Class

21   from locations at California airports [venues]. Each of them pays an "Airport Concession Fee" to

22   respective airport authorities for airport access, for solicitation, rental, return and related business

23   purposes.

24             B.    "Base Rate" refers to the base charge to rent a car charged by the Rental Car

25   Defendants before any specified additional charges. Prior to 2007, that base rate was required by

26   law in California to include all charges except taxes, a customer facility charge, and mileage charges;

27   but it included the Airport Concession Fee.

28

C.    "Bundling" of rental car charges refers to the requirement that rental car companies include in their respective and advertised "base rate" charges, fees and costs that may be calculated in advance as part of their consumer billing.

D.    CTTC "surcharge" or "fee" refers to a charge added to the car rental bills of consumers by Rental Car Defendants in connection with assessments levied on Rental Car Defendants to provide contribution to the California Travel and Tourism Commission ("CTTC").

E.    "Airport Concession Fee" means a charge collected by Rental Car Defendants from renters that is purportedly the renter's proportionate share of the amount paid by the rental company to the owner or operator of an airport for the right or privilege of conducting a vehicle rental business on the airport's premises (Civil Code section 1936.01(a)(1)).

F.    Section references.  Unless otherwise specified, all section references pertain to the California Government Code.

## CLASS ALLEGATIONS AND REPRESENTATIVES

12.    Plaintiffs bring this suit as a class action pursuant to Rules 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure, on behalf of themselves and a Plaintiff Class ("the Class") composed of and defined as follows:

> All individuals or entitles who purchased rental car services from the Rental Car Defendants from a California situs airport after January 1, 2007. Specifically excluded from this Class are the Defendants; the officers, directors or employees of any Defendant; any entity in which any Defendant has a controlling interest; and any affiliate, legal representative, heir or assign of any Defendant.

13.    This action has been brought and may be properly maintained as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure for the following reasons:

> a.    The Class is ascertainable and there is a well-defined community of interest among the members of the Class;

> b.    Based upon the nature and the numbers of rental car customers, Plaintiffs believe that the members of the Class number in the thousands, and therefore is sufficiently numerous that joinder of all Class members is not practicable;

> c.    Plaintiffs' claims are typical of the claims of the members of the Class because each of the Plaintiffs rented a car from one or more of the Rental Car

::ODMA\PCDOCS\PCDOCS\283206\4

07CV2174 H BLM

Defendants from a California situs airport after January 1, 2007, and therefore Plaintiffs' claims arise from the same common course of conduct giving rise to the claims of the members of the Class and the relief sought is common to the Class;

d. The following common questions of law or fact, among others, exist as to the members of the Class:

i. Whether Defendants formed and operated a combination or conspiracy to fix, raise, maintain or stabilize the prices of, or allocate the market for, car rental services operating in conjunction with California airports;

ii. Whether the combination or conspiracy caused the prices of car rental services operating in conjunction with California airports to be higher than they would have been in the absence of Defendants' conduct;

iii. The operative time period of Defendants' combination or conspiracy;

iv. Whether Defendants' conduct caused injury to the business or property of Plaintiffs and the members of the Class;

v. The appropriate measure of damages suffered by the Class;

vi. Whether Defendants' conduct violates Section 1 of the Sherman Act;

vii. Whether the Rental Car Defendants' conduct violates California's Unfair Competition Law;

viii. Whether the Rental Car Defendants' conduct violates the Consumers Legal Remedies Act;

ix. Whether Defendants' conduct violates California's Bagley-Keene Open Meeting Act; and

x. The appropriate nature of class-wide equitable relief.

e. These and other questions of law or fact which are common to the members of the Class predominate over any questions affecting only individual members of the Class;

f.    Plaintiffs will fairly and adequately protect the interests of the Class in that Plaintiffs have no interests that are antagonistic to other members of the Class and have retained counsel competent and experienced in the prosecution of class actions and antitrust litigation to represent themselves and the Class;

g.    A class action is superior to other available methods for the fair and efficient adjudication of this litigation since individual joinder of all damaged Class members is impractical. The damages suffered by individual Class members are relatively small, given the expense and burden of individual prosecution of the claims asserted in this litigation. Thus, absent the availability of class action procedures, it would not be feasible for Class members to redress the wrongs done to them. Even if the Class members could afford individual litigation, the court system could not. Further, individual litigation presents the potential for inconsistent or contradictory judgments and would greatly magnify the delay and expense to all parties and to the courts system. Therefore, the class action device presents far fewer case management difficulties and will provide the benefits of unitary adjudication, economy of scale and comprehensive supervision by a single court;

14.    Plaintiff Michael Shames is a member of the Class, with a claim typical of the class claims. After January 1, 2007, he rented a vehicle from one of the Rental Car Defendants who is a part of the instant combination and was billed for and paid both the CTTC surcharge and the Airport Concession Fee add-on. He is an adequate representative of the Class. He is also a citizen, a long-standing resident of California and a taxpayer.

15.    Plaintiff Gary Gramkow is a member of the Class, with a claim typical of the class claims. After January 1, 2007, he rented a vehicle from one of the Rental Car Defendants who is a part of the instant combination and was billed for and paid both the CTTC surcharge and the Airport Concession Fee add-on. He is an adequate representative of the Class. He is also a citizen, a long-standing resident of California and a taxpayer.

## DEFENDANTS

16.    The Hertz Corporation does business as and through its Hertz Rent-a-Car division, with corporate headquarters at 225 Brae Boulevard, Park Ridge, NJ 07656. The Hertz Corporation is a publicly traded Delaware corporation licensed to do business and doing business throughout the State of California and in San Diego, California.

17.     Dollar Thrifty Automotive Group Incorporated (DTG) does business as Dollar Rent-a-Car and as Thrifty Rent-a-Car. It is a publicly traded Delaware corporation headquarted at 5330 East 31st Street, Tulsa, Oklahoma 74135. It is licensed to do business and doing business throughout the State of California and in San Diego, California.

18.     Avis Budget Group Incorporated does business as Avis Rent-a-Car and Budget Rent-a-Car. It is a publicly traded Delaware Corporation headquartered at 6 Sylvan Way, Parsippany, N.J. 07054. It is licensed to do business and doing business throughout the State of California and in San Diego, California.

19.     Vanguard Car Rental USA Incorporated does business as Alamo Rent-a-Car and as National Rent-a-Car. Vanguard is an Oklahoma Corporation headquartered at 6929 N. Lakewood Avenue, #100, Tulsa, Oklahoma 74112. Its California headquarters is at 778 Burlway Road, Burlingame, California 94010. It is licensed to do business and doing business throughout the State of California and in San Diego, California.

20.     Enterprise Rent-a-Car Company does business as Enterprise Rent-a-Car and through Enterprise Rent-a-Car Company of Los Angeles, Enterprise Rent-a-Car Company of Sacramento, and Enterprise Rent-a-Car Company of San Francisco. It is a private held Missouri corporation headquartered at 600 Corporate Park Dr., St. Louis, MO 63105. It is licensed to do business and doing business throughout the State of California and in San Diego, California.

21.     Fox Rent a Car Incorporated does business as Payless Rent-a-Car. It is a California Corporation, with corporate locations and doing business at airports in California requiring payment of an Airport Concession Fee.

22.     Coast Leasing Corp. is a privately held Texas Corporation and does business as Advantage Rent-a-Car. It is headquartered at 6660 First Park Ten Blvd., #116, San Antonio, Texas 78213-4211. It is licensed to do business and doing business throughout the State of California and in San Diego, California.

