1   Thadd A. Blizzard, State Bar No. 83297
    Michael A. Kvarme, State Bar No. 90749
2   W. Scott Cameron, State Bar No. 229828
    **weintraub** genshlea chediak
3   a law corporation
    400 Capitol Mall, 11th Floor
4   Sacramento, CA 95814
    (916) 558-6000 – Main
5   (916) 446-1611 – Facsimile

6   EDMUND G. BROWN JR.
    Attorney General of the State of California
7   W. DEAN FREEMAN
    FELIX E. LEATHERWOOD
8   Supervising Deputy Attorneys General
    RONALD N. ITO, State Bar No. 71322
9   DIANE SPENCER SHAW, State Bar No. 73970
    LISA W. CHAO, State Bar No. 198536
10  Deputy Attorneys General
    300 South Spring Street, Suite 1702
11  Los Angeles, CA 90013
    (213) 897-2477 – Main
12  (213) 897-5775 – Facsimile

13  Attorneys for Defendant
    The California Travel and Tourism Commission

14

15                    UNITED STATES DISTRICT COURT

16                  SOUTHERN DISTRICT OF CALIFORNIA

17  MICHAEL SHAMES; GARY GRAMKOW, on          )  Case No. 07 CV 2174 H BLM
    behalf of themselves and on behalf of all )
18  persons similarly situated,               )  [CLASS ACTION]
                                              )
19              Plaintiffs,                   )
                                              )
20         vs.                                )
                                              )  MEMORANDUM OF POINTS AND
21  THE HERTZ CORPORATION, a Delaware         )  AUTHORITIES OF DEFENDANT
    corporation; DOLLAR THRIFTY               )  CALIFORNIA TRAVEL AND TOURISM
22  AUTOMOTIVE GROUP, INC., a Delaware        )  COMMISSION IN SUPPORT OF MOTION
    corporation; AVIS BUDGET GROUP, INC., a   )  TO DISMISS PLAINTIFFS' FIRST AMENDED
23  Delaware corporation; VANGUARD CAR        )  COMPLAINT
    RENTAL USA, INC., an Oklahoma             )
24  corporation; ENTERPRISE RENT-A-CAR        )
    COMPANY, a Missouri corporation; FOX      )  Date:  July 14, 2008
25  RENT A CAR, INC., a California corporation;)  Time:  10:30 a.m.
    COAST LEASING CORP., a Texas              )  Place:  Courtroom 13
26  corporation; and THE CALIFORNIA TRAVEL    )
    AND TOURISM COMMISSION,                   )  The Honorable Marilyn L. Huff
27                                            )
                Defendants.                   )
28

# TABLE OF CONTENTS

I.     INTRODUCTION ....................................................................................................1

II.    THE STATUTORY FRAMEWORK FOR THE CTTC .................................................2

III.   LEGAL ARGUMENT .............................................................................................4

    A.    Defendant CTTC is Immune from Antitrust Liability Under the
          State Action Immunity Doctrine Expressed in *Parker v. Brown*. .....................4

          1.    The CTTC is a Political Subdivision of the State. ...........................4

          2.    The California Tourism Marketing Act Expresses A
                Clearly-Articulated State Policy That Will Foreseeably
                Displace Competition. ...................................................................7

          3.    The CTTC, Acting Pursuant to This Clearly Articulated State
                Policy, is Immune From Antitrust Liability for Conduct Relating
                To the 2.5% CTTC Assessment. ....................................................9

          4.    The CTTC is Also Immune From Antitrust Liability for the
                Rental Car Defendants' Decision, if any, to Pass Through the
                Airport Concession Fee to Their Customers. ...............................13

    B.    The First Amended Complaint Fails to Allege a Conspiracy or
          Combination and Should be Dismissed Under the Standard
          Articulated in *Twombly*. ...............................................................................13

          1.    Plaintiffs Do Not Plead Facts Sufficient to Establish an
                Antitrust Agreement Involving the CTTC. ....................................14

                a.    Allegations of "Parallel Conduct" Are Insufficient. ............14

                b.    Antitrust Allegations Are Closely Scrutinized. ...................15

           2.    The FAC Fails to Allege Any Facts Showing That The CTTC
                Entered Into Any Agreement With the Defendants, or That
                It Assisted Any Such Agreement. ................................................15

                a.    The FAC Does not Allege Any Facts Supporting An
                      Agreement to Fix Prices As To The 9% Airport Concession
                      Fee. ....................................................................................16

                b.    The FAC Does Not Allege Any Facts Supporting An
                      Agreement to Fix Prices As To The 2.5% Tourism
                    Assessment Fee. .................................................................17

    C.    The Court Should Dismiss the Bagley-Keene Act Claim or Decline
          To Exercise Supplemental Jurisdiction Over It. ..........................................20

          1.    Plaintiff lacks Standing to Pursue a Claim Under the Bagley-Keene
                Act Because He Has Not Alleged Any Injury to Himself. ...............20

{10824/16392/TAB/1035531.DOC;6}                              i

2. The Alleged Bagley-Keene Act Violations Are Not Transactionally Related to the Antitrust Claim And, Therefore, Are Not Part of the Same Case or Controversy. ........................................................22

3. The Court Should Decline to Exercise Supplemental Jurisdiction Over the California Bagley-Keene Act Claim Under Comity Principles. ........................................................................23

IV.   CONCLUSION ..........................................................................25

{10824/16392/TAB/1035531.DOC;6}

Table of Contents

**weintraub** genshlea chediak
LAW CORPORATION

weintraub genshlea chediak
LAW CORPORATION

## I.    INTRODUCTION

The First Amended Complaint ("FAC") fails to sufficiently allege any antitrust violations for a purported horizontal price fixing conspiracy among the defendants or any violations of the Bagley-Keene Open Meeting Act against defendant California Travel and Tourism Commission ("CTTC").[1]

First, Plaintiffs wrongly assume that actionable conduct occurred when the California Legislature passed A.B. 2592, allowing "unbundling" of rental car charges (Cal. Civil Code § 1936.01), and amending the California Tourism Marketing Act, California Government Code § 13995, et seq.[2] (the "CTMA").   This legislation reflects a clearly-articulated state policy to encourage tourism in California, which, when carried out by a "state actor" such as defendant CTTC, is immune from antitrust liability pursuant to Parker v. Brown, 317 U.S. 341, 63 S.Ct. 307 (1943), and its progeny.

Second, the FAC continues to lack sufficient specificity to meet the requirements set forth in Bell Atlantic Corp. v. Twombly, ___ U.S. ___, 127 S.Ct. 1955 (2007) ("Twombly").   Like the original complaint, the FAC is devoid of allegations of anticompetitive conduct by CTTC, of any alleged agreement or combination involving CTTC or the supposed role of the CTTC in any such agreement.   This Court previously dismissed the complaint for failure to meet the Twombly pleading standard, with leave to amend, and as the deficiencies have not been cured, should dismiss the FAC without leave to amend.

Finally, the claim alleging violations of the Bagley-Keene Open Meeting Act, California Government Code § 11120, et seq. ("Bagley-Keene Act") should be dismissed because Plaintiffs lack standing to sue, supplemental jurisdiction is not proper over this claim, and there is no independent basis for jurisdiction.   The Bagley-Keene Act claim is not transactionally related to

---

[1] The second claim for relief based on alleged violations of California Unfair Competition Act (Business & Professions Code Section 17200), and the third claim for relief, based on alleged violations of the Consumers Legal Remedies Act (California Civil Code Section 1750), are not brought against CTTC, and therefore are not discussed herein.

[2] Unless otherwise indicated, all statutory references are to the California Government Code.

1  the antitrust claim over which the Court has original jurisdiction. No other basis for jurisdiction

2  is offered or exists. In addition, the Court should decline to exercise jurisdiction over the Bagley-

3  Keene Act claim because, as the Court noted in its Order Granting Defendants Motions To

4  Dismiss, resolution of the Bagley-Keene Act claim "implicate novel or complex questions of state

5  law." Principals of comity suggest these questions should be left for the California state courts.

