1  Thadd A. Blizzard, State Bar No. 83297
   Michael A. Kvarme, State Bar No. 90749
2  W. Scott Cameron, State Bar No. 229828
   **weintraub** genshlea chediak
3  a law corporation
   400 Capitol Mall, 11th Floor
4  Sacramento, CA  95814
   (916) 558-6000 – Main
5  (916) 446-1611 – Facsimile

6  EDMUND G. BROWN JR.
   Attorney General of the State of California
7  W. DEAN FREEMAN
   FELIX E. LEATHERWOOD
8  Supervising Deputy Attorneys General
   RONALD N. ITO, State Bar No. 71322
9  DIANE SPENCER SHAW, State Bar No. 73970
   LISA W. CHAO, State Bar No. 198536
10 Deputy Attorneys General
   300 South Spring Street, Suite 1702
11 Los Angeles, CA  90013
   (213) 897-2477 – Main
12 (213) 897-5775 – Facsimile

13 Attorneys for Defendant
   The California Travel and Tourism Commission

14

15                UNITED STATES DISTRICT COURT

16                SOUTHERN DISTRICT OF CALIFORNIA

17 MICHAEL SHAMES; GARY GRAMKOW, on       ) Case No. 07 CV 2174 H BLM
   behalf of themselves and on behalf of all )
18 persons similarly situated,              ) [CLASS ACTION]
                                            )
19          Plaintiffs,                     )
                                            )
20     vs.                                  ) DEFENDANT CTTC'S MEMORANDUM OF
                                            ) POINTS AND AUTHORITIES IN REPLY TO
21 THE HERTZ CORPORATION, a Delaware        ) OPPOSITION TO DEFENDANT CTTC'S
   corporation; DOLLAR THRIFTY              ) MOTION TO DISMISS PLAINTIFFS' FIRST
22 AUTOMOTIVE GROUP, INC., a Delaware       ) AMENDED COMPLAINT
   corporation; AVIS BUDGET GROUP, INC., a  )
23 Delaware corporation; VANGUARD CAR       ) [Fed. R. Civ. P. 12(b)(6)]
   RENTAL USA, INC., an Oklahoma            )
24 corporation; ENTERPRISE RENT-A-CAR       )
   COMPANY, a Missouri corporation; FOX     ) Date:  July 14, 2008
25 RENT A CAR, INC., a California corporation; ) Time:  10:30 a.m.
   COAST LEASING CORP., a Texas             ) Place: Courtroom 13
26 corporation; and THE CALIFORNIA TRAVEL   )
   AND TOURISM COMMISSION,                  ) The Honorable Marilyn L. Huff
27                                          )
            Defendants.                     )
28 _____)

TABLE OF CONTENTS

| | | | Page |
|---|---|---|---|
| I. | Introduction | | 1 |
| II. | The FAC Fails to Meet the Pleading Requirements Set Forth in *Twombly* | | 1 |
| | A. | Plaintiffs Avoid CTTC's *Twombly* Arguments in Their Opposition | 1 |
| | B. | The Allegations in the FAC Fail to Establish That an Agreement Involving CTTC is Plausible | 2 |
| III. | CTTC Is Entitled to State Action Immunity for the Antitrust Claim Because It Is a Political Subdivision of the State Acting Pursuant to a Clearly Articulated State Policy | | 4 |
| | A. | Plaintiff Misstates the Requirements for State Action Immunity | 4 |
| | B. | CTTC Is a Political Subdivision of the State | 5 |
| | C. | The CTMA Is a Clearly Articulated State Policy That Foreseeably Displaced Competition | 5 |
| IV. | The Court Should Decline to Exercise Jurisdiction Over the Bagley-Keene Act Claim | | 7 |
| | A. | Plaintiff Shames Lacks Standing to Assert a Bagley-Keene Act Claim | 7 |
| | B. | The Bagley-Keene Act Claim Is Not Transactionally Related to the Antitrust Claim and Therefore Should Be Dismissed | 8 |
| V. | Conclusion | | 10 |

TABLE OF AUTHORITIES

Page

*Federal Cases*

Arpin v. Santa Clara Valley Transp. Agency
    261 F.3d 912 (9th Cir. 2001) .................................................................................. 3, 9

Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters
    459 U.S. 519 (1983) .................................................................................................. 9

Bell Atlantic v. Twombly
    __ U.S. __, 127 S.Ct. (2007) ............................................................................. passim

California Retail Liquor Deals Ass'n v. Midcal Aluminum, Inc.
    445 U.S. 97 (1980) ................................................................................................... 4

Cantor v. Detroit Edison Co.
    428 U.S. 579 (1976) ................................................................................................. 4

Cantrell v. City of Long Beach
    241 F.3d 674 (9th Cir. 2001) ................................................................................... 8

City of Columbia v. Omni Outdoor Advertising, Inc.
    499 U.S. 365 (1991) ............................................................................................. 6, 7

City of Fort Worth v. Groves
    746 S.W.2d 907 (1988) ............................................................................................ 8

Community Comms. Co. v. Boulder
    455 U.S. 40, 102 S.Ct. 843 (1982) .......................................................................... 4

Fiedler v. Clark
    714 F.2d 77 (9th Cir. 1983) ..................................................................................... 8

Finlan v. City of Dallas
    888 F.Supp. 779 (N.D. Tex. 1995) .......................................................................... 8

Goldfarb v. Virginia State Bar
    421 U.S. 773 (1975) ................................................................................................. 4

Lafayette v. Louisana Power & Light Co.
    435 U.S. 389, 98 S.Ct. 1138 (1978) ........................................................................ 4

Linda R.S. v. Richard D.
    410 U.S. 614, 93 S.Ct. 1146 (1973) ........................................................................ 8

Massachusetts v. E.P.A.
    __ U.S. __, 127 S.Ct. 1438 ...................................................................................... 8

Town of Hallie v. City of Eau Claire
    471 U.S. 34 (1985) ............................................................................................... 4, 5

Universal Service Fund Telephone Billing Practices Litigation
    219 F.R.D. 661 (D. Kan. 2004) ............................................................................... 7

*Walker v. County of Santa Clara*
    2005 WL 2437037 (N.D. Cal. Sept. 30, 2005) .......................................................... 8

<u>State Statutes</u>

Civil Code
    § 1936.01(b) ........................................................................................................... 7
    § 1936.01(b)(3)(A)(B) ............................................................................................. 7

Government Code
    § 11120, et seq. (Bagley-Keene Act) ............................................................. passim
    § 13995.1(d)(1) ...................................................................................................... 3
    § 13995.20(e) ......................................................................................................... 5
    § 13995.40.5 .......................................................................................................... 5
    § 13995.65(f) .......................................................................................................... 6
    § 13995.90 ............................................................................................................. 6

I.  Introduction

In a time when California is facing a multi-billion dollar budget deficit, and the economy is having severe difficulties, plaintiffs are asking this Court to search for an imaginary conspiracy and divert huge resources away from one of the bright spots in the landscape: the state-mandated efforts to increase tourism in California. The California Legislature passed a law allowing the Rental Car defendants to pass through certain fees to customers, and they began doing so. This action was taken in support of a legislative policy to encourage the enormously-important tourism industry in California. No facts are alleged that are inconsistent with the legislatively-directed statutory structure and process. The CTTC is directed to work with the private sector to set and collect this tourism assessment, significantly increased through the subject legislation at a critical time when California's economy can use it most.

Under controlling law, the speculative allegations of plaintiffs are insufficient to state a claim for Sherman Act conspiracy. Further, the CTTC is entitled to state-actor immunity because it is an instrumentality of the State, and the State expressly provided that it should be shielded to the fullest extent of the law from antitrust claims, clearly foreseeing that its activities could be misconstrued by over-zealous plaintiffs seeking an opportunity to further interests contrary to those of the State itself.

No facts have been or can be alleged that meet the pleading standard required, or that avoid CTTC's immunity. The First Amended Complaint ("FAC") should therefore be dismissed without leave to amend.

