# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL SHAMES; GARY GRAMKOW, on behalf of themselves and on behalf of all persons similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>THE HERTZ CORPORATION, a Delaware corporation; DOLLAR THRIFTY AUTOMOTIVE GROUP, INC., a Delaware corporation; AVIS BUDGET GROUP, INC., a Delaware corporation; VANGUARD CAR RENTAL USA, INC., an Oklahoma corporation; ENTERPRISE RENT-A-CAR COMPANY, a Missouri corporation; FOX RENT A CAR, INC., a California corporation; COAST LEASING CORP., a Texas corporation; THE CALIFORNIA TRAVEL AND TOURISM COMMISSION,<br><br>Defendants. | CASE NO. 07-CV-2174 H (BLM)<br><br>ORDER:<br><br>(1) GRANTING THE CTTC'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT; AND<br><br>(2) GRANTING IN PART AND DENYING IN PART THE RENTAL CAR DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT<br><br>[Doc. Nos. 93, 94.] |

On May 1, 2008, plaintiffs Michael Shames and Gary Gramkow ("Plaintiffs") filed their First Amended Complaint ("FAC") in this putative class action against several passenger rental car companies ("the Rental Car Defendants"), and the

California Travel and Tourism Commission ("CTTC" and, collectively with the Rental Car Defendants, "Defendants").[1]  (Doc. No. 85.)  The rental car defendants and the CTTC each brought motions to dismiss the FAC.  (Doc. Nos. 93-94.)  On May 30, 2008, Plaintiffs filed oppositions to these motions along with a request for judicial notice.  (Doc. Nos. 99-100.)  Defendants filed their reply briefs on July 7, 2008.  (Doc. Nos. 102-03.)  The Court held a hearing on these motions on July 14, 2008.  Dennis Stewart, Robert Fellmeth, Donald Rez, and Jennifer Kagan appeared for Plaintiffs.  Gregory Call appeared for Enterprise Rent-A-Car Company and Vanguard Car Rental USA, Inc., and argued on behalf of the Rental Car Defendants.  Thadd Blizzard and Ronald Ito appeared on behalf of the CTTC.  Douglas Adler appeared for Avis Budget Group, Inc.  Jeff LeVee appeared for Dollar Thrifty Automotive Group, Inc.  Abraham Tang appeared for Coast Leasing Corp.  John Stephens appeared for Fox Rent a Car, Inc.  Gerald Stein appeared for The Hertz Corporation.

For the reasons below, the Court dismisses all claims against the CTTC and dismisses only the state law claims against the Rental Car Defendants.

**Background**

**I.      Overview of the Allegations**

Plaintiffs' complaint asserts four causes of action: (1) price fixing in violation of the Sherman Act, 15 U.S.C. § 1; (2) unfair competition in violation of the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 et seq.; (3) violations of the California Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750 et seq.; and (4) violations of California's Bagley-Keene Open Meeting Act, Cal. Govt. Code § 11120 et seq.  Plaintiffs assert the first three claims against all defendants and the fourth only against the CTTC.

Plaintiffs allege that the Rental Car Defendants, facilitated by the CTTC, committed a per se violation of federal antitrust law by entering into a horizontal price-fixing agreement concerning automobile rentals at certain California airports.  (FAC

---

[1] Plaintiffs did not renew their allegations against CTTC director Caroline Beteta.

¶ 1.) The alleged agreement has two components. First, Defendants agreed to raise prices and avoid competition by passing on to consumers a 2.5% assessment paid by the Rental Car Defendants to fund the CTTC. (FAC ¶ 3.) Second, defendants conspired to raise and fix prices by passing on to consumers an airport concession fee of approximately 9%. (FAC ¶ 5.) The parties do not dispute that California law permits a company to pass on the CTTC assessment, if the company acts individually. Plaintiffs allege, however, that the defendants unlawfully conspired to pass on these fees and raise prices in an anticompetitive manner.

Plaintiff's allege that Defendants misled consumers about the nature of the CTTC assessment, suggesting that it is owed by consumers, not by the Rental Car Defendants. (FAC ¶¶ 4, 56, 62.) Furthermore, Plaintiffs allege that the CTTC violated the Bagley-Keene Open Meeting Act in connection with the purported conspiracy. (FAC ¶ 6, 65.) They state, for example, that the CTTC failed to provide proper notice of its meetings and conducted improper closed sessions. (See FAC ¶¶ 66-84.)

