CENTER FOR PUBLIC INTEREST LAW
UNIVERSITY OF SAN DIEGO SCHOOL OF LAW
ROBERT C. FELLMETH (49897)
cpil@sandiego.edu
ED HOWARD (151936)
JULIANNE D'ANGELO FELLMETH (109288)
5998 Alcala Park
San Diego, CA  92110
Telephone:      (619) 260-4806
Facsimile:       (619) 260-4753

SULLIVAN HILL LEWIN REZ & ENGEL
A Professional Law Corporation
DONALD G. REZ (82615)
rez@shlaw.com
550 West C Street, Suite 1500
San Diego, CA  92101
Telephone:      (619) 233-4100
Facsimile:       (619) 231-4372

HULETT HARPER STEWART LLP
DENNIS STEWART (99152)
dstewart@hulettharper.com
525 B Street, Suite 760
San Diego, CA  92101
Telephone:      (619) 338-1133
Facsimile:       (619) 338-1139

Attorneys for Plaintiff
[Additional Counsel on Signature Page]

## IN THE UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL SHAMES; GARY GRAMKOW, on behalf of themselves and on behalf of all persons similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>THE HERTZ CORPORATION, et al.,<br><br>Defendants. | Case No. 07cv2174-MMA(WMc)<br><br>**CLASS ACTION**<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT, CERTIFICATION OF SETTLEMENT CLASS, APPOINTMENT OF CLASS REPRESENTATIVE AND CLASS COUNSEL AND APPROVAL OF FORM AND MANNER OF GIVING NOTICE TO CLASS MEMBERS**<br><br>DATE:       June 4, 2012<br>TIME:        2:30 p.m.<br>JUDGE:      Honorable Michael M. Anello<br>CTRM:       5 |

1

# TABLE OF CONTENTS

I.      INTRODUCTION .................................................................................................... 1

II.     FACTUAL AND PROCEDURAL BACKGROUND ......................................... 2

        A.      Allegations ................................................................................................ 2

        B.      Discovery and Proceedings Before the District and Appeals Courts ..................... 3

        C.      Settlement Negotiations ........................................................................... 4

        D.      The Proposed Settlement .......................................................................... 5

        E.      Other Facts Relevant to Granting of Preliminary Approval .................... 6

        F.      The Present Motion ................................................................................... 7

III.    THE SETTLEMENT SHOULD BE PRELIMINARILY APPROVED ............. 8

        A.      The Proposed Settlement Provides the Class with Substantial
                and Valuable Consideration ..................................................................... 10

        B.      The Proposed Settlement was the Product of Extensive Arms-
                Length Mediation and Negotiation ......................................................... 10

        C.      The Proposed Settlement Took Place in the Light of Substantial
                Litigation and Extensive Discovery ......................................................... 11

        D.      The Litigation, Mediation and Settlement Negotiations Were
                Conducted by Experienced and Committed Counsel ............................. 11

IV.     THE SETTLEMENT CLASS SHOULD BE CERTIFIED ................................ 12

        A.      The Class is so Numerous that Joinder is Impracticable ........................ 13

        B.      There Are Questions of Law or Fact Common to the Class .................... 14

        C.      The Claims or Defenses of the Representative Parties Are
                Typical of the Claims or Defenses of the Class ...................................... 15

        D.      The Representative Party Will Fairly and Adequately Protect
                the Interests of the Class ......................................................................... 16

        E.      The Rule 23(b)(3) Requirements Are Satisfied ....................................... 17

                1.      Common Questions of Law and Fact Predominate ...................... 17

                2.      A Class Action is Superior to Other Available Methods
                        for Fairly and Efficiently Adjudicating the Controversy ............ 19

        F.      The Court Should Appoint Hulett Harper Stewart and the
                Sullivan Hill firm as Plaintiff's Settlement Class Counsel .................... 20

V.      THE PROPOSED NOTICE TO CLASS MEMBERS ...................................... 21

i

VI.     CONCLUSION ............................................................................................................23

ii

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Amchem Products, Inc. v. Windsor*,
    521 U.S. 591 (1997) .......................................................................................... 18

*Armstrong v. Board of Sch. Dir.*,
    616 F.2d 305 (S.D. Cal. 2009) ........................................................................... 8

*Bellows v. NCO Fin. Sys., Inc.*,
    3:07-CV-01413-W-AJB, 2008 WL 5458986 (S.D. Cal. Dec. 10, 2008) .............. 11

*Bogosian v. Gulf Oil Corp.*,
    561 F.2d 434 (3d Cir. 1977) .............................................................................. 19

*Churchill Village, L.L.C. v. General Elec.*,
    361 F.3d 566 (9th Cir. 2004) .............................................................................. 9

*Coleman v. Cannon Oil Co.*,
    141 F.R.D. 516 (M.D. Ala. 1992) ...................................................................... 20

*Estate of Garrison v. Warner Bros., Inc.*,
    No. CV 95-8328, 1996 WL 407849 (C.D. Cal. June 25, 1996) ....................... 15, 18

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1988) ..................................................................... *passim*

*Howard Hess Dental Labs, Inc. v. Dentsply Int'l, Inc.*,
    424 F.3d 363 (3d Cir. 2005) ............................................................................... 7

*In re Carbon Dioxide Antitrust Litig.*,
    149 F.R.D. 229 (M.D. Fla. 1993) ...................................................................... 20

*In re Catfish Antitrust Litig.*,
    826 F. Supp. 1019 (N.D. Miss. 1993) ("*Catfish*") ...................................... 15, 18, 20

*In re Citric Acid Antitrust Litig.*,
    No. 95-1092, 1996 WL 655791 (N.D. Cal. Oct. 2, 1996) ............................... 15, 18

*In re Commercial Tissue Prods.*,
    183 F.R.D. 589 (N.D. Fla. 1998) ...................................................................... 20

*In re Corrugated Container Antitrust Litig.*,
    80 F.R.D. 244 (S.D. Tex. 1978) ..................................................................... 18, 19

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*,
    No. M-02-1486PJH, 2006 WL 1530166 (N.D. Cal. June 5, 2006) .................. 14, 15

iii

*In re Flat Glass Antitrust Litig.*,
  191 F.R.D. 472 (W.D. Pa. 1999) ........................................................................................ 15, 18

*In re Folding Carton Antitrust Litig.*,
  75 F.R.D. 727 (N.D. Ill. 1977) ................................................................................................. 18

*In re Integra Realty Resources, Inc.*,
  262 F.3d 1089 (10th Cir. 2001) ............................................................................................... 21

*In re Lease Oil Antitrust Litig.(No. II)*,
  186 F.R.D. 403 (S.D. Tex. 1999) ............................................................................................ 20

*In re Linerboard Antitrust Litig.*,
  305 F.3d 145 (3rd Cir. 2002) ................................................................................................... 19

*In re M.L. Stern Overtime Litig.*,
  Case No. 07-cv-0118-BTM, 2009 WL 995864 (C.D. Cal. Apr. 13, 2009) ............................. 8

*In re NASDAQ Market-Makers Antitrust Litig.*,
  169 F.R.D. 493 (S.D.N.Y. 1996) ............................................................................................ 20

*In re Prudential Ins. Co. Am. Sales Prac. Litig.*,
  148 F.3d 283 (3d. Cir. 1998) ................................................................................................... 21

*In re Rubber Chemicals Antitrust Litig.*,
  232 F.R.D. 346 (N.D. Cal. 2005) ...................................................................................... 13, 18

*In re Sugar Industry Antitrust Litig.*,
  MDL No. 201, 1976 WL 1374 (N.D. Cal. May 21, 1976) ..................................................... 18

*In re Tableware Antitrust Litig.*,
  484 F. Supp. 2d 1078 (N.D. Cal. 2007) ................................................................................... 9

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
  267 F.R.D. 291 (N.D. Cal. 2010) ...................................................................................... 14, 19

*In re Universal Serv. Fund Telephone Billing Practices Litig.*,
  219 F.R.D. 661 (D. Kan. 2004) ............................................................................................... 15