23.     The California Travel and Tourism Commission (CTTC) is a California non-profit corporation authorized in California Government Code Section 13995.40, *et seq.*

::ODMA\PCDOCS\PCDOCS\283206\4

07CV2174 H BLM

**TRADE AND COMMERCE**

24.     This *per se* antitrust case involves the passenger car rental business operating at those California airports requiring an Airport Concession Fee.

25.     The activities of Defendants and their co-conspirators, as described in this Complaint, were within the flow of, and substantially affected, interstate commerce.

26.     During the period covered by this Complaint, Defendants and their co-conspirators contracted to rent and rented cars to customers located throughout the United States for use in and affecting interstate commerce.

27.     During the period covered by this Complaint, contracts, invoices for payment, payment and other documents essential to the provision of car rental agreements were transmitted in interstate trade and commerce between and among the offices of the Defendants and their customers located in and throughout the United States and between and among the offices of the Defendants' co-conspirators and their customers located in and throughout the United States.

28.     During the period covered by this Complaint, Defendants and their co-conspirators used instrumentalities of interstate commerce to market their rental cars and contracted to rent cars in the United States.

**CALIFORNIA TRAVEL AND TOURISM COMMISSION (CTTC)**

29.     The California Travel and Tourism Commission was created by the California Tourism Marketing Act ("CTMA") in 1995 (California Government Code Sections 13995, *et seq.*)[2] The purpose of the Commission is to expand and develop tourism spending in California for the benefit of the tourism industry and the consumers of the state.  (Under the CTMA, the CTTC was to be funded by a combination of industry and general fund contributions.)

30.     The CTTC is a separate, independent California non-profit mutual benefit corporation.  The CTTC describes itself as "an industry-led public/private partnership."  Although nominally under the Office of Tourism of the California Business, Transportation and Housing

---

[2] Unless otherwise indicated, all statutory references are to the California Government Code.

::ODMA\PCDOCS\PCDOCS\283206\4

07CV2174 H BLM

9

1  Agency, it operates independently from determinative control by the state because, as it admits, it is

2  "industry-led." *See, e.g.,* Exhibit C. The Commission consists of 37 members who serve co-

3  extensively both as commissioners and as the Board of Directors of the corporation. The CTMA

4  does not require the CTTC to comply with the Administrative Procedure Act, but it is subject to the

5  Bagley-Keene Open Meeting Act. Government Code § 13995.40(q).

6    31.    The CTTC is chaired by the Secretary of the Business, Transportation and Housing

7  Agency. Of the 37 commissioners (and directors), 12 are persons from trades or professions directly

8  related to tourism and appointed by the Governor, one for each of 12 designated geographic "tourism

9  regions." **The remaining 24 commissioners are selected by the industry, without nomination or**

10 **selection by any elected or appointed public official.** These industry members come from five

11 industry segments contributing to the CTTC budget: (a) accommodations, (b) restaurants and retail,

12 (c) attractions and recreation, (d) transportation and travel services (defined in section 5352, Title 10

13 of the California Code of Regulations). The fifth segment - "passenger car rental industry" - was

14 added by emergency regulation effective January 1, 2007. Commissioners serve four-year terms,

15 with a two-term limit. (Section 13995.40(f).) The CTTC Executive Director must be a "tourism

16 industry professional" recommended by the CTTC, approved by the Governor, serves at the pleasure

17 of both and is charged with implementing the plans and policies of the CTTC. (Section 13995.43(a)-

18 (c).)

19    32.    The CTTC sets industry assessment levels for its budget and develops an annual

20 "written marketing plan" to expend those monies. As to the assessments, every two years, the CTTC

21 proposes a slate of levels for each of the travel and tourism industry segments listed above. Those

22 segments then vote by referenda on those specific assessment level proposals, which vary by

23 segment (Section 13995.64). The assessment levels that receive the most weighted votes (weighted

24 by business volume) become effective and enforceable (Sections 13995.64(a); 13995.65(d)).

25 Importantly, those assessment levels are delegated to industry decision but are state required

26 assessments once approved. They must be paid by all those conducting business over a minimum

27 level in each of the respective tourism-related segments as each is defined. (Sections 13995.44,

28 13995.45, 113995.65(e), and 13995.68(a).)

33.    The second major authority of the CTTC is to develop the "marketing plan" for the expenditure of the assessed monies. Those plans detail the advertising campaigns and other functions of the CTTC and account for the expenditure of most of the annual budget. In preparing the plan, the CTTC must consider recommendations from "industry marketing advisory committees" that the CTTC establishes pursuant to CTMA. The CTTC's plans that guide its operations and spending are subject to the CTTC chair's approval (the Secretary of the Business, Transportation and Housing Agency). However, any disapproval by this public official as to the major functions of the CTTC, including marketing plans and budget, may be overridden by a 3/5 vote of the CTTC. **The 24 industry selected members have final, controlling decision-making power within the CTTC.** (Section 13995.45(d).)

34.    The publicly appointed Chairperson (the Secretary of the Business, Transportation and Housing Agency) has only limited powers. He may "remove any elected commissioner following a hearing at which the commissioner is found guilty of moral turpitude" (Section 13995.40(e)). Second, he or she oversees the biennial referendum process through which assessed businesses choose new commissioners and set assessment rates. But that function is ministerial in nature, with the referendum decision-making delegated to the relevant industry sectors. And if the Secretary fails to fulfill these duties, the Commissioners may themselves call referenda and certify results (Section 13995.51(a)(1)). Third, the CTTC Chair may veto certain travel and expense costs incurred by Commissioners where they involve a conflict of interest, the use of state general fund monies (now reduced to minimal levels as alleged *infra*), and any contracts entered into between the CTTC and Commissioners (Section 13995.51(b)(1)(4)). The Secretary, however, possesses no other veto powers (Section 13995.51(b)(1)-(4)). **In sum, the privately chosen and controlled CTTC exercises determinative, final and effectively state-unchecked power in the assessment of monies under state authority, the enforcement of that collection on businesses regardless of their preference, and the expenditure of that mandatorily assessed money.** And the CTTC has benefited by acquiring "a partnership with the rental car industry to secure a long-term funding solution for the CTTC," a funding solution that provides 79% of the CTTC budget from

::ODMA\PCDOCS\PCDOCS\283206\4

07CV2174 H BLM

1   collections sent from the passenger car rental industry from money collected from consumers rather

2   than collected from the assessed businesses as permitted by law.

3                    **CALIFORNIA RENTAL CAR COMPANY BILLING PRACTICES**

4        35.      During the 1980s consumers complained about certain billing practices by the rental

5   car industry.  Included among these was a pattern of advertising daily or mileage rates, and then

6   adding additional charges to final bills at point of invoice - charges that were unanticipated by some

7   consumers and were not part of advertised rates.  To cure this problem, legislation was enacted in

8   California during the 1990s to require a "base rate" to be advertised to California consumers by all

9   rental car companies doing business in the state.  This "base rate" would necessarily be a "bundled"

10  rate - required to include all charges to be billed (except for taxes, a customer facility charge, and

11  mileage charge, *see* Civil Code Section 1936.01(a)-(b)).  That requirement meant consumers would

12  know in advance what their charge would be, and competitors would engage in price competition on

13  the total amount billed to the consumer, taking into account all of the Rental Car Defendants' costs,

14  including any fees the car rental company was required to pay such as the Airport Concession Fee.