6  II.     THE STATUTORY FRAMEWORK FOR THE CTTC

7  The CTTC was created by the CTMA in 1995 to implement, fund, and manage a

8  marketing plan aimed at increasing travel and tourism to the State of California. § 13995.45.

9  In forming the CTTC, the California Legislature determined that:  "[I]t is in the <u>state's public</u>

10  <u>interest</u> and <u>vital to the welfare of the state's economy</u> to expand the market for, and develop,

11  California tourism through a cooperative partnership funded in part by the state that will allow

12  generic promotion and communication programs." § 13995.1(b) (emphasis added).  The

13  CTMA accomplishes this goal through a series of industry-approved assessments on such

14  tourism-related businesses. The Secretary of the Business, Transportation and Housing Agency

15  ("Secretary"), based on a resolution adopted by the CTTC, calls a referendum (§§ 13995.60(b)

16  and (c)) and assesses businesses within the travel and tourism industry (§ 13995.65(d)).  These

17  funds, together with funds allocated from the State of California general fund, are used for the

18  CTTC's budget. § 13995.70. The adoption and implementation of the budget and marketing

19  plan are conducted with full public notice and participation and are subject to approval by the

20  Secretary. § 13995.45.

21  California lawmakers purposefully formed the CTTC with significant government controls,

22  attributes and functions.[3]  The CTTC merges the operation of the State's Office of Tourism

23

24  [3]  For example, the CTMA expressly confers state agency status on the CTTC for First
Amendment Purposes: "This chapter creates a mechanism to fund generic promotions that,

25  pursuant to the required supervision and oversight of the secretary as specified in this chapter,
<u>further specific state governmental goals</u>, as established by the Legislature, and result in a

26  promotion program that produces nonideological and commercial communication that bears
the characteristics of, and <u>is entitled to all of the privileges and protections of, government</u>

27  <u>speech</u>." § 13995.1(d)(7). Moreover, the CTTC is specifically subject to the California Political
Reform Act, § 13995.40(p), and Bagley-Keene Act, § 13995.40(q), which by its terms is only

28  applicable to state bodies. § 11121.

weintraub genshlea chediak
LAW CORPORATION

weintraub genshlea chediak
LAW CORPORATION

("Office") now situated within the Business, Transportation and Housing Agency ("BTH") with expanded funding and operations. The Secretary is the chairperson of the CTTC's board. § 13995.40(b)(1). The CTTC's headquarters and the Office share the same office space. (FAC, Exhibit A, p. 4.) The executive director of the CTTC "shall" report to the Secretary, serves simultaneously as the director of the Office with the title Deputy Secretary of Tourism of the BTH, and serves at the pleasure of the Governor. § 13995.43. Thirteen of the CTTC's Commissioners are appointed by the Governor and twenty-four are elected by assessed businesses. §§ 13995.40(b)(2)(A), (B).

The Secretary exercises discretion over core CTTC functions. The Secretary is empowered to use State police powers to collect the CTTC assessment. § 13995.50(b). The Secretary may require·assessed businesses to provide information and may hold hearings or issue subpoenas for the production of books, records, or other documents in connection with the assessment. §§ 13995.53, 13995.55. It is a violation of state law for any person to "willfully furnish a false or fraudulent report, statement, or record that is required by the Secretary pursuant to" the CTMA. § 13995.83. The Secretary is authorized to remove Commissioners under certain circumstances, including "abuse of office," which prevents any Commissioner from acting outside the purposes of the CTMA. § 13995.40(e). The CTTC's budget and annual marketing plan are subject to review and approval by the Secretary. §§ 13995.44, 13995.45. Moreover, the decisions of the Secretary cannot be overridden with respect to the budget and annual marketing plan except by a three-fifths vote of the Commissioners. §§ 13995.44, 13995.45.

Additionally, the CTTC's rules of operation are codified in the California Code of Regulations. Cal. Code Regs. tit. 10, § 5350, et seq. In fact, a Memorandum of Agreement ("MOA") between the rental car industry segment and the CTTC, which Plaintiff attaches to the FAC, was codified in these regulations, through California's process that provides for public comment and approval by the office of Administrative Law. The regulations set forth the respective roles of both the Secretary and the Office in connection with periodic referenda, including the Secretary's duty to call a referendum every two years, the Office's duty to mail the referenda ballots to all eligible businesses, and the Secretary's duty to count and tabulate the

1   ballots and certify the referenda results.  Cal. Code Regs. tit. 10, § 5356.  The regulations

2   further provide that the assessment rate "shall be adjusted annually by the Office and such

3   adjustment shall not be subject to annual referendum."  Cal. Code Regs. tit. 10, § 5357(b).

4   Moreover, all assessments must be submitted to the Office, which may impose late penalties for

5   tardy assessment payments.  Cal. Code Regs. tit. 10, § 5357.2.  "All information or data

6   provided by the Passenger Car Rental Industry Segment shall be maintained by the Office and

7   will be confidential."  Cal. Code Regs. tit. 10, § 5358.  The 2006 amendment to the CTMA

8   (AB 2592), required the Office and CTTC to establish an assessment rate on the rental car

9   industry.  § 13995.92.  Regulations were formally adopted to implement the law, Cal. Code

10  Regs. tit. 10, § 5350, *et seq.*, and the CTTC held an industry referendum as required by statute.

11  § 13995.92.

## III.    LEGAL ARGUMENT

**A.    Defendant CTTC Is Immune from Antitrust Liability Under the State Action Immunity Doctrine Expressed in *Parker v. Brown*.**

15  A state actor is shielded from antitrust liability for acts taken in a state's sovereign

16  capacity.  *Parker v. Brown*, 317 U.S. 341, 350-51 (1943).  Case law has established three

17  categories of actors eligible for *Parker* immunity:  First, acts taken by the State are completely

18  immune.  *See Hoover v. Ronwin*, 466 U.S. 558, 569 (1984).  Second, political subdivisions

19  such as municipalities and state agencies are immune for actions taken pursuant to clearly-

20  articulated state policy, regardless of whether the state actively supervises the activity.  *Town of

21  Hallie v. City of Eau Claire*, 471 U.S. 34, 45-46 & n. 10 (1985); *Hass v. Oregon State Bar*, 883

22  F.2d 1453, 1461 (9th Cir. 1989).  Third, private parties are immune when acting pursuant to a

23  clearly articulated state policy and actively supervised by the state.  *California Retail Liquor

24  Dealers Ass'n v. Midcal Aluminum, Inc.* 445 U.S. 97, 105 (1980).

### 1.    The CTTC Is a Political Subdivision of the State.

26  The CTTC is a political subdivision of the State for antitrust immunity purposes because it

27  is sufficiently "government-like" to act as an arm of the state.  *Bankers Ins. Co. v. Fla. Residential

28  Prop. and Cas. Joint Underwriting Ass'n*, 137 F.3d 1293, 1296 (11th Cir. 1998); *see also Hass*

**weintraub** genshlea chediak
LAW CORPORATION

*v. Oregon State Bar*, 883 F.2d at 1460.  Case law following *Parker* and *Midcal* has developed several factors in analyzing whether an entity is sufficiently "government-like" to be considered a political subdivision.

In *Hass v. Oregon State Bar*, the Ninth Circuit found the Oregon Bar to be a political subdivision because: (1) the Bar was organized for the benefit of the public; (2) the Bar's records were open to the public and available for inspection; (3) the Bar's accounts were subject to audit; (4) the Bar's board of directors was required to give public notice of its meetings and the meetings were open to the public; and (5) members of the Bar's board of directors were public officials.  *Hass v. Oregon State Bar*, 883 F.2d at 1453.