II.  The FAC Fails To Meet The Pleading Requirements Set Forth In *Twombly*.

   A.  Plaintiffs Avoid CTTC's *Twombly* Arguments In Their Opposition.

CTTC's Memorandum of Points and Authorities ("P & A") at pages 13-20 includes an extensive argument that the antitrust claim against CTTC in the FAC fails to meet the pleading standards set forth in *Bell Atlantic v. Twombly*, __ U.S. __, 127 S. Ct. 1955 (2007). Plaintiffs' opposition ignores CTTC's *Twombly* arguments, simply referring to Plaintiffs' opposition to Rental Car Defendants' motion to dismiss. No explanation is provided as to which arguments apply to CTTC's motion, which remains unopposed on this important point. CTTC reiterates

{10824/16392/WSC/1050403.DOC;2}    1    Reply to Opp. to CTTC Motion to Dismiss FAC

that the FAC sparse allegations regarding the CTTC are inadequate to satisfy the *Twombly* pleading requirements.

      B.    The Allegations In The FAC Fail To Establish That An Agreement Involving CTTC Is Plausible.

In their opposition to the Rental Car Defendants' motion, Plaintiffs brush aside the meaning of the *Twombly* decision, in which the Supreme Court stated that a Section 1 claim must be dismissed when allegations of the complaint are "<u>just as much in line with a wide swath of rational and competitive business strategy unilaterally prompted by common perceptions of the market.</u>" *Twombly*, 127 S. Ct. at 1964 (emphasis added). Plaintiffs cling to the pre-*Twombly* standard that all inferences must be drawn in favor of the non-moving party, and that equally likely contrary inferences cannot be the basis for dismissal. *Twombly* changed the landscape in Sherman Act Section 1 claims with regard to inferences to be drawn from allegations in a complaint. The presence of a non-conspiratorial explanation, as in this case, require dismissal.

Plaintiffs' FAC adds no allegations of any conduct on the part of CTTC that plausibly supports an inference of conspiracy. The FAC shows only that the Rental Car companies petitioned the government for a change in the law, and that the CTTC thereafter did exactly what it is charged with doing by the Legislature – implementing the assessment called for in the 2006 amendment to the CTMA.

With respect to the 9% Airport Concession Fee the FAC is devoid of any plausible allegations of conspiracy as to the CTTC. As explained in CTTC's P & A (pp. 16-17), there are no facts relating to an agreement of any kind involving CTTC and the airport concession fee. Plaintiffs have failed to show even an inference as to why the CTTC would have any connection to a fee that it does not administer, set or receive. Plaintiffs try to deflect attention away from this omission by claiming that the facts supporting this have been concealed. Opp. at 21. However, the Bagley-Keene Act violations, as demonstrated herein, have nothing to do with the antitrust allegations, and there are no violations alleged for meetings at which this "agreement" would have to have been reached. Rather, Plaintiffs ask the Court to grant them a license to conduct a fishing expedition, which they hope might lead to some support for their claim of an

improper agreement. *Twombly* is clear, however, that Plaintiffs cannot rely on discovery to uncover allegations; they must allege facts to show an agreement is plausible in order to get to discovery. *Twombly*, 127 S. Ct. at 1964.

Plaintiffs point to an email exchange between McNulty and Toohey, Exhibit I to the FAC. It shows only that there was some understandable confusion in implementing a significant change in the law and requisite changes in the Rental Car Defendants' procedures. Ms. Toohey's response to the email reveals the rational explanation: "I sent the forms to the controllers of all the passenger car rental companies last week to insure that they have been <u>informed</u> of the assessment." (Emphasis added.) The email shows that CTTC's concern was to make sure all rental car companies knew about the assessment. The agenda Plaintiffs point to that followed this email exchange reinforces this inference. FAC, Exh. B. Plaintiffs ignore item 3 on the agenda, which is directly applicable to the prior email: "Identification of independent car rental companies that are at airports/hotels (licensees). <u>How many and how do we reach them</u>?" *Id.* (emphasis added). CTTC is merely ensuring that all rental car companies subject to the assessment are <u>aware</u> of it. This does not show, even by inference any conspiracy to fix prices.[1]

Plaintiffs also point to CTTC reporting that it had "acquired a partnership with the rental car industry to secure a long-term funding solution for the CTTC." Opp. at 2. That is exactly what the CTMA compels it to do: "It is in the state's public interest and vital to the welfare of the state's economy to expand the market for, and develop, California tourism **through a cooperative partnership funded in part by the state** that will allow generic promotion and communication programs." § 13995.1(d)(1).[2]