Plaintiffs assert jurisdiction for the antitrust claim under 28 U.S.C. §§ 1331, 1337. (FAC ¶ 8.) Plaintiffs assert pendent jurisdiction for the state law claims, and Class Action Fairness Act jurisdiction in general. (FAC ¶¶ 9-10.)

**II.    CTTC Overview**

The California Tourism Marketing Act ("CTMA"), Cal. Gov't Code § 13995 et seq., created the CTTC in 1995 to expand and develop tourism spending for the benefit of the tourism industry and the state. Under the CTMA, the CTTC may receive funding from the state general fund and contributions from industry. See, e.g., Cal. Gov't Code § 13995.1 (stating general objectives of the CTMA). The CTTC is a California nonprofit mutual benefit corporation. Cal. Gov't Code § 13995.40(a). The Secretary of the California Business, Transportation and Housing Agency ("Secretary") chairs the CTTC and acts as one of thirty-seven commissioners who also serve as directors. Cal. Gov't Code § 13995.40(b). The Governor appoints twelve of the remaining commissioners, and industry selects the other twenty-four. Id.

Five segments of the tourism industry, including the "passenger car rental

industry," elect the twenty-four industry commissioners, without nomination or approval by public officials. Cal. Gov't Code § 13995.40(d); see also 10 Cal. Code Reg. § 5352 (defining the industry segments). The number of commissioners from each segment is determined by the weighted percentage of assessments paid to the CTTC from that industry category, though no more than six commissioners may be from the passenger rental car industry. Cal. Gov't Code §§ 13995.40(d), 13995.40.5(a). Plaintiffs allege that approximately 79% of the CTTC's budget comes from assessments of the passenger car rental industry. (FAC ¶ 34.)

The CTTC recommends its choice of Executive Director, who must be a "tourism industry marketing professional," for approval by the Governor. Cal. Gov't Code § 13995.43. The Executive Director administers the CTTC and serves at the pleasure of the commissioners and the Governor. Id.

Plaintiffs allege that the CTTC's relevant decision-making power is ultimately controlled by industry. (See FAC ¶¶ 30-34.) They point, for example, to CTTC materials describing it as "an industry-led public/private partnership." (FAC ¶ 30, Ex. C.) The CTTC's marketing plan is subject to review and approval by the Secretary, but the commissioners may override the Secretary's decision by a three-fifths majority. Cal. Gov't Code § 13995.45(d). The Secretary oversees the CTTC's biennial process of setting assessment levels and electing industry commissioners, though the commission may exercise this power if the Secretary does not do so. See Cal. Gov't Code §§ 13995.51(a), 13995.60. The Secretary "may remove any elected commissioner following a hearing at which the commissioner is found guilty of abuse of office or moral turpitude." Cal. Gov't Code § 13995.40(e). The elected commissioners serve four-year terms, limited to two consecutive terms, which end automatically if they leave their industry segment. Cal. Gov't Code § 13995.40(f)-(g). The Secretary has a veto power over the commission in certain circumstances, such as situations involving a conflict of interest or use of state funds. Cal. Gov't Code § 13995.51(b).

### III. CTTC Assessment Levels

Every two years, the CTTC engages in a referendum process to propose assessment levels for various segments of the travel and tourism industry. See Cal. Gov't Code § 13995.60. Those industry segments then vote on the proposals, and those receiving the most votes, weighted by business volume, become effective and enforceable. See Cal. Gov't Code § 13995.64(a). Businesses operating above a minimum threshold in each segment must then pay these assessments to the CTTC. See Cal. Gov't Code §§ 13995.65(e) 13995.68(a). Between referenda, California regulations allow the CTTC to modify the assessment rate, without approval by vote, to meet statutory revenue targets. See 10 Cal. Code Reg. § 5357.1. The CTTC prepares an annual marketing plan for use of its funding. Cal. Gov't Code § 13995.45.

In 2006, the Rental Car Defendants proposed changes to bill AB 2592 that allowed the CTTC to increase its budget greatly while simultaneously returning a $6.7 million contribution to the State general fund. Cal. Gov't Code § 13995.92(a); (FAC ¶ 36). The Rental Car Defendants obtained certain concessions in exchange for this increased funding. See Cal. Gov't Code § 13995.92(a) (requiring passenger car rental industry to set sufficient assessment rates, which act as a trigger for other provisions of AB 2592). The rental car industry received six seats on the CTTC. Cal. Gov't Code § 13995.40.5. In addition, the new legislation allowed the Rental Car Defendants to bill any tourism assessment separately from the base rental rate, effective July 1, 2007. Cal. Civ. Code § 1936.01(b)(2), (e). The CTMA allows assessed businesses to pass the assessments on to consumers, though they are not required to do so. Cal. Civ. Code § 13995.65(f).