*In re Visa Check/Master Money Antitrust Litig.*,
  280 F.3d 124 (2d Cir. 2001) .................................................................................................... 17

*In re Vitamins Antitrust Litig.*,
  No. 99-197(TFH), 1999 WL 1335318 (D.D.C. Nov. 23, 1999) ............................................... 9

*In re Wireless Facilities, Inc. Sec. Litig. II*,
  253 F.R.D. 607 (S.D. Cal. 2008) ............................................................................................ 12

*Lerwill v. Inflight Motion Pictures, Inc.*,
  582 F.2d 507 (C.D. Cal. 1978) ............................................................................................... 20

iv

*Nat'l Rural Telcomms. Coop. v. DIRECTV, Inc.*,
  221 F.R.D. 523 (C.D. Cal. 2004) ......................................................................... 11, 12

*Rutter & Wilbanks Corp. v. Shell Oil Co.*,
  314 F.3d 1180 (10th Cir. 2002) .............................................................................. 11

*Schreiber v. Nat'l Collegiate Ass'n*,
  167 F.R.D. 169 (1996) ............................................................................................ 18

*Stambaugh v. Kansas Dept. of Corrections*,
  151 F.R.D. 664 (D. Kan. 1993) ............................................................................... 13

*Staton v. Boeing Co.*,
  327 F. 3d 938 (9th Cir. 2003) .................................................................................. 16

*Van Bronkhorst v. Safeco Corp.*,
  529 F.2d 943 (9th Cir. 1976) .................................................................................... 9

*Wellman v. Dickinson*,
  497 F. Supp. 824 (S.D.N.Y. 1980) ........................................................................... 9

*Wilkerson v. Martin Marietta Corp.*,
  171 F.R.D. 273 (D. Colo. 1997) .............................................................................. 11

*Yamada v. Nobel Bidcare Holding AG*,
  275 F.R.D. 573 (C.D. Cal. 2011) ............................................................................ 14

*Zapata v. IBP, Inc.*,
  167 F.R.D. 147 (D. Kan. 1996) ............................................................................... 17

**S**TATUTES, **R**ULES & **R**EGULATIONS

15 U.S.C.
  § 1 ....................................................................................................................... 2, 14, 15

Federal Rule of Civil Procedure
  Rule 23 ............................................................................................................... 1, 23
  Rule 23(a) ................................................................................................. 12, 13, 14, 17
  Rule 23(a)(1) ........................................................................................................... 13
  Rule 23(a)(2) ..................................................................................................... 14, 15
  Rule 23(a)(4) ........................................................................................................... 16
  Rule 23(b) ......................................................................................................... 13, 17
  Rule 23(b)(3) ..................................................................................................... *passim*
  Rule 23(c)(1)(B) ...................................................................................................... 20
  Rule 23(c)(2)(B) ................................................................................................. 21, 22
  Rule 23(e) ....................................................................................................... 8, 21, 22
  Rule 23(e)(1) ........................................................................................................... 22
  Rule 23(g) ............................................................................................................... 20

v

Rule 23(g)(1)(A) ................................................................................................ 20

Rule 30(b)(6) ...................................................................................................... 4

**S**ECONDARY **A**UTHORITIES

4 H.B. Newberg & A. Conte (4th ed. 1992)

*Newberg on Class Actions* § 11.41 .................................................................. 12

5 James Wm. Moore, et al. (3d ed. 2012)

*Moore's Federal Practice − Civil* ¶ 23.102[3][a-c] .......................................... 22

*Moore's Federal Practice − Civil* ¶ 23.165[2] ................................................ 9

Antitrust Law (6th ed. 2007)

*Antitrust Law Developments*, Vol. I ................................................................... 7

## I.        INTRODUCTION

Plaintiff, on behalf of a proposed class of car renters at California airport locations during the period from January 1, 2007 through November 14, 2007 inclusive,[1] has entered into a Settlement Agreement ("Settlement") with all Defendants, *i.e.*, the Hertz Corporation ("Hertz"), Avis Budget Group, Inc. ("Avis"), Dollar Thrifty Automotive Group, Inc. ("DTAG"), Vanguard Car Rental Inc. d/b/a Alamo Rent-a-Car and National Rent-a-Car ("Vanguard"), Enterprise Rent-a-Car Company ("Enterprise"), Fox Rent-a-Car, Inc. ("Fox") (collectively referred to herein as the "Rental Car Defendants" or "RCDs"), and the California Travel and Tourism Commission ("CTTC").  In the judgment of Plaintiff and his counsel, the proposed settlement is an excellent one that easily meets the standard for approval of being fair, reasonable, and adequate.

With this motion, Plaintiff initiates the two-step settlement approval process contemplated by Federal Rule of Civil Procedure Rule 23.  In this first step, the Court preliminarily determines whether the proposed settlement is in the range of what it might finally approve (reserving final decision for the Final Approval hearing), whether the certification of the proposed settlement class is appropriate and sets the protocol and schedule for noticing the proposed settlement to the settlement class, allowing class members the opportunity to opt out of the class or object to the settlement if they choose, and for conducting a Final Approval hearing.  Accordingly, by this motion, Plaintiff seeks an order: (i) granting preliminary approval of the settlement agreement Plaintiff has executed on behalf of the proposed settlement class; (ii) certifying the proposed Settlement Class; (iii) approving the manner and forms for giving notice of the proposed Settlement

---

[1] The proposed settlement class is defined as follows: "All Persons (other than those Persons who timely and validly request exclusion from the Class) who rented a car directly from a Rental Car Defendant for pick-up at a California Airport Location during the period from January 1, 2007 through November 14, 2007, inclusive, and were charged and paid to the Rental Car Defendant an Airport Concession Fee and/or Tourism Commission Assessment Fee for that rental car as a separate line item(s) on their invoices. Excluded from the Class are: (i) rentals made pursuant to a pre-existing agreement between a business or governmental entity and a Rental Car Defendant pursuant to which the rental charge was determined; and (ii) rentals in which the customer paid a package price to a third party tour operator or on-line booking agency rather than a Rental Car Defendant.  Also excluded from the Class are the Defendants, the directors, officers, subsidiaries, and affiliates of Defendants, any person, firm, trust, corporation, officer, director or other individual or entity in which any Defendant has a controlling interest, and the legal representatives, affiliates, heirs, successors-in-interest or assigns of any such excluded person, Related Parties as well as any judges or mediators involved in the Litigation (including the Hon. Michael M. Anello, Magistrate Judge McCurine, and the Hon. Ronald Sabraw (ret.))."

1

1  Agreement to Class members; and (iv) establishing the timetable set forth herein for dissemination

2  of notice, opt-out, objection and final approval proceedings.

3  **II.      FACTUAL AND PROCEDURAL BACKGROUND**

4  **A.      Allegations**

5      The operative First Amended Complaint, which was filed on May 1, 2008 and upheld on

6  July 24, 2008 against Defendants' motion to dismiss, alleges a violation of Section 1 of the

7  Sherman Antitrust Act and violations of California's Bagley-Keene Open Meeting Act.  *See, e.g.*,

8  First Amended Complaint ("FAC") ¶¶ 49-55; 65-84.  Defendants are car rental companies that

9  operated at California airports during the class period, and the California Travel and Tourism

10 Commission ("CTTC").  Plaintiff and the members of the proposed Settlement Class are leisure

11 renters that rented cars from the Rental Car Defendants at airport locations operated directly by

12 the Defendants.  Plaintiff alleges a conspiracy, facilitated through the CTTC, to inflate rental

13 prices through an agreement to all quote and uniformly charge as separate line items on their

14 invoices two fees, a newly created Tourism Commission Assessment fee ("TCA fee") (effective

15 January 1, 2007) and the pre-existing Airport Concession Fee ("ACF").  Plaintiff alleges that, as a

16 result, he and the similarly situated renters in the proposed settlement Class paid a higher total

17 price for the rental of a car at California airports than they would have absent the Defendants'

18 conspiracy.  *See, e.g.*, FAC ¶¶ 45-48.  Plaintiff seeks damages, on behalf of himself and the Class.