15       36.      In 2006, the Rental Car Defendants proposed end-of-session substantial changes to an

16  uncontroversial bill, AB 2592 (Leno).  On August 23 and 24, ten pages and multiple sections were

17  added to the bill, after the committee and floor consideration process timelines had expired within

18  the legislative process.  The measure was then enacted in its just-revised form near the end of

19  session.  It included two relevant elements.  First, it provided for a fifth industry sector for CTTC

20  inclusion - airport rental car firms (the Rental Car Defendants herein).  It provided for an

21  unsupervised "referendum" to be held among the Rental Car Defendants to approve a contribution to

22  the budget of the CTTC.  That contribution would both increase the budget of the Commission, and

23  relieve the general fund of almost all of its current and future contribution.  The contribution from

24  the Rental Car Defendants would allow a total CTTC budget of $25 million in 2006-07 and $50

25  million in 2007-08 and presumably thereafter (Government Code Section 13995.92(a)).  The Rental

26  Car Defendants proposing this arrangement agreed to its terms, and the State general fund

27  contribution of $6.7 million would be returned by the CTTC to the general fund for 2006-07.  A

28  somewhat larger rental car contribution was scheduled for 2007-08 and included in the industry

::ODMA\PCDOCS\PCDOCS\283206\4                                                    07CV2174 H BLM

1  agreement sufficient to bring the 2007-08 CTTC budget to $50 million and accomplish general fund

2  savings commensurate with those of 2006-2007. And, because industry segment representation on

3  the CTTC is proportional to the total assessments paid by that segment, AB 2592 also entitled the

4  passenger rental car industry to six Commission seats. (*See* Section 13995.40.5(a)).

5       37.    The second relevant change from AB 2592 was its provision to allow the Rental Car

6  Defendants to disaggregate the "Airport Concession Fee" they all pay from the base rental rate (Civil

7  Code Section 1936.01(b)(2)). This Airport Concession Fee had been bundled within the base rate by

8  legal requirement in order to inhibit unexpected cost "add-ons" at point of billing and to stimulate

9  accurate price competition based on a uniform definition of charges. That fee when itemized

10 traditionally amounts to just over 9% of the charges of the Rental Car Defendants ("approximately

11 9%").

12      38.    AB 2592 also provided that the new Airport Concession Fee disaggregation provision

13 would become effective only if the passenger rental car industry **assessed itself** new rates that they

14 set and that would increase the CTTC's funding (Civil Code Section 1936.01(e)). To that end the

15 Rental Car Defendants entered into an agreement brokered, facilitated and enforced by the CTTC by

16 which they agreed to a 2.5% self-assessment but only in exchange for a price fix on consumers.

17 Applicable law authorizes an industry contribution to the CTTC and permits an *individual* firm to

18 pass through whatever portion of its industry-promised share "if any" in consumer billing it

19 individually determines. Gov't Code § 13995.65(f). It does not authorize joint agreement or

20 collusion as to the amount each will so bill. Such cartel determination of a final charge is contrary to

21 the sacrosanct antitrust rule requiring individual pricing decisions by competitors, and collusion as to

22 that final charge was not permitted, articulated or intended by any California law.

23      39.    Once AB 2592 had passed, the CTTC hosted meetings and provided a forum for

24 communication among the Rental Car Defendants to discuss the "partnership" with and among the

25 Rental Car Defendants and the pass through to secure CTTC's funding and implementing the cartel.

26 Meetings commenced in the fall of 2006. Participants included representatives of the CTTC and the

27 Rental Car Defendants. Such meetings occurred, *inter alia,* on or before October 17, 2006 and on

28 October 23 and/or 25, 2006 and were supported and corroborated by a flurry of e-mails commenting

::ODMA\PCDOCS\PCDOCS\283206\4                                          07CV2174 H BLM

1   on and revising a draft agreement among and between Defendants and each of them as discussed at

2   the meetings. Participants at the meetings and/or in the e-mail discussions which culminated in the

3   price-fixing agreement, included the CTTC (including Caroline Beteta, Terri Toohey, Edward

4   Heidig, Tracey Garrett and Matthew Sabbatini), counsel for the CTTC, CTTC lobbyists and public

5   relations consultants, the Hertz Corporation (Richard Broome, Vice President Corporate Affairs),

6   Vanguard Car Rental (James East, Vice President, Government Affairs), Enterprise Rent-A-Car

7   (Kathy Turner, Vice President - Legislative and Government Affairs), Dollar Thrifty Automotive

8   Group (Bill Walker, Corporate Attorney), Avis Budget Group (Robert Muhs, Vice President and

9   Assistant Secretary) and Fox Rent-A-Car (Joe Knight, Vice President). Indeed, the CTTC began

10   hosting "Passenger Car Rental Industry Tourism Assessment Meetings" that Defendants attended!

11   During these discussions, the Defendants not only agreed to assess themselves 2.5% of their income

12   from airport rentals to fund the CTTC but they agreed they would do so only if each of them agreed

13   to surcharge each consumer the 2.5% assessment. To implement this agreement, counsel for the

14   CTTC commenced drafting a Memorandum of Agreement, drafts of which were circulated among

15   all Defendants. As one example, the e-mail dated October 17, 2006 from CTTC's counsel to

16   Defendant Hertz, with others copied, states, "[m]y recollection **from the meeting is that everyone**

17   **agreed to continue the funding as long as the pass-through was in place.**" Exhibit D (emphasis

18   added).

19         40.    As a result of these meetings and communications, a Memorandum of Agreement

20   among the Car Rental Defendants and the CTTC was entered and fully executed (Exhibit A hereto).

21   Exhibit A fully sets forth the name of each company signatory to the Memorandum of Agreement

22   and the individual executing it and their position with that company. The Defendants, and each of

23   them, further agreed on the terms and language of a ballot which the CTTC caused to be mailed out

24   to each of the Rental Car Defendants. The Memorandum of Agreement explicitly requires the

25   referendum by ballot. The November 2006 ballot (attached hereto as Exhibit E) specifies that the

26   Rental Car Defendants were voting to confirm **their agreement** that "a percentage of revenue to be

27   collected **by** each passenger car rental company" (emphasis added) would be paid to the CTTC

28   rather than the assessment authorized by statute of an assessment on the industry member, not

consumers. The December 2006 ballot tabulation form from the CTTC shows a unanimous 9-0 vote by the Car Rental Defendants to implement the cartel pricing. Exhibit E. In the October 3, 2006 Executive Committee Meeting Minutes of the CTTC, it is "reported the CTTC has acquired a partnership with the rental car industry to secure a long-term funding solution for the CTTC" (Exhibit F) and the agenda to that meeting describes further discussion of the "rental car pass through fees" (Exhibit G). The meetings and collusion started in the fall of 2006 and continues until the present time. It is manifest through the exhibits attached hereto, the billing records of the Defendants, and the documented interchanges, meetings, shared memoranda and explicit agreements of the conspirators as described in detail in this Complaint.