The CTTC shares all of the "government-like" qualities identified in *Hass*:  (1) the CTMA was "enacted in the exercise of the police powers of the state for the purpose of protecting the health, peace, safety, and general welfare of the people of this state." § 13995.50.  The CTTC was created to implement legislative policies concerning the California tourism industry, which the Legislature declared to be "in the state's public interest and vital to the welfare of the state's economy", §§ 13995.1, 13995.41.  (2) The CTTC's records are subject to the Public Records Act.[4]  § 13995.54.  (3) The CTTC's accounts containing the assessed funds must be audited and publicly reported annually.  § 13995.70.  (4) The CTTC is required to comply with the Bagley-Keene Act, providing public notice of, and access to, CTTC meetings and requiring decision-making in an open public forum.  § 13995.40(q).  (5) The Secretary serves as the chairperson of the CTTC, and the CTTC Executive Director is the Deputy Secretary of Tourism of the BTH, thus both are public officials.  §§ 13995.20, 13995.43.  Thirteen of the Commissioners are appointed by the Governor and any Commissioner can be removed by the Secretary for "abuse of office." § 13995.40(b), (e).  <u>All</u> Commissioners are required to comply with the Political Reform Act applicable to public officials.  § 13995.40(o).[5]

---

[4]  As the lone exception, documents pertaining to the revenue of the assessed businesses are confidential.

[5]  Plaintiffs suggest that the conduct of voting by referendum under the CTMA is indicative of an antitrust violation.  FAC, ¶¶ 34, 36.  By contrast, the Supreme Court in its state action cases has found such provisions to be an exercise of democratic principals and indicative of state action.

weintraub genshlea chediak
LAW CORPORATION

**weintraub** genshlea chediak
LAW CORPORATION

1   Other Circuits have analyzed similar factors and reached the same conclusion.  In

2   *Bankers Insurance Co. v. Fla. Residential Property & Casualty Joint Underwriting Ass'n*, the

3   Eleventh Circuit found the Florida Residential Property and Casualty Joint Underwriting

4   Association was "not short on public entity trappings that suggest it is entitled to political-

5   subdivision status."   137 F.3d at 1297.  These "trappings" included: (1) the fact that the

6   Association was created by act of the Florida legislature; (2) the Association is subject to

7   Florida's "sunshine laws" requiring open meetings; (3) the Association is tax-exempt; (4) the

8   Association operates under a detailed plan that must be approved by the Department of

9   Insurance; and (5) supervision is by a board of governors that includes representatives

10  appointed by the insurance commissioner. *Id.*

11      The CTTC shares these "trappings" as well.  As mentioned, (1) the CTTC was established

12  by act of the California Legislature and (2), it is subject to the Bagley-Keene Act.[6]  (3) The CTMA

13  mandated formation of the CTTC, as a non-profit mutual benefit corporation, § 13995.40,

14  which qualifies as a tax-exempt entity under federal law (Internal Revenue Code § 501(c)(6)),

15  and state law (Cal. Rev. & Tax Code § 23701e).  (4) The CTTC also operates under a detailed

16  marketing plan, which is subject to public notice, review, and comment, and which must be

17  approved by the CTTC and Secretary.  § 13995.45.  (5) Like the Florida Association, the CTTC

18  includes members appointed by the Governor.[7]  §§ 13995.40(b)(2)(A), 13995.40(r), 13995.43.

---

19  *Town of Hallie v. City of Eau Claire*, 471 U.S. 34, 37, 105 S.Ct. 1713 (1985) (e.g. when "a

20  majority of individuals in the area vote by referendum election to have their homes annexed by
    the City"); *Parker v. Brown*, 317 U.S. 341,352 (1943) ("the state itself exercises its legislative

21  authority in making the regulation and in prescribing the conditions of its application.  The

22  required vote on the referendum is one of these conditions.")

23  [6]  The Bagley-Keene Act applies only to a "state body" which is defined as: "every state board,
    Commission, or <u>similar multimember body of the state</u> that is created by statute."  § 11121(a)

24  (emphasis added).

25  [7]  Plaintiffs repeatedly emphasize that the CTTC is "industry-led," apparently attempting to imply

26  that as such, the CTTC cannot be a "political subdivision" entitled to state action immunity.  Any
    such argument would be meritless.  In virtually every case where a "board" or "commission" or

27  "authority" is granted state action immunity under *Parker*, the entity is made up of industry
    representatives.    *See Hass v. Oregon State Bar*, 883 F.2d at 1453 (board members

28  representatives of legal community); *see also Bankers Ins. Co. v. Fla. Residential Prop. & Cas.*

---

In *Automated Salvage Transport, Inc. v. Wheelabrator Environmental Systems, Inc.*, 155 F3d 59 (2d Cir. 1998) the Second Circuit held that the Connecticut Resource Recovery Authority ("CRRA") was a political subdivision of the State for *Parker* immunity purposes. *Id.* at 71. The court relied on several characteristics: (1) The "CRRA is a body politic and corporate, constituting a public instrumentality and political subdivision of the State of Connecticut established and created for the performance of an essential public and governmental function" (*id.* at 69); (2) The CRRA was created with statewide jurisdiction "to implement a uniform statewide waste disposal policy," and granted police powers to carry out that charge (*id.* at 70); and, (3) The CRRA "is politically accountable to the State, and by extension, to the electorate," (*id.*) in that "[t]he chairman serves at the pleasure of the Governor, and any board member may be removed by the Governor for inefficiency, neglect of duty, or misconduct in office." *Id.* at 71.

As noted, the CTTC shares these characteristics, including the Secretary's power to remove any Commissioner for abuse of office or moral turpitude. § 13995.40(e). In addition, the Legislature clearly expressed its intent that the CTTC was created as an arm of the State by deeming the promotional programs of the CTTC to be government speech. § 13995.1(d)(7); fn. 3, *supra*. The CTTC is, therefore, a political subdivision for antitrust purposes.

## 2.  The California Tourism Marketing Act Expresses a Clearly-Articulated State Policy That Will Foreseeably Displace Competition.

State action immunity requires "'clear articulation of a state policy to authorize anticompetitive conduct' by the municipality [or state body] in connection with its regulation." *City of Columbia v. Omni Outdoor Advertising, Inc.*, 499 U.S. 365, 372 (1991) (quoting *Town of Hallie v. City of Eau Claire*, 471 U.S. at 40). Acts undertaken at the direction of the Legislature are immune "regardless of whether these particular actions or their anticompetitive effects were contemplated by the legislature." *Charley's Taxi Radio Dispatch Corp. v. SIDA of Haw. Inc.*, 810 F.2d 869, 876 (9th Cir. 1987); *see also Town of Hallie*, 471 U.S. at 42. In fact, the statute need not "explicitly permit[ ] the displacement of competition." *Id.* Rather, "it is enough … if suppression of competition is the 'foreseeable result' of what the statute

*Joint Underwriting Ass'n*, 137 F.3d at 1296 (board members insurance industry representatives).

weintraub genshlea chediak
LAW CORPORATION

weintraub genshlea chediak
LAW CORPORATION

1    authorizes." *Id.* at 373 (quoting *Town of Hallie v. City of Eau Claire*, 471 U.S. at 42).

2    In enacting the CTMA, the California Legislature made these policy declarations:

3    (1)    "Tourism is among California's biggest industries, contributing over fifty-two
4           billion dollars ($52,000,000,000) to the state economy and employing nearly
           700,000 Californians in 1993." § 13995.1(a).

5    (2)    "In order to retain and expand the tourism industry in California, it is necessary to
6           market travel to and within California." § 13995.1(b).

7    (3)    "State funding, while an important component of marketing, has been unable to
8           generate sufficient funds to meet the threshold levels of funding necessary to
           reverse recent losses of California's tourism market share." § 13995.1(c).

9    (4)    "It is in the state's public interest and vital to the welfare of the state's economy to
10          expand the market for, and develop, California tourism through a cooperative
           partnership funded in part by the state that will allow generic promotion and
11          communication programs." § 13995.1(d)(1).

12   (5)    "An industry-approved assessment provides a private-sector financing mechanism
13          that, in partnership with state funding, will provide the amount of marketing
           necessary to increase tourism marketing expenditures by California."
14          § 13995.1(e).