---

[1] Plaintiffs' Opposition refers (p. 3:5-9) inappropriately to a meeting notice and agenda that is not referenced in the FAC. CTTC requests that the court disregard this, as it cannot properly be considered in connection with a motion to dismiss under Rule 12(b)(6). *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir. 2001). Plaintiffs also assert, incorrectly (Opp. p. 3, fn. 4) that CTTC has not fully responded to a Public Record Act request. The FAC references no such request to CTTC, and is therefore not before the Court. *Id.* Further, state law remedies would be available in such event.

[2] All section citations are to the California Government Code unless otherwise indicated.

III. **CTTC Is Entitled To State Action Immunity For The Antitrust Claim Because It Is A Political Subdivision Of The State Acting Pursuant To A Clearly Articulated State Policy.**

Plaintiffs' Opposition fails to fully address the basis for CTTC's immunity, and ignores the clearly-articulated state policy that competition could foreseeably be displaced.

A. **Plaintiff Misstates The Requirements For State Action Immunity.**

Plaintiffs, relying almost exclusively on a single line from *Goldfarb v. Virginia State Bar*, 421 U.S. 773 (1975), and *Cantor v. Detroit Edison Co.*, 428 U.S. 579 (1976), dismiss CTTC's assertion of state action immunity as "irrelevant" because the CTMA does not "compel" the alleged anticompetitive conduct. Opp. at 4, n. 6, 13. Plaintiffs' exact argument was expressly rejected in *Town of Hallie v. City of Eau Claire*, 471 U.S. 34 (1985). There, plaintiff argued that under *Goldfarb* and *Cantor*, the "clear articulation" requirement of the state action test required the defendant to show that the State "compelled it to act." *Id.* at 45. In rejecting the argument, the Supreme Court stated:

> None of our cases involving the application of the state action exemption to a municipality has required that compulsion be shown. Both [*Community Comms. Co. v.*] *Boulder*, 455 U.S. [40,] 56-57, 102 S.Ct., at 843-844 [(1982)], and *Lafayette* [*v. Louisana Power & Light Co.*], 435 U.S. [389,] 416-417, 98 S.Ct., at 1138-1139 [(1978)], spoke in terms of the State's direction *or authorization* of the anticompetitive practice at issue. This is so because where the actor is a municipality, acting pursuant to a clearly articulated state policy, **compulsion is simply unnecessary** as an evidentiary matter to prove that the challenged practice constitutes state action. **In short, although compulsion affirmatively expressed may be the best evidence of state policy, it is by no means a prerequisite to a finding that a [political subdivision] acted pursuant to clearly articulated state policy.**

*Id.* at 45-46 (italics original, emphasis added).[3]

Plaintiff also relies on *California Retail Liquor Dealers Ass'n v. Midcal Aluminum, Inc.*, 445 U.S. 97. *Midcal* is not applicable. *Midcal* applies where a private party claims state action

---

[3] *Goldfarb* is also distinguishable on its facts. There, the Virginia State Bar established a minimum fee schedule and threatened discipline for any Virginia lawyer who charged a lower fee. The Court correctly found that the Bar could not have been acting pursuant to a clearly articulated state policy to displace competition because the Virginia Supreme Court, of which the State Bar was an agent, had issued several ethical rules and opinions directly at odds with the Bar's fee schedule. The Virginia Court's ethical rules "explicitly directed lawyers not 'to be controlled' by fee schedules." *Goldfarb*, 421 U.S. at 789 (emphasis added). Thus, the Bar, in enacting the mandatory fee schedule, was acting contrary to clearly articulated state policy, not pursuant to it. In the present case, there is no state policy contrary to the action CTTC is alleged to have taken. The FAC alleges that CTTC held meetings and took other required actions to establish the tourism assessment as directed by law.

immunity. *Town of Hallie*, 471 U.S. at 46. No state supervision is necessary when the actor is a political subdivision of the state. *Id.* Plaintiffs' opposition does not address the situation applicable here, a political subdivision of the state claiming immunity.