After the legislature passed AB 2592 in the fall of 2006, the Defendants allegedly agreed to a 2.5% assessment on income from airport rentals, which they would pass on to consumers. (See, e.g., FAC ¶ 39.) Unlike the original complaint, the FAC provides documentation of Defendants' actions and lists specific meeting dates and individuals involved. As a result of meetings in October, 2006, the Rental Car Defendants and the CTTC entered into a written agreement to establish assessment

rates that would meet the funding goals described in Cal. Gov't Code § 13995.92(a). (FAC Ex. A.) The written agreement does not refer explicitly to passing on the assessments to consumers, but Plaintiffs offer other documents to show this aspect of the agreement. CTTC Executive Committee Meeting minutes from October 3, 2006, state that "the rental car industry would like to start passing on the fees beginning January 1, 2007," and its agenda referred to the topic of "Rental Car Pass through Fees." (FAC ¶ 40, Exs. F-G.) In an October 17, 2006, e-mail, counsel for the CTTC wrote to a Hertz employee: "My recollection from the meeting is that everyone agreed to continue the funding as long as the pass-through was in place." (FAC ¶ 39, Ex. D.) Plaintiffs also offer the CTTC's November, 2006, ballot regarding the 2.5% assessment, which passed unanimously and characterized the assessment as a "a percentage of Revenue to be collected by each passenger car rental company." (FAC ¶ 40, Ex. E.)

Plaintiffs also offer alleged actions after January, 2007, as confirmation of an agreement. The CTTC's website stated that the passenger car rental industry assessment "shall be passed through to the customer." (FAC ¶ 41, Ex. H.) On January 16, 2007, an employee of defendant National Car Rental complained to the CTTC that Avis was "not charging the tourism fee" which "makes us look like our rates are higher." (FAC ¶ 41, Ex. I.) In response, the CTTC set an agenda item for its January 25, 2007, Passenger Car Rental Industry Tourism Assessment Meeting entitled "Airport locations not charging the fee – unfair pricing advantage." (FAC ¶ 41, Ex. B.) Furthermore, in January, 2007, average national rental rates fell while those at California airports rose. (FAC ¶ 43.)

In addition to the alleged agreement, Plaintiffs assert that Defendants misrepresent the nature of the CTTC assessment. For example, Defendants have purportedly misled consumers by characterizing these fees as a "Tourist Tax" or "Governmentally Mandated Charges." (FAC ¶ 62.)

///

## IV. Airport Concession Fees

California law defines an "airport concession fee" as "a charge collected by a rental company from a renter that is the renter's proportionate share of the amount paid by the rental company to the owner or operator of an airport for the right or privilege of conducting a vehicle rental business on the airport's premises." Cal. Civ. Code § 1936.01(a)(1). Much like the CTTC assessment, AB 2592 permitted the Rental Car Defendants to "unbundle" any airport concession fee and itemize it separately from the base rental rate. Cal. Civ. Code § 1936.01(b)(2). Government Code § 13995.65(f), which expressly permits an assessed business to pass on the CTTC assessments, does not refer to airport concession fees. This fee has traditionally amounted to just over 9% of the rental fee. (FAC ¶ 37.)

Plaintiffs allege that Defendants' agreement also covered passing on these airport concession fees to consumers. Unlike the CTTC assessments, Plaintiffs do not provide direct documentation of any such agreement. Plaintiffs point to the general context of the legislation and meetings related to the CTTC assessments and the fact that California rental car prices increased by more than 10% in January, 2007, while declining throughout the country. (FAC ¶¶ 43-44.)