19      Plaintiff also alleges that the conspiracy to raise prices was facilitated by the California

20 Travel and Tourism Commission which, he alleges, provided a forum and means for the Rental Car

21 Defendants to coordinate their actions particularly with respect to the charging of the TCA fee.

22 Finally, Plaintiff alleges that the CTTC engaged in violations of California's Bagley-Keene Open

23 Meeting Act.  Plaintiff seeks damages pursuant to the Sherman Act, 15 U.S.C. § 1 for the alleged

24 price fixing conspiracy and injunctive relief pertaining particularly to the practices of the CTTC.

25      Defendants, throughout the litigation, vigorously denied Plaintiff's allegations of

26 conspiracy and damages.  In particular, they maintained that, at all times, they acted unilaterally

27 and legally with respect to their pricing and in particular with respect to the charging of TCA fees

28 and the ACF.  Defendants further maintained that, even assuming Plaintiff established the alleged

2

1   conspiracy, their otherwise competitive actions on base prices resulted in no provable overall

2   price inflation.  They also asserted various other defenses particularly emphasizing state action

3   immunity and the Noerr-Pennington doctrine, which they contended, barred these claims entirely.

4   **B.      Discovery and Proceedings Before the District and Appeals Courts**

5            At the same time that the Rental Car Defendants filed their second motion to dismiss, the

6   CTTC also moved for dismissal on the grounds that it was immune from suit on all the non-

7   Bagley-Keene Act claims (most notably the antitrust count) under the state action doctrine.[2]   On

8   July 24, 2008, the Court denied the RCDs' motion to dismiss in part and granted the CTTC's

9   motion.  Judgment was entered as to the CTTC, which Plaintiff appealed.  On June 8, 2010 the

10  Court of Appeals for the Ninth Circuit rendered its initial decision affirming the dismissal of, and

11  judgment for, the CTTC on the state action defense. Plaintiff filed a petition for reconsideration

12  and rehearing *en banc* of that decision.  In the interim, all other Defendants filed a Motion for

13  Judgment on the Pleadings based on their state action affirmative defense, relying in part on the

14  Court of Appeals decision upholding the dismissal of the CTTC on the same state action ground.

15  Plaintiff, while continuing to pursue reconsideration or *en banc* review of that decision, cross-

16  moved in this Court for summary judgment in their favor on the RCDs' state action defense.  On

17  November 24, 2010, the Ninth Circuit withdrew its previous opinion and reversed the District

18  Court's dismissal of the CTTC.  The mandate returning jurisdiction to the District Court issued on

19  December 27, 2010.  Defendants withdrew their Motion for Judgment on the Pleadings and, on

20  February 23 2011, the Court denied Plaintiffs' Summary Judgment Motion without prejudice.

21  The CTTC answered the FAC on February 8, 2011.

22           Prior to, and while the appeal of the CTTC dismissal was pending, the RCDs answered

23  the FAC and the parties engaged in extensive discovery and motion practice.  Plaintiff served

24  document demands, multiple sets of interrogatories, and requests for admission on all RCDs and

25  evaluated responses, including the coding, review and analysis in a litigation database of over

26  737,000 pages of documents produced by Defendants and third parties.  Plaintiffs also deposed 27

27

28  [2]   All Defendants had previously moved to dismiss the initial complaint, and that motion was
    granted with leave to amend, followed by the filing of the FAC.

1   fact witnesses and, in the process, marked over 650 deposition exhibits.   Further, the parties

2   engaged in extensive meet and confer negotiations concerning discovery, and when at impasse

3   Plaintiff sought Court intervention with respect to apex depositions, certain categories of

4   documents requested, the Defendants' assertion of privilege with respect to certain documents and

5   the time limits of depositions for individual witnesses that had also been designated to testify on

6   behalf of the corporate Defendants pursuant to Fed. R. Civ. P. 30(b)(6).  Plaintiff also responded

7   to discovery propounded by the Defendants, including the production of documents and privilege

8   logs, and detailed, comprehensive responses to interrogatories.

9        As is evident from this summary, this case was vigorously litigated through extensive

10   motion practice, discovery and appellate proceedings.

11        **C.**      **Settlement Negotiations**

12        On February 9, 2011 the parties engaged in a settlement conference before Magistrate

13   Judge William McCurine, Jr.  Thereafter, on April 13, 25, and 26, 2011, the parties participated in

14   mediation with the Honorable Ronald M. Sabraw (Ret.) of JAMS.   After the April 2011

15   mediation failed to result in an agreement to resolve the matter, the parties engaged in further

16   intensive discovery, and continued settlement negotiations both separately and through Judge

17   Sabraw.  On and after October 17, 2011, the parties reached an agreement in principle to settle the

18   Litigation with all Defendants.  Subsequently, the Settling Parties continued negotiations further,

19   including additional mediation sessions with Judge Sabraw in November and December, 2011,

20   and January, 2012 ultimately resulting in the Stipulation of Settlement attached as Exhibit A to

21   the Joint Declaration of Dennis Stewart and Donald Rez in Support of Plaintiff's Motion for

22   Preliminary Approval of Class Action Settlement, Certification of Settlement Class, Appointment

23   of Class Representatives and Class Counsel and Approval of Form and Manner of Giving Notice

24   to Class Members ("Stewart/Rez Decl."), filed concurrently herewith.

25        In sum, this settlement was achieved through a lengthy process of arms-length

26   negotiations and mediation sessions that took place only after extensive pretrial litigation and

27   discovery.

28

4

### D.      The Proposed Settlement

In return for a release of the Class members' claims, the Rental Car Defendants have agreed to provide alternative cash or voucher consideration to all Class members: Class members who rented for a total of less than eight days during the Class period can elect a voucher for one free day rental (time and mileage) on any class of car up to full size (no matter the class of car(s) the Class member rented during the Class period) and, for those Class members who had total rental days of eight days or more with the same Rental Car Defendant, vouchers for two free day rentals.  Alternatively, Class members may choose to receive cash in the amount of $2.00 per rental day with a minimum payment of $5.00, no matter the length of the rental.

Class members who rented from multiple defendants are entitled to the above consideration from each Defendant from whom they rented.  Defendants' obligations to issue and redeem vouchers and to pay all cash claims are un-capped.  The free day vouchers may be stacked and may be used with most other rate discounts and promotions otherwise available to renters.[3] The vouchers may be used at any company-owned location of the brand on which it is issued, not just in California, but throughout the United States.[4]  They may be used, not only by the Class member, but by anyone in the Class member's household at the same address.

Under the proposed Settlement, Defendants are also required to pay all costs of: 1) the initial Class Notice and a Supplemental (claim reminder) notice to be provided about mid-way through the claims period; 2) all costs of Administration of the settlement and distribution of the benefits proceeds; and 3) the Plaintiff Class counsel's allowed attorneys fees and expenses and a service award, if approved by the Court, to the representative plaintiff who individually litigated this case on behalf of, and for the benefit of, the Class.  This payment of the costs of Notice, Administration and Distribution, attorneys' fees and expenses, and representative plaintiff service award are additional obligations of the Defendants which do not reduce or affect in any way the consideration being provided to the Class.  That consideration, whether the Class member chooses

---

[3] The only exceptions are those discount programs which cannot be processed by the RCD systems along with the free day voucher(s).

[4] Avis and Budget renters may use the vouchers on either brand.

1  free full day voucher(s) or cash, must be provided in the full amount to each Class member with a

2  valid claim, without limit.

3         Making an election between vouchers and cash can be accomplished in multiple ways,

4  most simply by visiting a dedicated Web site managed by the Claims Administrator (which will

5  be identified in the Notice) and completing, on-line, a simple "Election of Benefits" form.  The

6  form, wherever possible, will be pre-populated from the Rental Car Defendants' transaction

7  databases with the Class period rental information of the Class members in the database.  Class

8  members will have the opportunity, again most simply on the claims Web site, to supplement or

9  correct the pre-populated information if they deem the pre-populated data to be erroneous or

10  incomplete.  Class members who do not disagree with the data contained in the Rental Car

11  Defendants' databases have no obligation to submit any documentation in support of their claims;

12  they need only click a box indicating their election to receive either cash or the full free day rental

13  voucher(s).