41.     As a result of these meetings and agreements, the CTTC posted on its website under the caption "Passenger Car Rental Industry Tourism Assessment Program" that "**This assessment rate shall be passed through to the customer**" (Exhibit H) (emphasis added). And in an e-mail string in January 2007 between a representative of Defendant National Car Rental and Terri Toohey of the CTTC, National complained that its "competitor Avis is not charging the tourism fee" (in effect a complaint that Avis may have been "cheating" on the conspiracy) and asks the CTTC "what can be done" to enforce the price fixing agreement. In response, the CTTC promises to "discuss the issue with our Executive Director" and that at "a meeting planned with the industry next week ... I will put it on the agenda" (Exhibit I). And on the agenda of the Passenger Car Rental Industry Tourism Assessment Meeting scheduled for Thursday, January 25, 2007 sent by e-mail by Terri Toohey of the CTTC to the industry participants, agenda item 5(a) is "airport locations not charging the fee - unfair pricing advantage." Exhibit B. The enforcement mechanism for the price-fixing agreement was in play and, according to documents produced by the CTTC in response to a public records act request, no further complaints or instances of non-compliance with the price-fixing agreement are recorded. The Rental Car Defendants facilitated the conspiracy by separately itemizing the CTTC surcharge (although not required to do so) so that each conspirator would be able to observe the other's compliance with the agreement. In a concession that its activity was wrongful following the filing of this lawsuit, the CTTC sought to cover-up its role in the illegal price

1  fix by engaging in spoliation of evidence and removing the language that the "assessment rate shall

2  be passed through to the customer" from its web page.

3      42.    In sum, the Rental Car Defendants combined in restraint of trade to satisfy their own

4  obligation to provide CTTC funding by adding a price-fixed consumer assessment to all of their bills

5  to consumers with no contribution from the Rental Car Defendants whatever, and to use the

6  disaggregation of the Airport Concession Fee not as a clarification of the source of charges, but as a

7  mechanism to add 9% to 2006 extant base rates - by and for each of the Rental Car Defendants -

8  accomplishing artificial and unlawful profits.

9      43.    The Rental Car Defendants offered the Legislature a *quid pro quo* of industry

10  contribution to the CTTC budget (and modest general fund relief) in return for what was purportedly

11  a mere clarification of consumer billing format. And AB 2592 authorizes the separation (or

12  unbundling) of the "Airport Concession Fee" from the base rate allowing it to be separately listed on

13  bills to consumers. Nothing in the statute authorizes any pricing level change or price coordination

14  whatever by the Rental Car Defendants. However, starting in January 2007, exactly coincident with

15  the effective date of the statute, the Rental Car Defendants combined to fix prices approximately 9%

16  higher, not by separating out the Airport Concession Fee from the base rate in billing, but by adding

17  it on to the base rate as a separate and *additional* charge. The Rental Car Defendants vary among

18  themselves in their base rates and will individually vary from published (Internet or otherwise) rates

19  to business accounts or for consumers with bargaining power, or where excess capacity commends

20  price reductions. However, the Internet and otherwise posted initial offering charge was altered by

21  each of the Rental Car Defendants starting in January 2007 to increase offered rental car prices by

22  the approximate 9% amount of the "Airport Concession Fee." As a result rental rates at California

23  airports rose in January 2007 from December 2006, while they declined on average in the United

24  States. The fixing of any part of a formula upon which prices are based is *per se* unlawful. In a

25  chart published in *USA Today*, the average nationwide price (for eight companies at 10 airports) for

26  midsize car rentals was as follows:

27

28

| MONTH/YEAR | PRICE |
|---|---|
| December 2006 | $60.41 |
| January 2007 | $52.22 |
| February 2007 | $56.63 |

Upon information and belief, at airports in California for a midsize car average internet full price rental rates were as follows:

| MONTH/YEAR | TOTAL | BASE | FEES |
|---|---|---|---|
| December 2006 | $68.36 | $58.09 | $10.30 |
| January 2007 | $77.96 | $60.37 | $18.18 |
| February 2007 | $81.07 | $62.43 | $18.66 |

While rates fell in January 2007 nationwide (as they normally always do as demand decreases in January), they rose in California; substantially as a result of the "fees," including the unbundled charges which Defendants agreed among themselves to pass on to consumers. Because the Airport Rental Car market is generally competitive, price increases are difficult to achieve and industry pricing history is not one of industry-wide identical increases. Thus, the aberrant increases at airports in California in January of 2007 is best explained as a result of an unlawful price-fixing agreement.

44. The combination to add the amount of the Airport Concession Fee (approximately 9%) on to consumer bills by the Rental Car Defendants was neither authorized by nor a necessary consequence of any state statute. Rather, it resulted from price-fixing agreements. Moreover, to the extent the CTTC was involved to coordinate communications and to facilitate that pricing increase, that Commission (a) lacks the statutory authority to coordinate a horizontal price fix by the Rental Car Defendants, or otherwise among its membership, and (b) lacks independent state supervision status due to its control by private parties. The scheme of the Rental Car Defendants involved a conspiracy in which the CTTC participated by, *inter alia*, facilitating the two unlawful price fixes: (a) a 2.5% CTTC assessment, and (b) the 9% Airport Concession Fee, not as an authorized billing

format change, but as a substantive charge add-on of the newly disaggregated fee. Compounding the violation, the CTTC itself is determinatively selected and controlled by private industry, and lacks required state independent supervision for "state action" immunity.

### EFFECTS

45. The unlawful contract, combination or conspiracy alleged above had, *inter alia*, the following effects:

(a) Prices charged by the airport Rental Car Defendants to Plaintiffs and the Class members for car rentals at airports were maintained at artificially high and noncompetitive levels; and

(b) Plaintiffs and Class members have been and are required to pay more for airport car rentals at California airports than they would have paid in a competitive marketplace unfettered by Rental Car Defendants collusive and unlawful price fixing.

46. Beginning in January 2007 and continuing throughout the period of the contract, combination or conspiracy alleged in the Complaint, Plaintiffs and Class members directly purchased car rental services in and affecting interstate commerce.

47. Plaintiffs and other Class members paid more for airport car rentals than they would have paid under conditions of free and open competition.

48. As a direct and proximate result of the illegal combination, contract or conspiracy alleged herein, Plaintiffs and Class members have been injured and financially damaged in their business and property, in amounts that are not presently determinable.

### FIRST CAUSE OF ACTION

### (Sherman Act Price Fixing Violations (15 U.S.C. § 1))

49. Plaintiffs reallege and incorporate each and every allegation set forth above as if fully set forth herein.

50. From a date unknown, but at least from October 2006, and continuing through the present, the Rental Car Defendants and their co-conspirators combined, conspired and/or contracted to restrain trade in and affecting interstate commerce in violation of 15 U.S.C. § 1. Defendant CTTC

1    had knowledge of, facilitated and participated in the combination, contract and conspiracy, including

2    the formation and implementation thereof.

3        51.    In furtherance of the unlawful contract, combination or conspiracy, upon information

4    and belief, each of the Defendants has committed one or more overt acts, including *inter alia*:

      (a)    agreeing to charge prices at certain levels and otherwise to fix, increase, maintain or stabilize components of the prices for airport car rentals in California affecting U.S. commerce, including the 2.5% (CTTC) surcharge and the 9% Airport Concession Fee add-on;

      (b)    communicating and agreeing with each other regarding prices to be charged consumers for the CTTC surcharge and car rental rates and on how to refer to these assessments on bills to consumers;

      (c)    meeting with each other, including under the guise of attending CTTC meetings in order to keep the existence of the conspiracy unknown so as to foster the illegal anticompetitive conduct described herein and facilitating violations of the Bagley-Keene Open Meeting Act as set forth in the Fourth Cause of Action herein to further such concealment;

      (d)    refraining from competition by refusing to offer airport car rentals without including in the bill to the consumer the 2.5% surcharge and the 9% Airport Concession Fee; and

      (e)    facilitating and coordinating communication among the Rental Car Defendants to fix surcharge levels.