15   To achieve these policy objectives, the Legislature anticipated and approved antitrust

16   immunity to anyone acting in compliance with the CTMA, stating that compliance is a "complete

17   defense to [any] action or proceeding" brought based upon the Cartwright Act (California's

18   antitrust statute) or "[a]ny rule of statutory or common law against monopolies or combinations

19   in restraint of trade." § 13995.90. This statute evidences the Legislature's intent that "the State

20   as sovereign" may "displace competition in a particular field with a regulatory structure,"

21   therefore satisfying the clearly-articulated state policy requirement. *Hass v. Oregon State Bar*,

22   883 F.2d at 1457 (quoting *So. Motor Carriers Rate Conf. v. United States*, 471 U.S. 48, 64

23   (1985)).

24   The Legislature also foresaw potential anticompetitive effects of AB 2592. Plaintiffs' own

25   counsel, Robert Fellmeth, wrote a letter to Assemblyman Mark Leno, sponsor of AB 2592,

26   stating that AB 2592 will result in:

27   ///

28   ///

[A]n immediate rake-off of 10% in additional monies for the industry. The companies merely maintain their current price levels, but instead of including the airport concession fee in the initial charge, it is now added on at the end – on top of a charge that historically included it.

Rental Car Defendants' Request for Judicial Notice in Support of Motion to Dismiss, Exhibit B, Docket No. 36.[8] This anticipated increase in prices is exactly the purported wrongdoing the FAC alleges against the Rental Car Defendants. Thus, Plaintiffs' counsel personally ensured that the potential for price increase was foreseen by the Legislature. Nevertheless, the Legislature determined that the interests of California were best served by passing AB2592, which added Section 1936.01 to the California Civil Code. This section defines "airport concession fee" as:

A *charge collected by a rental company from a renter* that is the renter's proportionate share of the amount paid by the rental company to the owner or operator of an airport for the right or privilege of conducting a vehicle rental business on the airport's premises.

Cal. Civ. Code § 1936.01(a)(1) (emphasis added). It also defines "tourism commission assessment" as:

The *charge collected by a rental company from a renter* that has been established by the California Travel and Tourism Commission pursuant to Section 13995.65 of the Government Code.

Cal. Civ. Code § 1936.01(a)(3) (emphasis added). A reasonable interpretation of this statutory enactment is that the Legislature expressly contemplated that the rental car companies would pass on the fees and assessments.

Having lost in their attempt to prevent the passage of the law, Plaintiffs now ask this Court to do what the Legislature would not – disregard the interests of the State in favor of the Plaintiffs. The state action immunity doctrine prohibits this by shielding the CTTC from antitrust liability for any actions taken pursuant to the CTMA.

3.    The CTTC, Acting Pursuant To This Clearly Articulated State Policy, Is Immune From Antitrust Liability For Conduct Relating To The 2.5% CTTC Assessment.

When the CTMA was amended effective January 1, 2007, it imposed an assessment on rental car revenue to fund the CTTC. The assessment was set at 2.5% of the rental car

---

[8] The Court granted the request for judicial notice in its Order Granting Defendants' Motions to Dismiss, at p.10.

weintraub genshlea chediak
LAW CORPORATION

companies' revenue, which the CTTC is mandated by statute to collect. § 13995.51(a)(2). The Legislature left the effectuation of this policy to the CTTC, but mandated that it do so. § 13995.92. Because the CTTC is a political subdivision, its conduct here – determining the statutorily-required level of assessment, conducting the referendum, and collecting the assessment and necessary work to accomplish those mandates – is immune from Sherman Act liability without the need for active state supervision.[9] *Hass v. Oregon State Bar*, 883 F.2d at 1460.

In *Sanders v. Brown*, 504 F.3d 903, 915 (9th Cir. 2007), the Ninth Circuit held that state action immunity applied to a settlement agreement between California and major tobacco companies. The settlement provided that defendants would pay billions of dollars each year to the State. *Id.* at 906. It was clear, however, that the defendants would raise cigarette prices to pay the settlement, and were concerned that non-participating tobacco companies would undercut their prices and their market share would suffer. The settlement included legislation requiring non-settling tobacco companies to pay an amount similar to what they would have paid under the settlement into an escrow account if those companies increased their market share after the settlement was finalized. *Id.* at 907. This scheme, which is clearly anticompetitive and intended only to protect the participating tobacco companies' market share, was held immune from antitrust liability because it was undertaken by the State. *Id.* at 918. Moreover, because it was not a private party asserting state actor immunity, no showing of state supervision was necessary even though the ultimate anti-competitive activity—raising prices—was performed by private companies. The same result must apply here, where the state actor

---

[9] Plaintiffs' allegation that some of the CTTC members are private parties does not change this conclusion, because the CTTC imposed the assessment on the car rental companies and the CTTC is clearly a state entity. For instance, in *Charley's Taxi Radio Dispatch Corp.*, 810 F.2d at 876, the Ninth Circuit immunized private taxi owner-operators for possessing an exclusive franchise to provide service along a particular route because the Court recognized that the State Department of Transportation had immunity for granting the franchise, and the Department of Transportation did not lose its immunity due to the presence of private parties. *See, also, Cine 42nd Street Theater Corp. v. Nederlander Organization*, 790 F.2d 1032, 1048 (2d Cir. 1986) (extending state action immunity to a private party acting under the direction of a governmental unit, without inquiry into active supervision by the state).

weintraub genshlea chediak
LAW CORPORATION

1    undertakes the activity at issue.[10]

2        In *Hass v. Oregon State Bar*, the Ninth Circuit found that the legislature's grant of

3    authority to the state bar "to do whatever is necessary and convenient" to implement mandatory

4    attorney malpractice insurance immunized the bar from antitrust violations for requiring attorneys

5    to participate in and purchase insurance from a liability fund.  Such a statutory scheme "clearly

6    evinces a legislative policy to supplant market competition with regulation in the field of primary

7    legal malpractice coverage, and to leave the effectuation of that policy to the Bar."  *Hass v.*

8    *Oregon State Bar*, 883 F.2d at 1458-1459.

9        Similar to *Hass*, the California Legislature left the effectuation of the tourism assessment

10   to the CTTC, and mandated that it do so.  *See* § 13995.92.  The CTTC is immune from antitrust

11   liability because the only actions actually alleged in the FAC are consistent with the duties

12   imposed by the Legislature:

13       (1)    implementing the tourism assessment on passenger car rental industry;

14       (2)    setting the proposed assessment rate;

15       (3)    submitting a referendum to the passenger rental car industry; and

16       (4)    billing and collecting the tourism assessment.

17   §§ 13995.65, 13995.65.5, 13995.92.

18       In an attempt to avoid the CTTC's immunity, Plaintiffs contend that the CTTC lacked

19   authority to coordinate a horizontal price fix.  FAC, ¶ 44.  This allegation has no impact on the

20   CTTC's state action immunity, as is made clear by *City of Columbia v. Omni Outdoor*

21   *Advertising, Inc.*, 499 U.S. 365.  In *City of Columbia*, defendant Columbia Outdoor Advertising,

22   Inc. ("COA") dominated the billboard advertising market in Columbia, South Carolina,

23   controlling more than 95% of the market.  *Id.* at 367.  The Court noted that

24   _____

25   [10]    While not required to do so, the CTTC could easily satisfy the "active supervision"
         requirement of the *Midcal* test.  The CTTC is chaired by the Secretary, the Executive Director of
26   the CTTC is the Deputy Secretary, the assessment rate is determined by the Office, twelve of the
         Commissioners are appointed by the Governor, the Secretary can remove Commissioners who
27   abuse their office, the budget and the marketing plan must be approved by the Secretary, and
         the assessments are collected by state employees of the Office.  This more than meets the
28   supervision requirements in *Midcal*.  445 U.S. at 105-06.

weintraub genshlea chediak
LAW CORPORATION

COA was a local business owned by a family with deep political roots in the community, and enjoyed close relations with the city's political leaders. The mayor and other members of the city council were personal friends of COA's majority owner, and the company and its officers occasionally contributed funds and free billboard space to their campaigns.