### B. CTTC Is a Political Subdivision of the State.

Plaintiffs inconsistently assert that CTTC is not a political subdivision (Opp. pp. 13 to 18) then admit elsewhere that CTTC is a "state agency." Opp. p. 20 - 21. Indeed, Plaintiffs assert that CTTC was the "public agency . . . used as the situs of much of the communication . . . ." Opp. at 20 (emphasis added). The FAC alleges that CTTC is a "state body." FAC, ¶ 66. Plaintiff states that he "has a right to protect his interests . . . in not having a government agency engage in secret price-fixing activities." Opp. at 24. Thus, Plaintiffs repeatedly admit that CTTC is a political subdivision of the State.

As demonstrated in CTTC's P & A (pp. 4-7), CTTC meets every Circuit's test for determining whether an entity is a political subdivision for state action immunity purposes. The fact that many of CTTC's commissioners are elected from private industry does not preclude CTTC's political subdivision status. Many entities have been found to be political subdivisions for antitrust purposes that have industry representatives as members. P & A, p. 6, n. 7.[4]

### C. The CTMA Is A Clearly Articulated State Policy That Foreseeably Displaced Competition.

Plaintiffs fail to confront the central question whether the CTMA articulates state policy that foreseeably displaces competition. Instead, they misstate the requirements for "clearly articulated state policy" as requiring that the State mandate the conduct at issue. This argument

---

[4] Plaintiffs' characterization of CTTC as "industry controlled" is misleading. There is no single industry category from which the 24 industry-elected representatives are drawn, there are five. § 13995.20(e). To "control" CTTC, each of these five distinct industry categories would have to join together to achieve the 3/5 majority to "have final, determinative authority" that Plaintiffs claim. To do so, four of the industry categories would have to put another industry category's interests ahead of their own, as each industry category has interests inherently different from one another. Thus, the more accurate description is that CTTC is comprised of a majority of twelve Commissioners appointed by the Governor, and five separate industry categories that elect a total of twenty-four additional Commissioners from their respective industries. No single industry category exerts "final, determinative authority" as Plaintiffs contend, and, by statute, the Rental Car companies elect, at most, six CTTC commissioners. § 13995.40.5.

has been expressly rejected by the Supreme Court, holding "it is enough . . . if suppression of competition is the 'foreseeable result' of what the statute authorizes." *City of Columbia v. Omni Outdoor Advertising, Inc.*, 499 U.S. 365, 373 (1991) (quoting *Town of Hallie v. City of Eau Claire*, 471 U.S. at 42).

Plaintiff's summarily dismiss the grant of immunity contained in section 13995.90, claiming that explicit grants of immunity from state antitrust law have no bearing on federal *Parker* immunity. But plaintiffs fundamentally misapprehend the nature and purpose of *Parker* antitrust immunity. *Parker* immunity is designed to protect a wide range of state regulations, like the CTMA, from federal preemption, by empowering states to shield state regulated activity from federal antitrust scrutiny. *See City of Columbia v. Omni Outdoor Advertising*, 499 U.S. at 370. The intention of the state government is key in this regard. The fact that the California legislature choose to immunize conduct under the CTMA from scrutiny under state antitrust law clearly shows its purpose to do so for federal antitrust purposes as well.

Here the California Legislature foresaw potential anticompetitive conduct. Plaintiffs' counsel, Robert Fellmeth, pointed out to the Legislature the potential anticompetitive effects of the intended legislation. Rental Car Defendants' Request for Judicial Notice in Support of Motion to Dismiss, Exhibit B, Docket No. 36. The Legislature nevertheless kept intact the CTMA provision allowing the tourism assessment to be passed through to customers. § 13995.65(f). Nor did it dilute the broadest possible grant of antitrust immunity that the Legislature could provide in the CTMA, set forth in Section 13995.90, giving complete immunity against all claims brought under the Cartwright Act, the Unfair Practices Act, and any other "rule of statutory or common law against monopolies or combinations in restraint of trade." Thus it is plain that the result of the legislation in question included foreseeable anticompetitive actions that were within state policy.