## V. CTTC Meeting Practices

The CTTC is subject to the requirements of the Bagley-Keene Open Meeting Act, Cal. Govt. Code § 11120 et seq. See Cal. Gov't Code § 13995.40(q). Plaintiffs assert a variety of Open Meeting Act violations, including: (1) failure to include an Internet address in written meeting notices, as required by Cal. Gov't Code § 11125(a); (2) failure to adequately post notice and agendas on the Internet, as required by Cal. Gov't Code § 11125(a); (3) failure to provide at least ten days notice, as required by Cal. Gov't Code § 11125(a); (4) failure to sufficiently describe agenda topics, as required by Cal. Gov't Code § 11125(b); (5) requiring improper registration and RSVP requirements in violation of Cal. Gov't Code § 11124; (6) meeting in closed session without citing authority that authorizes a closed session, as required by Cal. Gov't Code § 11125(b); and (7) holding teleconference meetings that do not meet

requirements of Cal. Gov't Code § 11123, including public accessibility. Plaintiff offers specific examples of each alleged violation, all related to meetings from August through December, 2007. (See FAC ¶¶ 66-84.)

## Discussion

### I.  Motion to Dismiss - Legal Standard

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits dismissal of a claim either where that claim lacks a cognizable legal theory, or where insufficient facts are alleged to support plaintiff's theory. See Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir. 1990). In resolving a Rule 12(b)(6) motion, the court construes the complaint in the light most favorable to the plaintiff and accepts all well-pleaded factual allegations as true. See Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337–38 (9th Cir. 1996).

The Supreme Court recently addressed the question of "what a plaintiff must plead in order to state a claim under § 1 of the Sherman Act." Bell Atlantic Corp. v. Twombly, ___ U.S. ___, 127 S.Ct. 1955, 1964 (2007). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 1964-1965. "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id. at 1965. Applying "these general standards" to a claim under the Sherman Act, the Supreme Court held that stating a claim under section 1 of that Act "requires a complaint with enough factual matter (taken as true) to suggest that an agreement was made." Id. "[A]n allegation of parallel conduct and a bare assertion of conspiracy will not suffice." Id. at 1966.

### II.  The Price-Fixing Claim

Section 1 of the Sherman Act prohibits a "contract, combination . . . , or conspiracy, in restraint of trade or commerce." 15 U.S.C. § 1. "The crucial question is whether the challenged anticompetitive conduct stems from independent decision or

from an agreement." <u>Twombly</u>, 127 S.Ct. at 1964.  To state a section 1 claim, a plaintiff "must plead not just ultimate facts (such as a conspiracy), but evidentiary facts which, if true, will prove: (1) a contract, combination or conspiracy among two or more persons or distinct business entities; (2) by which the persons or entities intended to harm or restrain trade or commerce . . . ; (3) which actually injures competition." <u>Kendall v. Visa U.S.A., Inc.</u>, 518 F.3d 1042, 1047 (9th Cir. 2008).  Courts have imposed these pleading standards "because discovery in antitrust cases frequently causes substantial expenditures and gives the plaintiff the opportunity to extort large settlements even where he does not have much of a case."  <u>Id.</u> at 1047 (citing <u>Twombly</u>, 127 S.Ct. at 1966-67.)

**A.   Whether Plaintiffs Adequately Plead a Contract, Combination, or Conspiracy in Restraint of Trade or Commerce**

The Court dismissed the original complaint, concluding that Plaintiffs had merely alleged parallel conduct insufficient to overcome the <u>Twombly</u> pleading threshold. (<u>See</u> Order Granting Defs.' Mot. Dismiss, Doc. No. 84 at 6-9.) Plaintiffs' amendments have cured the Court's concern, at least as it relates to the CTTC assessments. Plaintiffs attach a written agreement between the CTTC and the Rental Car Defendants to set the assessment rates. (FAC Ex. A.) This document does not, on its face, indicate that the Rental Car Defendants would pass on the assessments to consumers. (<u>See</u> <u>id.</u>) The amended allegations go further, however, and viewed in a light most favorable to Plaintiffs, they include multiple documented references to an agreement to pass on the CTTC assessments. CTTC meeting minutes from October, 2006, state that "the rental car industry would like to start passing on the fees beginning January 1, 2007." (FAC ¶ 40, Ex. F.) CTTC's own counsel recalled that "everyone agreed to continue the funding as long as the pass-through was in place." (FAC ¶ 39, Ex. D.) The CTTC's website states that the passenger car rental industry assessment "shall be passed through to the customer." (FAC ¶ 41, Ex. H.) Documents related to the January 25, 2007, meeting indicate that one rental car company challenged another for not charging these fees. (FAC ¶ 41, Exs. B, I.) Viewed under the standards of a

motion to dismiss, this supports the existence of an agreement to pass on the fees, not merely to pay fees to the CTTC. Plaintiffs identify specific meeting dates and individuals involved in the alleged agreement. (E.g., FAC ¶ 39.) Furthermore, average national rental rates fell while those at California airports rose. (FAC ¶ 43.) The amended allegations make it at least "plausible" that there was an agreement to pass on the assessments to consumers. See Twombly, 127 S.Ct. at 1965.[2]