14         In addition to monetary relief, the CTTC has agreed, with no time limitation, to

15  undertakings assuring future compliance with the Bagley-Keene Act and other measures designed

16  to assure: a) that consumers are correctly informed about the Tourism Commission Assessment

17  and; b) that the CTTC does not facilitate concerted decision making by the Rental Car companies

18  or by any other class of assessed businesses on whether and how much to charge consumers for

19  their respective Tourism Commission Assessment obligations.[5]

20         **E.    Other Facts Relevant to Granting of Preliminary Approval**

21         This litigation, the mediation and the settlement negotiations were conducted by

22  Plaintiff's counsel who are highly experienced in antitrust and class action litigation, a

23  perspective which permits them to assess, under all the relevant circumstances, whether, under all

24  the facts, the proposed Settlement is indeed fair and reasonable and adequate.

25         Plaintiff estimates that the Class consists of approximately four million Class members,

26  and Class rental transactions.  Analysis indicated that per day damages suffered by any given

27  Class member — measured by the amount by which prices were inflated as a result of the alleged

28  _____

[5]  *See* Stewart/Rez Decl., Ex. A, ¶ 3.1-3.2 (Stipulation of Settlement).

conspiracy[6] – were relatively modest.  The value of the free day rental vouchers, while varying among the Defendants, by location, date of rental and car class, is significant.[7]  Whether viewed from the perspective of the vouchers or the per day cash alternative, the Settlement represents a very significant recovery for the Class member relative to the likely amount of provable damages.[8]  In addition to the direct economic benefits to Class members, no part of the costs of Notice, administration, fees or expenses are funded by, or will detract from, the Class's recovery; these are all separate obligations of the Defendants.

### F.    The Present Motion

While Plaintiff believes this to be an excellent settlement for the Class that ultimately will merit the Court's final approval, this motion does not present the ultimate issue of whether the Settlement should be finally approved.  Through this motion, Plaintiff seeks certification of a Settlement Class[9] and procedures for noticing the Class of their rights with respect to the proposed Settlement and the setting of a schedule to accomplish the pertinent opt-out, objection and Final Settlement consideration process.

If preliminary approval is granted, the members of the Class will be notified of the terms of the Settlement through an extensive personal and publication notice program which fully complies with due process and is the best notice practicable and informs them of their rights in connection therewith, including their rights to opt out of the Class, to object to the Settlement and

---

[6]  Damages in a price-fixing case are measured by the amount by which actual prices during the conspiracy exceed those which would have existed "but for" the conspiracy.  *Howard Hess Dental Labs, Inc. v. Dentsply Int'l, Inc.*, 424 F.3d 363, 374 (3d Cir. 2005) ("the standard method of measuring damages in price enhancement cases is overcharge"); ABA Section of Antitrust Law, *Antitrust Law Developments*, Vol. I, at 838 (6th ed. 2007) ("In price fixing cases . . . the measure of damages in a suit by a purchaser normally is the difference between the price the purchaser paid and the price it would have paid absent the violation.").

[7]  The vouchers are redeemable for time and mileage charges for any class of car up to full size ("free rental day").

[8]  For example, a recent internet search found the price of a full size car, one day rental time and mileage (June 7, 2012 to June 8, 2012), out of Los Angeles International Airport ranged from $20.15 to $70.49 per day and out of San Francisco International Airport ranged from $68.81 to $106.99 per day.

[9]  All the requisites for certification of the proposed Settlement Class are met as set forth below.

7

to the related applications and to appear and be heard at the final approval hearing.  The following is the proposed schedule:

| DATE | EVENT |
| --- | --- |
| June 4, 2012 | Hearing on motion for preliminary approval of Settlement; |
| [INSERT] | Mailed and emailed notice sent to class members [within 45 days of entry of order for preliminary approval]; |
| [INSERT] | Publication of summary notice [within 65 days of entry of order for preliminary approval] |
| [INSERT] | Deadline for filing briefs in support of Settlement, etc. [21 days prior to deadline for objections]; |
| [INSERT] | Deadline for objecting to Settlement, plan of allocation, or award of attorneys' fees and expenses to counsel for Plaintiffs; |
| [INSERT] | Deadline for reply briefs in support of Settlement and in response to objections [7 days prior to hearing on final approval]; |
| [INSERT] | Filing of declaration proving mailing and publishing in accordance with order preliminarily approving settlement and providing of notice [7 days prior to hearing on final approval] |
| [INSERT] | Hearing on final approval of Settlement. |

## III.   THE SETTLEMENT SHOULD BE PRELIMINARILY APPROVED

The approval of class action settlements required by Federal Rule of Civil Procedure 23(e) is a two-step process.  The first step, preliminary approval, requires only that the terms of the proposed settlement fall within the "range of possible approval."  *Armstrong v. Board of Sch. Dir.*, 616 F.2d 305, 314 (S.D. Cal. 2009); *accord In re M.L. Stern Overtime Litig.*, Case No. 07-cv-0118-BTM, 2009 WL 995864, at *3 (C.D. Cal. Apr. 13, 2009) (citing *Armstrong*, 305 F.2d at 314).  Granting preliminary approval amounts to a determination that the terms of the proposed settlement warrant consideration by members of the class and a full examination at a final approval hearing.  *Manual for Complex Litigation* (Fourth) § 13.14 (2004).  It is at the second step, final approval (which takes place after preliminary approval and after notice to the class of the settlement and an opportunity to be heard on it has been provided), that there is a full review

8

by the Court as to the fairness of the settlement.  It is at final approval that, if appropriate, the Court makes a finding that a settlement is "'fair, reasonable and adequate.'"  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1988) (citation omitted).

Because preliminary approval is provisional, courts deny preliminary approval only where the proposed settlement has such "'obvious deficiencies'" as to raise doubts about the fairness of the settlement.  *See In re Vitamins Antitrust Litig.*, No. 99-197(TFH), 1999 WL 1335318, at *5 (D.D.C. Nov. 23, 1999) (quoting *Manual for Complex Litigation* (Third) § 30.41 (1999)); *see also In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007) ("'[t]he court may find that the settlement proposal contains some merit, is within the range of reasonableness required for a settlement offer, or is presumptively valid'") (quoting 4 H.B. Newberg & A. Conte, *Newberg on Class Actions* § 11.25 (1992)).  In ruling on a motion for preliminary approval, many courts have:

> established an initial presumption of fairness by conducting a preliminary review of a settlement's terms and considering (1) whether the negotiations occurred at arm's length, (2) whether there was sufficient discovery; (3) whether the parties or their counsel are sufficiently experienced in similar litigation to be able to accurately assess what is and is not a reasonable settlement, and (4) whether the number of actual or anticipated objections to the settlement will be small when compared to the class size.

5 James Wm. Moore, et al., *Moore's Federal Practice – Civil* ¶ 23.165[2] (3d ed. 2012).

Further, it is well-recognized that there is strong public policy in favor of settlement of complex class action disputes, and that rulings on such settlements are committed to the sound discretion of the Court.  "Voluntary out of court settlement of disputes is 'highly favored in the law' and approval of class action settlements will be generally left to the sound discretion of the trial judge."  *Wellman v. Dickinson*, 497 F. Supp. 824, 830 (S.D.N.Y. 1980) (citations omitted).

> It hardly seems necessary to point out that there is an overriding public interest in settling and quieting litigation.  This is particularly true in class action suits which are now an ever increasing burden to so many federal courts and which frequently present serious problems of management and expense.

*Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976); *see also Churchill Village, L.L.C. v. General Elec.*, 361 F.3d 566, 576 (9th Cir. 2004).