    52.    Rental Car Defendants engaged in the activities described above for the purpose of effectuating unlawful arrangements to fix, maintain, raise and/or stabilize prices of airport car rentals to consumers.

    53.    Defendants implemented their unlawful scheme by (i) meeting and agreeing to charge a 2.5% CTTC surcharge to consumers, to refrain from competing on the amount of the surcharge, and to refer to this assessment in a consistent way; and (ii) meeting and agreeing to fix, stabilize and/or maintain prices at approximately 9% higher than the 2006 rates. Defendants and each of them have furthered the scheme through acts of concealment, including violation of the Bagley-Keene Act as more fully set forth in the Fourth Cause of Action herein. As a direct and proximate result of this price-fixing conspiracy, Defendants have restrained competition in the airport car rental market and injured Plaintiffs and each Class member in their business and property in that they have

::ODMA\PCDOCS\PCDOCS\283206\4

07CV2174 H BLM

1  paid a higher price for airport car rentals than they would have paid absent the concerted unlawful

2  activity.

3       54.   The conduct of Defendants and their co-conspirators constitutes a *per se* violation of

4  15 U.S.C. § 1.

5       55.   Pursuant to statute, damages should be awarded and trebled, injunctive relief should

6  be entered and attorneys' fees awarded.  15 U.S.C. §§ 15 and 26.

7                    **SECOND CAUSE OF ACTION**

8              **(California Unfair Competition Act Violations)**

9       56.   Plaintiffs repeat herein, as though fully set forth, Paragraphs 1 through 55 of this

10  Complaint.  The practices complained of above constitute violations of California's Unfair

11  Competition Law (Business & Professions Code Section 17200, *et seq.),* and False Advertising Law

12  (Business & Professions Code Section 17500, *et. seq.*) as well as the Consumers Legal Remedies Act

13  (Ca. Civ. Code section 1770(a)(14) (prohibited acts include "Representing that a transaction confers

14  or involves…obligations which it does not have or involve").  Plaintiff Class brings this Second

15  Cause of Action for such unfair acts in competition under said statutes against the Rental Car

16  Defendants only, including:

17       A.   The violations of 15 U.S.C. Section 1 alleged above, and each of them, also

18  constitute "unfair and/or unlawful" acts in competition in violations of Business & Professions Code

19  Section 17200, *et seq.*; and

20       B.   Defendants misrepresent to consumers that the 2.5% surcharge on car rentals

21  is owed by consumers to the CTTC and have wrongly conspired to engage in such

22  misrepresentations.  Indeed, at the Passenger Car Rental Industry Tourism Assessment meeting on

23  January 25, 2007, the Car Rental Defendants met to "[e]stablish [a] consistent name of [the]

24  'assessment program' on the rental car contract throughout the state" to implement and effectuate the

25  deceit consistently on all consumers.  Exhibit B (agenda item 4).  In fact, the only assessment which

26  is owed is owed by the Defendants.  Moreover, upon information and belief, Defendants are

27  wrongfully collecting more money from the surcharge than they are turning over to the CTTC.  The

28  CTTC fee monies collected exceed the amounts contributed to the CTTC budget by the Rental Car

::ODMA\PCDOCS\PCDOCS\283206\4                                           07CV2174 H BLM

1    Defendants, in violation of California law. Thus, Rental Car Defendants' advertising and public

2    statements concerning the CTTC fee and the Airport Concession Fee as set forth herein are illegal

3    and/or misleading, in violation of Business & Professions Code Sections 17200 and 17500 and are

4    unfair or deceptive methods, acts, or practices prohibited by Civil Code section 1770.

5         57.    The wrongful conduct alleged in this cause of action is continuing, and Rental Car

6    Defendants will not cease such conduct. Plaintiffs Shames and Gramkow and all members of the

7    Class have suffered financial harm as a result of such practices. Each of them has been billed and

8    has paid charges in excess of market levels due to the 9% and 2.5% charges as alleged above and

9    each has been misled and deceived by the phony label attached by Defendants to the charge on

10   consumers for payment of the CTTC assessment and by the failure to disclose a material term, *i.e.*,

11   that the 2.5% and 9% pass-ons are the product of an illegal agreement and are not required to be

12   charged to consumers. There is no plain, speedy or adequate remedy at law which will end the

13   unlawful activity. Injunctive relief and disgorgement are proper and necessary pursuant to 17203 of

14   the California Business & Professions Code. And this request will result in the enforcement of an

15   important right affecting the public interest such that attorneys' fees should be awarded pursuant to

16   the provisions of Section 1021.5 of the California Code of Civil Procedure.

17                              **THIRD CAUSE OF ACTION**

18   **(Consumers Legal Remedies Act - Civil Code section 1750, *et seq.*: Injunctive Relief Only)**

19        58.    Plaintiffs incorporate by reference and reallege each and every allegation, except as to

20   those allegations demanding damages or restitution, contained in Paragraphs 1 through 57 above as

21   though fully set forth herein.

22        59.    This cause of action is brought by a sub-class of the Class pled in Paragraph 12, *supra*

23   that is composed of "consumers." Plaintiffs and the members of the sub-class are "consumers" as

24   that term is defined in Civil Code section 1761(d), who rented or leased automobiles at airport

25   locations primarily for personal, family or household use. Plaintiff Class brings this Third Cause of

26   Action against the Rental Car Defendants only.

27        60.    Plaintiffs and members of the consumer sub-class risk irreparable injury as a result of

28   the use or employment by Defendants of unfair or deceptive methods, acts and practices prohibited

::ODMA\PCDOCS\PCDOCS\283206\4                                                    07CV2174 H BLM

1   by Civil Code section 1770, undertaken by Defendants in transactions intended to result and/or

2   which did result in the sale or lease of goods to consumers.

3        61.    During the Class period, Defendants have violated Civil Code section 1770 through

4   the acts alleged herein, thereby entitling Plaintiffs and each member of the Class to relief under Civil

5   Code section 1780, by, *inter alia*, "representing that a transaction confers or involves rights,

6   remedies, or obligations which it does not have or involve, or which are prohibited by law" in

7   violation of Cal. Civ. Code section 1770(a)(14) as Plaintiffs do not owe the CTTC fee; Defendants

8   do.

9        62.    Defendants have described the CTTC assessment charge in various false and

10   misleading ways on their websites and on receipts designed to lead consumers to believe the charge

11   is imposed by a governmental entity and that the rental car company has no discretion with respect

12   to the charge.  These descriptions include "TOUR TAX," "Ca Tourism Commission Assessment,"

13   "California Tourism Commission Assessment," "Tourist Tax," characterizations of the CTTC

14   assessment charge as "Governmentally Mandated Charges" or "Mandatory Airport Related

15   Charges," inclusions of the charge in a "Total Est. Mandatory Charges" amount, and a statement that

16   "the California Tourism Commission Assessment is a percentage charge established by the

17   California Travel and Tourism Commission."

18        63.    Defendants' violations of Civil Code section 1770 present a continuing threat to Class

19   members and members of the public in that Defendants are continuing to engage in these practices

20   and will not cease until an injunction is issued by the Court.  Unless Defendants are enjoined from

21   continuing to engage in these practices, Plaintiffs, the members of the Class, who lack an adequate

22   remedy at law to deter Defendants' wrongful conduct, will be irreparably harmed.  Plaintiffs are not

23   currently seeking damages for violation of the Consumers Legal Remedies Act but will seek leave to

24   amend this Complaint to seek such a remedy if a determination that such a remedy is appropriate is

25   made.