*Id.* When plaintiff Omni sought to enter the market, part of COA's response was to meet with city officials to change zoning ordinances to place restrictions on construction of new billboards, which the city passed. *Id.* at 368. At trial, Omni obtained a jury verdict against both COA and the city for antitrust violations, and the jury specifically found that the city and COA had conspired to restrain trade and monopolize the market. *Id.* at 369. The Supreme Court nevertheless overturned the verdict, finding as a matter of law that the city was protected by state action immunity against the antitrust claims. *Id.* at 374. *City of Columbia* held that there is no "conspiracy exception" to the *Parker* immunity afforded state agencies. *Id.* at 374. In *City of Columbia*, despite the specific jury finding that the governmental entity had acted in conspiracy with a private entity to restrain trade and monopolize the market, the city did not lose its immunity: "Since it is both inevitable and desirable that public officials often agree to do what one or another group of private citizens urges upon them, [a conspiracy exception] would virtually swallow up the *Parker* rule: All anticompetitive regulation would be vulnerable to a 'conspiracy' charge." *Id.* at 375.

Likewise, even if the CTTC had some part in an agreement between the Rental Car Defendants regarding prices, its conduct would be immune from antitrust liability. The Supreme Court has stated that *Parker* antitrust immunity for state actors is based on principles of federalism which are offended if federal courts "review state or local activity whenever it is alleged that the governmental body, though possessing the power to engage in the challenged conduct, has actually exercised its power in a manner not authorized by state law." *Id.* at 372. The Supreme Court in *City of Columbia* based its ruling on the fact that the city had authority to do what it actually did: pass zoning ordinances. Such action, even if it is done for an improper purpose and with procedural deficiencies, was immune from antitrust liability. *Id.* Here, Plaintiffs cannot succeed on a theory that CTTC acted outside its authority or for an improper purpose. The CTTC called a referendum, held meetings, implemented and collected the

weintraub genshlea chediak
LAW CORPORATION

assessment, all of which it was required to perform by law. § 13995.40.

    4.    **The CTTC Is Also Immune from Antitrust Liability for the Rental Car Defendants' Decision, if any, to Pass Through the Airport Concession Fee to Their Customers.**

The FAC also alleges that the pass-through of the 9% Airport Concession Fee to customers by the Rental Car Defendants was a horizontal price-fixing scheme. The CTTC is immune from any liability for this claim. The only acts that the CTTC is alleged to have committed were to hold CTTC meetings, call a referendum, and collect the CTTC assessment. This conduct is commanded by statute. § 13995.40. The Rental Car Defendants are permitted by statute to pass this Airport Concession Fee on to their customers. Indeed, under Civil Code section 1936.01, the airport concession fee is defined as "a charge collected by a rental company from a renter . . . ." Civ. Code section 1936.01(a)(1). The Rental Car Defendants lobbied for this law. There are no allegations that the CTTC took any part in the passage of this statutory amendment, or that it did anything other than hold meetings which the Rental Car Defendants attended for purposes of implementing the statute. This conduct by CTTC, even assuming arguendo that it facilitated anticompetitive activity, is immune under *Parker v. Brown*, 317 U.S. at 351; *Sanders v. Brown*, 504 F.3d at 915; and *City of Columbia v. Omni Outdoor Advertising, Inc.*, 499 U.S. at 374.

**B.**    **The First Amended Complaint Fails to Allege a Conspiracy or Combination and Should Be Dismissed Under the Standard Articulated in *Twombly*.**

Irrespective of the CTTC's immunity under *Parker v. Brown*, the FAC does not sufficiently plead an antitrust claim. In a horizontal price-fixing conspiracy case, the facts alleged must demonstrate an <u>agreement</u> among competitors, as opposed to conduct that "stemmed from independent decision." *Theatre Enters., Inc. v. Paramount Film Distrib. Corp.*, 346 U.S. 537, 540 (1954). A complaint that does not sufficiently allege facts to show this "agreement" is subject to dismissal. *Twombly*, 127 S.Ct. 1955, 1966 (2007). Plaintiffs' original complaint failed to meet this test, and the Court properly dismissed it. The FAC should also be dismissed because Plaintiffs have not cured the deficiencies.

///

**weintraub** genshlea chediak
LAW CORPORATION

1. **Plaintiffs Do Not Plead Facts Sufficient to Establish an Antitrust Agreement Involving the CTTC.**

In *Twombly*, 127 S. Ct. 1955, the Supreme Court articulated the requirements for pleading an "agreement" under Section 1 of the Sherman Act.

a. **Allegations of "Parallel Conduct" Are Insufficient.**

A claim under Section 1 of the Sherman Act must allege more than parallel conduct:

> Without more, <u>parallel conduct does not suggest conspiracy</u>, and a <u>conclusory allegation of agreement</u> at some unidentified point <u>does not supply facts adequate to show illegality</u>.  Hence, when allegations of parallel conduct are set out in order to make a section 1 claim, they must be placed in a context that raises a suggestion of <u>a preceding agreement, not merely parallel conduct that could just as well be independent action</u>.

*Twombly*, 127 S. Ct. at 1966 (emphasis added).

Reasonable business conduct does not indicate an agreement.  The Supreme Court stated that "there is no reason to infer that the companies had agreed among themselves to do what was <u>only natural anyway</u>." *Id.* at 1971, emphasis added.  Finding that the <u>alleged parallel conduct was as consistent with defendant's independent business interests as it was with conspiracy</u>, the Supreme Court held that such alleged parallel conduct, coupled with conclusory allegations of an agreement, failed to state a claim under Section 1 of the Sherman Act. *Id.* at 1966.  Even <u>parallel conduct "consciously undertaken" is not sufficiently suggestive of the "meeting of the minds" necessary for Section 1 liability</u>. *Id.*

*Twombly* also establishes that alleging an opportunity to conspire is not enough. *See id.* at 1971 and fn. 12.  To survive a motion to dismiss, a complaint alleging a violation of Section 1 of the Sherman Act must allege sufficient facts to make an inference of actual conspiracy plausible. *Id.* at 1966.  To do so, the factual allegations must support an agreement among the defendants, "as distinct from identical, independent action." *Id.* at 1961.  If the allegations of the complaint are "<u>consistent with conspiracy but just as much in line with a wide swath of rational and competitive business strategy unilaterally prompted by common perceptions of the market</u>," the Section 1 claim must be dismissed. *Id.* at 1964 (emphasis added).

/ / /

b.    Antitrust Allegations Are Closely Scrutinized.

Because antitrust litigation is unusually costly and burdensome, *Twombly* requires close scrutiny of the adequacy of allegations of an "agreement." *Id.* at 1964. "It is no answer to say" that meritless claims can be weeded out in the discovery process. *Id.* Following *Twombly*, the Ninth Circuit has stated that a plaintiff "must plead not just ultimate facts (such as a conspiracy), but <u>evidentiary</u> facts which, if true, will prove: (1) <u>a contract, combination or conspiracy</u> among two or more persons or distinct business entities; (2) by which the persons or entities intended to harm or restrain trade or commerce among the several states, or with foreign nations; (3) which actually injures competition." *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1047 (9th Cir. 2008), emphasis added.

2.    The FAC Fails To Allege Any Facts Showing That The CTTC Entered Into Any Agreement With The Defendants, Or That It Assisted Any Such Agreement.

The Court agreed that Plaintiffs' initial complaint was "devoid of factual allegations regarding any actual agreement between the CTTC and the rental car defendants." Order Granting Defendants' Motions to Dismiss, Docket No. 84, p. 7. The FAC is similarly devoid of any such factual allegations as to either the 9% Airport Concession Fee or the 2.5% Tourism Assessment.