Plaintiffs also misstate the import of the Supreme Court's decision in *City of Columbia v. Omni Outdoor Advertising, Inc.*, 499 U.S. 365. That case held that even if a state actor engaged in a conspiracy designed to reduce competition, if the conduct of the state actor is authorized by the state, and the state contemplated that suppression of competition could occur,

then the state actor is immune from liability. *Id.* at 373. Here, the FAC alleges only that CTTC "facilitated" an alleged agreement between the Rental Car Defendants by holding meetings and implementing the assessment called for in the CTMA. No other CTTC conduct is alleged. Plaintiffs contend that holding the meetings required by statute makes CTTC the "nucleus of all wrongdoing," but the Supreme Court holding in *City of Columbia* makes holding such meetings and implementing the required assessment within CTTC's antitrust immunity.

Central to Plaintiffs' argument is the unsupportable proposition that, absent collusion, the rental car companies would not have passed on the costs that the statute they just lobbied for allowed them to pass on. Plaintiffs cite only *In re Universal Service Fund Telephone Billing Practices Litigation*, 219 F.R.D. 661, 681 (D. Kan. 2004) for this proposition. However, that case, which addressed class certification, did not make any findings on the merits. *Id.* Plaintiffs also dispute that the Legislature, which expressly granted antitrust immunity, would have contemplated anticompetitive conduct. This position makes little sense given Plaintiffs' own attorney writing a letter warning of just such a potential anticompetitive result. Plaintiffs also imagine a conspiracy from Rental Car Defendants' listing the fee separately on quotes and bills. However, Civil Code Section 1936.01(b), specifies what must be included in quotes and bills of rental car transactions, which includes the CTTC assessment. Civ. Code § 1936.01(b)(3)(A)(B). The only reasonable inference to be drawn from the Rental Car Defendants separately listing the fee is that they were complying with the statute, not Plaintiffs' speculation that listing the fee was part of some nefarious agreement. Plaintiffs lost this policy argument before the Legislature, and are not entitled to have a federal court reverse the valid enactment of the California Legislature.

## IV. The Court Should Decline To Exercise Jurisdiction Over The Bagley-Keene Act Claim.

Nothing in Plaintiff Shames' opposition supports his standing to assert the Bagley-Keene Act claim or that the claim is transactionally related to the antitrust claim. Rather, Plaintiff sidesteps, confuses, and misstates the arguments in CTTC's motion.

### A. Plaintiff Shames Lacks Standing To Assert A Bagley-Keene Act Claim.

Plaintiff Shames argues that he has standing to bring an injunction for the antitrust claims, but this motion does not challenge Shames' antitrust standing. Rather, the standing

argument is directed to the Bagley-Keene Act claim. The cases cited by Shames in opposition to this argument are an attempt to mislead. Plaintiffs cite *Massachusetts v. E.P.A.*, ___ U.S. ___, 127 S.Ct. 1438, 1453, for the proposition that "where a statutory right to challenge agency action exists, standing requirements have been fulfilled." Opp. at 24. However, the "statutory right" in that case was based on a <u>federal</u> statute, where plaintiff was suing a <u>federal</u> agency. Next, citing *Linda R.S. v. Richard D.*, 410 U.S. 614, 617 n.3, 93 S. Ct. 1146, 1149 (1973), Plaintiff state, "the Legislature may create legal rights, the invasion of which creates standing, even though no injury would exist without the statute creating the legal right." Opp. at 24. The actual quote from footnote 3 of *Linda R.S.* is "But **Congress** may enact statutes creating legal rights . . . ."[5] (Emphasis added.) As detailed in CTTC's opening brief, a State Legislature cannot create federal standing. *Fiedler v. Clark*, 714 F.2d 77, 79-80 (9th Cir. 1983). Nor does this case involve "self-executing provisions" of the California Constitution as was the case in the other case cited, *Walker v. County of Santa Clara*, 2005 WL 2437037 (N.D. Cal. Sept. 30, 2005). None of these cases support what Plaintiff is trying to do here: base federal court standing on a state law.[6] See *Cantrell v. City of Long Beach*, 241 F.3d 674, 683 (9th Cir. 2001) [holding that a party seeking to commence suit in federal court must meet the stricter federal standing requirements of Article III; the more lenient California standing requirements do not relieve the obligation to establish a direct injury under the more stringent federal requirements].