The allegations related to the airport concession fees are weaker. Here, the Plaintiffs rely on the circumstances surrounding AB 2592 and the rate increases of early January, 2007. On its own, these allegations would not overcome the original Complaint's flaw of alleging mere parallel conduct. See Twombly, 127 S.Ct. at 1965. Nevertheless, since Plaintiffs have offered sufficient allegations of an agreement to pass on the CTTC assessment fees, this is not fatal to their claim. Plaintiffs have made allegations sufficient to go forward, and the cost avoidance purposes of Twombly would not be served in any significant way by precluding only part of Plaintiffs' theory. See id. at 1965-67; Cont'l Ore Co. v. Union Carbide & Carbon Co., 370 U.S. 690, 699 (1962) ("The character an effect of a [Sherman Act] conspiracy are not to be judged by dismembering it and viewing its separate parts."); Vinci v. Waste Mgmt., Inc., 80 F.3d 1372, 1374 (9th Cir. 1996) ("[S]ubstantive allegations of conspiratorial antitrust behavior should be considered as a whole.").

The parties' arguments focus on the existence of a conspiracy, and Defendants have not challenged other elements of the antitrust claim at this time. The Court concludes that Plaintiffs have adequately pled the remaining elements of a section 1 claim, including intent and injury to competition. See FTC v. Ticor Title Ins. Co., 504 U.S. 621, 639 (1992) ("No antitrust offense is more pernicious than price fixing.").

///

---

[2]In reaching this conclusion, the Court does not rely on the CTTC assessment ballot which characterized the assessment as a "a percentage of Revenue to be collected by each passenger car rental company." (FAC ¶ 40, Ex. E.) The "collected by" language is consistent with the statutory description of the commission's assessment and thus does not indicate any intent to pass on fees. See Cal. Civil Code § 1936.01(a)(3).

**B.     The CTTC's Immunity Arguments**

**1.     Applicability of the <u>Midcal</u> Test**

The CTTC invokes the state action immunity doctrine, as set forth in <u>Parker v. Brown</u>, 317 U.S. 341, 350-51 (1943), and subsequent cases. <u>Parker</u> observed that the Sherman Act did not intend to restrain state action. <u>Id.</u> ("We find nothing in the language of the Sherman Act or in its history which suggests that its purpose was to restrain a state or its officers or agents from activities directed by its legislature.").

The parties dispute how the Court should apply the <u>Parker</u> immunity doctrine to the present situation, particularly as it relates to the test articulated in the Supreme Court's <u>Midcal</u> case. There, the Court identified a two-prong test to determine when there is sufficient state involvement to apply <u>Parker</u> immunity to a non-sovereign entity. "First, the challenged restraint must be 'one clearly articulated and affirmatively expressed as state policy;' second, the policy must be 'actively supervised' by the State itself." <u>Cal. Retail Liquor Dealers Ass'n v. Midcal Aluminum, Inc.</u>, 445 U.S. 97, 105 (1980) (quoting <u>City of Lafayette v. Louisiana Power & Light Co.</u>, 435 U.S. 389, 410 (1978) (opinion of Brennan, J.)); see <u>Hass v. Oregon State Bar</u>, 883 F.2d 1453, 1457 (9th Cir. 1989) (explaining that the <u>Midcal</u> standard governs whether immunity is available to "non-sovereign entities"). The active supervision prong, however, does not apply to municipalities. See <u>Town of Hallie v. City of Eau Claire</u>, 471 U.S. 34, 45-46 & n.10 (1985). Under Ninth Circuit law, a state's political subdivisions and state agencies are also exempt from the supervision prong. <u>Hass</u>, 883 F.2d at 1459-61; <u>see also</u> <u>Town of Hallie</u>, 471 U.S. at 46 n.10 ("In cases in which the actor is a state agency, it is likely that active state supervision would also not be required, although we do not here decide that issue.") The CTTC argues that it is a "political subdivision" to which <u>Midcal</u> does not apply, while Plaintiffs argue that both prongs of <u>Midcal</u> apply.