9

**A.      The Proposed Settlement Provides the Class with Substantial and Valuable Consideration**

When applying the above-cited standards and considerations it is clear that the Settlement that is now before the Court warrants preliminary approval.  The consideration that will be paid by the Defendants is substantial particularly when compared to the relatively modest amount of any given Class member's individual damages.  Compared to estimated average daily damages of a few dollars per day in a hotly contested and uncertain litigation, the recovery of a significant percentage of that amount in the cash alternative and the many multiples of that amount represented by the value of the voucher consideration renders this a very valuable settlement and certainly one that is within the range of reasonableness.  The Settlement provides a significant and certain recovery for the proposed Class that is not capped and is unaffected by the Defendants' additional and separate obligation to assume all costs of notice, administration, fees and costs.

In addition, the Settlement achieves open-ended undertakings of the CTTC in the public interest designed to assure future compliance with the Bagley-Keene Act and to communicate in clear terms to consumers and the RCDs that the Tourism Commission Assessment levied on rental car companies is not a fee levied on consumers but rather an assessment levied on RCDs which are obliged to make independent decisions about whether to charge a TCA fee to renters. This is viewed by Plaintiff as a particularly important undertaking given the RCD and CTTC communications about the charging of such a fee that was one of the matters at issue in the case.[10]

**B.      The Proposed Settlement was the Product of Extensive Arms-Length Mediation and Negotiation**

Additionally, this Settlement was the product of intense and thorough arms-length negotiations before an experienced mediator[11] that were conducted by experienced and informed counsel.  The negotiations occurred over a span of months and involved numerous mediation sessions.  The negotiations were contested, conducted in the utmost good faith, and Plaintiff did

---

[10]   While Defendants vigorously contested that communications among them and the CTTC evidenced any agreement to pass the TCA onto consumers as a fee, Plaintiff viewed such communications as competitively problematic.

[11]   Judge Ronald M. Sabraw (ret.) of JAMS spent many years on the Superior Court bench in Alameda County, including as the judge presiding in the Complex Case department.

1   not accept settlement offers that were not appropriate in light of the position of and evidence

2   against each Settling Defendant.  Fees were not addressed in the mediation or negotiations until

3   the consideration to the Class had been fully mediated and agreed.

**C.     The Proposed Settlement Took Place in the Light of Substantial Litigation and Extensive Discovery**

5   Plaintiff's counsel was able to make informed evaluations of positions asserted in the

6   mediation and proposed settlement offers because the negotiations were conducted after extensive

7   discovery, including a review and analysis of hundreds of thousands of pages of Defendants'

8   documents and the taking of nearly 30 depositions, including those of all the key participants in

9   the events at issue, as well as the economic analysis of the Defendants' transactional and pricing

10   data by expert consultants.  This work provided counsel with knowledge and insight as to both the

11   strengths and weaknesses of the case (both liability and damages), including as against each

12   Defendant.  *See* Stewart/Rez Decl. ¶ 4.

**D.     The Litigation, Mediation and Settlement Negotiations Were Conducted by Experienced and Committed Counsel**

15   This case was litigated by three law firms and the University of San Diego School of

16   Law's Center of Public Interest Law, as a group, highly experienced in antitrust and class

17   actions.[12]  Experienced plaintiffs' counsel's judgment that settlements are fair and reasonable is

18   entitled to great weight.  *See Nat'l Rural Telcomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528

19   (C.D. Cal. 2004) ("'Great weight' is accorded to the recommendation of counsel, who are most

20   closely acquainted with the facts of the underlying litigation.");  *accord Bellows v. NCO Fin. Sys.,*

21   *Inc.*, 3:07-CV-01413-W-AJB, 2008 WL 5458986, at *9 (S.D. Cal. Dec. 10, 2008); *Rutter &*

22   *Wilbanks Corp. v. Shell Oil Co*., 314 F.3d 1180, 1188 (10th Cir. 2002); *Wilkerson v. Martin*

23   *Marietta Corp*., 171 F.R.D. 273, 288-89 (D. Colo. 1997).  In fact, "'the trial judge, absent fraud,

24   collusion, or the like, should be hesitant to substitute its own judgment for that of counsel.'"

25

26   ---

[12]   *See* Stewart/Rez Decl. ¶ 5.  The resumes of Plaintiff's counsel, Hulett Harper Stewart LLP,
27   Sullivan Hill Lewin Rez & Engel, the Center for Public Interest Law, and Freedman Boyd
Hollander Goldberg Ives & Duncan, and a description of the experience and qualifications of the
28   principal lawyers who litigated this matter on their behalf are attached as Exs. B through E to the
Stewart/Rez Decl.

*Nat'l Rural Telcomms.*, 221 F.R.D. at 528 (quoting *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977)).  In other words, there is generally "an initial presumption of fairness when a proposed class settlement, which was negotiated at arms' length by counsel for the class, is presented for court approval."  4 H.B. Newberg & A. Conte, *Newberg on Class Actions* § 11.41 (4th ed. 1992).

In light of the above, it is plain that the Settlement is worthy of preliminary approval.  It provides substantial and certain benefits to the Class members and they avoid the risks, delay and expense of further vigorously contested litigation.

**IV.     THE SETTLEMENT CLASS SHOULD BE CERTIFIED**

The Settlement contemplates the certification of the following Settlement Class:

> All Persons (other than those Persons who timely and validly request exclusion from the Class) who rented a car directly from a Rental Car Defendant for pick up at a California Airport Location during the period from January 1, 2007 through November 14, 2007, inclusive, and were charged and paid to the Rental Car Defendant an Airport Concession Fee and/or Tourism Commission Assessment Fee for that rental car as a separate line item(s) on their invoices.  Excluded from the Class are: (i) rentals made pursuant to a pre-existing agreement between a business or governmental entity and a Rental Car Defendant pursuant to which the rental charge was determined; and (ii) rentals in which the customer paid a package price to a third party tour operator or on-line booking agency rather than a Rental Car Defendant.  Also excluded from the Class are the Defendants, the directors, officers, subsidiaries, and affiliates of Defendants, any person, firm, trust, corporation, officer, director or other individual or entity in which any Defendant has a controlling interest, and the legal representatives, affiliates, heirs, successors-in-interest or assigns of any such excluded person, Related Parties as well as any judges or mediators involved in the Litigation (including the Hon. Michael M. Anello, Magistrate Judge McCurine, and the Hon. Ronald Sabraw (ret.))

The Settlement Agreement contains provisions for the certification of a class for purposes of settlement.  "Parties may settle a class action before class certification and stipulate that a defined class be conditionally certified for settlement purposes."  *In re Wireless Facilities, Inc. Sec. Litig. II*, 253 F.R.D. 607, 610 (S.D. Cal. 2008) (citing *Molski v. Gleich*, 318 F.3d 937 (9th Cir. 2003)).  Class actions are particularly well suited for compromise because of difficulties of proof, uncertainties of the outcome and the typical length of the litigation.  For the purpose of conditionally certifying the class for settlement purposes, the court evaluates the relevant factors under Rule 23(a):

12

1          (1)      the class is so numerous that joinder of all members is impracticable;

2          (2)      there are questions of law or fact common to the class;

3          (3)      the claims or defenses of the representative parties are typical of the

4 claims or defenses of the class; and

5          (4)      the representative parties will fairly and adequately protect the interests of

6 the class.

7       In addition, plaintiff must establish that one of the factors under Rule 23(b) is satisfied:

8 (1) that there is a risk of inconsistent or unfair adjudication if parties proceed with separate

9 actions; (2) that the defendant acted or refused to act on grounds generally applicable to the class,

10 making injunctive or declaratory relief appropriate to the class as a whole; or (3) that common

11 questions of law or fact predominate and class resolution is superior to other available methods

12 for the fair and efficient adjudication of the controversy.

13       Here, the Settlement Class easily satisfies the Rule 23(a) elements of numerosity,

14 commonality, typicality, and adequacy of representation.   Additionally, the Settlement Class

15 satisfies the predominance and superiority requirements under Rule 23(b)(3).