26        64.    Plaintiffs are entitled to an award of attorneys' fees and costs against Defendants

27   pursuant to the provisions of Civil Code section 1780(d).

28

**FOURTH CAUSE OF ACTION**

**(As to California Travel and Tourism Commission Only;**

**Declaratory and Injunctive Relief for Violation of**

**California Bagley-Keene Open Meeting Act by Plaintiff Shames Only)**

65.     Plaintiff Shames repeats herein, as though fully set forth, Paragraph 1 through 64 of this Complaint. Meetings of the CTTC are subject to the requirements of the Bagley-Keene Open Meeting Act (Act) (Section 11120, et seq.). *See* Section 13995.40(q). *See also*, "Bylaws of the California Travel and Tourism Commission." By its terms, the Act applies not only to meetings of the full Commission but also to meetings of Commission committees that consist of three or more persons (Section 11121(c)). CTTC announced its intent to hold and held a Commission meeting and meetings of various CTTC committees that consist of three or more persons on October 23-24, 2007 in Newport Beach. With respect to those meetings, CTTC violated numerous provisions of the Bagley-Keene Open Meeting Act. CTTC has also repeatedly violated the Bagley-Keene Act in a multitude of ways regarding Commission and CTTC committee meetings prior to the October 23-24, 2007 meeting, as follows:

**A.     Failure to Include Internet Site Address on Written Notices of Meetings.**

66.     The Act requires every "state body" (including CTTC) to "provide notice of its meeting to any person who requests that notice in writing....The written notice shall additionally include the address of the Internet site where notices required by this article are made available" (Section 11125(a)).

67.     CTTC emailed notices of its October 23-24, 2007 meeting on September 6, 2007; September 20, 2007; September 27, 2007; and October 15, 2007. Not one of these notices includes the address of the Internet site where notices of CTTC meetings are posted, in violation of Section 11125(a).

68.     CTTC also violated Section 11125(a) when it released written notices of the following meetings that failed to include the address of the Internet site where notices of CTTC meetings are posted: August 1, 2007 meeting of the Nominating Committee; August 2, 2007 meeting of the Governance Committee; September 24, 2007 meeting of the full Commission; September 24,

1  2007 meeting of the Executive Committee; October 19, 2007 meeting of the Governance

2  Committee; October 19, 2007 meeting of the Nominating Committee.

3  **B.     Failure to Adequately Post Notices and Agendas of Meetings on the Internet**.

4      69.    Under Section 11125(a) of the Act, notice of a meeting must be posted on the Internet

5  ten (10) days prior to the meeting.  Under Section 11125(b) of the Act, the notice of the meeting

6  described in Section 11125(a) and required to be posted on the Internet ten (10) days in advance of

7  the meeting "shall include a specific agenda for the meeting, containing a brief description of the

8  items of business to be transacted or discussed in either open or closed session."

9      70.    Although the CTTC posted notice of its October 23-24, 2007 meeting on the Internet,

10  that notice was buried in a location where no reasonable member of the public is likely to look;

11  Plaintiff Shames contends this notice did not comply with the Act's Internet posting requirement.

12  Additionally, CTTC failed to post on the Internet a "specific agenda" of the topics of discussion at its

13  October 23-24, 2007 meeting, in violation of Section 11125(b).

14      71.    CTTC further violated Section 11125(b) by failing to post either a notice or an agenda

15  of the following meetings on the Internet:  August 1, 2007 meeting of the Nominating Committee;

16  August 2, 2007 meeting of the Governance Committee; September 24, 2007 meeting of the full

17  Commission; September 24, 2007 meeting of the Executive Committee; October 19, 2007 meeting

18  of the Governance Committee; and October 19, 2007 meeting of the Nominating Committee.

19  **C.     Inadequate Notice of Commission and Committee Meetings.**

20      72.    Section 11125(a) of the Act requires CTTC to "provide notice of its meeting to any

21  person who requests that notice in writing.  Notice shall be given and also made available on the

22  Internet at least ten (10) days in advance of the meeting, and shall include the name, address, and

23  telephone number of any person who can provide further information prior to the meeting."

24      73.    CTTC violated the ten-day advance notice requirement on at least the following

25  occasions: (1) it failed to email the notice of the September 24, 2007 Commission meeting until

26  September 17, 2007; (2) it failed to email the notice of the September 24, 2007 Executive Committee

27  meeting until September 17, 2007; (3) it failed to email the notice of the October 19, 2007

28

::ODMA\PCDOCS\PCDOCS\283206\4                                                    07CV2174 H BLM

1  Governance Committee meeting until October 11, 2007; and (4) it failed to email the notice of the

2  October 19, 2007 Nominating Committee meeting until October 11, 2007.

3  **D.    Topics on Agendas Are Insufficiently Described.**

4      74.    Government Code § 11125(b) requires a state body to include with its notice of a

5  meeting that is posted on the Internet ten (10) days in advance of a meeting "a specific agenda ...

6  containing a brief description of the items of business to be transacted or discussed in either open or

7  closed session." Inasmuch as CTTC did not published on the Internet a "specific agenda" of its

8  October 23-24, 2007 meeting in Newport Beach, it violated this requirement.

9      75.    Past CTTC agendas have also violated this requirement in that they fail to adequately

10  apprise members of the public of the specific topic to be discussed and/or acted upon. CTTC's use

11  of vague phrases such as "other business" (*see, e.g.*, August 1, 2007 Nominating Committee

12  meeting), "next steps" (*see e.g.*, August 14, 2007 Congressional Reception Steering Committee

13  meeting), "financial reports," "legal issues," and "other financial matters" are insufficient to notify

14  members of the public of the nature of the items to be discussed and decided.

15  **E.    Illegal Registration / RSVP Requirement.**

16      76.    Section 11124 of the Act provides that "[n]o person shall be required, as a condition

17  to attendance at a meeting of a state body, to register his or her name, to provide other information,

18  to complete a questionnaire, or otherwise to fulfill any condition precedent to his or her attendance.

19  If an attendance list, register, questionnaire, or other similar document is ... circulated to persons..., it

20  shall state clearly that the signing, registering, or completion of the document is voluntary, and that

21  all persons may attend the meeting regardless of whether a person signs, registers, or completes the

22  document."

23      77.    On September 20, 2007, CTTC circulated a "CTTC Commission Meeting

24  Registration" email to interested parties, requesting them to register in order to attend the

25  October 23-24, 2007 Commission meeting. On September 27, 2007, CTTC circulated a "CTTC

26  Commission Meeting Registration Reminder" email to interested parties, requesting them to register

27  in order to attend the October 23-24, 2007 Commission meeting. Nowhere on either of these

28  documents is a statement that registration is voluntary; nowhere on either of these documents is a

::ODMA\PCDOCS\PCDOCS\283206\4

07CV2174 H BLM

1   statement that members of the public may attend the meeting even if they do not register. This

2   registration requirement constitutes a violation of the Bagley-Keene Open Meeting Act.

3       78.    At prior meetings of the CTTC and its committees, an RSVP or registration was

4   required of attendees; additionally, attendees were required to sign a sign-in sheet and to publicly

5   identify themselves and the organization with which they are identified.