Here, Plaintiffs allege only parallel conduct of <u>others</u> (the Rental Car Defendants), and an opportunity to conspire.[11] Plaintiffs do not, and cannot, allege any such conduct on the part of the CTTC because it is not involved in, and has absolutely no interest in, setting prices for car rentals in California. Plaintiffs do not allege any additional evidentiary facts that would make it "plausible" that the CTTC would engage in the alleged conspiracy.[12]

---

[11] CTTC agrees with the Rental Car Defendants that the allegations in the FAC are still insufficient to state an antitrust claim against them. The CTTC stresses here that the allegations regarding any conduct on the part of the CTTC are even more sparse and speculative than those alleging conduct of the Rental Car Defendants.

[12] Plaintiffs appear to allege that the CTTC is conspiratorial because it is "controlled by private industry" and infer that Rental Car Defendants exercise that control. FAC, ¶¶ 34, 44. Actually, the rental car industry category is limited by statute to a total of only six of the thirty-seven Commissioner seats, even though their assessment level would entitle the industry to significantly

weintraub genshlea chediak
LAW CORPORATION

weintraub genshlea chediak
LAW CORPORATION

a. **The FAC Does Not Allege Any Facts Supporting An Agreement to Fix Prices As To The 9% Airport Concession Fee.**

Plaintiffs have not alleged sufficient facts to make plausible any inference that an agreement existed among the Rental Car Defendants to fix prices as to the Airport Concession Fee or that the CTTC facilitated the formation of such an agreement. Plaintiffs employ the same conclusory language that was deemed inadequate in the initial complaint.

The totality of Plaintiffs' purported factual allegations as to a conspiracy to fix the Airport Concession Fee is that (1) AB 2592 allowed the Rental Car Defendants to unbundle the 9% Airport Concession Fee from the base rate; (2) the Rental Car Defendants agreed to use the unbundling of Airport Concession Fee as a mechanism to increase prices; (3) beginning in January 2007, the Rental Car Defendants increased base rates by 9% by not reducing the previously bundled rental amount when separating the charge for the Airport Concession Fee; (4) rental rates in California increased in January 2007 from December 2006 while they decreased on average nationwide. (FAC, ¶¶ 37, 42-43.) From these allegations, Plaintiffs concluded that a price fixing agreement existed, that the CTTC knew, facilitated and participated in that the formation and implementation of such an agreement as to the Airport Concession Fee. (FAC, ¶¶ 50-53.)

However, all of the factual allegations of communications between the CTTC and the Rental Car Defendants and the exhibits attached to the FAC refer to the 2.5% Tourism Assessment. Nothing in the FAC or the attached exhibits suggests that the CTTC discussed the Airport Concession Fee with the Rental Car Defendants. *See, e.g., In re Late Fee & Over-Limit Fee Litig.,* No. C 07-0634, 2007 WL 4106353, at *8; *In re Travel Agent Comm'n Antitrust Litig.,* No. 1:03 CV 30000, 2007 WL 3171675, *9 (N.D. Ohio Oct. 29, 2007) (allegations of private meetings, industry events, trade shows, business ventures, and golf outings failed to satisfy *Twombly* because "[p]roof that Defendants had an opportunity to conspire does not satisfy

more than six seats. § 13995.40.5(a). The CTTC is made up of Commissioners from five distinct tourism-related industries, each with its own interests. § 13995.20(e). Indeed, to "control" the CTTC, the Commissioners from these disparate industries would be forced to band together toward some common interest, yet the only common interest they have is increased tourism in general, which is exactly the purpose of the CTTC. § 13995.1.

1  Plaintiff's burden of proving a price-fixing agreement"); *In re Graphics Processing Units Antitrust*

2  *Litig.*, No. C 06-07417, 2007 WL 2875686, at*11 (N.D. Cal. 2007) ("Attendance at industry

3  trade shows and events is presumed legitimate and is not a basis for which to infer a conspiracy,

4  without more."); *In re Citric Acid Litig.*, 191 F.3d 1090, 1098 (9th Cir. 1999) (finding evidence

5  of participation in trade association insufficient evidence of conspiracy at summary judgment

6  stage).    There is no factual allegation linking the CTTC to the airport concession fee.    Thus,

7  allegations of the Rental Car Defendants' parallel conduct in conformity with AB 2592, and

8  conclusory allegations of the CTTC's participation are not sufficient to support any inference of a

9  conspiracy to fix car rental prices.

10        **b.**    **The FAC Does Not Allege Any Facts Supporting An Agreement to Fix Prices As To**

11                   **The 2.5% Tourism Assessment Fee.**

12      Plaintiffs' amended allegations do not support an inference that an agreement to fix

13  prices as to the 2.5% Tourism Assessment existed or that the CTTC knew of and facilitated such

14  an agreement.    First, the FAC alleges that the agreement:

15           was accomplished through meetings, negotiations, e-mails and explicit
         agreements, including a written Memorandum of Agreement executed by each of

16           the Rental Car Defendants and the CTTC (attached [to the FAC] as Exhibit A), a
         ballot approved and agreed to by all the Defendants and an agreement posted

17           on the CTTC website that the "assessment rate shall be passed on to the
         customer."

18

19  (FAC, ¶ 3.)  The Memorandum of Agreement, however, does not reference, or even support an

20  inference, that any agreement had been reached to pass through the fees to the customer.  The

21  Memorandum merely provides a roadmap of how AB 2592 would be implemented.    In fact, the

22  substantive portions of the Memorandum have been codified in the California Code of

23  Regulations through an open, public process and approved through the Office of Administrative

24  law.  Cal. Code Regs., tit. 10, § 5357 et seq.  Rather than evidence a price fixing agreement,

25  the Memorandum clearly anticipates the possibility that the referendum would not pass, and no

26  change would be made to the current assessments and the CTTC's budget.  (FAC, Exhibit A, p.

27  5.)  The passage of the referendum does not show conspiracy.  It shows an election conducted

28  as mandated by statute and a result based on independent business judgment.  The car rental

**weintraub** genshlea chediak
LAW CORPORATION

**weintraub** genshlea chediak
LAW CORPORATION

1    companies, operating in an industry that depends in large part on travel and tourism,

2    understood the benefits that their businesses would realize from efforts by the State to increase

3    tourism to California.    That the CTMA allows them to pass the cost of this effort to their

4    customers makes the decision to support the referendum rational, not conspiratorial.

5        Second, the FAC alleges that there was a statement on the CTTC's website that the

6    "assessment rate shall be passed through to the consumer." (FAC, ¶ 3.)    However, this is

7    consistent with the potential effect of passing AB 2592 that was made known to the Legislature

8    by counsel for plaintiffs prior to the enactment of Civil Code Section 1936.01(a)(3).    The FAC

9    also alleges conspiracy because it appeared to one rental car franchisee in January, 2007, that

10   a competitor was not charging the new assessment, and the CTTC agreed to remind all rental

11   car companies that the assessment had been put in place during the next industry segment

12   telephone conference. FAC, ¶ 3, Exh. I. CTTC's reply, contained in the same email, was simply

13   to take steps to insure all car rental companies were informed of the new assessment: "[Ms.

14   Toohey] sent the forms to the controllers of all the passenger car rental companies to insure that

15   they have been informed of the assessment." Id., Exh. I.    Plaintiffs allege that this email shows

16   the CTTC to be the "enforcer" in this alleged illicit conspiracy. FAC, ¶ 41.   However, there is no

17   basis for this proposition, because, even assuming for the sake of argument that such a

18   conspiracy did exist, the CTTC has no power over the Car Rental Defendants other than the

19   power expressly granted by the CTMA.    Thus, the only "agreement" the CTTC could possibly

20   "enforce" was an agreement to comply with the statute.

21       Third, Plaintiffs' allegation that the CTTC facilitated and covered up its involvement in the

22   alleged conspiracy by violating the Bagley-Keene Act is belied by the other allegations in the

23   FAC. (FAC, ¶ 6.)   The <u>only</u> Bagley-Keene Act violations alleged in the FAC, as in the original

24   complaint, concern meetings which took place in August through December of 2007. (FAC, ¶¶

25   65-84.) However, the purported antitrust agreement was formed in or before October of 2006,

26   a year earlier.   (FAC, ¶¶ 39, 50.)   While the FAC alleges that meetings occurred in October

27   2006 to discuss implementation of the Tourism Assessment, it does not allege any Bagley-Keene

28   Act violations in connection with those meetings.

Moreover, the alleged Bagley-Keene Act violations are minor technical violations that could not have covered up or concealed any alleged conspiracy. For example, Plaintiffs allege a failure to include an Internet address on a meeting notice. (FAC, ¶ 66-68.) Such alleged technical violations do not support an inference of, any antitrust agreement or conspiracy, even if they were in the relevant timeframe.