    B.    **The Bagley-Keene Act Claim Is Not Transactionally Related To The Antitrust Claim And Therefore Should Be Dismissed.**

Plaintiff Shames admits that the FAC alleges no connection between antitrust violations and the Bagley-Keene Act claim. Opp. at 21. Rather, he seeks to excuse that failure under the

---

[5] In fact, the Court in *Linda R.S.* found that the plaintiff lacked standing because she failed to allege sufficient injury to herself. *Id.* at 616.

[6] CTTC acknowledges that *Finlan v. City of Dallas*, 888 F. Supp. 779 (N.D. Tex. 1995) found that the plaintiffs there had standing based on the Texas Open Meeting Act. *Id.* at 784. However, there was no apparent challenge to the plaintiffs' standing in that case, and the only citation by the court in support of its finding is to a Texas state court decision finding that the plaintiffs could bring their claim in state court based on the statute. *City of Fort Worth v. Groves*, 746 S.W.2d 907, 913 (1988). That single case, clearly against the weight of precedent, does not support Plaintiff's asserted standing here.

1  statute of limitations and he hopes that discovery might reveal actual violations in earlier
2  meetings. The Court need not "assume that the [plaintiff] can prove facts that it has not alleged
3  or that the defendants have violated . . . laws in ways that have not been alleged." *Associated*
4  *Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

5       In fact, while Plaintiff added one allegation of a Bagley-Keene Act violation in his FAC, it
6  was an alleged violation <u>after</u> those described in the original complaint. There are no
7  allegations of any violations occurring at a time when the alleged antitrust agreement was being
8  formed – the critical time for the concealment alleged in the FAC. Plaintiff's speculation that
9  discovery will reveal violations shows the weakness of his argument. It highlights the fact that the
10  new allegation in the FAC concerning meetings in October of 2006, do not allege any Bagley-
11  Keene Act violations concerning these meetings.[7]

12       Finally, Plaintiff Shames ignores CTTC's argument that the Court should decline to
13  exercise jurisdiction over the Bagley-Keene Act claim on comity principles. Comity is especially
14  applicable where, as here, the plaintiff was not even "interested" enough to request notice of the
15  meetings he now complains of.[8] The alleged violations on their face consist of nothing more
16  than technical points that could not prevent notice to any interested person. The courts of the
17  State of California are better suited to address any such de minimis state law matters.

18  ///
19  ///
20  ///
21  ///
22  ///
23  ///
24  ///

---

[7] Plaintiff's Opposition (p. 20:1) improperly references his papers in support of his unsuccessful motion for preliminary injunction under the Bagley-Keene Act, which inappropriately invites the Court to consider matters outside his complaint in the context of a motion to dismiss under Rule 12(b)(6). This material should be disregarded. *Arpin v. Santa Clara Valley Transp. Agency, supra*, 261 F.3d at 925.

[8] Plaintiff Shames again goes outside the pleadings by improperly describing himself in his Opposition papers (p. 24:16-19) in a manner evidently designed to bolster his lack of direct participation in CTTC meetings or notice thereof. This too should be disregarded. *Arpin v. Santa Clara Valley Transp. Agency, supra*, 261 F.3d at 925.

{10824/16392/WSC/1050403.DOC;2}     9     Reply to Opp. to CTTC Motion to Dismiss FAC

## V. CONCLUSION

For the foregoing reasons, the CTTC respectfully requests that its motion to dismiss Plaintiffs' First Amended Complaint be granted without leave to amend.

Dated: July 7, 2008

Respectfully submitted,

WEINTRAUB GENSHLEA CHEDIAK
Law Corporation

By: /s/ Thadd S. Blizzard
Thadd A. Blizzard
California State Bar No. 83297
Attorneys for Defendant The California
Travel and Tourism Commission

EDMUND G. BROWN JR., Attorney General
of the State of California
W. DEAN FREEMAN
FELIX E. LEATHERWOOD
Supervising Deputy Attorneys General
RONALD N. ITO
DIANE SPENCER SHAW
LISA W. CHAO
Deputy Attorneys General

By: /s/ Ronald N. Ito
Ronald N. Ito
California State Bar No. 71322
Attorneys for Defendant California
Travel and Tourism Commission