The court in <u>Hass</u> did not, as the CTTC states, hold that the Oregon State Bar is a "political subdivision." The Ninth Circuit extended the approach of <u>Town of Hallie</u> to state agencies, but it did not characterize the Oregon State Bar as a political subdivision. <u>Hass</u>, 883 F.2d at 1459-61. Though the Ninth Circuit may treat political

- 11 -                                                      07cv2174

subdivisions and state agencies alike for purposes of <u>Parker</u> immunity, the Ninth Circuit did not completely conflate the two types of entities. A "political subdivision" refers to an entity like a municipality, while the CTTC is more akin to a state agency. <u>See</u>, <u>e.g.</u>, <u>id.</u> at 1464-65 (characterizing "branches of state government" and "political subdivisions" as separate types of entities). Indeed, the <u>Hass</u> opinion does not expressly refer to any type of political subdivision other than a municipality. The CTTC's "political subdivision" approach relies heavily on case law from other Circuits, which the Court declines to apply here. Nevertheless, the Court reaches the CTTC's desired conclusion.

The Court concludes that, much like the Oregon State Bar in <u>Hass</u>, the CTTC was a state agency acting in a non-sovereign capacity which must therefore meet the first prong of the <u>Midcal</u> test, but not the second. In <u>Hass</u>, the Ninth Circuit applied the general <u>Midcal</u> framework, concluding that a mandatory malpractice insurance program established by the Oregon State Bar was not "imposed directly by either the Oregon legislature or the Oregon Supreme Court acting in a legislative capacity" and was therefore "not an act of the state in its sovereign capacity." <u>See</u> <u>Hass</u>, 883 F.2d at 1456. Similarly, passing on assessments and airport concession fees is permitted by the California legislature, but this was not an act directly imposed in the state's sovereign capacity.

In <u>Hass</u>, the Ninth Circuit concluded that the Oregon State Bar was a state agency that needed to meet only the first prong of the <u>Midcal</u> test. <u>See</u> <u>id.</u> at 1459-61. The Court reaches a similar conclusion here. For example, the Ninth Circuit observed that "the Oregon legislature has expressly designated the Bar as the instrumentality through which the legislature will implement its policies concerning primary legal malpractice insurance." <u>Id.</u> at 1461. Similarly, the CTTC is the instrumentality which implements the State's policies of fostering increased advertising for tourism. Also, like the Oregon State Bar, the CTTC is a public corporation required to give notice of

its meetings and open them to the public.[3] Id. at 1460.

## 2. First Prong of the Midcal Test

"Where, as here, the challenged activity 'is not directly that of the [state] legislature or supreme court, but is carried out by others pursuant to state authorization,' the court must closely analyze the activity to 'ensure that the anticompetitive conduct of the State's representative was contemplated by the State.'" Hass, 883 F.2d at 1457 (quoting Hoover v. Ronwin, 466 U.S. 558, 568 (1984)). The Court concludes that there was a "clearly articulated and affirmatively expressed" state policy allowing the Rental Car Defendants to agree to pass on fees to consumers. Midcal, 455 U.S. at 105.

In many respects, the relevant legislation is not in dispute. The parties agree that one clear purpose of AB 2592 was to increase the CTTC's budget while simultaneously relieving a burden on the state general fund. See, e.g., Cal. Gov't Code § 13995.92(a) (requiring passenger car rental industry to set sufficient assessment rates, which serve as a trigger for certain other provisions of the bill). The parties also agree that the legislature provided the rental car industry with certain benefits, including the ability to list base rental rates and other fees separately. See Cal. Civ. Code § 1936.01(b)(2). Furthermore, the legislature has allowed rental car companies to pass on the assessments to consumers, even before AB 2592. See Cal. Gov't Code § 13995.65(f).[4]

Thus, there is no significant dispute that AB 2592 and related legislation clearly articulate and affirmatively express policies of: (1) increasing the CTTC's budget for promoting tourism, (2) relieving a burden on the state general fund, (3) collecting increased assessments from rental car companies, and (4) giving the rental car companies certain concessions in exchange for fostering these goals, including the

---

[3]Though the parties dispute whether the CTTC complied with the Bagley-Keene Act requirements, there is no dispute that the legislature requires the CTTC to comply with it. See Cal. Gov't Code § 13995.40(q).