16     **A.**      **The Class is so Numerous that Joinder is Impracticable**

17       The first requirement of Rule 23(a) is that "the class is so numerous that joinder of all

18 members is impracticable . . . ."  Fed. R. Civ. P. 23(a)(1).  Plaintiffs need not allege the precise

19 number or identity of class members; nor is numerosity judged against some absolute number.  *In*

20 *re Rubber Chemicals Antitrust Litig.*, 232 F.R.D. 346, 350 (N.D. Cal. 2005).

21       Based on documents reviewed in this case, including the transaction databases of the

22 Rental Car Defendants, information provided by defendants, and general industry information,

23 Plaintiff estimates that the proposed Settlement Class consists of approximately four million

24 geographically-dispersed Class members.  Stewart/Rez Decl. ¶ 9.  Joinder of that many individual

25 plaintiffs would be impracticable, and thus, Rule 23(a)(1)'s numerosity requirement is satisfied.

26 *See Stambaugh v. Kansas Dept. of Corrections*, 151 F.R.D. 664, 673 (D. Kan. 1993) (quoting

27 *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993) ("[T]he difficulty in joining as few as 40

28 class members should raise a presumption that joinder is impracticable.") (citation omitted).

**B.      There Are Questions of Law or Fact Common to the Class**

Plaintiff readily meets the second requirement of Rule 23(a) – that there exist "questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  Courts construe the commonality requirement "permissively."  *Hanlon*, 150 F.3d at 1019.  "The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class."  *Id.*   "Only one significant issue of law or fact need be demonstrated to meet this requirement."  *Yamada v. Nobel Bidcare Holding AG*, 275 F.R.D. 573, 577 (C.D. Cal. 2011) (citation and internal quotations omitted).

Courts have consistently held that """the very nature of a conspiracy antitrust action compels a finding that common questions of law and fact exist."""  *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 267 F.R.D. 291, 300 (N.D. Cal. 2010) (quoting *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, No. M-02-1486PJH, 2006 WL 1530166, at *3 (N.D. Cal. June 5, 2006).  This is because proof of the existence, scope, effectiveness, and implementation of a conspiracy to manipulate prices is identical for each class member.  *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, No. M-02-1486PJH, 2006 WL 1530166, at *4 (N.D. Cal. June 5, 2006).

Here, there are many questions of law and fact common to the proposed Class, including:

(1)      Whether the Defendants formed and operated a combination and/or conspiracy to fix, raise, maintain, or stabilize prices for car rental services at California airport locations;

(2)      Whether the contract, combination, or conspiracy violated Section 1 of the Sherman Act;

(3)      Whether the Defendants' conduct caused the prices of car rental services purchased by the Class at California airport and locations to be set at artificially high, or non-competitive, levels; and

(4)      Whether the Class members were injured by the Defendants' conduct, and, if so, the appropriate class-wide measure of damages.

These issues present a common core of questions focusing on the central issue of the

14

existence and effect of the alleged conspiracy.  *See Estate of Garrison v. Warner Bros., Inc.*, No. CV 95-8328, 1996 WL 407849, at *2 (C.D. Cal. June 25, 1996); *see also In re Flat Glass Antitrust Litig.*, 191 F.R.D. 472, 479 (W.D. Pa. 1999) ("[g]iven plaintiffs' allegation of a § 1 conspiracy, the existence, scope and efficacy of the alleged conspiracy are certainly questions that are common to all class members"). The requirements of Rule 23(a)(2) thus are met here.

**C.      The Claims or Defenses of the Representative Parties Are Typical of the Claims or Defenses of the Class**

A plaintiff's claim is typical when it "'arise[s] from the same event, practice or course of conduct that gives rise to the claims of absent class members and if their claims are based on the same legal or remedial theory'" as Class members' claims.  *DRAM*, 2006 WL 1530166, at *4 (citation omitted). "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020.

As with commonality, courts have found the typicality requirement to be easily satisfied in horizontal price-fixing cases because in "instances wherein it is alleged that the defendants engaged in a common scheme relative to all members of the class, there is a strong assumption that the claims of the representative parties will be typical of the absent class members." *In re Catfish Antitrust Litig.*, 826 F. Supp. 1019, 1035 (N.D. Miss. 1993) ("*Catfish*"); *see also In re Citric Acid Antitrust Litig.*, No. 95-1092, 1996 WL 655791, at *3 (N.D. Cal. Oct. 2, 1996) ("Because plaintiffs and all class members share these claims and this theory [defendants conspired to fix prices], the representatives' claims are typical of all.").   This is because in horizontal price fixing cases, the named plaintiff typically must prove a conspiracy, its effectuation, and the resultant damages, which is precisely what all class members must prove. *See, e.g., In re Universal Serv. Fund Telephone Billing Practices Litig.*, 219 F.R.D. 661, 667 (D. Kan. 2004) (citing *In re Linerboard Antitrust Litig.*, 203 F.R.D. 197, 207 (E.D. Pa. 2001)).

Here, Plaintiff, who rented at California airports during the Class Period and paid TCA and ACF fees to one of the alleged RCD co-conspirators, asserts that the RCDs' alleged conspiracy to charge TCA fees and the ACF resulted in supra-competitive overall rental prices at

15

California airport locations.  Defendants' alleged price-fixing scheme is the linchpin of the claims of the named Plaintiff and of every Class member, who all purchased the alleged price-fixed services directly from the RCDs.  As a result of Defendants' alleged unlawful conduct and conspiracy, Plaintiff alleges that he and all members of the Class paid higher than competitive prices for rental cars.  Claims are asserted on behalf of all of the Class members based on the same core facts and legal theories.  The Plaintiff asserts no injury or claim peculiar to himself. Consequently, the typicality requirement is satisfied.

### D.  The Representative Party Will Fairly and Adequately Protect the Interests of the Class

Rule 23(a)(4) requires the court to ensure that "the representative parties will fairly and adequately protect the interests of the class."  To satisfy this requirement, plaintiffs must: (1) not have interests that are antagonistic to or in conflict with the interests of the class; and (2) be represented by counsel able to vigorously prosecute the interests of the class.  *Staton v. Boeing Co.*, 327 F. 3d 938, 957-58 (9th Cir. 2003).

First, there are no actual or potential conflicts of interest between Class Plaintiff, Mr. Gramkow, and the other members of the Settlement Class.[13]  To the contrary, the interests of the Plaintiff and Class members are entirely aligned.  Plaintiff alleges that all Class members paid more for rental car services than they would have absent the Defendants' conspiracy, and that all seek the same relief in the form of overcharge damages.  The Representative Plaintiff engaged in a retail rental directly from one of the alleged co-conspirators at a California airport location during the Class period and paid the fees at issue.  None of the alleged Class faces the defense that they were undamaged in their overall price because that price emanated from separate overall price negotiations or that the class member did not deal directly with the alleged co-conspirator Rental Car Defendant.

The proposed Class counsel, Hulett Harper Stewart and Sullivan Hill Lewin Rez & Engel, are adequate counsel.  "In the absence of proof to the contrary, courts presume that class

---

[13]  Michael Shames is also a named Plaintiff in the case and is settling his personal claim.  He is not being put forward as a representative of the proposed settlement class.

counsel is competent and sufficiently experienced to vigorously prosecute the action on behalf of the class." *Zapata v. IBP, Inc.*, 167 F.R.D. 147, 161 (D. Kan. 1996). Here, Plaintiff retained counsel with extensive experience in prosecuting antitrust cases, class actions and other complex cases to successful resolution, including trials. Further, Plaintiff's counsel developed this case and have pursued it vigorously for the benefit of the Class. Counsel have engaged in extensive investigation and discovery (including the review and organization of over 730,000 pages of documents, taking 27 depositions, and the bringing of motions to compel), have successfully litigated a key issue in an appeal to the Ninth Circuit of the CTTC's motion to dismiss which was only resolved in their favor after overcoming an initial unfavorable panel decision on a successful motion for reconsideration or rehearing *en banc*. They retained leading experts on economic issues, advanced many hundreds of thousands of dollars in costs, and efficiently managed all aspects of the litigation.