6   **F.  Illegal Closed Sessions.**

7       79.    The Bagley-Keene Open Meeting Act permits state bodies to meet in "closed session"

8   to discuss certain topics (generally set forth in Section 11126 of the Act), subject to several

9   requirements. For example, closed session items must be listed on the "specific agenda" that is

10   required by Section 11125 (*see, e.g.*, Section 11126.3); further, the listing of the closed session item

11   on the agenda must be accompanied by "a description of an item to be transacted or discussed in

12   closed session shall include a citation of the specific statutory authority under which a closed session

13   is being held" (Section 11125(b)).

14       80.    On September 24, 2007, CTTC's Executive Committee met in closed session to

15   discuss its "annual executive director review." On October 24, 2007, the Commission met in closed

16   session to discuss "personnel committee report on executive director contract." These agendas

17   violate the Bagley-Keene Act in that they fail to identify the citation of the specific statutory

18   authority under which a closed session is being held (Section 11125(b)).

19   **G.  Illegal Teleconference Meetings.**

20       81.    The Bagley-Keene Open Meeting Act permits a state body to meet via teleconference

21   subject to certain requirements set forth in Section 11123(b). For example, the state body must post

22   agendas at all teleconference locations, identify each teleconference location in the notice and

23   agenda, and provide public access to each teleconference location. Members of the state body may

24   not attend the teleconference from an office, home, or other location unless that location is identified

25   in the notice and agenda, and the public is permitted to attend at those locations.

26       82.    The Commission violated Section 11123 when it held teleconference meetings on

27   August 1, 2007 (Nominating Committee), August 2, 2007 (Governance Committee), September 24,

28   2007 (CTTC meeting), and September 24, 2007 (Executive Committee). In addition to the

1    violations already alleged in Paragraphs 66 (failure to include Internet address of site where meeting

2    notices are posted on written notice) and 69 (failure to post notice and specific agenda on the

3    Internet ten (10) days in advance of the meeting) above, not one of the written notices of these

4    teleconference meetings identifies each teleconference location.  Instead, all of the notices invite the

5    Commissioners to attend the teleconference meeting from unidentified locations that are not open to

6    the public, in violation of Section 11123.  Additionally, the October 11, 2007 notices of the

7    October 19, 2007 teleconference meetings of the Governance Committee and the Nominating

8    Committee violate the Bagley-Keene Act, because they fail to identify each teleconference location.

9         83.    This Complaint was originally filed on November 14, 2007.  Plaintiffs also requested

10   preliminary relief of the numerous and continuing violations of the Bagley-Keene Act.  In an e-mail

11   attached as Exhibit J hereto, Matthew Sabbatini, the Operations Manager and Commission Liaison

12   of the CTTC, admitted that CTTC meetings had been held improperly and that changes were

13   required to comply with the Bagley-Keene Act.  On December 12, 2007, this Court entered its Order

14   Granting Joint Motion for an Interim Order requiring CTTC compliance with the Bagley-Keene Act.

15   However, on December 14, 2007 the Commission's Executive Committee violated the act and the

16   Interim Order by allowing the Commission Chair, Dale Bonner, to participate from an unnoticed

17   location inaccessible to the public - he participated by cellular telephone from his automobile.

18   Additionally, the December 14, 2007 agenda continued to list matters by vague references such as

19   "other financial matters" and "other business" in violation of Government Code section 11125(b)

20   requiring a "specific agenda" to be published ten (10) days in advance of a meeting and in further

21   violation of this Court's Interim Order.  A permanent injunction is obviously required to ensure

22   compliance with the law.

23        84.    The illegal conduct alleged in this cause of action is continuing and Defendants

24   herein will not cease such conduct.  There is no plain, speedy or adequate remedy at law which will

25   end the unlawful conduct.  A Declaration that such conduct is unlawful and injunctive relief

26   prohibiting the recurrence of such wrongs are proper and necessary pursuant to, inter alia,

27   Government Code § 11130.  Attorneys' fees should be awarded pursuant to Government Code

28   § 11130.5 and Code of Civil Procedure § 1021.5.

::ODMA\PCDOCS\PCDOCS\283206\4                                              07CV2174 H BLM

## PRAYER

WHEREFORE, Plaintiffs and the Class pray:

**As to the First Cause of Action**

1.    An injunction halting all violations, and other equitable relief, including restitution and disgorgement of unjust enrichment;

2.    Damages suffered by the Plaintiffs and the Class, trebled according to law.

3.    Attorneys' fees, costs of suit, and interest as permitted by law.

**As to the Second Cause of Action**

1.    An injunction halting all violations, and other equitable relief, including restitution and disgorgement of unjust enrichment.

2.    Attorneys' fees pursuant to Section 1021.5 of the California Code of Civil Procedure and Civil Code section 1780(d).

3.    Costs of suit.

**As to the Third Cause of Action**

1.    An injunction halting all violations.

2.    Attorneys' fees pursuant to Section 1021.5 of the California Code of Civil Procedure and Civil Code section 1780(d).

**As to the Fourth Cause of Action**

1.    An injunction halting all violations by the CTTC Defendants of the Bagley-Keene Open Meeting Act pursuant to California Government Code Section 11130.

2.    Because a dispute has arisen between Plaintiff Shames and the CTTC Defendants as to the application and interpretation of the Bagley-Keene Open Meeting Act to the proceedings of the CTTC, declaratory relief specifying the obligations of the CTTC Defendants under the terms of the statute.

3.    Attorneys' Fees according to the fee provisions of the California Bagley-Keene Act (California Government Code Section 11130.5), and of Section 1021.5 of the California Code of Civil Procedure.

4.    Costs of suit.

1  **As to All Causes of Action**

2     Such other relief as the Court deems proper.

3

4  Dated:    May 1, 2008         **CENTER FOR PUBLIC INTEREST LAW**
                                 **University of San Diego School of Law**

5

6

7                            By:     *Robert Fellmeth*
                                   Robert C. Fellmeth

8                                     Ed Howard
                                   Attorneys for Plaintiff Class

9

10  Dated:    May 1, 2008         **SULLIVAN, HILL, LEWIN, REZ & ENGEL**
                                   **A Professional Law Corporation**

11

12

13                            By:     */s/ Donald G. Rez*
                                   Donald G. Rez

14                                     Attorneys for Plaintiff Class

15  Dated:    May 1, 2008         **HULETT HARPER STEWART LLP**

16

17                            By:     */s/ Dennis Stewart*
                                   Dennis Stewart

18                                     Kirk Hulett
                                   Attorneys for Plaintiff Class

19

20

21

22

23

24

25

26

27

28

1

## JURY TRIAL DEMANDED

2      A trial by jury is hereby demanded.

3  Dated:    May 1, 2008        **SULLIVAN, HILL, LEWIN, REZ & ENGEL**
                                **A Professional Law Corporation**

4

5

6                      By:      /s/ Donald G. Rez
                                 Donald G. Rez

7                                 Attorneys for Plaintiff Class

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

MICHAEL SHAMES; GARY
GRAMKOW, on behalf of themselves and
on behalf of all persons similarly situated,

             Plaintiffs,

v.

THE HERTZ CORPORATION, a
Delaware corporation; DOLLAR
THRIFTY AUTOMOTIVE GROUP, INC.,
a Delaware corporation; AVIS BUDGET
GROUP, INC., a Delaware corporation;
VANGUARD CAR RENTAL USA, INC.,
an Oklahoma corporation; ENTERPRISE
RENT-A-CAR COMPANY, a Missouri
corporation; FOX RENT A CAR, INC., a
California corporation; COAST LEASING
CORP., a Texas corporation; THE
CALIFORNIA TRAVEL AND TOURISM
COMMISSION and CAROLINE BETETA

             Defendants.