The remaining allegations offered to support a purported conspiracy are equally explainable as necessary communications to implement the statute and the required referendum. AB 2592 was a major change for the CTTC and required adding an industry category, calculating the required assessment rate to reach statutorily imposed budget levels, and calling for a special referendum for the rental car industry. §§ 13995.65.5, 13995.92. This could not be accomplished without coordination and communication with the subject industry. The fact that the CTTC took the steps required to comply with the mandates of the statute does not evidence a conspiracy to fix prices. Indeed, Plaintiffs acknowledge that they have no actual basis to allege the CTTC's involvement in a price fixing. The FAC alleges only:

> *to the extent the CTTC was involved* to coordinate communications and to facilitate that pricing increase, that Commission (a) lacks statutory authority to coordinate a horizontal price fix by the Rental Car Defendants, or otherwise among its membership, and (b) lacks independent state supervision status due to its control by private parties. The scheme of the Rental Car Defendants involved a conspiracy in which the CTTC participated by, *inter alia*, facilitating the two unlawful price fixes: (a) a 2.5% CTTC assessment, and (b) the 9% Airport Concession Fee, not as an authorized billing format change, but as a substantive charge add-on of the newly disaggregated fee.

FAC, ¶ 44 (emphasis added). Again, no facts are alleged that show what, if any, "facilitating" the CTTC did.

The remaining allegations, substantially identical to the allegations of Plaintiffs' original complaint already found to be inadequate, remain merely formulaic and conclusory:

> Defendants "communicat[ed] and agree[d] with each other regarding prices to be charged consumers for the CTTC surcharge and car rental rates." FAC, ¶ 51(b) (emphasis added).

> Defendants "facilitate[ed] and coordinat[ed] communication among the Car Rental Defendants to fix surcharge levels. FAC, ¶ 51(e) (emphasis added).

> Defendants and each of them have furthered the scheme through acts of concealment, including violation of the Bagley-Keene Act. FAC, ¶ 53 (emphasis

weintraub genshlea chediak
LAW CORPORATION

added).

These conclusory allegations that the CTTC "facilitated," "communicated," "agreed," "coordinated," or "concealed" a conspiracy do not satisfy the *Twombly* requirement that sufficient facts be alleged that show a conspiracy is plausible. Plaintiffs do not describe <u>how</u> the CTTC "facilitated and participated" in any combination or conspiracy. Nor do they explain <u>when</u> or <u>what</u> they allegedly "communicated and agreed" regarding prices. Plaintiffs have not described any way in which the CTTC "facilitated and coordinated" any communication, except by holding meetings which it is required by statute to hold. § 13995.40.

Plaintiffs FAC fails to state a claim for antitrust under Section 1 of the Sherman Act, and must be dismissed. Plaintiffs have failed to correct the deficiencies in their first complaint with sufficient factual allegations, despite having the opportunity to do so. The Court need not assume Plaintiffs will be able to allege additional facts to support its claims having previously had the opportunity. *Kendall v. Visa U.S.A., Inc.*, 518 F.3d at 1051-52.

**C.    The Court Should Dismiss the Bagley-Keene Act Claim or Decline to Exercise Supplemental Jurisdiction Over It.**

Plaintiff Shames has alleged no basis for standing to bring the Bagley-Keene Act claim, or that any violations of the Bagley-Keene Act have any relationship to the federal antitrust claim. Plaintiff Shames does not allege ever attempting to attend a CTTC meeting or ever being turned away from a meeting. He does not allege that the CTTC ever failed to notice any meetings. All he alleges are, at best, technical violations of the Bagley-Keene Act that are completely unconnected to the antitrust claim. By implication, Plaintiff Shames admits that the CTTC conducted all business related to Rental Car Defendants in an open and public fashion.

**1.    Plaintiff Lacks Standing To Pursue a Claim Under the Bagley-Keene Act Because He Has Not Alleged Any Injury To Himself.**

Section 11130(a) of the Bagley-Keene Act provides in relevant part that, " . . . any interested person may commence an action by mandamus, injunction, or declaratory relief for the purpose of stopping or preventing violations or threatened violations of [the Bagley-Keene Act]." Constitutional standing is a necessary element of any claim for federal injunctive relief.

weintraub genshlea chediak
LAW CORPORATION

weintraub genshlea chediak
LAW CORPORATION

1  *Crow Creek Sioux Tribe v. Brownlee*, 331 F.3d 912, 915-18 (D.C. Cir. 2003). To establish
2  constitutional standing, the plaintiff must show that (1) he suffered an "injury-in-fact", i.e. an
3  injury which is concrete and particularized, and actual and imminent, not conjectural or
4  hypothetical; (2) a causal connection exists between the injury and the challenged action of the
5  defendant; and (3) the injury will be redressed by a favorable decision. *Lujan v. Defenders of*
6  *Wildlife*, 504 U.S. 555, 561 (1992); *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 561
7  (3d Cir. 2002). The burden of establishing standing rests with the plaintiff. *Lujan*, 504 U.S. at
8  561. Where a plaintiff seeks injunctive relief, a natural outgrowth of these factors requires a
9  showing by plaintiff of ongoing injury or an imminent threat of future injury. *O'Shea v. Littleton*,
10  414 U.S. 488, 495-96 (1974) ["Past exposure to illegal conduct does not in itself show a
11  present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing,
12  present adverse effects"].

13        The FAC does not allege any injury to Plaintiff Shames as the result of any purported
14  violation of Bagley-Keene. The only information provided anywhere regarding Plaintiff is found
15  in paragraph 14 of the FAC, namely, that "[a]fter January 1, 2007, he rented a vehicle from
16  one of the Rental Car Defendants . . . and was billed for and paid both the CTTC surcharge and
17  the Airport Concession Fee add-on." However, Plaintiff does not make any connection between
18  the act of the renting a car and the purported Bagley-Keene violations.

19        Plaintiff Shames cannot rely on the statutory language that "any interested person" may
20  bring a claim under the Bagley-Keene Act to grant them standing. It is firmly established that
21  when:

22        determining jurisdiction, district courts of the United States must look to the
        sources of their power, article III of the United States Constitution and
23        Congressional statutory grants of jurisdiction, not to the acts of state legislatures.
        However extensive their power to create and define substantive rights, the states
24        have no power directly to enlarge or contract federal jurisdiction.

25  *Fiedler v. Clark*, 714 F.2d 77, 79-80 (9th Cir. 1983) (quoting *Duchek v. Jacobi*, 646 F.2d 415,
26  419 (9th Cir.1981)). Plaintiff Shames has not satisfied the requirements for Article III standing
27  because he has not alleged any injury specific to himself, nor has he alleged that he was even
28  aware of any CTTC meetings. For example, Plaintiff does not allege that he ever tried to attend

weintraub genshlea chediak
LAW CORPORATION

1   any of the CTTC meetings described in the FAC, that any alleged Bagley-Keene issue affected

2   him, or that he is imminently threatened with any future injury.  Plaintiff does not allege that he

3   ever requested notice of CTTC meetings.  In the complete absence of such a showing, Plaintiff

4   has no standing to seek the injunctive relief requested in the Fourth Cause of Action.  *O'Shea v.*

5   *Littleton*, 414 U.S. 488, 495-96 (1974).