[4]This authorization was part of the original CTMA and not added in connection with AB 2592. See 1995 Cal. Legis. Serv. c. 871 § 5 (creating original corresponding CTMA provision at Cal. Gov't Code § 15372.105(f)); 2003 Cal. Legis. Serv. c. 229 §§ 1.5 (recodifying as Cal. Gov't Code § 13995.65(f)).

ability to list fees separately when billing consumers. The central issue is whether the State expressed a sufficiently clear policy allowing the CTTC to facilitate a rental car industry agreement to raise prices and pass on fees to consumers. The Court concludes that the CTTC meets the first prong of the Midcal test on this issue.

Regarding the first prong, the Supreme Court stated: "We have rejected the contention that this requirement can be met only if the delegating statute explicitly permits the displacement of competition. It is enough, we have held, if suppression of competition is the 'foreseeable result' of what the statute authorizes." City of Columbia v. Omni Outdoor Advertising, Inc., 499 U.S. 365, 372-73 (1991) (citation omitted); see also Town of Hallie v. City of Eau Claire, 471 U.S. 34, 41-44 (1985) (finding a sufficiently clear state policy allowing municipalities to displace competition in sewage services, where anticompetitive effects were foreseeable but not expressly authorized). The existence of an agreement does not change this analysis. There is no "conspiracy exception" to Parker immunity. See City of Columbia at 374-75. (observing, for example, that "[s]ince it is both inevitable and desirable that public officials often agree to do what one or another group of private citizens urges upon them, such an exception would virtually swallow up the Parker rule.") It is not practical to expect the legislature to expressly articulate every foreseeable effect of its policies. See Town of Hallie, 471 U.S. at 43-44.

AB 2592 reflects a clear purpose of fostering California tourism advertising through increased fees, and an agreement to pass on these fees was a foreseeable result of the legislation. There would have been little reason for the rental car industry to propose the amendments to AB 2592 if they would be unable to recoup the cost of increasing the CTTC's budget. The legislature has explicitly granted immunity from state antitrust laws to those complying with the CTMA. Cal. Gov't Code § 13995.90. Since passing the original CTMA, California has allowed rental car companies the option of passing on the CTTC assessments. See Cal. Gov't Code § 13995.65(f). Plaintiffs' own counsel flagged the possibility of increased rates for the legislature, and it adopted the bill nevertheless. (See Letter of Robert C. Fellmeth to Assemblyman

Mark Leno, August 23, 2006.)  Furthermore, the legislature defined both "airport concession fee" and "tourism commission assessment" as charges "collected by a rental company from a renter," suggesting that companies could pass on these fees for collection from consumers.  See Cal. Civil Code § 1936.01(a)(1), (3).

The CTTC meets the first prong of the Midcal test, and it does not need to meet the second.  Therefore, the Court concludes that the CTTC is immune from any federal antitrust liability under the alleged facts.  The Court grants the CTTC's motion as it relates to the federal antitrust claim.  The Rental Car Defendants did not raise federal immunity arguments, so this conclusion applies only to the CTTC.

### III. Plaintiffs' State Law Claims

#### A. Immunity From UCL and CLRA Liability

Both the CTTC and Rental Car Defendants argue that they are immune from liability under the California competition laws.  California Government Code § 13995.90 states:

> In any civil or criminal action or proceeding for violation of any of the following, proof that the act that is complained of was done in compliance with the provisions of this chapter is a complete defense to the action or proceeding:
>
> (a) The Cartwright Act, Chapter 2 (commencing with Section 16700) of Part 2 of Division 7 of the Business and Professions Code.
>
> (b) The Unfair Practices Act, Chapter 4 (commencing with Section 17000) of Part 2 of Division 7 of the Business and Professions Code.
>
> (c) Any rule of statutory or common law against monopolies or combinations in restraint of trade.

The Court may consider an affirmative defense on a Rule 12(b)(6) motion to dismiss where the defense does not raise disputed issues of fact, though such defenses must normally be raised in a responsive pleading.  See, e.g., Scott v. Kuhlmann, 746 F.2d 1377, 1378 (9th Cir. 1984).  Here, Defendants' motion argues that they are immune from liability, even under the facts alleged, so the Court may consider this defense.

As a preliminary matter, the Court must decide whether the CTMA's immunity provision extends to the UCL and CLRA allegations.  Government Code § 13995.90 provides express immunity from the Unfair Practices Act, but not the UCL or CLRA.