Because Plaintiff has no interests that are antagonistic to the Class, and because he is represented by qualified and committed counsel, the adequacy requirements for class certification are met.

### E.     The Rule 23(b)(3) Requirements Are Satisfied

Once the four prerequisites of Rule 23(a) are satisfied, the potential class must also satisfy at least one subpart of Rule 23(b). Certification under Rule 23(b)(3) is appropriate here. Rule 23(b)(3) requires that (1) the Court find that common questions of law or fact predominate over individual questions; and (2) the class action provides a superior method for adjudicating the controversy. *See* Fed. R. Civ. P. 23(b)(3); *Hanlon*, 150 F.3d at 1022.

#### 1.     Common Questions of Law and Fact Predominate

In order to meet the predominance requirement of Rule 23(b)(3), a plaintiff must establish that "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, . . . predominate over those issues that are subject only to individualized proof."

*In re Visa Check/Master Money Antitrust Litig.*, 280 F.3d 124, 136 (2d Cir. 2001) (quoting *Rutstein v. Avis Rent-A-Car Sys., Inc.*, 211 F.3d 1228, 1233 (11th Cir. 2000)); *see also* Fed. R. Civ. P. 23 (b)(3). "'When common questions present a significant aspect of the case and they can

1    be resolved for all members of the class in a single adjudication, there is clear justification for

2    handling the dispute on a representative rather than on an individual basis.'" *Hanlon*, 150 F.3d at

3    1022 (citation omitted).

4         As the Supreme Court stated in *Amchem*, "[p]redominance is a test readily met in certain

5    cases alleging consumer or securities fraud or violations of the antitrust laws."   *Amchem*

6    *Products, Inc. v. Windsor*, 521 U.S. 591, 625 (1997).  Here, the existence of a conspiracy is the

7    overriding issue common to Plaintiff and members of the Class and satisfies the Rule 23(b)(3)

8    predominance requirement.  *See, e.g., Rubber Chemicals*, 232 F.R.D. at 352 ("'the great weight of

9    authority suggests that the dominant issues in cases like this are whether the charged conspiracy

10   existed and whether price-fixing occurred'") (citation omitted).[14]

11        Proof of the existence of a conspiracy is a central issue in every price-fixing antitrust

12   case, and the "conspiracy issue whether price information was exchanged; if it was, with what

13   intent; whether action was taken by the defendants based upon such exchanges; etc. is susceptible

14   of generalized proof, since it deals primarily with what the defendants themselves did and said."

15   *In re Corrugated Container Antitrust Litig.*, 80 F.R.D. 244, 250 (S.D. Tex. 1978).  Indeed,

16   "[c]ourts have consistently found the conspiracy issue the overriding, predominant question."  *In*

17   *re Folding Carton Antitrust Litig.*, 75 F.R.D. 727, 734 (N.D. Ill. 1977).   In this case, one

18   overarching and predominating question is whether Defendants engaged in an illegal conspiracy

19

20   [14]   *See also, e.g, Flat Glass*, 191 F.R.D. at 484-85 (finding predominance met on conspiracy
21   element despite and noting '[c]ourts have found the conspiracy issue the overriding predominant
     question'") (quoting *In re Folding Carton Antitrust Litig.*, 75 F.R.D. 727, 734 (N.D. Ill. 1977));
22   *Citric Acid*, 1996 WL 655791, at *6 (common questions included whether a conspiracy existed;
     whether prices were fixed; and whether the prices paid by plaintiffs were higher as a result of the
23   conspiracy); *Catfish*, 826 F. Supp. at 1039 ("As a rule of thumb, a price fixing antitrust conspiracy
     model is generally regarded as well suited for class treatment."); *In re Sugar Industry Antitrust*
24   *Litig.*, MDL No. 201, 1976 WL 1374, at *23 (N.D. Cal. May 21, 1976) ("[i]t is the allegedly
     unlawful horizontal price fixing arrangement among defendants that, in its broad outlines,
25   comprises the predominating, unifying common interest" between the representative plaintiffs and
     potential class members); *Schreiber v. Nat'l Collegiate Ass'n*, 167 F.R.D. 169, 173 (1996)
26   ("Antitrust price fixing conspiracy cases, by their nature, deal with common legal and factual
     questions about the existence, scope and effect of the alleged conspiracy.") (internal quotation
27   omitted); *Estate of Garrison*, 1996 WL 407849, at *3 ("[a]ntitrust price fixing conspiracy cases by
     their nature deal with common legal and factual questions . . .") (citation omitted).
28

18

1    and agreed to pass on both the ACF and TCF to their respective renters thereby inflating rental

2    prices.  The question of the existence of an illegal conspiracy, as well as the resulting injury and

3    damages, is common to every Class member's antitrust claim.

4           Likewise, proof of the fact of injury is an integral part of the proof necessary to find a

5    violation of the antitrust laws and requires that a plaintiff demonstrate that he or she suffered

6    some loss in his business or property as a result of the violation.  *Corrugated Container*, 80

7    F.R.D. at 249.  Proof of a horizontal conspiracy is often sufficient to prove classwide damage,

8    simply because the plaintiff can prove that "the free market prices would be lower than the prices

9    paid and that he made some purchases at the higher price." *Bogosian v. Gulf Oil Corp.*, 561 F.2d

10   434, 455 (3d Cir. 1977) (a presumption of common impact arises where plaintiffs allege that

11   defendants conspired to fix prices); *see also In re Linerboard Antitrust Litig.*, 305 F.3d 145, 151-

12   53 (3rd Cir. 2002); *TFT-LCD (Flat Panel)*, 267 F.R.D. at 311-13.

13          Plaintiff in this case alleges an illegal conspiracy to inflate the prices charged for car

14   rentals.  Common impact is an issue susceptible to common proof, inasmuch as there are no

15   differences among the Settlement Class members, who are all leisure renters, that would prevent

16   them from benefiting from increased competition.   Common questions of law and fact

17   predominate.  Indeed, "[t]here is no question that common questions of predominant importance

18   exist here.  All plaintiffs will have to prove the existence of a conspiracy and fact of injury to

19   plaintiffs' class ('impact')." *Corrugated Container*, 80 F.R.D. at 249.  Consequently, the first

20   requirement of Rule 23(b)(3) is satisfied.

21              **2.    A Class Action is Superior to Other Available Methods for Fairly and**
                        **Efficiently Adjudicating the Controversy**
22

23          Rule 23(b)(3) also requires that the class action be "superior to other available methods

24   for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3); *see also Hanlon*,

25   150 F.3d at 1023.  "The superiority inquiry under Rule 23(b)(3) requires determination of whether

26   the objectives of the particular class action procedure will be achieved in the particular case."

27   *Hanlon*, 150 F.3d at 1023.  "This determination necessarily involves a comparative evaluation of

28   alternative mechanisms of dispute resolution."  *Id.*  Superiority exists where "the alternative

                                                    19

1   methods of resolution are individual claims for a small amount of consequential damages" and

2   "litigation costs would dwarf potential recovery."  *Id.*  Courts overwhelmingly have concluded

3   that a class action is a superior method of adjudicating multiple claims in price-fixing cases, and

4   they have consistently certified class actions in such cases.[15]

5         Indeed, the alternative to a class action – the filing of duplicative individual actions –

6   would be both highly inefficient and unfair.  "Numerous individual actions would be expensive

7   and time-consuming and would create the danger of conflicting decisions as to persons similarly

8   situated."  *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (C.D. Cal. 1978).  Further,

9   as a practical matter that alternative would deprive many class members of a means of redress,

10  because since the prosecution of an antitrust case against economically powerful defendants is

11  difficult and expensive, many class members would likely choose not to pursue their claims.

12  *Hanlon*, 150 F.3d at 1023 ("many claims [that] could not be successfully asserted individually . . .

13  would not only unnecessarily burden the judiciary, but would prove uneconomic for potential

14  plaintiffs").  Because of the modest amount of individual damages and the complexity and rigors

15  of prevailing in an antitrust conspiracy case, absent a class action it is unlikely these claims would

16  have been asserted at all.