Case No. 07 CV 2174 H BLM

**CERTIFICATE OF SERVICE**

IT IS HEREBY CERTIFIED THAT:

I, CYNTHIA FREDERICK, am a citizen of the United States and am at least eighteen years of age. My business address is 550 West "C" Street, Suite 1500, San Diego, California 92101.

I am not a party to the above-entitled action. I have caused service of the following documents:

1.    **FIRST AMENDED COMPLAINT FOR INJUNCTION, MONEY DAMAGES AND DECLARATORY RELIEF**

on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notified them.

1     **1.**    **SEE ATTACHED SERVICE LIST**

2     I hereby certify that I have caused to be mailed the foregoing, by the United States Postal

3 Service, to the following non-ECF participants on this case:

4     1.     John H. Stephens, WERTZ MCDADE WALLACE MOOT & BROWER, 945 Fourth

5 Avenue, San Diego, CA 92101; and

6     2.     T. Patrick Long, LONG, WILLIAMSON AND DELIS, 400 N. Tustin Avenue,

7 Suite 370, Santa Ana, CA 92705.

8     I declare under penalty of perjury that the foregoing is true and correct.

9     Executed on May 1, 2008.

10                   CYNTHIA FREDERICK

1

## SERVICE LIST

2

*Michael Shames, et al. v. The Hertz Corporation*
**USDC Case No. 07 CV 2174 H BLM**

3

4 Service by Electronic Case Filing System:

| ADDRESSEE | PARTY |
|---|---|
| 5 | |
| 6 Richard G. Parker | **Attorneys for Defendant The** |
| **O'MELVENY & MYERS LLP** | **Hertz Corporation** |
| 7 1625 Eye Street, NW | |
| 8 Washington, DC 20006 | |
| Tele: (202) 383-5380 | |
| 9 Fax: (202) 383-5410 | |
| rparker@omm.com | |
| 10 | |
| 11 Michael F. Tubach | **Attorneys for Defendant The** |
| Thomas P. Brown | **Hertz Corporation** |
| 12 **O'MELVENY & MYERS LLP** | |
| Embarcadero Center West | |
| 13 275 Battery Street, Suite 2600 | |
| San Francisco, CA 94111-3305 | |
| 14 Tele: (415) 984-8700 | |
| 15 Fax: (415) 984-8701 | |
| mtubach@omm.com | |
| 16 tbrown@omm.com | |
| 17 Gerald A. Stein | **Attorneys for Defendant The** |
| **O'MELVENY & MYERS LLP** | **Hertz Corporation** |
| 18 Times Square Tower | |
| 19 Seven Times Square | |
| New York, NY 10036 | |
| 20 Tele: (212) 326-2000 | |
| Fax: (212) 326-2061 | |
| 21 gstein@omm.com | |
| 22 Jeffrey A. LeVee | **Attorneys for Dollar Thrifty** |
| 23 Kate Wallace | **Automotive Group, Inc.** |
| **JONES DAY** | |
| 24 555 South Flower Street | |
| Fiftieth Floor | |
| 25 Los Angeles, CA 90071-2300 | |
| Tele: (213) 489-3939 | |
| 26 Fax: (213) 243-2539 | |
| 27 jlevee@jonesday.com | |
| kpwallace@jonesday.com | |

28

| ADDRESSEE | PARTY |
|---|---|
| Michael L. Weiner (*Pro Hac Vice*)<br>**SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP**<br>Four Times Square<br>New York, NY 10036-6522<br>Tele:   (212) 735-2666<br>Fax:    (212) 735-2000<br>mweiner@skadden.com | **Attorneys for Avis Budget Group, Inc.** |
| Douglas B. Adler<br>**SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP**<br>300 South Grand Avenue, Suite 3400<br>Los Angeles, CA 90071-3144<br>Tele:   (213) 687-5000<br>Fax:    (213) 621-5120<br>Douglas.adler@skadden.com | **Attorneys for Avis Budget Group, Inc.** |
| Sara L. Bensley (*Pro Hac Vice*)<br>**SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP**<br>1440 New York Ave., NW<br>Washington, DC 20005-2111<br>Tele:   (202) 371-7000<br>Fax:    (202) 393-5760<br>sbensley@skadden.com | **Attorneys for Avis Budget Group, Inc.** |
| Gregory D. Call<br>Beatrice B. Nguyen<br>**FOLGER LEVIN & KAHN LLP**<br>Embarcadero Center West<br>275 Battery Street, 23rd Floor<br>San Francisco, CA 94111<br>Tele:   (415) 986-2800<br>Fax:    (415) 986-2827<br>gcall@flk.com<br>bnguyen@flk.com | **Attorneys for Defendants Enterprise Rent-A-Car Company and Vanguard Car Rental USA, Inc.** |
| Jennifer S. Romano<br>**FOLGER LEVIN & KAHN**<br>1900 Avenue of the Stars, 28th Floor<br>Los Angeles, CA 90067<br>Tele:   (310) 556-3700<br>Fax:    (310) 556-3770<br>jromano@flk.com | **Attorneys for Defendants Enterprise Rent-A-Car Company and Vanguard Car Rental USA, Inc.** |

| ADDRESSEE | PARTY |
|---|---|
| Thadd A. Blizzard<br>Michael Kvarme<br>W. Scott Cameron<br>**WEINTRAUB GENSHLEA CHEDIAK**<br>400 Capitol Mall, Eleventh Floor<br>Sacramento, CA 95814<br>Tele:   (916) 558-6000<br>Fax:    (916) 446-1611<br>tblizzard@weintraub.com<br>wcameron@weintraub.com | **Attorneys for Defendant<br>California Travel and Tourism<br>Commission** |
| Edmund G. Brown, Jr.<br>ATTORNEY GENERAL OF THE STATE OF<br>CALIFORNIA<br>W. Dean Freeman<br>Felix E. Leatherwood<br>Supervising Deputy Attorneys General<br>Ronald N. Ito<br>Diane Spencer Shaw<br>Lisa W. Chao<br>Deputy Attorney General<br>300 S. Spring Street, Suite 1702<br>Los Angeles, CA 90013<br>Tele:   (213) 897-2477<br>Fax:    (213) 897-5775<br>Ronald.ito@doj.ca.gov | **Attorneys for Defendants<br>The California Travel and<br>Tourism Commission** |

| ADDRESSEE | PARTY |
|---|---|

The following non-ECF participants were served via U.S. Postal Service:

| | |
|---|---|
| John H. Stephens<br>**WERTZ MCDADE WALLACE MOOT & BROWER**<br>945 Fourth Avenue<br>San Diego, CA 92101<br>Tele:   (619) 233-1888<br>Fax:    (619) 696-9476<br>jstephens@wertzmcdade.com | **Attorneys for Defendant Fox Renta A Car dba Payless Rent-A-Car** |
| T. Patrick Long<br>**LONG, WILLIAMSON AND DELIS**<br>400 N. Tustin Avenue, Suite 370<br>Santa Ana, CA 92705<br>Tele:   (714) 668-1400<br>Fax:    (714) 668-1411<br>palong@lw-d.com | **Attorneys for Defendants Coast Leasing Corp. dba Advantage Rent A Car** |