6         **2.**    **The Alleged Bagley-Keene Act Violations Are Not Transactionally Related To The Antitrust Claim And, Therefore, Are Not Part Of The Same Case Or Controversy.**

7

8         Even if Plaintiff Shames did have standing to bring his Bagley-Keene Act claim, it is

9   unrelated to the antitrust or unfair competition claims.  As noted above, there is not even a

10  logical argument that any purported violation of the Bagley-Keene Act contributed to the

11  conduct alleged in the antitrust claim.  Supplemental jurisdiction is proper only where the

12  relationship between the federal and state claims is such that they form "part of the same case

13  or controversy under Article III of the United States Constitution."  28 U.S.C. § 1367(a).  The

14  longstanding rule has been that a single case existed in the constitutional sense wherever the

15  state and federal claims arose from a "common nucleus of operative facts" such that plaintiff

16  would ordinarily be expected to try them in a single judicial proceeding.  *United Mine Workers v.*

17  *Gibbs*, 383 U.S. 715, 725 (1966).  There is no "common nucleus of operative facts" between

18  the alleged Bagley-Keene Act violations and the antitrust allegations in the rest of the FAC as

19  noted above, which are alleged to have occurred in completely inconsistent time periods.

20  *Kersner v. Clemens*, 225 F.3d 227, 239 (2nd Cir. 2000); *Lyon v. Wissman*, 45 F.3d 758, 760

21  (3rd Cir. 1995).

22        In fact, the FAC shows more definitively than the original complaint that the alleged

23  technical Bagley-Keene Act violations have nothing whatsoever to do with any supposed antitrust

24  conspiracy.  The only allegations of Bagley-Keene Act violations concern meetings which took

25  place in August through December of 2007.  FAC, ¶ 65-84.  As to the supposed antitrust

26  conduct, however, the FAC alleges that the activity occurred at meetings in October of 2006,

27  shortly after AB 2592 had been passed and signed into law. FAC, ¶¶ 39, 50.  There are no

28  allegations that any Bagley-Keene Act violations took place in any of those October 2006

weintraub genshlea chediak
LAW CORPORATION

1    meetings.  Moreover, the alleged Bagley-Keene Act violations substantially after the alleged

2    conspiracy, as alleged in the FAC, are only technical violations and are never connected to the

3    alleged antitrust conspiracy.  For example, the FAC alleges that the CTTC failed to include an

4    Internet address on meeting notices.  FAC ¶¶ 66-68.  The FAC alleges that the meeting notices

5    were either not posted on the Internet or were too difficult to find.  FAC ¶¶ 69-71.  Plaintiff

6    complains that the duplicate notices the CTTC sends by email were allegedly sent without ten

7    days' notice, even though such notices are not required by the Bagley-Keene Act,.  FAC, ¶¶ 72-

8    73.  The FAC also alleges that the CTTC's use of terms such as "other business" on meeting

9    agendas is improper.  FAC, ¶¶ 74-75.  The FAC alleges that the CTTC held "illegal" closed-

10   session meetings, but complains only that the notices failed to cite the specific statute which

11   authorized the meetings to be closed, not that the meetings were closed without proper

12   authority.  FAC, ¶¶79-80.  In sum, nothing in the allegations of Bagley-Keene Act violations has

13   anything to do with the alleged antitrust conspiracy.  Plaintiffs' omission of any link between the

14   supposed conspiracy and allegations of Bagley-Keene Act violations demonstrates that the

15   causes of action are not transactionally related.  The Court therefore lacks jurisdiction over this

16   claim, and should dismiss it with prejudice.

17          3.    The Court Should Decline to Exercise Supplemental Jurisdiction Over the
                  California Bagley-Keene Act Claim under Comity Principles.
18

19          It has been clearly "established that pendent (supplemental) jurisdiction is a doctrine of

20   discretion, not of plaintiff's right . . . ."  *City of Chicago v. International College of Surgeons*,

21   522 U.S. 156, 172 (1997).  The Court may also decline to exercise jurisdiction simply on the

22   basis of convenience, fairness to the parties, judicial economy and, most relevantly here, comity.

23   *Executive Software No. America, Inc. v. United States District Court (Page)*, 24 F.3d 1545,

24   1552-55 (9th Cir. 1994).  In addition to the Court's discretion under U.S.C. section 1367(c),

25   where, as here, the relief sought is equitable or otherwise discretionary, the Court may invoke

26   abstention principles to stay the action or to decline jurisdiction altogether by dismissing the

27   action.  *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 717-22 (1996).  As this Court has

28   already noted in its Order Granting Defendants' Motion to Dismiss, "the state law claims may

weintraub genshlea chediak
LAW CORPORATION

1  implicate novel or complex questions of state law, including questions related to interpretation of

2  the CTMA and the Bagley-Keene Open Meeting Act." Order, p. 9 (emphasis added).

3      The Ninth Circuit recently declined to interpret the Bagley-Keene Act in a similar situation.

4  *Southern California Edison Co. v. Lynch*, 307 F.3d 794 (9th Cir. 2002).  The question presented

5  to the court was the enforceability of a settlement agreement, and the court indicated that the

6  agreement appeared to violate the Bagley-Keene Act as it was approved and signed in a closed

7  meeting.  *Id.* at 810-11.  The issue was whether the manner in which the meeting was held

8  violated the Bagley-Keene Act.  The court certified the question to the California Supreme Court,

9  stating "[r]esolution of the state law issues involved in this litigation will have a substantial effect

10  on California law and the citizens of California. Accordingly, principles of comity suggest that

11  those decisions should be made by California courts."  *Id.* at 812.  The California Supreme

12  Court then ruled that no violation of State law had occurred.  *Southern California Edison Co. v.*

13  *Lynch*, 353 F.3d 648 (9th Cir. 2003).

14      The Bagley-Keene Act is an expression by the California Legislature that, in order to

15  protect the citizens of California, meetings of its own government agencies should be held in the

16  open.  In harmony with the Brown Act, a counterpart statute applicable to local government

17  bodies, these schemes are intended to protect the public's right to participate in the functioning

18  of local and state government agencies and bodies.  This is a fundamental public policy of the

19  State of California.  §§ 11120, 54950; *Gillespie v. San Francisco Pub. Library CTTC*, 67

20  Cal.App.4th 1165, 1169 (1998).  The Bagley-Keene Act, despite having been enacted in 1967,

21  has been litigated extremely infrequently.

22      The CTTC is a creation of, and is governed by, State law.  §§ 13995 *et seq.*   The

23  question whether the state agency complied with the Bagley-Keene Act is one best left to the

24  state courts.  *Southern California Edison Co. v. Lynch*, 307 F.3d at 811.  This is especially true

25  where, as here, the claimed violations have nothing to do with any federal concerns before this

26  Court.  The Court should decline to exercise jurisdiction over this claim and require Plaintiffs to

27  bring any such issues before the California state courts.[13]

28    [13]  For example, one area cited by Plaintiffs is the CTTC's use of "other business" in certain

---

IV.    CONCLUSION

For the foregoing reasons, the CTTC respectfully requests that its motion to dismiss be granted without leave to amend.

Dated: May 29, 2008

Respectfully submitted,

**WEINTRAUB GENSHLEA CHEDIAK**
Law Corporation

By:_____/s/ Thadd S. Blizzard_____
    Thadd A. Blizzard
    California State Bar No. 83297
    Attorneys for Defendant The California
    Travel and Tourism CTTC

EDMUND G. BROWN JR., Attorney General
of the State of California
W. DEAN FREEMAN
FELIX E. LEATHERWOOD
Supervising Deputy Attorneys General
RONALD N. ITO
DIANE SPENCER SHAW
LISA W. CHAO
Deputy Attorneys General

By:_____/s/ Ronald N. Ito_____
    Ronald N. Ito
    California State Bar No. 71322
    Attorneys for Defendant California
    Travel and Tourism CTTC

agendas.   FAC, ¶ 75.   California's courts are best suited to determining whether such an agenda item is a violation or, as the CTTC contends, an additional point of information for the public not required to even be included in the notice.  Bagley-Keene does not require notice of non-action items. "The notice shall . . . include a brief description of the items of business to be <u>transacted</u> or <u>discussed</u>."   § 11125(b) (emphasis added).   It does not include items to be <u>reported</u>.