"The unfair competition law is independent of the Unfair Practices Act and other laws. Its remedies are 'cumulative . . . to the remedies or penalties available under all other laws of this state' (§ 17205), but its sanctions are less severe than those of the Unfair Practices Act." Cel-Tech Communications, Inc. v. Los Angeles Cellular Tel. Co., 20 Cal. 4th 163, 179 (1999). The UCL's prohibitions cover a broader, more flexibly defined range of activities, though its sanctions are less severe than the Unfair Practices Act. See id. at 180-81.

Nevertheless, a plaintiff may not use the UCL to "plead around" a grant of legislative immunity. See id. at 182-191 (concluding that actions falling within a safe harbor of the Unfair Practices Act cannot create liability under the UCL). "To forestall an action under the unfair competition law, another provision must actually 'bar' the action or clearly permit the conduct." Id. at 183.

As with the antitrust claim, the Court concludes that the CTMA and AB 2592 reflect the legislature's intention to permit the rental car companies to increase prices and pass on fees in order to support the CTTC's tourism advertising program. Therefore, the alleged actions were "done in compliance" with the statutes, for purposes of section 13995.90 immunity. Allowing Plaintiffs to plead around this safe harbor provision via the UCL would frustrate the legislature's purpose of facilitating increased fees to promote tourism. Cf. id. at 182-191.[5]

The fact that some of the allegations involve misrepresentations rather than "unfair competition" does not require a different result. Characterization of the fees as "mandatory," a "tax," or similar language is largely consistent with the legislature's approach. The CTMA defines the fees at issue as charges "collected by a rental company from a renter." Cal. Civil Code § 1936.01(a)(1), (3). While the characterization of the charges as a "tax" is not perfectly accurate, it captures the character of this statutory scheme, which allows the rental car companies to pass on

---

[5]The Court is unaware of any case law directly addressing the immunity provision of 13995.90 and concludes that Cel-Tech provides the best available guidance on whether section 13995.90 should provide any protection from the claims presented here.

1  fees to consumers and implicitly encourages them to do so.  These representations,
2  made in furtherance of collecting fees authorized by the state, were "done in
3  compliance" with the CTMA for purposes of section 13995.90 immunity.  The
4  rationale preventing a plaintiff from pleading around a statutory safe harbor via the
5  UCL applies to the closely related provisions of the CLRA.  In any case, the Court
6  would similarly conclude that these statements are not likely to mislead consumers and
7  therefore not proscribed by the CLRA or the "fraudulent" prong of the UCL.  See, e.g.,
8  Kasky v. Nike, Inc. 27 Cal. 4th 939, 951 (2002) (fraudulent prong of UCL prohibits
9  representations likely to mislead consumers).

10  In summary, the Court concludes that the UCL and CLRA claims are barred by
11  immunity and grants Defendants' motions to dismiss as they relate to the these claims.

### B.  Supplemental Jurisdiction and the Bagley-Keene Act Claim

13  Having dismissed the only federal claim against the CTTC, the court declines to
14  exercise supplemental jurisdiction over the Bagley-Keene Act claim, in accordance
15  with 28 U.S.C. § 1367(c).  The Court also notes that the Bagley-Keene Open Meeting
16  Act may implicate questions better addressed by the California courts in the first
17  instance.  See, e.g., S. California Edison Co. v. Lynch, 307 F.3d 794, 813-15 (9th Cir.
18  2002) (certifying a Bagley-Keene Act issue to the California Supreme Court.).  The
19  Court grants the CTTC's motion to dismiss as it relates to the Bagley-Keene Act claim.

### IV.  Plaintiffs' Request for Judicial Notice

21  Plaintiffs ask the Court to take judicial notice of two documents related to the
22  legislative history of AB 2592: (1) a letter from a lobbyist for Alamo, Avis, Budget,
23  Hertz, and National Rental Cars, sent August 28, 2006; and (2) the Legislative Analysis
24  of AB 2592 dated August 29, 2006.  The Court concludes that these are matters of
25  public record suitable for judicial notice, and the Court grants Plaintiffs' request.
26  / / /
27  / / /
28  / / /

## Conclusion

For the reasons set forth above, the Court GRANTS the CTTC's motion and dismisses all claims as they relate to the CTTC. Furthermore, the Court GRANTS IN PART AND DENIES IN PART the Rental Car Defendants' motion to dismiss. In regards to the Rental Car Defendants, the Court dismisses the state law claims but does not dismiss the federal antitrust claim. The Rental Car Defendants may file an answer to the remaining claim within 30 days of the date this order is filed.

IT IS SO ORDERED.

Dated: July 24, 2008

_____
MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT

COPIES TO:
All parties of record.