17        A class action is thus a far superior means for adjudicating these individual claims.  The

18  Rule 23(b)(3) requirements are met.

19      **F.      The Court Should Appoint Hulett Harper Stewart and the Sullivan Hill firm
                as Plaintiff's Settlement Class Counsel**

20

21        Rule 23(c)(1)(B) states that "[a]n order that certifies a class action must define the class

22  and the class claims, issues, or defenses, and must appoint class counsel under Rule 23(g)."  Rule

23  23(g)(1)(A), in turn, requires the court to consider:

24        (i) the work counsel has done in identifying or investigating potential claims in the
          action; (ii) counsel's experience in handling class actions, other complex litigation,
25        and the types of claims asserted in the action; (iii) counsel's knowledge of the

26  _____

[15]  *See, e.g., In re Carbon Dioxide Antitrust Litig.*, 149 F.R.D. 229 (M.D. Fla. 1993); *Catfish*, 826
27  F. Supp. 1019; *Coleman v. Cannon Oil Co.*, 141 F.R.D. 516 (M.D. Ala. 1992); *In re Commercial
    Tissue Prods.*, 183 F.R.D. 589 (N.D. Fla. 1998); *In re Lease Oil Antitrust Litig.(No. II)*, 186
28  F.R.D. 403 (S.D. Tex. 1999); *In re NASDAQ Market-Makers Antitrust Litig.*, 169 F.R.D. 493
    (S.D.N.Y. 1996).

applicable law; and (iv) the resources that counsel will commit to representing the class.

Plaintiff respectfully requests that the Court appoint as Settlement Class Counsel Hulett Harper Stewart LLP and Sullivan, Hill, Lewin, Rez & Engel.  Each has extensive experience in prosecuting antitrust cases, class actions and other complex cases with success.[16]  Additionally, as described above, they have expended substantial time and resources in prosecuting the claims on behalf of the proposed Class in this case.

## V.      THE PROPOSED NOTICE TO CLASS MEMBERS

Rule 23(e) of the Federal Rules of Civil Procedure provides that notice of the proposed dismissal or compromise shall be given to all members of the class in such manner as the court directs.  Fed. R. Civ. P. 23(e).

> While due process and Rule 23(e) require notice of a settlement to be given, the content and form of that notice are left to the court's discretion.  The standard for the settlement notice under Rule 23(e) is that it must fairly apprise the class members of the terms of the proposed settlement and of their options.

*In re Integra Realty Resources, Inc.*, 262 F.3d 1089, 1111 (10th Cir. 2001) (internal quotations omitted).

Rule 23(c)(2)(B) of the Federal Rules of Civil Procedure provides, in pertinent part, "[f]or any class certified under Rule 23(b)(3), the court must direct to class members the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).  Such notice is the mechanism by which a court asserts jurisdiction in a class action over absent class members otherwise beyond its reach.  *In re Prudential Ins. Co. Am. Sales Prac. Litig.*, 148 F.3d 283, 306 (3d. Cir. 1998).

Individual notice, in the forms attached as Exhibits A-1 and A-3 to the Proposed Preliminary Approval Order ("Notice"), will be given by standard mail and/or email to each Class member who has been identified by reasonable efforts, *i.e.*, is present in the transaction databases of the Defendants.  The direct mail/email notice will be in postcard form that will both provide

---

[16]  Resumes of Sullivan Hill Lewin Rez & Engel and Hulett Harper Stewart LLP are attached as Exs. B and C to the Stewart/Rez Decl.

1   essential information about the case and the settlement and direct Class members to the

2   Settlement Web site where the long form notice and the Settlement Agreement may be viewed,

3   down-loaded or requested.  Where emails bounce back or where addresses appear incorrect, the

4   Administrator will engage in further efforts to locate and provide the Class notice.  Even though

5   mail notice to class members is universally found to be the best notice practicable, to support that

6   direct mail notice program, summary notice, in the form attached as Exhibit A-4 to the Proposed

7   Preliminary Approval Order (Stewart/Rez Decl., Ex. A at Ex. 4, A-4), also will be published in

8   multiple publications.  This publication Notice will also direct Class members to the Settlement

9   Web site.  The administrator will also establish a mailing address and a toll free number (included

10  in the Notices) which the Class member can call or to which the Class member can write to

11  request the long form Notice and the Election of Benefits form.  As set forth in detail in the

12  Settlement Notice Plan (attached to the Stewart/Rez Decl., Ex. A at Ex. 5) and further explained

13  in the Declaration of Gina M. Intrepido-Bowden on Settlement Notice Plan and Notices

14  ("Bowden Decl."), the Notices and Notice Plan have been prepared by experienced class action

15  counsel with the assistance of experts to ensure that Class members are reached with Notices that

16  capture their attention and are easily understood.  The Plan is expected to reach 94.3% of likely

17  Class members on average 1.5 times each.  Bowden Decl. ¶ 2.  All forms of Notice are noticeable,

18  clear and concise, and written in plain, easily understood language.  Bowden Decl. ¶ 5.

19          Such notice plans are commonly used in class actions like this one and constitute valid,

20  due and sufficient notice to class members, and satisfy either Rule 23(c)(2)(B)'s "best notice that

21  is practicable" standard or Rule 23(e)(1)'s "notice in a reasonable manner" standard.  *See, e.g.*, 5

22  James Wm. Moore, et al., *Moore's Federal Practice – Civil* ¶ 23.102[3][a-c] (3d ed. 2012).

23          The contents of the proposed Notice comply with the requirements of Rule 23(e).  The

24  notice includes the general terms of the Settlement, the terms of the fee and expense applications

25  of Plaintiff's counsel, and the date of the final settlement approval hearing.  The Notice clearly

26  and concisely explains the nature of the action and the terms of the Settlement.  It provides a clear

27  description of who is a member of the Class and the binding effects of Class membership.  It

28  explains how to object to the Settlement and/or related applications, how to obtain copies of

22

papers filed in the case, and how to contact the Administrator or Class Counsel.

The proposed notice program, including the contents of the Notice and summary notice, fulfills the requirements of Rule 23 and due process, and accordingly, should be approved.

**VI.    CONCLUSION**

For the reasons set forth here, the Court should enter an order: (i) granting preliminary approval of the settlement agreement Plaintiff has executed on behalf of a class of similarly situated consumers with Defendants; (ii) certifying a Settlement Class and appointing Class Counsel; (iii) approving the manner and forms for giving notice of the settlement agreements to class members; and (iv) establishing the timetable set forth herein for final approval proceedings.

DATED: May 17, 2012                     HULETT HARPER STEWART LLP
                                        DENNIS STEWART


                                          */s/ Dennis Stewart*
                                        DENNIS STEWART

                                        525 B Street, Suite 760
                                        San Diego, CA  92101
                                        Telephone:     (619) 338-1133
                                        Facsimile:     (619) 338-1139

                                        SULLIVAN, HILL, LEWIN, REZ & ENGEL
                                        A Professional Law Corporation
                                        DONALD G. REZ


                                          */s/ Donald G. Rez*
                                        DONALD G. REZ (with permission)

                                        550 West C Street, Suite 1500
                                        San Diego, CA  92101
                                        Telephone:     (619) 233-4100
                                        Facsimile:     (619) 231-4372

23

CENTER FOR PUBLIC INTEREST LAW
UNIVERSITY OF SAN DIEGO
  SCHOOL OF LAW
ROBERT C. FELLMETH
ED HOWARD
JULIANNE D'ANGELO FELLMETH
5998 Alcala Park
San Diego, CA  92110
Telephone:      (619) 260-4806
Facsimile:       (619) 260-4753

FREEDMAN BOYD HOLLANDER GOLDBERG
  IVES & DUNCAN, P.A.
JOSEPH GOLDBERG
jg@fbdlaw.com
DAVID H. URIAS
dhu@fbdlaw.com
200 3rd Street NW, Suite 700
Albuquerque, NM  87102
Telephone:      (505) 842-9960
Facsimile       (505) 842-0761

Attorneys for Plaintiff