CENTER FOR PUBLIC INTEREST LAW
UNIVERSITY OF SAN DIEGO SCHOOL OF LAW
ROBERT C. FELLMETH (49897)
cpil@sandiego.edu
ED HOWARD (151936)
JULIANNE D'ANGELO FELLMETH (109288)
5998 Alcala Park
San Diego, CA  92110
Telephone:       (619) 260-4806
Facsimile:       (619) 260-4753

SULLIVAN HILL LEWIN REZ & ENGEL
A Professional Law Corporation
DONALD G. REZ (82615)
rez@shlaw.com
550 West C Street, Suite 1500
San Diego, CA  92101
Telephone:       (619) 233-4100
Facsimile:       (619) 231-4372

HULETT HARPER STEWART LLP
DENNIS STEWART (99152)
dstewart@hulettharper.com
525 B Street, Suite 760
San Diego, CA  92101
Telephone:       (619) 338-1133
Facsimile:       (619) 338-1139

Attorneys for Plaintiff

## IN THE UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL SHAMES; GARY GRAMKOW, on behalf of themselves and on behalf of all persons similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>THE HERTZ CORPORATION, et al.,<br><br>Defendants. | Case No. 07cv2174-MMA(WMc)<br><br>**CLASS ACTION**<br><br>**JOINT DECLARATION OF DENNIS STEWART AND DONALD REZ IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT, CERTIFICATION OF SETTLEMENT CLASS, APPOINTMENT OF CLASS REPRESENTATIVES AND CLASS COUNSEL AND APPROVAL OF FORM AND MANNER OF GIVING NOTICE TO CLASS MEMBERS**<br><br>DATE:       June 4, 2012<br>TIME:       2:30 p.m.<br>JUDGE:     Honorable Michael M. Anello<br>CTRM:     5 |

DENNIS STEWART and DONALD REZ, declare and say:

1.     Dennis Stewart is a member of Hulett Harper Stewart LLP and Donald Rez is a member of Sullivan Hill Lewin Rez & Engel.  Both firms have been actively involved in every phase of the prosecution of this action and we have acted as the principal counsel for our respective firms.  We have personal knowledge of the matters set forth in this Declaration based upon our active supervision and participation in all material aspects of the Litigation.  We submit this Declaration in Support of Plaintiff's Motion for Preliminary Approval of the proposed settlement of this action, and the related motions for certification of a settlement class, appointment of class representatives and class counsel and approval of the form of Class Notice and the manner of disseminating Class Notice to class members.  If called as a witness either of us could competently testify to the matters stated herein.

2.     Plaintiff, on behalf of a proposed class of car renters at California airport locations during the period from January 1, 2007 through November 14, 2007 inclusive,[1] has entered into a Settlement Agreement ("Settlement") with Defendants Hertz Corporation ("Hertz"), Avis Budget Group, Inc. ("Avis"), Dollar Thrifty Automotive Group, Inc. ("DTAG"), Vanguard Car Rental Inc. d/b/a Alamo Rent-a-Car and National Rent-a-Car ("Vanguard"), Enterprise Rent-a-Car Company ("Enterprise"), Fox Rent-a-Car, Inc. ("Fox") (collectively referred to herein as the "Rental Car Defendants" or "RCDs"), and the California Travel and Tourism Commission ("CTTC").  A true

---

[1]  The proposed settlement class is defined as follows:  "all Persons (other than those Persons who timely and validly request exclusion from the Class) who rented a car directly from a Rental Car Defendant for pick up at a California Airport Location during the period from January 1, 2007 through November 14, 2007, inclusive, and were charged and paid to the Rental Car Defendant an Airport Concession Fee and/or Tourism Commission Assessment Fee for that rental car as a separate line item(s) on their invoices.  Excluded from the Class are: (i) rentals made pursuant to a pre-existing agreement between a business or governmental entity and a Rental Car Defendant pursuant to which the rental charge was determined; and (ii) rentals in which the customer paid a package price to a third party tour operator or on-line booking agency rather than a Rental Car Defendant.  Also excluded from the Class are the Defendants, the directors, officers, subsidiaries, and affiliates of Defendants, any person, firm, trust, corporation, officer, director or other individual or entity in which any Defendant has a controlling interest, and the legal representatives, affiliates, heirs, successors-in-interest or assigns of any such excluded person, Related Parties as well as any judges or mediators involved in the Litigation (including the Hon. Michael M. Anello, Magistrate Judge McCurine, and the Hon. Ronald Sabraw (ret.))."

1

and correct copy of the Stipulation of Settlement is attached hereto as Exhibit A.

3.      This Settlement was achieved through extensive, arms-length highly contested negotiations and several mediation sessions over a period of about eight months which were overseen and facilitated by a mediator, the Hon. Ronald M. Sabraw (Ret.) of JAMS.

4.      This case was vigorously litigated for four years and the Settlement was reached only after extensive pretrial litigation and discovery.  This included:

- Conducting a detailed investigation into the passage of the legislation at issue, its implementation, and its effect on consumer pricing in the Rental Car Industry;

- Litigating a Motion for Preliminary Injunction;

- Litigating two motions to dismiss;

- Appealing through a successful Motion for Reconsideration or Rehearing *En Banc* in the Ninth Circuit of the dismissal of claims against the California Travel and Tourism Commission (CTTC), on the "state action immunity" defense;

- Conducting and responding to extensive discovery including document demands, interrogatories, and requests for admissions, the review, analysis and organization of almost three-quarters of a million pages (in excess of 737,000) of documents produced by Defendants and third parties and the deposition of 27 fact witnesses;

- Engaging and consulting with experts in economics and econometrics concerning analysis of pricing data and damages; and

- Bringing and opposing numerous and various pre-trial and discovery motions.

5.      This matter was litigated through settlement on behalf of Plaintiff by four firms all of whose involved counsel are highly experienced in antitrust and class action litigation.  In addition to our firms, The Center for Public Interest Law, University of San Diego School of Law (principal counsel Robert C. Fellmeth) and the Albuquerque, New Mexico firm of Freedman Boyd Hollander Goldberg Ives & Duncan, P.A. (principal counsel Joseph Goldberg) were extensively involved in the litigation of this matter.  Dennis Stewart is a former Trial Attorney with the United States Department of Justice's Antitrust Division with 30 years experience and who has litigated, including through trial, criminal antitrust and civil cases, including both class and non-class antitrust actions.  Donald Rez is an antitrust practitioner of over 33 years experience who has

2

1   handled, among other things, a wide variety of antitrust and trade regulation cases as well as class

2   actions.  Professor Robert Fellmeth, executive director of the Center for Public Interest Law and a

3   member of the faculty of the University of San Diego School of Law is a veteran antitrust enforcer

4   who has taught and litigated in the field of antitrust for over 38 years.  Joseph Goldberg, with over

5   40 years of experience teaching and litigating has exercised leadership positions in some of the

6   largest and most complex antitrust class actions over the last 20 years.  Full copies of the firm

7   resume descriptions of these four principal counsel are attached hereto as Exhibits B through E.  In

8   the litigation of this case, these counsel collectively advanced litigation costs of in excess of

9   $700,000 dollars.   Based on their extensive experience in antitrust cases and their extensive

10  involvement in the litigation of this case, all of the Plaintiff's counsel are recommending approval

11  of the proposed Settlement.

12       6.       The proposed forms of Notice are attached to the Stipulation of Settlement

13  (attached Exs. 3a-3f of Ex. A, hereto).   The Notices describe the litigation, the proposed

14  settlement, the rights of absent Class members (including to opt-out of the Class, to object or claim

15  its benefits) and the deadlines for the actions they may desire to take.  The Notices and Notice Plan

16  have been prepared by experienced class action counsel with the assistance of experts to assure

17  that Class members are reached with Notices that capture their attention and are easily understood.

18  *See* Declaration of Gina Intrepido-Bowden on Settlement Notice Plan and Notices ("Bowden

19  Decl.").  The Notice, in a "plain language" format, has been designed to be both informative and

20  comprehensible.  All forms of Notice are noticeable, clear and concise, and written in plain, easily

21  understood language.  Bowden Decl. ¶ 5.  In addition to the Notice, a Web site will be established

22  and maintained for the purpose of both informing Class members and, if the Settlement is finally

23  approved, as one of the vehicles for claiming the benefits of the Settlement.  The Stipulation of

24  Settlement will be posted on the Web site for the benefit of Class members.

25       7.       As is set forth in detail in the Settlement Notice Plan (attached hereto as Ex. A at

26  Ex. 5), a thorough plan of disseminating notice is proposed; relying principally on personal mail or

27  email notice directly to Class members and supplemented by publication notice.  The Notice is

28  proposed to be sent by mail and/or email to those Class members who appear in the transaction

databases of each of the respective Defendants and the Claims Administrator will perform the usual and customary procedures for, among other things, following up on returned emails and mails.  In addition to mailed/emailed Notice, a notice (Ex. 3d to the Stipulation of Settlement, attached hereto as Ex. A) will be published according to the Plan for Publication Notice attached to the Stipulation of Settlement as Exhibit 5.  Our experts expect the plan to reach 94.3% of likely Class members on average 1.5 times each.

8.      We believe that this Notice plan constitutes the best notice practicable under the circumstances and fully comports with Due Process.

9.      Based on information provided by the Defendants and their transaction databases, the proposed Settlement Class numbers approximately four million renters.

10.      Throughout this litigation, named plaintiff Gary Gramkow has acted as a Class representative and has cooperated with and assisted counsel in this matter on behalf of the Class. Mr. Gramkow had a covered rental transaction during the Class period in which he paid the fees which are the subject of this litigation to one of the alleged co-conspirator defendants.  He has no conflict with the Class and asserts claims that are typical of the claims asserted on behalf of the Class.

11.      Plaintiff seeks the appointment of the Hulett Harper Stewart LLP and Sullivan Hill Lewin Rez & Engel firms as lead counsel on behalf of the Class.  A description of the firms and their principal counsel are attached as Exhibits B and C.  We submit that the history of the prosecution of this litigation as well as their experience fully support their qualifications to act as Class counsel.

12.      Attached hereto are true and Correct Copies of the following documents:

**Exhibit A**: Stipulation of Settlement

| | |
|---|---|
| Exhibit 1a: | Election of Benefits Form |
| Exhibit 1b: | Avis Election of Benefits Form |
| Exhibit 2: | [Proposed] Final Judgment and Order of Dismissal with Prejudice |
| Exhibit 3a: | Email Notice Form |
| Exhibit 3b: | Supplemental Email Notice Form |

4

Exhibit 3c:    Postcard Notice Form

Exhibit 3d:    Publication Notice Form

Exhibit 3e:    Supplemental Notice Form

Exhibit 3f:    Long Form Notice

Exhibit 4:    [Proposed] Order Preliminarily Approving Settlement, Certifying Settlement Class, Appointing Class Representative and Lead Counsel, and Providing For Notice

       Exhibit A-1: Email Notice Form

       Exhibit A-2: Supplemental Email Notice Form

       Exhibit A-3: Postcard Notice Form

       Exhibit A-4: Publication Notice Form

       Exhibit A-5: Supplemental Notice Form

       Exhibit A-6: Long Form Notice

       Exhibit B: Settlement Notice Plan

Exhibit 5:    Settlement Notice Plan

Exhibit 6a:    Avis Budget Voucher

Exhibit 6b:    Dollar Voucher

Exhibit 6c:    Thrifty Voucher

Exhibit 6d:    Enterprise Voucher

Exhibit 6e:    Alamo Voucher

Exhibit 6f:    National Voucher

Exhibit 6g:    Fox Voucher

Exhibit 6h:    Hertz Voucher

**Exhibit B**:    Hulett Harper Stewart LLP Firm Resume

**Exhibit C**:    Sullivan Hill Lewin Rez & Engel Firm Resume

**Exhibit D**:    Resumes for Julianne D'Angelo Fellmeth and Robert C. Fellmeth at the Center for Public Interest Law

**Exhibit E**:    Freedman Boyd Hollander Goldberg Ives & Duncan, P.A. Firm Resume

5

1       I declare under penalty of perjury under the laws of the United States of America that the

2   foregoing is true and correct.  Executed this 17th day of May 2012, at San Diego, California.

3

4                      */s/ Dennis Stewart*
                   DENNIS STEWART

5

6       I declare under penalty of perjury under the laws of the United States of America that the

7   foregoing is true and correct.  Executed this 17th day of May 2012, at San Diego, California.

8

9                      */s/ Donald G. Rez*
                   DONALD G. REZ (with permission)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# Exhibit A

1
2
3
4
5
6
7
8            **IN THE UNITED STATES DISTRICT COURT**
9            **SOUTHERN DISTRICT OF CALIFORNIA**
10

MICHAEL SHAMES; GARY GRAMKOW, on behalf of themselves and on behalf of all persons similarly situated,

Case No. 07cv2174-MMA(WMc)

**CLASS ACTION**

Plaintiffs,

**STIPULATION OF SETTLEMENT**

v.

THE HERTZ CORPORATION, et al.,

Defendants.

11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

This Stipulation of Settlement dated as of May 15, 2012 (the "Stipulation"), is made and entered into by and among: Michael Shames and Gary Gramkow, on behalf of themselves and, by Gramkow, on behalf of each of the Class Members, by and through Plaintiffs' counsel of record in the Litigation; and Defendants, The Hertz Corporation, Dollar Thrifty Automotive Group, Inc., Avis Budget Group, Inc., Vanguard Car Rental USA, LLC, Enterprise Holdings, Inc., Fox Rent A Car, Inc. and the California Travel and Tourism Commission, by and through their counsel of record in the Litigation.  The Stipulation is intended to fully, finally, and forever resolve, discharge, and settle the Released Claims (as defined herein), subject to the approval of the Court and the terms and conditions set forth in this Stipulation.

I.     **THE LITIGATION**

On November 14, 2007, Plaintiffs filed the initial Complaint in this action, alleging, among other things, that Defendants engaged in a contract, combination or conspiracy to fix rental car prices at California airports by agreeing – pursuant to authority reflected in Assembly Bill 2592 – to pass through their  Airport Concession Fee and  Tourism Commission Assessment obligations as surcharges in violation of the Sherman and Clayton Acts and state law and that the CTTC violated the Bagley-Keene Act.

On November 29, 2007, Plaintiffs filed a Motion for Preliminary Injunction against the CTTC relating to the alleged Bagley-Keene Act violations.  On December 12, 2007, the Court entered an agreed interim order regarding the alleged Bagley-Keene Act violations.  Thereafter on January 25, 2008, all Defendants filed Motions to Dismiss.  On April 8, 2008, the Court granted the Defendants' Motions to Dismiss and denied without prejudice Plaintiffs' Motion for Preliminary Injunction.

On May 1, 2008, Plaintiffs filed their First Amended Complaint.  On July 24, 2008, the Court granted the CTTC's motion to dismiss in its entirety, and judgment was thereafter entered as to the CTTC.  Plaintiffs timely appealed the CTTC judgment.  The District Court also granted in part and denied in part the Rental Car Defendants' motion to dismiss.  The Rental Car Defendants then answered the First Amended Complaint, denying all allegations of wrongdoing and asserting numerous affirmative defenses.  Plaintiffs continued to litigate the appeal against

1

the CTTC in the Ninth Circuit while simultaneously litigating against the Rental Car Defendants in the District Court.

On June 8, 2010, the Court of Appeals for the Ninth Circuit rendered its initial decision affirming the dismissal of, and judgment for, the CTTC.  On June 29, 2010, Plaintiffs filed a petition for reconsideration and rehearing *en banc*.

On July 16, 2010, the District Court entered a stay of discovery pending briefing on the effect of the Ninth Circuit's original opinion on the viability of Plaintiffs' claims against the Rental Car Defendants.  On November 24, 2010, the Court of Appeals withdrew its earlier opinion and reversed the District Court's dismissal of the CTTC.  On December 27, 2010, the Mandate issued.  On February 7, 2011, the CTTC answered the First Amended Complaint, denying all allegations of wrongdoing and asserting numerous affirmative defenses.  On February 23, 2011, the District Court lifted the stay of discovery.

The parties engaged in extensive discovery and motion practice during the four-year pendency of this case except during the period when discovery was stayed.  In particular, the Defendants collectively produced more than 700,000 pages of documents and voluminous transaction data.  Plaintiffs also took the depositions of more than 24 current and former employees of the Defendants and other third parties.

On February 9, 2011, the parties engaged in a settlement conference before Magistrate Judge William McCurine, Jr.  Thereafter, on April 13, 25, and 26, 2011, the parties participated in mediation with the Honorable Ronald M. Sabraw (Ret.) of JAMS.  After the April 2011 mediation failed to result in an agreement to resolve the Litigation, the Settling Parties engaged in further intensive discovery and continued settlement negotiations both separately and through Judge Sabraw.  On and after October 17, 2011, the parties reached an agreement in principle on certain economic terms to settle the Litigation with all Defendants.  Subsequently, the Settling Parties continued negotiations further, including three additional mediation sessions with Judge Sabraw on November 14, 2011, December 16, 2011, and January 18, 2012, resulting in the terms and conditions set forth in this Stipulation.

2

## II.      DEFENDANTS' DENIALS OF WRONGDOING AND LIABILITY

Defendants have denied and continue to deny each and all of the claims alleged by Plaintiffs in the Litigation.  Defendants expressly have denied and continue to deny all charges of wrongdoing or liability against them arising out of any of the conduct, statements, acts or omissions alleged, or that could have been alleged, in the Litigation.  Defendants also have denied and continue to deny, among other allegations, that they engaged in any contract, combination or conspiracy in violation of the antitrust laws, or that they or any of them, violated state law, that the Plaintiffs or the Class have suffered any damage, that the prices paid by renters of cars at California airports were inflated by reason of the alleged conduct or otherwise, and that the Plaintiffs or the Class were harmed in any way by the conduct alleged in the Litigation.  Defendants continue, as they always have, to recognize that the statutory scheme authorizing the TCA leaves the decision of whether to separately state the TCA to consumers to the discretion of each rental car company.  The CTTC additionally denies that it violated the Bagley-Keene Act.  Defendants believe that the evidence developed to date supports their position that they acted properly at all times and that the Litigation is without merit.

Nonetheless, Defendants have concluded that further conduct of the Litigation would be protracted and expensive, and that it is desirable that the Litigation be fully and finally settled in the manner and upon the terms and conditions set forth in this Stipulation.  Defendants also have taken into account the uncertainty and risks inherent in any litigation, especially in complex cases like the Litigation.  Defendants have, therefore, determined that it is desirable and beneficial to them that the Litigation be settled in the manner and upon the terms and conditions set forth in this Stipulation.

## III.     CLAIMS OF THE PLAINTIFFS AND BENEFITS OF SETTLEMENT

The Plaintiffs believe that the claims asserted in the Litigation have merit and that the evidence developed to date supports the claims.  However, Plaintiffs and their counsel recognize and acknowledge the expense and length of continued proceedings necessary to prosecute the Litigation against Defendants through trial and through appeals.  Plaintiffs and their counsel also have taken into account the uncertain outcome and the risk of any litigation, especially in

3

complex actions such as the Litigation, as well as the difficulties and delays inherent in such litigation. Plaintiffs and their counsel also are mindful of the inherent problems of proof under, and possible defenses to, the antitrust law and state law violations asserted in the Litigation. Representative Plaintiff and Plaintiffs' Counsel believe that the settlement set forth in the Stipulation confers substantial benefits upon the Class, and that it is fair and reasonable. Based on their evaluation, Representative Plaintiff and Plaintiffs' Counsel have determined that the settlement set forth in the Stipulation is in the best interests of the Class.

**IV.     TERMS OF STIPULATION AND AGREEMENT OF SETTLEMENT**

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED by and among the Plaintiffs (for themselves, and by Gramkow, on behalf of each of the Class Members) and the Defendants, by and through their respective counsel or attorneys of record, that, subject to the approval of the Court, the Litigation and the Released Claims shall be finally and fully compromised, settled, and released, and the Litigation shall be dismissed with prejudice, as to all Settling Parties, upon and subject to the terms and conditions of the Stipulation, as follows.

**1.     Definitions**

As used in the Stipulation the following terms have the meanings specified below:

1.1      "Administrator" means the firm Kurtzman Carson Consultants.

1.2      "Airport Concession Fee" ("ACF") shall have the meaning ascribed to it by California Civil Code Section 1936.01(a)(1).

1.3      "California Airport Location" means a location from which a Rental Car Defendant operated on or near an airport located in the State of California pursuant to an "on-airport" concession agreement and at which the Rental Car Defendant charged an Airport Concession Fee to renters during the Class Period.

1.4      "Class" means all Persons (other than those Persons who timely and validly request exclusion from the Class) who rented a car directly from a Rental Car Defendant for pick up at a California Airport Location during the period from January 1, 2007 through November 14, 2007, inclusive, and were charged and paid to the Rental Car Defendant an Airport Concession Fee and/or Tourism Commission Assessment Fee for that rental car as a separate line

4

item(s) on their invoices.   Excluded from the Class are: (i) rentals made pursuant to a pre-existing agreement between a business or governmental entity and a Rental Car Defendant pursuant to which the rental charge was determined; and (ii) rentals in which the customer paid a package price to a third party tour operator or on-line booking agency rather than a Rental Car Defendant.   Also excluded from the Class are the Defendants, the directors, officers, subsidiaries, and affiliates of Defendants, any person, firm, trust, corporation, officer, director or other individual or entity in which any Defendant has a controlling interest, and the legal representatives, affiliates, heirs, successors-in-interest or assigns of any such excluded person, Related Parties as well as any judges or mediators involved in the Litigation (including the Hon. Michael M. Anello, Magistrate Judge McCurine, and the Hon. Ronald Sabraw (ret.)).

1.5     "Class Member" or "Class Members" mean a Person or Persons who fall(s) within the definition of the Class as set forth in ¶ 1.4 above.

1.6     "Class Notice" means, collectively, Notice, Publication Notice, and Supplemental Notice.   The Class Notice shall include the general terms of the settlement set forth in the Stipulation, the general terms of the Fee and Expense Application, as defined in ¶ 7.1 hereof, and the date of the Final Approval Hearing.   Class membership for purposes of deciding to whom notice shall be sent shall be determined   based on the Rental Car Defendants' rental transaction databases produced in this Litigation from data kept in the ordinary course of business.   The Class Notice shall conform to all applicable requirements of the Federal Rules of Civil Procedure, due process, any other applicable law, and shall otherwise be in the manner and form approved by the Court.

1.7     "Class Period" means the period commencing on January 1, 2007 through and including November 14, 2007.

1.8     "Court" means the United Stated District Court for the Southern District of California.

1.9     "CTTC" means the California Travel and Tourism Commission.

1.10     "Defendants" means the Rental Car Defendants and the CTTC.

1.11     "Effective Date," or the date upon which this settlement becomes "effective,"

5

1    shall have the meaning specified in ¶ 8.1 of this Stipulation.

2       1.12    "Election of Benefits Form," whether in documentary form or as it may appear

3    on the settlement website, means the document substantially in the form of Exhibits 1a and 1b.

4       1.13    "Election Period" means the period beginning on the date of entry of the

5    Preliminary Approval Order and ending 210 days later.

6       1.14    "Final" means when the Court has entered the Judgment, substantially in the

7    form of Exhibit 2 attached hereto, and all of the following shall have occurred: (i) the expiration

8    of the time to file a motion to alter or amend the Judgment under Federal Rule of Civil Procedure

9    59(e) without any such motion having been filed or, if such a motion is filed, the entry of an

10   order denying such motion; and (ii) the time in which to appeal the Judgment has passed without

11   any appeal having been taken or, if an appeal is taken, immediately after (a) the date of final

12   dismissal of any appeal or the final dismissal of any proceeding on *certiorari*, or (b) the date of

13   affirmance of the Judgment on appeal and the expiration of time for any further judicial review

14   whether by appeal, reconsideration or a petition for a writ of *certiorari* and, if *certiorari* is

15   granted, the date of final affirmance of the Judgment following review pursuant to the grant.  For

16   purposes of this paragraph, an "appeal" shall include any petition for a writ of *certiorari* or other

17   writ that may be filed in connection with approval or disapproval of this Stipulation, but shall not

18   include any appeal which concerns only attorneys' fees and expenses or incentive payments, and

19   any such appeal shall not in any way delay or affect the time set forth above for the Judgment to

20   become Final, or otherwise preclude the Judgment from becoming Final.

21      1.15    "Final Approval Hearing" means the hearing to be held by the Court to consider

22   and determine whether the proposed Settlement of the Litigation as contained in this Stipulation

23   should be approved as fair, reasonable, and adequate, and whether the Judgment should be

24   entered.

25      1.16    "Independent Licensed Locations" means those rental car locations that are not

26   owned by a Rental Car Defendant although the Rental Car Defendant's brand is licensed for use

27   at that location.  Each Rental Car Defendant shall provide a list of U.S. Independent Licensed

28   Locations to the Administrator.

1.17    "Judgment" means the Final Judgment and Order of Dismissal with Prejudice to be rendered by the Court, substantially in the form attached hereto as Exhibit 2.

1.18    "Lead Counsel" means Hulett Harper Stewart LLP, Dennis Stewart, 525 B Street, Suite 760, San Diego, CA 92101; and Sullivan Hill Lewin Rez and Engel, Donald G. Rez, 550 West C Street, Suite 1500, San Diego, CA 92101.

1.19    "Litigation" means *MICHAEL SHAMES; GARY GRAMKOW, on behalf of themselves and on behalf of all persons similarly situated, v. THE HERTZ CORPORATION, et al.*, Case No. 07cv2174-MMA (WMc).

1.20    "Notice" means any or all of the notices substantially in the forms of Exhibits 3a-3f, as appropriate, as approved by the Court.

1.21    "Person" means an individual, corporation, partnership, limited partnership, association, joint stock company, joint venture, limited liability company, professional corporation, estate, legal representative, trust, unincorporated association, government or any political subdivision or agency thereof, and any business or legal entity and their spouses, heirs, predecessors, successors, representatives, or assignees.

1.22    "Plaintiffs" means Michael Shames and Gary Gramkow.   "Representative Plaintiff" shall mean Gary Gramkow.

1.23    "Plaintiffs' Counsel" means Lead Counsel and the Center for Public Interest Law, Robert Fellmeth, Ed Howard, Julianne D'Angelo Fellmeth, and Freedman Boyd Hollander Goldberg Ives & Duncan, P.A.

1.24    "Preliminary Approval Order" refers to an order, substantially in the form of Exhibit 4, preliminarily approving the proposed settlement and the proposed Class Notice.

1.25    "Publication Notice" means notice substantially in the form of Exhibits 3d and 3e to be published in accordance with the Plan for Publication Notice attached as Exhibit 5 hereto.

1.26    "Related Parties" means each of a Defendant's past,  present, or future directors, officers, employees, managers, partners, members, insurers, co-insurers, reinsurers, controlling shareholders, personal or legal representatives, predecessors, successors, parents, subsidiaries,

divisions, joint ventures, agents, attorneys, assigns, spouses, heirs, executors, estates, administrators, related or affiliated entities, any entity in which a Defendant has a controlling interest. For the avoidance of doubt, "Related Parties" does not include licensees or franchisees of the Rental Car Defendants.

1.27    "Released Claims" means any and all claims, debts, demands, controversies, obligations, losses, rights or causes of action or liabilities of any kind or nature whatsoever (including, but not limited to, any claims for damages (whether compensatory, special, incidental, consequential, punitive, exemplary or otherwise), injunctive relief, declaratory relief, rescission or rescissionary damages, interest, attorneys' fees, expert or consulting fees, costs, expenses, or any other form of legal or equitable relief whatsoever), whether based on federal, state, local, statutory or common law or any other law, rule or regulation, and whether known or unknown, fixed or contingent, suspected or unsuspected, concealed or hidden, accrued or unaccrued, liquidated or unliquidated, at law or in equity, matured or unmatured, whether class or individual in nature, including Unknown Claims (as defined below), that (i) have been asserted in this Litigation by the Plaintiffs and Class Members or any of them against any of the Released Persons (as defined below), or (ii) could have been asserted in the Litigation or any other forum by the Plaintiffs and Class Members or any of them against any of the Released Persons through the date this proposed settlement is preliminarily approved by the Court which arise out of or are based upon or related to the allegations, transactions, facts, matters or occurrences, set forth, or referred to in the Litigation, including, without limitation, claims that the Defendants engaged in a contract, combination, or conspiracy to fix rental car prices at California Airport Locations or to otherwise fix or agree to separately state and pass through the ACF and/or TCA on rental transactions or that the CTTC engaged in a Bagley-Keene Act violation. Released Claims does not include any ordinary course of business claims which are unrelated to the claims and allegations that were asserted in the Litigation, nor does it include any claims against any franchisee or licensee of the Rental Car Defendants, nor does it include claims regarding rentals at the Rental Car Defendants' non-California airport locations that are unrelated to the claims and allegations that were asserted in the Litigation. For the avoidance of

8

doubt, this Stipulation and the Judgment do not affect persons who are not Class Members, and persons who are not Class Members do not release any claim against any Released Person as a result of the Stipulation or Judgment.  Released Claims also does not include claims to enforce the terms of this Stipulation.

1.28    "Released Persons" means each and all of the Defendants and their Related Parties.  For the avoidance of doubt, Released Persons does not include licensees or franchisees of the Rental Car Defendants.

1.29    "Rental Car Defendants" means The Hertz Corporation, Dollar Thrifty Automotive Group, Inc., Avis Budget Group, Inc., Vanguard Car Rental USA, LLC, Enterprise Holdings, Inc., and Fox Rent A Car, Inc.  For purposes of this Stipulation, the brands Enterprise, Alamo and National (currently operated by subsidiaries of Enterprise Holdings, Inc.) and Dollar and Thrifty (operated by a subsidiary of Dollar Thrifty Automotive Group, Inc.) shall each be treated as separate Rental Car Defendants.  For avoidance of doubt, Rental Car Defendants excludes any Person that owns or operates one or more Independent Licensed Locations as defined in ¶ 1.16, and locations where Payless Car Rental System, Inc. is a franchisor.

1.30    "Settling Parties" means, collectively, the Defendants, the Plaintiffs and the Representative Plaintiff on behalf of the Class.

1.31    "Subject Rental" means a car rental directly from a Rental Car Defendant for pick up at a California Airport Location during the period from January 1, 2007 through November 14, 2007 inclusive, and for which the renter was charged and paid to the Rental Car Defendants an Airport Concession Fee and/or Tourism Commission Assessment Fee for that rental car as a separate line item(s) on his or her invoice.  Excluded from Subject Rentals are: (i) rentals made pursuant to a pre-existing agreement between a business or governmental entity and a Rental Car Defendant pursuant to which the rental charge was determined; and (ii) rentals in which the customer paid a package price to a third party tour operator or on-line booking agency rather than a Rental Car Defendant.

1.32    "Supplemental Notice" means (1) notice substantially in the form of Exhibit 3e, as approved by the Court, to be published as a one-eighth page ad one time in the national

edition of *USA Today* and (2) email Notice to Class Members for whom the Rental Car Defendants have provided to the Administrator an email address.  Supplemental email Notice need not be given to Class Members who have previously responded to the Administrator by filing an election of benefits or opt-out request or Class Members to whom Notice was previously sent via standard class mail.

1.33    "Taxes" means all taxes (including any estimated taxes, interest or penalties) arising with respect to any income earned by the funds provided by the Rental Car Defendants pursuant to ¶ 4.7 and ¶ 7.3 below, including any taxes or tax detriments that may be imposed with respect to any income earned by such funds for any period during which such funds do not qualify as a "qualified settlement fund" for federal or state income tax purposes.

1.34    "Tourism Commission Assessment Fee" ("TCA") means the separately stated charge collected by a car rental company from a renter authorized by Section 13995.65 of the Government Code.

1.35    "Unknown Claims" means any Released Claims which Plaintiffs or any Class Members do not know or suspect to exist in his, her, or its favor at the time of the release of the Released Persons which, if known by him, her, or it, might have affected his, her, or its settlement with and release of the Released Persons, or might have affected his, her, or its decisions with respect to this Stipulation.  With respect to any and all Released Claims, the Settling Parties stipulate and agree that, upon the Effective Date, Plaintiffs shall expressly waive and relinquish, and each of the Class Members shall be deemed to have, and by operation of the Judgment shall have, expressly waived and relinquished, the provisions, rights, and benefits of California Civil Code § 1542, which provides:

> **A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.**

Plaintiffs shall expressly waive and relinquish, and each of the Class Members shall be deemed to have, and by operation of the Judgment shall have, expressly waived and relinquished, any and all provisions, rights, and benefits conferred by any law of any state or

10

1  territory of the United States, or principle of common law, which is similar, comparable or

2  equivalent to California Civil Code § 1542.  Plaintiffs and Class Members may hereafter

3  discover facts in addition to or different from those which he, she or it now knows or believes to

4  be true with respect to the subject matter of the Released Claims, but Plaintiffs upon the

5  Effective Date shall expressly, fully, finally, and forever settle and release and each Class

6  Member, upon the Effective Date, shall be deemed to have, and by operation of the Judgment

7  shall have, fully, finally, and forever settled and released any and all Released Claims, known or

8  unknown, suspected or unsuspected, contingent or non-contingent, whether or not concealed or

9  hidden, which now exist, or heretofore have existed, upon any theory of law or equity now

10  existing or coming into existence in the future, including, but not limited to, conduct which is

11  negligent, intentional, with or without malice, or a breach of any duty, law or rule, without

12  regard to the subsequent discovery or existence of such different or additional facts.  Plaintiffs

13  acknowledge, and the Class Members shall be deemed by operation of the Judgment to have

14  acknowledged, that the foregoing waiver was separately bargained for and a key element of the

15  Stipulation of which this release is a part.

16  **2.      The Settlement Benefits to Be Provided by the Rental Car Defendants**

17  2.1     During the Election Period, Class Members shall be provided access to a free

18  website, a toll-free telephone number and a mailing address through which they may elect either

19  the Cash Option or Voucher Option, as described below, from each Rental Car Defendant with

20  which the Class Member had one or more Subject Rentals:

21  a.     Cash Option: The greater of (i) $5.00 or (ii) $2.00 per day for each day

22  that a Subject Rental was made from that Rental Car Defendant;

23  **or**

24  b.     Voucher Option: As applicable, (i) if the Class Member had, in the

25  aggregate, Subject Rentals of less than eight days from the same Rental

26  Car Defendant, such Rental Car Defendant shall provide the Class

27  Member a voucher (substantially in the form of Exhibits 6a-6h) entitling

28  the Class Member to free time and mileage for one rental day at any U.S.

11

1  corporate-owned location of that Rental Car Defendant, subject to the

2  terms and conditions stated below; or (ii) if the Class Member had, in the

3  aggregate, Subject Rentals of eight days or more from the same Rental

4  Car Defendant, such Rental Car Defendant shall provide the Class

5  Member two vouchers, each entitling the Class Member to free time and

6  mileage for one rental day at any U.S. corporate-owned location of that

7  Rental Car Defendant, subject to the terms and conditions stated below.

8  As an alternative to the receipt of vouchers described in 2.1 b(ii) above,

9  Class Members who had, in the aggregate, Subject Rentals of eight days

10  or more may choose at the time of the election described above, to

11  receive one voucher entitling the Class Member to free time and mileage

12  for two rental days, subject to the terms and conditions stated below.

13  2.2  The vouchers described at ¶ 2.1 b may be redeemed at the brand of the issuing

14  Rental Car Defendant for the rental of any compact, midsize (intermediate), standard, or full size

15  vehicle, subject to availability at the time of reservation of the types of vehicles ordinarily

16  available in such car classes by the Rental Car Defendant.   To minimize the risk of fraud,

17  originals of vouchers must be physically presented at the rental car counter and altered or copied

18  vouchers will not be honored.   Redemption of the voucher must be by a person with a valid

19  photo driver's license that reflects either (a) the same name of the Class Member as printed on

20  the voucher or (b) the same address of the Class Member as printed on the voucher.   Vouchers

21  are for time and mileage charges only and do not include any otherwise applicable one-way or

22  drop charges, taxes, fees, charges, insurance and any optional products (such as loss damage

23  waiver and refueling) related to the rental.   The voucher is valid with daily, weekly, and other

24  multi-day rates.   The voucher has no cash value, and is transferable only to the extent provided

25  in ¶ 2.4.   The voucher cannot be redeemed for cash and will not be replaced if lost or stolen. The

26  renter must meet the Rental Car Defendant's customary qualifications, such as age and driver

27  requirements, which may vary by location.   The voucher is redeemable beginning on the

28  Effective Date.   The voucher shall state a date of expiration, which date shall be no less than 18

12

full calendar months after the date of mailing of the vouchers.  The voucher may be used with any rate discounts for which the renter is otherwise eligible, if they can be processed together under current Rental Car Defendants' systems.  Avis and Budget rentals will be treated as rentals from a single Rental Car Defendant, Avis Budget Group, Inc., for purposes of awarding benefits under this Stipulation, and vouchers issued by Avis Budget Group, Inc. may be redeemed at U.S. corporate-owned Avis or Budget brand locations, subject to the terms and conditions of this Stipulation.  This Stipulation shall not affect the terms of other vouchers or coupons that the Rental Car Defendants have issued or may issue in the future.

2.3     The vouchers described at ¶ 2.1 b are redeemable only from the individual Rental Car Defendant that issued the voucher.  Vouchers may be redeemed at locations of the brand of the issuing Rental Car Defendant nationwide but may not be used at Independent Licensed Locations.  Class Members who had Subject Rentals with more than one Rental Car Defendant are entitled to the settlement benefits set forth in ¶ 2.1 from each such Rental Car Defendant.

2.4     Vouchers shall be redeemable by the Class Member or by any Person in the Class Member's household as reflected by the residence address on the Person's valid driver's license or other appropriate photo identification provided that the Person meets normal and customary rental qualifications of the issuing Rental Car Defendant.  Class Members will be informed on the Notice and on the settlement website of their ability to update their addresses, and shall be afforded the opportunity to update their addresses on the settlement website or by a mailing to the Administrator so that vouchers may be issued to Class Members at their correct current address.

2.5.     Plaintiffs and the Rental Car Defendants agree that each of the funds provided by each Rental Car Defendant pursuant to ¶ 4.7 and ¶ 7.3 below shall be treated as being, at all times, a "qualified settlement fund" within the meaning of Treas. Reg. § 1.468B-1.  All Taxes shall be paid out of such funds provided pursuant to ¶¶ 4.7 and 7.3 and all costs of establishing and maintaining such escrow accounts shall be paid by the Rental Car Defendants.

**3.     Terms Applicable to CTTC**

13

3.1     Defendant CTTC agrees to the following terms:

a.      CTTC acknowledges that the meetings of the full Commission and Commission committees and subcommittees, and all documents distributed to Commission members for discussion at open sessions of the Commission and its committees and subcommittees, are subject to the Bagley-Keene Open Meeting Act, Government Code §§ 11120, *et seq.* ("the Act");

b.      CTTC agrees to comply fully with the Act, pursuant to Government Code §§ 13995–13995.117;

c.      The Executive Director of the CTTC agrees to provide a complete and current copy of the Act to each new Commission member upon appointment to the Commission;

d.      The Executive Director of the CTTC also agrees to distribute to each Commission Member, no less frequently than annually, an updated and complete copy of the Act, and also the Department of Consumer Affairs' *Guide to the Bagley-Keene Open Meeting Act or the Attorney General's Handy Guide to the Bagley-Keene Open Meeting Act* (whichever is most recently updated), and to schedule, at the full Commission's first meeting each calendar year, an agenda item wherein an attorney familiar with the Act makes a presentation to the full Commission on the duties imposed by the Act on the Commission and its members; and

e.      CTTC agrees to retain, on its current internet web site (www.visitcalifornia.com) and any web site(s) it may create in the future, a link to "Information Regarding Meetings of the California Travel and Tourism Commission" wherein Commission meeting agendas and minutes are posted.

3.2     Within 90 days of the execution of this Stipulation, the CTTC shall post and maintain a notice on its website in the same type face used for most of its website copy, in a visible location where CTTC fees, financing or consumer charges are explained, and shall issue the following statement no less than once a year to assessed businesses within the passenger car rental category:

> The tourism assessment fee is not a fee imposed by the state or the CTTC on any consumers.  The CTTC takes no position on whether any tourism assessment fee should be charged to rental car customers.  Rather any tourism assessment fee

14

charge on a bill to consumers must be individually determined by each passenger car rental company.

**4.      Administration**

4.1      Subject to the approval of the Court, the Administrator shall be retained to help implement the terms of the Stipulation.  The Administrator shall accomplish and/or assist with the necessary administrative tasks, including, without limitation:

a.      conducting a National Change of Address Search (NCOA) prior to mailing the Notice to attempt to obtain updated address information for Class Members;

b.      mailing, arranging for the mailing, or emailing (to the extent the Rental Car Defendants have provided to the Administrator email addresses), as required, the Notice to Class Members and arranging for publication of the Publication Notice;

c.      arranging for the Supplemental Notice;

d.      handling returned mail and email not delivered to Class Members;

e.      mailing Notice to any known forwarding address for any mailed Notice returned to the Administrator and to Class Members as to whom Notice by email (as described in 4.1 b above) has not been successfully effectuated;

f.      making any additional mailings required under the terms of the Stipulation;

g.      answering written and telephone inquiries;

h.      receiving and maintaining on behalf of the Court and the Parties any Class Member correspondence regarding requests for exclusion from the Class;

i.      establishing a settlement website through which Class Members may access the Election of Benefits Forms and obtain and provide other information relating to this Stipulation ,including providing a change of address;

j.      establishing a toll free number for the purposes of notice and administration;

k.      establishing a Post Office Box for the purpose of administration;

l.      receiving and processing Election of Benefits Forms and determining the

15

eligibility of Class Members for benefits pursuant to this Stipulation as well as the appropriate level of benefits to which each Class Member is entitled using the Rental Car Defendants' rental transaction databases produced in this Litigation from data kept in the ordinary course of business;

      m.    establishing and maintaining escrow accounts to hold the funds to be provided pursuant to ¶¶ 4.7 and 7.3;

      n.    distributing the benefits of the Stipulation to Class Members, subject to ¶ 4.3; and

      o.    communicating with counsel for the Class, counsel for the Defendants and the Court as necessary to accomplish its duties or as reasonably requested.

4.2    The process for approving claims and distributing settlement benefits will be administered by the Administrator based on the Rental Car Defendants' rental transaction databases produced in this Litigation from data kept in the ordinary course of business.  For Class Members who elect a cash payment, the Administrator shall transmit payment by check  to the Class Member.  For Class Members who elect voucher(s), the Administrator shall mail the voucher(s) to the Class Member via standard class mail.

4.3    Distribution of cash payments and vouchers shall be completed by the later of (i) 60 days after the end of the Election Period or (ii) 60 days after the Effective Date.

4.4.    The Election of Benefits Form will be available for download from, and to be completed and submitted on, the settlement website.  To the extent reasonably practicable, the Election of Benefits Form available on the settlement website shall be pre-populated with the number of Subject Rental days from each Rental Car Defendant as reflected in the Rental Car Defendants' transactional databases produced to Plaintiffs in this Litigation as well as the alternative (cash/voucher) benefits to which the Class Member is entitled.   The settlement website will also provide for the ability of a Class Member to submit evidence of paid Subject Rentals that the Class Member believes are not reflected on the pre-populated form.   The Election of Benefits Form will be mailed or emailed to any Class Member who makes such a request by calling, emailing or writing to the Administrator.  The Administrator's determination

16

as to the eligibility of Class Members for benefits and the calculations for those benefits pursuant to this Stipulation is final.

4.5     Election of Benefits Forms submitted electronically within the Election Period or postmarked within the Election Period shall be deemed timely.  The Administrator, in the exercise of its reasonable discretion, may accept Election of Benefits Forms that it receives after the Election Period if it appears to the Administrator that the late submission was the result of a delay in the receipt by the Class Member of actual notice of this settlement or some other form of excusable neglect beyond the reasonable control of the Class Member.

4.6     All expenses of the Administrator shall be paid by the Rental Car Defendants allocated in the manner determined by them.

4.7     Within 45 days of the close of the Election Period, the Administrator will inform each Rental Car Defendant of the amount of money necessary to satisfy that Rental Car Defendant's cash claims.  Each Rental Car Defendant will deposit into an escrow account, established by the Administrator, the amount of cash required to satisfy all allowed cash option elections of that Rental Car Defendant, as determined by the Administrator, within 20 days of the Administrator's request for cash election funding.  In the event that the Effective Date does not occur, the Administrator shall refund the money deposited into the escrow account by a Rental Car Defendant to that Rental Car Defendant, along with any interest earned on the funds while in the escrow account and net of any taxes due.

**5.     Preliminary Approval/Class Notice/Final Approval**

5.1     Within 30 days after execution of the Stipulation, the Settling Parties shall submit the Stipulation together with its exhibits to the Court and shall apply for entry of the Preliminary Approval Order requesting, *inter alia*, the preliminary approval of the settlement set forth in the Stipulation and dissemination of Class Notice.

5.2     Beginning not more than 30 days after the entry of the Preliminary Approval Order, notice of the proposed settlement shall be given in the following manner: (i) emailed to Class Members for whom the Rental Car Defendants have provided to the Administrator an email address; or (ii) mailed by postcard to the last known address of those Class Members by

17

standard class mail.  Class membership shall be determined based on the Rental Car Defendants' rental transaction databases produced in this Litigation from data kept in the ordinary course of business, subject to an individual submitting evidence to the Administrator that the individual had a Subject Rental that is not reflected in those transaction databases.  The Administrator's determination as to whether an individual made a Subject Rental pursuant to this Stipulation is final.  Notice shall be posted on the settlement website.  Notice shall be sent via electronic or standard class mail to those Class Members who so request.  The notices will identify the settlement website and include a toll-free number that Class Members can use to obtain information about the Settlement and to request the Notice and/or Election of Benefits forms.

5.3     Not later than 65 days after the entry of the Preliminary Approval Order, the Administrator shall cause to be published the Publication Notice substantially in the form of Exhibit 3d, as approved by the Court.

5.4     No later than 60 days before the expiration of the Election Period, the Administrator shall cause the Supplemental Notice to be provided, substantially in the form of Exhibits 3b and 3e, as approved by the Court.

5.5     The Rental Car Defendants shall pay all the costs of Class Notice and claim administration, including, inter alia, reimbursement and/or payment of the total costs reasonably and actually incurred by the Administrator in connection with providing notice to and locating Class Members, processing and administering the election of benefits, receiving requests for exclusion, and communicating with Class Members about the settlement and claim filing procedures.

5.6     Plaintiffs' Counsel shall request that after Notice and Publication Notice is given, the Court hold a Final Approval Hearing and enter the Final Judgment and Order of Dismissal of Prejudice substantially in the form of Exhibit 2, as approved by the Court.  At or after the Final Approval Hearing, Plaintiffs' Counsel also will request that the Court approve the Fee and Expense Application and Application for Incentive Awards.

**6.     Releases**

6.1     Upon the Effective Date, the Class Plaintiffs and each and every Class Member,

and anyone claiming through or on behalf of any of them, shall be deemed to have, and shall have, fully, finally, and forever waived, released, relinquished, discharged, and dismissed each and every one of the Released Claims against each and every one of the Released Persons whether or not such Class Member elects any of the options described in ¶ 2.1.

6.2     Upon the Effective Date, each and every Class Member and anyone claiming through or on behalf of any of them, shall be forever barred and enjoined from commencing, instituting, prosecuting or continuing to prosecute any action or other proceeding in any court of law or equity, arbitration tribunal, or administrative forum, asserting the Released Claims against any of the Released Persons.

6.3     Upon the Effective Date, each of the Released Persons shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished, and discharged Plaintiffs and Plaintiffs' Counsel from all claims (including Unknown Claims) arising out of, relating to, or in connection with the institution, prosecution, assertion, settlement or resolution of the Litigation or the Released Claims.  No Person shall have any claim against the Plaintiffs or Plaintiffs' Counsel or the Administrator, or any other Person designated by Plaintiffs' Counsel, based on distributions made substantially in accordance with the Stipulation or order(s) of the Court.

6.4     No Person shall have any claim against Defendants, or any of them, based on the administration of this Stipulation, including but not limited to any distributions made or not made pursuant to this Stipulation except as to obligations imposed by this Stipulation on the Defendants, or any of them.

**7.     Plaintiffs' Counsels' Attorneys' Fees and Expenses/Incentive Award**

7.1     At the time that Plaintiffs file a motion for final approval of the settlement, Plaintiffs' counsel intend to file an application for an award of attorneys' fees and expenses (the "Fee and Expense Application") and an application for an incentive award to Representative Plaintiff (the "Application for Incentive Award").  Subject to the review and approval of the Court, the Rental Car Defendants agree to pay and will not oppose the award to Plaintiffs' Counsel of attorneys' fees and expenses in the total amount of $5,870,000.00 (Five million eight

19

hundred seventy thousand) dollars plus interest earned on such amount from the escrow account described in ¶ 7.3 net of Taxes.  Subject to the review and approval of the Court, the Rental Car Defendants agree to pay and not to oppose an award in the amount of $2,000.00 (two thousand) dollars to the Representative Plaintiff  plus interest earned on such amount from the escrow account described in ¶ 7.3 net of Taxes.  Defendants and their Related Parties shall have no responsibility for attorneys' fees, expenses, or incentive awards in excess of the amounts specified in this paragraph.  The Parties acknowledge that none of the attorneys' fees, expenses or incentive award to be paid under this paragraph will reduce in any way the settlement benefits provided to the Class and that attorneys' fees, expenses and the incentive award were negotiated and mediated in a separate mediation session only after the settlement benefits to the Class had been fully negotiated and agreed.

7.2     The fees and expenses awarded by the Court to Lead Counsel pursuant to ¶ 7.1, not to exceed $5,870,000 plus any interest earned on such amount from the escrow account described in ¶ 7.3 net of Taxes, and Representative Plaintiff's incentive award, not to exceed $2,000.00 plus any interest earned on such amount from the escrow account described in ¶ 7.3 net of Taxes, shall be paid within 10 calendar days after the following have occurred: (i) the Effective Date occurs; and (ii) the Court's order and judgment awarding attorneys' fees and expenses and Representative Plaintiff's incentive award becomes Final.   Each Rental Car Defendant shall only be responsible to pay its share of the award of attorneys' fees and expenses and incentive award, as follows:

| | |
|---|---|
| The Hertz Corporation | 0.291 |
| Avis Budget Group, Inc. | 0.291 |
| Enterprise Holdings, Inc. And Vanguard Car Rental USA, Inc. | 0.291 |
| Dollar Thrifty Automotive Group, Inc. | 0.112 |
| Fox Rent A Car, Inc. | 0.015 |

7.3     Each Rental Car Defendant shall pay into an escrow account, established by the Administrator its share of attorneys' fees and incentive award as computed in paragraph 7.2

20

within 10 days of an order by the Court approving the Fee and Expense Application.  Such funds will remain in the escrow account until such time as they are released to pay the amount required under ¶ 7.1, or there is a Final determination that no such payment is due, in which case the funds plus any interest earned net of Taxes will be returned to the Rental Car Defendants in proportion to their respective contributions.

7.4     Any order or award relating to the Fee and Expense Application or the Application for Incentive Award of less than the maximum amounts specified in ¶ 7.1 above, or any reduction or elimination thereof on appeal, shall not operate to terminate or cancel the Stipulation, or affect or delay the finality of the Judgment approving the Stipulation and the settlement of the Litigation set forth therein.

7.5     Defendants and their Related Parties shall have no responsibility for the allocation among Plaintiffs' Counsel, and/or any other Person who may assert some claim thereto, of any fee and expense award that the Court may make in the Litigation, or with respect to any tax obligations of the attorneys' fees, expenses or incentive award, and the Defendants and their Related Parties take no position with respect to such matters.

**8.     Conditions of Settlement, Effect of Disapproval**

8.1     The Effective Date of the Stipulation for each Rental Car Defendant shall be three business days after the date when all of the following shall have occurred and is conditioned on the occurrence of all of the following events:

(a)     the Court has entered the Preliminary Approval Order, as required by ¶ 5.1 hereof;

(b)     the Court has entered the Judgment, or a Judgment substantially in the form of Exhibit 2 attached hereto;

(c)     for each Rental Car Defendant severally, that Rental Car Defendant has deposited into an escrow account the payment required to be made by that Rental Car Defendant pursuant to ¶¶ 4.7 and 7.3; and

(d)     the Judgment has become Final, as defined in ¶ 1.14 hereof.

8.2     In the event that the Stipulation is not approved by the Court or the settlement

21

fails to become effective in accordance with its terms and provisions, the Settling Parties shall be restored to their respective positions in the Litigation as of October 1, 2011.  In such event, the terms and provisions of the Stipulation, with the exception of this paragraph and ¶¶ 4.6, 4.7, 5.5, 8.3 and 9.14 hereof, shall have no further force and effect with respect to the Settling Parties and neither this Stipulation nor any submission by any party in connection with the Motion(s) for Preliminary or Final Approval or Application for Attorneys Fees and Expenses or appeal therefrom or any related motions or proceedings may be used in this Litigation or in any other proceeding for any purpose, and any judgment or order entered by the Court in accordance with the terms of the Stipulation shall be treated as vacated, *nunc pro tunc*.  No order of the Court or modification or reversal on appeal of any order of the Court concerning the amount of any attorneys' fees, costs, or expenses awarded by the Court to any of Plaintiffs' Counsel or incentive award to Representative Plaintiff shall constitute grounds for cancellation or termination of the Stipulation.

8.3     If the Effective Date does not occur, or if the Stipulation is terminated pursuant to its terms, neither Class Plaintiffs nor any of their counsel shall have any obligation to repay any amounts actually and properly disbursed pursuant to Sections 4 and 5.  In addition, any expenses already incurred pursuant to Sections 4 and 5 hereof at the time of such termination or cancellation but which have not been paid, shall be paid by the Rental Car Defendants in accordance with the terms of the Stipulation.

**9.      Miscellaneous Provisions**

9.1     The Settling Parties (a) acknowledge that it is their intent to consummate this agreement; and (b) agree to cooperate to the extent reasonably necessary to effectuate and implement all terms and conditions of the Stipulation and to exercise their best efforts to accomplish the foregoing terms and conditions of the Stipulation.

9.2     The Settling Parties intend this settlement to be a final and complete resolution of all disputes between them with respect to the Litigation.  The settlement compromises claims which are contested and shall not be deemed an admission by any Settling Party as to the merits of any claim or defense.  The Final Judgment will contain a finding that, during the course of the

22

Litigation, the parties and their respective counsel at all times complied with the requirements of Federal Rule of Civil Procedure 11.  The Settling Parties agree that the terms of the settlement were negotiated in good faith by the Settling Parties, and reflect a settlement that was reached voluntarily after consultation with competent legal counsel and with the assistance of a professional mediator.  The Settling Parties reserve their right to rebut, in a manner that such party reasonably determines to be appropriate, any contention made by any of the Settling Parties in any public forum that the Litigation was brought or defended in bad faith or without a reasonable basis.

9.3     Neither the Stipulation, nor any act performed or document executed pursuant to or in furtherance of the Stipulation: (a) is or may be deemed to be or may be used as an admission of, or evidence of, the validity of any Released Claim, or of any wrongdoing or liability of the Defendants; or (b) is or may be deemed to be or may be used as an admission of, or evidence of, any fault or omission of any of the Defendants in any civil, criminal or administrative proceeding in any court, administrative agency or other tribunal.  The Defendants may file the Stipulation and/or the Judgment in any action that may be brought against them in order to support a defense or counterclaim based on principles of *res judicata*, collateral estoppel, release, good faith settlement, judgment bar or reduction, or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

9.4     All agreements made and orders entered during the course of the Litigation relating to the confidentiality of information shall survive this Stipulation.  The parties to the Litigation shall comply with paragraph 9 of the stipulated protective order (Dkt. No. 285), relating to the disposition of confidential information and documents.

9.5     All of the exhibits to the Stipulation are material and integral parts hereof and are fully incorporated herein by this reference.

9.6     The Stipulation may be amended or modified only by a written instrument signed by or on behalf of all Settling Parties or their respective successors-in-interest.

9.7     The Stipulation and the exhibits attached hereto constitute the entire agreement among the parties hereto and no representations, warranties or inducements have been made to

23

any party concerning the Stipulation or its exhibits other than the representations, warranties, and covenants contained and memorialized in such documents.  Except as otherwise provided herein, each party shall bear its own costs.

9.8     Each Defendant's obligations and rights under this Stipulation are separate and independent from those of other Defendants and are not joint and several.  No Class Member or other Person shall have any claim or right against any Defendant that performs its obligations under this Stipulation based on the failure of any other Defendant to perform under this Stipulation.  The failure to perform any provision or provisions of this Stipulation by any Defendant shall not affect or impair the rights of any other Defendant to enforce any and all terms of this Stipulation.  No obligation of the Defendants, or any of them, under this Stipulation or any order of the Court  shall in any way become the responsibility of the Plaintiffs, Plaintiffs' counsel, the Administrator  or the Class by reason of any Defendant's failure to perform any of its obligations under this Stipulation.

9.9     Lead Counsel, on behalf of the Class, is expressly authorized by the Plaintiffs and Plaintiffs' Counsel to take all appropriate action required or permitted to be taken by the Class pursuant to the Stipulation to effectuate its terms and also is expressly authorized to enter into any modifications or amendments to the Stipulation on behalf of the Class which they deem appropriate.

9.10    Each counsel or other Person executing the Stipulation or any of its exhibits on behalf of any party hereto hereby warrants that such Person has the full authority to do so.

9.11    The Stipulation may be executed in one or more counterparts.  All executed counterparts and each of them shall be deemed to be one and the same instrument.  A complete set of executed counterparts shall be filed with the Court.

9.12    The Stipulation shall be binding upon, and inure to the benefit of, the predecessors, successors and assigns of the parties hereto.

9.13    Except ¶ 3.1 b, the Court shall retain jurisdiction with respect to implementation and enforcement of the terms of the Stipulation, and all parties hereto submit to the jurisdiction of the Court for purposes of implementing and enforcing the terms of the Stipulation.

1    9.14    This Stipulation and the exhibits hereto shall be considered to have been

2    negotiated, executed and delivered, and to be wholly performed, in the State of California, and

3    the rights and obligations of the parties to the Stipulation shall be construed and enforced in

4    accordance with, and governed by, the internal, substantive laws of the State of California

5    without giving effect to that State's choice-of-law principles.

6    DATED: _15 May 2012_          HULETT HARPER STEWART LLP
                                   DENNIS STEWART
7

8                                  _Dennis Stewart (by Rez with permission)_
9                                  DENNIS STEWART

10                                 525 B Street, Suite 760
                                   San Diego, CA  92101
11                                 Telephone:    (619) 338-1133
                                   Facsimile:    (619) 338-1139
12

13   DATED: _15 May 2012_          SULLIVAN, HILL, LEWIN, REZ & ENGEL
                                   A Professional Law Corporation
14                                 DONALD G. REZ

15

16                                 _Donald G. Rez_
                                   DONALD G. REZ
17

18                                 550 West C Street, Suite 1500
                                   San Diego, CA  92101
19                                 Telephone:    (619) 233-4100
                                   Facsimile:    (619) 231-4372
20

21                                 Lead Counsel for Plaintiffs

22   DATED: _____            AVIS BUDGET GROUP, INC.
23

24                                 By:

25                                 Its:

26

27

28   DATED: _____            WEINTRAUB GENSHLEA CHEDIAK
                                   CHARLES L. POST

                                        25

1       9.14   This Stipulation and the exhibits hereto shall be considered to have been

2  negotiated, executed and delivered, and to be wholly performed, in the State of California, and

3  the rights and obligations of the parties to the Stipulation shall be construed and enforced in

4  accordance with, and governed by, the internal, substantive laws of the State of California

5  without giving effect to that State's choice-of-law principles.

6  DATED: _____          HULETT HARPER STEWART LLP

7                        DENNIS STEWART

8

9                        DENNIS STEWART

10                    525 B Street, Suite 760

11                    San Diego, CA  92101
                        Telephone:   (619) 338-1133

12                    Facsimile:    (619) 338-1139

13  DATED: _____          SULLIVAN, HILL, LEWIN, REZ & ENGEL

14                    A Professional Law Corporation
                        DONALD G. REZ

15

16

17                        DONALD G. REZ

18                    550 West C Street, Suite 1500

19                    San Diego, CA  92101
                        Telephone:   (619) 233-4100

20                    Facsimile:    (619) 231-4372

21                    Lead Counsel for Plaintiffs

22  DATED: 5/15/2012         AVIS BUDGET GROUP, INC.

23

24                    By: _____

25                    Its: ASSOCIATE GENERAL COUNSEL

26

27  DATED: _____

28                    WEINTRAUB GENSHLEA CHEDIAK
                        CHARLES L. POST

25

9.14    This Stipulation and the exhibits hereto shall be considered to have been negotiated, executed and delivered, and to be wholly performed, in the State of California, and the rights and obligations of the parties to the Stipulation shall be construed and enforced in accordance with, and governed by, the internal, substantive laws of the State of California without giving effect to that State's choice-of-law principles.

DATED: _____          HULETT HARPER STEWART LLP
                            DENNIS STEWART


                            _____
                            DENNIS STEWART

                            525 B Street, Suite 760
                            San Diego, CA 92101
                            Telephone:    (619) 338-1133
                            Facsimile:    (619) 338-1139

DATED: _____          SULLIVAN, HILL, LEWIN, REZ & ENGEL
                            A Professional Law Corporation
                            DONALD G. REZ


                            _____
                            DONALD G. REZ

                            550 West C Street, Suite 1500
                            San Diego, CA 92101
                            Telephone:    (619) 233-4100
                            Facsimile:    (619) 231-4372

                            Lead Counsel for Plaintiffs

DATED: _____          AVIS BUDGET GROUP, INC.

                            _____
                            By:

                            Its:


DATED: 5/15/12              WEINTRAUB GENSHLEA CHEDIAK
                            CHARLES L. POST
                            25

DALE C. CAMPBELL
SCOTT M. PLAMONDON

_____

CHARLES L. POST

400 Capitol Mall, 11th Floor
Sacramento, CA  95814
Telephone:     (916) 558-6000
Facsimile:     (916) 446-1611

Kamala D. Harris
ATTORNEY GENERAL OF CALIFORNIA
W. Dean Freeman
Felix E. Leatherwood
Supervising Deputy Attorneys General
Ronald N. Ito
Diane S. Shaw
Lisa W. Chao
Deputy Attorneys General
300 South Spring Street
Los Angeles, CA 90013-1230
Telephone:     (213) 897-2000
Facsimile:     (213) 897-5775

Attorneys for Defendant California Travel
and Tourism Commission

DATED: _____

DOLLAR THRIFTY AUTOMOTIVE GROUP,
INC.

_____

By:

Its:

DATED: _____

ENTERPRISE HOLDING, INC. (F/K/A/
ENTERPRISE RENT-A-CAR COMPANY) AND
VANGUARD CAR RENTAL USA, LLC (F/K/A

VANGUARD CAR RENTAL USA, INC.)

26

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DALE C. CAMPBELL
SCOTT M. PLAMONDON

_____
CHARLES L. POST

400 Capitol Mall, 11th Floor
Sacramento, CA  95814
Telephone:      (916) 558-6000
Facsimile:      (916) 446-1611

Kamala D. Harris
ATTORNEY GENERAL OF CALIFORNIA
W. Dean Freeman
Felix E. Leatherwood
Supervising Deputy Attorneys General
Ronald N. Ito
Diane S. Shaw
Lisa W. Chao
Deputy Attorneys General
300 South Spring Street
Los Angeles, CA 90013-1230
Telephone:      (213) 897-2000
Facsimile:      (213) 897-5775

Attorneys for Defendant California Travel
and Tourism Commission

DATED: May 15, 2012

DOLLAR THRIFTY AUTOMOTIVE GROUP,
INC.


By: Vicki J. Vaniman

Its: EVP & General Counsel


DATED: _____

ENTERPRISE HOLDING, INC. (F/K/A
ENTERPRISE RENT-A-CAR COMPANY) AND
VANGUARD CAR RENTAL USA, LLC (F/K/A

VANGUARD CAR RENTAL USA, INC.)

26

DALE C. CAMPBELL
SCOTT M. PLAMONDON

_____
CHARLES L. POST

400 Capitol Mall, 11th Floor
Sacramento, CA  95814
Telephone:      (916) 558-6000
Facsimile:      (916) 446-1611

Kamala D. Harris
ATTORNEY GENERAL OF CALIFORNIA
W. Dean Freeman
Felix E. Leatherwood
Supervising Deputy Attorneys General
Ronald N. Ito
Diane S. Shaw
Lisa W. Chao
Deputy Attorneys General
300 South Spring Street
Los Angeles, CA 90013-1230
Telephone:      (213) 897-2000
Facsimile:      (213) 897-5775

Attorneys for Defendant California Travel
and Tourism Commission

DATED: _____

DOLLAR THRIFTY AUTOMOTIVE GROUP,
INC.

_____
By:

Its:

DATED: 5|15|12

ENTERPRISE HOLDING, INC. (F/K/A/
ENTERPRISE RENT-A-CAR COMPANY) AND
VANGUARD CAR RENTAL USA, LLC (F/K/A

VANGUARD CAR RENTAL USA, INC.)

By: _Mark I. Litow_

Its: _Vice President - Enterprise Holdings, Inc._
_Asst. Secy - Vanguard Car Rental USA, LLC_

DATED: _____          FOX RENT A CAR, INC.

By: _____

Its:

DATED: _____          THE HERTZ CORPORATION

By: _____

Its:

27

1

2                               By:

3                               Its:

4

5  DATED: **5 - 15 - 2012**          FOX RENT A CAR, INC.

6

7

8                               By: ARNOLD GOEHRING

9                               Its: VICE PRESIDENT

10

11

12  DATED: _____          THE HERTZ CORPORATION

13

14

15                               By:

16

17                               Its:

18

19

20

21

22

23

24

25

26

27

28

27

1

2 By: _____

3 Its: _____

4

5 DATED: _____   FOX RENT A CAR, INC.

6

7

8 By: _____

9 Its: _____

10

11

12 DATED: _____   THE HERTZ CORPORATION

13

14

15 By: _s/ John Zimmerman_

16 By: Jeffrey Zimmerman

17 Its: Senior Vice President, General Counsel & Secretary

18

19

20

21

22

23

24

25

26

27

28

27

# Exhibit 1a

**Page 3a:** *Election of Benefits Form – Login Page*

*Start Page Content*

<hr>

### Election of Benefits Form

Log In Page

Your ID Number appears at the top of the Legal Notice about Vehicles Rented at California Airports which you received via email or mail.

Please enter your ID Number in the box below.

If you do not have an ID Number, or if you are unable to log in using your ID Number, please contact the settlement administrator at 1-###-###-#### for further information and to request an Election of Benefits Form.

**ID Number:** _____

| Next Step |

*End Page Content*

<hr>

**Page 3b:** *Election of Benefits Form – Claimant Information Page*

*Start Page Content*

<hr>

**Election of Benefits Form**

ID #: xxxxxxxxxx

Claimant Information Page

Based on the ID Number you entered, this Election of Benefits Form will be used to file a claim for a vehicle(s) you rented from <<RCD>> at a California airport location between January 1, 2007 and November 14, 2007.

Also based on the ID Number you entered, <<RCD>>'s records show the following information about you.  Please update this information as needed or enter the information for any boxes that are blank (where required).  Required information is shown with an asterisk (*).

First name: *          | <<Class Member First Name>>

Last name: *          | <<Class Member Last Name>>

Company:             | <<Class Member's Company>>

C/o or Attn:          | <<Class Member's Attn or Contact>>

Address 1 *:          | <<Class Member Address 1>>

Address 2:            | <<Class Member Address 2>>

City *:              | <<Class Member City>>

State *:             | <<Class Member State>>

ZipCode *:           | <<Class Member ZipCode>>

*End Page Content*

**Page 3c(1)** *Election of Benefits Form <8 Days*

(This page will be displayed only for class members with <8 days)
*Start Page Content*

**Election of Benefits Form**
Rental Car Defendant: <<RCD>>
Number of Days Rented: <<# of days>>

ID #: xxxxxxxxxx

Benefits Selection Page

Based on the ID Number you entered, this form allows you to file an Election of Benefits for Subject Vehicles you have rented from <<RCD>>.

According to <<RCD>>'s records, you rented a Subject Vehicle(s) during the period covered by this settlement (the "Class Period") as follows:

| Number of Days Rented | Dates of Rental | Location of Rental |
|---|---|---|
| <<# of days>> | <<dates of rental>> | <<location of rental>> |

If you agree with the number of days listed above, please select one of the following benefits and click the "Submit Form" button.

| Select (check 1) | Option # | Description of Benefit |
|---|---|---|
| ☐ | Cash Option | $<<Cash Option Amount>>, which is the greater of $5 or $2 for each day that a Subject Rental was made from <<RCD>> |
| ☐ | Voucher Option 1 | One Voucher good for free time and mileage for *one* rental day |

Vouchers will be issued in the brand name of <<RCD>>, and will be available for use at any corporate-owned U.S. locations of that brand. To view a list of locations where your Voucher cannot be redeemed, please <hyperlink>click here</hyperlink>.

**Submit Form**

If you disagree with the number of days listed above, please enter the number of days you believe you rented a Subject Vehicle from <<RCD>> during the Class Period in the "Total Number of Days" box below and click the "Dispute" button.

Total Number of Days:

**Dispute**

*End Page Content*

**Page 3c(3)** *Election of Benefits Form – Dispute <8 Days*

(This page will be displayed only for class members who Dispute their total number of days and the total disputed days are <8 days)
*Start Page Content*

Based on the total number of days you provided, please select one of the following benefits:

| Select (check 1) | Option # | Description of Benefit |
|---|---|---|
| □ | Cash Option | $<<Cash Option Amount>>, which is the greater of $5 or $2 for each day that a Subject Rental was made from <<RCD>> |
| □ | Voucher Option 1 | One Voucher good for free time and mileage for *one* rental day |

Vouchers will be issued in the brand name of <<RCD>>, and will be available for use at any corporate-owned U.S. locations of that brand. To view a list of locations where your Voucher cannot be redeemed, please <hyperlink>click here</hyperlink>.

**Submitting Supporting Documents**:

You must submit documentation that supports any Subject Rental Days other than those identified in <<RCD>>'s records.  If your supporting documentation is not accepted by the settlement administrator, then you will receive Voucher Option 1 above.

Supporting documentation includes, but is not limited to, a copy of the rental contract, invoice or proof of payment referencing the transaction number, such as a credit card statement.  The documents should clearly state the Subject Rental Days and Rental Car Defendant name.  You must also include your full name, mailing address, and ID Number used to login to this website.

To submit your documentation, you must mail your documents to *Shames v. Hertz* Settlement Administrator, P.O. Box ####, Providence, RI #####-####, **OR** upload the documents to this website.  To upload documentation in support of your claim, please click the "Upload Documents" button. Once your documentation has been uploaded, please click "Submit Form."

| **Upload Document** | **Submit Form** |
|---|---|

*End Page Content*

**Page 3c(4)** *Election of Benefits Form – Dispute >=8 Days*

(This page will be displayed only for class members who Dispute their total number of days and the total disputed days are >=8 days)

*Start Page Content*

Based on the total number of days you provided, please select one of the following benefits:

| Select (check 1) | Option # | Description of Benefit |
|---|---|---|
| ☐ | Cash Option | The greater of $5 or $2 for each day that a Subject Rental was made from <<RCD>> |
| ☐ | Voucher Option 2 | Two Vouchers each good for free time and mileage for *one* rental day |
| ☐ | Voucher Option 3 | One voucher good for free time and mileage for *two* rental days. |

Vouchers will be issued in the brand name of <<RCD>>, and will be available for use at any corporate-owned U.S. locations of that brand. To view a list of locations where your Voucher(s) cannot be redeemed, please <hyperlink>click here</hyperlink>.

**Submitting Supporting Documents**:

You must submit documentation that supports any Subject Rental Days other than those identified in <<RCD>>'s records.  If your supporting documentation is not accepted and the total number of days approved by the settlement administrator is less than 8 days, then you will receive one Voucher good for free time and mileage for *one* rental day.

Supporting documentation includes, but is not limited to, a copy of the rental contract, invoice or proof of payment referencing the transaction number, such as a credit card statement.  The documents should clearly state the Subject Rental Days and Rental Car Defendant name.  You must also include your full name, mailing address, and ID Number used to login to this website.

To submit your documentation, you must mail your documents to *Shames v. Hertz* Settlement Administrator, P.O. Box ####, Providence, RI #####-####, **OR** upload the documents to this website.  To upload documentation in support of your claim, please click the "Upload Documents" button. Once your documentation has been uploaded, please click "Submit Form."

| **Upload Document** | **Submit Form** |
|---|---|

*End Page Content*

**Page 3c(2)** *Election of Benefits Form >=8 Days*

(This page will be displayed only for class members with >= 8 days)
*Start Page Content*

### Election of Benefits Form
Rental Car Defendant: <<RCD>>
Number of Days Rented: <<# of days>>

ID #: xxxxxxxxxx

Benefits Selection Page

Based on the ID Number you entered, this form allows you to file an Election of Benefits for Subject Vehicles you have rented from <<RCD>>.

According to <<RCD>>'s records, you rented a Subject Vehicle(s) during the period covered by this settlement (the "Class Period") as follows:

| Number of Days Rented | Dates of Rental | Location of Rental |
|---|---|---|
| <<# of days>> | <<dates of rental>> | <<location of rental>> |

If you agree with the number of days listed above, please select one of the following benefits and click the "Submit Form" button.

| Select (check 1) | Option # | Description of Benefit |
|---|---|---|
| ☐ | Cash Option | The greater of $5 or $2 for each day that a Subject Rental was made from <<RCD>> |
| ☐ | Voucher Option 2 | Two Vouchers each good for free time and mileage for *one* rental day |
| ☐ | Voucher Option 3 | One voucher good for free time and mileage for *two* rental days. |

Vouchers will be issued in the brand name of <<RCD>>, and will be available for use at any corporate-owned U.S. locations of that brand. To view a list of locations where your Voucher(s) cannot be redeemed, please <hyperlink>click here</hyperlink>.

**Submit Form**

If you disagree with the number of days listed above, please enter the number of days you believe you rented a Subject Vehicle from <<RCD>> during the Class Period in the "Total Number of Days" box below and click the "Dispute" button.

Total Number of Days:

**Dispute**

*End Page Content*

**Page 3c(5)** *Election of Benefits Form – Dispute >=8 Days*

(This page will be displayed only for class members who Dispute their total number of days and the total disputed days are >=8 days)

*Start Page Content*

Based on the total number of days you provided, please select one of the following benefits:

| **Select** (check 1) | **Option #** | **Description of Benefit** |
|---|---|---|
| ☐ | Cash Option | The greater of $5 or $2 for each day that a Subject Rental was made from <<RCD>> |
| ☐ | Voucher Option 2 | Two Vouchers each good for free time and mileage for *one* rental day |
| ☐ | Voucher Option 3 | One voucher good for free time and mileage for *two* rental days. |

Vouchers will be issued in the brand name of <<RCD>>, and will be available for use at any corporate-owned U.S. locations of that brand. To view a list of locations where your Voucher(s) cannot be redeemed, please <hyperlink>click here</hyperlink>.

**Submitting Supporting Documents**:

You must submit documentation that supports any Subject Rental Days other than those identified in <<RCD>>'s records. The settlement administrator will review your supporting documentation and make a determination on the total number of rental days in the Class Period.

Supporting documentation includes, but is not limited to, a copy of the rental contract, invoice or proof of payment referencing the transaction number, such as a credit card statement.  The documents should clearly state the Subject Rental Days and Rental Car Defendant name.  You must also include your full name, mailing address, and ID Number used to login to this website.

To submit your documentation, you must mail your documents to *Shames v. Hertz* Settlement Administrator, P.O. Box ####, Providence, RI #####-####, **OR** upload the documents to this website.  To upload documentation in support of your claim, please click the "Upload Documents" button. Once your documentation has been uploaded, please click "Submit Form."

| **Upload Document** | **Submit Form** |
|---|---|

*End Page Content*

**Page 3d:** *Election of Benefits Form – Review and Confirm Page*

*Start Page Content*

### Online Election of Benefits Form

### Review and Confirm

**Please review the information below to ensure it is correct.**

> ID Number: xxxxxxxxxx
> First name:
> Last name:
> Company:
> Attn or c/o:
> Qualifying Number of Subject Rental Days:
> Address 1:
> Address 2:
> City:
> State:
> Zip:
> Election:  Option # and Description
> Documents Uploaded? Yes/No:

**Warning:  Your Election of Benefits Form has NOT YET BEEN SUBMITTED.**

**You must click the "Submit Election Form" button below to submit your form.**

**Click Previous Step to go back and change the above information**

| **Previous Step** | **Submit Election Form** |
|:---:|:---:|

*End Page Content*

**Page 3e:** *Election of Benefits Form – Form Submitted Page*

*Start Page Content*

## Your Election of Benefits Form has been submitted.

You have successfully submitted your Election of Benefits Form.

To view a printable copy of your Election of Benefits Form formatted as a PDF file, please click on the "PDF View Form" button below:



Click <hyperlink>here</hyperlink> to return to the Home Page.

This document is formatted as a PDF file, and requires the Adobe Acrobat Reader software to be on your system. If your system does not have this software, click on the icon below to download it, at no charge:



*End Page Content*

# Exhibit 1b

**Page 3a:** *Election of Benefits Form – Login Page*

*Start Page Content*

---

### Election of Benefits Form

Log In Page

Your ID Number appears at the top of the Legal Notice about Vehicles Rented at California Airports which you received via email or mail.

Please enter your ID Number in the box below.

If you do not have an ID Number, or if you are unable to log in using your ID Number, please contact the settlement administrator at 1-###-###-#### for further information and to request an Election of Benefits Form.

**ID Number:** [                                    ]

[ **Next Step** ]

*End Page Content*

---

**Page 3b:** *Election of Benefits Form – Claimant Information Page*

*Start Page Content*

---

### Election of Benefits Form

ID #: xxxxxxxxxx

Claimant Information Page

Based on the ID Number you entered, this Election of Benefits Form will be used to file a claim for a vehicle(s) you rented from <<RCD>> at a California airport location between January 1, 2007 and November 14, 2007.

Also based on the ID Number you entered, <<RCD>>'s records show the following information about you.  Please update this information as needed or enter the information for any boxes that are blank (where required).  Required information is shown with an asterisk (*).

First name: *        <<Class Member First Name>>

Last name: *        <<Class Member Last Name>>

Company:        <<Class Member's Company>>

C/o or Attn:        <<Class Member's Attn or Contact>>


Address 1 *:        <<Class Member Address 1>>

Address 2:        <<Class Member Address 2>>

City *:        <<Class Member City>>

State *:        <<Class Member State>>

ZipCode *:        <<Class Member ZipCode>>

*End Page Content*

---

**Page 3c(1)** *Election of Benefits Form <8 Days*

(This page will be displayed only for class members with <8 days)
*Start Page Content*

**Election of Benefits Form**
Rental Car Defendant: <<RCD>>
Number of Days Rented: <<# of days>>

ID #: xxxxxxxxxx

Benefits Selection Page

Based on the ID Number you entered, this form allows you to file an Election of Benefits for Subject Vehicles you have rented from <<RCD>>.

According to <<RCD>>'s records, you rented a Subject Vehicle(s) during the period covered by this settlement (the "Class Period") as follows:

| Number of Days Rented | Dates of Rental | Location of Rental |
|---|---|---|
| <<# of days>> | <<dates of rental>> | <<location of rental>> |

If you agree with the number of days listed above, please select one of the following benefits and click the "Submit Form" button.

| Select (check 1) | Option # | Description of Benefit |
|---|---|---|
| ☐ | Cash Option | $<<Cash Option Amount>>, which is the greater of $5 or $2 for each day that a Subject Rental was made from <<RCD>> |
| ☐ | Voucher Option 1 | One Voucher good for free time and mileage for *one* rental day |

Vouchers will be available for use at any corporate-owned U.S. locations of Avis or Budget. To view a list of locations where your Voucher cannot be redeemed, please <hyperlink>click here</hyperlink>.

**Submit Form**

If you disagree with the number of days listed above, please enter the number of days you believe you rented a Subject Vehicle from <<RCD>> during the Class Period in the "Total Number of Days" box below and click the "Dispute" button.

Total Number of Days:

**Dispute**

*End Page Content*

**Page 3c(3)** *Election of Benefits Form – Dispute <8 Days*

(This page will be displayed only for class members who Dispute their total number of days and the total disputed days are <8 days)
*Start Page Content*

Based on the total number of days you provided, please select one of the following benefits:

| Select (check 1) | Option # | Description of Benefit |
|---|---|---|
| ☐ | Cash Option | $<<Cash Option Amount>>, which is the greater of $5 or $2 for each day that a Subject Rental was made from <<RCD>> |
| ☐ | Voucher Option 1 | One Voucher good for free time and mileage for *one* rental day |

Vouchers will be available for use at any corporate-owned U.S. locations of Avis or Budget.  To view a list of locations where your Voucher cannot be redeemed, please <hyperlink>click here</hyperlink>.

**Submitting Supporting Documents**:

You must submit documentation that supports any Subject Rental Days other than those identified in <<RCD>>'s records.  If your supporting documentation is not accepted by the settlement administrator, then you will receive Voucher Option 1 above.

Supporting documentation includes, but is not limited to, a copy of the rental contract, invoice or proof of payment referencing the transaction number, such as a credit card statement.  The documents should clearly state the Subject Rental Days and Rental Car Defendant name.  You must also include your full name, mailing address, and ID Number used to login to this website.

To submit your documentation, you must mail your documents to *Shames v. Hertz* Settlement Administrator, P.O. Box ####, Providence, RI #####-####, **OR** upload the documents to this website.  To upload documentation in support of your claim, please click the "Upload Documents" button. Once your documentation has been uploaded, please click "Submit Form."

| **Upload Document** | **Submit Form** |
|---|---|

*End Page Content*

**Page 3c(4)** *Election of Benefits Form – Dispute >=8 Days*

(This page will be displayed only for class members who Dispute their total number of days and the total disputed days are >=8 days)

*Start Page Content*

Based on the total number of days you provided, please select one of the following benefits:

| **Select** (check 1) | **Option #** | **Description of Benefit** |
|---|---|---|
| ☐ | Cash Option | The greater of $5 or $2 for each day that a Subject Rental was made from <<RCD>> |
| ☐ | Voucher Option 2 | Two Vouchers each good for free time and mileage for *one* rental day |
| ☐ | Voucher Option 3 | One voucher good for free time and mileage for *two* rental days. |

Vouchers will be available for use at any corporate-owned U.S. locations of Avis or Budget.  To view a list of locations where your Voucher(s) cannot be redeemed, please <hyperlink>click here</hyperlink>.

**Submitting Supporting Documents**:

You must submit documentation that supports any Subject Rental Days other than those identified in <<RCD>>'s records.  If your supporting documentation is not accepted and the total number of days approved by the settlement administrator is less than 8 days, then you will receive one Voucher good for free time and mileage for *one* rental day.

Supporting documentation includes, but is not limited to, a copy of the rental contract, invoice or proof of payment referencing the transaction number, such as a credit card statement.  The documents should clearly state the Subject Rental Days and Rental Car Defendant name.  You must also include your full name, mailing address, and ID Number used to login to this website.

To submit your documentation, you must mail your documents to *Shames v. Hertz* Settlement Administrator, P.O. Box ####, Providence, RI #####-####, **OR** upload the documents to this website.  To upload documentation in support of your claim, please click the "Upload Documents" button. Once your documentation has been uploaded, please click "Submit Form."

| **Upload Document** | **Submit Form** |
|---|---|

*End Page Content*

**Page 3c(2)** *Election of Benefits Form >=8 Days*

(This page will be displayed only for class members with >= 8 days)
*Start Page Content*

### Election of Benefits Form
Rental Car Defendant: <<RCD>>
Number of Days Rented: <<# of days>>

ID #: xxxxxxxxxx

Benefits Selection Page

Based on the ID Number you entered, this form allows you to file an Election of Benefits for Subject Vehicles you have rented from <<RCD>>.

According to <<RCD>>'s records, you rented a Subject Vehicle(s) during the period covered by this settlement (the "Class Period") as follows:

| Number of Days Rented | Dates of Rental | Location of Rental |
|---|---|---|
| <<# of days>> | <<dates of rental>> | <<location of rental>> |

If you agree with the number of days listed above, please select one of the following benefits and click the "Submit Form" button.

| Select (check 1) | Option # | Description of Benefit |
|---|---|---|
| ☐ | Cash Option | The greater of $5 or $2 for each day that a Subject Rental was made from <<RCD>> |
| ☐ | Voucher Option 2 | Two Vouchers each good for free time and mileage for *one* rental day |
| ☐ | Voucher Option 3 | One voucher good for free time and mileage for *two* rental days. |

Vouchers will be available for use at any corporate-owned U.S. locations of Avis or Budget.  To view a list of locations where your Voucher(s) cannot be redeemed, please <hyperlink>click here</hyperlink>.

**Submit Form**

If you disagree with the number of days listed above, please enter the number of days you believe you rented a Subject Vehicle from <<RCD>> during the Class Period in the "Total Number of Days" box below and click the "Dispute" button.

Total Number of Days:

**Dispute**

*End Page Content*

**Page 3c(5)** *Election of Benefits Form – Dispute >=8 Days*

(This page will be displayed only for class members who Dispute their total number of days and the total disputed days are >=8 days)

*Start Page Content*

Based on the total number of days you provided, please select one of the following benefits:

| **Select** (check 1) | **Option #** | **Description of Benefit** |
|---|---|---|
| ☐ | Cash Option | The greater of $5 or $2 for each day that a Subject Rental was made from <<RCD>> |
| ☐ | Voucher Option 2 | Two Vouchers each good for free time and mileage for *one* rental day |
| ☐ | Voucher Option 3 | One voucher good for free time and mileage for *two* rental days. |

Vouchers will be available for use at any corporate-owned U.S. locations of Avis or Budget.  To view a list of locations where your Voucher(s) cannot be redeemed, please <hyperlink>click here</hyperlink>.

**Submitting Supporting Documents**:

You must submit documentation that supports any Subject Rental Days other than those identified in <<RCD>>'s records. The settlement administrator will review your supporting documentation and make a determination on the total number of rental days in the Class Period.

Supporting documentation includes, but is not limited to, a copy of the rental contract, invoice or proof of payment referencing the transaction number, such as a credit card statement.  The documents should clearly state the Subject Rental Days and Rental Car Defendant name.  You must also include your full name, mailing address, and ID Number used to login to this website.

To submit your documentation, you must mail your documents to *Shames v. Hertz* Settlement Administrator, P.O. Box ####, Providence, RI #####-####, **OR** upload the documents to this website.  To upload documentation in support of your claim, please click the "Upload Documents" button. Once your documentation has been uploaded, please click "Submit Form."

| **Upload Document** | **Submit Form** |
|---|---|

*End Page Content*

**Page 3d:** *Election of Benefits Form – Review and Confirm Page*

*Start Page Content*

## Online Election of Benefits Form

## Review and Confirm

**Please review the information below to ensure it is correct.**

> ID Number: xxxxxxxxxx
> First name:
> Last name:
> Company:
> Attn or c/o:
> Qualifying Number of Subject Rental Days:
> Address 1:
> Address 2:
> City:
> State:
> Zip:
> Election:  Option # and Description
> Documents Uploaded? Yes/No:

**Warning:  Your Election of Benefits Form has NOT YET BEEN SUBMITTED.**

**You must click the "Submit Election Form" button below to submit your form.**

**Click Previous Step to go back and change the above information**

| **Previous Step** | **Submit Election Form** |
|:---:|:---:|

*End Page Content*

**Page 3e:** *Election of Benefits Form – Form Submitted Page*

*Start Page Content*

## Your Election of Benefits Form has been submitted.

You have successfully submitted your Election of Benefits Form.

To view a printable copy of your Election of Benefits Form formatted as a PDF file, please click on the "PDF View Form" button below:



Click <hyperlink>here</hyperlink> to return to the Home Page.

This document is formatted as a PDF file, and requires the Adobe Acrobat Reader software to be on your system. If your system does not have this software, click on the icon below to download it, at no charge:



*End Page Content*

# Exhibit 2

1

2

3

4

5

6

7

8                    **IN THE UNITED STATES DISTRICT COURT**

9                      **SOUTHERN DISTRICT OF CALIFORNIA**

10    MICHAEL SHAMES; GARY GRAMKOW,           Case No. 07cv2174-MMA(WMc)
      on behalf of themselves and on behalf of all
11    persons similarly situated,                      **CLASS ACTION**

12                          Plaintiffs,               **[PROPOSED] FINAL JUDGMENT AND
                                                      ORDER OF DISMISSAL WITH**
13    v.                                              **PREJUDICE**

14    THE HERTZ CORPORATION, et al.,
                                                      **EXHIBIT 2**
15                          Defendants.

16

17

18

19

20

21

22

23

24

25

26

27

28

This matter came before the Court for hearing pursuant to the Order Preliminarily Approving Settlement and Providing for Notice ("Order") dated _____, 2012, on the application of the parties for approval of the settlement set forth in the Stipulation of Settlement dated as of _____, 2012 (the "Stipulation").  Due and adequate notice having been given to the Class as required in said Order, and the Court having considered all papers filed and proceedings had herein and otherwise being fully informed in the premises and good cause appearing therefore, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that:

1.      This Final Judgment And Order Of Dismissal With Prejudice incorporates by reference the definitions in the Stipulation, and all terms used herein shall have the same meanings as set forth in the Stipulation, unless otherwise set forth herein.

2.      This Court has jurisdiction over the subject matter of the Litigation and over all parties to the Litigation, including all Class Members.

3.      The Court hereby finally certifies a Class defined as: all Persons (other than those Persons who timely and validly requested exclusion from the Class) who rented a car directly from a Rental Car Defendant for pick up at a California Airport Location during the period from January 1, 2007 through November 14, 2007, inclusive, and were charged and paid to the Rental Car Defendant an Airport Concession Fee and/or Tourism Commission Assessment Fee for that rental car as a separate line item(s) on their invoices.  Excluded from the Class are: (i) rentals made pursuant to a pre-existing agreement between a business or governmental entity and a Rental Car Defendant pursuant to which the rental charge was determined; and (ii) rentals in which the customer paid a package price to a third party tour operator or on-line booking agency rather than a Rental Car Defendant.  Also excluded from the Class are the Defendants, the directors, officers, subsidiaries, and affiliates of Defendants, any person, firm, trust, corporation, officer, director or other individual or entity in which any Defendant has a controlling interest, and the legal representatives, affiliates, heirs, successors-in-interest or assigns of any such excluded person, Related Parties as well as any judges or mediators involved in the Litigation (including the Hon. Michael M. Anello, Magistrate Judge McCurine, and the Hon. Ronald

1

Sabraw (ret.)).  The Persons who submitted timely and valid requests for exclusion from the Class are set forth in Exhibit 1 attached hereto.

4.     Pursuant to Federal Rule of Civil Procedure 23, the Court hereby approves the settlement set forth in the Stipulation as fair, reasonable, and adequate.

5.     Accordingly, the Court authorizes and directs implementation and performance of all the terms and provisions of the Stipulation, as well as the terms and provisions hereof.  The Court hereby dismisses the Litigation and all Released Claims of the Class with prejudice without costs as to any party, except as and to the extent provided in the Stipulation and herein.

6.     Upon the Effective Date, the Plaintiff, and each and every Class Member, and anyone claiming through or on behalf of any of them, shall be deemed to have, and by operation of this Judgment shall have, fully, finally, and forever waived, released, relinquished, discharged, and dismissed each and every one of the Released Claims against each and every one of the Released Persons, whether or not such Class Member shares in the settlement benefits.

7.     Upon the Effective Date, all Class Members are hereby forever barred and enjoined from commencing, prosecuting, or continuing to prosecute any of the Released Claims against any of the Released Persons.

8.     Upon the Effective Date, this Final Judgment And Order Of Dismissal With Prejudice constitutes the final discharge of all Defendants' obligations in the Litigation.

9.     Upon the Effective Date, each of the Released Persons shall be deemed to have, and by operation of this Judgment shall have, fully, finally, and forever released, relinquished, and discharged Plaintiffs and Plaintiffs' Counsel from all claims (including Unknown Claims) arising out of, relating to, or in connection with the institution, prosecution, assertion, settlement or resolution of the Litigation or the Released Claims.

10.     The Class Notice was the best notice practicable under the circumstances, including the individual notice to all Class Members who could be identified through reasonable effort.   Said Notice provided the best notice practicable under the circumstances of those proceedings and of the matters set forth therein, including fully and accurately informing the Class of all material elements of the proposed settlement set forth in the Stipulation, to all Persons

entitled to such notice, and said notice fully satisfied the requirements of Federal Rule of Civil Procedure 23 and the requirements of due process.

11.     Any order entered regarding any attorneys' fee and expense application or incentive awards to the Plaintiffs shall in no way disturb or affect this Final Judgment and shall be considered separate from this Final Judgment.

12.     Neither the Stipulation, nor any act performed or document executed pursuant to or in furtherance of the Stipulation: (a) is or may be deemed to be or may be used as an admission of, or evidence of, the validity of any Released Claim, or of any wrongdoing or liability of the Defendants or their respective Related Parties, (b) is or may be deemed to be or may be used as an admission of, or evidence of, any fault or omission of any of the Defendants or their respective Related Parties in any civil, criminal, or administrative proceeding in any court, administrative agency, or other tribunal, or (c) is or may be deemed to be or may be used as an admission of, or evidence of the propriety of certification of the Class for any purpose other than this settlement. The Defendants and/or their respective Related Parties may file the Stipulation and/or this Judgment from this action in any other action that may be brought against them in order to support a defense or counterclaim based on principles of *res judicata*, collateral estoppel, release, good faith settlement, judgment bar or reduction, or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

13.     Without affecting the finality of this Judgment in any way, this Court hereby retains continuing jurisdiction over: (a) implementation of this settlement; (b) hearing and determining applications for attorneys' fees and expenses in the Litigation; and (c) all parties hereto for the purpose of construing, enforcing, and administering the Stipulation.

14.     The Court finds that during the course of the Litigation, the Settling Parties and their respective counsel at all times complied with the requirements of Federal Rule of Civil Procedure 11.

15.     In the event that the settlement does not become effective in accordance with the terms of the Stipulation, or the Effective Date does not occur, then this Final Judgment shall be rendered null and void to the extent provided by and in accordance with the Stipulation and shall

1    be vacated and, in such event, all orders entered and releases delivered in connection herewith

2    shall be null and void to the extent provided by and in accordance with the Stipulation.

3         16.    Without further order of the Court, the Settling Parties may agree to reasonable

4    extensions of time to carry out any of the provisions of the Stipulation.

5         IT IS SO ORDERED.

6    DATED:  _____

7                                    _____
                                     HONORABLE MICHAEL M. ANELLO
8                                    UNITED STATES DISTRICT JUDGE

9    Submitted by:

10   HULETT HARPER STEWART LLP
     DENNIS STEWART
11

12   _____
     DENNIS STEWART
13

14   525 B Street, Suite 760
     San Diego, CA  92101
15   Telephone:    (619) 338-1133
     Facsimile:    (619) 338-1139
16
     SULLIVAN, HILL, LEWIN, REZ & ENGEL
17   A Professional Law Corporation
     DONALD G. REZ
18   550 West C Street, Suite 1500
     San Diego, CA  92101
19   Telephone:    (619) 233-4100
     Facsimile:    (619) 231-4372
20

21   Lead Counsel for Plaintiffs

22

23

24

25

26

27

28

# Exhibit 3a

To:
From: administrator@ACFTCAsettlement.com
Subject: Legal Notice about Vehicles Rented at California Airports

**To file your Election of Benefits Form online:**
**ID Number: XXXXXXX**

### You can file a claim for cash or vouchers from a class action settlement about your rental of a vehicle at a California airport location from January 1, 2007 to November 14, 2007.

A settlement has been reached with The Hertz Corporation, Dollar Thrifty Automotive Group, Inc., Avis Budget Group, Inc., Vanguard Car Rental USA, LLC, Enterprise Holdings, Inc., Fox Rent A Car, Inc. and the California Travel and Tourism Commission in a class action lawsuit claiming that these companies agreed with each other to pass on the Airport Concession Fee (ACF) and Tourism Commission Assessment (TCA) to customers for rentals at certain California airport locations. The Defendants deny all of the claims in the lawsuit, but have agreed to the settlement to avoid the cost and risk of a trial.

WHO IS INCLUDED? Defendants' records show that you are included in the settlement. Generally, the settlement includes people who rented a vehicle directly from corporate-owned locations of Alamo, Avis, Budget, Dollar, Enterprise, Fox Rent A Car, Hertz, National, or Thrifty for pick up at a California airport location from January 1, 2007 through November 14, 2007, and who were charged and paid an ACF and/or TCA as a separate line item on their invoice. Rentals from non-corporate owned airport locations, rentals made as part of a pre-existing agreement with a business or governmental body according to which the rental charge was determined, and rentals where a package price was paid to a tour operator or online booking agency (like Priceline or Hotwire) are not included and are not entitled to cash payments or vouchers.

WHAT CAN YOU GET? You can elect to receive one of the cash or voucher options below based on the total number of days you rented one or more vehicles directly from that rental car defendant at a California airport location from January 1, 2007 to November 14, 2007, and paid an ACF and/or TCA as a separate line item on your invoice. Benefit options are:

| Total number of rental days | Option | Description |
|---|---|---|
| Any | Cash | $2 per day ($5 minimum payment) |
| Less than eight | One—One Day Voucher | one voucher good for free time and mileage for one rental day |
| Eight or more | Two—One Day Vouchers | two vouchers, each good for free time and mileage for one rental day; or |

| | One—Two Day Voucher | one voucher good for free time and mileage for <u>two</u> rental days |
|---|---|---|

Vouchers will be issued in the brand name of the rental car company that charged and collected the ACF and/or TCA, and will be available for use at any of that rental car company's U.S. corporate-owned locations. Avis and Budget vouchers may be redeemed at an Avis or Budget U.S. corporate-owned location. The settlement will also require the California Travel and Tourism Commission to adopt certain practices related to meetings and its communications with the public and rental car companies about Tourism Commission Assessments.

**How to Get Benefits?** You must submit an Election of Benefits Form by **Month 00, 2012** to get a cash payment or vouchers. Using the ID number above, you can submit a form online at <u>www.ACFTCAsettlement.com</u>. You may also request one by calling 1-000-000-0000 or by sending a letter by mail to the claims administrator.

**Your Other Options?** If you submit an Election of Benefits Form or do nothing, you will be legally bound by the settlement and you will give up your right to sue the Defendants for any claim asserted in this lawsuit or released by the Stipulation of Settlement. If you do not want to be legally bound by the settlement or be able to get a cash payment or voucher from it, you must exclude yourself by **Month 00, 2012**. If you do not exclude yourself, you may object to the settlement or you may ask for permission for you or your lawyer to appear and speak at the hearing—at your own cost—but you don't have to. The deadline to submit objections and requests to appear is **Month 00, 2012**. The detailed notice, available at the website, explains how to act on all of your options.

The Court will hold a hearing on **Month 00, 2012** to consider whether to approve: the settlement; attorneys' fees, costs, and expenses of up to $5,870,000; and a $2,000 payment to the Class Representative. These fees, costs, expenses and payments will be paid separately by the Defendants and will not reduce the amount of cash or vouchers available. The complete terms of the settlement, including the benefits you may be entitled to receive and the rights you may be giving up are contained in the Stipulation of Settlement, which may be found online at www.ACFTCAsettlement.com.

**File your claim online at <u>www.ACFTCAsettlement.com</u>. You may also request an Election of Benefits Form and more information by calling 1-000-000-0000.**

# Exhibit 3b

To:
From: administrator@ACFTCAsettlement.com
Subject: Reminder Notice about Vehicles Rented at California Airports

**To file your Election of Benefits Form online:**
**ID Number: XXXXXXX**

<u>**Reminder: Submission deadline is Month 00, 2012**</u>
**You can file a claim for cash or vouchers from a class action settlement about your rental of a vehicle at a California airport location.**

Records show that you rented a vehicle directly from a corporate-owned location of Alamo, Avis, Budget, Dollar, Enterprise, Fox Rent A Car, Hertz, National, or Thrifty for pick up at a California airport location between January 1, 2007 and November 14, 2007, and were charged and paid an Airport Concession Fee (ACF) and/or Tourism Commission Assessment (TCA) as a separate line item on your invoice. You can elect to receive one of the cash or voucher options below based on the total number of days you rented one or more vehicles directly from that rental car defendant at a California airport location from January 1, 2007 to November 14, 2007, and paid an ACF and/or TCA as a separate line item on your invoice. Benefit options are:

| Total number of rental days | Option | Description |
|---|---|---|
| Any | Cash | $2 per day ($5 minimum payment) |
| Less than eight | One—One Day Voucher | one voucher good for free time and mileage for <u>one</u> rental day |
| Eight or more | Two—One Day Vouchers | two vouchers, each good for free time and mileage for <u>one</u> rental day; or |
| | One—Two Day Voucher | one voucher good for free time and mileage for <u>two</u> rental days |

Rentals from non-corporate owned airport locations, rentals made as part of a pre-existing agreement with a business or governmental body according to which the rental charge was determined, and rentals where a package price was paid to a tour operator or online booking agency (like Priceline or Hotwire) are <u>not</u> included and are <u>not</u> entitled to cash payments or vouchers.

Vouchers will be issued in the brand name of the rental car company that charged and collected the ACF and/or TCA, and will be available for use at that rental car company's U.S. corporate-owned locations. Avis and Budget vouchers may be redeemed at an Avis or Budget U.S. corporate-owned location.

To get your cash payment or voucher you must submit an Election of Benefits Form. Using the ID number above, you can submit a form online at www.ACFTCAsettlement.com. You may also request one by calling 1-000-000-0000 or by sending a letter by mail to the claims administrator. **Remember, the deadline to submit or mail your Election of Benefits Form is Month 00, 2012**.

The cash payments and vouchers are the result of a settlement that was reached with The Hertz Corporation, Dollar Thrifty Automotive Group, Inc., Avis Budget Group, Inc., Vanguard Car Rental USA, LLC, Enterprise Holdings, Inc., Fox Rent A Car, Inc. and the California Travel and Tourism Commission in a class action lawsuit claiming that these companies agreed with each other to pass on the Airport Concession Fee and Tourism Commission Assessment to customers for rentals at certain California airport locations. The Defendants deny all of the claims in the lawsuit, but have agreed to the settlement to avoid the cost and risk of a trial.  The settlement will also require the California Travel and Tourism Commission to adopt certain practices related to meetings and its communications with the public and rental car companies about Tourism Commission Assessments.

**File your claim online at <u>www.ACFTCAsettlement.com</u>. You may also request an Election of Benefits Form and more information by calling 1-000-000-0000.**

# Exhibit 3c

A settlement has been reached with The Hertz Corporation, Dollar Thrifty Automotive Group, Inc., Avis Budget Group, Inc., Vanguard Car Rental USA, LLC, Enterprise Holdings, Inc., Fox Rent A Car, Inc. and the California Travel and Tourism Commission in a class action lawsuit claiming that these companies agreed with each other to pass on the Airport Concession Fee (ACF) and Tourism Commission Assessment (TCA) to customers for rentals at certain California airport locations. The Defendants deny all of the claims in the lawsuit, but have agreed to the settlement to avoid the cost and risk of a trial.

**Who's Included?** Defendants' records show that you are included in the settlement. Generally, the settlement includes people who rented a vehicle directly from corporate-owned locations of Alamo, Avis, Budget, Dollar, Enterprise, Fox Rent A Car, Hertz, National, or Thrifty for pick up at a California airport location from January 1, 2007 through November 14, 2007, and were charged and paid an ACF and/or TCA as a separate line item on their invoice. Rentals from non-corporate owned airport locations, rentals made as part of a pre-existing agreement with a business or governmental according to which the rental charge was determined, and rentals where a package price was paid to a tour operator or online booking agency (like Priceline or Hotwire) are not included and are not entitled to cash payments or vouchers.

**What Can You Get?** You can elect to receive one of the options below based on the total number of days you rented one or more vehicles directly from that rental car defendant at a California airport location from 1/1/07 to 11/14/07, and paid an ACF and/or TCA as a separate line item on your invoice. Options are: (1) $2 for each day the vehicles were rented ($5 minimum payment); or (2) if the vehicles were rented for less than 8 days, one voucher good for free time and mileage for one rental day; or (3) if the vehicles were rented for 8 or more days, either (a) two—one day vouchers each good for free time and mileage for one rental day, or (b) one—two day voucher good for free time and mileage for two rental days. Vouchers will be issued in the brand name of each rental car company that charged you the ACF and/or TCA, and will be available for use at any of that rental car company's U.S. corporate-owned locations.

**How to Get Benefits?** Use the code on the front of this postcard to submit your Election of Benefits Form online by **Month 00, 2012**. Forms are also available at www.ACFTCAsettlement.com or by calling 1-000-000-0000.

**Your Other Options**. If you do nothing, your rights will be affected. If you don't want to be legally bound by the settlement, you must exclude yourself from it by **Month 00, 2012**. Unless you exclude yourself you won't be able to sue the Defendants for any claim asserted in this lawsuit or released by the Stipulation of Settlement. If you stay in the settlement (i.e., don't exclude yourself), you may object to it or you may ask for permission for you or your own lawyer to appear and speak at the hearing—at your own cost—but you don't have to. Objections and requests to appear are due by **Month 00, 2012**. More information is in the detailed notice and Stipulation of Settlement which are available at the website.

The Court will hold a hearing on Month 00, 2012 to consider whether to approve: the settlement; attorneys' fees, costs, and expenses of up to $5,870,000; and a $2,000 payment to the Class Representative.

**File your Election of Benefits Form online at www.ACFTCAsettlement.com or get one by calling 1-000-000-0000.**

LEGAL NOTICE

**You can file a claim for cash or vouchers from a class action settlement because you rented a vehicle from a California airport location between January 1, 2007 and November 14, 2007.**

**1-000-000-0000**
**www.ACFTCAsettlement.com**

HZS

ACF/TCA
Settlement Administrator
P.O. Box 0000
City, ST 00000-0000

Presorted
First-Class Mail
U.S. Postage
PAID
City, ST
Permit No. 0000

Postal Service: Please Do Not Mark Barcode

{BARCODE}
JOHN Q CLASSMEMBER
123 ABC STREET
NOVATO, CA 94948-0000

Election of Benefits ID#: [XXXXXXXXXXXX]
(use ID to file your claim online)

# Exhibit 3d

LEGAL NOTICE

# If you rented a vehicle at a California airport location between January 1, 2007 and November 14, 2007, you may be entitled to cash or vouchers from a class action settlement.

A settlement has been reached with The Hertz Corporation, Dollar Thrifty Automotive Group, Inc., Avis Budget Group, Inc., Vanguard Car Rental USA, LLC, Enterprise Holdings, Inc., Fox Rent A Car, Inc. and the California Travel and Tourism Commission in a class action lawsuit claiming that these companies agreed with each other to pass on the Airport Concession Fee (ACF) and Tourism Commission Assessment (TCA) to customers for rentals at certain California airport locations. The Defendants deny all of the claims in the lawsuit, but have agreed to the settlement to avoid the cost and risk of a trial.

**WHO IS INCLUDED?** Generally, the settlement includes people who rented a vehicle directly from corporate-owned locations of Alamo, Avis, Budget, Dollar, Enterprise, Fox Rent A Car, Hertz, National or Thrifty for pick up at a California airport location from 1/1/07-11/14/07, and were charged and paid to the rental car company an ACF and/or TCA as a separate line item on their invoice. Rentals from non-corporate owned airport locations, rentals made as part of a pre-existing agreement with a business or governmental body according to which the rental charge was determined, and rentals where a package price was paid to a tour operator or online booking agency (like Priceline or Hotwire) are not included and are not entitled to cash payments or vouchers.

**WHAT DOES THE SETTLEMENT PROVIDE?** Those included in the settlement can elect to receive one of the following options based on the total number of days they rented one or more vehicles directly from that rental car defendant at a California airport location from 1/1/07 to 11/14/07, and paid an ACF and/or TCA as a separate line item on their invoice. Options are: (1) $2 for each day the vehicles were rented ($5 minimum payment); or (2) if the vehicles were rented for less than eight days, one voucher good for free time and mileage for one rental day; or (3) if the vehicles were rented for eight or more days, the choice of either (a) two—one day vouchers each good for free time and mileage for one rental day, or (b) one—two day voucher good for free time and mileage

for two rental days. Vouchers will be issued in the brand name of the rental car company that charged and collected the ACF and/or TCA, and will be available for use at any of that rental car company's U.S. corporate-owned locations.

**HOW DO YOU ASK FOR A CASH PAYMENT OR VOUCHER?** Submit an Election of Benefits Form online by **Month 00, 2012**. Forms are also available at the website or by calling 1-000-000-0000.

**WHAT ARE YOUR OPTIONS?** If you submit an Election of Benefits Form or do nothing, you will be legally bound by the settlement and give up your right to sue the Defendants for any claim asserted in this lawsuit or released by the Stipulation of Settlement. If you do not want to be legally bound by the settlement or be able to get a cash payment or voucher from it, you must exclude yourself by **Month 00, 2012**. If you do not exclude yourself, you may object to the settlement or you may ask for permission for you or your lawyer to appear and speak at the hearing—at your own cost—but you don't have to. The deadline to submit objections and requests to appear is **Month 00, 2012**.

**THE COURT'S FAIRNESS HEARING.** The U.S. District Court for the Southern District of California will hold a hearing in this case (*Shames v. The Hertz Corp.*, No. 07cv2174-MMA), on Month 00, 2012 to consider whether to approve the settlement, payment of attorneys' fees, costs, and expenses of up to $5,870,000 and a $2,000 payment to the Class Representative.

**HOW DO YOU GET MORE INFORMATION?** More information is in the detailed notice and Stipulation of Settlement which are available at the website. You can also call or write to ACF/TCA Settlement Administrator, c/o KCC LLC, PO Box 0000, City, ST 00000-0000.

## 1-000-000-0000
## www.ACFTCAsettlement.com

# Exhibit 3e

LEGAL NOTICE

# Reminder: Submission deadline is Month 00, 2012

## If you rented a vehicle at a California airport location between January 1, 2007 and November 14, 2007, you may be entitled to cash or vouchers.

If you rented a vehicle directly from corporate-owned locations of Alamo, Avis, Budget, Dollar, Enterprise, Fox Rent A Car, Hertz, National, or Thrifty for pick up at a California airport location from January 1, 2007 through November 14, 2007, and you were charged and paid an Airport Concession Fee (ACF) and/or Tourism Commission Assessment (TCA) as a separate line item on your invoice you may be entitled to a cash payment or vouchers from a class action settlement. Benefit options are: (1) $2 for each day the vehicles were rented ($5 minimum payment); or (2) if the vehicles were rented for less than eight days, one voucher good for free time and mileage for <u>one</u> rental day; or (3) if the vehicles were rented for eight or more days, the choice of either (a) two—one day vouchers each good for free time and mileage for <u>one</u> rental day, or (b) one—two day voucher good for free time and mileage for <u>two</u> rental days. Rentals from non-corporate owned airport location, rentals made as part of a pre-existing agreement with a business or governmental body according to which the rental charge was determined, and rentals where a package price was paid to a tour operator or online booking agency (such as Priceline or Hotwire) are <u>not</u> included and are <u>not</u> entitled to cash payments or vouchers.

Vouchers will be issued in the brand name of the rental car company that charged and collected the ACF and/or TCA, and will be available for use at any of that rental car company's U.S. corporate-owned locations.

To get your cash payment or voucher you must submit an Election of Benefits Form. You may submit a form online or request one by calling 1-000-000-0000. Remember, the deadline to submit or mail your Election of Benefits Form is **Month 00, 2012**.

The cash payments and vouchers are the result of a settlement that was reached with The Hertz Corporation, Dollar Thrifty Automotive Group, Inc., Avis Budget Group, Inc., Vanguard Car Rental USA, LLC, Enterprise Holdings, Inc., Fox Rent A Car, Inc. and the California Travel and Tourism Commission in a class action lawsuit claiming that these companies agreed with each other to pass on the ACF and TCA to customers for rentals at certain California airport locations. The Defendants deny all of the claims in the lawsuit, but have agreed to the settlement to avoid the cost and risk of a trial.  The settlement will also require the California Travel and Tourism Commission to adopt certain practices related to meetings and its communications with the public and rental car companies about Tourism Commission Assessments.

## File your Election of Benefits Form online at www.ACFTCAsettlement.com or get one by calling 1-000-000-0000.

# Exhibit 3f

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF CALIFORNIA

# If you rented a vehicle at a California airport location between January 1, 2007 and November 14, 2007, you may be entitled to cash or vouchers from a class action settlement.

*A court authorized this Notice. This is <u>not</u> a solicitation from a lawyer.*

- A settlement has been reached in a class action lawsuit claiming that certain car rental companies agreed with each other to pass on the Airport Concession Fee and Tourism Commission Assessment to customers who rented vehicles from certain California airport locations.

- The settlement provides cash payments or vouchers to those included in the settlement.

- The settlement will also require the California Travel and Tourism Commission to adopt certain practices related to meetings and its communications with the public and rental car companies about Tourism Commission Assessments.

- This notice summarizes the proposed settlement. The complete terms of the settlement, including information describing the benefits you may be entitled to receive and the rights you may be giving up, are contained in the Stipulation of Settlement, which may be found online at www.ACFTCAsettlement.com.

- Your legal rights are affected whether you act or don't act. Read this notice carefully.

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT: | |
| --- | --- |
| SUBMIT AN ELECTION OF BENEFITS FORM | The only way to get a cash payment or voucher. |
| EXCLUDE YOURSELF | Get no payment or voucher. This is the only option that allows you to ever be part of another lawsuit against the Defendants about the legal claims asserted in this lawsuit or released through the settlement. |
| OBJECT | Write to the Court about why you don't like the settlement. |
| GO TO A HEARING | Ask to speak in Court about the fairness of the settlement. |
| DO NOTHING | Get no payment or voucher. Give up rights. |

- These rights and options—**and the deadlines to exercise them**—are explained in this notice.

- The Court in charge of this case still has to decide whether to approve the settlement. Cash payments will be made and vouchers will be distributed only if the Court approves the settlement and after any appeals are resolved. Please be patient.

QUESTIONS? CALL 1-800-000-0000 TOLL FREE OR VISIT WWW.ACFTCASETTLEMENT.COM

| WHAT THIS NOTICE CONTAINS |
|---|

**BASIC INFORMATION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . PAGE 3
    1.   Why was this notice issued?
    2.   What is this lawsuit about?
    3.   What is a class action?
    4.   Why is there a settlement?

**WHO IS INCLUDED IN THE SETTLEMENT** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . PAGE 3
    5.   How do I know if I am part of the settlement?
    6.   Are there exceptions to being included in the settlement?
    7.   What if I am still not sure if I am included?

**THE SETTLEMENT BENEFITS—WHAT YOU CAN GET** . . . . . . . . . . . . . . . . . . . . . . . . . PAGE 4
    8.   What does the settlement provide?
    9.   Tell me more about the vouchers.

**HOW TO GET BENEFITS—SUBMITTING AN ELECTION OF BENEFITS FORM** . . . . . . . . . . . PAGE 5
    10.   How can I get a cash payment or voucher?
    11.   When will I get my cash payment or voucher?
    12.   What rights am I giving up to get a cash payment or voucher and stay in the Class?

**EXCLUDING YOURSELF FROM THE SETTLEMENT** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . PAGE 5
    13.   How do I get out of the settlement?
    14.   If I exclude myself, will I still get a cash payment or voucher from this settlement?
    15.   If I don't exclude myself, can I sue the Defendants for the same claims later?

**THE LAWYERS REPRESENTING YOU** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . PAGE 6
    16.   Do I have a lawyer in this case?
    17.   How will the lawyers be paid?

**OBJECTING TO THE SETTLEMENT** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . PAGE 6
    18.   How do I tell the Court if I don't like the settlement?
    19.   What's the difference between objecting to the settlement and excluding myself from it?

**THE COURT'S FAIRNESS HEARING** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . PAGE 6
    20.   When and where will the Court decide whether to approve the settlement?
    21.   Do I have to come to the hearing?
    22.   May I speak at the hearing?

**IF YOU DO NOTHING** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . PAGE 7
    23.   What happens if I do nothing at all?

**GETTING MORE INFORMATION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . PAGE 7
    24.   Are there more details about the settlement?
    25.   How do I get more information?

QUESTIONS?  CALL **1-800-000-0000** TOLL FREE OR VISIT WWW.ACFTCASETTLEMENT.COM

# BASIC INFORMATION

### 1. Why was this notice issued?

A Court authorized this notice because you have a right to know about the proposed settlement of this class action lawsuit and about all of your options before the Court decides whether to approve the settlement. This notice explains the lawsuit, the settlement, your legal rights, what benefits are available, and who can get them.

Judge Michael M. Anello of the United States District Court for the Southern District of California is overseeing this class action. The case is known as *Shames v. The Hertz Corporation*, Case No. 07cv2174-MMA. The people who sued are called the Plaintiffs and the companies they sued, The Hertz Corporation, Dollar Thrifty Automotive Group, Inc., Avis Budget Group, Inc., Vanguard Car Rental USA, LLC, Enterprise Holdings, Inc., Fox Rent A Car, Inc. and the California Travel and Tourism Commission, are called the Defendants. The Hertz Corporation, Dollar Thrifty Automotive Group, Inc., Avis Budget Group, Inc., Vanguard Car Rental USA, LLC, Enterprise Holdings, Inc., and Fox Rent A Car, Inc. may also be referred to as the Rental Car Defendants.

### 2. What is this lawsuit about?

The lawsuit claims that the Defendants violated antitrust and other laws by raising rental car prices at California airports by agreeing with each other to pass on the Airport Concession Fee (ACF) and Tourism Commission Assessment (TCA) to customers for rentals at certain California airport locations. The Defendants deny all of the claims in the lawsuit and deny that they did anything wrong.

### 3. What is a class action?

In a class action, one or more people, called a Class Representative (in this case Gary Gramkow), sue on behalf of all people who have similar claims. The people included in the class action are called a Class or Class Members. A single court resolves the issues for all Class Members, except for those who exclude themselves from the Class.

### 4. Why is there a settlement?

The Court did not decide in favor of the Plaintiffs or the Defendants. Instead, both sides agreed to a settlement. This way, they avoid the cost and risk of a trial and the Class can get benefits. The Class Representative and his attorneys think the settlement is best for all Class Members.

# WHO IS INCLUDED IN THE SETTLEMENT

### 5. How do I know if I am part of the settlement?

If you received a notice in the mail or by email, at least one of the Rental Car Defendants' records shows that you are included in the settlement. Generally, the settlement includes people who rented a vehicle directly from corporate-owned locations of Alamo, Avis, Budget, Dollar, Enterprise, Fox Rent A Car, Hertz, National or Thrifty for pick up at a California airport location from January 1, 2007 through November 14, 2007, and were charged and paid an ACF and/or TCA as a separate line item on their invoice to one of those companies.

### 6. Are there exceptions to being included in the settlement?

Yes. Rentals from non-corporate owned airport locations, rentals made as part of a pre-existing agreement with a business or governmental body according to which the rental charge was determined, and rentals where the customer paid a package price to a tour operator or online booking agency (such as Priceline or Hotwire) are not included in the Class and are not entitled to cash payments or vouchers from this settlement.

Rentals made at California airport licensee locations are not included in the settlement. A list of the licensee locations is available at www.ACFTCAsettlement.com.

QUESTIONS? CALL 1-800-000-0000 TOLL FREE OR VISIT WWW.ACFTCASETTLEMENT.COM

**7. What if I am still not sure if I am included?**

Visit www.ACFTCAsettlement.com, call 1-800-000-0000 or write to ACF/TCA Settlement Administrator, c/o KCC LLC, PO Box 0000, City, ST 00000-0000 for more information.

## THE SETTLEMENT BENEFITS—WHAT YOU CAN GET

**8. What does the settlement provide?**

The settlement provides the option of a cash payment or voucher from each Rental Car Defendant that the Class Member rented a vehicle from, at a California airport location, between January 1, 2007 and November 14, 2007, and paid an ACF and/or TCA as a separate line item on their invoice. The benefit options are based on the total number of days each vehicle was rented. Benefit options are:

| Total number of rental days (from 1/1/07 to 11/14/07) | Option | Description |
|---|---|---|
| Any | Cash | $2 per day ($5 minimum payment) |
| Less than eight | One—One Day Voucher | one voucher good for free time and mileage for one rental day |
| Eight or more | Two—One Day Vouchers | two vouchers, each good for free time and mileage for one rental day; or |
| | One—Two Day Voucher | one voucher good for free time and mileage for two rental days |

Rental days for vehicles rented from Avis or Budget may be combined when selecting benefit options.

**9. Tell me more about the vouchers.**

Vouchers:

- will be issued in the brand name of each of the rental car companies that charged the Class Member an ACF and/or TCA (Avis and Budget will issue vouchers as Avis/Budget);
- will be printed with the name and address of the Class Member and may be redeemed only by the Class Member or someone living in the same household at the same address;
- cannot be transferred or reassigned to a different person;
- may be used for the rental of a compact, midsize (intermediate), standard, or full size car class of vehicle;
- are valid with applicable daily, weekly and other multi-daily rates and can be used with most other rate discounts the renter may be eligible for;
- will expire 18 months after the date of issue;
- are for time and mileage charges only and do not include one-way or drop charges, taxes, fees, charges, insurance and any optional products; and
- may be redeemed at the brand of any of the issuing rental car company's U.S. corporate-owned locations (Avis/Budget vouchers may be redeemed at an Avis or Budget U.S. corporate-owned location), but not at Independent Licensed Locations.

Please note that there is a relatively small list of Independent Licensed Locations where the vouchers may not be redeemed, which will be available at www.ACFTCAsettlement.com.

## HOW TO GET BENEFITS—SUBMITTING AN ELECTION OF BENEFITS FORM

**10. How can I get a cash payment or voucher?**

To get a cash payment or voucher you must submit an Election of Benefits Form. You can complete and submit your form online at www.ACFTCAsettlement.com, or by mail. You may also print a form from the website or request one by calling 1-800-000-0000 or by sending a letter by mail to the claims administrator. You must complete and submit your Election of Benefits Form online or mail it so it is postmarked no later than **Month 00, 2012**. If you received a postcard in the mail or notice by email, you can use the Election of Benefits ID# provided on the front of the card or at the top of the email to access your rental records and submit your election of benefits online.

**11. When will I get my cash payment or voucher?**

The Court will hold a hearing on Month 00, 2012, to decide whether to approve the settlement. If Judge Anello approves the settlement, there may be appeals. It is always uncertain whether the appeals can be resolved and resolving them can take time. Cash payments will be made and vouchers will be issued only after the Court grants approval of the settlement and any appeals are resolved. Please be patient.

If you change your mailing or email address before settlement benefits are issued, you should update your information online at www.ACFTCAsettlement.com or by sending a letter to the ACF/TCA Administrator to ensure you receive your cash payment or voucher. Remember, vouchers will be printed with the address the Administrator has on file, so it is important that you update your mailing address if it changes before the settlement benefits are distributed.

**12. What rights am I giving up to get a cash payment or voucher and stay in the Class?**

Unless you exclude yourself, you are staying in the Class. If the settlement is approved and becomes final, all of the Court's orders will apply to you and legally bind you. This means you won't be able to sue, continue to sue, or be part of any other lawsuit against the Defendants for any claim asserted in this lawsuit or released by this settlement. The specific rights you are giving up are called Released Claims. The Released Claims are described in detail in section 6 of the Stipulation of Settlement which is available at www.ACFTCAsettlement.com.

## EXCLUDING YOURSELF FROM THE SETTLEMENT

If you want to keep the right to sue or continue to sue the Defendants about the claims released by this settlement, you must take steps to get out of the settlement. This is called excluding yourself or is sometimes called opting out of the settlement Class.

**13. How do I get out of the settlement?**

To exclude yourself from the settlement, you must send a letter by mail saying that you want to be excluded from *Shames v. The Hertz Corporation*, Case No. 07cv2174-MMA. Be sure to include your name, address, telephone number, and signature. You must mail your exclusion request so that it is postmarked by **Month 00, 2012**, to: ACF/TCA Settlement Exclusions, c/o KCC LLC, PO Box 0000, City, ST 00000-0000.

**14. If I exclude myself, will I still get a cash payment or voucher from this settlement?**

No. If you exclude yourself, you are telling the Court that you don't want to be part of the Class in this settlement. You can only get a cash payment or voucher if you stay in the Class, submit an Election of Benefits Form, and the settlement is approved by the Court and becomes final.

**15. If I don't exclude myself, can I sue the Defendants for the same claims later?**

No. Unless you exclude yourself, you are giving up the right to sue the Defendants for the claims that this settlement resolves. You must exclude yourself from *this* Class to start or continue with your own lawsuit or be part of any other lawsuit.

# THE LAWYERS REPRESENTING YOU

### 16. Do I have a lawyer in this case?

Yes. The Court appointed Dennis Stewart of Hulett Harper Stewart LLP and Donald G. Rez of Sullivan Hill Lewin Rez & Engel to represent you and other Class Members. Together, these lawyers are called Class Counsel. You will not be charged for these lawyers. If you want to be represented by your own lawyer, you may hire one at your own expense.

### 17. How will the lawyers be paid?

Class Counsel has not been paid for their work on this case. They will ask the Court to approve a payment of attorneys' fees and expenses of up to $5,870,000. They will also ask for a payment of $2,000 to be paid to the Class Representative for his help on behalf of the entire Class. If approved, these fees, costs, expenses and payments will be paid separately by the Defendants and will not reduce the amount of cash or vouchers available to Class Members.

# OBJECTING TO THE SETTLEMENT

You can tell the Court if you don't agree with the settlement or any part of it.

### 18. How do I tell the Court if I don't like the settlement?

If you're a Class Member, you can object to the settlement. You can give reasons why you think the Court should not approve it. The Court will have the opportunity to consider your views before making a decision. To object, you must send a letter stating that you object to the settlement in *Shames v. The Hertz Corporation*, Case No. 07cv2174-MMA. Be sure to include your name, address, telephone number, signature and the reasons why you object to the settlement. Mail your objection to each of the addresses below so that it is postmarked by **Month 00, 2012**.

| Clerk of the Court | Class Counsel | Defense Counsel |
|---|---|---|
| U.S. District Court<br>Southern District of California<br>940 Front Street<br>San Diego, CA 92101-8900 | Donald G. Rez<br>Sullivan Hill Lewin Rez & Engel<br>550 West C Street, 15th Floor<br>San Diego, CA 92101 | Michael F. Tubach<br>O'Melveny & Myers LLP<br>Two Embarcadero<br>Center, 28th Floor<br>San Francisco, CA 94111 |

### 19. What's the difference between objecting to the settlement and excluding myself from it?

Objecting is simply telling the Court that you don't like something about the settlement. You can object only if you stay in the Class (meaning you do not exclude yourself). Excluding yourself is telling the Court that you don't want to be part of the Class. If you exclude yourself, you cannot object because the case no longer affects you.

# THE COURT'S FAIRNESS HEARING

The Court will hold a hearing to decide whether to approve the settlement. You may attend and you may ask to speak, but you don't have to.

### 20. When and where will the Court decide whether to approve the settlement?

The Court will hold a Fairness Hearing at _:__ _.m. on ___day, **Month 00, 2012**, at the United States District Court, Southern District of California, 940 Front Street, San Diego, CA 92101-8900. At this hearing, the Court will consider whether the settlement is fair, reasonable, and adequate. If there are objections, the Court will consider them. Judge Anello will listen to people who have asked to speak at the hearing (*see* Question 21). The Court may also decide whether to approve the agreed upon fees, cost and expense. After the hearing, the Court will decide whether to approve the settlement. We do not know how long these decisions will take.

**21. Do I have to come to the hearing?**

No. Class Counsel will answer any questions the Judge may have. But, you are welcome to come at your own expense. If you send an objection, you don't have to come to Court to talk about it. As long as you mailed your written objection on time, the Court will consider it. You may also pay your own lawyer to attend, but it's not necessary.

**22. May I speak at the hearing?**

Yes. You may ask the Court for permission to speak at the Fairness Hearing. To do so, you must send a letter saying that it is your "Notice of Intention to Appear in *Shames v. The Hertz Corporation*, Case No. 07cv2174-MMA." Be sure to include your name, address, telephone number, and signature. Your letter must be postmarked by **Month 00, 2012**, and sent to the addresses in Question 18.

## IF YOU DO NOTHING

**23. What happens if I do nothing at all?**

If you do nothing you won't get a cash payment or voucher from this settlement. You will also be giving up your right to start a lawsuit, continue with a lawsuit, or be part of any other lawsuit against the Defendants about any of the claims asserted in this lawsuit or released by this settlement, ever again.

## GETTING MORE INFORMATION

**24. Are there more details about the settlement?**

This notice summarizes the proposed settlement. More details are in the Stipulation of Settlement. You can get a copy of the Stipulation of Settlement by visiting www.ACFTCAsettlement.com.

**25. How do I get more information?**

You can call 1-000-000-0000 toll free; write to ACF/TCA Settlement Administrator, c/o KCC LLC, PO Box 0000, City, ST 00000-0000; or visit the website at www.ACFTCAsettlement.com.

DATE: Month 00, 0000

QUESTIONS? CALL **1-800-000-0000** TOLL FREE OR VISIT WWW.ACFTCASETTLEMENT.COM

# Exhibit 4

1

2

3

4

5

6

7

8

**IN THE UNITED STATES DISTRICT COURT**

9

**SOUTHERN DISTRICT OF CALIFORNIA**

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MICHAEL SHAMES; GARY GRAMKOW, on behalf of themselves and on behalf of all persons similarly situated,

Plaintiffs,

v.

THE HERTZ CORPORATION, et al.,

Defendants.

Case No. 07cv2174-MMA(WMc)

**CLASS ACTION**

**[PROPOSED] ORDER PRELIMINARILY APPROVING SETTLEMENT, CERTIFYING SETTLEMENT CLASS, APPOINTING CLASS REPRESENTATIVE AND LEAD COUNSEL, AND PROVIDING FOR NOTICE**

1   WHEREAS, a class action is pending before this Court styled *Michael Shames; Gary*

2   *Gramkow v. The Hertz Corporation, et al.*, No. 07cv2174-MMA(WMc) (the "Litigation");

3   WHEREAS, the parties having made application, pursuant to Federal Rule of Civil

4   Procedure 23(e), for an order preliminarily approving the settlement of this Litigation, in

5   accordance with a Stipulation of Settlement dated as of May 15, 2012 (the "Stipulation"), which,

6   together with the Exhibits annexed thereto, sets forth the terms and conditions for a proposed

7   settlement of the Litigation and for dismissal of the Litigation with prejudice upon the terms and

8   conditions set forth therein; and the Court having read and considered the Stipulation and the

9   Exhibits annexed thereto; and

10   WHEREAS, except where otherwise defined herein, all capitalized terms herein have the

11   same meanings as set forth in the Stipulation.

12   NOW, THEREFORE, IT IS HEREBY ORDERED:

13   1.   The Court hereby preliminarily approves the Stipulation and the settlement set

14   forth therein, subject to further consideration at the Final Approval Hearing described below.

15   2.   The Court hereby certifies a Class, for settlement purposes only, defined as: "all

16   Persons (other than those Persons who timely and validly request exclusion from the Class) who

17   rented a car directly from a Rental Car Defendant for pick up at a California Airport Location

18   during the period from January 1, 2007 through November 14, 2007, inclusive, and were charged

19   and paid to the Rental Car Defendant an Airport Concession Fee and/or Tourism Commission

20   Assessment Fee for that rental car as a separate line item(s) on their invoices.  Excluded from the

21   Class are: (i) rentals made pursuant to a pre-existing agreement between a business or

22   governmental entity and a Rental Car Defendant pursuant to which the rental charge was

23   determined; and (ii) rentals in which the customer paid a package price to a third party tour

24   operator or on-line booking agency rather than a Rental Car Defendant.  Also excluded from the

25   Class are the Defendants, the directors, officers, subsidiaries, and affiliates of Defendants, any

26   person, firm, trust, corporation, officer, director or other individual or entity in which any

27   Defendant has a controlling interest, and the legal representatives, affiliates, heirs, successors-in-

28   interest or assigns of any such excluded person, Related Parties as well as any judges or mediators

involved in the Litigation (including the Hon. Michael M. Anello, Magistrate Judge McCurine, and the Hon. Ronald Sabraw (ret.))."

3. Pursuant to Rule 23 of the Federal Rules of Civil Procedure, and solely for the purposes of settlement, the Court preliminarily certifies Gary Gramkow as Class Representative ("Class Representative") for the Class and appoints Hulett Harper Stewart LLP, Dennis Stewart and Sullivan Hill Lewin Rez and Engel, Donald G. Rez as Lead Counsel.

4. Solely for purposes of the settlement, the Court preliminarily finds that the prerequisites for a class action under Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure have been satisfied in that: (a) the members of the Class are so numerous that joinder of all Class Members in the Litigation is impracticable; (b) there are questions of law and fact common to the Class which predominate over any individual questions; (c) the claims of the Class Representative are typical of the claims of the Class; (d) Class Representative and his counsel have fairly and adequately represented and protected the interests of all of the Class Members; and (e) a class action for purposes of settlement is superior to other available methods for the fair and efficient adjudication of the controversy, considering (i) the interests of the members of the Class in individually controlling the prosecution of the separate actions; (ii) the extent and nature of any litigation concerning the controversy already commenced by members of the Class; and (iii) the desirability or undesirability of continuing the litigation of these claims in this particular forum.

5. A hearing (the "Final Approval Hearing") shall be held before this Court on _____, 2012, at __:__ __.m., at the United States District Court for the Southern District of California, 940 Front Street, San Diego, California 92101, to determine whether the proposed settlement of the Litigation on the terms and conditions provided for in the Stipulation is fair, reasonable, and adequate to the Class and should be approved by the Court; whether a Judgment as provided in ¶ 1.17 of the Stipulation should be entered and to determine the amount of fees and expenses that should be awarded to Plaintiffs' Counsel and whether to award a service award payment to the Class Representative. The Court may adjourn the Final Approval Hearing without further notice to the Class Members.

6.      The Court approves, as to form and content, the Notice of Proposed Settlement of Class Action, substantially in the forms of Exhibits A-1 through A-6, as appropriate, (individually or collectively, the "Notice"),  and finds that the e-mailing or mailing and distribution of the Notice and publishing of the  Notice substantially in the manner and form set forth in ¶ 7 of this Order meet the requirements of Federal Rule of Civil Procedure 23 and due process, and is the best notice practicable under the circumstances and shall constitute due and sufficient notice to all Persons entitled thereto.

7.      The firm of Kurtzman Carson Consultants ("Administrator") is hereby appointed to supervise and administer the notice procedure as well as the processing of claims as more fully set forth below:

(a)      The Administrator shall make reasonable efforts to identify all Class Members based on the rental data provided by the Rental Car Defendants, as set forth in the Stipulation.  Not later than _____, 2012 (the "Notice Date"), the Administrator shall cause a copy of the Notice, substantially in the forms annexed as Exhibit A-1 or A-3, to be e-mailed or mailed by standard-class mail to all Class Members who are identified;

(b)      Not later than _____, 2012, the Administrator shall cause the Publication Notice annexed as Exhibit A-4 to be published in accordance with the Plan for Publication Notice annexed to this Order as Exhibit B ;

(c)      At least seven (7) calendar days prior to the Final Approval Hearing, Lead Counsel shall cause to be served on Defendants' counsel and filed with the Court proof, by affidavit or declaration, of such mailing and publishing, and;

(d)      Provided the settlement is finally approved by this Court, then subsequent to such approval and not later than 60 days before the expiration of the Election Period, the Administrator shall cause the Supplemental Notice, substantially in the form annexed as Exhibits A-2 and A-5, to be provided as set forth in the Stipulation.

8.      All Class Members shall be bound by all determinations and judgments in the Litigation concerning the settlement, whether favorable or unfavorable to the Class.

3

9.      Class Members who wish to participate in the settlement shall complete and submit, electronically on the Administrator's settlement website or by mail, an Election of Benefits Form, in accordance with the instructions contained in the Notice and/or on the Administrator's settlement website.  Unless the Court orders otherwise, all Election of Benefits Forms must be submitted electronically or postmarked no later than _____ (__) days from the Notice Date.  Any Class Member who does not timely submit an Election of Benefits Form within the time provided shall be barred from receiving the benefits of the settlement, unless otherwise ordered by the Court.

10.     Any Class Member may enter an appearance in the Litigation, at their own expense, individually or through counsel of their own choice.  If they do not enter an appearance, they will be represented by Lead Counsel.

11.     Any Person falling within the definition of the Class may, upon request, be excluded from the Class.  Any such Person must submit to the Administrator a request for exclusion ("Request for Exclusion"), postmarked no later than _____, 2012.  A Request for Exclusion must state: (a) the name, address, and telephone number of the Person requesting exclusion; and (b) that the Person wishes to be excluded from the Class.  All Persons who submit valid and timely Requests for Exclusion in the manner set forth in this paragraph shall have no rights under the Stipulation, shall not share in the distribution of the benefits of the settlement, and shall not be bound by the Stipulation or the Judgment entered in the Litigation.

12.     Any Class Member who does not properly and timely submit a Request for Exclusion as set forth above shall be included in the Class and shall be bound by all the terms and provisions of the Stipulation, whether or not such Class Member shall have objected to the settlement and whether or not such Class Member makes a claim upon or participates in the settlement.

13.     Any Class Member may appear and show cause, if he, she or it has any, why the proposed settlement of the Litigation should or should not be approved as fair, reasonable, and adequate, why a judgment should or should not be entered thereon, why attorneys' fees and expenses should or should not be awarded to Plaintiffs' Counsel or why an service award should

or should not be made to the Class Representative; provided, however, that no Class Member or any other Person shall be heard or entitled to contest such matters, unless that Person has delivered by hand or sent by First-Class Mail written objections and copies of any papers and briefs such that they are received on or before _____, 2012, by Sullivan Hill Lewin Rez and Engel, Donald G. Rez, 550 West C Street, Suite 1500, San Diego, CA 92101 and O'Melveny & Myers, LLP, Attn: Michael F. Tubach, Two Embarcadero Center, 28th Floor, San Francisco, CA 94111, and filed said objections, papers, and briefs with the Clerk of the United States District Court for the Southern District of California, on or before _____, 2012. Any Class Member who does not make his, her or its objection in the manner provided shall be deemed to have waived such objection and shall forever be foreclosed from making any objection to the fairness or adequacy of the proposed settlement as set forth in the Stipulation, or to the award of attorneys' fees and expenses to Plaintiffs' Counsel, or to any service award to the Class Representative unless otherwise ordered by the Court.

14.     All opening briefs and supporting documents in support of the settlement, and any application for attorneys' fees and expenses shall be filed and served twenty-one (21) calendar days prior to the deadline for objections in ¶ 13. Replies to any objections shall be filed and served seven (7) calendar days prior to the Final Approval Hearing.

15.     At or after the Final Approval Hearing, the Court shall determine whether the application for attorneys' fees or payment of expenses and service awards to the Class Representative shall be approved.

16.     All reasonable expenses incurred in identifying and notifying Class Members, as well as the Administrator's other responsibilities as specified herein or in the Stipulation, shall be paid as set forth in the Stipulation. In the event the settlement is not approved by the Court, or otherwise fails to become effective, neither Plaintiffs nor any of their counsel shall have any obligation to repay any amounts incurred or properly disbursed pursuant to ¶¶ 4.7 or 5.5 of the Stipulation.

17.     Neither the Stipulation, nor any of its terms or provisions, nor any of the negotiations or proceedings connected with it, shall be construed as an admission or concession

by the Defendants of the truth of any of the allegations in the Litigation, or of any liability, fault, or wrongdoing of any kind and neither the Stipulation nor any submission by any party in connection with the motion(s) for preliminary or final approval or application for attorneys fees and expenses or appeal therefrom or any related motions or proceedings may be used in this Litigation or in any other proceeding for any purpose other than as specified in the Stipulation.

18.     The Court reserves the right to adjourn the date of the Final Approval Hearing without further notice to the Class Members, and retains jurisdiction to consider all further applications arising out of or connected with the proposed settlement.  The Court may approve the settlement, with such modifications as may be agreed to by the Settling Parties, if appropriate, without further notice to the Class.

19.     If the Stipulation and the settlement set forth therein is not approved or consummated for any reason whatsoever, the Stipulation and settlement and all proceedings had in connection therewith shall be without prejudice to the rights of the Settling Parties *status quo ante*.

IT IS SO ORDERED.

DATED: _____

_____
HONORABLE MICHAEL M. ANELLO
UNITED STATES DISTRICT JUDGE

Submitted by:

HULETT HARPER STEWART LLP
DENNIS STEWART

 */s/ Dennis Stewart*
DENNIS STEWART

525 B Street, Suite 760
San Diego, CA  92101
Telephone:     (619) 338-1133
Facsimile:     (619) 338-1139

1   SULLIVAN, HILL, LEWIN, REZ & ENGEL
A Professional Law Corporation
2   DONALD G. REZ

3   _/s/ Donald G. Rez_____
DONALD G. REZ (with permission)
4

5   550 West C Street, Suite 1500
San Diego, CA  92101
6   Telephone:    (619) 233-4100
Facsimile:    (619) 231-4372
7

8   Lead Counsel for Plaintiffs

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

7

# Exhibit A-1

To:
From: administrator@ACFTCAsettlement.com
Subject: Legal Notice about Vehicles Rented at California Airports

**To file your Election of Benefits Form online:**
**ID Number: XXXXXXX**

### You can file a claim for cash or vouchers from a class action settlement about your rental of a vehicle at a California airport location from January 1, 2007 to November 14, 2007.

A settlement has been reached with The Hertz Corporation, Dollar Thrifty Automotive Group, Inc., Avis Budget Group, Inc., Vanguard Car Rental USA, LLC, Enterprise Holdings, Inc., Fox Rent A Car, Inc. and the California Travel and Tourism Commission in a class action lawsuit claiming that these companies agreed with each other to pass on the Airport Concession Fee (ACF) and Tourism Commission Assessment (TCA) to customers for rentals at certain California airport locations. The Defendants deny all of the claims in the lawsuit, but have agreed to the settlement to avoid the cost and risk of a trial.

WHO IS INCLUDED? Defendants' records show that you are included in the settlement. Generally, the settlement includes people who rented a vehicle directly from corporate-owned locations of Alamo, Avis, Budget, Dollar, Enterprise, Fox Rent A Car, Hertz, National, or Thrifty for pick up at a California airport location from January 1, 2007 through November 14, 2007, and who were charged and paid an ACF and/or TCA as a separate line item on their invoice. Rentals from non-corporate owned airport locations, rentals made as part of a pre-existing agreement with a business or governmental body according to which the rental charge was determined, and rentals where a package price was paid to a tour operator or online booking agency (like Priceline or Hotwire) are not included and are not entitled to cash payments or vouchers.

WHAT CAN YOU GET? You can elect to receive one of the cash or voucher options below based on the total number of days you rented one or more vehicles directly from that rental car defendant at a California airport location from January 1, 2007 to November 14, 2007, and paid an ACF and/or TCA as a separate line item on your invoice. Benefit options are:

| Total number of rental days | Option | Description |
| --- | --- | --- |
| Any | Cash | $2 per day ($5 minimum payment) |
| Less than eight | One—One Day Voucher | one voucher good for free time and mileage for one rental day |
| Eight or more | Two—One Day Vouchers | two vouchers, each good for free time and mileage for one rental day; or |

| | One—Two Day Voucher | one voucher good for free time and mileage for <u>two</u> rental days |
| --- | --- | --- |

Vouchers will be issued in the brand name of the rental car company that charged and collected the ACF and/or TCA, and will be available for use at any of that rental car company's U.S. corporate-owned locations. Avis and Budget vouchers may be redeemed at an Avis or Budget U.S. corporate-owned location. The settlement will also require the California Travel and Tourism Commission to adopt certain practices related to meetings and its communications with the public and rental car companies about Tourism Commission Assessments.

**How to Get Benefits?** You must submit an Election of Benefits Form by **Month 00, 2012** to get a cash payment or vouchers. Using the ID number above, you can submit a form online at www.ACFTCAsettlement.com. You may also request one by calling 1-000-000-0000 or by sending a letter by mail to the claims administrator.

**Your Other Options?** If you submit an Election of Benefits Form or do nothing, you will be legally bound by the settlement and you will give up your right to sue the Defendants for any claim asserted in this lawsuit or released by the Stipulation of Settlement. If you do not want to be legally bound by the settlement or be able to get a cash payment or voucher from it, you must exclude yourself by **Month 00, 2012**. If you do not exclude yourself, you may object to the settlement or you may ask for permission for you or your lawyer to appear and speak at the hearing—at your own cost—but you don't have to. The deadline to submit objections and requests to appear is **Month 00, 2012**. The detailed notice, available at the website, explains how to act on all of your options.

The Court will hold a hearing on **Month 00, 2012** to consider whether to approve: the settlement; attorneys' fees, costs, and expenses of up to $5,870,000; and a $2,000 payment to the Class Representative. These fees, costs, expenses and payments will be paid separately by the Defendants and will not reduce the amount of cash or vouchers available. The complete terms of the settlement, including the benefits you may be entitled to receive and the rights you may be giving up are contained in the Stipulation of Settlement, which may be found online at www.ACFTCAsettlement.com.

**File your claim online at <u>www.ACFTCAsettlement.com</u>. You may also request an Election of Benefits Form and more information by calling 1-000-000-0000.**

# Exhibit A-2

To:
From: administrator@ACFTCAsettlement.com
Subject: Reminder Notice about Vehicles Rented at California Airports

**To file your Election of Benefits Form online:**
**ID Number: XXXXXXX**

<u>**Reminder: Submission deadline is Month 00, 2012**</u>
**You can file a claim for cash or vouchers from a class action settlement about your rental of a vehicle at a California airport location.**

Records show that you rented a vehicle directly from a corporate-owned location of Alamo, Avis, Budget, Dollar, Enterprise, Fox Rent A Car, Hertz, National, or Thrifty for pick up at a California airport location between January 1, 2007 and November 14, 2007, and were charged and paid an Airport Concession Fee (ACF) and/or Tourism Commission Assessment (TCA) as a separate line item on your invoice. You can elect to receive one of the cash or voucher options below based on the total number of days you rented one or more vehicles directly from that rental car defendant at a California airport location from January 1, 2007 to November 14, 2007, and paid an ACF and/or TCA as a separate line item on your invoice. Benefit options are:

| Total number of rental days | Option | Description |
|---|---|---|
| Any | Cash | $2 per day ($5 minimum payment) |
| Less than eight | One—One Day Voucher | one voucher good for free time and mileage for <u>one</u> rental day |
| Eight or more | Two—One Day Vouchers | two vouchers, each good for free time and mileage for <u>one</u> rental day; or |
| | One—Two Day Voucher | one voucher good for free time and mileage for <u>two</u> rental days |

Rentals from non-corporate owned airport locations, rentals made as part of a pre-existing agreement with a business or governmental body according to which the rental charge was determined, and rentals where a package price was paid to a tour operator or online booking agency (like Priceline or Hotwire) are <u>not</u> included and are <u>not</u> entitled to cash payments or vouchers.

Vouchers will be issued in the brand name of the rental car company that charged and collected the ACF and/or TCA, and will be available for use at that rental car company's U.S. corporate-owned locations. Avis and Budget vouchers may be redeemed at an Avis or Budget U.S. corporate-owned location.

To get your cash payment or voucher you must submit an Election of Benefits Form. Using the ID number above, you can submit a form online at <u>www.ACFTCAsettlement.com</u>. You may also request one by calling 1-000-000-0000 or by sending a letter by mail to the claims administrator. **Remember, the deadline to submit or mail your Election of Benefits Form is Month 00, 2012**.

The cash payments and vouchers are the result of a settlement that was reached with The Hertz Corporation, Dollar Thrifty Automotive Group, Inc., Avis Budget Group, Inc., Vanguard Car Rental USA, LLC, Enterprise Holdings, Inc., Fox Rent A Car, Inc. and the California Travel and Tourism Commission in a class action lawsuit claiming that these companies agreed with each other to pass on the Airport Concession Fee and Tourism Commission Assessment to customers for rentals at certain California airport locations. The Defendants deny all of the claims in the lawsuit, but have agreed to the settlement to avoid the cost and risk of a trial.  The settlement will also require the California Travel and Tourism Commission to adopt certain practices related to meetings and its communications with the public and rental car companies about Tourism Commission Assessments.

**File your claim online at <u>www.ACFTCAsettlement.com</u>. You may also request an Election of Benefits Form and more information by calling 1-000-000-0000.**

# Exhibit A-3

A settlement has been reached with The Hertz Corporation, Dollar Thrifty Automotive Group, Inc., Avis Budget Group, Inc., Vanguard Car Rental USA, LLC, Enterprise Holdings, Inc., Fox Rent A Car, Inc. and the California Travel and Tourism Commission in a class action lawsuit claiming that these companies agreed with each other to pass on the Airport Concession Fee (ACF) and Tourism Commission Assessment (TCA) to customers for rentals at certain California airport locations. The Defendants deny all of the claims in the lawsuit, but have agreed to the settlement to avoid the cost and risk of a trial.

**Who's Included?** Defendants' records show that you are included in the settlement. Generally, the settlement includes people who rented a vehicle directly from corporate-owned locations of Alamo, Avis, Budget, Dollar, Enterprise, Fox Rent A Car, Hertz, National, or Thrifty for pick up at a California airport location from January 1, 2007 through November 14, 2007, and were charged and paid an ACF and/or TCA as a separate line item on their invoice. Rentals from non-corporate owned airport locations, rentals made as part of a pre-existing agreement with a business or governmental according to which the rental charge was determined, and rentals where a package price was paid to a tour operator or online booking agency (like Priceline or Hotwire) are not included and are not entitled to cash payments or vouchers.

**What Can You Get?** You can elect to receive one of the options below based on the total number of days you rented one or more vehicles directly from that rental car defendant at a California airport location from 1/1/07 to 11/14/07, and paid an ACF and/or TCA as a separate line item on your invoice. Options are: (1) $2 for each day the vehicles were rented ($5 minimum payment); or (2) if the vehicles were rented for less than 8 days, one voucher good for free time and mileage for one rental day; or (3) if the vehicles were rented for 8 or more days, either (a) two—one day vouchers each good for free time and mileage for one rental day, or (b) one—two day voucher good for free time and mileage for two rental days. Vouchers will be issued in the brand name of each rental car company that charged you the ACF and/or TCA, and will be available for use at any of that rental car company's U.S. corporate-owned locations.

**How to Get Benefits?** Use the code on the front of this postcard to submit your Election of Benefits Form online by **Month 00, 2012**. Forms are also available at www.ACFTCAsettlement.com or by calling 1-000-000-0000.

**Your Other Options**. If you do nothing, your rights will be affected. If you don't want to be legally bound by the settlement, you must exclude yourself from it by **Month 00, 2012**. Unless you exclude yourself you won't be able to sue the Defendants for any claim asserted in this lawsuit or released by the Stipulation of Settlement. If you stay in the settlement (i.e., don't exclude yourself), you may object to it or you may ask for permission for you or your own lawyer to appear and speak at the hearing—at your own cost—but you don't have to. Objections and requests to appear are due by **Month 00, 2012**. More information is in the detailed notice and Stipulation of Settlement which are available at the website.

The Court will hold a hearing on Month 00, 2012 to consider whether to approve: the settlement; attorneys' fees, costs, and expenses of up to $5,870,000; and a $2,000 payment to the Class Representative.

**File your Election of Benefits Form online at www.ACFTCAsettlement.com or get one by calling 1-000-000-0000.**

LEGAL NOTICE

**You can file a claim for cash or vouchers from a class action settlement because you rented a vehicle from a California airport location between January 1, 2007 and November 14, 2007.**

**1-000-000-0000
www.ACFTCAsettlement.com**

HZS

ACF/TCA
Settlement Administrator
P.O. Box 0000
City, ST 00000-0000

Presorted
First-Class Mail
U.S. Postage
PAID
City, ST
Permit No. 0000

Postal Service: Please Do Not Mark Barcode

{BARCODE}
JOHN Q CLASSMEMBER
123 ABC STREET
NOVATO, CA 94948-0000

Election of Benefits ID#: [XXXXXXXXXXXX]
(use ID to file your claim online)

# Exhibit A-4

LEGAL NOTICE

# If you rented a vehicle at a California airport location between January 1, 2007 and November 14, 2007, you may be entitled to cash or vouchers from a class action settlement.

A settlement has been reached with The Hertz Corporation, Dollar Thrifty Automotive Group, Inc., Avis Budget Group, Inc., Vanguard Car Rental USA, LLC, Enterprise Holdings, Inc., Fox Rent A Car, Inc. and the California Travel and Tourism Commission in a class action lawsuit claiming that these companies agreed with each other to pass on the Airport Concession Fee (ACF) and Tourism Commission Assessment (TCA) to customers for rentals at certain California airport locations. The Defendants deny all of the claims in the lawsuit, but have agreed to the settlement to avoid the cost and risk of a trial.

**WHO IS INCLUDED?** Generally, the settlement includes people who rented a vehicle directly from corporate-owned locations of Alamo, Avis, Budget, Dollar, Enterprise, Fox Rent A Car, Hertz, National or Thrifty for pick up at a California airport location from 1/1/07-11/14/07, and were charged and paid to the rental car company an ACF and/or TCA as a separate line item on their invoice. Rentals from non-corporate owned airport locations, rentals made as part of a pre-existing agreement with a business or governmental body according to which the rental charge was determined, and rentals where a package price was paid to a tour operator or online booking agency (like Priceline or Hotwire) are not included and are not entitled to cash payments or vouchers.

**WHAT DOES THE SETTLEMENT PROVIDE?** Those included in the settlement can elect to receive one of the following options based on the total number of days they rented one or more vehicles directly from that rental car defendant at a California airport location from 1/1/07 to 11/14/07, and paid an ACF and/or TCA as a separate line item on their invoice. Options are: (1) $2 for each day the vehicles were rented ($5 minimum payment); or (2) if the vehicles were rented for less than eight days, one voucher good for free time and mileage for one rental day; or (3) if the vehicles were rented for eight or more days, the choice of either (a) two—one day vouchers each good for free time and mileage for one rental day, or (b) one—two day voucher good for free time and mileage

for two rental days. Vouchers will be issued in the brand name of the rental car company that charged and collected the ACF and/or TCA, and will be available for use at any of that rental car company's U.S. corporate-owned locations.

**HOW DO YOU ASK FOR A CASH PAYMENT OR VOUCHER?** Submit an Election of Benefits Form online by **Month 00, 2012**. Forms are also available at the website or by calling 1-000-000-0000.

**WHAT ARE YOUR OPTIONS?** If you submit an Election of Benefits Form or do nothing, you will be legally bound by the settlement and give up your right to sue the Defendants for any claim asserted in this lawsuit or released by the Stipulation of Settlement. If you do not want to be legally bound by the settlement or be able to get a cash payment or voucher from it, you must exclude yourself by **Month 00, 2012**. If you do not exclude yourself, you may object to the settlement or you may ask for permission for you or your lawyer to appear and speak at the hearing—at your own cost—but you don't have to. The deadline to submit objections and requests to appear is **Month 00, 2012**.

**THE COURT'S FAIRNESS HEARING.** The U.S. District Court for the Southern District of California will hold a hearing in this case (*Shames v. The Hertz Corp.*, No. 07cv2174-MMA), on Month 00, 2012 to consider whether to approve the settlement, payment of attorneys' fees, costs, and expenses of up to $5,870,000 and a $2,000 payment to the Class Representative.

**HOW DO YOU GET MORE INFORMATION?** More information is in the detailed notice and Stipulation of Settlement which are available at the website. You can also call or write to ACF/TCA Settlement Administrator, c/o KCC LLC, PO Box 0000, City, ST 00000-0000.

# 1-000-000-0000
# www.ACFTCAsettlement.com

# Exhibit A-5

LEGAL NOTICE

# Reminder: Submission deadline is Month 00, 2012

## If you rented a vehicle at a California airport location between January 1, 2007 and November 14, 2007, you may be entitled to cash or vouchers.

If you rented a vehicle directly from corporate-owned locations of Alamo, Avis, Budget, Dollar, Enterprise, Fox Rent A Car, Hertz, National, or Thrifty for pick up at a California airport location from January 1, 2007 through November 14, 2007, and you were charged and paid an Airport Concession Fee (ACF) and/or Tourism Commission Assessment (TCA) as a separate line item on your invoice you may be entitled to a cash payment or vouchers from a class action settlement. Benefit options are: (1) $2 for each day the vehicles were rented ($5 minimum payment); or (2) if the vehicles were rented for less than eight days, one voucher good for free time and mileage for one rental day; or (3) if the vehicles were rented for eight or more days, the choice of either (a) two—one day vouchers each good for free time and mileage for one rental day, or (b) one—two day voucher good for free time and mileage for two rental days. Rentals from non-corporate owned airport location, rentals made as part of a pre-existing agreement with a business or governmental body according to which the rental charge was determined, and rentals where a package price was paid to a tour operator or online booking agency (such as Priceline or Hotwire) are not included and are not entitled to cash payments or vouchers.

Vouchers will be issued in the brand name of the rental car company that charged and collected the ACF and/or TCA, and will be available for use at any of that rental car company's U.S. corporate-owned locations.

To get your cash payment or voucher you must submit an Election of Benefits Form. You may submit a form online or request one by calling 1-000-000-0000. Remember, the deadline to submit or mail your Election of Benefits Form is **Month 00, 2012**.

The cash payments and vouchers are the result of a settlement that was reached with The Hertz Corporation, Dollar Thrifty Automotive Group, Inc., Avis Budget Group, Inc., Vanguard Car Rental USA, LLC, Enterprise Holdings, Inc., Fox Rent A Car, Inc. and the California Travel and Tourism Commission in a class action lawsuit claiming that these companies agreed with each other to pass on the ACF and TCA to customers for rentals at certain California airport locations. The Defendants deny all of the claims in the lawsuit, but have agreed to the settlement to avoid the cost and risk of a trial.  The settlement will also require the California Travel and Tourism Commission to adopt certain practices related to meetings and its communications with the public and rental car companies about Tourism Commission Assessments.

## File your Election of Benefits Form online at www.ACFTCAsettlement.com or get one by calling 1-000-000-0000.

# Exhibit A-6

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF CALIFORNIA

# If you rented a vehicle at a California airport location between January 1, 2007 and November 14, 2007, you may be entitled to cash or vouchers from a class action settlement.

*A court authorized this Notice. This is <u>not</u> a solicitation from a lawyer.*

- A settlement has been reached in a class action lawsuit claiming that certain car rental companies agreed with each other to pass on the Airport Concession Fee and Tourism Commission Assessment to customers who rented vehicles from certain California airport locations.

- The settlement provides cash payments or vouchers to those included in the settlement.

- The settlement will also require the California Travel and Tourism Commission to adopt certain practices related to meetings and its communications with the public and rental car companies about Tourism Commission Assessments.

- This notice summarizes the proposed settlement. The complete terms of the settlement, including information describing the benefits you may be entitled to receive and the rights you may be giving up, are contained in the Stipulation of Settlement, which may be found online at www.ACFTCAsettlement.com.

- Your legal rights are affected whether you act or don't act. Read this notice carefully.

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT: | |
|---|---|
| SUBMIT AN ELECTION OF BENEFITS FORM | The only way to get a cash payment or voucher. |
| EXCLUDE YOURSELF | Get no payment or voucher. This is the only option that allows you to ever be part of another lawsuit against the Defendants about the legal claims asserted in this lawsuit or released through the settlement. |
| OBJECT | Write to the Court about why you don't like the settlement. |
| GO TO A HEARING | Ask to speak in Court about the fairness of the settlement. |
| DO NOTHING | Get no payment or voucher. Give up rights. |

- These rights and options—**and the deadlines to exercise them**—are explained in this notice.

- The Court in charge of this case still has to decide whether to approve the settlement. Cash payments will be made and vouchers will be distributed only if the Court approves the settlement and after any appeals are resolved. Please be patient.

| WHAT THIS NOTICE CONTAINS |
|---|

BASIC INFORMATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . PAGE 3
    1.  Why was this notice issued?
    2.  What is this lawsuit about?
    3.  What is a class action?
    4.  Why is there a settlement?

WHO IS INCLUDED IN THE SETTLEMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . PAGE 3
    5.  How do I know if I am part of the settlement?
    6.  Are there exceptions to being included in the settlement?
    7.  What if I am still not sure if I am included?

THE SETTLEMENT BENEFITS—WHAT YOU CAN GET . . . . . . . . . . . . . . . . . . . . . . . . . . . . PAGE 4
    8.  What does the settlement provide?
    9.  Tell me more about the vouchers.

HOW TO GET BENEFITS—SUBMITTING AN ELECTION OF BENEFITS FORM. . . . . . . . . . . . PAGE 5
    10.  How can I get a cash payment or voucher?
    11.  When will I get my cash payment or voucher?
    12.  What rights am I giving up to get a cash payment or voucher and stay in the Class?

EXCLUDING YOURSELF FROM THE SETTLEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . PAGE 5
    13.  How do I get out of the settlement?
    14.  If I exclude myself, will I still get a cash payment or voucher from this settlement?
    15.  If I don't exclude myself, can I sue the Defendants for the same claims later?

THE LAWYERS REPRESENTING YOU . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . PAGE 6
    16.  Do I have a lawyer in this case?
    17.  How will the lawyers be paid?

OBJECTING TO THE SETTLEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . PAGE 6
    18.  How do I tell the Court if I don't like the settlement?
    19.  What's the difference between objecting to the settlement and excluding myself from it?

THE COURT'S FAIRNESS HEARING. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . PAGE 6
    20.  When and where will the Court decide whether to approve the settlement?
    21.  Do I have to come to the hearing?
    22.  May I speak at the hearing?

IF YOU DO NOTHING . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . PAGE 7
    23.  What happens if I do nothing at all?

GETTING MORE INFORMATION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . PAGE 7
    24.  Are there more details about the settlement?
    25.  How do I get more information?

QUESTIONS? CALL **1-800-000-0000** TOLL FREE OR VISIT WWW.ACFTCASETTLEMENT.COM

# BASIC INFORMATION

## 1. Why was this notice issued?

A Court authorized this notice because you have a right to know about the proposed settlement of this class action lawsuit and about all of your options before the Court decides whether to approve the settlement. This notice explains the lawsuit, the settlement, your legal rights, what benefits are available, and who can get them.

Judge Michael M. Anello of the United States District Court for the Southern District of California is overseeing this class action. The case is known as *Shames v. The Hertz Corporation*, Case No. 07cv2174-MMA. The people who sued are called the Plaintiffs and the companies they sued, The Hertz Corporation, Dollar Thrifty Automotive Group, Inc., Avis Budget Group, Inc., Vanguard Car Rental USA, LLC, Enterprise Holdings, Inc., Fox Rent A Car, Inc. and the California Travel and Tourism Commission, are called the Defendants. The Hertz Corporation, Dollar Thrifty Automotive Group, Inc., Avis Budget Group, Inc., Vanguard Car Rental USA, LLC, Enterprise Holdings, Inc., and Fox Rent A Car, Inc. may also be referred to as the Rental Car Defendants.

## 2. What is this lawsuit about?

The lawsuit claims that the Defendants violated antitrust and other laws by raising rental car prices at California airports by agreeing with each other to pass on the Airport Concession Fee (ACF) and Tourism Commission Assessment (TCA) to customers for rentals at certain California airport locations. The Defendants deny all of the claims in the lawsuit and deny that they did anything wrong.

## 3. What is a class action?

In a class action, one or more people, called a Class Representative (in this case Gary Gramkow), sue on behalf of all people who have similar claims. The people included in the class action are called a Class or Class Members. A single court resolves the issues for all Class Members, except for those who exclude themselves from the Class.

## 4. Why is there a settlement?

The Court did not decide in favor of the Plaintiffs or the Defendants. Instead, both sides agreed to a settlement. This way, they avoid the cost and risk of a trial and the Class can get benefits. The Class Representative and his attorneys think the settlement is best for all Class Members.

# WHO IS INCLUDED IN THE SETTLEMENT

## 5. How do I know if I am part of the settlement?

If you received a notice in the mail or by email, at least one of the Rental Car Defendants' records shows that you are included in the settlement. Generally, the settlement includes people who rented a vehicle directly from corporate-owned locations of Alamo, Avis, Budget, Dollar, Enterprise, Fox Rent A Car, Hertz, National or Thrifty for pick up at a California airport location from January 1, 2007 through November 14, 2007, and were charged and paid an ACF and/or TCA as a separate line item on their invoice to one of those companies.

## 6. Are there exceptions to being included in the settlement?

Yes. Rentals from non-corporate owned airport locations, rentals made as part of a pre-existing agreement with a business or governmental body according to which the rental charge was determined, and rentals where the customer paid a package price to a tour operator or online booking agency (such as Priceline or Hotwire) are not included in the Class and are not entitled to cash payments or vouchers from this settlement.

Rentals made at California airport licensee locations are not included in the settlement. A list of the licensee locations is available at www.ACFTCAsettlement.com.

QUESTIONS? CALL 1-800-000-0000 TOLL FREE OR VISIT WWW.ACFTCASETTLEMENT.COM

**7. What if I am still not sure if I am included?**

Visit www.ACFTCAsettlement.com, call 1-800-000-0000 or write to ACF/TCA Settlement Administrator, c/o KCC LLC, PO Box 0000, City, ST 00000-0000 for more information.

## THE SETTLEMENT BENEFITS—WHAT YOU CAN GET

**8. What does the settlement provide?**

The settlement provides the option of a cash payment or voucher from each Rental Car Defendant that the Class Member rented a vehicle from, at a California airport location, between January 1, 2007 and November 14, 2007, and paid an ACF and/or TCA as a separate line item on their invoice. The benefit options are based on the total number of days each vehicle was rented. Benefit options are:

| Total number of rental days (from 1/1/07 to 11/14/07) | Option | Description |
|---|---|---|
| Any | Cash | $2 per day ($5 minimum payment) |
| Less than eight | One—One Day Voucher | one voucher good for free time and mileage for <u>one</u> rental day |
| Eight or more | Two—One Day Vouchers | two vouchers, each good for free time and mileage for <u>one</u> rental day; or |
| | One—Two Day Voucher | one voucher good for free time and mileage for <u>two</u> rental days |

Rental days for vehicles rented from Avis or Budget may be combined when selecting benefit options.

**9. Tell me more about the vouchers.**

Vouchers:

- will be issued in the brand name of each of the rental car companies that charged the Class Member an ACF and/or TCA (Avis and Budget will issue vouchers as Avis/Budget);
- will be printed with the name and address of the Class Member and may be redeemed only by the Class Member or someone living in the same household at the same address;
- cannot be transferred or reassigned to a different person;
- may be used for the rental of a compact, midsize (intermediate), standard, or full size car class of vehicle;
- are valid with applicable daily, weekly and other multi-daily rates and can be used with most other rate discounts the renter may be eligible for;
- will expire 18 months after the date of issue;
- are for time and mileage charges only and do not include one-way or drop charges, taxes, fees, charges, insurance and any optional products; and
- may be redeemed at the brand of any of the issuing rental car company's U.S. corporate-owned locations (Avis/Budget vouchers may be redeemed at an Avis or Budget U.S. corporate-owned location), but not at Independent Licensed Locations.

Please note that there is a relatively small list of Independent Licensed Locations where the vouchers may not be redeemed, which will be available at www.ACFTCAsettlement.com.

## How to Get Benefits—Submitting an Election of Benefits Form

**10. How can I get a cash payment or voucher?**

To get a cash payment or voucher you must submit an Election of Benefits Form. You can complete and submit your form online at www.ACFTCAsettlement.com, or by mail. You may also print a form from the website or request one by calling 1-800-000-0000 or by sending a letter by mail to the claims administrator. You must complete and submit your Election of Benefits Form online or mail it so it is postmarked no later than **Month 00, 2012**. If you received a postcard in the mail or notice by email, you can use the Election of Benefits ID# provided on the front of the card or at the top of the email to access your rental records and submit your election of benefits online.

**11. When will I get my cash payment or voucher?**

The Court will hold a hearing on Month 00, 2012, to decide whether to approve the settlement. If Judge Anello approves the settlement, there may be appeals. It is always uncertain whether the appeals can be resolved and resolving them can take time. Cash payments will be made and vouchers will be issued only after the Court grants approval of the settlement and any appeals are resolved. Please be patient.

If you change your mailing or email address before settlement benefits are issued, you should update your information online at www.ACFTCAsettlement.com or by sending a letter to the ACF/TCA Administrator to ensure you receive your cash payment or voucher. Remember, vouchers will be printed with the address the Administrator has on file, so it is important that you update your mailing address if it changes before the settlement benefits are distributed.

**12. What rights am I giving up to get a cash payment or voucher and stay in the Class?**

Unless you exclude yourself, you are staying in the Class. If the settlement is approved and becomes final, all of the Court's orders will apply to you and legally bind you. This means you won't be able to sue, continue to sue, or be part of any other lawsuit against the Defendants for any claim asserted in this lawsuit or released by this settlement. The specific rights you are giving up are called Released Claims. The Released Claims are described in detail in section 6 of the Stipulation of Settlement which is available at www.ACFTCAsettlement.com.

## Excluding Yourself from the Settlement

If you want to keep the right to sue or continue to sue the Defendants about the claims released by this settlement, you must take steps to get out of the settlement. This is called excluding yourself or is sometimes called opting out of the settlement Class.

**13. How do I get out of the settlement?**

To exclude yourself from the settlement, you must send a letter by mail saying that you want to be excluded from *Shames v. The Hertz Corporation*, Case No. 07cv2174-MMA. Be sure to include your name, address, telephone number, and signature. You must mail your exclusion request so that it is postmarked by **Month 00, 2012**, to: ACF/TCA Settlement Exclusions, c/o KCC LLC, PO Box 0000, City, ST 00000-0000.

**14. If I exclude myself, will I still get a cash payment or voucher from this settlement?**

No. If you exclude yourself, you are telling the Court that you don't want to be part of the Class in this settlement. You can only get a cash payment or voucher if you stay in the Class, submit an Election of Benefits Form, and the settlement is approved by the Court and becomes final.

**15. If I don't exclude myself, can I sue the Defendants for the same claims later?**

No. Unless you exclude yourself, you are giving up the right to sue the Defendants for the claims that this settlement resolves. You must exclude yourself from *this* Class to start or continue with your own lawsuit or be part of any other lawsuit.

Questions? Call 1-800-000-0000 toll free or visit www.ACFTCAsettlement.com

-5-

# THE LAWYERS REPRESENTING YOU

### 16. Do I have a lawyer in this case?

Yes. The Court appointed Dennis Stewart of Hulett Harper Stewart LLP and Donald G. Rez of Sullivan Hill Lewin Rez & Engel to represent you and other Class Members. Together, these lawyers are called Class Counsel. You will not be charged for these lawyers. If you want to be represented by your own lawyer, you may hire one at your own expense.

### 17. How will the lawyers be paid?

Class Counsel has not been paid for their work on this case. They will ask the Court to approve a payment of attorneys' fees and expenses of up to $5,870,000. They will also ask for a payment of $2,000 to be paid to the Class Representative for his help on behalf of the entire Class. If approved, these fees, costs, expenses and payments will be paid separately by the Defendants and will not reduce the amount of cash or vouchers available to Class Members.

# OBJECTING TO THE SETTLEMENT

You can tell the Court if you don't agree with the settlement or any part of it.

### 18. How do I tell the Court if I don't like the settlement?

If you're a Class Member, you can object to the settlement. You can give reasons why you think the Court should not approve it. The Court will have the opportunity to consider your views before making a decision. To object, you must send a letter stating that you object to the settlement in *Shames v. The Hertz Corporation*, Case No. 07cv2174-MMA. Be sure to include your name, address, telephone number, signature and the reasons why you object to the settlement. Mail your objection to each of the addresses below so that it is postmarked by **Month 00, 2012**.

| Clerk of the Court | Class Counsel | Defense Counsel |
|---|---|---|
| U.S. District Court<br>Southern District of California<br>940 Front Street<br>San Diego, CA 92101-8900 | Donald G. Rez<br>Sullivan Hill Lewin Rez & Engel<br>550 West C Street, 15th Floor<br>San Diego, CA 92101 | Michael F. Tubach<br>O'Melveny & Myers LLP<br>Two Embarcadero<br>Center, 28th Floor<br>San Francisco, CA 94111 |

### 19. What's the difference between objecting to the settlement and excluding myself from it?

Objecting is simply telling the Court that you don't like something about the settlement. You can object only if you stay in the Class (meaning you do not exclude yourself). Excluding yourself is telling the Court that you don't want to be part of the Class. If you exclude yourself, you cannot object because the case no longer affects you.

# THE COURT'S FAIRNESS HEARING

The Court will hold a hearing to decide whether to approve the settlement. You may attend and you may ask to speak, but you don't have to.

### 20. When and where will the Court decide whether to approve the settlement?

The Court will hold a Fairness Hearing at _:__ _.m. on ___day, **Month 00, 2012**, at the United States District Court, Southern District of California, 940 Front Street, San Diego, CA 92101-8900. At this hearing, the Court will consider whether the settlement is fair, reasonable, and adequate. If there are objections, the Court will consider them. Judge Anello will listen to people who have asked to speak at the hearing (*see* Question 21). The Court may also decide whether to approve the agreed upon fees, cost and expense. After the hearing, the Court will decide whether to approve the settlement. We do not know how long these decisions will take.

**21. Do I have to come to the hearing?**

No. Class Counsel will answer any questions the Judge may have. But, you are welcome to come at your own expense. If you send an objection, you don't have to come to Court to talk about it. As long as you mailed your written objection on time, the Court will consider it. You may also pay your own lawyer to attend, but it's not necessary.

**22. May I speak at the hearing?**

Yes. You may ask the Court for permission to speak at the Fairness Hearing. To do so, you must send a letter saying that it is your "Notice of Intention to Appear in *Shames v. The Hertz Corporation*, Case No. 07cv2174-MMA." Be sure to include your name, address, telephone number, and signature. Your letter must be postmarked by **Month 00, 2012**, and sent to the addresses in Question 18.

## IF YOU DO NOTHING

**23. What happens if I do nothing at all?**

If you do nothing you won't get a cash payment or voucher from this settlement. You will also be giving up your right to start a lawsuit, continue with a lawsuit, or be part of any other lawsuit against the Defendants about any of the claims asserted in this lawsuit or released by this settlement, ever again.

## GETTING MORE INFORMATION

**24. Are there more details about the settlement?**

This notice summarizes the proposed settlement. More details are in the Stipulation of Settlement. You can get a copy of the Stipulation of Settlement by visiting www.ACFTCAsettlement.com.

**25. How do I get more information?**

You can call 1-000-000-0000 toll free; write to ACF/TCA Settlement Administrator, c/o KCC LLC, PO Box 0000, City, ST 00000-0000; or visit the website at www.ACFTCAsettlement.com.

DATE: Month 00, 0000

# Exhibit B



**Legal Notification Services**

_____

# Settlement Notice Plan

## *Shames v. The Hertz Corporation*

## Case No. 07cv02174

U.S. District Court, Southern District of California

**Prepared: May 16, 2012**

_____

© 2012 KCC LLC
Proprietary and Confidential

# Table of Contents

|  | Page |
|---|---|
| Legal Notification Services | 3 |
| Our Experts | 4 |
| Relevant Case Experience | 5 |
| Expert Services | 6 |
| Media Terms | 7 |
| Media Resources | 8 |
| Program Overview | 9 |
| Notice Schedule | 11 |
| Target Analysis | 12 |
| Media Selection | 13 |
| Individual/Direct Notice | 14 |
| National Newspaper | 15 |
| Consumer Magazines | 16 |
| Supplemental Notice | 18 |
| Additional Support | 19 |
| Notice Design Strategies | 20 |
| Draft Forms of Notice | 22 |
| Conclusion | 23 |

Attachment A – Legal Notice c.v.

Attachment B – Draft Forms of Notice

## Legal Notification Services

KCC's Legal Notice experts, Gina M. Intrepido-Bowden and Carla A. Peak, specialize in the design and implementation of class action notice programs devised to reach class members with clear, concise, plain language notices. With over a decade of legal notice consulting experience, Ms. Intrepido-Bowden and Ms. Peak have been directly responsible for more than 100 effective and efficient notice programs, including some of the largest and most complex in history, reaching class members or claimants around the globe and providing notice in over 35 languages.

Their programs satisfy due process requirements, as well as all applicable state and federal laws. Judges, including in published decisions, have recognized the reach calculation methodology and notice design strategies they use. Their notices follow the principles in the Federal Judicial Center's (FJC) illustrative model notices, which were written and designed to embody the satisfaction of the plain language requirements of Federal Rule of Civil Procedure 23(c)(2).

# Our Experts

Consistent with the judicial standards set forth by *Daubert* and *Kumho* and as illustrated in the FJC's *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide*, KCC's experts utilize the same practices and statistical analyses that are relied upon in the advertising industry when they design and measure the effectiveness of the notice programs they develop. Gina M. Intrepido-Bowden and Carla A. Peak have personally designed the "Notice Plan" (Plan) and proposed notice documents (Notice or Notices) that follow, and will directly oversee its implementation.

## Gina Intrepido-Bowden

With more than 20 years of media research, planning and buying experience, Gina brings substantive expertise to her role as Director, Legal Notification Services. A leading expert, she is responsible for the design and implementation of evidence-based legal notice campaigns.

Gina has personally designed more than 75 media campaigns across the United States and Canada for antitrust, consumer and other class action matters. As an expert witness, she provides Courts with the reach evidence they need to determine the adequacy of notice. In addition, she has successfully critiqued other notice plans causing Courts to modify programs to better meet due process obligations.

She began her advertising career working for one of New York's largest advertising agency media departments. Gina is a frequent author and speaker on class notice issues including effective reach, notice dissemination as well as noticing trends and innovations. She earned a Bachelor of Arts in Advertising from Penn State University, graduating summa cum laude.

## Carla Peak

With nearly a decade of industry experience, Carla specializes in the design of plain language legal notice documents to effectively address the challenges of communicating complex information to class members in a manner that they can understand.

Carla's notices satisfy the plain language requirements of Rule 23 and adhere to the guidelines set forth in the Manual for Complex Litigation, Fourth and by the Federal Judicial Center (FJC), as well as applicable state laws. She has successfully provided notice in both U.S. and international markets including communications in more than 35 languages.

She has presented on and written numerous articles about class notification programs, the design of effective notice documents as well as industry trends and innovations. Carla holds a Bachelor of Arts in Sociology from Temple University, graduating cum laude.

## Relevant Case Experience[1]

Our experts have designed and implemented numerous notice programs targeting consumer Class Members, for example:

- *Molina v. Intrust Bank, N.A.*, 18th J.D. Ct. Ks., No. 10-CV-3686
  - o Judge Jeffrey Goering, January 17, 2012: *The Court approved the form and content of the Class Notice, and finds that transmission of the Notice as proposed by the Parties meets the requirements of due process and Kansas law, is the best notice practicable under the circumstances, and constitutes due and sufficient notice to all persons entitled thereto.*

- *Allen v. UMB Bank, N.A.*, Cir. Ct. Mo., No. 1016-CV34791
  - o Judge Charles E. Atwell, October 31, 2011: *The form, content, and method of dissemination of Class Notice given to the Class were adequate and reasonable, and constituted the best notice practicable under the circumstances. The Notice, as given, provided valid, due, and sufficient notice of the proposed settlement, the terms and conditions set forth in the Settlement Agreement, and these proceedings to all persons entitled to such notice, and said notice fully satisfied the requirements of Rule 52.08 of the Missouri Rules of Civil Procedure and due process.*
  - o Judge Charles E. Atwell, June 27, 2011: *The Court approves the form and content of the Class Notice, and finds that transmission of the Notice as proposed by the Parties meets the requirements of due process and Missouri law, is the best notice practicable under the circumstances, and constitutes due and sufficient notice to all persons entitled thereto.*

- *Ko v. Natura Pet Products, Inc.*, N.D. Cal , No. 5:09cv2619
  - o Judge Jeremy Fogel, June 24, 2011: *The Court approves, as to form and content, the Long Form Notice of Pendency and Settlement of Class Action ("Long Form Notice"), and the Summary Notice attached as Exhibits to the Settlement Agreement, and finds that the e-mailing of the Summary Notice, and posting on the dedicated internet website of the Long Form Notice, mailing of the Summary Notice post-card, and newspaper and magazine publication of the Summary Notice substantially in the manner as set forth in this Order meets the requirements of Rule 23 of the Federal Rules of Civil Procedure, and due process, and is the best notice practicable under the circumstances and shall constitute due and sufficient notice to all persons entitled to notice.*

- *Shaffer v. Continental Casualty Co.*, C.D. Cal., SACV-06-2235-PSG
  - o Judge Philip S. Gutierrez, June 11, 2008: *…was reasonable and constitutes due, adequate, and sufficient notice to all persons entitled to receive notice; and met all applicable requirements of the Federal Rules of Civil Procedure, the Class Action Fairness Act, the United States Constitution (including the Due Process Clauses), the Rules of the Court, and any other applicable law.*

See **Attachment A** for additional recognition and example cases.

---

[1] Includes work performed by our experts when employed at other firms.

© 2012 KCC LLC
Proprietary and Confidential

# Expert Services

Our Legal Notification Services include:

**Pre-Settlement Consulting**
- Review and advise clients of any potential obstacles relative to class definition or legal notification processes
- Develop a noticing plan strategy
- Provide judicial decisions that are relevant to the case or terms of the settlement

**Demographic Analysis**
- Define the target audience through research and analysis of class demographics
- Identify the geographic location of potential class members giving specific consideration to the class period
- Research class member media usage to define the communication channels that will be most effective

**Notice Programs**
- Create custom notice programs that incorporate media such as newspapers, magazines, trade journals, radio, television and the internet to meet due process requirements
- Develop press releases, broadcast public service announcements (PSAs), and a content-rich, case-specific website, as needed
- Track media activity to verify the adequacy of placements

**Plain Language Communication**
- Consider audience's level of understanding and devise communications strategy accordingly
- Design, draft and distribute plain-language notices that capture attention and are easily understood by class members
- Incorporate response mechanisms, such as a toll-free number, case website address, and/or QR code into notice documents

**Expert Testimony**
- Provide defensible opinions and testimony from subject-matter experts to verify the effectiveness of notice programs
- Supply mailing certifications and proof of performance for each notice served, as required by the Courts
- Provide evidence and judicial decisions to overcome objections

## Media Terms

The following provides the meaning of media terms highlighted throughout the Notice Plan:

**Audience:** Net number of persons or different persons exposed to a media vehicle. It is larger than a publication's circulation because it includes pass-along readers who may obtain the publication second hand (e.g., from a reception room, neighbor, friend).

**Circulation:** Total number of publication copies sold through all channels of distribution (e.g. subscriptions, newsstand, bulk).

**Frequency:** Estimated average number of times a population group is exposed to a media vehicle or combination of media vehicles containing a notice within a given period of time.

**Impressions or Exposures:** Total number of opportunities to be exposed to a media vehicle or combination of media vehicles containing a notice. It is a gross or cumulative number that may include the same person more than once. Impressions can exceed the population size.

**Reach or Coverage:** Net percentage of a specific population group exposed to a media vehicle or a combination of media vehicles containing a notice at least once within a given period of time. Reach factors out duplication, representing the total different/net persons.

**Selectivity Index:** Shows the concentration of a specific population group relative to the general adult population. For example, a publication selectivity index of 175 among men indicates that the publication's readers are 75% more likely to be men as compared to the general adult population.

# Media Resources

The resources we use to quantify our plan approach include the same resources used by media professionals to guide the billions of dollars of advertising we see today:

**Audit Bureau of Circulations (ABC)**

ABC maintains the world's foremost electronic database of audited-circulation information and an array of verified readership, subscriber demographics and online activity data. Established in 1914, ABC is a forum of the world's leading magazine and newspaper publishers, advertisers and advertising agencies boasting more than 4,000 members in North America.

**GfK Mediamark Research & Intelligence, LLC (MRI)**

MRI is a nationally accredited research firm that provides consumer demographics, product and brand usage, and audience/exposure in all forms of advertising media. Established in 1979, MRI measures the usage of nearly 6,000 product and service brands across 550 categories, along with the readership of hundreds of magazines and newspapers, internet usage, television viewership, national and local radio listening, yellow page usage, and out-of-home exposure. Based on a yearly face-to-face interview of 26,000 consumers in their homes, MRI's *Survey of the American Consumer™* is the primary source of audience data for the U.S. consumer magazine industry and the most comprehensive and reliable source of multi-media audience data available.

**Telmar**

Telmar is the world-leading supplier of computer based advertising media information services. Its software provides for survey analysis, data integration, media planning and optimization. With over 5,000 users in 85 countries, Telmar's clients include many of the world's leading advertising agencies, publishers, broadcasters and advertisers.

## Program Overview

**Objective**

To design a notice program that will effectively reach Class Members and capture their attention with notices communicated in clear, concise, plain language so that their rights and options may be fully understood. The FJC's *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide* considers 70-95% reach among class members reasonable.

**Class Definition**

The Class (or Class Members) consists of all Persons (other than those Persons who timely and validly request exclusion from the Class) who rented a car directly from a Rental Car Defendant for pick up at a California Airport Location during the period from January 1, 2007 through November 14, 2007, inclusive, and were charged and paid to the Rental Car Defendant an Airport Concession Fee and/or Tourism Commission Assessment for that rental car as a separate line item(s) on their invoices.[2] Excluded from the Class are: (i) rentals made pursuant to a pre-existing agreement between a business or governmental entity and the Rental Car Defendant pursuant to which the rental charge was determined; and (ii) rentals in which the customer paid a package price to a third party tour operator or on-line booking agency rather than the Rental Car Defendant.  Also excluded from the Class are the Defendants, the directors, officers, subsidiaries, and affiliates of Defendants, any person, firm, trust, corporation, officer, director or other individual or entity in which any Defendant has a controlling interest, and the legal representatives, affiliates, heirs, successors-in-interest or assigns of any such excluded person, Related Parties as well as any judges or mediators involved in the Litigation (including the Hon. Michael M. Anello, Magistrate Judge McCurine, and the Hon. Ronald Sabraw (ret.)).  Class membership shall be determined based on the Rental Car Defendants' rental transaction databases produced in this Litigation from data kept in the ordinary course of business.

**Case Analysis**

The following known factors were considered when determining our recommendation:

1. The Class consists of approximately four million Class Members.
2. Class Members are located throughout the U.S.
3. Postal and/or email addresses are available for virtually the entire Class.
4. Effective reach and notice content is vital to convey the importance of the information affecting Class Members' rights, as well as to withstand possible challenge and collateral review.
5. Multiple exposures to notice are desirable so that Class Members are reminded to act before deadlines approach.

**Target Audience**

To verify the notice program's effectiveness, MRI data was studied among adults who rented a car at or

---

[2] Rental Car Defendants means The Hertz Corporation, Dollar Thrifty Automotive Group, Inc., Avis Budget Group, Inc., Vanguard Car Rental USA, LLC, Enterprise Holdings, Inc., and Fox Rent A Car, Inc. The brands Enterprise, Alamo and National (currently operated by subsidiaries of Enterprise Holdings, Inc.) and Dollar and Thrifty (operated by a subsidiary of Dollar Thrifty Automotive Group, Inc.) shall each be treated as separate Rental Car Defendants.. Rental Car Defendants excludes any Person that owns or operates one or more Independent Licensed Locations, and locations where Payless Car Rental System, Inc. is a franchisor.

near an airport for personal or business use from Alamo, Avis, Budget, Dollar, Enterprise, Hertz, National, or Thrifty and traveled to California by plane ("California Airport Car Renters"). Although the MRI target is broader than the Class, it is a target group that best represents the Class.[3]

## Strategies

Email and/or mailed notice will be sent directly to all known Class Members. In addition, paid notices in well-read national consumer publications will provide additional reach and frequency of exposure among the Class. Coverage will be further enhanced by supplemental notice just prior to the Election of Benefits deadline.

## Plan Delivery

The direct notice effort alone is expected to reach 91.0% of the Class.[4] The paid media effort will reach an estimated 36.4% of California Airport Car Renters, and therefore likely Class Members. Combined, the direct notice and media efforts will reach approximately 94.3% of Class Members on average 1.5 times each. Although not measureable, coverage will be further enhanced by the supplemental notice.

## Notice Design

The Notices have been designed to provide a clear, concise, plain language summary statement of Class Members' legal rights and options. To facilitate responses to notices, a toll-free number and website address will be provided in all printed notice documents. For the initial Publication Notice, the ad units are adequately sized to attract attention to the notice:

- Half-page units in standard sized publications
- 1/6 page unit in the national newspaper

---

[3] Data among adults who rent from Fox Rent A Car was not measured by MRI; however, because we are analyzing data on a percentage basis, there is no reason to believe the demographics or media usage of adults who rented cars from Fox Rent A Car to be significantly different than those of the defined target.

[4] 1.2 million Notices will be emailed to Class Members, of which an estimated 25% will likely bounce back. Class Members whose emails bounce back or are otherwise not delivered will be mailed a notice, of which an estimated 10% will be returned as undeliverable. As a result, an estimated 1.08 million of the notices will likely deliver successfully. Another 2.8 million notices will be mailed to Class Members, of which an estimated 10% will be returned undeliverable. As a result, 2.52 million of the mailed notices are estimated to be delivered successfully. Combined, 3.6 million direct notices are expected to be delivered successfully, thereby reaching approximately 91.0% of the Class.

# Notice Schedule

No more than 45 days after Preliminary Approval, direct notice (email and/or mailed notice, as applicable) will be distributed to Class Members. Published Notice will appear no later than 60 days after Preliminary Approval, and Supplemental Notice will appear 60 days prior to the Election of Benefits deadline. The case website will be maintained throughout the Election Period. An exclusion and objection deadline will be scheduled approximately 30 days from the last notice appearance and a final fairness hearing date sometime after.

| Notice Method | Issued | Week 1 | Week 2 | Week 3 | Week 4 | Week 5 | Week 6 | Week 7 |
|---|---|---|---|---|---|---|---|---|
| **Individual/Direct Notice:** | | | | | | | | |
| Email Notice, as applicable | | ■ | ■ | | | | | |
| Mailed Notice , as applicable | | ■ | ■ | | | | | |
| **Publication Notice:** | | | | | | | | |
| *USA Today* | Daily | | | ■ | | | | |
| *Newsweek* | Weekly | | | ■ | ■ | ■ | | |
| *People* | Weekly | | | | ■ | ■ | | |
| **Case Website** | Constant | ■ | ■ | ■ | ■ | ■ | ■ | ■ |
| **Supplemental Notice:\*** | | | | | | | | |
| Email Notice, as applicable | | | | | | | | |
| *USA Today* | Daily | | | | | | | |

Blocks indicate when persons first receive the direct notice or publications (the on-sale date, not the issue/cover date). All media subject to change based on availability at the time of placement and cost. Cost of the Initial Publication Notice and Supplemental Publication Notice shall not exceed $250,000.

\*\*Supplemental Notice will appear 60 days prior to the Election of Benefits deadline.

© 2012 KCC LLC
Proprietary and Confidential

## Target Analysis

Knowing the characteristics, interests, and habits of a target group aids in the media selection process.

**Demographic Highlights**
Demographic highlights of California Airport Car Renters include the following:
- 87.2% are white
- 85.6% have attended or graduated from college or beyond
- 84.9% are between the ages of 25-64 and 66.6% are between the ages of 35-64
- 83.2% own their home
- 78.1% have a household income of $75,000 or more and 60.7% have a household income of $100,000 or more
- 78.4% live in a household consisting of 2-4 persons
- 72.7% are married
- 65.8% own a home valued at $200,000 or more
- 57.6% have lived at their current address for five or more years
- 52.9% are men
- 51.0% work as managers or professionals
- 47.8% live in the West Census Region
- Average age is 47.9
- Average household income is $129,969
- Average owned home value is $375,965

Compared to the general adult population, California Airport Car Renters are:
- 3.16 times more likely to have a household income of $150,000 or more
- 2.81 times more likely to own a home valued at $500,000 or more
- 2.25 times more likely to work as managers or professionals
- 2.27 times more likely to have graduated from college or beyond
- 2.09 times more likely to live in the West Census Region
- 74.3% more likely to be Asian
- 54.0% more likely to be between the ages of 55-64
- 32.6% more likely to be married
- 31.7% more likely to live in a household consisting of two persons
- 28.6% more likely to live in County Size A[5]
- 18.3% more likely to own a home
- 14.2% more likely to be white
- 9.5% more likely to be men

*Source: 2011 MRI Doublebase Study*

[5] All counties in the largest metropolitan areas which together account for 40% of U.S. households according to the 2000 Census.

## Media Selection

To create the optimal notice program, we evaluated the strengths and weaknesses of the various media, as well as their reach and frequency potential, composition, format/content and efficiencies. Our recommended media mix provides:

- Additional reach among Class Members, beyond the effective direct notice efforts, via the measurable paid print media (approximately 36.4% of California Airport Car Renters).

- Repeat notice exposures as a result of the overlapping media audiences.

- A written summary of key information that may be easily referred to or passed on to others as a result of placements in some of the largest and most well-read publications in the country

- Easy access to additional information through a toll-free number and website address which is provided in all printed notice documents

© 2012 KCC LLC
Proprietary and Confidential

## Individual/Direct Notice

### Email Notice

An Email Notice containing a summary of the settlement in the body of the email, as well as a link to the settlement website and a toll-free number will be sent to all email addresses provided to KCC by the Rental Car Defendants. It is our understanding that email addresses are available for approximately 1.2 million Class Members. Class Members whose emails bounce back or are otherwise not delivered will be mailed a Postcard Notice via postal mail to their corresponding postal address.

### Mailed Notice

A Postcard Notice will be sent via postal mail to the addresses of all known potential Class Members for whom KCC was not provided an email address. It is our understanding that individual mailing addresses are available for all or nearly all Class Members for whom no email addresses will be provided (approximately 2.8 million Class Members).

Prior to mailing the Postcard Notice, the names and addresses will be:

- Checked against the USPS National Change of Address (NCOA)[6] database
- Certified via the Coding Accuracy Support System (CASS)[7]
- Verified through Delivery Point Validation (DPV)[8]

Combined, 3.6 million direct notices are expected to be delivered successfully, thereby reaching approximately 91.0% of the Class.

---

[6] The NCOA database contains records of all permanent change of address submissions received by the USPS for the last four years. The USPS makes this data available to mailing firms and lists submitted to it are automatically updated with any reported move based on a comparison with the person's name and last known address.

[7] Coding Accurate Support System is a certification system used by the USPS to ensure the quality of ZIP+4 coding systems.

[8] Records that are ZIP+4 coded are then sent through Delivery Point Validation to verify the address and indentify Commercial Mail Receiving Agencies. DPV verifies the accuracy of addresses and reports exactly what is wrong with incorrect addresses.

© 2012 KCC LLC
Proprietary and Confidential

# National Newspaper

| Newspaper | Issuance | Notice Size | # of Insertions |
|-----------|----------|-------------|-----------------|
| *USA Today* | Daily | 1/6 page | 1 |



- Offers a circulation of 1.8 million
- Provides readership of 3.3 million
  - Male/Female: 67%/33%
  - Median age: 49
  - College graduate+: 51%
  - Professional/Managerial: 40%
  - Median HHI: $91,725
- Reaches 3.7% of California Airport Car Renters
- Readers are 2.6 times more likely to be California Airport Car Renters, compared to the general adult population
- Extends reach among a unique group of readers who like to travel a lot and are usually on-the-go

## Consumer Magazines

| Consumer Magazine | Issuance | Notice Size | # of Insertions |
|---|---|---|---|
| *Newsweek* | Weekly | Half page | 3 |
| *People* | Weekly | Half page | 1 |
| **TOTAL** | | | **4** |

- Includes three insertions in *Newsweek* and one insertion in *People*, for a total of four insertions
- Provides more than 88 million adult exposures
- Includes leading publications among California Airport Car Renters
- Includes publications with a high concentration of California Airport Car Renters, as compared to the general population
- Includes half page notices to attract attention and enhance readership with adequately sized text
- Positioning will be sought opposite articles, cover stories, or editorial features with documented high readership
- All placements will be tracked to ensure that they appear exactly as planned as well as meet our high standards in terms of quality and positioning

The following provides details for each of the recommended consumer magazines:



- Circulation: 1,530,486
- Adult Audience: 14,363,000
- Weekly news magazine covering politics, current events and global issues
- Reaches 9.2% of California Airport Car Renters
- Readers are 46.8% more likely to be California Airport Car Renters, compared to the general adult population
- Provides appropriate news-oriented editorial



- Circulation: 3,556,753
- Adult Audience: 45,318,000
- Weekly entertainment magazine featuring celebrity news, biographies and gossip
- Reaches 23.4% of California Airport Car Renters

- Readers are 17.7% more likely to be California Airport Car Renters, compared to the general adult population
- Provides a large number of pass along readers

## Supplemental Notice

Supplemental Notice reminding Class Members of the approaching Election of Benefits deadline, will be issued no later than 60 days before the expiration of the Election Period.

The Supplemental Notice will include:

- A one-eighth page Notice in the national edition of *USA Today*

- An Email Notice to Class Members for whom the Rental Car Defendants have provided to the Administrator an email address

The Supplemental Email Notice will not be sent to Class Members who previously filed an election of benefits form or opt-out request or to Class Members to whom Notice was previously sent via postal mail.

# Additional Support

**Case Website**
- Provides an easy to remember domain, such as www.ACFTCAsettlement.com
- Allows Class Members the ability to submit an Election of Benefits Form, as well as obtain additional information and documents including the Detailed Notice, Settlement Agreement, and any other information that the parties may agree to provide or that the Court may require
- Will be prominently displayed in all printed notice materials

**Toll-Free Telephone Support**
- Provides a simple way for Class Members to obtain additional information
- Allows Class Members the opportunity to learn more about the case in the form of frequently asked questions and answers
- Allows Class Members to request to have more information mailed directly to them
- Will be prominently displayed in all notice materials

.

## Notice Design Strategies

The design and content of all of the notice materials are consistent with the FJC's "illustrative" forms of model plain language notices, available at www.fjc.gov.

**Publication Notice**
- Bold headline captures attention and speaks directly to Class Members, alerting them that they should read the Notice and why it is important
- Prominent notice size promotes attention, readership, and comprehension
- Legal significance is highlighted to ensure readers that the communication carries legitimate information from the court and not commercial advertising
- Concise plain language without "legalese" enhances comprehension
- Content includes all critical information in simple format
- Toll-free number and case website invite response, allowing Class Members the opportunity to obtain additional information

**Detailed Notice**
- Prominent "Your Rights and Options" table on first page immediately informs readers of their rights and options in the case
- Table of Contents and question and answer format allow Class Members to easily locate information
- Bold headline captures attention and speaks directly to Class Members, alerting them that they should read the Notice and why it is important
- Concise plain language without "legalese" enhances comprehension
- Provides more detailed information than that of a Summary Notice
- Content includes all essential information in simple format
- Toll-free number and case website invite response, allowing Class Members the opportunity to obtain additional information

**Postcard Notice**
- Bold headline on the front of the postcard captures attention and speaks directly to Class Members, alerting them that they may claim benefits
- Legal significance is highlighted to ensure readers that the communication carries legitimate information from the court and not commercial advertising
- Concise plain language without "legalese" enhances comprehension
- Content includes all critical information in simple format
- Toll-free number and case website invite response, allowing Class Members the opportunity to obtain additional information

**Email Notice**
- Bold headline in the beginning of the message captures attention and speaks directly to Class Members, alerting them that they may claim benefits
- Legal significance is highlighted to ensure readers that the communication carries legitimate

information from the court and not commercial advertising
- Concise plain language without "legalese" enhances comprehension
- Content includes all critical information in simple format
- Toll-free number and case website invite response, allowing Class Members the opportunity to obtain additional information

## Draft Forms of Notice

**Attachment B** contains the draft forms of the following notice documents:

- The **Email Notice** that will be sent to all known Class Members that can be reasonably identified

- The **Postcard Notice** that will be sent to all known Class Members whose contact information does not contain an email address

- The **Publication Notice** as it will appear in the publications identified in this Notice Plan

- The **Supplemental Email Notice** that will be sent to all known Class Members who did not file an Election of Benefits Form or opt-out request. The Supplemental Email Notice will not be sent to Class Members to whom Notice was previously sent via postal mail.

- The **Supplemental Publication Notice** that will appear in the national edition of *USA Today*

- The **Long Form Notice** that will be sent to those who call the toll-free number to request one, as well as made available at the website

## Conclusion

Our recommended Notice Plan:

- Was designed by experts who are trained and experienced in their specific area of expertise
- Is consistent with other effective settlement notice programs
- Is consistent with the "desire to actually inform" due process communications standard of *Mullane*
- Provides the best notice practicable
- Meets due process requirements
- Provides the same reach and frequency evidence that Courts have approved, is recommended by the FJC, and that has withstood appellate scrutiny, other expert critiques, as well as collateral review
- Leaves no holes or vulnerabilities that would leave the parties open to challenge

Attachment A



KCC's Legal Notice Division provides expert legal notice services in class action, mass tort and bankruptcy settings. We specialize in the design and implementation of notice programs with plain language notices; expert opinions and testimony on the adequacy of notice; and critiques of other notice programs and notices. With over a decade of experience, our legal noticing team has been directly responsible for more than a hundred effective and efficient notice programs reaching class members and claimants in almost every country, dependency and territory in the world, and providing notice in over 35 languages. Our programs satisfy due process requirements, as well as all applicable state and federal laws. Some landmark case examples our experts have been involved with include:

- **In re Trans Union Corp. Privacy Litigation**, MDL No. 1350 (N.D. Ill.) The largest discretionary class action notice campaign involving virtually every adult in the United States and informing them about their rights in the $75 million data breach settlement.

- **In re TJX Companies, Inc., Customer Data Security Breach Litigation**, MDL No. 1838 (D. Mass.) The largest U.S. and Canadian retail consumer security breach notice program.

- **Lockwood v. Certegy Check Services, Inc**., No. 8:07-CV-1434-T-23TGW (M.D. Fla.) A complex national data theft class action settlement involving millions of class members.

- **In re Residential Schools Litigation**, No. 00-CV-192059 (Ont. S.C.J.) The largest and most complex class action in Canadian history incorporating a groundbreaking notice program to disparate, remote aboriginal persons qualified to receive benefits in the multi-billion dollar settlement.

- **Thompson v. Metropolitan Life Ins. Co.**, No. 216 F.R.D. 55, 62-68 (S.D. N.Y. 2003) The largest race-based pricing case with national settlement notice to 25 million policyholders.

- **Scott v. Blockbuster**, No. D 162-535 (Tex., 136th Jud. Dist.) The national settlement notice to 40 million class members, which withstood collateral review, *Peters v. Blockbuster*, 65 S.W.3d 295, 307 (Tex. App.-Beaumont 2001).

- **Williams v. Weyerhaeuser Co.**, No. 995787 (Cal. Super. Ct.) The national hardboard siding settlement notice, in which notice withstood appellate challenge, 2002 WL 373578, at 10 (Cal. App. 1 Dist.).

# Our Experts

**Gina M. Intrepido-Bowden**

With more than 20 years of media research, planning and buying experience, Gina M. Intrepido-Bowden brings substantive expertise to her role as Director, Legal Notification Services. A leading expert, she is responsible for the design and implementation of evidence-based legal notice campaigns.

Gina has personally designed more than 70 media campaigns across the United States and Canada for antitrust, consumer and other class action matters. As an expert witness, she provides Courts with the reach evidence they need to determine the adequacy of notice. In addition, she has successfully critiqued other notice plans, causing Courts to modify programs to better meet due process obligations.

She began her advertising career working for one of New York's largest advertising agency media departments. Gina is a frequent author and speaker on class notice issues including effective reach, notice dissemination as well as noticing trends and innovations. She earned a Bachelor of Arts in Advertising from Penn State University, graduating summa cum laude. Gina can be reached at gintrepidobowden@kccllc.com.

**Carla A. Peak**

With nearly a decade of industry experience, Carla A. Peak specializes in the design of plain language legal notice documents to effectively address the challenges of communicating complex information to class members in a manner that they can understand.

Carla's notices satisfy the plain language requirements of Rule 23 and adhere to the guidelines set forth in the Manual for Complex Litigation, Fourth and by the Federal Judicial Center (FJC), as well as applicable state laws. She has successfully provided notice in both U.S. and international markets including communications in more than 35 languages.

She has presented on and written numerous articles about class notification programs, the design of effective notice documents as well as industry trends and innovations. Carla holds a Bachelor of Arts in Sociology from Temple University, graduating cum laude. Carla can be reached at cpeak@kccllc.com.

# Judicial Recognition of Our Experts' Work

**Judge Ann D. Montgomery,** *In Re: Uponor, Inc., F1807 Plumbing Fittings Products Liability Litigation*, (January 18, 2012) No. 11-MD-2247 (D. Minn.):

> *The Notice Plan detailed by KCC in the Affidavit of Gina M. Intrepido-Bowden provides the best notice practicable under the circumstances and constitutes due and sufficient notice of the Settlement Agreement and the Final Fairness Hearing to the Classes and all persons entitled to receive such notice as potential members of the Class…The Notice Plan's multi-faceted approach to providing notice to Class Members whose identity is not known to the Settling Parties constitutes 'the best notice that is practicable under the circumstances' consistent with Rule 23(c)(2)(B)…Notice to Class members must clearly and concisely state the nature of the lawsuit and its claims and defenses, the Class certified, the Class member's right to appear through an attorney or opt out of the Class, the time and manner for opting out, and the binding effect of a class judgment on members of the Class. Fed. R. Civ. P. 23(c)(2)(B). Compliance with Rule 23's notice requirements also complies with Due Process requirements. 'The combination of reasonable notice, the opportunity to be heard, and the opportunity to withdraw from the class satisfy due process requirements of the*

*Fifth Amendment.' Prudential, 148 F.3d at 306. The proposed notices in the present case meet those requirements.*

**Judge Jeffrey Goering, *Molina v. Intrust Bank, N.A.***, (January 17, 2012) No. 10-CV-3686 (18th J.D. Ct. Ks.):

> *The Court approved the form and content of the Class Notice, and finds that transmission of the Notice as proposed by the Parties meets the requirements of due process and Kansas law, is the best notice practicable under the circumstances, and constitutes due and sufficient notice to all persons entitled thereto.*

**Judge Charles E. Atwell, *Allen v. UMB Bank, N.A.***, (October 31, 2011) No. 1016-CV34791 (Cir. Ct. Mo.):

> *The form, content, and method of dissemination of Class Notice given to the Class were adequate and reasonable, and constituted the best notice practicable under the circumstances. The Notice, as given, provided valid, due, and sufficient notice of the proposed settlement, the terms and conditions set forth in the Settlement Agreement, and these proceedings to all persons entitled to such notice, and said notice fully satisfied the requirements of Rule 52.08 of the Missouri Rules of Civil Procedure and due process.*

**Judge Charles E. Atwell, *Allen v. UMB Bank, N.A.***, (June 27, 2011) No. 1016-CV34791 (Cir. Ct. Mo.):

> *The Court approves the form and content of the Class Notice, and finds that transmission of the Notice as proposed by the Parties meets the requirements of due process and Missouri law, is the best notice practicable under the circumstances, and constitutes due and sufficient notice to all persons entitled thereto.*

**Judge Jeremy Fogel, *Ko v. Natura Pet Products, Inc.***, (June 24, 2011) No. 5:09cv2619 (N.D. Cal.):

> *The Court approves, as to form and content, the Long Form Notice of Pendency and Settlement of Class Action ("Long Form Notice"), and the Summary Notice attached as Exhibits to the Settlement Agreement, and finds that the e-mailing of the Summary Notice, and posting on the dedicated internet website of the Long Form Notice, mailing of the Summary Notice post-card, and newspaper and magazine publication of the Summary Notice substantially in the manner as set forth in this Order meets the requirements of Rule 23 of the Federal Rules of Civil Procedure, and due process, and is the best notice practicable under the circumstances and shall constitute due and sufficient notice to all persons entitled to notice.*

**Judge M. Joseph Tiemann, *Billieson v. City of New Orleans***, (May 27, 2011) No. 94-19231 (Civ. D. Ct. La.):

> *The plan to disseminate notice for the Insurance Settlements (the "Insurance Settlements Notice Plan") which was designed at the request of Class Counsel by experienced Notice Professionals Gina Intrepido-Bowden and Carla A. Peak…various forms of notices for the insurance settlements (the "Insurance Settlements Notice Documents");…IT IS ORDERED as follows: 1. The Insurance Settlements Notice Plan is hereby approved and shall be executed by the Notice Administrator; 2. The Insurance Settlements Notice Documents, substantially in the form included in the Insurance Settlements Notice Plan, are hereby approved.*

**Judge James Robertson,** *In re Department of Veterans Affairs (VA) Data Theft Litig.*, (February 11, 2009) MDL No. 1796 (D.C.):

> The Court approves the proposed method of dissemination of notice set forth in the Notice Plan, Exhibit 1 to the Settlement Agreement. The Notice Plan meets the requirements of due process and is the best notice practicable under the circumstances. This method of Class Action Settlement notice dissemination is hereby approved by the Court.

**Judge Louis J. Farina,** *Soders v. General Motors Corp.*, (December 19, 2008) No. CI-00-04255 (C.P. Pa.):

> The Court has considered the proposed forms of Notice to Class members of the settlement and the plan for disseminating Notice, and finds that the form and manner of notice proposed by the parties and approved herein meet the requirements of due process, are the best notice practicable under the circumstances, and constitute sufficient notice to all persons entitled to notice.

**Judge Robert W. Gettleman,** *In Re Trans Union Corp.*, (September 17, 2008) MDL No. 1350 (N.D. Ill.):

> The Court finds that the dissemination of the Class Notice under the terms and in the format provided for in its Preliminary Approval Order constitutes the best notice practicable under the circumstances, is due and sufficient notice for all purposes to all persons entitled to such notice, and fully satisfies the requirements of the Federal Rules of Civil Procedure, the requirements of due process under the Constitution of the United States, and any other applicable law…Accordingly, all objections are hereby OVERRULED.

**Steven D. Merryday,** *Lockwood v. Certegy Check Services, Inc.*, (September 3, 2008) No. 8:07-cv-1434-T-23TGW (M.D. Fla.):

> The form, content, and method of dissemination of the notice given to the Settlement Class were adequate and reasonable and constituted the best notice practicable in the circumstances. The notice as given provided valid, due, and sufficient notice of the proposed settlement, the terms and conditions of the Settlement Agreement, and these proceedings to all persons entitled to such notice, and the notice satisfied the requirements of Rule 23, Federal Rules of Civil Procedure, and due process… the notice to the Settlement class directed by the order of preliminary approval and the governmental notice required by the Class Action Fairness Act, Pub. L. 109-2, 119 Stat. 4 (2005), 28 U.S.C. § 1715, have been approved.

**Judge William G. Young,** *In re TJX Companies*, (September 2, 2008) MDL No. 1838 (D. Mass.):

> …as attested in the Affidavit of Gina M. Intrepido…The form, content, and method of dissemination of notice provided to the Settlement Class were adequate and reasonable, and constituted the best notice practicable under the circumstances. The Notice, as given, provided valid, due, and sufficient notice of the proposed settlement, the terms and conditions set forth in the Settlement Agreement, and these proceedings to all Persons entitled to such notice, and said Notice fully satisfied the requirements of Fed. R. Civ. P. 23 and due process.

**Judge Philip S. Gutierrez,** *Shaffer v. Continental Casualty Co.*, (June 11, 2008) SACV-06-2235-PSG (C.D. Cal.):

> …was reasonable and constitutes due, adequate, and sufficient notice to all persons entitled to receive notice; and met all applicable requirements of the

> *Federal Rules of Civil Procedure, the Class Action Fairness Act, the United States Constitution (including the Due Process Clauses), the Rules of the Court, and any other applicable law.*

**Judge David De Alba, *Ford Explorer Cases***, (May 29, 2008) JCCP Nos. 4226 & 4270 (Cal. Super. Ct.):

> *[T]he Court is satisfied that the notice plan, design, implementation, costs, reach, were all reasonable, and has no reservations about the notice to those in this state and those in other states as well, including Texas, Connecticut, and Illinois; that the plan that was approved -- submitted and approved, comports with the fundamentals of due process as described in the case law that was offered by counsel.*

**Judge Robert L. Wyatt, *Gunderson v. AIG Claim Services, Inc.***, (May 29, 2008) No. 2004-002417 (14th Jud. D. Ct. La.):

> *Notices given to Settlement Class members…were reasonably calculated under all the circumstances and have been sufficient, as to form, content, and manner of dissemination…Such notices complied with all requirements of the federal and state constitutions, including the due process clause, and applicable articles of the Louisiana Code of Civil Procedure, and constituted the best notice practicable under the circumstances and constituted due and sufficient notice to all potential members of the Settlement Class.*

**Judge Mary Anne Mason, *Palace v. DaimlerChrysler Corp.***, (May 29, 2008) No. 01-CH-13168 (Cir. Ct. Ill.):

> *The form, content, and method of dissemination of the notice given to the Illinois class and to the Illinois Settlement Class were adequate and reasonable, and constituted the best notice practicable under the circumstances. The notice, as given, provided valid, due, and sufficient notice of the proposed Settlement, the terms and conditions set forth in the Settlement Agreement, and these proceedings, to all Persons entitled to such notice, and said notice fully satisfied the requirements of due process and complied with 735 ILCS §§5/2-803 and 5/2-806.*

**Judge Ronald. B. Leighton, *Grays Harbor Adventist Christian School v. Carrier Corp.***, (April 22, 2008) No. 05-05437 (W.D. Wash.):

> *The Court finds and concludes that the Notice Program as a whole provided the best practicable notice to the members of the Class under the circumstances, and satisfies the requirements prescribed by the United States Supreme Court… The Court finds that this notice was the best notice practicable under the circumstances, that it provided due and adequate notice of the proceedings and of the matters set forth therein, and that it fully satisfied all applicable requirements of law and due process.*

**Judge Kirk D. Johnson, *Webb v. Liberty Mutual Insurance Co.***, (March 3, 2008) No. CV-2007-418-3 (Cir. Ct. Ark.):

> *The Court finds that there was minimal opposition to the settlement. After undertaking an extensive notice campaign to Class members of approximately 10,707 persons, mailed notice reached 92.5% of potential Class members.*

**Judge Kirk D. Johnson, *Sweeten v. American Empire Insurance Co.***, (August 20, 2007) No. CV-2007-154-3 (Cir. Ct. Ark.):

> *The Court does find that all notices required by the Court to be given to class*

*members was done within the time allowed and the manner best calculated to give notice and apprise all the interested parties of the litigation. It was done through individual notice, first class mail, through internet website and the toll-free telephone call center.*

**Judge Kirk D. Johnson,** *Hunsucker v. American Standard Ins. Co. of Wisconsin*, (August 10, 2007) No. CV-2007-155-3 (Cir. Ct. Ark.):

*Having admitted and reviewed the Affidavits of Carla Peak and Christine Danielson concerning the success of the notice campaign, including the fact that written notice reached approximately 86% of the potential Class Members, the Court finds that it is unnecessary to afford a new opportunity to request exclusion to individual class members who had an earlier opportunity to request exclusion but failed to do so…Specifically, the Court received and admitted affidavits from Carla Peak and Christine Danielson, setting forth the scope and results of the notice campaign. Based on the Court's review of the evidence admitted and argument of counsel, the Court finds and concludes that the Class Notice and settlement website as disseminated to members of the Settlement Class in accordance with provisions of the Preliminarily Approval Order was the best notice practicable under the circumstances to all members of the Settlement Class.*

**Judge Lewis A. Kaplan,** *In re Parmalat Securities Litig.*, (July 19, 2007) MDL No. 1653-LAK (S.D. N.Y.):

*The Court finds that the distribution of the Notice, the publication of the Publication Notice, and the notice methodology…met all applicable requirements of the Federal Rules of Civil Procedure, the United States Constitution, (including the Due Process clause), the Private Securities Litigation Reform Act of 1995 (15 U.S.C. 78u-4, et seq.) (the "PSLRA"), the Rules of the Court, and any other applicable law.*

**Judge Robert Wyatt,** *Gunderson v. F.A. Richard & Associates, Inc.*, (July 19, 2007) No. 2004-2417-D (14th Jud. D. Ct. La.):

*Okay. Let me sign this one. This is the final Order and Judgment regarding the fairness, reasonableness and adequacy. And I am satisfied in all respects regarding the presentation that's been made to the Court this morning in the Class memberships, the representation, the notice, and all other aspects and I'm signing that Order at this time. Congratulations, gentlemen.*

**Judge Ronald B. Leighton,** *Grays Harbor Adventist Christian School v. Carrier Corporation*, (May 29, 2007) No. 05-05437 (W.D. Wash.):

*Based on the foregoing, the Court finds Plaintiffs' Motion for Approval of Proposed Form of Notice and Notice Plan is appropriate and should be granted.*

**Judge John D. Allen,** *Carter v. North Central Life Insurance Co.*, (April 24, 2007) No. SU-2006-CV-3764-6 (Ga. Super. Ct.):

*The Notices prepared in this matter were couched in plain, easily understood language and were written and designed to the highest communication standards. The Notice Plan effectively reached a substantial percentage of Class Members and delivered noticeable Notices deigned to capture Class Members attention.*

**Judge John D. Allen,** *Desportes v. American General Assurance Co.*, (April 24, 2007) No. SU-04-CV-3637 (Ga. Super. Ct.):

> *[T]he Court finds that [the notice]…fully satisfied the requirements of the Georgia Rules of Civil Procedure (including Ga. Code Ann. § 9-11-23(c)(2) and (e)), the Georgia and United States Constitutions (including the Due Process Clause), the Rules of the Court, and any other applicable law.*

**Judge Lewis A. Kaplan, *In re Parmalat Securities Litig.,*** (March 1, 2007) MDL 1653 (S.D.N.Y):

> *The court approves, as to the form and content, the Notice and the Publication Notice, attached hereto as Exhibits 1 and 2, respectively, and finds that the mailing and distribution of the Notice and the publication of the Publication Notice in the manner and form set forth in Paragraph 6 of this Order…meet the requirements of Rule 23 of the Federal Rules of Civil Procedure, the Securities Exchange Act of 1934, as emended by Section 21D(a)(7) of the Private Securities Litigation reform Act of 1995, 15 U.S.C. § 78u-4(a)(7), and due process, and is the best notice practicable under the circumstances and shall constitute due and sufficient notice to all persons and entities entitled thereto.*

**Judge Anna J. Brown, *Reynolds v. The Hartford Financial Services Group, Inc.*,** (February 27, 2007) No. CV-01-1529-BR (D. Ore):

> *[T]he court finds that the Notice Program fairly, fully, accurately, and adequately advised members of the Settlement Class and each Settlement Subclass of all relevant and material information concerning the proposed settlement of this action, their rights under Rule 23 of the Federal Rules of Civil Procedure, and related matters, and afforded the Settlement Class with adequate time and an opportunity to file objections to the Settlement or request exclusion from the Settlement Class. The court finds that the Notice Program constituted the best notice practicable under the circumstances and fully satisfied the requirements of Rule 23 and due process.*

**Judge Richard J. Holwell, *In re Vivendi Universal, S.A. Securities Litig.*,** 2007 WL 1490466, at *34 (S.D.N.Y.):

> *In response to defendants' manageability concerns, plaintiffs have filed a comprehensive affidavit outlining the effectiveness of its proposed method of providing notice in foreign countries. According to this…the Court is satisfied that plaintiffs intend to provide individual notice to those class members whose names and addresses are ascertainable, and that plaintiffs' proposed form of publication notice, while complex, will prove both manageable and the best means practicable of providing notice.*

**Judge Eldon E. Fallon, *Turner v. Murphy, USA, Inc.*,** 2007 WL 283431, at *5 (E.D. La.):

> *Most of the putative class members were displaced following hurricane Katrina…With this challenge in mind, the parties prepared a notice plan designed to reach the class members wherever they might reside…to ensure that adequate notice was given to class members in light of the unique challenges presented in this case..*

**Judge Sarah S. Vance, *In re Educational Testing Services PLT 7-12 Test Scoring Litig.*,** 47 F.Supp.2d. 617 (E.D. La. 2006):

> *The Court is satisfied that notice to the class fully complied with the requirements of Rule 23.*

**Judge Samuel Conti, *Ciabattari v. Toyota Motor Sales, U.S.A., Inc.*,** (November 17, 2006) No. C-05-04289-SC (N.D. Cal.):

> *After reviewing the evidence and arguments presented by the parties…the Court*

> finds as follows…The class members were given the best notice practicable under the circumstances, and that such notice meets the requirements of the Due Process Clause of the U.S. Constitution, and all applicable statutes and rules of court.

**Judge Ivan L.R. Lemelle,** *In re High Sulfur Content Gasoline Prods. Liability Litig.*, (November 8, 2006) MDL No. 1632 (E.D. La.):

> This Court approved a carefully-worded Notice Plan…The Notice Plan for this Class Settlement was consistent with the best practices developed for modern-style "plain English" class notices; the Court and Settling Parties invested substantial effort to ensure notice to persons displaced by the Hurricanes of 2005; and as this Court has already determined, the Notice Plan met the requirements of Rule 23 and constitutional due process.

**Judge Catherine C. Blake,** *In re Royal Ahold Securities and "ERISA" Litig.*, (November 2, 2006) MDL No.1539 (D. Md.):

> The global aspect of the case raised additional practical and legal complexities, as did the parallel criminal proceedings in another district. The settlement obtained is among the largest cash settlements ever in a securities class action case and represents an estimated 40% recovery of possible provable damages. The notice process appears to have been very successful not only in reaching but also in eliciting claims from a substantial percentage of those eligible for recovery.

**Judge Elaine E. Bucklo,** *Carnegie v. Household International*, (August 28, 2006) No. 98 C 2178 (N.D. Ill.):

> [T]he Notice was disseminated pursuant to a plan consisting of first class mail and publication developed by Plaintiff's notice consultant…who the Court recognized as experts in the design of notice plans in class actions. The Notice by first-class mail and publication was provided in an adequate and sufficient manner; constitutes the best notice practicable under the circumstances; and satisfies all requirements of Rule 23(e) and due process.

**Judge William A. Mayhew,** *Nature Guard Cement Roofing Shingles Cases*, (June 29, 2006) J.C.C.P. No 4215 (Cal. Sup. Ct.):

> The method for dissemination of notice…constitute the fairest and best notice practicable under the circumstances of this case, comply with the applicable California Rules of Court, and satisfy due process.

**Judge Catherine C. Blake,** *In re Royal Ahold Securities & "ERISA" Litig.*, (June 16, 2006) MDL 1539 (D. Md.):

> In that regard, I would also comment on the notice. The form and scope of the notice in this case, and I'm repeating a little bit what already appeared to me to be evident at the preliminary stage, but the form and scope of the notice has been remarkable…The use of sort of plain language, the targeting of publications and media, the website with the translation into multiple languages, the mailings that have been done, I think you all are to be congratulated…

**Judge Joe E. Griffin,** *Beasley v. Hartford Insurance Company of the Midwest*, (June 13, 2006) No. CV-2005-58-1 (Cir. Ct. Ark.):

> Based on the Court's review of the evidence admitted and argument of counsel, the Court finds and concludes that the Individual Notice and the Publication Notice, as disseminated to members of the Settlement Class in accordance with

> *provisions of the Preliminarily Approval Order, was the best notice practicable under the circumstances…and the requirements of due process under the Arkansas and United States Constitutions.*

**Judge Joe E. Griffin, *Beasley v. Hartford Insurance Company of the Midwest***, (June 13, 2006) No. CV-2005-58-1 (Cir. Ct. Ark.):

> *Although the Notice Campaign was highly successful and resulted in actual mailed notice being received by over 400,000 Class Members, only one Class Member attempted to file a purported objection to either the Stipulation or Class Counsels' Application for Fees. The Court finds it significant that out of over 400,000 Class Members who received mailed Notice, there was no opposition to the proposed Settlement or Class Counsels' Application for Fees, other than a single void objection. The lack of opposition by a well-noticed Class strongly supports the fairness, reasonableness and adequacy of the Stipulation and Class Counsels' Application for Fees…*

**Judge Norma L. Shapiro, *First State Orthopaedics, et al. v. Concentra, Inc.***, (May 1, 2006) No. 2:05-CV-04951-NS (E.D. Pa.):

> *The Court finds that dissemination of the Mailed Notice, Published Notice and Full Notice in the manner set forth here and in the Settlement Agreement meets the requirements of due process and Pennsylvania law.*

**Judge Thomas M. Hart, *Froeber v. Liberty Mutual Fire Ins. Co.***, (April 19, 2006) No. 00C15234 (Cir. Ct. Ore.):

> *The court has found and now reaffirms that dissemination and publication of the Class Notice in accordance with the terms of the Third Amended Order constitutes the best notice practicable under the circumstances.*

**Senior Justice Winkler, *Baxter v. Canada (Attorney General)***, (March 10, 2006) No. 00-CV-192059-CPA (Ont. Super. Ct.):

> *…the English versions of the Notices provided to the court on this motion are themselves plainly worded and appear to be both informative and designed to be readily understood. It is contemplated that the form of notice will be published in English, French and Aboriginal languages, as appropriate for each media vehicle.*

**Judge Catherine C. Blake, *In re Royal Ahold Securities & "ERISA" Litig.***, (January 6, 2006) MDL No. 1539 (D. Md.):

> *I think it's remarkable, as I indicated briefly before, given the breadth and scope of the proposed Class, the global nature of the Class, frankly, that again, at least on a preliminary basis, and I will be getting a final report on this, that the Notice Plan that has been proposed seems very well, very well suited, both in terms of its plain language and in terms of its international reach, to do what I hope will be very thorough and broad-ranging job of reaching as many of the shareholders, whether individual or institutional, as possible can be done to participate in what I also preliminarily believe to be a fair, adequate and reasonable settlement.*

**Judge Catherine C. Blake, *In re Royal Ahold Securities & "ERISA" Litig.***, 2006 WL 132080, at *4 (D. Md.):

> *The Court finds that the form of Notice, the form of Summary Notice, and the Notice Plan satisfy the requirements of Fed.R.Civ.P. 23, due process, constitute the best notice practicable under the circumstances, and shall constitute due and sufficient notice to all members of the Class.*

**Judge Robert H. Wyatt, Jr.,** ***Gray v. New Hampshire Indemnity Co. Inc.***, (December 19, 2005) No. CV-2002-952-2-3 (Cir. Ct. Ark.):

> *Notice of the Settlement Class was constitutionally adequate, both in terms of its substance and the manner in which it was disseminated…Notice was direct mailed to all Class members whose current whereabouts could be identified by reasonable effort. Notice was also effected by publication in many newspapers and magazines throughout the nation, reaching a large majority of the Class members multiple times. The Court finds that such notice constitutes the best notice practicable.*

**Judge Michael J. O'Malley,** ***Defrates v. Hollywood Entm't Corp.***, (June 24, 2005) No. 02 L 707 (Cir. Ct. Ill.):

> *[T]his Court hereby finds that the notice program described in the Preliminary Approval Order and completed by HEC complied fully with the requirements of due process, the Federal Rules of Civil Procedure and all other applicable laws.*

**Judge Wilford D. Carter,** ***Thibodeaux v. Conoco Phillips Co.***, (May 26, 2005) No. 2003-481 F (14th J.D. Ct. La.):

> *Such notices complied with all requirements of the federal and state constitutions, including the due process clause, and applicable articles of the Louisiana Code of Civil Procedure, and constituted the best notice practicable under the circumstances and constituted due process and sufficient notice to all potential members of the Class as Defined.*

**Judge Michael Canaday,** ***Morrow v. Conoco Inc.***, (May 25, 2005) No. 2002-3860 G (14th J.D. Ct. La.):

> *The objections, if any, made to due process, constitutionality, procedures, and compliance with law, including, but not limited to, the adequacy of notice and the fairness of the proposed Settlement Agreement, lack merit and are hereby overruled.*

**Judge John R. Padova,** ***Nichols v. SmithKline Beecham Corp.***, (April 22, 2005) No. 00-6222 (E.D. Pa.):

> *After reviewing the individual mailed Notice, the publication Notices, the PSAs and the informational release, the Court concludes that the substance of the Notice provided to members of the End-Payor Class in this case was adequate to satisfy the concerns of due process and the Federal Rules.*

**Judge John R. Padova,** ***Nichols v. SmithKline Beecham Corp.***, (April 22, 2005) No. 00-6222 (E.D. Pa.):

> *…End-Payor Plaintiffs used published Summary Notice to reach consumer members of the End-Payor Class, not individual mailed Notice…that Notice has reached 81.9% of all Paxil users…Such notice to class members of the Class is hereby determined to be fully in compliance with requirements of Fed. R. Civ. P. 23(e) and due process and is found to be the best notice practicable under the circumstances and to constitute due and sufficient notice to all entities entitled thereto.*

**Judge Douglas L. Combs,** ***Morris v. Liberty Mutual Fire Ins. Co.***, (February 22, 2005) No. CJ-03-714 (D. Okla.):

> *I am very impressed that the notice was able to reach—be delivered to 97 ½*

10

*percent members of the class. That, to me, is admirable. And I'm also—at the time that this was initially entered, I was concerned about the ability of notice to be understood by common, nonlawyer person, when we talk about legalese in a court setting. In this particular notice, not only the summary notice but even the long form of the notice were easily understandable, for someone who could read the English language, to tell them whether or not they had the opportunity to file a claim.*

**Judge Joseph R. Goodwin, *In re Serzone Products Liability Litig.*,** 231 F.R.D. 221, 236 (S.D. W.Va. 2005):

*Not one of the objectors support challenges to the adequacy of notice with any kind of evidence; rather, these objections consist of mere arguments and speculation. I have, nevertheless, addressed the main arguments herein, and I have considered all arguments when evaluating the notice in this manner. Accordingly, after considering the full record of evidence and filings before the court, I FIND that notice in this matter comports with the requirements of Due Process under the Fifth Amendment and Federal Rules of Civil Procedure 23(c)(2) and 23(e).*

**Judge Richard G. Stearns, *In re Lupron[®] Marketing and Sales Practice Litig.*,** (November 24, 2004) MDL No. 1430 (D. Mass.):

*After review of the proposed Notice Plan…is hereby found to be the best practicable notice under the circumstances and, when completed, shall constitute due and sufficient notice of the Settlement and the Fairness Hearing to all persons and entities affected by and/or entitled to participate in the Settlement, in full compliance with the notice requirements of Rule 23 the Federal Rules of Civil Procedure and due process.*

**Judge Richard G. Stearns, *In re Lupron[®] Marketing and Sales Practice Litig.*,** (November 23, 2004) MDL No. 1430 (D. Mass.):

*I actually find the [notice] plan as proposed to be comprehensive and extremely sophisticated and very likely be as comprehensive as any plan of its kind could be in reaching those most directly affected.*

**Judge Paul H. Alvarado, *Microsoft I-V Cases*,** (July 6, 2004) J.C.C.P. No. 4106 (Cal. Super. Ct.):

*[T]he Court finds the notice program of the proposed Settlement was extensive and appropriate. It complied with all requirements of California law and due process…The Settlement notice plan was ultimately more successful than anticipated and it now appears that over 80% of the class was notified of the Settlement.*

**Judge Robert E. Payne, *Fisher v. Virginia Electric & Power Co.*,** (July 1, 2004) No. 3:02CV431 (E.D. Va.):

*The success rate in notifying the class is, I believe, at least in my experience, I share Ms. Kauffman's experience, it is as great as I have ever seen in practicing or serving in this job…So I don't believe we could have had any more effective notice...The record here shows that the class members have been fully and fairly notified of the existence of the class action, of the issues in it, of the approaches taken by each side in it in such a way as to inform meaningfully those whose rights are affected and to thereby enable them to exercise their rights intelligently.*

**Judge John Kraetzer, *Biaz v. Mountain View Cemetery*,** (April 14, 2004) No. 809869-2 (Cal.

Super. Ct.):

> *The notice program was timely completed, complied with California Government Code section 6064, and provided the best practicable notice to all members of the Settlement Class under the circumstances.*

**Judge Joseph R. Goodwin,** ***In re Serzone Prods. Liability Litig.***, 2004 U.S. Dist. LEXIS 28297, at *10 (S.D. W. Va.):

> *The Court has considered the Notice Plan and proposed forms of Notice and Summary Notice submitted with the Memorandum for Preliminary Approval and finds that the forms and manner of notice proposed by Plaintiffs and approved herein meet the requirements of due process and Fed.R.Civ.P. 23(c) and (e), are the best notice practicable under the circumstances, constitute sufficient notice to all persons entitled to notice, and satisfy the Constitutional requirements of notice.*

**Judge Carter Holly,** ***Richison v. Am. Cemwood Corp.***, (November 18, 2003) No. 005532 (Cal. Sup. Ct.):

> *The notice was reasonable and the best notice practicable under the circumstances, was due, adequate, and sufficient notice to all Class members, and complied fully with the laws of the State of California, the Code of Civil Procedure, due process, and California Rules of Court 1859 and 1860…Not a single Class member—out of an estimated 30,000—objected to the terms of the Phase 2 Settlement Agreement, notwithstanding a comprehensive national Notice campaign, via direct mail and publication Notice.*

**Judge Louis J. Farina,** ***Soders v. General Motors Corp.***, (October 31, 2003) No. CI-00-04255 (C.P. Ct. Pa.):

> *After balancing the factors laid out in Rule 1712(a), I find that Plaintiff's publication method is the method most reasonably calculated to inform the class members of the pending action...their plan will reach 84.8% of the class members. Defendant provided the Court with no information regarding the potential reach of their proposed plan…There is no doubt that some class members will remain unaware of the litigation, however, on balance, the Plaintiff's plan is likely to reach as many class members as the Defendant's plan at less than half the cost. As such, I approve the Plaintiff's publication based plan.*

**Judge Thomas A. Higgins,** ***In re Columbia/HCA Healthcare Corp.***, (June 13, 2003) MDL No.1227 (M.D. Tenn.):

> *Notice of the settlement has been given in an adequate and sufficient manner. The notice provided by mailing the settlement notice to certain class members and publishing notice in the manner described in the settlement was the best practicable notice, complying in all respects with the requirements of due process.*

**Judge Harold Baer, Jr.,** ***Thompson v. Metropolitan Life Ins. Co.***, 216 F.R.D. 55, 62 (S.D. N.Y. 2003):

> *In view of the extensive notice campaign waged by the defendant, the extremely small number of class members objecting or requesting exclusion from the settlement is a clear sign of strong support for the settlement…The notice campaign that defendant agreed to undertake was extensive…I am satisfied, having reviewed the contents of the notice package, and the extensive steps taken to disseminate notice of the settlement, that the class notice complies with*

*the requirements of Rule 23 (c)(2) and 23(e). In summary, I have reviewed all of the objections, and none persuade me to conclude that the proposed settlement is unfair, inadequate or unreasonable.*

**Judge Edgar E. Bayley,** *Dimitrios v. CVS, Inc.*, No. 99-6209; *Walker v. Rite Aid Corp.*, No. 99-6210; and *Myers v. Rite Aid Corp.*, No. 01-2771 (November 27, 2002) (Pa. Ct. C.P.):

*The Court specifically finds that: fair and adequate notice has been given to the class, which comports with due process of law.*

**Judge Dewey C. Whitenton,** *Ervin v. Movie Gallery, Inc.*, (November 22, 2002) No. 13007 (Tenn. Ch.):

*[T]he in-store notice alone accounted for an approximate 34% of all MGA class members and the combined efforts of the in-store notice and the other notice mechanisms reached at least 84.5% of the entire MGA settlement class..the effectiveness of the notice campaign and the very high level of penetration to the settlement class were truly remarkable…The notice campaign was highly successful and effective, and it more that satisfied the due process and state law requirements for class notice.*

**Judge Marina Corodemus,** *Talalai v. Cooper Tire & Rubber Co.*, (September 13, 2002) No. L-008830.00 (N.J. Super. Ct.):

*Here, the comprehensive bilingual, English and Spanish, court-approved Notice Plan provided by the terms of the settlement meets due process requirements. The Notice Plan used a variety of methods to reach potential class members. For example, short form notices for print media were placed…throughout the United States and in major national consumer publications which include the most widely read publications among Cooper Tire owner demographic groups.*

**Judge Harold Baer, Jr.,** *Thompson v. Metropolitan Life Ins. Co.*, (September 3, 2002) No. 00-CV-5071 (S.D.N.Y.):

*In sum, the Court finds that the proposed notice texts and methodology are reasonable, that they constitute due, adequate and sufficient notice to all persons entitled to be provided with notice, and that they meet the requirements of the Federal Rules of civil Procedure (including Fed. R. Civ. P. 23(c)(2) and (e)), the United States Constitution (including the Due Process Clause, the Rules of the Court, and any other applicable law.*

**Judge Milton Gunn Shuffield,** *Scott v. Blockbuster Inc.*, (January 22, 2002) No. D 162-535 (Tex. Jud. Dist. Ct. Jefferson Co.) Ultimately withstood challenge to Court of Appeals of Texas. *Peters v. Blockbuster* 65 S.W.3d 295, 307 (Tex. App.-Beaumont, 2001):

*This Court concludes that the notice campaign was the best practicable, reasonably calculated, under all the circumstances, to apprise interested parties of the settlement and afford them an opportunity to present their objections…The notice campaign was highly successful and effective, and it more than satisfied the due process and state law requirements for class notice.*

*Williams v. Weyerhaeuser Co.*, 2002 WL 373578, at *10 (Cal. App. 1 Dist.):

*The hybrid notice given here–a combination of individual notice and notice by publication–was, as the trial court found, the best practicable method under the circumstances. The mass media campaign in this case appears to have been far more extensive than that approved in <u>Dunk, supra, 48 Cal.App.4th at pp. 1800, 1805, 56 Cal.Rptr.2d 483.</u> Objectors' own experience indicates the campaign was effective. Three of them received individual notices, two learned of the*

*settlement through advertisements, and the others apparently learned of the settlement when one of them went around the neighborhood and told his neighbors about the settlement.*

**Judge Marina Corodemus,** ***Talalai v. Cooper Tire & Rubber Co.***, (October 30, 2001) No. MID-L-8839-00-MT (N.J. Super. Ct.):

> *The parties have crafted a notice program which satisfies due process requirements without reliance on an unreasonably burdensome direct notification process…The notice program is specifically designed to reach a substantial percentage of the putative settlement class members…the proposed notice plan is design to effectively reach 83.2% of owner's of defendant's tires as well as the broader target of adults 35+, and 82.9% of key groups that account for the largest share of tire purchasers such as men 35+.*

**Judge Marina Corodemus,** ***Talalai v. Cooper Tire & Rubber Co.***, (October 29, 2001) No. L-8830-00-MT (N.J. Super. Ct.):

> *I saw the various bar graphs for the different publications and the different media dissemination, and I think that was actually the clearest bar graph I've ever seen in my life…it was very clear of the time periods that you were doing as to each publication and which media you were doing over what market time, so I think that was very clear.*

**Judge Stuart R. Pollak,** ***Microsoft I-V Cases***, (April 1, 2001) J.C.C.P. No. 4106 (Cal. Super. Ct.):

> *[C]oncerning dissemination of class notice; and I have reviewed the materials that have been submitted on that subject and basically I'm satisfied. I think it's amazing if you're really getting 80 percent coverage. That's very reassuring. And the papers that you submitted responded to a couple of things that had been mentioned before and I am satisfied with all that.*

**Judge Stuart R. Pollak,** ***Microsoft I-V Cases***, (March 30, 2001) J.C.C.P. No. 4106 (Cal. Super. Ct.):

> *Plaintiffs and Defendant Microsoft Corporation have submitted a joint statement in support of their request that the Court approve the plan for dissemination of class action notice and proposed forms of notice, and amend the class definition…The Court further finds that the methods for dissemination of the notice are the fairest and best practicable under the circumstances, and comport with due process requirements.*

**Judge Alfred G. Chiantelli,** ***Williams v. Weyerhaeuser Co.***, (December 22, 2000) No. 995787 (Cal. Super. Ct.):

> *Based upon the uncontroverted proof Class Counsel have submitted to the Court, the Court finds that the settling parties undertook an extensive notice campaign…*

**Judge Sarah S. Vance,** ***In re Babcok & Wilcox Co.***, (August 25, 2000) No. 00-0558 (E.D. La.):

> *[t]he (debtor's notice) plan's reach and frequency methodology is consistent with other asbestos-related notice programs, mass tort bankruptcies, and other significant notice programs…After reviewing debtor's Notice Plan, and the objections raised to it, the Court finds that the plan is reasonably calculated to appraise unknown claimants of their rights and meets the due process requirements set forth in Mullane…Accordingly, the Notice Plan is approved.*

# Articles and Speaking Engagements

Gina Intrepido-Bowden and Robert Taylor-Manning, *Ethical Considerations in Canadian Class Actions*, CLE Program. Accredited in Toronto and presented at Rochon Genova, LLP (April 2012).

Gina Intrepido-Bowden and Rob Taylor-Manning, *The Fundamentals of Settlement Administration*, CLE Program. Accredited in Pennsylvania and presented in Philadelphia at Spector Roseman Kodroff & Willis, P.C. (December 2011).

Carla Peak, *Is your legal notice designed to be noticed?* WESTLAW JOURNAL CLASS ACTION Vol.18 Issue 10 (2011).

Gina Intrepido-Bowden, presenter/panelist, *Reaching Class Members & Driving Take Rates*, CONSUMER ATTORNEYS OF SAN DIEGO, 4th Annual Class Action Symposium (October 2011).

Gina Intrepido-Bowden, Carla Peak, and Elizabeth Grande, *Legal Notice Ethics*, CLE Program. Accreditation received in California, Colorado, Illinois, Minnesota, New Jersey, New York, North Carolina, Pennsylvania, and Texas. Presented at law firms in New York (May 2010), Chicago (May 2010), Philadelphia (October 2010) and Minneapolis (January 2011). Broadcast via satellite to law firms in California, North Carolina, Texas, and London (October 2010). Sent via video to law firms in China (October 2010).

Brian Christensen, Gina Intrepido, and Richard Simmons, *Class Actions 101: Best Practices and Potential Pitfalls in Providing Class Notice*, Kansas Bar Association CLE Program (March 2009).

John B. Isbister, Todd B. Hilsee, & Carla A. Peak, *Seven Steps to a Successful Class Action Settlement*, AMERICAN BAR ASSOCIATION, SECTION OF LITIGATION, CLASS ACTIONS TODAY 16 (2008).

Todd B. Hilsee, Gina M. Intrepido, & Shannon R. Wheatman, *Hurricanes, Mobility and Due Process: The "Desire-to-Inform" Requirement for Effective Class Action Notice Is Highlighted by Katrina*, 80 TULANE LAW REV. 1771 (2006); reprinted in course materials for: AMERICAN BAR ASSOCIATION, 10th Annual National Institute on Class Actions (2006); NATIONAL BUSINESS INSTITUTE, Class Action Update: Today's Trends & Strategies for Success (2006); CENTER FOR LEGAL EDUCATION INTERNATIONAL, Class Actions: Prosecuting and Defending Complex Litigation (2007).

Gina M. Intrepido, *Notice Experts May Help Resolve CAFA Removal Issues, Notification to Officials*, 6 CLASS ACTION LITIG. REP. 759 (2005).

Todd B. Hilsee, Shannon R. Wheatman, & Gina M. Intrepido, *Do You Really Want Me to Know My Rights? The Ethics Behind Due Process in Class Action Notice Is More Than Just Plain Language: A Desire to Actually Inform*, 18 GEORGETOWN JOURNAL LEGAL ETHICS 1359 (2005).

# Legal Notice Case Examples

Following is a partial list of cases our expert(s) have been directly involved in the design of the notice program and/or notice documents:

| | |
|---|---|
| *Naef v. Masonite Corp (Hardboard Siding)* | Cir. Ct. Ala., CV-94-4033 |
| *Williams v. Weyerhaeuser Co. (Hardboard Siding)* | Cal. Super. Ct., CV-995787 |
| *In re Babcock and Wilcox Co. (Asbestos Related Bankruptcy)* | E.D. La., 00-10992 |
| *Brown v. Am. Tobacco* | Cal. Super. Ct., J.C.C.P. 4042 No. 711400 |
| *Microsoft I-V Cases (Antitrust Litig. Mirroring Justice Dept.)* | Cal. Super. Ct., J.C.C.P. No. 4106 |
| *Scott v. Blockbuster, Inc. (Extended Viewing Fees)* | 136th Tex. Jud. Dist., No. D 162-535 |
| *Talalai v. Cooper Tire & Rubber Co. (Tire Layer Adhesion)* | N.J. Super. Ct., No. MID-L-8839-00 MT |
| *Thompson v. Metropolitan Life Ins. Co. (Race Related Sales Practices)* | S.D. N.Y., No. 00-CIV-5071 HB |
| *Ervin v. Movie Gallery Inc. (Extended Viewing Fees)* | Tenn. Ch. Fayette Co., No. CV-13007 |
| *Walker v. Rite Aid of PA, Inc. (PA Act 6)* | C.P. Pa., No. 99-6210 |
| *Myers v. Rite Aid of PA, Inc. (PA Act 6)* | C.P. Pa., No. 01-2771 |
| *Baker v. Jewel Food Stores, Inc. & Dominick's Finer Foods, Inc. (Milk Price Fixing)* | Cir. Ct. Ill. Cook Co., No. 00-L-9664 |
| *In re Columbia/HCA Healthcare Corp. (Billing Practices Litig.)* | M.D. Tenn., MDL No. 1227 |
| *Soders v. General Motors Corp. (Marketing Initiative)* | C.P. Pa., No. CI-00-04255 |
| *Nature Guard Cement Roofing Shingles Cases* | Cal. Super. Ct., J.C.C.P. No. 4215 |
| *Defrates v. Hollywood Entertainment Corp.* | Cir. Ct. Ill., St. Clair. Co., No. 02L707 |
| *West v. G&H Seed Co. (Crawfish Farmers)* | 27th Jud. D. Ct. La., No. 99-C-4984-A |
| *Baiz v. Mountain View Cemetery (Burial Practices)* | Cal. Super. Ct., No. 809869-2 |
| *Richison v. American Cemwood Corp. (Roofing Durability)* | Cal. Super. Ct., No. 005532 |
| *Friedman v. Microsoft Corp. (Antitrust)* | Ariz. Super. Ct., No. CV 2000-000722 |
| *Davis v. Am. Home Prods. Corp. (Norplant Contraceptive)* | Civ. D. Ct. La., Div. K, No. 94-11684 |
| *Gordon v. Microsoft Corp. (Antitrust)* | D. Minn., No. 00-5994 |
| *Fisher v. Virginia Electric & Power Co.* | E.D. Va., No 3:02-CV-431 |
| *Bardessono v. Ford Motor Co. (15 Passenger Vans Outreach)* | Wash. Super. Ct., No. 32494 |
| *Gardner v. Stimson Lumber Co. (Forestex Siding)* | Wash. Super. Ct., No. 00-2-17633-3SEA |
| *Nichols v. SmithKline Beecham Corp. (Paxil)* | E.D. Pa., No. 00-6222 |
| *In re Educ. Testing Serv. PLT 7-12 Test Scoring* | E.D. La., 2:04md1643 |
| *In re Serzone Products Liability* | S.D. W. Va., 02-md-1477 |
| *Ford Explorer Cases* | Cal. Super. Ct., JCCP Nos. 4226 & 4270 |
| *In re Lupron Marketing & Sales Practices* | D. Mass., MDL No.1430 |
| *Morris v. Liberty Mutual Fire Ins. Co.* | D. Okla., NO. CJ-03-714 |

| | |
|---|---|
| *Thibodeaux v. Conoco Philips Co.* | D. La., No. 2003-481 |
| *Morrow v. Conoco Inc.* | D. La., No. 2002-3860 |
| *Tobacco Farmer Transition Program* | U.S. Dept. of Agric. |
| *Froeber v. Liberty Mutual Fire Ins. Co.* | Cir. Ct. Ore., No. 00C15234 |
| *Carnegie v. Household Int'l, Inc.* | N. D. Ill., No. 98-C-2178 |
| *In re Royal Ahold Securities and "ERISA"* | D. Md., MDL 1539 |
| *First State Orthopaedics et al. v. Concentra, Inc., et al.* | E.D. Pa., No. 2:05-CV-04951-AB |
| *Meckstroth v. Toyota Motor Sales, U.S.A., Inc.* | 24th Jud. D. Ct. La., No. 583-318 |
| *In re High Sulfur Content Gasoline Products Liability* | E.D. La., MDL No. 1632 |
| *Desportes v. American General Assurance Co.* | Ga. Super. Ct., No. SU-04-CV-3637 |
| *In re Residential Schools Litigation* | Ont. Super. Ct., 00-CV-192059 CPA |
| *Turner v. Murphy Oil USA, Inc.* | E.D. La., No. 2:05-CV-04206-EEF-JCW |
| *Carter v. North Central Life Ins. Co.* | Ga. Super. Ct., No. SU-2006-CV-3764-6 |
| *Spence v. Microsoft Corp. (Antitrust Litig.)* | Cir. Ct. Wis., No. 00-CV-003042 |
| *Ciabattari v. Toyota Motor Sales, U.S.A., Inc.* | N.D. Cal., No. C-05-04289-BZ |
| *Peek v. Microsoft Corporation* | Cir. Ct. Ark., No. CV-2006-2612 |
| *Reynolds v. The Hartford Financial Services Group, Inc.* | D. Ore., No. CV-01-1529 BR |
| *Zarebski v. Hartford Insurance Co. of the Midwest* | Cir. Ct. Ark., No. CV-2006-409-3 |
| *In re Parmalat Securities* | S.D. N.Y., MDL No. 1653 (LAK) |
| *Beasley v. The Reliable Life Insurance Co.* | Cir. Ct. Ark., No. CV-2005-58-1 |
| *Sweeten v. American Empire Insurance Company* | Cir. Ct. Ark., No. 2007-154-3 |
| *Gunderson v. F.A. Richard & Associates, Inc. (FARA)* | 14th Jud. D. Ct. La., No. 2004-2417-D |
| *Gunderson v. F.A. Richard & Associates, Inc. (Focus)* | 14th Jud. D. Ct. La., No. 2004-2417-D |
| *Hunsucker v. American Standard Ins. Co. of Wisconsin* | Cir. Ct. Ark., No., CV-2007-155-3 |
| *Burgess v. Farmers Insurance Co., Inc.* | D. Okla., No. CJ-2001-292 |
| *Grays Harbor v. Carrier Corporation* | W.D. Wash., No. 05-05437-RBL |
| *Donnelly v. United Technologies Corp.* | Ont. S.C.J., 06-CV-320045CP |
| *Wener v. United Technologies Corp.* | QC. Super. Ct., 500-06-000425-088 |
| *Brookshire Bros. v. Chiquita (Antitrust)* | S.D. Fla., No. 05-CIV-21962 |
| *Johnson v. Progressive* | Cir. Ct. Ark., No. CV-2003-513 |
| *Bond v. American Family Insurance Co.* | D. Ariz., CV06-01249-PXH-DGC |
| *Angel v. U.S. Tire Recovery (Tire Fire)* | Cir. Ct. W. Va., No. 06-C-855 |
| *In re TJX Companies Retail Security Breach* | D. Mass., MDL No. 1838 |
| *Webb v. Liberty Mutual Insurance Co.* | Cir. Ct. Ark., No. CV-2007-418-3 |
| *Shaffer v. Continental Casualty Co. (Long Term Care Insurance)* | C.D. Cal., SACV06-2235-PSG (PJWx) |
| *Palace v. DaimlerChrysler (Neon Head Gaskets)* | Cir. Ct. Ill., Cook Co., No. 01-CH-13168 |

| | |
|---|---|
| *Beringer v. Certegy Check Services, Inc. (Data Breach)* | M.D. Fla., No. 8:07-cv-1657-T-23TGW |
| *Lockwood v. Certegy Check Services, Inc. (Data Breach)* | M.D. Fla., No. 2:07-CV-587-FtM-29-DNF |
| *Sherrill v. Progressive Northwestern Ins. Co.* | 18th D. Ct. Mont., No. DV-03-220 |
| *Gunderson v. F.A. Richard & Associates, Inc. (AIG)* | 14th Jud. D. Ct. La., No. 2004-2417-D |
| *Jones v. Dominion Transmission, Inc.* | S.D. W. Va., No. 2:06-cv-00671 |
| *Gunderson v. F.A. Richard & Associates, Inc. (Walmart)* | 14th Jud. D. Ct. La., No. 2004-2417-D |
| *In re Trans Union Corp. Privacy (Data Breach)* | N.D. Ill., MDL No. 1350 |
| *Gunderson v. F.A. Richard & Associates., Inc. (Amerisafe)* | 14th Jud. D. Ct. La., No. 2004-002417 |
| *Bibb v. Monsanto Co. (Nitro)* | Cir. Ct. W.Va., No. 041465 |
| *Carter v. Monsanto Co. (Nitro)* | Cir. Ct. W.Va., No. 00-C-300 |
| *In re U.S. Department of  eterans Affairs (  A) Data Breach* | D. D.C., MDL 1796 |
| *In re Countrywide Financial Corp. Customer Data Security Breach* | W.D. Ky., MDL No. 1998 |
| *Dolen v. ABN AMRO Bank N. . (Callable CDs)* | Nos. 01-L-454 & 01-L-493 |
| *Griffin v. Dell Canada Inc.* | Ont. Super. Ct., No. 07-CV-325223D2 |
| *Plubell v. Merck & Co., Inc.* | Cir. Ct. Mo., No. 04CV235817-01 |
| *Billieson v. City of New Orleans* | Civ. D. Ct. La., No. 94-19231 |
| *Anderson v. Government of Canada* | Sup. Ct. NL, No. 2008NLTD166 |
| *  o v. Natura Pet Products, Inc.* | N.D. Cal., No. 5:09cv02619 |
| *Allen v. UMB Bank, N.A.* | Cir. Ct. Mo., No. 1016-CV34791 |
| *Blue Cross of California Website Security Cases* | Sup. Ct. Cal., No. JCCP 4647 |
| *Alvare  v. Haseko Homes, Inc.* | Cir. Ct. HI., No. 09-1-2691-11 |
| *LaRocque v. TRS Recovery Services, Inc.* | D. Maine, No. 2:11cv00091 |
| *In re: Zurn Pex Plumbing Products Liability Litig.* | D. Minn., MDL No. 08-1958 |
| *Molina v. Intrust Bank, N.A.* | 18th Jud. D. Ct., 10-cv-3686 |
| *In Re: Uponor, Inc., F1807 Products Liability Litigation* | D. Minn, MDL No. 2247 |

Following is a partial list of notice programs and/or notices that are expert(s) have critiqued:

| | |
|---|---|
| *Barbanti v. W.R. Grace and Co. (Zonolite/Asbestos Litig.)* | Wash. Super. Ct., 00201756-6 |
| *In re W.R. Grace Co. (Asbestos Related Bankruptcy)* | Bankr. D. Del., No. 01-3293-JCS |
| *In re USG Corp. (Asbestos Related Bankruptcy)* | Bankr. D. Del., No. 01-02094-RJN |
| *Johnson v. Ethicon, Inc. (Product Liability Litigation)* | Cir. Ct. W. Va., Nos. 01-C-1530, 1531, 1533, 01-C-2491 to 2500 |
| *Parsons/Currie v. McDonalds* | Ont. S.C.J. d2004 |
| *Chambers v. DaimlerChrysler Corp. (Neon Head Gaskets)* | N.C. Super. Ct., No. 01:CVS-1555 |
| *West v. Carfax, Inc.* | Ohio C.P., No. 04-CV-1898 (ADL) |
| *Perrine v. E.I. Du Pont De Nemours & Co.* | Cir. Ct. W. Va., No. 04-C-296-2 |

| *Clark v. Pfi er, Inc. (Neurontin)* | C.P. Pa. Phila. Co., No. 9709-3162 |
| *In re Motor Fuel Temperature Sales Practices Litig.* | D. Kan., MDL No. 1840 |
| *Gallucci v. Boiron, Inc.* | S.D. Ca., No. 3:11-cv-02039 |
| *Tchoboian v. FedEx   ffice and Print Services, Inc.* | C.D. Cal., No.10-CV01008 |

Attachment B

To:
From: administrator@ACFTCAsettlement.com
Subject: Legal Notice about Vehicles Rented at California Airports

**To file your Election of Benefits Form online:**
**ID Number: XXXXXXX**

**You can file a claim for cash or vouchers from a class action settlement**
**about your rental of a vehicle at a California airport location from**
**January 1, 2007 to November 14, 2007.**

A settlement has been reached with The Hertz Corporation, Dollar Thrifty Automotive Group, Inc., Avis Budget Group, Inc., Vanguard Car Rental USA, LLC, Enterprise Holdings, Inc., Fox Rent A Car, Inc. and the California Travel and Tourism Commission in a class action lawsuit claiming that these companies agreed with each other to pass on the Airport Concession Fee (ACF) and Tourism Commission Assessment (TCA) to customers for rentals at certain California airport locations. The Defendants deny all of the claims in the lawsuit, but have agreed to the settlement to avoid the cost and risk of a trial.

WHO IS INCLUDED? Defendants' records show that you are included in the settlement. Generally, the settlement includes people who rented a vehicle directly from corporate-owned locations of Alamo, Avis, Budget, Dollar, Enterprise, Fox Rent A Car, Hertz, National, or Thrifty for pick up at a California airport location from January 1, 2007 through November 14, 2007, and who were charged and paid an ACF and/or TCA as a separate line item on their invoice. Rentals from non-corporate owned airport locations, rentals made as part of a pre-existing agreement with a business or governmental body according to which the rental charge was determined, and rentals where a package price was paid to a tour operator or online booking agency (like Priceline or Hotwire) are not included and are not entitled to cash payments or vouchers.

WHAT CAN YOU GET? You can elect to receive one of the cash or voucher options below based on the total number of days you rented one or more vehicles directly from that rental car defendant at a California airport location from January 1, 2007 to November 14, 2007, and paid an ACF and/or TCA as a separate line item on your invoice. Benefit options are:

| Total number of rental days | Option | Description |
| --- | --- | --- |
| Any | Cash | $2 per day ($5 minimum payment) |
| Less than eight | One—One Day Voucher | one voucher good for free time and mileage for one rental day |
| Eight or more | Two—One Day Vouchers | two vouchers, each good for free time and mileage for one rental day; or |



| | One—Two Day Voucher | one voucher good for free time and mileage for <u>two</u> rental days |
|---|---|---|

Vouchers will be issued in the brand name of the rental car company that charged and collected the ACF and/or TCA, and will be available for use at any of that rental car company's U.S. corporate-owned locations. Avis and Budget vouchers may be redeemed at an Avis or Budget U.S. corporate-owned location. The settlement will also require the California Travel and Tourism Commission to adopt certain practices related to meetings and its communications with the public and rental car companies about Tourism Commission Assessments.

**Ho to Get Benefits?** You must submit an Election of Benefits Form by **onth 00, 2012** to get a cash payment or vouchers. Using the ID number above, you can submit a form online at <u>www.ACFTCAsettlement.com</u>. You may also request one by calling 1-000-000-0000 or by sending a letter by mail to the claims administrator.

**Your Other Options?** If you submit an Election of Benefits Form or do nothing, you will be legally bound by the settlement and you will give up your right to sue the Defendants for any claim asserted in this lawsuit or released by the Stipulation of Settlement. If you do not want to be legally bound by the settlement or be able to get a cash payment or voucher from it, you must exclude yourself by **onth 00, 2012**. If you do not exclude yourself, you may object to the settlement or you may ask for permission for you or your lawyer to appear and speak at the hearing—at your own cost—but you don't have to. The deadline to submit objections and requests to appear is **onth 00, 2012**. The detailed notice, available at the website, explains how to act on all of your options.

The Court will hold a hearing on **onth 00, 2012** to consider whether to approve: the settlement; attorneys' fees, costs, and expenses of up to $5,870,000; and a $2,000 payment to the Class Representative. These fees, costs, expenses and payments will be paid separately by the Defendants and will not reduce the amount of cash or vouchers available. The complete terms of the settlement, including the benefits you may be entitled to receive and the rights you may be giving up are contained in the Stipulation of Settlement, which may be found online at www.ACFTCAsettlement.com.

**File your claim online at _____.ACFTCAsettlement.com. You may also re uest an Election of Benefits Form and more information by callin  1 000 000 0000.**

A settlement has been reached with The Hertz Corporation, Dollar Thrifty Automotive Group, Inc., Avis Budget Group, Inc., Vanguard Car Rental USA, LLC, Enterprise Holdings, Inc., Fox Rent A Car, Inc. and the California Travel and Tourism Commission in a class action lawsuit claiming that these companies agreed with each other to pass on the Airport Concession Fee (ACF) and Tourism Commission Assessment (TCA) to customers for rentals at certain California airport locations. The Defendants deny all of the claims in the lawsuit, but have agreed to the settlement to avoid the cost and risk of a trial.

**Who's Included?** Defendants' records show that you are included in the settlement. Generally, the settlement includes people who rented a vehicle directly from corporate-owned locations of Alamo, Avis, Budget, Dollar, Enterprise, Fox Rent A Car, Hertz, National, or Thrifty for pick up at a California airport location from January 1, 2007 through November 14, 2007, and were charged and paid an ACF and/or TCA as a separate line item on their invoice. Rentals from non-corporate owned airport locations, rentals made as part of a pre-existing agreement with a business or governmental according to which the rental charge was determined, and rentals where a package price was paid to a tour operator or online booking agency (like Priceline or Hotwire) are not included and are not entitled to cash payments or vouchers.

**What Can You Get?** You can elect to receive one of the options below based on the total number of days you rented one or more vehicles directly from that rental car defendant at a California airport location from 1/1/07 to 11/14/07, and paid an ACF and/or TCA as a separate line item on your invoice. Options are: (1) $2 for each day the vehicles were rented ($5 minimum payment); or (2) if the vehicles were rented for less than 8 days, one voucher good for free time and mileage for one rental day; or (3) if the vehicles were rented for 8 or more days, either (a) two—one day vouchers each good for free time and mileage for one rental day, or (b) one—two day voucher good for free time and mileage for two rental days. Vouchers will be issued in the brand name of each rental car company that charged you the ACF and/or TCA, and will be available for use at any of that rental car company's U.S. corporate-owned locations.

**How to Get Benefits?** Use the code on the front of this postcard to submit your Election of Benefits Form online by **Month 00, 2012**. Forms are also available at www.ACFTCAsettlement.com or by calling 1-000-000-0000.

**Your Other Options**. If you do nothing, your rights will be affected. If you don't want to be legally bound by the settlement, you must exclude yourself from it by **Month 00, 2012**. Unless you exclude yourself you won't be able to sue the Defendants for any claim asserted in this lawsuit or released by the Stipulation of Settlement. If you stay in the settlement (i.e., don't exclude yourself), you may object to it or you may ask for permission for you or your own lawyer to appear and speak at the hearing—at your own cost—but you don't have to. Objections and requests to appear are due by **Month 00, 2012**. More information is in the detailed notice and Stipulation of Settlement which are available at the website.

The Court will hold a hearing on Month 00, 2012 to consider whether to approve: the settlement; attorneys' fees, costs, and expenses of up to $5,870,000; and a $2,000 payment to the Class Representative.

**File your Election of Benefits Form online at www.ACFTCAsettlement.com or get one by calling 1-000-000-0000.**

<u>LEGAL NOTICE</u>

**You can file a claim for cash or vouchers from a class action settlement because you rented a vehicle from a California airport location between January 1, 2007 and November 14, 2007.**

**1-000-000-0000**
**www.ACFTCAsettlement.com**

HZS

ACF/TCA
Settlement Administrator
P.O. Box 0000
City, ST 00000-0000

Presorted
First-Class Mail
U.S. Postage
PAID
City, ST
Permit No. 0000

Postal Service: Please Do Not Mark Barcode

{BARCODE}
JOHN Q CLASSMEMBER
123 ABC STREET
NOVATO, CA 94948-0000

Election of Benefits ID#: [XXXXXXXXXXXX]
(use ID to file your claim online)

LEGAL NOTICE

# If you rented a vehicle at a California airport location between January 1, 2007 and November 14, 2007, you may be entitled to cash or vouchers from a class action settlement.

A settlement has been reached with The Hertz Corporation, Dollar Thrifty Automotive Group, Inc., Avis Budget Group, Inc., Vanguard Car Rental USA, LLC, Enterprise Holdings, Inc., Fox Rent A Car, Inc. and the California Travel and Tourism Commission in a class action lawsuit claiming that these companies agreed with each other to pass on the Airport Concession Fee (ACF) and Tourism Commission Assessment (TCA) to customers for rentals at certain California airport locations. The Defendants deny all of the claims in the lawsuit, but have agreed to the settlement to avoid the cost and risk of a trial. **WHO IS INCLUDED?** Generally, the settlement includes people who rented a vehicle directly from corporate-owned locations of Alamo, Avis, Budget, Dollar, Enterprise, Fox Rent A Car, Hertz, National or Thrifty for pick up at a California airport location from 1/1/07-11/14/07, and were charged and paid to the rental car company an ACF and/or TCA as a separate line item on their invoice. Rentals from non-corporate owned airport locations, rentals made as part of a pre-existing agreement with a business or governmental body according to which the rental charge was determined, and rentals where a package price was paid to a tour operator or online booking agency (like Priceline or Hotwire) are not included and are not entitled to cash payments or vouchers.

**WHAT DOES THE SETTLEMENT PROVIDE?** Those included in the settlement can elect to receive one of the following options based on the total number of days they rented one or more vehicles directly from that rental car defendant at a California airport location from 1/1/07 to 11/14/07, and paid an ACF and/or TCA as a separate line item on their invoice. Options are: (1) $2 for each day the vehicles were rented ($5 minimum payment); or (2) if the vehicles were rented for less than eight days, one voucher good for free time and mileage for one rental day; or (3) if the vehicles were rented for eight or more days, the choice of either (a) two—one day vouchers each good for free time and mileage for one rental day, or (b) one—two day voucher good for free time and mileage

for two rental days. Vouchers will be issued in the brand name of the rental car company that charged and collected the ACF and/or TCA, and will be available for use at any of that rental car company's U.S. corporate-owned locations.

**HOW DO YOU ASK FOR A CASH PAYMENT OR VOUCHER?** Submit an Election of Benefits Form online by **Month 00, 2012**. Forms are also available at the website or by calling 1-000-000-0000.

**WHAT ARE YOUR OPTIONS?** If you submit an Election of Benefits Form or do nothing, you will be legally bound by the settlement and give up your right to sue the Defendants for any claim asserted in this lawsuit or released by the Stipulation of Settlement. If you do not want to be legally bound by the settlement or be able to get a cash payment or voucher from it, you must exclude yourself by **Month 00, 2012**. If you do not exclude yourself, you may object to the settlement or you may ask for permission for you or your lawyer to appear and speak at the hearing—at your own cost—but you don't have to. The deadline to submit objections and requests to appear is **Month 00, 2012**.

**THE COURT'S FAIRNESS HEARING.** The U.S. District Court for the Southern District of California will hold a hearing in this case (*Shames v. The Hertz Corp.*, No. 07cv2174-MMA), on Month 00, 2012 to consider whether to approve the settlement, payment of attorneys' fees, costs, and expenses of up to $5,870,000 and a $2,000 payment to the Class Representative.

**HOW DO YOU GET MORE INFORMATION?** More information is in the detailed notice and Stipulation of Settlement which are available at the website. You can also call or write to ACF/TCA Settlement Administrator, c/o KCC LLC, PO Box 0000, City, ST 00000-0000.

# 1-000-000-0000
# www.ACFTCAsettlement.com

To:
From: administrator@ACFTCAsettlement.com
Subject: Reminder Notice about Vehicles Rented at California Airports

**To file your Election of Benefits Form online:**
**ID Number: XXXXXXX**

<u>**Reminder: Submission deadline is Month 00, 2012**</u>
**You can file a claim for cash or vouchers from a class action settlement about your rental of a vehicle at a California airport location.**

Records show that you rented a vehicle directly from a corporate-owned location of Alamo, Avis, Budget, Dollar, Enterprise, Fox Rent A Car, Hertz, National, or Thrifty for pick up at a California airport location between January 1, 2007 and November 14, 2007, and were charged and paid an Airport Concession Fee (ACF) and/or Tourism Commission Assessment (TCA) as a separate line item on your invoice. You can elect to receive one of the cash or voucher options below based on the total number of days you rented one or more vehicles directly from that rental car defendant at a California airport location from January 1, 2007 to November 14, 2007, and paid an ACF and/or TCA as a separate line item on your invoice. Benefit options are:

| Total number of rental days | Option | Description |
|---|---|---|
| Any | Cash | $2 per day ($5 minimum payment) |
| Less than eight | One—One Day Voucher | one voucher good for free time and mileage for <u>one</u> rental day |
| Eight or more | Two—One Day Vouchers | two vouchers, each good for free time and mileage for <u>one</u> rental day; or |
| | One—Two Day Voucher | one voucher good for free time and mileage for <u>two</u> rental days |

Rentals from non-corporate owned airport locations, rentals made as part of a pre-existing agreement with a business or governmental body according to which the rental charge was determined, and rentals where a package price was paid to a tour operator or online booking agency (like Priceline or Hotwire) are <u>not</u> included and are <u>not</u> entitled to cash payments or vouchers.

Vouchers will be issued in the brand name of the rental car company that charged and collected the ACF and/or TCA, and will be available for use at that rental car company's U.S. corporate-owned locations. Avis and Budget vouchers may be redeemed at an Avis or Budget U.S. corporate-owned location.

To get your cash payment or voucher you must submit an Election of Benefits Form. Using the ID number above, you can submit a form online at www.ACFTCAsettlement.com. You may also request one by calling 1-000-000-0000 or by sending a letter by mail to the claims administrator. **Remember, the deadline to submit or mail your Election of Benefits Form is Month 00, 2012**.

The cash payments and vouchers are the result of a settlement that was reached with The Hertz Corporation, Dollar Thrifty Automotive Group, Inc., Avis Budget Group, Inc., Vanguard Car Rental USA, LLC, Enterprise Holdings, Inc., Fox Rent A Car, Inc. and the California Travel and Tourism Commission in a class action lawsuit claiming that these companies agreed with each other to pass on the Airport Concession Fee and Tourism Commission Assessment to customers for rentals at certain California airport locations. The Defendants deny all of the claims in the lawsuit, but have agreed to the settlement to avoid the cost and risk of a trial.  The settlement will also require the California Travel and Tourism Commission to adopt certain practices related to meetings and its communications with the public and rental car companies about Tourism Commission Assessments.

**File your claim online at \_\_\_\_.\_CFTC\_settlement.com.**
**You may also re uest an Election of Benefits Form and**
**more information by callin  1 000 000 0000.**

LEGAL NOTICE

# Reminder: Submission deadline is Month 00, 2012

## If you rented a vehicle at a California airport location between January 1, 2007 and November 14, 2007, you may be entitled to cash or vouchers.

If you rented a vehicle directly from corporate-owned locations of Alamo, Avis, Budget, Dollar, Enterprise, Fox Rent A Car, Hertz, National, or Thrifty for pick up at a California airport location from January 1, 2007 through November 14, 2007, and you were charged and paid an Airport Concession Fee (ACF) and/or Tourism Commission Assessment (TCA) as a separate line item on your invoice you may be entitled to a cash payment or vouchers from a class action settlement. Benefit options are: (1) $2 for each day the vehicles were rented ($5 minimum payment); or (2) if the vehicles were rented for less than eight days, one voucher good for free time and mileage for <u>one</u> rental day; or (3) if the vehicles were rented for eight or more days, the choice of either (a) two—one day vouchers each good for free time and mileage for <u>one</u> rental day, or (b) one—two day voucher good for free time and mileage for <u>two</u> rental days. Rentals from non-corporate owned airport location, rentals made as part of a pre-existing agreement with a business or governmental body according to which the rental charge was determined, and rentals where a package price was paid to a tour operator or online booking agency (such as Priceline or Hotwire) are <u>not</u> included and are <u>not</u> entitled to cash payments or vouchers.

Vouchers will be issued in the brand name of the rental car company that charged and collected the ACF and/or TCA, and will be available for use at any of that rental car company's U.S. corporate-owned locations.

To get your cash payment or voucher you must submit an Election of Benefits Form. You may submit a form online or request one by calling 1-000-000-0000. Remember, the deadline to submit or mail your Election of Benefits Form is **Month 00, 2012**.

The cash payments and vouchers are the result of a settlement that was reached with The Hertz Corporation, Dollar Thrifty Automotive Group, Inc., Avis Budget Group, Inc., Vanguard Car Rental USA, LLC, Enterprise Holdings, Inc., Fox Rent A Car, Inc. and the California Travel and Tourism Commission in a class action lawsuit claiming that these companies agreed with each other to pass on the ACF and TCA to customers for rentals at certain California airport locations. The Defendants deny all of the claims in the lawsuit, but have agreed to the settlement to avoid the cost and risk of a trial.  The settlement will also require the California Travel and Tourism Commission to adopt certain practices related to meetings and its communications with the public and rental car companies about Tourism Commission Assessments.

## File your Election of Benefits Form online at www.ACFTCAsettlement.com or get one by calling 1-000-000-0000.

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF CALIFORNIA

# If you rented a vehicle at a California airport location between January 1, 2007 and November 14, 2007, you may be entitled to cash or vouchers from a class action settlement.

*A court authorized this Notice. This is <u>not</u> a solicitation from a lawyer.*

- A settlement has been reached in a class action lawsuit claiming that certain car rental companies agreed with each other to pass on the Airport Concession Fee and Tourism Commission Assessment to customers who rented vehicles from certain California airport locations.

- The settlement provides cash payments or vouchers to those included in the settlement.

- The settlement will also require the California Travel and Tourism Commission to adopt certain practices related to meetings and its communications with the public and rental car companies about Tourism Commission Assessments.

- This notice summarizes the proposed settlement. The complete terms of the settlement, including information describing the benefits you may be entitled to receive and the rights you may be giving up, are contained in the Stipulation of Settlement, which may be found online at www.ACFTCAsettlement.com.

- Your legal rights are affected whether you act or don't act. Read this notice carefully.

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT: | |
|---|---|
| SUBMIT AN ELECTION OF BENEFITS FORM | The only way to get a cash payment or voucher. |
| EXCLUDE YOURSELF | Get no payment or voucher. This is the only option that allows you to ever be part of another lawsuit against the Defendants about the legal claims asserted in this lawsuit or released through the settlement. |
| OBJECT | Write to the Court about why you don't like the settlement. |
| GO TO A HEARING | Ask to speak in Court about the fairness of the settlement. |
| DO NOTHING | Get no payment or voucher. Give up rights. |

- These rights and options—**and the deadlines to exercise them**—are explained in this notice.

- The Court in charge of this case still has to decide whether to approve the settlement. Cash payments will be made and vouchers will be distributed only if the Court approves the settlement and after any appeals are resolved. Please be patient.

QUESTIONS? CALL 1-800-000-0000 TOLL FREE OR VISIT WWW.ACFTCASETTLEMENT.COM

## WHAT THIS NOTICE CONTAINS

BASIC INFORMATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . PAGE 3
  1.  Why was this notice issued?
  2.  What is this lawsuit about?
  3.  What is a class action?
  4.  Why is there a settlement?

WHO IS INCLUDED IN THE SETTLEMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . PAGE 3
  5.  How do I know if I am part of the settlement?
  6.  Are there exceptions to being included in the settlement?
  7.  What if I am still not sure if I am included?

THE SETTLEMENT BENEFITS—WHAT YOU CAN GET . . . . . . . . . . . . . . . . . . . . . . . . . . . . . PAGE 4
  8.  What does the settlement provide?
  9.  Tell me more about the vouchers.

HOW TO GET BENEFITS—SUBMITTING AN ELECTION OF BENEFITS FORM. . . . . . . . . . . . PAGE 5
  10.  How can I get a cash payment or voucher?
  11.  When will I get my cash payment or voucher?
  12.  What rights am I giving up to get a cash payment or voucher and stay in the Class?

EXCLUDING YOURSELF FROM THE SETTLEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . PAGE 5
  13.  How do I get out of the settlement?
  14.  If I exclude myself, will I still get a cash payment or voucher from this settlement?
  15.  If I don't exclude myself, can I sue the Defendants for the same claims later?

THE LAWYERS REPRESENTING YOU . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . PAGE 6
  16.  Do I have a lawyer in this case?
  17.  How will the lawyers be paid?

OBJECTING TO THE SETTLEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . PAGE 6
  18.  How do I tell the Court if I don't like the settlement?
  19.  What's the difference between objecting to the settlement and excluding myself from it?

THE COURT'S FAIRNESS HEARING. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . PAGE 6
  20.  When and where will the Court decide whether to approve the settlement?
  21.  Do I have to come to the hearing?
  22.  May I speak at the hearing?

IF YOU DO NOTHING . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . PAGE 7
  23.  What happens if I do nothing at all?

GETTING MORE INFORMATION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . PAGE 7
  24.  Are there more details about the settlement?
  25.  How do I get more information?

# BASIC INFORMATION

## 1. Why was this notice issued?

A Court authorized this notice because you have a right to know about the proposed settlement of this class action lawsuit and about all of your options before the Court decides whether to approve the settlement. This notice explains the lawsuit, the settlement, your legal rights, what benefits are available, and who can get them.

Judge Michael M. Anello of the United States District Court for the Southern District of California is overseeing this class action. The case is known as *Shames v. The Hertz Corporation*, Case No. 07cv2174-MMA. The people who sued are called the Plaintiffs and the companies they sued, The Hertz Corporation, Dollar Thrifty Automotive Group, Inc., Avis Budget Group, Inc., Vanguard Car Rental USA, LLC, Enterprise Holdings, Inc., Fox Rent A Car, Inc. and the California Travel and Tourism Commission, are called the Defendants. The Hertz Corporation, Dollar Thrifty Automotive Group, Inc., Avis Budget Group, Inc., Vanguard Car Rental USA, LLC, Enterprise Holdings, Inc., and Fox Rent A Car, Inc. may also be referred to as the Rental Car Defendants.

## 2. What is this lawsuit about?

The lawsuit claims that the Defendants violated antitrust and other laws by raising rental car prices at California airports by agreeing with each other to pass on the Airport Concession Fee (ACF) and Tourism Commission Assessment (TCA) to customers for rentals at certain California airport locations. The Defendants deny all of the claims in the lawsuit and deny that they did anything wrong.

## 3. What is a class action?

In a class action, one or more people, called a Class Representative (in this case Gary Gramkow), sue on behalf of all people who have similar claims. The people included in the class action are called a Class or Class Members. A single court resolves the issues for all Class Members, except for those who exclude themselves from the Class.

## 4. Why is there a settlement?

The Court did not decide in favor of the Plaintiffs or the Defendants. Instead, both sides agreed to a settlement. This way, they avoid the cost and risk of a trial and the Class can get benefits. The Class Representative and his attorneys think the settlement is best for all Class Members.

# WHO IS INCLUDED IN THE SETTLEMENT

## 5. How do I know if I am part of the settlement?

If you received a notice in the mail or by email, at least one of the Rental Car Defendants' records shows that you are included in the settlement. Generally, the settlement includes people who rented a vehicle directly from corporate-owned locations of Alamo, Avis, Budget, Dollar, Enterprise, Fox Rent A Car, Hertz, National or Thrifty for pick up at a California airport location from January 1, 2007 through November 14, 2007, and were charged and paid an ACF and/or TCA as a separate line item on their invoice to one of those companies.

## 6. Are there exceptions to being included in the settlement?

Yes. Rentals from non-corporate owned airport locations, rentals made as part of a pre-existing agreement with a business or governmental body according to which the rental charge was determined, and rentals where the customer paid a package price to a tour operator or online booking agency (such as Priceline or Hotwire) are not included in the Class and are not entitled to cash payments or vouchers from this settlement.

Rentals made at California airport licensee locations are not included in the settlement. A list of the licensee locations is available at www.ACFTCAsettlement.com.

QUESTIONS? CALL 1-800-000-0000 TOLL FREE OR VISIT WWW.ACFTCASETTLEMENT.COM

**7. What if I am still not sure if I am included?**

Visit www.ACFTCAsettlement.com, call 1-800-000-0000 or write to ACF/TCA Settlement Administrator, c/o KCC LLC, PO Box 0000, City, ST 00000-0000 for more information.

## THE SETTLEMENT BENEFITS—WHAT YOU CAN GET

**8. What does the settlement provide?**

The settlement provides the option of a cash payment or voucher from each Rental Car Defendant that the Class Member rented a vehicle from, at a California airport location, between January 1, 2007 and November 14, 2007, and paid an ACF and/or TCA as a separate line item on their invoice. The benefit options are based on the total number of days each vehicle was rented. Benefit options are:

| Total number of rental days (from 1/1/07 to 11/14/07) | Option | Description |
|---|---|---|
| Any | Cash | $2 per day ($5 minimum payment) |
| Less than eight | One—One Day Voucher | one voucher good for free time and mileage for <u>one</u> rental day |
| Eight or more | Two—One Day Vouchers | two vouchers, each good for free time and mileage for <u>one</u> rental day; or |
| | One—Two Day Voucher | one voucher good for free time and mileage for <u>two</u> rental days |

Rental days for vehicles rented from Avis or Budget may be combined when selecting benefit options.

**9. Tell me more about the vouchers.**

Vouchers:

- will be issued in the brand name of each of the rental car companies that charged the Class Member an ACF and/or TCA (Avis and Budget will issue vouchers as Avis/Budget);
- will be printed with the name and address of the Class Member and may be redeemed only by the Class Member or someone living in the same household at the same address;
- cannot be transferred or reassigned to a different person;
- may be used for the rental of a compact, midsize (intermediate), standard, or full size car class of vehicle;
- are valid with applicable daily, weekly and other multi-daily rates and can be used with most other rate discounts the renter may be eligible for;
- will expire 18 months after the date of issue;
- are for time and mileage charges only and do not include one-way or drop charges, taxes, fees, charges, insurance and any optional products; and
- may be redeemed at the brand of any of the issuing rental car company's U.S. corporate-owned locations (Avis/Budget vouchers may be redeemed at an Avis or Budget U.S. corporate-owned location), but not at Independent Licensed Locations.

Please note that there is a relatively small list of Independent Licensed Locations where the vouchers may not be redeemed, which will be available at www.ACFTCAsettlement.com.

## How to Get Benefits—Submitting an Election of Benefits Form

**10. How can I get a cash payment or voucher?**

To get a cash payment or voucher you must submit an Election of Benefits Form. You can complete and submit your form online at www.ACFTCAsettlement.com, or by mail. You may also print a form from the website or request one by calling 1-800-000-0000 or by sending a letter by mail to the claims administrator. You must complete and submit your Election of Benefits Form online or mail it so it is postmarked no later than **Month 00, 2012**. If you received a postcard in the mail or notice by email, you can use the Election of Benefits ID# provided on the front of the card or at the top of the email to access your rental records and submit your election of benefits online.

**11. When will I get my cash payment or voucher?**

The Court will hold a hearing on Month 00, 2012, to decide whether to approve the settlement. If Judge Anello approves the settlement, there may be appeals. It is always uncertain whether the appeals can be resolved and resolving them can take time. Cash payments will be made and vouchers will be issued only after the Court grants approval of the settlement and any appeals are resolved. Please be patient.

If you change your mailing or email address before settlement benefits are issued, you should update your information online at www.ACFTCAsettlement.com or by sending a letter to the ACF/TCA Administrator to ensure you receive your cash payment or voucher. Remember, vouchers will be printed with the address the Administrator has on file, so it is important that you update your mailing address if it changes before the settlement benefits are distributed.

**12. What rights am I giving up to get a cash payment or voucher and stay in the Class?**

Unless you exclude yourself, you are staying in the Class. If the settlement is approved and becomes final, all of the Court's orders will apply to you and legally bind you. This means you won't be able to sue, continue to sue, or be part of any other lawsuit against the Defendants for any claim asserted in this lawsuit or released by this settlement. The specific rights you are giving up are called Released Claims. The Released Claims are described in detail in section 6 of the Stipulation of Settlement which is available at www.ACFTCAsettlement.com.

## Excluding Yourself from the Settlement

If you want to keep the right to sue or continue to sue the Defendants about the claims released by this settlement, you must take steps to get out of the settlement. This is called excluding yourself or is sometimes called opting out of the settlement Class.

**13. How do I get out of the settlement?**

To exclude yourself from the settlement, you must send a letter by mail saying that you want to be excluded from *Shames v. The Hertz Corporation*, Case No. 07cv2174-MMA. Be sure to include your name, address, telephone number, and signature. You must mail your exclusion request so that it is postmarked by **Month 00, 2012**, to: ACF/TCA Settlement Exclusions, c/o KCC LLC, PO Box 0000, City, ST 00000-0000.

**14. If I exclude myself, will I still get a cash payment or voucher from this settlement?**

No. If you exclude yourself, you are telling the Court that you don't want to be part of the Class in this settlement. You can only get a cash payment or voucher if you stay in the Class, submit an Election of Benefits Form, and the settlement is approved by the Court and becomes final.

**15. If I don't exclude myself, can I sue the Defendants for the same claims later?**

No. Unless you exclude yourself, you are giving up the right to sue the Defendants for the claims that this settlement resolves. You must exclude yourself from *this* Class to start or continue with your own lawsuit or be part of any other lawsuit.

## THE LAWYERS REPRESENTING YOU

### 16. Do I have a lawyer in this case?

Yes. The Court appointed Dennis Stewart of Hulett Harper Stewart LLP and Donald G. Rez of Sullivan Hill Lewin Rez & Engel to represent you and other Class Members. Together, these lawyers are called Class Counsel. You will not be charged for these lawyers. If you want to be represented by your own lawyer, you may hire one at your own expense.

### 17. How will the lawyers be paid?

Class Counsel has not been paid for their work on this case. They will ask the Court to approve a payment of attorneys' fees and expenses of up to $5,870,000. They will also ask for a payment of $2,000 to be paid to the Class Representative for his help on behalf of the entire Class. If approved, these fees, costs, expenses and payments will be paid separately by the Defendants and will not reduce the amount of cash or vouchers available to Class Members.

## OBJECTING TO THE SETTLEMENT

You can tell the Court if you don't agree with the settlement or any part of it.

### 18. How do I tell the Court if I don't like the settlement?

If you're a Class Member, you can object to the settlement. You can give reasons why you think the Court should not approve it. The Court will have the opportunity to consider your views before making a decision. To object, you must send a letter stating that you object to the settlement in *Shames v. The Hertz Corporation*, Case No. 07cv2174-MMA. Be sure to include your name, address, telephone number, signature and the reasons why you object to the settlement. Mail your objection to each of the addresses below so that it is postmarked by **Month 00, 2012**.

| Clerk of the Court | Class Counsel | Defense Counsel |
|---|---|---|
| U.S. District Court Southern District of California 940 Front Street San Diego, CA 92101-8900 | Donald G. Rez Sullivan Hill Lewin Rez & Engel 550 West C Street, 15th Floor San Diego, CA 92101 | Michael F. Tubach O'Melveny & Myers LLP Two Embarcadero Center, 28th Floor San Francisco, CA 94111 |

### 19. What's the difference between objecting to the settlement and excluding myself from it?

Objecting is simply telling the Court that you don't like something about the settlement. You can object only if you stay in the Class (meaning you do not exclude yourself). Excluding yourself is telling the Court that you don't want to be part of the Class. If you exclude yourself, you cannot object because the case no longer affects you.

## THE COURT'S FAIRNESS HEARING

The Court will hold a hearing to decide whether to approve the settlement. You may attend and you may ask to speak, but you don't have to.

### 20. When and where will the Court decide whether to approve the settlement?

The Court will hold a Fairness Hearing at _:__ _.m. on ___day, **Month 00, 2012**, at the United States District Court, Southern District of California, 940 Front Street, San Diego, CA 92101-8900. At this hearing, the Court will consider whether the settlement is fair, reasonable, and adequate. If there are objections, the Court will consider them. Judge Anello will listen to people who have asked to speak at the hearing (*see* Question 21). The Court may also decide whether to approve the agreed upon fees, cost and expense. After the hearing, the Court will decide whether to approve the settlement. We do not know how long these decisions will take.

**21. Do I have to come to the hearing?**

No. Class Counsel will answer any questions the Judge may have. But, you are welcome to come at your own expense. If you send an objection, you don't have to come to Court to talk about it. As long as you mailed your written objection on time, the Court will consider it. You may also pay your own lawyer to attend, but it's not necessary.

**22. May I speak at the hearing?**

Yes. You may ask the Court for permission to speak at the Fairness Hearing. To do so, you must send a letter saying that it is your "Notice of Intention to Appear in *Shames v. The Hertz Corporation*, Case No. 07cv2174-MMA." Be sure to include your name, address, telephone number, and signature. Your letter must be postmarked by **Month 00, 2012**, and sent to the addresses in Question 18.

## IF YOU DO NOTHING

**23. What happens if I do nothing at all?**

If you do nothing you won't get a cash payment or voucher from this settlement. You will also be giving up your right to start a lawsuit, continue with a lawsuit, or be part of any other lawsuit against the Defendants about any of the claims asserted in this lawsuit or released by this settlement, ever again.

## GETTING MORE INFORMATION

**24. Are there more details about the settlement?**

This notice summarizes the proposed settlement. More details are in the Stipulation of Settlement. You can get a copy of the Stipulation of Settlement by visiting www.ACFTCAsettlement.com.

**25. How do I get more information?**

You can call 1-000-000-0000 toll free; write to ACF/TCA Settlement Administrator, c/o KCC LLC, PO Box 0000, City, ST 00000-0000; or visit the website at www.ACFTCAsettlement.com.

DATE: Month 00, 0000

# Exhibit 5



**Legal Notification Services**

_____

# Settlement Notice Plan

## *Shames v. The Hertz Corporation*

## Case No. 07cv02174

## U.S. District Court, Southern District of California

**Prepared: May 16, 2012**

© 2012 KCC LLC
Proprietary and Confidential

# Table of Contents

|  |  | Page |
|---|---|---|
| Legal Notification Services | | 3 |
| Our Experts | | 4 |
| Relevant Case Experience | | 5 |
| Expert Services | | 6 |
| Media Terms | | 7 |
| Media Resources | | 8 |
| Program Overview | | 9 |
| Notice Schedule | | 11 |
| Target Analysis | | 12 |
| Media Selection | | 13 |
| Individual/Direct Notice | | 14 |
| National Newspaper | | 15 |
| Consumer Magazines | | 16 |
| Supplemental Notice | | 18 |
| Additional Support | | 19 |
| Notice Design Strategies | | 20 |
| Draft Forms of Notice | | 22 |
| Conclusion | | 23 |

Attachment A – Legal Notice c.v.

Attachment B – Draft Forms of Notice

## Legal Notification Services

KCC's Legal Notice experts, Gina M. Intrepido-Bowden and Carla A. Peak, specialize in the design and implementation of class action notice programs devised to reach class members with clear, concise, plain language notices. With over a decade of legal notice consulting experience, Ms. Intrepido-Bowden and Ms. Peak have been directly responsible for more than 100 effective and efficient notice programs, including some of the largest and most complex in history, reaching class members or claimants around the globe and providing notice in over 35 languages.

Their programs satisfy due process requirements, as well as all applicable state and federal laws. Judges, including in published decisions, have recognized the reach calculation methodology and notice design strategies they use. Their notices follow the principles in the Federal Judicial Center's (FJC) illustrative model notices, which were written and designed to embody the satisfaction of the plain language requirements of Federal Rule of Civil Procedure 23(c)(2).

© 2012 KCC LLC
Proprietary and Confidential

## Our Experts

Consistent with the judicial standards set forth by *Daubert* and *Kumho* and as illustrated in the FJC's *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide*, KCC's experts utilize the same practices and statistical analyses that are relied upon in the advertising industry when they design and measure the effectiveness of the notice programs they develop. Gina M. Intrepido-Bowden and Carla A. Peak have personally designed the "Notice Plan" (Plan) and proposed notice documents (Notice or Notices) that follow, and will directly oversee its implementation.

### Gina Intrepido-Bowden

With more than 20 years of media research, planning and buying experience, Gina brings substantive expertise to her role as Director, Legal Notification Services. A leading expert, she is responsible for the design and implementation of evidence-based legal notice campaigns.

Gina has personally designed more than 75 media campaigns across the United States and Canada for antitrust, consumer and other class action matters. As an expert witness, she provides Courts with the reach evidence they need to determine the adequacy of notice. In addition, she has successfully critiqued other notice plans causing Courts to modify programs to better meet due process obligations.

She began her advertising career working for one of New York's largest advertising agency media departments. Gina is a frequent author and speaker on class notice issues including effective reach, notice dissemination as well as noticing trends and innovations. She earned a Bachelor of Arts in Advertising from Penn State University, graduating summa cum laude.

### Carla Peak

With nearly a decade of industry experience, Carla specializes in the design of plain language legal notice documents to effectively address the challenges of communicating complex information to class members in a manner that they can understand.

Carla's notices satisfy the plain language requirements of Rule 23 and adhere to the guidelines set forth in the Manual for Complex Litigation, Fourth and by the Federal Judicial Center (FJC), as well as applicable state laws. She has successfully provided notice in both U.S. and international markets including communications in more than 35 languages.

She has presented on and written numerous articles about class notification programs, the design of effective notice documents as well as industry trends and innovations. Carla holds a Bachelor of Arts in Sociology from Temple University, graduating cum laude.

## Relevant Case Experience[1]

Our experts have designed and implemented numerous notice programs targeting consumer Class Members, for example:

- *Molina v. Intrust Bank, N.A.*, 18th J.D. Ct. Ks., No. 10-CV-3686
  - Judge Jeffrey Goering, January 17, 2012: *The Court approved the form and content of the Class Notice, and finds that transmission of the Notice as proposed by the Parties meets the requirements of due process and Kansas law, is the best notice practicable under the circumstances, and constitutes due and sufficient notice to all persons entitled thereto.*

- *Allen v. UMB Bank, N.A.*, Cir. Ct. Mo., No. 1016-CV34791
  - Judge Charles E. Atwell, October 31, 2011: *The form, content, and method of dissemination of Class Notice given to the Class were adequate and reasonable, and constituted the best notice practicable under the circumstances. The Notice, as given, provided valid, due, and sufficient notice of the proposed settlement, the terms and conditions set forth in the Settlement Agreement, and these proceedings to all persons entitled to such notice, and said notice fully satisfied the requirements of Rule 52.08 of the Missouri Rules of Civil Procedure and due process.*
  - Judge Charles E. Atwell, June 27, 2011: *The Court approves the form and content of the Class Notice, and finds that transmission of the Notice as proposed by the Parties meets the requirements of due process and Missouri law, is the best notice practicable under the circumstances, and constitutes due and sufficient notice to all persons entitled thereto.*

- *Ko v. Natura Pet Products, Inc.*, N.D. Cal , No. 5:09cv2619
  - Judge Jeremy Fogel, June 24, 2011: *The Court approves, as to form and content, the Long Form Notice of Pendency and Settlement of Class Action ("Long Form Notice"), and the Summary Notice attached as Exhibits to the Settlement Agreement, and finds that the e-mailing of the Summary Notice, and posting on the dedicated internet website of the Long Form Notice, mailing of the Summary Notice post-card, and newspaper and magazine publication of the Summary Notice substantially in the manner as set forth in this Order meets the requirements of Rule 23 of the Federal Rules of Civil Procedure, and due process, and is the best notice practicable under the circumstances and shall constitute due and sufficient notice to all persons entitled to notice.*

- *Shaffer v. Continental Casualty Co.*, C.D. Cal., SACV-06-2235-PSG
  - Judge Philip S. Gutierrez, June 11, 2008: *…was reasonable and constitutes due, adequate, and sufficient notice to all persons entitled to receive notice; and met all applicable requirements of the Federal Rules of Civil Procedure, the Class Action Fairness Act, the United States Constitution (including the Due Process Clauses), the Rules of the Court, and any other applicable law.*

See **Attachment A** for additional recognition and example cases.

---

[1] Includes work performed by our experts when employed at other firms.

© 2012 KCC LLC
Proprietary and Confidential

# Expert Services

Our Legal Notification Services include:

**Pre-Settlement Consulting**
- Review and advise clients of any potential obstacles relative to class definition or legal notification processes
- Develop a noticing plan strategy
- Provide judicial decisions that are relevant to the case or terms of the settlement

**Demographic Analysis**
- Define the target audience through research and analysis of class demographics
- Identify the geographic location of potential class members giving specific consideration to the class period
- Research class member media usage to define the communication channels that will be most effective

**Notice Programs**
- Create custom notice programs that incorporate media such as newspapers, magazines, trade journals, radio, television and the internet to meet due process requirements
- Develop press releases, broadcast public service announcements (PSAs), and a content-rich, case-specific website, as needed
- Track media activity to verify the adequacy of placements

**Plain Language Communication**
- Consider audience's level of understanding and devise communications strategy accordingly
- Design, draft and distribute plain-language notices that capture attention and are easily understood by class members
- Incorporate response mechanisms, such as a toll-free number, case website address, and/or QR code into notice documents

**Expert Testimony**
- Provide defensible opinions and testimony from subject-matter experts to verify the effectiveness of notice programs
- Supply mailing certifications and proof of performance for each notice served, as required by the Courts
- Provide evidence and judicial decisions to overcome objections

## Media Terms

The following provides the meaning of media terms highlighted throughout the Notice Plan:

**Audience:** Net number of persons or different persons exposed to a media vehicle. It is larger than a publication's circulation because it includes pass-along readers who may obtain the publication second hand (e.g., from a reception room, neighbor, friend).

**Circulation:** Total number of publication copies sold through all channels of distribution (e.g. subscriptions, newsstand, bulk).

**Frequency:** Estimated average number of times a population group is exposed to a media vehicle or combination of media vehicles containing a notice within a given period of time.

**Impressions or Exposures:** Total number of opportunities to be exposed to a media vehicle or combination of media vehicles containing a notice. It is a gross or cumulative number that may include the same person more than once. Impressions can exceed the population size.

**Reach or Coverage:** Net percentage of a specific population group exposed to a media vehicle or a combination of media vehicles containing a notice at least once within a given period of time. Reach factors out duplication, representing the total different/net persons.

**Selectivity Index:** Shows the concentration of a specific population group relative to the general adult population. For example, a publication selectivity index of 175 among men indicates that the publication's readers are 75% more likely to be men as compared to the general adult population.

## Media Resources

The resources we use to quantify our plan approach include the same resources used by media professionals to guide the billions of dollars of advertising we see today:

**Audit Bureau of Circulations (ABC)**

ABC maintains the world's foremost electronic database of audited-circulation information and an array of verified readership, subscriber demographics and online activity data. Established in 1914, ABC is a forum of the world's leading magazine and newspaper publishers, advertisers and advertising agencies boasting more than 4,000 members in North America.

**GfK Mediamark Research & Intelligence, LLC (MRI)**

MRI is a nationally accredited research firm that provides consumer demographics, product and brand usage, and audience/exposure in all forms of advertising media. Established in 1979, MRI measures the usage of nearly 6,000 product and service brands across 550 categories, along with the readership of hundreds of magazines and newspapers, internet usage, television viewership, national and local radio listening, yellow page usage, and out-of-home exposure. Based on a yearly face-to-face interview of 26,000 consumers in their homes, MRI's *Survey of the American Consumer™* is the primary source of audience data for the U.S. consumer magazine industry and the most comprehensive and reliable source of multi-media audience data available.

**Telmar**

Telmar is the world-leading supplier of computer based advertising media information services. Its software provides for survey analysis, data integration, media planning and optimization. With over 5,000 users in 85 countries, Telmar's clients include many of the world's leading advertising agencies, publishers, broadcasters and advertisers.

## Program Overview

**Objective**

To design a notice program that will effectively reach Class Members and capture their attention with notices communicated in clear, concise, plain language so that their rights and options may be fully understood. The FJC's *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide* considers 70-95% reach among class members reasonable.

**Class Definition**

The Class (or Class Members) consists of all Persons (other than those Persons who timely and validly request exclusion from the Class) who rented a car directly from a Rental Car Defendant for pick up at a California Airport Location during the period from January 1, 2007 through November 14, 2007, inclusive, and were charged and paid to the Rental Car Defendant an Airport Concession Fee and/or Tourism Commission Assessment for that rental car as a separate line item(s) on their invoices.[2] Excluded from the Class are: (i) rentals made pursuant to a pre-existing agreement between a business or governmental entity and the Rental Car Defendant pursuant to which the rental charge was determined; and (ii) rentals in which the customer paid a package price to a third party tour operator or on-line booking agency rather than the Rental Car Defendant.  Also excluded from the Class are the Defendants, the directors, officers, subsidiaries, and affiliates of Defendants, any person, firm, trust, corporation, officer, director or other individual or entity in which any Defendant has a controlling interest, and the legal representatives, affiliates, heirs, successors-in-interest or assigns of any such excluded person, Related Parties as well as any judges or mediators involved in the Litigation (including the Hon. Michael M. Anello, Magistrate Judge McCurine, and the Hon. Ronald Sabraw (ret.)).  Class membership shall be determined based on the Rental Car Defendants' rental transaction databases produced in this Litigation from data kept in the ordinary course of business.

**Case Analysis**

The following known factors were considered when determining our recommendation:

1. The Class consists of approximately four million Class Members.
2. Class Members are located throughout the U.S.
3. Postal and/or email addresses are available for virtually the entire Class.
4. Effective reach and notice content is vital to convey the importance of the information affecting Class Members' rights, as well as to withstand possible challenge and collateral review.
5. Multiple exposures to notice are desirable so that Class Members are reminded to act before deadlines approach.

**Target Audience**

To verify the notice program's effectiveness, MRI data was studied among adults who rented a car at or

---

[2] Rental Car Defendants means The Hertz Corporation, Dollar Thrifty Automotive Group, Inc., Avis Budget Group, Inc., Vanguard Car Rental USA, LLC, Enterprise Holdings, Inc., and Fox Rent A Car, Inc. The brands Enterprise, Alamo and National (currently operated by subsidiaries of Enterprise Holdings, Inc.) and Dollar and Thrifty (operated by a subsidiary of Dollar Thrifty Automotive Group, Inc.) shall each be treated as separate Rental Car Defendants.. Rental Car Defendants excludes any Person that owns or operates one or more Independent Licensed Locations, and locations where Payless Car Rental System, Inc. is a franchisor.

near an airport for personal or business use from Alamo, Avis, Budget, Dollar, Enterprise, Hertz, National, or Thrifty and traveled to California by plane ("California Airport Car Renters"). Although the MRI target is broader than the Class, it is a target group that best represents the Class.[3]

## Strategies

Email and/or mailed notice will be sent directly to all known Class Members. In addition, paid notices in well-read national consumer publications will provide additional reach and frequency of exposure among the Class. Coverage will be further enhanced by supplemental notice just prior to the Election of Benefits deadline.

## Plan Delivery

The direct notice effort alone is expected to reach 91.0% of the Class.[4] The paid media effort will reach an estimated 36.4% of California Airport Car Renters, and therefore likely Class Members. Combined, the direct notice and media efforts will reach approximately 94.3% of Class Members on average 1.5 times each. Although not measureable, coverage will be further enhanced by the supplemental notice.

## Notice Design

The Notices have been designed to provide a clear, concise, plain language summary statement of Class Members' legal rights and options. To facilitate responses to notices, a toll-free number and website address will be provided in all printed notice documents. For the initial Publication Notice, the ad units are adequately sized to attract attention to the notice:

- Half-page units in standard sized publications
- 1/6 page unit in the national newspaper

---

[3] Data among adults who rent from Fox Rent A Car was not measured by MRI; however, because we are analyzing data on a percentage basis, there is no reason to believe the demographics or media usage of adults who rented cars from Fox Rent A Car to be significantly different than those of the defined target.

[4] 1.2 million Notices will be emailed to Class Members, of which an estimated 25% will likely bounce back. Class Members whose emails bounce back or are otherwise not delivered will be mailed a notice, of which an estimated 10% will be returned as undeliverable. As a result, an estimated 1.08 million of the notices will likely deliver successfully. Another 2.8 million notices will be mailed to Class Members, of which an estimated 10% will be returned undeliverable. As a result, 2.52 million of the mailed notices are estimated to be delivered successfully. Combined, 3.6 million direct notices are expected to be delivered successfully, thereby reaching approximately 91.0% of the Class.

© 2012 KCC LLC
Proprietary and Confidential

# Notice Schedule

No more than 45 days after Preliminary Approval, direct notice (email and/or mailed notice, as applicable) will be distributed to Class Members. Published Notice will appear no later than 60 days after Preliminary Approval, and Supplemental Notice will appear 60 days prior to the Election of Benefits deadline. The case website will be maintained throughout the Election Period. An exclusion and objection deadline will be scheduled approximately 30 days from the last notice appearance and a final fairness hearing date sometime after.

| Notice Method | Issued | Week 1 | Week 2 | Week 3 | Week 4 | Week 5 | Week 6 | Week 7 |
|---|---|---|---|---|---|---|---|---|
| **Individual/Direct Notice:** | | | | | | | | |
| Email Notice, as applicable | | ■ | ■ | | | | | |
| Mailed Notice , as applicable | | | | | | | | |
| **Publication Notice:** | | | | | | | | |
| *USA Today* | Daily | | | ■ | | | | |
| *Newsweek* | Weekly | | | ■ | ■ | ■ | | |
| *People* | Weekly | | | | ■ | | | |
| **Case Website** | Constant | ■ | ■ | ■ | ■ | ■ | ■ | ■ |
| **Supplemental Notice:*** | | | | | | | | |
| Email Notice, as applicable | | | | | | | | |
| *USA Today* | Daily | | | | | | | |

Blocks indicate when persons first receive the direct notice or publications (the on-sale date, not the issue/cover date). All media subject to change based on availability at the time of placement and cost. Cost of the Initial Publication Notice and Supplemental Publication Notice shall not exceed $250,000.

**Supplemental Notice will appear 60 days prior to the Election of Benefits deadline.

© 2012 KCC LLC
Proprietary and Confidential

## Target Analysis

Knowing the characteristics, interests, and habits of a target group aids in the media selection process.

**Demographic Highlights**

Demographic highlights of California Airport Car Renters include the following:

- 87.2% are white
- 85.6% have attended or graduated from college or beyond
- 84.9% are between the ages of 25-64 and 66.6% are between the ages of 35-64
- 83.2% own their home
- 78.1% have a household income of $75,000 or more and 60.7% have a household income of $100,000 or more
- 78.4% live in a household consisting of 2-4 persons
- 72.7% are married
- 65.8% own a home valued at $200,000 or more
- 57.6% have lived at their current address for five or more years
- 52.9% are men
- 51.0% work as managers or professionals
- 47.8% live in the West Census Region
- Average age is 47.9
- Average household income is $129,969
- Average owned home value is $375,965

Compared to the general adult population, California Airport Car Renters are:

- 3.16 times more likely to have a household income of $150,000 or more
- 2.81 times more likely to own a home valued at $500,000 or more
- 2.25 times more likely to work as managers or professionals
- 2.27 times more likely to have graduated from college or beyond
- 2.09 times more likely to live in the West Census Region
- 74.3% more likely to be Asian
- 54.0% more likely to be between the ages of 55-64
- 32.6% more likely to be married
- 31.7% more likely to live in a household consisting of two persons
- 28.6% more likely to live in County Size A[5]
- 18.3% more likely to own a home
- 14.2% more likely to be white
- 9.5% more likely to be men

*Source: 2011 MRI Doublebase Study*

---

[5] All counties in the largest metropolitan areas which together account for 40% of U.S. households according to the 2000 Census.

---

© 2012 KCC LLC
Proprietary and Confidential
12

## Media Selection

To create the optimal notice program, we evaluated the strengths and weaknesses of the various media, as well as their reach and frequency potential, composition, format/content and efficiencies. Our recommended media mix provides:

- Additional reach among Class Members, beyond the effective direct notice efforts, via the measurable paid print media (approximately 36.4% of California Airport Car Renters).

- Repeat notice exposures as a result of the overlapping media audiences.

- A written summary of key information that may be easily referred to or passed on to others as a result of placements in some of the largest and most well-read publications in the country

- Easy access to additional information through a toll-free number and website address which is provided in all printed notice documents

© 2012 KCC LLC
Proprietary and Confidential

## Individual/Direct Notice

**Email Notice**

An Email Notice containing a summary of the settlement in the body of the email, as well as a link to the settlement website and a toll-free number will be sent to all email addresses provided to KCC by the Rental Car Defendants. It is our understanding that email addresses are available for approximately 1.2 million Class Members. Class Members whose emails bounce back or are otherwise not delivered will be mailed a Postcard Notice via postal mail to their corresponding postal address.

**Mailed Notice**

A Postcard Notice will be sent via postal mail to the addresses of all known potential Class Members for whom KCC was not provided an email address. It is our understanding that individual mailing addresses are available for all or nearly all Class Members for whom no email addresses will be provided (approximately 2.8 million Class Members).

Prior to mailing the Postcard Notice, the names and addresses will be:

- Checked against the USPS National Change of Address (NCOA)[6] database
- Certified via the Coding Accuracy Support System (CASS)[7]
- Verified through Delivery Point Validation (DPV)[8]

Combined, 3.6 million direct notices are expected to be delivered successfully, thereby reaching approximately 91.0% of the Class.

---

[6] The NCOA database contains records of all permanent change of address submissions received by the USPS for the last four years. The USPS makes this data available to mailing firms and lists submitted to it are automatically updated with any reported move based on a comparison with the person's name and last known address.

[7] Coding Accurate Support System is a certification system used by the USPS to ensure the quality of ZIP+4 coding systems.

[8] Records that are ZIP+4 coded are then sent through Delivery Point Validation to verify the address and indentify Commercial Mail Receiving Agencies. DPV verifies the accuracy of addresses and reports exactly what is wrong with incorrect addresses.

## National Newspaper

| Newspaper | Issuance | Notice Size | # of Insertions |
|-----------|----------|-------------|-----------------|
| *USA Today* | Daily | 1/6 page | 1 |



- Offers a circulation of 1.8 million
- Provides readership of 3.3 million
  - Male/Female: 67%/33%
  - Median age: 49
  - College graduate+: 51%
  - Professional/Managerial: 40%
  - Median HHI: $91,725
- Reaches 3.7% of California Airport Car Renters
- Readers are 2.6 times more likely to be California Airport Car Renters, compared to the general adult population
- Extends reach among a unique group of readers who like to travel a lot and are usually on-the-go

© 2012 KCC LLC
Proprietary and Confidential

# Consumer Magazines

| Consumer Magazine | Issuance | Notice Size | # of Insertions |
|---|---|---|---|
| *Newsweek* | Weekly | Half page | 3 |
| *People* | Weekly | Half page | 1 |
| **TOTAL** | | | **4** |

- Includes three insertions in *Newsweek* and one insertion in *People*, for a total of four insertions
- Provides more than 88 million adult exposures
- Includes leading publications among California Airport Car Renters
- Includes publications with a high concentration of California Airport Car Renters, as compared to the general population
- Includes half page notices to attract attention and enhance readership with adequately sized text
- Positioning will be sought opposite articles, cover stories, or editorial features with documented high readership
- All placements will be tracked to ensure that they appear exactly as planned as well as meet our high standards in terms of quality and positioning

The following provides details for each of the recommended consumer magazines:



- Circulation: 1,530,486
- Adult Audience: 14,363,000
- Weekly news magazine covering politics, current events and global issues
- Reaches 9.2% of California Airport Car Renters
- Readers are 46.8% more likely to be California Airport Car Renters, compared to the general adult population
- Provides appropriate news-oriented editorial



- Circulation: 3,556,753
- Adult Audience: 45,318,000
- Weekly entertainment magazine featuring celebrity news, biographies and gossip
- Reaches 23.4% of California Airport Car Renters

---

- Readers are 17.7% more likely to be California Airport Car Renters, compared to the general adult population
- Provides a large number of pass along readers

## Supplemental Notice

Supplemental Notice reminding Class Members of the approaching Election of Benefits deadline, will be issued no later than 60 days before the expiration of the Election Period.

The Supplemental Notice will include:

- A one-eighth page Notice in the national edition of *USA Today*

- An Email Notice to Class Members for whom the Rental Car Defendants have provided to the Administrator an email address

The Supplemental Email Notice will not be sent to Class Members who previously filed an election of benefits form or opt-out request or to Class Members to whom Notice was previously sent via postal mail.

## Additional Support

**Case Website**

- Provides an easy to remember domain, such as www.ACFTCAsettlement.com
- Allows Class Members the ability to submit an Election of Benefits Form, as well as obtain additional information and documents including the Detailed Notice, Settlement Agreement, and any other information that the parties may agree to provide or that the Court may require
- Will be prominently displayed in all printed notice materials

**Toll-Free Telephone Support**

- Provides a simple way for Class Members to obtain additional information
- Allows Class Members the opportunity to learn more about the case in the form of frequently asked questions and answers
- Allows Class Members to request to have more information mailed directly to them
- Will be prominently displayed in all notice materials

.

## Notice Design Strategies

The design and content of all of the notice materials are consistent with the FJC's "illustrative" forms of model plain language notices, available at www.fjc.gov.

**Publication Notice**
- Bold headline captures attention and speaks directly to Class Members, alerting them that they should read the Notice and why it is important
- Prominent notice size promotes attention, readership, and comprehension
- Legal significance is highlighted to ensure readers that the communication carries legitimate information from the court and not commercial advertising
- Concise plain language without "legalese" enhances comprehension
- Content includes all critical information in simple format
- Toll-free number and case website invite response, allowing Class Members the opportunity to obtain additional information

**Detailed Notice**
- Prominent "Your Rights and Options" table on first page immediately informs readers of their rights and options in the case
- Table of Contents and question and answer format allow Class Members to easily locate information
- Bold headline captures attention and speaks directly to Class Members, alerting them that they should read the Notice and why it is important
- Concise plain language without "legalese" enhances comprehension
- Provides more detailed information than that of a Summary Notice
- Content includes all essential information in simple format
- Toll-free number and case website invite response, allowing Class Members the opportunity to obtain additional information

**Postcard Notice**
- Bold headline on the front of the postcard captures attention and speaks directly to Class Members, alerting them that they may claim benefits
- Legal significance is highlighted to ensure readers that the communication carries legitimate information from the court and not commercial advertising
- Concise plain language without "legalese" enhances comprehension
- Content includes all critical information in simple format
- Toll-free number and case website invite response, allowing Class Members the opportunity to obtain additional information

**Email Notice**
- Bold headline in the beginning of the message captures attention and speaks directly to Class Members, alerting them that they may claim benefits
- Legal significance is highlighted to ensure readers that the communication carries legitimate

© 2012 KCC LLC
Proprietary and Confidential

information from the court and not commercial advertising

- Concise plain language without "legalese" enhances comprehension
- Content includes all critical information in simple format
- Toll-free number and case website invite response, allowing Class Members the opportunity to obtain additional information

## Draft Forms of Notice

**Attachment B** contains the draft forms of the following notice documents:

- The **Email Notice** that will be sent to all known Class Members that can be reasonably identified

- The **Postcard Notice** that will be sent to all known Class Members whose contact information does not contain an email address

- The **Publication Notice** as it will appear in the publications identified in this Notice Plan

- The **Supplemental Email Notice** that will be sent to all known Class Members who did not file an Election of Benefits Form or opt-out request. The Supplemental Email Notice will not be sent to Class Members to whom Notice was previously sent via postal mail.

- The **Supplemental Publication Notice** that will appear in the national edition of *USA Today*

- The **Long Form Notice** that will be sent to those who call the toll-free number to request one, as well as made available at the website

## Conclusion

Our recommended Notice Plan:

- Was designed by experts who are trained and experienced in their specific area of expertise
- Is consistent with other effective settlement notice programs
- Is consistent with the "desire to actually inform" due process communications standard of *Mullane*
- Provides the best notice practicable
- Meets due process requirements
- Provides the same reach and frequency evidence that Courts have approved, is recommended by the FJC, and that has withstood appellate scrutiny, other expert critiques, as well as collateral review
- Leaves no holes or vulnerabilities that would leave the parties open to challenge

© 2012 KCC LLC
Proprietary and Confidential

Attachment A



_____

KCC's Legal Notice Division provides expert legal notice services in class action, mass tort and bankruptcy settings. We specialize in the design and implementation of notice programs with plain language notices; expert opinions and testimony on the adequacy of notice; and critiques of other notice programs and notices. With over a decade of experience, our legal noticing team has been directly responsible for more than a hundred effective and efficient notice programs reaching class members and claimants in almost every country, dependency and territory in the world, and providing notice in over 35 languages. Our programs satisfy due process requirements, as well as all applicable state and federal laws. Some landmark case examples our experts have been involved with include:

- ***In re Trans Union Corp. Privacy Litigation***, MDL No. 1350 (N.D. Ill.) The largest discretionary class action notice campaign involving virtually every adult in the United States and informing them about their rights in the $75 million data breach settlement.

- ***In re TJX Companies, Inc., Customer Data Security Breach Litigation***, MDL No. 1838 (D. Mass.) The largest U.S. and Canadian retail consumer security breach notice program.

- ***Lockwood v. Certegy Check Services, Inc***., No. 8:07-CV-1434-T-23TGW (M.D. Fla.) A complex national data theft class action settlement involving millions of class members.

- ***In re Residential Schools Litigation***, No. 00-CV-192059 (Ont. S.C.J.) The largest and most complex class action in Canadian history incorporating a groundbreaking notice program to disparate, remote aboriginal persons qualified to receive benefits in the multi-billion dollar settlement.

- ***Thompson v. Metropolitan Life Ins. Co.***, No. 216 F.R.D. 55, 62-68 (S.D. N.Y. 2003) The largest race-based pricing case with national settlement notice to 25 million policyholders.

- ***Scott v. Blockbuster***, No. D 162-535 (Tex., 136th Jud. Dist.) The national settlement notice to 40 million class members, which withstood collateral review, *Peters v. Blockbuster*, 65 S.W.3d 295, 307 (Tex. App.-Beaumont 2001).

- ***Williams v. Weyerhaeuser Co.***, No. 995787 (Cal. Super. Ct.) The national hardboard siding settlement notice, in which notice withstood appellate challenge, 2002 WL 373578, at 10 (Cal. App. 1 Dist.).

# Our Experts

**Gina M. Intrepido-Bowden**

With more than 20 years of media research, planning and buying experience, Gina M. Intrepido-Bowden brings substantive expertise to her role as Director, Legal Notification Services. A leading expert, she is responsible for the design and implementation of evidence-based legal notice campaigns.

Gina has personally designed more than 70 media campaigns across the United States and Canada for antitrust, consumer and other class action matters. As an expert witness, she provides Courts with the reach evidence they need to determine the adequacy of notice. In addition, she has successfully critiqued other notice plans, causing Courts to modify programs to better meet due process obligations.

She began her advertising career working for one of New York's largest advertising agency media departments. Gina is a frequent author and speaker on class notice issues including effective reach, notice dissemination as well as noticing trends and innovations. She earned a Bachelor of Arts in Advertising from Penn State University, graduating summa cum laude. Gina can be reached at gintrepidobowden@kccllc.com.

**Carla A. Peak**

With nearly a decade of industry experience, Carla A. Peak specializes in the design of plain language legal notice documents to effectively address the challenges of communicating complex information to class members in a manner that they can understand.

Carla's notices satisfy the plain language requirements of Rule 23 and adhere to the guidelines set forth in the Manual for Complex Litigation, Fourth and by the Federal Judicial Center (FJC), as well as applicable state laws. She has successfully provided notice in both U.S. and international markets including communications in more than 35 languages.

She has presented on and written numerous articles about class notification programs, the design of effective notice documents as well as industry trends and innovations. Carla holds a Bachelor of Arts in Sociology from Temple University, graduating cum laude. Carla can be reached at cpeak@kccllc.com.

# Judicial Recognition of Our Experts' Work

**Judge Ann D. Montgomery, *In Re: Uponor, Inc., F1807 Plumbing Fittings Products Liability Litigation***, (January 18, 2012) No. 11-MD-2247 (D. Minn.):

> *The Notice Plan detailed by KCC in the Affidavit of Gina M. Intrepido-Bowden provides the best notice practicable under the circumstances and constitutes due and sufficient notice of the Settlement Agreement and the Final Fairness Hearing to the Classes and all persons entitled to receive such notice as potential members of the Class…The Notice Plan's multi-faceted approach to providing notice to Class Members whose identity is not known to the Settling Parties constitutes 'the best notice that is practicable under the circumstances' consistent with Rule 23(c)(2)(B)…Notice to Class members must clearly and concisely state the nature of the lawsuit and its claims and defenses, the Class certified, the Class member's right to appear through an attorney or opt out of the Class, the time and manner for opting out, and the binding effect of a class judgment on members of the Class. Fed. R. Civ. P. 23(c)(2)(B). Compliance with Rule 23's notice requirements also complies with Due Process requirements. 'The combination of reasonable notice, the opportunity to be heard, and the opportunity to withdraw from the class satisfy due process requirements of the*

*Fifth Amendment.' Prudential, 148 F.3d at 306. The proposed notices in the present case meet those requirements.*

**Judge Jeffrey Goering,** *Molina v. Intrust Bank, N.A.*, (January 17, 2012) No. 10-CV-3686 (18th J.D. Ct. Ks.):

> *The Court approved the form and content of the Class Notice, and finds that transmission of the Notice as proposed by the Parties meets the requirements of due process and Kansas law, is the best notice practicable under the circumstances, and constitutes due and sufficient notice to all persons entitled thereto.*

**Judge Charles E. Atwell,** *Allen v. UMB Bank, N.A.*, (October 31, 2011) No. 1016-CV34791 (Cir. Ct. Mo.):

> *The form, content, and method of dissemination of Class Notice given to the Class were adequate and reasonable, and constituted the best notice practicable under the circumstances. The Notice, as given, provided valid, due, and sufficient notice of the proposed settlement, the terms and conditions set forth in the Settlement Agreement, and these proceedings to all persons entitled to such notice, and said notice fully satisfied the requirements of Rule 52.08 of the Missouri Rules of Civil Procedure and due process.*

**Judge Charles E. Atwell,** *Allen v. UMB Bank, N.A.*, (June 27, 2011) No. 1016-CV34791 (Cir. Ct. Mo.):

> *The Court approves the form and content of the Class Notice, and finds that transmission of the Notice as proposed by the Parties meets the requirements of due process and Missouri law, is the best notice practicable under the circumstances, and constitutes due and sufficient notice to all persons entitled thereto.*

**Judge Jeremy Fogel,** *Ko v. Natura Pet Products, Inc.*, (June 24, 2011) No. 5:09cv2619 (N.D. Cal.):

> *The Court approves, as to form and content, the Long Form Notice of Pendency and Settlement of Class Action ("Long Form Notice"), and the Summary Notice attached as Exhibits to the Settlement Agreement, and finds that the e-mailing of the Summary Notice, and posting on the dedicated internet website of the Long Form Notice, mailing of the Summary Notice post-card, and newspaper and magazine publication of the Summary Notice substantially in the manner as set forth in this Order meets the requirements of Rule 23 of the Federal Rules of Civil Procedure, and due process, and is the best notice practicable under the circumstances and shall constitute due and sufficient notice to all persons entitled to notice.*

**Judge M. Joseph Tiemann,** *Billieson v. City of New Orleans*, (May 27, 2011) No. 94-19231 (Civ. D. Ct. La.):

> *The plan to disseminate notice for the Insurance Settlements (the "Insurance Settlements Notice Plan") which was designed at the request of Class Counsel by experienced Notice Professionals Gina Intrepido-Bowden and Carla A. Peak…various forms of notices for the insurance settlements (the "Insurance Settlements Notice Documents");…IT IS ORDERED as follows: 1. The Insurance Settlements Notice Plan is hereby approved and shall be executed by the Notice Administrator; 2. The Insurance Settlements Notice Documents, substantially in the form included in the Insurance Settlements Notice Plan, are hereby approved.*

**Judge James Robertson,** *In re Department of Veterans Affairs (VA) Data Theft Litig.*, (February 11, 2009) MDL No. 1796 (D.C.):

> The Court approves the proposed method of dissemination of notice set forth in the Notice Plan, Exhibit 1 to the Settlement Agreement. The Notice Plan meets the requirements of due process and is the best notice practicable under the circumstances. This method of Class Action Settlement notice dissemination is hereby approved by the Court.

**Judge Louis J. Farina,** *Soders v. General Motors Corp.*, (December 19, 2008) No. CI-00-04255 (C.P. Pa.):

> The Court has considered the proposed forms of Notice to Class members of the settlement and the plan for disseminating Notice, and finds that the form and manner of notice proposed by the parties and approved herein meet the requirements of due process, are the best notice practicable under the circumstances, and constitute sufficient notice to all persons entitled to notice.

**Judge Robert W. Gettleman,** *In Re Trans Union Corp.*, (September 17, 2008) MDL No. 1350 (N.D. Ill.):

> The Court finds that the dissemination of the Class Notice under the terms and in the format provided for in its Preliminary Approval Order constitutes the best notice practicable under the circumstances, is due and sufficient notice for all purposes to all persons entitled to such notice, and fully satisfies the requirements of the Federal Rules of Civil Procedure, the requirements of due process under the Constitution of the United States, and any other applicable law…Accordingly, all objections are hereby OVERRULED.

**Steven D. Merryday,** *Lockwood v. Certegy Check Services, Inc.*, (September 3, 2008) No. 8:07-cv-1434-T-23TGW (M.D. Fla.):

> The form, content, and method of dissemination of the notice given to the Settlement Class were adequate and reasonable and constituted the best notice practicable in the circumstances. The notice as given provided valid, due, and sufficient notice of the proposed settlement, the terms and conditions of the Settlement Agreement, and these proceedings to all persons entitled to such notice, and the notice satisfied the requirements of Rule 23, Federal Rules of Civil Procedure, and due process… the notice to the Settlement class directed by the order of preliminary approval and the governmental notice required by the Class Action Fairness Act, Pub. L. 109-2, 119 Stat. 4 (2005), 28 U.S.C. § 1715, have been approved.

**Judge William G. Young,** *In re TJX Companies*, (September 2, 2008) MDL No. 1838 (D. Mass.):

> …as attested in the Affidavit of Gina M. Intrepido…The form, content, and method of dissemination of notice provided to the Settlement Class were adequate and reasonable, and constituted the best notice practicable under the circumstances. The Notice, as given, provided valid, due, and sufficient notice of the proposed settlement, the terms and conditions set forth in the Settlement Agreement, and these proceedings to all Persons entitled to such notice, and said Notice fully satisfied the requirements of Fed. R. Civ. P. 23 and due process.

**Judge Philip S. Gutierrez,** *Shaffer v. Continental Casualty Co.*, (June 11, 2008) SACV-06-2235-PSG (C.D. Cal.):

> …was reasonable and constitutes due, adequate, and sufficient notice to all persons entitled to receive notice; and met all applicable requirements of the

> *Federal Rules of Civil Procedure, the Class Action Fairness Act, the United States Constitution (including the Due Process Clauses), the Rules of the Court, and any other applicable law.*

**Judge David De Alba, *Ford Explorer Cases*,** (May 29, 2008) JCCP Nos. 4226 & 4270 (Cal. Super. Ct.):

> *[T]he Court is satisfied that the notice plan, design, implementation, costs, reach, were all reasonable, and has no reservations about the notice to those in this state and those in other states as well, including Texas, Connecticut, and Illinois; that the plan that was approved -- submitted and approved, comports with the fundamentals of due process as described in the case law that was offered by counsel.*

**Judge Robert L. Wyatt, *Gunderson v. AIG Claim Services, Inc.*,** (May 29, 2008) No. 2004-002417 (14th Jud. D. Ct. La.):

> *Notices given to Settlement Class members…were reasonably calculated under all the circumstances and have been sufficient, as to form, content, and manner of dissemination…Such notices complied with all requirements of the federal and state constitutions, including the due process clause, and applicable articles of the Louisiana Code of Civil Procedure, and constituted the best notice practicable under the circumstances and constituted due and sufficient notice to all potential members of the Settlement Class.*

**Judge Mary Anne Mason, *Palace v. DaimlerChrysler Corp.*,** (May 29, 2008) No. 01-CH-13168 (Cir. Ct. Ill.):

> *The form, content, and method of dissemination of the notice given to the Illinois class and to the Illinois Settlement Class were adequate and reasonable, and constituted the best notice practicable under the circumstances. The notice, as given, provided valid, due, and sufficient notice of the proposed Settlement, the terms and conditions set forth in the Settlement Agreement, and these proceedings, to all Persons entitled to such notice, and said notice fully satisfied the requirements of due process and complied with 735 ILCS §§5/2-803 and 5/2-806.*

**Judge Ronald. B. Leighton, *Grays Harbor Adventist Christian School v. Carrier Corp.*,** (April 22, 2008) No. 05-05437 (W.D. Wash.):

> *The Court finds and concludes that the Notice Program as a whole provided the best practicable notice to the members of the Class under the circumstances, and satisfies the requirements prescribed by the United States Supreme Court… The Court finds that this notice was the best notice practicable under the circumstances, that it provided due and adequate notice of the proceedings and of the matters set forth therein, and that it fully satisfied all applicable requirements of law and due process.*

**Judge Kirk D. Johnson, *Webb v. Liberty Mutual Insurance Co.*,** (March 3, 2008) No. CV-2007-418-3 (Cir. Ct. Ark.):

> *The Court finds that there was minimal opposition to the settlement. After undertaking an extensive notice campaign to Class members of approximately 10,707 persons, mailed notice reached 92.5% of potential Class members.*

**Judge Kirk D. Johnson, *Sweeten v. American Empire Insurance Co.*,** (August 20, 2007) No. CV-2007-154-3 (Cir. Ct. Ark.):

> *The Court does find that all notices required by the Court to be given to class*

*members was done within the time allowed and the manner best calculated to give notice and apprise all the interested parties of the litigation. It was done through individual notice, first class mail, through internet website and the toll-free telephone call center.*

**Judge Kirk D. Johnson,** ***Hunsucker v. American Standard Ins. Co. of Wisconsin***, (August 10, 2007) No. CV-2007-155-3 (Cir. Ct. Ark.):

*Having admitted and reviewed the Affidavits of Carla Peak and Christine Danielson concerning the success of the notice campaign, including the fact that written notice reached approximately 86% of the potential Class Members, the Court finds that it is unnecessary to afford a new opportunity to request exclusion to individual class members who had an earlier opportunity to request exclusion but failed to do so…Specifically, the Court received and admitted affidavits from Carla Peak and Christine Danielson, setting forth the scope and results of the notice campaign. Based on the Court's review of the evidence admitted and argument of counsel, the Court finds and concludes that the Class Notice and settlement website as disseminated to members of the Settlement Class in accordance with provisions of the Preliminarily Approval Order was the best notice practicable under the circumstances to all members of the Settlement Class.*

**Judge Lewis A. Kaplan,** ***In re Parmalat Securities Litig.***, (July 19, 2007) MDL No. 1653-LAK (S.D. N.Y.):

*The Court finds that the distribution of the Notice, the publication of the Publication Notice, and the notice methodology…met all applicable requirements of the Federal Rules of Civil Procedure, the United States Constitution, (including the Due Process clause), the Private Securities Litigation Reform Act of 1995 (15 U.S.C. 78u-4, et seq.) (the "PSLRA"), the Rules of the Court, and any other applicable law.*

**Judge Robert Wyatt,** ***Gunderson v. F.A. Richard & Associates, Inc.,*** (July 19, 2007) No. 2004-2417-D (14th Jud. D. Ct. La.):

*Okay. Let me sign this one. This is the final Order and Judgment regarding the fairness, reasonableness and adequacy. And I am satisfied in all respects regarding the presentation that's been made to the Court this morning in the Class memberships, the representation, the notice, and all other aspects and I'm signing that Order at this time. Congratulations, gentlemen.*

**Judge Ronald B. Leighton,** ***Grays Harbor Adventist Christian School v. Carrier Corporation,*** (May 29, 2007) No. 05-05437 (W.D. Wash.):

*Based on the foregoing, the Court finds Plaintiffs' Motion for Approval of Proposed Form of Notice and Notice Plan is appropriate and should be granted.*

**Judge John D. Allen,** ***Carter v. North Central Life Insurance Co.,*** (April 24, 2007) No. SU-2006-CV-3764-6 (Ga. Super. Ct.):

*The Notices prepared in this matter were couched in plain, easily understood language and were written and designed to the highest communication standards. The Notice Plan effectively reached a substantial percentage of Class Members and delivered noticeable Notices deigned to capture Class Members attention.*

**Judge John D. Allen,** ***Desportes v. American General Assurance Co.,*** (April 24, 2007) No. SU-04-CV-3637 (Ga. Super. Ct.):

> *[T]he Court finds that [the notice]…fully satisfied the requirements of the Georgia Rules of Civil Procedure (including Ga. Code Ann. § 9-11-23(c)(2) and (e)), the Georgia and United States Constitutions (including the Due Process Clause), the Rules of the Court, and any other applicable law.*

**Judge Lewis A. Kaplan,** *In re Parmalat Securities Litig.,* (March 1, 2007) MDL 1653 (S.D.N.Y):

> *The court approves, as to the form and content, the Notice and the Publication Notice, attached hereto as Exhibits 1 and 2, respectively, and finds that the mailing and distribution of the Notice and the publication of the Publication Notice in the manner and form set forth in Paragraph 6 of this Order…meet the requirements of Rule 23 of the Federal Rules of Civil Procedure, the Securities Exchange Act of 1934, as emended by Section 21D(a)(7) of the Private Securities Litigation reform Act of 1995, 15 U.S.C. § 78u-4(a)(7), and due process, and is the best notice practicable under the circumstances and shall constitute due and sufficient notice to all persons and entities entitled thereto.*

**Judge Anna J. Brown,** *Reynolds v. The Hartford Financial Services Group, Inc.*, (February 27, 2007) No. CV-01-1529-BR (D. Ore):

> *[T]he court finds that the Notice Program fairly, fully, accurately, and adequately advised members of the Settlement Class and each Settlement Subclass of all relevant and material information concerning the proposed settlement of this action, their rights under Rule 23 of the Federal Rules of Civil Procedure, and related matters, and afforded the Settlement Class with adequate time and an opportunity to file objections to the Settlement or request exclusion from the Settlement Class. The court finds that the Notice Program constituted the best notice practicable under the circumstances and fully satisfied the requirements of Rule 23 and due process.*

**Judge Richard J. Holwell,** *In re Vivendi Universal, S.A. Securities Litig.*, 2007 WL 1490466, at *34 (S.D.N.Y.):

> *In response to defendants' manageability concerns, plaintiffs have filed a comprehensive affidavit outlining the effectiveness of its proposed method of providing notice in foreign countries. According to this…the Court is satisfied that plaintiffs intend to provide individual notice to those class members whose names and addresses are ascertainable, and that plaintiffs' proposed form of publication notice, while complex, will prove both manageable and the best means practicable of providing notice.*

**Judge Eldon E. Fallon,** *Turner v. Murphy, USA, Inc.*, 2007 WL 283431, at *5 (E.D. La.):

> *Most of the putative class members were displaced following hurricane Katrina…With this challenge in mind, the parties prepared a notice plan designed to reach the class members wherever they might reside…to ensure that adequate notice was given to class members in light of the unique challenges presented in this case..*

**Judge Sarah S. Vance,** *In re Educational Testing Services PLT 7-12 Test Scoring Litig.*, 47 F.Supp.2d. 617 (E.D. La. 2006):

> *The Court is satisfied that notice to the class fully complied with the requirements of Rule 23.*

**Judge Samuel Conti,** *Ciabattari v. Toyota Motor Sales, U.S.A., Inc.*, (November 17, 2006) No. C-05-04289-SC (N.D. Cal.):

> *After reviewing the evidence and arguments presented by the parties…the Court*

> finds as follows…The class members were given the best notice practicable under the circumstances, and that such notice meets the requirements of the Due Process Clause of the U.S. Constitution, and all applicable statutes and rules of court.

**Judge Ivan L.R. Lemelle,** *In re High Sulfur Content Gasoline Prods. Liability Litig.*, (November 8, 2006) MDL No. 1632 (E.D. La.):

> This Court approved a carefully-worded Notice Plan…The Notice Plan for this Class Settlement was consistent with the best practices developed for modern-style "plain English" class notices; the Court and Settling Parties invested substantial effort to ensure notice to persons displaced by the Hurricanes of 2005; and as this Court has already determined, the Notice Plan met the requirements of Rule 23 and constitutional due process.

**Judge Catherine C. Blake,** *In re Royal Ahold Securities and "ERISA" Litig.*, (November 2, 2006) MDL No.1539 (D. Md.):

> The global aspect of the case raised additional practical and legal complexities, as did the parallel criminal proceedings in another district. The settlement obtained is among the largest cash settlements ever in a securities class action case and represents an estimated 40% recovery of possible provable damages. The notice process appears to have been very successful not only in reaching but also in eliciting claims from a substantial percentage of those eligible for recovery.

**Judge Elaine E. Bucklo,** *Carnegie v. Household International*, (August 28, 2006) No. 98 C 2178 (N.D. Ill.):

> [T]he Notice was disseminated pursuant to a plan consisting of first class mail and publication developed by Plaintiff's notice consultant…who the Court recognized as experts in the design of notice plans in class actions. The Notice by first-class mail and publication was provided in an adequate and sufficient manner; constitutes the best notice practicable under the circumstances; and satisfies all requirements of Rule 23(e) and due process.

**Judge William A. Mayhew,** *Nature Guard Cement Roofing Shingles Cases*, (June 29, 2006) J.C.C.P. No 4215 (Cal. Sup. Ct.):

> The method for dissemination of notice…constitute the fairest and best notice practicable under the circumstances of this case, comply with the applicable California Rules of Court, and satisfy due process.

**Judge Catherine C. Blake,** *In re Royal Ahold Securities & "ERISA" Litig.*, (June 16, 2006) MDL 1539 (D. Md.):

> In that regard, I would also comment on the notice. The form and scope of the notice in this case, and I'm repeating a little bit what already appeared to me to be evident at the preliminary stage, but the form and scope of the notice has been remarkable…The use of sort of plain language, the targeting of publications and media, the website with the translation into multiple languages, the mailings that have been done, I think you all are to be congratulated…

**Judge Joe E. Griffin,** *Beasley v. Hartford Insurance Company of the Midwest*, (June 13, 2006) No. CV-2005-58-1 (Cir. Ct. Ark.):

> Based on the Court's review of the evidence admitted and argument of counsel, the Court finds and concludes that the Individual Notice and the Publication Notice, as disseminated to members of the Settlement Class in accordance with

*provisions of the Preliminarily Approval Order, was the best notice practicable under the circumstances…and the requirements of due process under the Arkansas and United States Constitutions.*

**Judge Joe E. Griffin, *Beasley v. Hartford Insurance Company of the Midwest***, (June 13, 2006) No. CV-2005-58-1 (Cir. Ct. Ark.):

*Although the Notice Campaign was highly successful and resulted in actual mailed notice being received by over 400,000 Class Members, only one Class Member attempted to file a purported objection to either the Stipulation or Class Counsels' Application for Fees. The Court finds it significant that out of over 400,000 Class Members who received mailed Notice, there was no opposition to the proposed Settlement or Class Counsels' Application for Fees, other than a single void objection. The lack of opposition by a well-noticed Class strongly supports the fairness, reasonableness and adequacy of the Stipulation and Class Counsels' Application for Fees…*

**Judge Norma L. Shapiro, *First State Orthopaedics, et al. v. Concentra, Inc.***, (May 1, 2006) No. 2:05-CV-04951-NS (E.D. Pa.):

*The Court finds that dissemination of the Mailed Notice, Published Notice and Full Notice in the manner set forth here and in the Settlement Agreement meets the requirements of due process and Pennsylvania law.*

**Judge Thomas M. Hart, *Froeber v. Liberty Mutual Fire Ins. Co***., (April 19, 2006) No. 00C15234 (Cir. Ct. Ore.):

*The court has found and now reaffirms that dissemination and publication of the Class Notice in accordance with the terms of the Third Amended Order constitutes the best notice practicable under the circumstances.*

**Senior Justice Winkler, *Baxter v. Canada (Attorney General)***, (March 10, 2006) No. 00-CV-192059-CPA (Ont. Super. Ct.):

*…the English versions of the Notices provided to the court on this motion are themselves plainly worded and appear to be both informative and designed to be readily understood. It is contemplated that the form of notice will be published in English, French and Aboriginal languages, as appropriate for each media vehicle.*

**Judge Catherine C. Blake, *In re Royal Ahold Securities & "ERISA" Litig.***, (January 6, 2006) MDL No. 1539 (D. Md.):

*I think it's remarkable, as I indicated briefly before, given the breadth and scope of the proposed Class, the global nature of the Class, frankly, that again, at least on a preliminary basis, and I will be getting a final report on this, that the Notice Plan that has been proposed seems very well, very well suited, both in terms of its plain language and in terms of its international reach, to do what I hope will be very thorough and broad-ranging job of reaching as many of the shareholders, whether individual or institutional, as possible can be done to participate in what I also preliminarily believe to be a fair, adequate and reasonable settlement.*

**Judge Catherine C. Blake, *In re Royal Ahold Securities & "ERISA" Litig.***, 2006 WL 132080, at *4 (D. Md.):

*The Court finds that the form of Notice, the form of Summary Notice, and the Notice Plan satisfy the requirements of Fed.R.Civ.P. 23, due process, constitute the best notice practicable under the circumstances, and shall constitute due and sufficient notice to all members of the Class.*

9

**Judge Robert H. Wyatt, Jr.**, *Gray v. New Hampshire Indemnity Co. Inc.*, (December 19, 2005) No. CV-2002-952-2-3 (Cir. Ct. Ark.):

> *Notice of the Settlement Class was constitutionally adequate, both in terms of its substance and the manner in which it was disseminated…Notice was direct mailed to all Class members whose current whereabouts could be identified by reasonable effort. Notice was also effected by publication in many newspapers and magazines throughout the nation, reaching a large majority of the Class members multiple times. The Court finds that such notice constitutes the best notice practicable.*

**Judge Michael J. O'Malley**, *Defrates v. Hollywood Entm't Corp.*, (June 24, 2005) No. 02 L 707 (Cir. Ct. Ill.):

> *[T]his Court hereby finds that the notice program described in the Preliminary Approval Order and completed by HEC complied fully with the requirements of due process, the Federal Rules of Civil Procedure and all other applicable laws.*

**Judge Wilford D. Carter**, *Thibodeaux v. Conoco Phillips Co.*, (May 26, 2005) No. 2003-481 F (14th J.D. Ct. La.):

> *Such notices complied with all requirements of the federal and state constitutions, including the due process clause, and applicable articles of the Louisiana Code of Civil Procedure, and constituted the best notice practicable under the circumstances and constituted due process and sufficient notice to all potential members of the Class as Defined.*

**Judge Michael Canaday**, *Morrow v. Conoco Inc.*, (May 25, 2005) No. 2002-3860 G (14th J.D. Ct. La.):

> *The objections, if any, made to due process, constitutionality, procedures, and compliance with law, including, but not limited to, the adequacy of notice and the fairness of the proposed Settlement Agreement, lack merit and are hereby overruled.*

**Judge John R. Padova**, *Nichols v. SmithKline Beecham Corp.*, (April 22, 2005) No. 00-6222 (E.D. Pa.):

> *After reviewing the individual mailed Notice, the publication Notices, the PSAs and the informational release, the Court concludes that the substance of the Notice provided to members of the End-Payor Class in this case was adequate to satisfy the concerns of due process and the Federal Rules.*

**Judge John R. Padova**, *Nichols v. SmithKline Beecham Corp.*, (April 22, 2005) No. 00-6222 (E.D. Pa.):

> *…End-Payor Plaintiffs used published Summary Notice to reach consumer members of the End-Payor Class, not individual mailed Notice…that Notice has reached 81.9% of all Paxil users…Such notice to class members of the Class is hereby determined to be fully in compliance with requirements of Fed. R. Civ. P. 23(e) and due process and is found to be the best notice practicable under the circumstances and to constitute due and sufficient notice to all entities entitled thereto.*

**Judge Douglas L. Combs**, *Morris v. Liberty Mutual Fire Ins. Co.*, (February 22, 2005) No. CJ-03-714 (D. Okla.):

> *I am very impressed that the notice was able to reach—be delivered to 97 ½*

*percent members of the class. That, to me, is admirable. And I'm also—at the time that this was initially entered, I was concerned about the ability of notice to be understood by common, nonlawyer person, when we talk about legalese in a court setting. In this particular notice, not only the summary notice but even the long form of the notice were easily understandable, for someone who could read the English language, to tell them whether or not they had the opportunity to file a claim.*

**Judge Joseph R. Goodwin,** ***In re Serzone Products Liability Litig.***, 231 F.R.D. 221, 236 (S.D. W.Va. 2005):

*Not one of the objectors support challenges to the adequacy of notice with any kind of evidence; rather, these objections consist of mere arguments and speculation. I have, nevertheless, addressed the main arguments herein, and I have considered all arguments when evaluating the notice in this manner. Accordingly, after considering the full record of evidence and filings before the court, I FIND that notice in this matter comports with the requirements of Due Process under the Fifth Amendment and Federal Rules of Civil Procedure 23(c)(2) and 23(e).*

**Judge Richard G. Stearns,** ***In re Lupron[®] Marketing and Sales Practice Litig.***, (November 24, 2004) MDL No. 1430 (D. Mass.):

*After review of the proposed Notice Plan…is hereby found to be the best practicable notice under the circumstances and, when completed, shall constitute due and sufficient notice of the Settlement and the Fairness Hearing to all persons and entities affected by and/or entitled to participate in the Settlement, in full compliance with the notice requirements of Rule 23 the Federal Rules of Civil Procedure and due process.*

**Judge Richard G. Stearns,** ***In re Lupron[®] Marketing and Sales Practice Litig.***, (November 23, 2004) MDL No. 1430 (D. Mass.):

*I actually find the [notice] plan as proposed to be comprehensive and extremely sophisticated and very likely be as comprehensive as any plan of its kind could be in reaching those most directly affected.*

**Judge Paul H. Alvarado,** ***Microsoft I-V Cases***, (July 6, 2004) J.C.C.P. No. 4106 (Cal. Super. Ct.):

*[T]he Court finds the notice program of the proposed Settlement was extensive and appropriate. It complied with all requirements of California law and due process…The Settlement notice plan was ultimately more successful than anticipated and it now appears that over 80% of the class was notified of the Settlement.*

**Judge Robert E. Payne,** ***Fisher v. Virginia Electric & Power Co.***, (July 1, 2004) No. 3:02CV431 (E.D. Va.):

*The success rate in notifying the class is, I believe, at least in my experience, I share Ms. Kauffman's experience, it is as great as I have ever seen in practicing or serving in this job…So I don't believe we could have had any more effective notice...The record here shows that the class members have been fully and fairly notified of the existence of the class action, of the issues in it, of the approaches taken by each side in it in such a way as to inform meaningfully those whose rights are affected and to thereby enable them to exercise their rights intelligently.*

**Judge John Kraetzer,** ***Biaz v. Mountain View Cemetery***, (April 14, 2004) No. 809869-2 (Cal.

Super. Ct.):

> *The notice program was timely completed, complied with California Government Code section 6064, and provided the best practicable notice to all members of the Settlement Class under the circumstances.*

**Judge Joseph R. Goodwin,** *In re Serzone Prods. Liability Litig.*, 2004 U.S. Dist. LEXIS 28297, at *10 (S.D. W. Va.):

> *The Court has considered the Notice Plan and proposed forms of Notice and Summary Notice submitted with the Memorandum for Preliminary Approval and finds that the forms and manner of notice proposed by Plaintiffs and approved herein meet the requirements of due process and Fed.R.Civ.P. 23(c) and (e), are the best notice practicable under the circumstances, constitute sufficient notice to all persons entitled to notice, and satisfy the Constitutional requirements of notice.*

**Judge Carter Holly,** *Richison v. Am. Cemwood Corp.*, (November 18, 2003) No. 005532 (Cal. Sup. Ct.):

> *The notice was reasonable and the best notice practicable under the circumstances, was due, adequate, and sufficient notice to all Class members, and complied fully with the laws of the State of California, the Code of Civil Procedure, due process, and California Rules of Court 1859 and 1860…Not a single Class member—out of an estimated 30,000—objected to the terms of the Phase 2 Settlement Agreement, notwithstanding a comprehensive national Notice campaign, via direct mail and publication Notice.*

**Judge Louis J. Farina,** *Soders v. General Motors Corp.*, (October 31, 2003) No. CI-00-04255 (C.P. Ct. Pa.):

> *After balancing the factors laid out in Rule 1712(a), I find that Plaintiff's publication method is the method most reasonably calculated to inform the class members of the pending action...their plan will reach 84.8% of the class members. Defendant provided the Court with no information regarding the potential reach of their proposed plan…There is no doubt that some class members will remain unaware of the litigation, however, on balance, the Plaintiff's plan is likely to reach as many class members as the Defendant's plan at less than half the cost. As such, I approve the Plaintiff's publication based plan.*

**Judge Thomas A. Higgins,** *In re Columbia/HCA Healthcare Corp.*, (June 13, 2003) MDL No.1227 (M.D. Tenn.):

> *Notice of the settlement has been given in an adequate and sufficient manner. The notice provided by mailing the settlement notice to certain class members and publishing notice in the manner described in the settlement was the best practicable notice, complying in all respects with the requirements of due process.*

**Judge Harold Baer, Jr.,** *Thompson v. Metropolitan Life Ins. Co.*, 216 F.R.D. 55, 62 (S.D. N.Y. 2003):

> *In view of the extensive notice campaign waged by the defendant, the extremely small number of class members objecting or requesting exclusion from the settlement is a clear sign of strong support for the settlement…The notice campaign that defendant agreed to undertake was extensive…I am satisfied, having reviewed the contents of the notice package, and the extensive steps taken to disseminate notice of the settlement, that the class notice complies with*

*the requirements of Rule 23 (c)(2) and 23(e). In summary, I have reviewed all of the objections, and none persuade me to conclude that the proposed settlement is unfair, inadequate or unreasonable.*

**Judge Edgar E. Bayley,** ***Dimitrios v. CVS, Inc.***, No. 99-6209; ***Walker v. Rite Aid Corp.***, No. 99-6210; and ***Myers v. Rite Aid Corp.***, No. 01-2771 (November 27, 2002) (Pa. Ct. C.P.):

*The Court specifically finds that: fair and adequate notice has been given to the class, which comports with due process of law.*

**Judge Dewey C. Whitenton,** ***Ervin v. Movie Gallery, Inc.***, (November 22, 2002) No. 13007 (Tenn. Ch.):

*[T]he in-store notice alone accounted for an approximate 34% of all MGA class members and the combined efforts of the in-store notice and the other notice mechanisms reached at least 84.5% of the entire MGA settlement class..the effectiveness of the notice campaign and the very high level of penetration to the settlement class were truly remarkable…The notice campaign was highly successful and effective, and it more that satisfied the due process and state law requirements for class notice.*

**Judge Marina Corodemus,** ***Talalai v. Cooper Tire & Rubber Co.***, (September 13, 2002) No. L-008830.00 (N.J. Super. Ct.):

*Here, the comprehensive bilingual, English and Spanish, court-approved Notice Plan provided by the terms of the settlement meets due process requirements. The Notice Plan used a variety of methods to reach potential class members. For example, short form notices for print media were placed…throughout the United States and in major national consumer publications which include the most widely read publications among Cooper Tire owner demographic groups.*

**Judge Harold Baer, Jr.,** ***Thompson v. Metropolitan Life Ins. Co.***, (September 3, 2002) No. 00-CV-5071 (S.D.N.Y.):

*In sum, the Court finds that the proposed notice texts and methodology are reasonable, that they constitute due, adequate and sufficient notice to all persons entitled to be provided with notice, and that they meet the requirements of the Federal Rules of civil Procedure (including Fed. R. Civ. P. 23(c)(2) and (e)), the United States Constitution (including the Due Process Clause, the Rules of the Court, and any other applicable law.*

**Judge Milton Gunn Shuffield,** ***Scott v. Blockbuster Inc.***, (January 22, 2002) No. D 162-535 (Tex. Jud. Dist. Ct. Jefferson Co.) Ultimately withstood challenge to Court of Appeals of Texas. *Peters v. Blockbuster* 65 S.W.3d 295, 307 (Tex. App.-Beaumont, 2001):

*This Court concludes that the notice campaign was the best practicable, reasonably calculated, under all the circumstances, to apprise interested parties of the settlement and afford them an opportunity to present their objections…The notice campaign was highly successful and effective, and it more than satisfied the due process and state law requirements for class notice.*

***Williams v. Weyerhaeuser Co.***, 2002 WL 373578, at *10 (Cal. App. 1 Dist.):

*The hybrid notice given here–a combination of individual notice and notice by publication–was, as the trial court found, the best practicable method under the circumstances. The mass media campaign in this case appears to have been far more extensive than that approved in* <u>Dunk, supra, 48 Cal.App.4th at pp. 1800, 1805, 56 Cal.Rptr.2d 483.</u> *Objectors' own experience indicates the campaign was effective. Three of them received individual notices, two learned of the*

> *settlement through advertisements, and the others apparently learned of the
> settlement when one of them went around the neighborhood and told his
> neighbors about the settlement.*

**Judge Marina Corodemus,** ***Talalai v. Cooper Tire & Rubber Co.***, (October 30, 2001) No. MID-
L-8839-00-MT (N.J. Super. Ct.):

> *The parties have crafted a notice program which satisfies due process
> requirements without reliance on an unreasonably burdensome direct notification
> process…The notice program is specifically designed to reach a substantial
> percentage of the putative settlement class members…the proposed notice plan
> is designed to effectively reach 83.2% of owner's of defendant's tires as well as
> the broader target of adults 35+, and 82.9% of key groups that account for the
> largest share of tire purchasers such as men 35+.*

**Judge Marina Corodemus,** ***Talalai v. Cooper Tire & Rubber Co.***, (October 29, 2001) No. L-
8830-00-MT (N.J. Super. Ct.):

> *I saw the various bar graphs for the different publications and the different media
> dissemination, and I think that was actually the clearest bar graph I've ever seen
> in my life…it was very clear of the time periods that you were doing as to each
> publication and which media you were doing over what market time, so I think
> that was very clear.*

**Judge Stuart R. Pollak,** ***Microsoft I-V Cases***, (April 1, 2001) J.C.C.P. No. 4106 (Cal. Super.
Ct.):

> *[C]oncerning dissemination of class notice; and I have reviewed the materials
> that have been submitted on that subject and basically I'm satisfied. I think it's
> amazing if you're really getting 80 percent coverage. That's very reassuring. And
> the papers that you submitted responded to a couple of things that had been
> mentioned before and I am satisfied with all that.*

**Judge Stuart R. Pollak,** ***Microsoft I-V Cases***, (March 30, 2001) J.C.C.P. No. 4106 (Cal. Super.
Ct.):

> *Plaintiffs and Defendant Microsoft Corporation have submitted a joint statement
> in support of their request that the Court approve the plan for dissemination of
> class action notice and proposed forms of notice, and amend the class
> definition…The Court further finds that the methods for dissemination of the
> notice are the fairest and best practicable under the circumstances, and comport
> with due process requirements.*

**Judge Alfred G. Chiantelli,** ***Williams v. Weyerhaeuser Co.***, (December 22, 2000) No. 995787
(Cal. Super. Ct.):

> *Based upon the uncontroverted proof Class Counsel have submitted to the
> Court, the Court finds that the settling parties undertook an extensive notice
> campaign…*

**Judge Sarah S. Vance,** ***In re Babcok & Wilcox Co.***, (August 25, 2000) No. 00-0558 (E.D. La.):

> *[t]he (debtor's notice) plan's reach and frequency methodology is consistent with
> other asbestos-related notice programs, mass tort bankruptcies, and other
> significant notice programs…After reviewing debtor's Notice Plan, and the
> objections raised to it, the Court finds that the plan is reasonably calculated to
> appraise unknown claimants of their rights and meets the due process
> requirements set forth in Mullane…Accordingly, the Notice Plan is approved.*

## Articles and Speaking Engagements

Gina Intrepido-Bowden and Robert Taylor-Manning, *Ethical Considerations in Canadian Class Actions*, CLE Program. Accredited in Toronto and presented at Rochon Genova, LLP (April 2012).

Gina Intrepido-Bowden and Rob Taylor-Manning, *The Fundamentals of Settlement Administration*, CLE Program. Accredited in Pennsylvania and presented in Philadelphia at Spector Roseman Kodroff & Willis, P.C. (December 2011).

Carla Peak, *Is your legal notice designed to be noticed?* WESTLAW JOURNAL CLASS ACTION Vol.18 Issue 10 (2011).

Gina Intrepido-Bowden, presenter/panelist, *Reaching Class Members & Driving Take Rates*, CONSUMER ATTORNEYS OF SAN DIEGO, 4th Annual Class Action Symposium (October 2011).

Gina Intrepido-Bowden, Carla Peak, and Elizabeth Grande, *Legal Notice Ethics*, CLE Program. Accreditation received in California, Colorado, Illinois, Minnesota, New Jersey, New York, North Carolina, Pennsylvania, and Texas. Presented at law firms in New York (May 2010), Chicago (May 2010), Philadelphia (October 2010) and Minneapolis (January 2011). Broadcast via satellite to law firms in California, North Carolina, Texas, and London (October 2010). Sent via video to law firms in China (October 2010).

Brian Christensen, Gina Intrepido, and Richard Simmons, *Class Actions 101: Best Practices and Potential Pitfalls in Providing Class Notice*, Kansas Bar Association CLE Program (March 2009).

John B. Isbister, Todd B. Hilsee, & Carla A. Peak, *Seven Steps to a Successful Class Action Settlement*, AMERICAN BAR ASSOCIATION, SECTION OF LITIGATION, CLASS ACTIONS TODAY 16 (2008).

Todd B. Hilsee, Gina M. Intrepido, & Shannon R. Wheatman, *Hurricanes, Mobility and Due Process: The "Desire-to-Inform" Requirement for Effective Class Action Notice Is Highlighted by Katrina*, 80 TULANE LAW REV. 1771 (2006); reprinted in course materials for: AMERICAN BAR ASSOCIATION, 10th Annual National Institute on Class Actions (2006); NATIONAL BUSINESS INSTITUTE, Class Action Update: Today's Trends & Strategies for Success (2006); CENTER FOR LEGAL EDUCATION INTERNATIONAL, Class Actions: Prosecuting and Defending Complex Litigation (2007).

Gina M. Intrepido, *Notice Experts May Help Resolve CAFA Removal Issues, Notification to Officials*, 6 CLASS ACTION LITIG. REP. 759 (2005).

Todd B. Hilsee, Shannon R. Wheatman, & Gina M. Intrepido, *Do You Really Want Me to Know My Rights? The Ethics Behind Due Process in Class Action Notice Is More Than Just Plain Language: A Desire to Actually Inform*, 18 GEORGETOWN JOURNAL LEGAL ETHICS 1359 (2005).

# Legal Notice Case Examples

Following is a partial list of cases our expert(s) have been directly involved in the design of the notice program and/or notice documents:

| | |
|---|---|
| *Naef v. Masonite Corp (Hardboard Siding)* | Cir. Ct. Ala., CV-94-4033 |
| *Williams v. Weyerhaeuser Co. (Hardboard Siding)* | Cal. Super. Ct., CV-995787 |
| *In re Babcock and Wilcox Co. (Asbestos Related Bankruptcy)* | E.D. La., 00-10992 |
| *Brown v. Am. Tobacco* | Cal. Super. Ct., J.C.C.P. 4042 No. 711400 |
| *Microsoft I-V Cases (Antitrust Litig. Mirroring Justice Dept.)* | Cal. Super. Ct., J.C.C.P. No. 4106 |
| *Scott v. Blockbuster, Inc. (Extended Viewing Fees)* | 136th Tex. Jud. Dist., No. D 162-535 |
| *Talalai v. Cooper Tire & Rubber Co. (Tire Layer Adhesion)* | N.J. Super. Ct., No. MID-L-8839-00 MT |
| *Thompson v. Metropolitan Life Ins. Co. (Race Related Sales Practices)* | S.D. N.Y., No. 00-CIV-5071 HB |
| *Ervin v. Movie Gallery Inc. (Extended Viewing Fees)* | Tenn. Ch. Fayette Co., No. CV-13007 |
| *Walker v. Rite Aid of PA, Inc. (PA Act 6)* | C.P. Pa., No. 99-6210 |
| *Myers v. Rite Aid of PA, Inc. (PA Act 6)* | C.P. Pa., No. 01-2771 |
| *Baker v. Jewel Food Stores, Inc. & Dominick's Finer Foods, Inc. (Milk Price Fixing)* | Cir. Ct. Ill. Cook Co., No. 00-L-9664 |
| *In re Columbia/HCA Healthcare Corp. (Billing Practices Litig.)* | M.D. Tenn., MDL No. 1227 |
| *Soders v. General Motors Corp. (Marketing Initiative)* | C.P. Pa., No. CI-00-04255 |
| *Nature Guard Cement Roofing Shingles Cases* | Cal. Super. Ct., J.C.C.P. No. 4215 |
| *Defrates v. Hollywood Entertainment Corp.* | Cir. Ct. Ill., St. Clair. Co., No. 02L707 |
| *West v. G&H Seed Co. (Crawfish Farmers)* | 27th Jud. D. Ct. La., No. 99-C-4984-A |
| *Baiz v. Mountain View Cemetery (Burial Practices)* | Cal. Super. Ct., No. 809869-2 |
| *Richison v. American Cemwood Corp. (Roofing Durability)* | Cal. Super. Ct., No. 005532 |
| *Friedman v. Microsoft Corp. (Antitrust)* | Ariz. Super. Ct., No. CV 2000-000722 |
| *Davis v. Am. Home Prods. Corp. (Norplant Contraceptive)* | Civ. D. Ct. La., Div. K, No. 94-11684 |
| *Gordon v. Microsoft Corp. (Antitrust)* | D. Minn., No. 00-5994 |
| *Fisher v. Virginia Electric & Power Co.* | E.D. Va., No 3:02-CV-431 |
| *Bardessono v. Ford Motor Co. (15 Passenger Vans Outreach)* | Wash. Super. Ct., No. 32494 |
| *Gardner v. Stimson Lumber Co. (Forestex Siding)* | Wash. Super. Ct., No. 00-2-17633-3SEA |
| *Nichols v. SmithKline Beecham Corp. (Paxil)* | E.D. Pa., No. 00-6222 |
| *In re Educ. Testing Serv. PLT 7-12 Test Scoring* | E.D. La., 2:04md1643 |
| *In re Serzone Products Liability* | S.D. W. Va., 02-md-1477 |
| *Ford Explorer Cases* | Cal. Super. Ct., JCCP Nos. 4226 & 4270 |
| *In re Lupron Marketing & Sales Practices* | D. Mass., MDL No.1430 |
| *Morris v. Liberty Mutual Fire Ins. Co.* | D. Okla., NO. CJ-03-714 |

| | |
|---|---|
| *Thibodeaux v. Conoco Philips Co.* | D. La., No. 2003-481 |
| *Morrow v. Conoco Inc.* | D. La., No. 2002-3860 |
| *Tobacco Farmer Transition Program* | U.S. Dept. of Agric. |
| *Froeber v. Liberty Mutual Fire Ins. Co.* | Cir. Ct. Ore., No. 00C15234 |
| *Carnegie v. Household Int'l, Inc.* | N. D. Ill., No. 98-C-2178 |
| *In re Royal Ahold Securities and "ERISA"* | D. Md., MDL 1539 |
| *First State Orthopaedics et al. v. Concentra, Inc., et al.* | E.D. Pa., No. 2:05-CV-04951-AB |
| *Meckstroth v. Toyota Motor Sales, U.S.A., Inc.* | 24th Jud. D. Ct. La., No. 583-318 |
| *In re High Sulfur Content Gasoline Products Liability* | E.D. La., MDL No. 1632 |
| *Desportes v. American General Assurance Co.* | Ga. Super. Ct., No. SU-04-CV-3637 |
| *In re Residential Schools Litigation* | Ont. Super. Ct., 00-CV-192059 CPA |
| *Turner v. Murphy Oil USA, Inc.* | E.D. La., No. 2:05-CV-04206-EEF-JCW |
| *Carter v. North Central Life Ins. Co.* | Ga. Super. Ct., No. SU-2006-CV-3764-6 |
| *Spence v. Microsoft Corp. (Antitrust Litig.)* | Cir. Ct. Wis., No. 00-CV-003042 |
| *Ciabattari v. Toyota Motor Sales, U.S.A., Inc.* | N.D. Cal., No. C-05-04289-BZ |
| *Peek v. Microsoft Corporation* | Cir. Ct. Ark., No. CV-2006-2612 |
| *Reynolds v. The Hartford Financial Services Group, Inc.* | D. Ore., No. CV-01-1529 BR |
| *Zarebski v. Hartford Insurance Co. of the Midwest* | Cir. Ct. Ark., No. CV-2006-409-3 |
| *In re Parmalat Securities* | S.D. N.Y., MDL No. 1653 (LAK) |
| *Beasley v. The Reliable Life Insurance Co.* | Cir. Ct. Ark., No. CV-2005-58-1 |
| *Sweeten v. American Empire Insurance Company* | Cir. Ct. Ark., No. 2007-154-3 |
| *Gunderson v. F.A. Richard & Associates, Inc. (FARA)* | 14th Jud. D. Ct. La., No. 2004-2417-D |
| *Gunderson v. F.A. Richard & Associates, Inc. (Focus)* | 14th Jud. D. Ct. La., No. 2004-2417-D |
| *Hunsucker v. American Standard Ins. Co. of Wisconsin* | Cir. Ct. Ark., No., CV-2007-155-3 |
| *Burgess v. Farmers Insurance Co., Inc.* | D. Okla., No. CJ-2001-292 |
| *Grays Harbor v. Carrier Corporation* | W.D. Wash., No. 05-05437-RBL |
| *Donnelly v. United Technologies Corp.* | Ont. S.C.J., 06-CV-320045CP |
| *Wener v. United Technologies Corp.* | QC. Super. Ct., 500-06-000425-088 |
| *Brookshire Bros. v. Chiquita (Antitrust)* | S.D. Fla., No. 05-CIV-21962 |
| *Johnson v. Progressive* | Cir. Ct. Ark., No. CV-2003-513 |
| *Bond v. American Family Insurance Co.* | D. Ariz., CV06-01249-PXH-DGC |
| *Angel v. U.S. Tire Recovery (Tire Fire)* | Cir. Ct. W. Va., No. 06-C-855 |
| *In re TJX Companies Retail Security Breach* | D. Mass., MDL No. 1838 |
| *Webb v. Liberty Mutual Insurance Co.* | Cir. Ct. Ark., No. CV-2007-418-3 |
| *Shaffer v. Continental Casualty Co. (Long Term Care Insurance)* | C.D. Cal., SACV06-2235-PSG (PJWx) |
| *Palace v. DaimlerChrysler (Neon Head Gaskets)* | Cir. Ct. Ill., Cook Co., No. 01-CH-13168 |

| | |
|---|---|
| *Beringer v. Certegy Check Services, Inc. (Data Breach)* | M.D. Fla., No. 8:07-cv-1657-T-23TGW |
| *Lockwood v. Certegy Check Services, Inc. (Data Breach)* | M.D. Fla., No. 2:07-CV-587-FtM-29-DNF |
| *Sherrill v. Progressive Northwestern Ins. Co.* | 18th D. Ct. Mont., No. DV-03-220 |
| *Gunderson v. F.A. Richard & Associates, Inc. (AIG)* | 14th Jud. D. Ct. La., No. 2004-2417-D |
| *Jones v. Dominion Transmission, Inc.* | S.D. W. Va., No. 2:06-cv-00671 |
| *Gunderson v. F.A. Richard & Associates, Inc. (Walmart)* | 14th Jud. D. Ct. La., No. 2004-2417-D |
| *In re Trans Union Corp. Privacy (Data Breach)* | N.D. Ill., MDL No. 1350 |
| *Gunderson v. F.A. Richard & Associates., Inc. (Amerisafe)* | 14th Jud. D. Ct. La., No. 2004-002417 |
| *Bibb v. Monsanto Co. (Nitro)* | Cir. Ct. W.Va., No. 041465 |
| *Carter v. Monsanto Co. (Nitro)* | Cir. Ct. W.Va., No. 00-C-300 |
| *In re U.S. Department of  eterans Affairs ( A) Data Breach* | D. D.C., MDL 1796 |
| *In re Countrywide Financial Corp. Customer Data Security Breach* | W.D. Ky., MDL No. 1998 |
| *Dolen v. ABN AMRO Bank N. . (Callable CDs)* | Nos. 01-L-454 & 01-L-493 |
| *Griffin v. Dell Canada Inc.* | Ont. Super. Ct., No. 07-CV-325223D2 |
| *Plubell v. Merck & Co., Inc.* | Cir. Ct. Mo., No. 04CV235817-01 |
| *Billieson v. City of New Orleans* | Civ. D. Ct. La., No. 94-19231 |
| *Anderson v. Government of Canada* | Sup. Ct. NL, No. 2008NLTD166 |
| * o v. Natura Pet Products, Inc.* | N.D. Cal., No. 5:09cv02619 |
| *Allen v. UMB Bank, N.A.* | Cir. Ct. Mo., No. 1016-CV34791 |
| *Blue Cross of California Website Security Cases* | Sup. Ct. Cal., No. JCCP 4647 |
| *Alvare  v. Haseko Homes, Inc.* | Cir. Ct. HI., No. 09-1-2691-11 |
| *LaRocque v. TRS Recovery Services, Inc.* | D. Maine, No. 2:11cv00091 |
| *In re: Zurn Pex Plumbing Products Liability Litig.* | D. Minn., MDL No. 08-1958 |
| *Molina v. Intrust Bank, N.A.* | 18th Jud. D. Ct., 10-cv-3686 |
| *In Re: Uponor, Inc., F1807 Products Liability Litigation* | D. Minn, MDL No. 2247 |

Following is a partial list of notice programs and/or notices that are expert(s) have critiqued:

| | |
|---|---|
| *Barbanti v. W.R. Grace and Co. (Zonolite/Asbestos Litig.)* | Wash. Super. Ct., 00201756-6 |
| *In re W.R. Grace Co. (Asbestos Related Bankruptcy)* | Bankr. D. Del., No. 01-3293-JCS |
| *In re USG Corp. (Asbestos Related Bankruptcy)* | Bankr. D. Del., No. 01-02094-RJN |
| *Johnson v. Ethicon, Inc. (Product Liability Litigation)* | Cir. Ct. W. Va., Nos. 01-C-1530, 1531, 1533, 01-C-2491 to 2500 |
| *Parsons/Currie v. McDonalds* | Ont. S.C.J. d2004 |
| *Chambers v. DaimlerChrysler Corp. (Neon Head Gaskets)* | N.C. Super. Ct., No. 01:CVS-1555 |
| *West v. Carfax, Inc.* | Ohio C.P., No. 04-CV-1898 (ADL) |
| *Perrine v. E.I. Du Pont De Nemours & Co.* | Cir. Ct. W. Va., No. 04-C-296-2 |

| *Clark v. Pfi er, Inc. (Neurontin)* | C.P. Pa. Phila. Co., No. 9709-3162 |
| *In re Motor Fuel Temperature Sales Practices Litig.* | D. Kan., MDL No. 1840 |
| *Gallucci v. Boiron, Inc.* | S.D. Ca., No. 3:11-cv-02039 |
| *Tchoboian v. FedEx ffice and Print Services, Inc.* | C.D. Cal., No.10-CV01008 |

Attachment B

To:
From: administrator@ACFTCAsettlement.com
Subject: Legal Notice about Vehicles Rented at California Airports

**To file your Election of Benefits Form online:**
**ID Number: XXXXXXX**

### You can file a claim for cash or vouchers from a class action settlement about your rental of a vehicle at a California airport location from January 1, 2007 to November 14, 2007.

A settlement has been reached with The Hertz Corporation, Dollar Thrifty Automotive Group, Inc., Avis Budget Group, Inc., Vanguard Car Rental USA, LLC, Enterprise Holdings, Inc., Fox Rent A Car, Inc. and the California Travel and Tourism Commission in a class action lawsuit claiming that these companies agreed with each other to pass on the Airport Concession Fee (ACF) and Tourism Commission Assessment (TCA) to customers for rentals at certain California airport locations. The Defendants deny all of the claims in the lawsuit, but have agreed to the settlement to avoid the cost and risk of a trial.

WHO IS INCLUDED? Defendants' records show that you are included in the settlement. Generally, the settlement includes people who rented a vehicle directly from corporate-owned locations of Alamo, Avis, Budget, Dollar, Enterprise, Fox Rent A Car, Hertz, National, or Thrifty for pick up at a California airport location from January 1, 2007 through November 14, 2007, and who were charged and paid an ACF and/or TCA as a separate line item on their invoice. Rentals from non-corporate owned airport locations, rentals made as part of a pre-existing agreement with a business or governmental body according to which the rental charge was determined, and rentals where a package price was paid to a tour operator or online booking agency (like Priceline or Hotwire) are not included and are not entitled to cash payments or vouchers.

WHAT CAN YOU GET? You can elect to receive one of the cash or voucher options below based on the total number of days you rented one or more vehicles directly from that rental car defendant at a California airport location from January 1, 2007 to November 14, 2007, and paid an ACF and/or TCA as a separate line item on your invoice. Benefit options are:

| Total number of rental days | Option | Description |
|---|---|---|
| Any | Cash | $2 per day ($5 minimum payment) |
| Less than eight | One—One Day Voucher | one voucher good for free time and mileage for one rental day |
| Eight or more | Two—One Day Vouchers | two vouchers, each good for free time and mileage for one rental day; or |



| | One—Two Day Voucher | one voucher good for free time and mileage for <u>two</u> rental days |
|---|---|---|

Vouchers will be issued in the brand name of the rental car company that charged and collected the ACF and/or TCA, and will be available for use at any of that rental car company's U.S. corporate-owned locations. Avis and Budget vouchers may be redeemed at an Avis or Budget U.S. corporate-owned location. The settlement will also require the California Travel and Tourism Commission to adopt certain practices related to meetings and its communications with the public and rental car companies about Tourism Commission Assessments.

**Ho    to Get Benefits?** You must submit an Election of Benefits Form by     **onth 00, 2012** to get a cash payment or vouchers. Using the ID number above, you can submit a form online at <u>www.ACFTCAsettlement.com</u>. You may also request one by calling 1-000-000-0000 or by sending a letter by mail to the claims administrator.

**Your Other Options?** If you submit an Election of Benefits Form or do nothing, you will be legally bound by the settlement and you will give up your right to sue the Defendants for any claim asserted in this lawsuit or released by the Stipulation of Settlement. If you do not want to be legally bound by the settlement or be able to get a cash payment or voucher from it, you must exclude yourself by     **onth 00, 2012**. If you do not exclude yourself, you may object to the settlement or you may ask for permission for you or your lawyer to appear and speak at the hearing—at your own cost—but you don't have to. The deadline to submit objections and requests to appear is     **onth 00, 2012**. The detailed notice, available at the website, explains how to act on all of your options.

The Court will hold a hearing on     **onth 00, 2012** to consider whether to approve: the settlement; attorneys' fees, costs, and expenses of up to $5,870,000; and a $2,000 payment to the Class Representative. These fees, costs, expenses and payments will be paid separately by the Defendants and will not reduce the amount of cash or vouchers available. The complete terms of the settlement, including the benefits you may be entitled to receive and the rights you may be giving up are contained in the Stipulation of Settlement, which may be found online at www.ACFTCAsettlement.com.

**File your claim online at _____.ACFTCAsettlement.com. You may also re  uest an Election of Benefits Form and more information by callin   1 000 000 0000.**

A settlement has been reached with The Hertz Corporation, Dollar Thrifty Automotive Group, Inc., Avis Budget Group, Inc., Vanguard Car Rental USA, LLC, Enterprise Holdings, Inc., Fox Rent A Car, Inc. and the California Travel and Tourism Commission in a class action lawsuit claiming that these companies agreed with each other to pass on the Airport Concession Fee (ACF) and Tourism Commission Assessment (TCA) to customers for rentals at certain California airport locations. The Defendants deny all of the claims in the lawsuit, but have agreed to the settlement to avoid the cost and risk of a trial.

**Who's Included?** Defendants' records show that you are included in the settlement. Generally, the settlement includes people who rented a vehicle directly from corporate-owned locations of Alamo, Avis, Budget, Dollar, Enterprise, Fox Rent A Car, Hertz, National, or Thrifty for pick up at a California airport location from January 1, 2007 through November 14, 2007, and were charged and paid an ACF and/or TCA as a separate line item on their invoice. Rentals from non-corporate owned airport locations, rentals made as part of a pre-existing agreement with a business or governmental according to which the rental charge was determined, and rentals where a package price was paid to a tour operator or online booking agency (like Priceline or Hotwire) are not included and are not entitled to cash payments or vouchers.

**What Can You Get?** You can elect to receive one of the options below based on the total number of days you rented one or more vehicles directly from that rental car defendant at a California airport location from 1/1/07 to 11/14/07, and paid an ACF and/or TCA as a separate line item on your invoice. Options are: (1) $2 for each day the vehicles were rented ($5 minimum payment); or (2) if the vehicles were rented for less than 8 days, one voucher good for free time and mileage for one rental day; or (3) if the vehicles were rented for 8 or more days, either (a) two—one day vouchers each good for free time and mileage for one rental day, or (b) one—two day voucher good for free time and mileage for two rental days. Vouchers will be issued in the brand name of each rental car company that charged you the ACF and/or TCA, and will be available for use at any of that rental car company's U.S. corporate-owned locations.

**How to Get Benefits?** Use the code on the front of this postcard to submit your Election of Benefits Form online by **Month 00, 2012**. Forms are also available at www.ACFTCAsettlement.com or by calling 1-000-000-0000.

**Your Other Options**. If you do nothing, your rights will be affected. If you don't want to be legally bound by the settlement, you must exclude yourself from it by **Month 00, 2012**. Unless you exclude yourself you won't be able to sue the Defendants for any claim asserted in this lawsuit or released by the Stipulation of Settlement. If you stay in the settlement (i.e., don't exclude yourself), you may object to it or you may ask for permission for you or your own lawyer to appear and speak at the hearing—at your own cost—but you don't have to. Objections and requests to appear are due by **Month 00, 2012**. More information is in the detailed notice and Stipulation of Settlement which are available at the website.

The Court will hold a hearing on Month 00, 2012 to consider whether to approve: the settlement; attorneys' fees, costs, and expenses of up to $5,870,000; and a $2,000 payment to the Class Representative.

**File your Election of Benefits Form online at www.ACFTCAsettlement.com or get one by calling 1-000-000-0000.**

<u>LEGAL NOTICE</u>

**You can file a claim for cash or vouchers from a class action settlement because you rented a vehicle from a California airport location between January 1, 2007 and November 14, 2007.**

**1-000-000-0000**
**www.ACFTCAsettlement.com**

HZS

ACF/TCA
Settlement Administrator
P.O. Box 0000
City, ST 00000-0000

Presorted
First-Class Mail
U.S. Postage
PAID
City, ST
Permit No. 0000

Postal Service: Please Do Not Mark Barcode

{BARCODE}
JOHN Q CLASSMEMBER
123 ABC STREET
NOVATO, CA 94948-0000

Election of Benefits ID#: [XXXXXXXXXXXX]
(use ID to file your claim online)

LEGAL NOTICE

# If you rented a vehicle at a California airport location between January 1, 2007 and November 14, 2007, you may be entitled to cash or vouchers from a class action settlement.

A settlement has been reached with The Hertz Corporation, Dollar Thrifty Automotive Group, Inc., Avis Budget Group, Inc., Vanguard Car Rental USA, LLC, Enterprise Holdings, Inc., Fox Rent A Car, Inc. and the California Travel and Tourism Commission in a class action lawsuit claiming that these companies agreed with each other to pass on the Airport Concession Fee (ACF) and Tourism Commission Assessment (TCA) to customers for rentals at certain California airport locations. The Defendants deny all of the claims in the lawsuit, but have agreed to the settlement to avoid the cost and risk of a trial.

**WHO IS INCLUDED?** Generally, the settlement includes people who rented a vehicle directly from corporate-owned locations of Alamo, Avis, Budget, Dollar, Enterprise, Fox Rent A Car, Hertz, National or Thrifty for pick up at a California airport location from 1/1/07-11/14/07, and were charged and paid to the rental car company an ACF and/or TCA as a separate line item on their invoice. Rentals from non-corporate owned airport locations, rentals made as part of a pre-existing agreement with a business or governmental body according to which the rental charge was determined, and rentals where a package price was paid to a tour operator or online booking agency (like Priceline or Hotwire) are not included and are not entitled to cash payments or vouchers.

**WHAT DOES THE SETTLEMENT PROVIDE?** Those included in the settlement can elect to receive one of the following options based on the total number of days they rented one or more vehicles directly from that rental car defendant at a California airport location from 1/1/07 to 11/14/07, and paid an ACF and/or TCA as a separate line item on their invoice. Options are: (1) $2 for each day the vehicles were rented ($5 minimum payment); or (2) if the vehicles were rented for less than eight days, one voucher good for free time and mileage for one rental day; or (3) if the vehicles were rented for eight or more days, the choice of either (a) two—one day vouchers each good for free time and mileage for one rental day, or (b) one—two day voucher good for free time and mileage

for two rental days. Vouchers will be issued in the brand name of the rental car company that charged and collected the ACF and/or TCA, and will be available for use at any of that rental car company's U.S. corporate-owned locations.

**HOW DO YOU ASK FOR A CASH PAYMENT OR VOUCHER?** Submit an Election of Benefits Form online by **Month 00, 2012**. Forms are also available at the website or by calling 1-000-000-0000.

**WHAT ARE YOUR OPTIONS?** If you submit an Election of Benefits Form or do nothing, you will be legally bound by the settlement and give up your right to sue the Defendants for any claim asserted in this lawsuit or released by the Stipulation of Settlement. If you do not want to be legally bound by the settlement or be able to get a cash payment or voucher from it, you must exclude yourself by **Month 00, 2012**. If you do not exclude yourself, you may object to the settlement or you may ask for permission for you or your lawyer to appear and speak at the hearing—at your own cost—but you don't have to. The deadline to submit objections and requests to appear is **Month 00, 2012**.

**THE COURT'S FAIRNESS HEARING.** The U.S. District Court for the Southern District of California will hold a hearing in this case (*Shames v. The Hertz Corp.*, No. 07cv2174-MMA), on Month 00, 2012 to consider whether to approve the settlement, payment of attorneys' fees, costs, and expenses of up to $5,870,000 and a $2,000 payment to the Class Representative.

**HOW DO YOU GET MORE INFORMATION?** More information is in the detailed notice and Stipulation of Settlement which are available at the website. You can also call or write to ACF/TCA Settlement Administrator, c/o KCC LLC, PO Box 0000, City, ST 00000-0000.

## 1-000-000-0000
## www.ACFTCAsettlement.com

To:
From: administrator@ACFTCAsettlement.com
Subject: Reminder Notice about Vehicles Rented at California Airports

**To file your Election of Benefits Form online:**
**ID Number: XXXXXXX**

<u>**Reminder: Submission deadline is Month 00, 2012**</u>
**You can file a claim for cash or vouchers from a class action settlement about your rental of a vehicle at a California airport location.**

Records show that you rented a vehicle directly from a corporate-owned location of Alamo, Avis, Budget, Dollar, Enterprise, Fox Rent A Car, Hertz, National, or Thrifty for pick up at a California airport location between January 1, 2007 and November 14, 2007, and were charged and paid an Airport Concession Fee (ACF) and/or Tourism Commission Assessment (TCA) as a separate line item on your invoice. You can elect to receive one of the cash or voucher options below based on the total number of days you rented one or more vehicles directly from that rental car defendant at a California airport location from January 1, 2007 to November 14, 2007, and paid an ACF and/or TCA as a separate line item on your invoice. Benefit options are:

| Total number of rental days | Option | Description |
|---|---|---|
| Any | Cash | $2 per day ($5 minimum payment) |
| Less than eight | One—One Day Voucher | one voucher good for free time and mileage for <u>one</u> rental day |
| Eight or more | Two—One Day Vouchers | two vouchers, each good for free time and mileage for <u>one</u> rental day; or |
| | One—Two Day Voucher | one voucher good for free time and mileage for <u>two</u> rental days |

Rentals from non-corporate owned airport locations, rentals made as part of a pre-existing agreement with a business or governmental body according to which the rental charge was determined, and rentals where a package price was paid to a tour operator or online booking agency (like Priceline or Hotwire) are <u>not</u> included and are <u>not</u> entitled to cash payments or vouchers.

Vouchers will be issued in the brand name of the rental car company that charged and collected the ACF and/or TCA, and will be available for use at that rental car company's U.S. corporate-owned locations. Avis and Budget vouchers may be redeemed at an Avis or Budget U.S. corporate-owned location.

To get your cash payment or voucher you must submit an Election of Benefits Form. Using the ID number above, you can submit a form online at www.ACFTCAsettlement.com. You may also request one by calling 1-000-000-0000 or by sending a letter by mail to the claims administrator. **Remember, the deadline to submit or mail your Election of Benefits Form is Month 00, 2012**.

The cash payments and vouchers are the result of a settlement that was reached with The Hertz Corporation, Dollar Thrifty Automotive Group, Inc., Avis Budget Group, Inc., Vanguard Car Rental USA, LLC, Enterprise Holdings, Inc., Fox Rent A Car, Inc. and the California Travel and Tourism Commission in a class action lawsuit claiming that these companies agreed with each other to pass on the Airport Concession Fee and Tourism Commission Assessment to customers for rentals at certain California airport locations. The Defendants deny all of the claims in the lawsuit, but have agreed to the settlement to avoid the cost and risk of a trial.  The settlement will also require the California Travel and Tourism Commission to adopt certain practices related to meetings and its communications with the public and rental car companies about Tourism Commission Assessments.

**File your claim online at  _____.  CFTC  settlement.com. You may also re uest an Election of Benefits Form and more information by callin  1 000 000 0000.**

LEGAL NOTICE

# Reminder: Submission deadline is Month 00, 2012

## If you rented a vehicle at a California airport location between January 1, 2007 and November 14, 2007, you may be entitled to cash or vouchers.

If you rented a vehicle directly from corporate-owned locations of Alamo, Avis, Budget, Dollar, Enterprise, Fox Rent A Car, Hertz, National, or Thrifty for pick up at a California airport location from January 1, 2007 through November 14, 2007, and you were charged and paid an Airport Concession Fee (ACF) and/or Tourism Commission Assessment (TCA) as a separate line item on your invoice you may be entitled to a cash payment or vouchers from a class action settlement. Benefit options are: (1) $2 for each day the vehicles were rented ($5 minimum payment); or (2) if the vehicles were rented for less than eight days, one voucher good for free time and mileage for <u>one</u> rental day; or (3) if the vehicles were rented for eight or more days, the choice of either (a) two—one day vouchers each good for free time and mileage for <u>one</u> rental day, or (b) one—two day voucher good for free time and mileage for <u>two</u> rental days. Rentals from non-corporate owned airport location, rentals made as part of a pre-existing agreement with a business or governmental body according to which the rental charge was determined, and rentals where a package price was paid to a tour operator or online booking agency (such as Priceline or Hotwire) are <u>not</u> included and are <u>not</u> entitled to cash payments or vouchers.

Vouchers will be issued in the brand name of the rental car company that charged and collected the ACF and/or TCA, and will be available for use at any of that rental car company's U.S. corporate-owned locations.

To get your cash payment or voucher you must submit an Election of Benefits Form. You may submit a form online or request one by calling 1-000-000-0000. Remember, the deadline to submit or mail your Election of Benefits Form is **Month 00, 2012**.

The cash payments and vouchers are the result of a settlement that was reached with The Hertz Corporation, Dollar Thrifty Automotive Group, Inc., Avis Budget Group, Inc., Vanguard Car Rental USA, LLC, Enterprise Holdings, Inc., Fox Rent A Car, Inc. and the California Travel and Tourism Commission in a class action lawsuit claiming that these companies agreed with each other to pass on the ACF and TCA to customers for rentals at certain California airport locations. The Defendants deny all of the claims in the lawsuit, but have agreed to the settlement to avoid the cost and risk of a trial.  The settlement will also require the California Travel and Tourism Commission to adopt certain practices related to meetings and its communications with the public and rental car companies about Tourism Commission Assessments.

## File your Election of Benefits Form online at www.ACFTCAsettlement.com or get one by calling 1-000-000-0000.

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF CALIFORNIA

# If you rented a vehicle at a California airport location between January 1, 2007 and November 14, 2007, you may be entitled to cash or vouchers from a class action settlement.

*A court authorized this Notice. This is <u>not</u> a solicitation from a lawyer.*

- A settlement has been reached in a class action lawsuit claiming that certain car rental companies agreed with each other to pass on the Airport Concession Fee and Tourism Commission Assessment to customers who rented vehicles from certain California airport locations.

- The settlement provides cash payments or vouchers to those included in the settlement.

- The settlement will also require the California Travel and Tourism Commission to adopt certain practices related to meetings and its communications with the public and rental car companies about Tourism Commission Assessments.

- This notice summarizes the proposed settlement. The complete terms of the settlement, including information describing the benefits you may be entitled to receive and the rights you may be giving up, are contained in the Stipulation of Settlement, which may be found online at www.ACFTCAsettlement.com.

- Your legal rights are affected whether you act or don't act. Read this notice carefully.

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT: | |
|---|---|
| SUBMIT AN ELECTION OF BENEFITS FORM | The only way to get a cash payment or voucher. |
| EXCLUDE YOURSELF | Get no payment or voucher. This is the only option that allows you to ever be part of another lawsuit against the Defendants about the legal claims asserted in this lawsuit or released through the settlement. |
| OBJECT | Write to the Court about why you don't like the settlement. |
| GO TO A HEARING | Ask to speak in Court about the fairness of the settlement. |
| DO NOTHING | Get no payment or voucher. Give up rights. |

- These rights and options—**and the deadlines to exercise them**—are explained in this notice.

- The Court in charge of this case still has to decide whether to approve the settlement. Cash payments will be made and vouchers will be distributed only if the Court approves the settlement and after any appeals are resolved. Please be patient.

QUESTIONS? CALL 1-800-000-0000 TOLL FREE OR VISIT WWW.ACFTCASETTLEMENT.COM

## WHAT THIS NOTICE CONTAINS

**BASIC INFORMATION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . PAGE 3
1.  Why was this notice issued?
2.  What is this lawsuit about?
3.  What is a class action?
4.  Why is there a settlement?

**WHO IS INCLUDED IN THE SETTLEMENT**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . PAGE 3
5.  How do I know if I am part of the settlement?
6.  Are there exceptions to being included in the settlement?
7.  What if I am still not sure if I am included?

**THE SETTLEMENT BENEFITS—WHAT YOU CAN GET** . . . . . . . . . . . . . . . . . . . . . . . . . . . PAGE 4
8.  What does the settlement provide?
9.  Tell me more about the vouchers.

**HOW TO GET BENEFITS—SUBMITTING AN ELECTION OF BENEFITS FORM**. . . . . . . . . . . . PAGE 5
10.  How can I get a cash payment or voucher?
11.  When will I get my cash payment or voucher?
12.  What rights am I giving up to get a cash payment or voucher and stay in the Class?

**EXCLUDING YOURSELF FROM THE SETTLEMENT** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . PAGE 5
13.  How do I get out of the settlement?
14.  If I exclude myself, will I still get a cash payment or voucher from this settlement?
15.  If I don't exclude myself, can I sue the Defendants for the same claims later?

**THE LAWYERS REPRESENTING YOU** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . PAGE 6
16.  Do I have a lawyer in this case?
17.  How will the lawyers be paid?

**OBJECTING TO THE SETTLEMENT** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . PAGE 6
18.  How do I tell the Court if I don't like the settlement?
19.  What's the difference between objecting to the settlement and excluding myself from it?

**THE COURT'S FAIRNESS HEARING**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . PAGE 6
20.  When and where will the Court decide whether to approve the settlement?
21.  Do I have to come to the hearing?
22.  May I speak at the hearing?

**IF YOU DO NOTHING** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . PAGE 7
23.  What happens if I do nothing at all?

**GETTING MORE INFORMATION**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . PAGE 7
24.  Are there more details about the settlement?
25.  How do I get more information?

# BASIC INFORMATION

## 1. Why was this notice issued?

A Court authorized this notice because you have a right to know about the proposed settlement of this class action lawsuit and about all of your options before the Court decides whether to approve the settlement. This notice explains the lawsuit, the settlement, your legal rights, what benefits are available, and who can get them.

Judge Michael M. Anello of the United States District Court for the Southern District of California is overseeing this class action. The case is known as *Shames v. The Hertz Corporation*, Case No. 07cv2174-MMA. The people who sued are called the Plaintiffs and the companies they sued, The Hertz Corporation, Dollar Thrifty Automotive Group, Inc., Avis Budget Group, Inc., Vanguard Car Rental USA, LLC, Enterprise Holdings, Inc., Fox Rent A Car, Inc. and the California Travel and Tourism Commission, are called the Defendants. The Hertz Corporation, Dollar Thrifty Automotive Group, Inc., Avis Budget Group, Inc., Vanguard Car Rental USA, LLC, Enterprise Holdings, Inc., and Fox Rent A Car, Inc. may also be referred to as the Rental Car Defendants.

## 2. What is this lawsuit about?

The lawsuit claims that the Defendants violated antitrust and other laws by raising rental car prices at California airports by agreeing with each other to pass on the Airport Concession Fee (ACF) and Tourism Commission Assessment (TCA) to customers for rentals at certain California airport locations. The Defendants deny all of the claims in the lawsuit and deny that they did anything wrong.

## 3. What is a class action?

In a class action, one or more people, called a Class Representative (in this case Gary Gramkow), sue on behalf of all people who have similar claims. The people included in the class action are called a Class or Class Members. A single court resolves the issues for all Class Members, except for those who exclude themselves from the Class.

## 4. Why is there a settlement?

The Court did not decide in favor of the Plaintiffs or the Defendants. Instead, both sides agreed to a settlement. This way, they avoid the cost and risk of a trial and the Class can get benefits. The Class Representative and his attorneys think the settlement is best for all Class Members.

# WHO IS INCLUDED IN THE SETTLEMENT

## 5. How do I know if I am part of the settlement?

If you received a notice in the mail or by email, at least one of the Rental Car Defendants' records shows that you are included in the settlement. Generally, the settlement includes people who rented a vehicle directly from corporate-owned locations of Alamo, Avis, Budget, Dollar, Enterprise, Fox Rent A Car, Hertz, National or Thrifty for pick up at a California airport location from January 1, 2007 through November 14, 2007, and were charged and paid an ACF and/or TCA as a separate line item on their invoice to one of those companies.

## 6. Are there exceptions to being included in the settlement?

Yes. Rentals from non-corporate owned airport locations, rentals made as part of a pre-existing agreement with a business or governmental body according to which the rental charge was determined, and rentals where the customer paid a package price to a tour operator or online booking agency (such as Priceline or Hotwire) are not included in the Class and are not entitled to cash payments or vouchers from this settlement.

Rentals made at California airport licensee locations are not included in the settlement. A list of the licensee locations is available at www.ACFTCAsettlement.com.

QUESTIONS? CALL 1-800-000-0000 TOLL FREE OR VISIT WWW.ACFTCASETTLEMENT.COM

**7. What if I am still not sure if I am included?**

Visit www.ACFTCAsettlement.com, call 1-800-000-0000 or write to ACF/TCA Settlement Administrator, c/o KCC LLC, PO Box 0000, City, ST 00000-0000 for more information.

## THE SETTLEMENT BENEFITS—WHAT YOU CAN GET

**8. What does the settlement provide?**

The settlement provides the option of a cash payment or voucher from each Rental Car Defendant that the Class Member rented a vehicle from, at a California airport location, between January 1, 2007 and November 14, 2007, and paid an ACF and/or TCA as a separate line item on their invoice. The benefit options are based on the total number of days each vehicle was rented. Benefit options are:

| Total number of rental days (from 1/1/07 to 11/14/07) | Option | Description |
|---|---|---|
| Any | Cash | $2 per day ($5 minimum payment) |
| Less than eight | One—One Day Voucher | one voucher good for free time and mileage for <u>one</u> rental day |
| Eight or more | Two—One Day Vouchers | two vouchers, each good for free time and mileage for <u>one</u> rental day; or |
| | One—Two Day Voucher | one voucher good for free time and mileage for <u>two</u> rental days |

Rental days for vehicles rented from Avis or Budget may be combined when selecting benefit options.

**9. Tell me more about the vouchers.**

Vouchers:

- will be issued in the brand name of each of the rental car companies that charged the Class Member an ACF and/or TCA (Avis and Budget will issue vouchers as Avis/Budget);
- will be printed with the name and address of the Class Member and may be redeemed only by the Class Member or someone living in the same household at the same address;
- cannot be transferred or reassigned to a different person;
- may be used for the rental of a compact, midsize (intermediate), standard, or full size car class of vehicle;
- are valid with applicable daily, weekly and other multi-daily rates and can be used with most other rate discounts the renter may be eligible for;
- will expire 18 months after the date of issue;
- are for time and mileage charges only and do not include one-way or drop charges, taxes, fees, charges, insurance and any optional products; and
- may be redeemed at the brand of any of the issuing rental car company's U.S. corporate-owned locations (Avis/Budget vouchers may be redeemed at an Avis or Budget U.S. corporate-owned location), but not at Independent Licensed Locations.

Please note that there is a relatively small list of Independent Licensed Locations where the vouchers may not be redeemed, which will be available at www.ACFTCAsettlement.com.

## How to Get Benefits—Submitting an Election of Benefits Form

**10. How can I get a cash payment or voucher?**

To get a cash payment or voucher you must submit an Election of Benefits Form. You can complete and submit your form online at www.ACFTCAsettlement.com, or by mail. You may also print a form from the website or request one by calling 1-800-000-0000 or by sending a letter by mail to the claims administrator. You must complete and submit your Election of Benefits Form online or mail it so it is postmarked no later than **Month 00, 2012**. If you received a postcard in the mail or notice by email, you can use the Election of Benefits ID# provided on the front of the card or at the top of the email to access your rental records and submit your election of benefits online.

**11. When will I get my cash payment or voucher?**

The Court will hold a hearing on Month 00, 2012, to decide whether to approve the settlement. If Judge Anello approves the settlement, there may be appeals. It is always uncertain whether the appeals can be resolved and resolving them can take time. Cash payments will be made and vouchers will be issued only after the Court grants approval of the settlement and any appeals are resolved. Please be patient.

If you change your mailing or email address before settlement benefits are issued, you should update your information online at www.ACFTCAsettlement.com or by sending a letter to the ACF/TCA Administrator to ensure you receive your cash payment or voucher. Remember, vouchers will be printed with the address the Administrator has on file, so it is important that you update your mailing address if it changes before the settlement benefits are distributed.

**12. What rights am I giving up to get a cash payment or voucher and stay in the Class?**

Unless you exclude yourself, you are staying in the Class. If the settlement is approved and becomes final, all of the Court's orders will apply to you and legally bind you. This means you won't be able to sue, continue to sue, or be part of any other lawsuit against the Defendants for any claim asserted in this lawsuit or released by this settlement. The specific rights you are giving up are called Released Claims. The Released Claims are described in detail in section 6 of the Stipulation of Settlement which is available at www.ACFTCAsettlement.com.

## Excluding Yourself from the Settlement

If you want to keep the right to sue or continue to sue the Defendants about the claims released by this settlement, you must take steps to get out of the settlement. This is called excluding yourself or is sometimes called opting out of the settlement Class.

**13. How do I get out of the settlement?**

To exclude yourself from the settlement, you must send a letter by mail saying that you want to be excluded from *Shames v. The Hertz Corporation*, Case No. 07cv2174-MMA. Be sure to include your name, address, telephone number, and signature. You must mail your exclusion request so that it is postmarked by **Month 00, 2012**, to: ACF/TCA Settlement Exclusions, c/o KCC LLC, PO Box 0000, City, ST 00000-0000.

**14. If I exclude myself, will I still get a cash payment or voucher from this settlement?**

No. If you exclude yourself, you are telling the Court that you don't want to be part of the Class in this settlement. You can only get a cash payment or voucher if you stay in the Class, submit an Election of Benefits Form, and the settlement is approved by the Court and becomes final.

**15. If I don't exclude myself, can I sue the Defendants for the same claims later?**

No. Unless you exclude yourself, you are giving up the right to sue the Defendants for the claims that this settlement resolves. You must exclude yourself from *this* Class to start or continue with your own lawsuit or be part of any other lawsuit.

Questions? Call 1-800-000-0000 toll free or visit www.ACFTCAsettlement.com

-5-

## THE LAWYERS REPRESENTING YOU

### 16. Do I have a lawyer in this case?

Yes. The Court appointed Dennis Stewart of Hulett Harper Stewart LLP and Donald G. Rez of Sullivan Hill Lewin Rez & Engel to represent you and other Class Members. Together, these lawyers are called Class Counsel. You will not be charged for these lawyers. If you want to be represented by your own lawyer, you may hire one at your own expense.

### 17. How will the lawyers be paid?

Class Counsel has not been paid for their work on this case. They will ask the Court to approve a payment of attorneys' fees and expenses of up to $5,870,000. They will also ask for a payment of $2,000 to be paid to the Class Representative for his help on behalf of the entire Class. If approved, these fees, costs, expenses and payments will be paid separately by the Defendants and will not reduce the amount of cash or vouchers available to Class Members.

## OBJECTING TO THE SETTLEMENT

You can tell the Court if you don't agree with the settlement or any part of it.

### 18. How do I tell the Court if I don't like the settlement?

If you're a Class Member, you can object to the settlement. You can give reasons why you think the Court should not approve it. The Court will have the opportunity to consider your views before making a decision. To object, you must send a letter stating that you object to the settlement in *Shames v. The Hertz Corporation*, Case No. 07cv2174-MMA. Be sure to include your name, address, telephone number, signature and the reasons why you object to the settlement. Mail your objection to each of the addresses below so that it is postmarked by **Month 00, 2012**.

| Clerk of the Court | Class Counsel | Defense Counsel |
|---|---|---|
| U.S. District Court Southern District of California 940 Front Street San Diego, CA 92101-8900 | Donald G. Rez Sullivan Hill Lewin Rez & Engel 550 West C Street, 15th Floor San Diego, CA 92101 | Michael F. Tubach O'Melveny & Myers LLP Two Embarcadero Center, 28th Floor San Francisco, CA 94111 |

### 19. What's the difference between objecting to the settlement and excluding myself from it?

Objecting is simply telling the Court that you don't like something about the settlement. You can object only if you stay in the Class (meaning you do not exclude yourself). Excluding yourself is telling the Court that you don't want to be part of the Class. If you exclude yourself, you cannot object because the case no longer affects you.

## THE COURT'S FAIRNESS HEARING

The Court will hold a hearing to decide whether to approve the settlement. You may attend and you may ask to speak, but you don't have to.

### 20. When and where will the Court decide whether to approve the settlement?

The Court will hold a Fairness Hearing at _:__ _.m. on ___day, **Month 00, 2012**, at the United States District Court, Southern District of California, 940 Front Street, San Diego, CA 92101-8900. At this hearing, the Court will consider whether the settlement is fair, reasonable, and adequate. If there are objections, the Court will consider them. Judge Anello will listen to people who have asked to speak at the hearing (*see* Question 21). The Court may also decide whether to approve the agreed upon fees, cost and expense. After the hearing, the Court will decide whether to approve the settlement. We do not know how long these decisions will take.

**21. Do I have to come to the hearing?**

No. Class Counsel will answer any questions the Judge may have. But, you are welcome to come at your own expense. If you send an objection, you don't have to come to Court to talk about it. As long as you mailed your written objection on time, the Court will consider it. You may also pay your own lawyer to attend, but it's not necessary.

**22. May I speak at the hearing?**

Yes. You may ask the Court for permission to speak at the Fairness Hearing. To do so, you must send a letter saying that it is your "Notice of Intention to Appear in *Shames v. The Hertz Corporation*, Case No. 07cv2174-MMA." Be sure to include your name, address, telephone number, and signature. Your letter must be postmarked by **Month 00, 2012**, and sent to the addresses in Question 18.

## IF YOU DO NOTHING

**23. What happens if I do nothing at all?**

If you do nothing you won't get a cash payment or voucher from this settlement. You will also be giving up your right to start a lawsuit, continue with a lawsuit, or be part of any other lawsuit against the Defendants about any of the claims asserted in this lawsuit or released by this settlement, ever again.

## GETTING MORE INFORMATION

**24. Are there more details about the settlement?**

This notice summarizes the proposed settlement. More details are in the Stipulation of Settlement. You can get a copy of the Stipulation of Settlement by visiting www.ACFTCAsettlement.com.

**25. How do I get more information?**

You can call 1-000-000-0000 toll free; write to ACF/TCA Settlement Administrator, c/o KCC LLC, PO Box 0000, City, ST 00000-0000; or visit the website at www.ACFTCAsettlement.com.

DATE: Month 00, 0000

QUESTIONS? CALL **1-800-000-0000** TOLL FREE OR VISIT WWW.ACFTCASETTLEMENT.COM

# Exhibit 6a

THE FRONT AND BACK OF THIS DOCUMENT CONTAINS SECURITY FEATURES.



**One Free Rental Day**

This coupon may be redeemed for one free rental day of an economy through full size car at participating Avis or Budget corporate locations in the U.S., subject to the terms and conditions on the reverse side.  When making your reservation, please call Avis at 1-800-831-8000 or Budget at 1-800-527-0700 or visit www.avis.com or www.budget.com and include the coupon # listed below. Coupon must be surrendered to Avis or Budget upon redemption.

**Coupon #:  XXXXXXX**

**Offer expires:  XXX**                                        John Doe

Please see reverse side for important terms and conditions.          Street Name, City, State XXXXX

THE BACK OF THIS DOCUMENT CONTAINS A WATERMARK - HOLD AT ANGLE TO VIEW

Terms and Conditions:

Subject to availability, this coupon is redeemable at Avis or Budget corporate locations in the U.S.  Advance reservations are recommended to assure availability.  Modifying your reservation may result in a change in your rate and/or invalidate this offer.  Present this coupon and receive 1 rental day (time and mileage only) of an Economy (group A) through Full Size (group E) car for free.  This coupon may be used in conjunction with a longer rental, but may not be used with Pre-paid Rentals or Insurance Replacement Rentals and will not be replaced if lost or stolen.  This coupon must be presented and surrendered at the time of rental and may be used only by a person with a valid photo driver's license that reflects either (a) the name as printed on this coupon or (b) the same address as printed on this coupon.

A rental day is considered each period for which a one-day rental time charge is paid.  Additional hour charges for periods of less than one day cannot be combined to equal a day.  Coupon cannot be applied to a completed rental.  No refund or credit will be given when a coupon is used for a rental of less than 24 hours or towards hourly charges.  Certificates (with the same coupon number) can be combined for one rental transaction.

Altered or photocopied coupons will not be honored.  Avis or Budget age, driver, credit, and rental conditions and qualifying rate restrictions for the renting location apply.  Free rental day coupon applied to time and mileage charges only; the cost of optional Loss Damage Waiver, Personal Accident & Effects Insurance, Emergency Sickness Protection, Supplemental Liability Insurance, taxes, governmental surcharges, tourism commission fees, taxes, tax reimbursement, airport related fees and optional items (such as refueling, additional driver fees, one-way drop fees, insurance, loss damage waiver) are extra.  All cars are subject to availability. .  Valid for vehicle pick-up before expiration date.

**Coupon #:  XXXXXXX**

**Rental Sales Agent Instructions**
**At CHECKOUT:**

• In CPN enter Coupon #:  XXXXXX
• Complete this information:
RA #: _____
Rental Location: _____
• Attach to COUPON tape

THE FRONT AND BACK OF THIS DOCUMENT CONTAINS SECURITY FEATURES.



**Two Free Rental Days**

This coupon may be redeemed for two free rental days of an economy through full size car at participating Avis or Budget corporate locations in the U.S., subject to the terms and conditions on the reverse side.  When making your reservation, please call Avis at 1-800-831-8000 or Budget at 1-800-527-0700 or visit www.avis.com or www.budget.com and include the coupon # listed below. Coupon must be surrendered to Avis or Budget upon redemption.

**Coupon #:  XXXXXXX**

**Offer expires:  XXX**                                              John Doe

Please see reverse side for important terms and conditions.          Street Name, City, State XXXXX

THE BACK OF THIS DOCUMENT CONTAINS A WATERMARK - HOLD AT ANGLE TO VIEW

Terms and Conditions:

Subject to availability, this coupon is redeemable at Avis or Budget corporate locations in the U.S.  Advance reservations are recommended to assure availability.  Modifying your reservation may result in a change in your rate and/or invalidate this offer.  Present this coupon and receive 2 rental days (time and mileage only) of an Economy (group A) through Full Size (group E) car for free.  This coupon may be used in conjunction with a longer rental, but may not be used with Pre-paid Rentals or Insurance Replacement Rentals and will not be replaced if lost or stolen.  This coupon must be presented and surrendered at the time of rental and may be used only by a person with a valid photo driver's license that reflects either (a) the name as printed on this coupon or (b) the same address as printed on this coupon.

A rental day is considered each period for which a one-day rental time charge is paid.  Additional hour charges for periods of less than one day cannot be combined to equal a day.  Coupon cannot be applied to a completed rental.  No refund or credit will be given when a coupon is used for a rental of less than 24 hours or towards hourly charges.  Two-day vouchers cannot be combined with one-day vouchers.

Altered or photocopied coupons will not be honored.  Avis or Budget age, driver, credit, and rental conditions and qualifying rate restrictions for the renting location apply.  Free rental day coupon applied to time and mileage charges only; the cost of optional Loss Damage Waiver, Personal Accident & Effects Insurance, Emergency Sickness Protection, Supplemental Liability Insurance, taxes, governmental surcharges, tourism commission fees, taxes, tax reimbursement, airport related fees and optional items (such as refueling, additional driver fees, one-way drop fees, insurance, loss damage waiver) are extra.  All cars are subject to availability.  Valid for vehicle pick-up before expiration date.

**Coupon #:  XXXXXXX**


**Rental Sales Agent Instructions**
**At CHECKOUT:**

• In CPN enter Coupon #:  XXXXXX
• Complete this information:
RA #: _____
Rental Location: _____
• Attach to COUPON tape

# Exhibit 6b



## One Free Rental Day

This voucher may be redeemed for one free rental day of an economy through full size car at Dollar corporate locations in the U.S., subject to the terms and conditions on the reverse side. When making your reservation, please call Dollar at 1-800-800-4000 or visit dollar.com and enter the Promo Code # listed below. You must retain this voucher and surrender it to Dollar upon redemption.

**Promo Code #: XXXXX**
**Expiration Date: XXX**

John Doe
Street Name, City, MA 02481

Please see reverse side for important terms and conditions

FOR LOCATION USE ONLY

RA #: _____          Redeeming Location: _____

Ref #: _____          Dept #: _____

**Terms and Conditions:**

Subject to availability, this voucher is redeemable at Dollar corporate locations in the U.S.  The Promo Code is not valid at any Independent Licensed Locations. Advance reservations recommended to assure availability. Modifying your reservation may result in a change in your rate and/or invalidate this offer. Present this voucher and receive 1 rental day (time and mileage only) of an Economy through Full Size car for free. This voucher may be used in conjunction with a longer rental, but may not be used with Pre-paid Rentals and will not be replaced if lost or stolen. This voucher must be presented and surrendered at the time of rental and may be redeemed only by a person with a valid photo driver's license that reflects either:  (a) the name as printed on this voucher; or (b) the same address as printed on the voucher.

A rental day is considered each period for which a one-day rental time charge is paid. Additional hour charges for periods of less than one day cannot be combined to equal a day. Voucher cannot be applied to a completed rental. No refund or credit will apply for early vehicle returns.  This voucher can be used with other rate discounts for which the renter is otherwise eligible.

Altered or copied vouchers will not be honored. Dollar age, driver, credit, and qualifying rate requirements for the renting location apply. Free rental day voucher applied to time and mileage charges only; governmental surcharges, taxes, tax reimbursement, airport related fees and optional items (such as refueling, additional driver fees, one-way drop fees, insurance, loss damage waiver) are extra. All cars are subject to availability. Car must be returned to the original location of rental, except for One-Way rental redemptions (additional charges may apply for one-way rentals). Valid for vehicle pick-up before expiration date.

**Promo Code # XXXXX**

**Expiration Date: XXX**

**ROC Rental Agent Instructions:** This is a coupon required program. Collect and void coupon at time of rental.

Open RA and proceed to payments tab.

Select "special documents"

Select "Promo"

Enter document code "CA07"

Enter total $ amount of coupon.

®2012 Dollar Rent A Car, Inc.  All rights reserved.  Dollar features a wide selection of quality vehicles.



# Exhibit 6c



## One Free Rental Day

This voucher may be redeemed for one free rental day of an economy through full size car at Thrifty corporate locations in the U.S., subject to the terms and conditions on the reverse side. When making your reservation, please call Thrifty at 1-800-THRIFTY or visit thrifty.com and enter the Promo Code # listed below. You must retain this voucher and surrender it to Thrifty upon redemption.

**Promo Code #: XXXXX**
**Expiration Date: XXX**

John Doe
Street Name, City, MA 02481

Please see reverse side for important terms and conditions

FOR LOCATION USE ONLY

RA #: _____          Redeeming Location: _____

Ref #: _____          Dept #: _____

**Terms and Conditions:**

Subject to availability, this voucher is redeemable at Thrifty corporate locations in the U.S.  The Promo Code is not valid at any Independent Licensed Locations. Advance reservations recommended to assure availability. Modifying your reservation may result in a change in your rate and/or invalidate this offer. Present this voucher and receive 1 rental day (time and mileage only) of an Economy through Full Size car for free. This voucher may be used in conjunction with a longer rental, but may not be used with Pre-paid Rentals and will not be replaced if lost or stolen. This voucher must be presented and surrendered at the time of rental and may be redeemed only by a person with a valid photo driver's license that reflects either:  (a) the name as printed on this voucher; or (b) the same address as printed on the voucher.

A rental day is considered each period for which a one-day rental time charge is paid. Additional hour charges for periods of less than one day cannot be combined to equal a day. Voucher cannot be applied to a completed rental. No refund or credit will apply for early vehicle returns.  This voucher can be used with other rate discounts for which the renter is otherwise eligible.

Altered or copied vouchers will not be honored. Thrifty age, driver, credit, and qualifying rate requirements for the renting location apply. Free rental day voucher applied to time and mileage charges only; governmental surcharges, taxes, tax reimbursement, airport related fees and optional items (such as refueling, additional driver fees, one-way drop fees, insurance, loss damage waiver) are extra. All cars are subject to availability. Car must be returned to the original location of rental, except for One-Way rental redemptions (additional charges may apply for one-way rentals). Valid for vehicle pick-up before expiration date.

**Promo Code # XXXXX**

**Expiration Date: XXX**

**ROC Rental Agent Instructions:** This is a coupon required program. Collect and void coupon at time of rental.

Open RA and proceed to payments tab.

Select "special documents"

Select "Promo"

Enter document code "CA07"

Enter total $ amount of coupon.

©2012 Thrifty Rent-A-Car System, Inc.  All rights reserved.
Thrifty features a wide selection of quality vehicles.



# Exhibit 6d

[Enterprise Rent-A-Car logo]

[Date]

[Class member name]
[Class member address]
[Certificate registration number]

Dear Customer,

We are pleased to present you with this Certificate which can be used for free time and mileage for one rental day on a rental from any U.S. location of Enterprise Rent-A-Car.  This Certificate is being sent to you as part of the settlement of the lawsuit *Shames, et al. v. The Hertz Corporation, et al.*  This Certificate must be used on a rental that begins on or before [date that is 18 months after the date of the letter].

This Certificate may not be transferred except to a member of your household who lives at the address shown above, as reflected on their driver's license.  Other restrictions apply.  **Please see the Certificate below for complete terms and conditions**.

Reservations are recommended to assure availability.  Call 1-800-Rent-A-Car for a complete listing of locations or to make a reservation.  Mention customer number [insert code number].  Your discount will be applied at the time of rental.  **The original of this Certificate must be presented at the close of the transaction**.

When you use the Certificate, you may still enjoy free door-to-door pickup and free drop-off service near one of our rental locations during normal business hours.

Very truly yours,

Enterprise Rent-A-Car

-----------------------------------------------------------------------------------------------------------------------------------------

[Class member name]
[Class member address]
[Certificate registration number]

**Free Time and Mileage Charges for One Free Rental Day**

**Enjoy free time and mileage charges for one rental day on the rental of an economy, compact, intermediate, standard, or full size vehicle from Enterprise in the United States that begins on or before [18 months after the date of the letter].  This certificate may be used in conjunction with other discounts.  Normal rental qualifications will apply.**

**Call 1-800-Rent-A-Car and reference customer number [insert code number].**

**Terms and Conditions:**  Valid at all U.S. Enterprise Rent-A-Car locations.  Call 1-800-Rent-A-Car for a complete list of locations.  Rental must begin on or before [date that is 18 months after the date of the letter].  Certificate applies to time and mileage charges only and does not apply to taxes, surcharges, airport access and related fees, excess mileage fees, one-way or drop charges, vehicle licensing fees, or optional products and services, including without limitation, refueling, additional driver or damage waiver charges.  Renter may be responsible for damage or loss of vehicle, so check your auto policy and/or credit card agreement for rental vehicle coverage.  Certificate may not be transferred except to a member of Customer's household living at the above address.  Original certificate must be presented at the close of the transaction.  Altered or copied certificates will not be accepted.  Certificate only applies to time and mileage charges paid by the renter.  Certificate has no cash value.  Normal rental qualifications apply.  Vehicles are subject to availability.  Pick-up and drop-off service is subject to geographic and other restrictions.

# Exhibit 6e

[Alamo Rent A Car logo]

[Date]

[Class member name]
[Class member address]
[Certificate registration number]

Dear Customer,

We are pleased to present you with this Certificate which can be used for free time and mileage for one rental day on a rental from any U.S. corporate-owned location of Alamo Rent A Car.  This Certificate is being sent to you as part of the settlement of the lawsuit *Shames, et al. v. The Hertz Corporation, et al.*  This Certificate must be used on a rental that begins on or before [date that is 18 months after the date of the letter].

This Certificate may not be transferred except to a member of your household who lives at the address shown above, as reflected on their driver's license.  Other restrictions apply.  **Please see the Certificate below for complete terms and conditions**.

Reservations are recommended to assure availability.  Call 1-800-Go-Alamo for a complete listing of locations or to make a reservation.  Mention reservation code [insert code number].  Your discount will be applied at the time of rental.  **The original of this Certificate must be presented at the close of the transaction**.

Very truly yours,

Alamo Rent A Car

----------------------------------------------------------------------------------------------------------------------------------
[Class member name]
[Class member address]
[Certificate registration number]

### Free Time and Mileage Charges for One Free Rental Day

**Enjoy free time and mileage charges for one rental day on the rental of an economy, compact, midsize, standard, or full size vehicle from Alamo in the United States that begins on or before [date that is 18 months after the date of the letter].  This certificate may be used in conjunction with other discounts.  Normal rental qualifications will apply.**

**Call 1-800-Go-Alamo and reference reservation code [insert code number].**

**Terms and Conditions:**  Valid at U.S. corporate-owned Alamo Rent A Car locations.  Call 1-800-Go-Alamo for a complete list of locations.  Rental must begin on or before [date that is 18 months after the date of the letter].  Certificate applies to time and mileage charges only and does not apply to taxes, surcharges, airport access and related fees, excess mileage fees, one-way or drop charges, vehicle licensing fees, or optional products and services including without limitation, refueling, additional driver or damage waiver charges.  Renter may be responsible for damage or loss of vehicle, so check your auto policy and/or credit card agreement for rental vehicle coverage.  Certificate may not be transferred except to a member of Customer's household living at the above address.  Original certificate must be presented at the close of the transaction.  Altered or copied certificates will not be accepted.  Certificate only applies to time and mileage charges paid by the renter.  Certificate has no cash value.  Normal rental qualifications apply.  Vehicles are subject to availability.

# Exhibit 6f

[National Car Rental logo]

[Date]

[Class member name]
[Class member address]
[Certificate registration number]

Dear Customer,

We are pleased to present you with this Certificate which can be used for free time and mileage for one rental day on a rental from any U.S. corporate-owned location of National Car Rental.  This Certificate is being sent to you as part of the settlement of the lawsuit *Shames, et al. v. The Hertz Corporation, et al.*  This Certificate must be used on a rental that begins on or before [date that is 18 months after the date of the letter].

This Certificate may not be transferred except to a member of your household who lives at the address shown above, as reflected on their driver's license.  Other restrictions apply.  **Please see the Certificate below for complete terms and conditions**.

Reservations are recommended to assure availability.  Call 1-800-Car-Rent for a complete listing of locations or to make a reservation.  Mention reservation code [insert code number].  Your discount will be applied at the time of rental.  **The original of this Certificate must be presented at the close of the transaction**.

Very truly yours,

National Car Rental

-------------------------------------------------------------------------------------------------------------------------------

[Class member name]
[Class member address]
[Certificate registration number]

**Free Time and Mileage Charges for One Free Rental Day**

**Enjoy free time and mileage charges for one rental day on the rental of an economy, compact, midsize, standard, or full size vehicle from National in the United States that begins on or before [date that is 18 months after the date of the letter].  This certificate may be used in conjunction with other discounts.  Normal rental qualifications will apply.**

**Call 1-800-Car-Rent and reference reservation code [insert code number].**

**Terms and Conditions:**  Valid at U.S. corporate-owned National Car Rental locations.  Call 1-800-Car-Rent for a complete list of locations.  Rental must begin on or before [date that is 18 months after the date of the letter].  Certificate applies to time and mileage charges only and does not apply to taxes, surcharges, airport access and related fees, excess mileage fees, one-way or drop charges, vehicle licensing fees, or optional products and services including without limitation, refueling, additional driver or damage waiver charges.  Renter may be responsible for damage or loss of vehicle, so check your auto policy and/or credit card agreement for rental vehicle coverage.  Certificate may not be transferred except to a member of Customer's household living at the above address.  Original certificate must be presented at the close of the transaction.  Altered or copied certificates will not be accepted.  Certificate only applies to time and mileage charges paid by the renter.  Certificate has no cash value.  Normal rental qualifications apply.  Vehicles are subject to availability.

# Exhibit 6g

**Front of Voucher**

# FOX RENT A CAR, INC.

## ONE FREE RENTAL DAY

This voucher may be redeemed for one free rental day of an economy through full size

car at **FOX** corporate locations in the U.S., subject to the terms and conditions on the

 reverse side. When making your reservation, please call **FOX** at **1-800-225-4369** or visit

us at **foxrentacar.com** and include the voucher number listed below. You must retain this

voucher and surrender it to **FOX** upon redemption.

**Voucher #: xxxxxx**

Offer expires:  XXXXXXXX                                John Doe

                                                        Street Address

                                                        City, State, Zipcode

**Back of Voucher**

Subject to availability, this voucher is redeemable at Fox corporate locations in the U.S. Advance reservations are recommended to ensure availability. Modifying your reservation may result in a change in your rate and/or invalidate this offer. Present this offer and receive 1 rental day (time and mileage only) of an Economy through Full Size car for free. This voucher may be used in conjunction with a longer rental, but may not be used with Pre-paid Rentals or Insurance Replacement Rentals and will not be replaced if lost or stolen. This voucher must be presented and surrendered a the time of rental and may be redeemed only by a person with a valid photo driver's license that reflects either (a) the name as printed on the voucher or (b) the same address as printed on the voucher.

A rental day is considered each period for which a one-day rental time charge is paid. Additional hour charges for periods of less than one day cannot be combined to equal a day. Voucher cannot be applied to a completed rental. No refund or credit will apply for early vehicle returns. This voucher cannot be combined with any other certificate, voucher, offer or promotion.

Altered or copied vouchers will not be honored. Fox's restrictions at the renting location for age, driver, credit and qualifying rates apply. The free rental day voucher applies to time and mileage charges only.  Extra charges apply for governmental surcharges,  taxes, tax reimbursements, airport related fees and optional items, such as refueling, additional driver fees, one-way drop-fees, insurance, and loss damage waivers. The car must be returned to the original location  of rental, except for One-Way rental redemptions. Valid for vehicle pick-up before redemption date.

Voucher #:              XXXXXX

Offer expires:          XXXXXXXX

FOX CSR:   Collect and void coupon at time of rental

# Exhibit 6h



# One Free Rental Day

This voucher may be redeemed for one free rental day of an economy through full size car at corporate locations in the U.S., subject to the terms and conditions on the reverse side. When making your reservation, please call Hertz at 1-800-654-2210 or visit [hertz.com](hertz.com) and include the PC# listed below. You must retain this voucher and surrender it to Hertz upon redemption.

**PC#: XXXXX**

**Offer expires: XXX**

Please see reverse side for important terms and conditions.

John Doe
Street Name, City, NJ 07123

**Terms and Conditions:**

Subject to availability, this voucher is redeemable at Hertz corporate locations in the U.S. Advance reservations recommended to assure availability. Modifying your reservation may result in a change in your rate and/or invalidate this offer. Present this voucher and receive 1 rental day (time and mileage only) of an Economy through Full Size car for free. This voucher may be used in conjunction with a longer rental, but may not be used with Pre-paid Rentals or Insurance Replacement Rentals and will not be replaced if lost or stolen. This voucher must be presented and surrendered at the time of rental and may be redeemed only by a person with a valid photo driver's license that reflects either (a) the name as printed on this voucher or (b) the same address as printed on the voucher.

A rental day is considered each period for which a one-day rental time charge is paid. Additional hour charges for periods of less than one day cannot be combined to equal a day. Voucher cannot be applied to a completed rental. No refund or credit will apply for early vehicle returns. Cannot be combined with any other certificate, voucher, offer or promotion. This voucher is valid with customer discount programs or CDPs (e.g., AAA rates).

Altered or copied vouchers will not be honored. Hertz age, driver, credit, and qualifying rate restrictions for the renting location apply. Free rental day voucher applied to time and mileage charges only; governmental surcharges, taxes, tax reimbursement, airport related fees and optional items (such as refueling, additional driver fees, one-way drop fees, insurance, loss damage waiver) are extra. All cars are subject to availability. Car must be returned to the original location of rental, except for One-Way rental redemptions. Valid for vehicle pick-up before expiration date.

**PC# XXXXX**

**Offer expires: XXX**

**Hertz CSR:** This is a coupon required program. Collect and void coupon at time of rental.

Hertz.com

® Reg. U.S. Pat. Off. © 2012 Hertz System, Inc.



# Exhibit B

# HULETT HARPER STEWART
## LLP

*525 B Street, Suite 760*
*San Diego, CA 92101*
*Tel: (619) 338-1133*
*Fax: (619) 338-1139*
*www.hulettharperstewart.com*

### *FIRM RESUME*

Hulett Harper Stewart LLP was established in July 2000 to provide quality representation to individual and corporate clients in the areas of complex business, securities, antitrust, consumer, and class litigation and arbitration. Our three partners bring to the firm more than 80 years of experience as counsel in numerous large, high-visibility cases.

The partners at Hulett Harper Stewart LLP have considerable experience acting as lead trial and principal counsel in numerous antitrust, securities and consumer class and individual actions. Hulett Harper Stewart has obtained a number of multi-million dollar verdicts and settlements for its individual and class clients, including a $127.5 million settlement with Edward Jones & Co. involving an alleged unlawful "revenue sharing" program; a $60 million settlement of a class action against A.G. Edwards for breach of fiduciary duty claims; a $336 million settlement with Visa, Mastercard and major credit card issuing banks relating to foreign currency conversion practices; a $30 million settlement in *Stenovich v. Eccles*, a breach of fiduciary duty class action challenging the fairness of a bank acquisition; an $11 million settlement after trial commenced in an action by a bankruptcy trustee against a debtor's former outside auditors; a full recovery for an elderly individual who lost over $40 million as part of what was then Wall Street's largest single-broker fraud in history; and a $22.5 million settlement for individual clients from WorldCom and the officers and directors of a WorldCom controlled company. The firm also played substantial roles in the successful prosecution of class securities fraud actions against Broadcom, Inc., which was settled for $150 million on the eve of trial, and against Quest Software, which was settled for $29.4 million.

The key strengths of our firm include:

> **Attorney Experience** – Our partners have decades of collective practice in significant complex litigation, arbitration and class action representation, and have been recognized for diligence, energy, skill and imagination.

> **Case Success** – As lead or co-lead counsel, we have both litigated cases to verdict and secured or participated in securing hundred of millions of dollars in class action and other settlements in both the courts and in arbitration.

> **Client Focus** – Actions we have brought have benefited businesses, classes of consumers, investors and employees – and addressed financial fraud and anticompetitive market practices.

> **Practice Depth** – Our litigation practice combines a solid understanding of antitrust law, consumer and investor protection and corporate governance.

Our mission is to provide high quality legal services and personal attention to our clients in a select number of cases.  We place our clients' interests first and employ legal strategies designed to achieve for them the most favorable outcome possible.

Here is a sample of some of the results we have achieved and significant cases in which we are currently involved:

*Currency Conversion Cases:*

In *Schwartz v. Visa*, Dennis Stewart was principal trial counsel in a California consumer action seeking to recover inadequately disclosed currency conversion fees charged by Visa and MasterCard.  After a six-month trial, judgments worth hundreds of millions of dollars were entered.  Hulett Harper Stewart was also one of the principal counsel for certified classes prosecuting a separate federal court case in New York.

A $336 million dollar settlement was reached.  A similar nationwide consumer class action against American Express also litigated by Hulett Harper Stewart was successfully resolved, resulting in a settlement of $75 million.

***Enriquez v. Edward D. Jones & Co.***
**(St. Louis City Circuit Court, Missouri):**

Hulett Harper Stewart was co-lead class counsel against Edward Jones & Co., one of the largest brokerage firms in the United States in a case which sought the recovery of funds Edward Jones received from mutual funds in exchange for Edward Jones agreeing to recommend those funds as its "preferred funds."  A settlement of $127 million was achieved.

***In re Broadcom Corp. Securities Litigation***
**(C.D. Cal.):**

Hulett Harper Stewart played a significant role in the prosecution of this large federal securities class action, which settled within weeks of trial for $150 million.

***Bachman v. A.G. Edwards, Inc.***
**(St. Louis Circuit Court, Missouri)**

Hulett Harper Stewart was co-lead counsel on behalf of a class of persons who maintained brokerage accounts at A.G. Edwards in a case which claimed that the Defendant breached their fiduciary duties by receiving payments from mutual fund companies whose fund shares were held by the Class.  A proposed settlement of $60 million was reached and is awaiting Court approval.

***In re Conseco Life Insurance Company Cost of Insurance Litigation***
**(C.D. Cal.):**

Hulett Harper Stewart represented lead-plaintiff and former U.S. Senator Jake Garn and other life insurance policy holders and was on the executive committee prosecuting this nationwide consumer class action.  A settlement valued at more than $300 million was obtained.

*Stenovich v. Eccles*
**(3d Dist. Utah):**

The firm represented a class of shareholders in asserting breach of fiduciary duty claims in connection with a proposed merger, which were settled within days of trial for nearly $30 million.

*Guy F. Atkinson, Inc. v. PricewaterhouseCoopers LLP*
**(N.D. Cal.):**

The firm was co-lead trial counsel on behalf of one of the then largest construction companies in America.  The case was successfully settled for $11 million after trial commenced.

*Abbott, et al. v. John D. ("Jack") Phillips, et al.*
**(San Francisco Superior Court):**

The firm represented several individuals in a securities fraud action against World Access and Worldcom.  A settlement of $22.5 million was achieved.

*Middlesex Retirement System v. Quest Software, Inc.*
**(C.D. Cal.):**

Hulett Harper Stewart was liaison counsel in this securities class action alleging improper backdating of stock option grants.  The case was settled for $29.4 million.

These are some of our current cases:

*In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*
**(E.D.N.Y.)**

Hulett Harper Stewart is one of the counsel working closely with co-lead counsel prosecuting litigation on behalf of a nationwide class of merchants alleging antitrust violations against Visa, MasterCard and affiliated banks involving interchange fee and related practices.

*In re DirecTV Early Cancellation Fee Litigation*
**(C.D. Cal.):**

Hulett Harper Stewart is interim lead counsel in this multi-district consumer protection litigation alleging violation of various state consumer protection laws.

*FDIC*

Hulett Harper Stewart is currently counsel for the Federal Deposit Insurance Corporation with respect to potential claims arising from the failure of multiple separate banking entities.

**BLAKE MUIR HARPER** graduated from the University of Utah College of Law in 1981, where he served as Executive Editor of the Utah Law Review and received an award in a national legal writing competition.  He then served as law clerk to the Honorable David K. Winder, U.S. District Judge for the District of Utah. Mr. Harper has directed as lead class

counsel prosecution of numerous securities and consumer actions throughout the United States, including *Stenovich v. Eccles* (3d Dist. Ct. Utah) (settled for $30 million); *In re L.A. Gear Sec. Litig.* (C.D. Cal.) (settled for more than $50 million); *In re Genentech Sec. Litig.* (N.D. Cal.) (settled for $29 million); *In re Bonneville Pacific Securities Litigation* (D. Utah) (settled for $25 million); *In re Network Equipment Technologies Sec. Litig.* (N.D. Cal.) (settled for cash and securities valued in excess of $23 million); *Cytryn v. Cook* , (N.D. Cal.) (settled for $19.5 million). He has also obtained a $2 million settlement in an individual investor arbitration. Mr. Harper was one of the trial counsel in *In re Apple Computer Sec. Litig.*, No. C-84-20198(A)-JW (N.D. Cal.), where in 1991 a jury verdict was obtained against two corporate officers in a case where damages exceeded $100 million. He played a significant role in prosecuting *In re Broadcom Securities Litigation,* No. SACV 01-275 (GLT) (MLGx) (C.D. Cal.) settled for $150 million and *Middlesex Retirement System v. Quest Software* (C.D. Cal.), settled for $29.4 million. He has taught at PLI and Lorman seminars on topics of accountant liability and civil procedure.

**KIRK B. HULETT** graduated from the University of California San Diego in 1978. Mr. Hulett graduated *cum laude* from the University of San Diego School of Law in 1983, where he was Managing Editor of the University of San Diego Law Reporter. Since 1984, Mr. Hulett has specialized in the representation of plaintiffs in securities and consumer class actions, participating as lead or co-lead counsel in dozens of class actions throughout the country, including *Lincoln Savings* (D. Az.); *Media Vision* (N.D. Cal.); *Home Fed* (S.D. Cal.); and *Gensia Pharmaceuticals* (S.D. Cal.). After a nearly six-month trial in *Lincoln Savings* case, the jury returned a verdict exceeding $250 million. Mr. Hulett was co-lead trial counsel in a multimillion dollar auditor liability action against *PriceWaterhouseCoopers, LLP* and was lead counsel on behalf of a class against Edward Jones & Company, which recently settled for $127.5 million. He testified before the California Assembly Business and Professions Committee on the topic of potential regulatory and auditor liability reforms following the Enron financial collapse.

**DENNIS STEWART** received his Bachelor of Arts from the College of the Holy Cross in 1976 and his Juris Doctor with distinction from Hofstra University in 1981, where he was a member of the Law Review. Between 1981 and 1985 he worked for a major San Diego law firm and engaged in general commercial litigation practice. Between 1985 and 1988, Mr. Stewart served as a trial attorney with the Antitrust Division of the United States Department of Justice. While at the Antitrust Division, Mr. Stewart participated in investigations and trials involving alleged criminal violations of the antitrust and related laws and was lead counsel in the successful prosecution through trial of *United States v. Saft America, Inc.,* No. CD88-99(DRD) (D.N.J.). Mr. Stewart has served as lead counsel, principal counsel and/or trial counsel in numerous antitrust, consumer and securities cases. He was lead trial counsel in *Knapp v. Ernst & Whinney,* 90 F.3d 1431 (9th Cir. 1996), in which a plaintiffs' verdict was returned in a Rule 10b-5 securities fraud class action, and *Hall v. NCAA,* No. 94-2392-KHV (D. Kan.), in which a plaintiffs' verdict of $30 million was returned in an antitrust class action. He also served as co-lead trial counsel in *In re Airline Ticket Commission Antitrust Litigation*, MDL 1058, an antitrust class action which settled for $85 million, *In re Contact Lens Antitrust Litigation*, which settled for $90 million, and in *In re Lifescan Consumer Litigation*, a consumer class action which settled for $45 million. He has served as co-lead counsel in the *Carbon Fiber Antitrust Litigation* which resulted in a pre-trial settlement of $67.5 million and in the *In re Currency Conversion Litigation*, and trial counsel in *Schwartz v. Visa*. He also played a significant role in prosecuting *In re Broadcom Securities Litigation,* No. SACV 01-275 (GLT) (MLGx ) (C.D. Cal.), settled for $150 million. He is a member of the California and New York bars and continues to specialize in antitrust, consumer and other complex litigation. He has served on the Executive Committee

4

of the State Bar of California Antitrust and Unfair Competition Section and of the Association of Business Trial Lawyers and has lectured on antitrust and class action topics for the Practicing Law Institute, The American Bar Association Antitrust Section and the California State Bar Antitrust and Trade Regulation Section.

# Exhibit C



**Sullivan Hill Lewin Rez & Engel**
A Professional Law Corporation

sullivanhill.com



**Our Firm**

At Sullivan Hill, we understand the importance of providing efficient, aggressive and responsive legal representation. For more than 40 years, this understanding has enabled us to provide the best, most cost-effective service and solutions available to all of our clients.

Our firm is centrally focused on business and trial law, with complementary practice areas enabling us to provide full service representation to clients in a variety of industries, including real estate, insurance, retail, biotechnology and venture capital. The strength of our legal abilities comes from decades of hard work and experience, and from a supportive management style that rewards teamwork and attracts the most talented attorneys. Whether a small business or a Fortune 500 company, each of our clients is important to us and receives our undivided attention, our best resources and superlative service.

In addition to our main office in San Diego, we have an active practice in Las Vegas, Nevada, one of the fastest growing metropolitan areas in the country, with several lawyers licensed to practice in Nevada. The firm is also a member of an international affiliation of business and commercial law firms called Meritas, which allows us to assist our clients both locally and globally. No matter where your business is based, we have the expertise and the resources to serve you.



**About Meritas**

Sullivan Hill is the San Diego, California affiliate of Meritas, an international affiliation of independent business and commercial law firms which offers clients the ability to access top-notch legal talent and service worldwide. Membership in the organization is by invitation only, and law firms must adhere to specific service standards and other strict requirements in order to maintain membership.

The firm serves as the gateway to Meritas' worldwide service, which represents client interests from San Diego to Europe, provides counsel from Moscow to Malaysia, and taps into legal specialists from Tennessee to Turkey. Through Meritas, our clients have the comfort of knowing that their legal work will be handled reliably, cost effectively and consistently, whether that work needs to be done in San Diego, or halfway around the world.

For more information on Meritas, please visit their website.



**Practice Areas**

From Appellate Law to Real Estate, and Tax Planning to Antitrust Litigation, our practice groups provide a wide range of services that address clients' individual and business needs. The firm's complementary practices support a diverse and sophisticated clientele, including multinational corporations, private companies, business enterprises and individuals.

As a firm, we pride ourselves on our ability to work together as integrated multidisciplinary teams together with our clients. We share with our clients a dynamic drive and spirit and take pride in what we accomplish together.

Antitrust and Trade Regulation

Appellate

Business Transactions

Commercial and Business Litigation

Construction Law

Elder Abuse

Eminent Domain

Employment Law

Environmental Law

Estate Disputes and Litigation

Insolvency and Commercial Bankruptcy

Insurance

International Business

Personal Injury and Consumer Law

Real Estate

Real Estate Litigation

Tax Planning and Controversies

Trust and Estate Planning

White Collar Criminal Defense

**Industry Focus Areas**

In today's turbulent climate, businesses across all industry sectors must constantly reevaluate, reinvent and streamline to stay competitive within their market. Our attorneys understand that need and have the experience specific to each sector to effectively counsel businesses through every aspect of their legal needs.

Agriculture and Farming

Banking and Finance

Construction

Defense Contracting

Grocery

Manufacturing

Municipalities and Government Entities

Real Estate and Land Use

Retail and Consumer Products and Services



**Donald G. Rez - Shareholder**

**DIRECT** 619.595.3239   **EMAIL** rez@sullivanhill.com



Mr. Rez, a shareholder of the firm, has handled all types of commercial lawsuits, including cases involving trade regulation and antitrust; breach of contract; franchisor/franchisee issues; lender liability cases; professional malpractice; and intellectual property. He has been involved in complex multi-district litigation, and his antitrust experience has involved claims of virtually every kind. He has represented such diverse clients as the San Diego Clippers, Exxon, Fotomat, Mashburn Sanitation and Recycling (see City of San Marcos v. Coast Waste Mgmt, Inc., 54 Cal Rptr 2d 588 (1996)), Nevada Bob's Pro Shop, Inc., and Orlimar Golf Co.

Mr. Rez is a co-author of California Pretrial Practice & Forms (James Publishing Co.), a landmark treatise on civil procedure before trial. He has written extensively and has published articles in various legal journals, has co-authored articles for the American Bar Association's Forum Committee on Franchising, and has co-edited issues of the ABA's Antitrust Law Journal.

Mr. Rez is the Co-Chairman of the Civil Litigation section of the San Diego County Bar Association for 2012.

A member of the ABA and a Fellow of the American Bar Foundation, Mr. Rez has also served as an adjunct professor at California Western School of Law and on the faculty at the National Institute for Trial Advocacy.

Mr. Rez was an Editor of the Harvard Environmental Law Review, and was one of the U.S. District Court for the Southern District of California Lawyer Representatives to the Ninth Circuit Judicial Conference. He is currently on the Board of Visitors of the University of San Diego School of Law.

Mr. Rez is a past president of the Thomas More Society and a Knight of the Equestrian Order of the Holy Sepulchre of Jerusalem. He made the keynote address at the annual St. Thomas More Society dinner which honored Bankruptcy Judge John Hargrove as its attorney of the year.

Mr. Rez has been a member of the parish and finance councils at Our Lady of Refuge Roman Catholic Church, and was on the Diocesian Pastoral Council for the Diocese of San Diego (2002-2004). In addition, Mr. Rez has served on the Board of Directors of Catholic Exchange and is the 2012 President of the San Diego Chapter of Legatus.

Mr. Rez has an AV® Preeminent™ Peer Review Rating by Martindale-Hubbell.

**Practice Areas**
Antitrust and Trade Regulation

Commercial and Business Litigation

**Education**
Harvard Law School, J.D., cum laude, 1978

University of Texas, B.A., with highest honors, 1975

8cbU˙X˙; "F Yn˙fM˙bh˙bi YXŁ
.

**Dublished Works**

California Pretrial Practice & Forms, Kwong, Kane & Rez, James
Publishing Company, 2003 (updates 2004-2011)

Antitrust Law Journal (National Institute Ed.), (Co-editor), American
Bar Association (1981-1984)

Antitrust Trade Regulation: Developments Relating to Franchising
(Sullivan & Rez), ABA Forum Committee on Franchising (1983)

Antitrust Discovery Handbook and Supplement (Fraudulent
Concealment and Sanctions) (Contributor), ABA Antitrust Section
(1982)

Letís Get Rid of Big Cases (Sullivan & Rez), 7 Litigation Nos. 4, p.8,
Summer (1981)

Antitrust Discovery Handbook and Supplement (Fraudulent
Concealment and Sanctions) (Contributor), ABA Antitrust Section
(1980)

Causation and Automatic Damages in Secondary-Line Cases Under
Section 2(a) of the Robinson-Patman Act: Is Fowler v. Gorlich
Dead?, 55 Notre Dame Lawyer 660 (1980)

**Classes/Seminars Taught**

Presenter, "Everything You Need to Know: Motion for Summary
Judgment," San Diego County Bar Association (Civil Litigation
Committee), April 2012

Presenter, "The Art of the Deposition: Deposition Procedure,"
Veritext San Diego, February 2012

Presenter, "E-Discovery in the Mobile Age," Veritext San Diego,
August 2011

Presenter in Southern California seminar series entitled "Foreclosure
Prevention & Debt Relief for Lawyers"

Lecturer, "E-Discovery Under the New Federal Rules of Civil
Procedure," Meritas Litigation Section Meeting, 2006

Faculty, Developing Deposition Skills, National Institute of Trial
Advocacy (NITA), 1999

Adjunct Professor of Law, Pretrial Procedures, California Western
School of Law, 1984

Guest Lecturer, Antitrust Law Seminar, University of San Diego,
1999

Donald G. Rez  (continued)

Lecturer Business Litigation in the 1990's - Tactics and Techniques, San Diego
County Bar Association - Section on General Civil Litigation, 1989

Lecturer, Use of Videotaped Depositions, California Continuing
Education of the Bar, 1982

Lecturer, Practicum, Federal Practice Institute, California Continuing
Education of the Bar, 1979



**Representative Matters - Donald G. Rez**

**Antitrust and Trade Regulation**

Published Cases:

Adler v. Federal Republic of Nigeria, 107 F. 3d 720 (9th Cir. 1997)

Bischel v. Fire Insurance Exchange, 1 Cal. App. 4th 1168 (Cal. App. 1991)

Cellular Plus, Inc. v. Superior Court, 14 Cal. App. 4th 1224 (Cal. App. 1993)

City of San Marcos v. Coast Waste Management, Inc., 47 Cal. App. 4th 320 (Cal. App. 1996)

Daw Industries v. Proteor Holdings, S.A., 2008 WL 4103985 (S.D. Cal. 2008)

Durkin v. Shea & Gould, 92 F. 3d 1510 (9th Cir. 1997)

Durkin v. Shields, 1997 U.S. Dist. LEXIS 20945 (S.D. Cal. 1997)

Hydranautics v. Filmtec, 204 F.3d 880 (9th Cir. 2000)

Hydranautics v. Filmtec Corp., 306 F. Supp.2d 958 (S.D. Cal., 2003)

Medical Imaging Centers of America v. Lichtenstein, 917 F. Supp. 717 (S.D. Cal. 1996)

SEC v. Integrated Equities, Inc., 2006 WL 3717487 (D. Nev. 2006) (representing court appointed receiver)

Platypus Wear v. K.D. Co., 905 F. Supp. 808 (S.D. Cal. 1995)

Shames v. California Travel and Tourism Commission, 626 F. 3d 1079 (9th Cir. 2010)

Sionix v. Moorehead, 299 F. Supp. 2d 1082 (S.D. CA. 2003)

U.S. v. Guess, 2005 WL 1819382 (S.D. Cal., June 28, 2005) (representing court appointed receiver)

## SAMPLE CLASS ACTION CASES (Donald Rez)

- *Lo v. Investment Advisors, Inc., et al.* (S.D. Cal. & D. Minn.)
  Case No. 98 CV 1302 JM and 98-2597 DUF
  (represented a class of investors seeking to recover mutual fund losses)

- *Penick v. FPA Medical Management, Inc.* (S.D. Cal.) Case No. 98 CV 928 H
  (co-counsel for class of investors)

- *Jordan v. DMV (Ramos),* Sacramento Superior Court, Case No. 95AS03903
  (summary judgment for plaintiff class)

- *Buys v. City of San Francisco* (San Francisco County Superior Court, Case No. 400669) (red light camera class action) (class co-counsel)

- *In re Global Crossing Erisa Litigation*
  (Case No. 02-CV-07453) (S.D.N.Y.)

- *Scheinhartz v. Waitt* (Case No. 01-CV-00830) (S.D. Cal.)
  (derivative action re Gateway computers)

- *Matloubian v. Home Savings of America*
  (San Diego Superior Court, Case No. 693362)
  (forced order insurance class – co-counsel)

- *Nelson, et al. v. St. Paul Fire & Marine Insurance, et al.*
  United States District Court, Southern District of Texas, Case No. G-95-331
  (Court approved $25+ million settlement of class claims)

- *Maywalt, et al. v. Parker & Parsley Petroleum Co., et al.*
  67 F.3d 1072 (2d. Cir. 1995) (approving $8.25+ million settlement of class claims)

- *Zwart, et al. v. John Hancock Mutual Life Insurance Co., et al.*
  San Diego Superior Court, Case No. 673902 (case settled for $3 million+ for class plaintiffs)

- *Potter v. Zodiac of North America,* San Diego Superior Court, Case No. 667845
  (class certified case settled)

- *Sirota v. Swing-N-Slide,* State of Wisconsin District Court, County of Rock, Wisconsin, Case No. 95-CV-726J

- *Lopez v. Super Plating, et al.* (S.D. Cal.) (defended class action price fixing case)

- *In re J. David Domineli Litigation* (defended class claims against Nancy Hoover)

- *Hadler v. PSA, Inc.,* San Diego Superior Court, Case No. 719562 (defended individual against class claims)

- *In re ACI – HDT Supply Co.: Bethlahmy v. Elcotel,* BK Case No. 95-08253-A11, Adv. No. 95-90809 (defended class claims)

- *First v. Prudential Bache Securities,* S.D. Cal. Case No. 91-CV-004714 (defended class claims on behalf of one defendant)

- *In re Shopping Cart Antitrust Litigation* – MDL 451 (S.D.N.Y.) (represented opt out plaintiff Fed Mart)

- *SEC v. Wenke* (S.D. Cal.) (representing certified class in attempting to collect from Walter Wenke estate)

- *Durkin v. Milberg, Weiss, et al.* (S.D. Cal.) (*see, e.g.,* 92 F.3d 1510 (9th. Cir. 1996)) (represented former class and derivative plaintiffs and their lawyers in action brought by resulting bankruptcy trustee asserting the settlement of underlying litigation was in derogation of rights of and duties owed to corporation: substantial issues as to class representation and counsel's duties and obligations)

# Exhibit D

## JULIANNE D'ANGELO FELLMETH

Center for Public Interest Law
University of San Diego School of Law
5998 Alcalá Park
San Diego, California 92110
(619) 260-4806 • (619) 260-4753 (fax) • julied@SanDiego.edu

---

**LEGAL EDUCATION:**  University of San Diego School of Law
J.D., *Cum Laude*, May 1983
*Standing*:  Top 6%
*Awards*:  1983 West Hornbook Award for Legal Scholarship; 1983
American Jurisprudence Award for Administrative Law
*Activities*: Editor-In-Chief, *San Diego Law Review*, 1982-83
Author, *Revision of the SBA Opinion Molder Rule*,
19:4 SAN DIEGO L. REV. 801 (1982)
Intern, Center for Public Interest Law, 1981-82
Writer, *California Regulatory Law Reporter*, 1981-82

**UNDERGRADUATE**  University of San Diego
**EDUCATION:**  B.A. Psychology, *Magna Cum Laude*, January 1976

**ADMISSIONS:**  California State Bar; November 1983

**LEGAL EXPERIENCE:**

August 1986 to  **ADMINISTRATIVE DIRECTOR** (since October 1995)
present  **SUPERVISING ATTORNEY/EDITOR** (1986–1995)
Center for Public Interest Law (CPIL)
University of San Diego School of Law

Engage in direct clinical instruction of second- and third-year law students in a yearlong course on regulatory law and practice focusing on California agencies that regulate business, professions, and trades. Clinical teaching function includes preparation of annual class syllabus and instructional handouts; frequent tutorial meetings with interns on individual, small group, and class-wide bases; and comprehensive substantive and overall review of student written work product. Serve as Editor of CPIL's *California Regulatory Law Reporter* (CRLR): supervise and advise 15-20 law students annually in research and preparation of CRLR articles on California regulatory agencies; edit all copy for 250-page biannual academic journal; proofread publication and prepare it for layout, printing, and distribution. Engage in legislative lobbying on public interest bills and administrative advocacy on proposed agency rulemaking. Represent the public interest in litigation against state regulatory agencies where agencies have violated procedural, open meetings, or public records statutes. Supervise all CPIL staff and administrative functions, including budget preparation, fundraising, CRLR promotion and subscriptions.

**JULIANNE D'ANGELO FELLMETH** – Page Two

---

**LEGAL EXPERIENCE** (continued):

September 1985 to
July 1986

**TRIAL ATTORNEY** (Honors Program Attorney)
U.S. Department of Justice
Civil Division, Federal Programs Branch
Washington, D.C.

As government defense litigator, represented federal agencies and officials sued for alleged constitutional, statutory, and regulatory violations. Developed litigation strategy; conducted factual investigation and discovery; researched and drafted all pleadings; presented oral argument; conducted settlement negotiations. Maintained communication with client agency counsel, DOJ officials, and Assistant U.S. Attorneys to ensure that a consistent litigation position was taken nationwide.

August 1983 to
August 1985

**JUDICIAL LAW CLERK** to Honorable Carl A. Muecke,
Chief Judge, United States District Court, District of Arizona

Responsible for entire civil motions calendar: researched and prepared bench memoranda, and drafted opinions and orders on all civil motions. Assisted with drafting and selection of jury instructions; prepared findings of fact and conclusions of law after non-jury trials and evidentiary hearings. Reviewed proposed pretrial orders; scheduled and attended pretrial conferences.

Fall 1982 to
Spring 1983

**EDITOR-IN-CHIEF**
*San Diego Law Review*

Supervised thirteen editors in publication of five issues of the *San Diego Law Review*, including recruiting and selection of articles for publication; textual and citation editing of selected articles; student comment editing and review; budgeting, accounting, subscription maintenance, and advertising; supervision of editors and Law Review staff.

**MAJOR PUBLICATIONS/ARTICLES:**

*A Guide to California's Health Care Licensing Boards*
(July 2009) (co-author).

*Tapping the Full Potential of Public Members: A Tool Kit for Boards and Community-Based Organizations* (July 2009) (co-author).

*The "Regulatory Gag Clause" — A Loophole That Demands Closure*
92:3 J. MED. LIC. & DISC. (2006).

*Final Report of the Medical Board of California Enforcement Program Monitor*
(November 1, 2005) (co-author).

**JULIANNE D'ANGELO FELLMETH** – Page Three

---

*Initial Report of the Medical Board of California Enforcement Program Monitor* (November 1, 2004) (co-author).

*Effective Disciplinary Programs*, 89:3 J. MED. LIC. & DISC. (2003).

*Final Report of the Contractors State License Board Enforcement Program Monitor* (April 1, 2003) (co-author).

*Third Report of the Contractors State License Board Enforcement Monitor* (October 1, 2002) (co-author).

*Second Report of the Contractors State License Board Enforcement Program Monitor* (April 1, 2002) (co-author).

*Initial Report of the Contractors State License Board Enforcement Program Monitor* (October 1, 2001) (co-author).

*Rehabilitating the Medical Board's Diversion Program* 16:1 CAL. REG. L. REP. 3 (Winter 1999) (author).

*An Open Letter to DCA Officials and Other Users of Office of Administrative Hearings Administrative Law Judges*, 14:4 CAL. REG. L. REP. 1 (Fall 1994) (co-author).

*The Funeral and Cemetery Boards in Well-Deserved Limbo* 14:4 CAL. REG. L. REP. 4 (Winter 1994) (author).

*Public Disclosure of Physician Information: Who Knows What's Best for Whom?* 13:4 CAL. REG. L. REP. 1 (Fall 1993) (co-author).

*A Perspective on California's Regulation of Tax Preparers, Certified Public Accountants, Architects, and Landscape Architects*, 13:4 CAL. REG. L. REP. 5 (Fall 1993) (co-author).

*The Attorney General's "Circle of Error" Casts a Shadow over California's Sunshine Laws* 13:1 CAL. REG. L. REP. 1 (Winter 1993) (co-author)

*Final Report of the State Bar Discipline Monitor* 11:4 CAL. REG. L. REP. 1 (Fall 1991) (contributor).

*Eighth Progress Report of the State Bar Discipline Monitor* (March 1991) (contributor).

*Near Extinction: California's Protection of Endangered Species* 10:2&3 CAL. REG. L. REP. 1 (Spring/Summer 1990) (co-author).

**JULIANNE D'ANGELO FELLMETH** – Page Four

*Seventh Progress Report of the State Bar Discipline Monitor*
(September 1990) (contributor).

*Sixth Progress Report of the State Bar Discipline Monitor*
(March 1990) (contributor).

*Fifth Progress Report of the State Bar Discipline Monitor*
(September 1989) (contributor).

*Physician Discipline in California: A Code Blue Emergency*
9:2 CAL. REG. L. REP. 1 (Spring 1989) (contributor).

*Fourth Progress Report of the State Bar Discipline Monitor*
(March 1989) (contributor).

*Third Progress Report of the State Bar Discipline Monitor*
(September 1988) (contributor).

*Second Progress Report of the State Bar Discipline Monitor*
(April 1988) (contributor).

*First Progress Report of the State Bar Discipline Monitor*
(November 1987) (contributor).

*The Discipline System of the California State Bar: An Initial Report*
7:3 CAL. REG. L. REP. 1 (Summer 1987) (contributor).

*California Physician Cartel: Keeping Out The Intruders*
7:2 CAL. REG. L. REP. 1 (Spring 1987) (co-author).

*Revision of the SBA Opinion Molder Rule*
19:4 SAN DIEGO L. REV. 801 (1982) (author).

Editor of all issues of the *California Regulatory Law Reporter* from Fall 1986 to the present.

**MAJOR SPEECHES**:

*Eliminating the California Medical Board's Diversion Program* , Annual Meeting of the Federation of State Boards of Physical Therapy (October 3, 2009).

*A Case Study of Flawed Regulatory Management*, Citizen Advocacy Center's Forum on Regulatory Management of Chemically Dependent Healthcare Practitioners (June 17, 2009).

**JULIANNE D'ANGELO FELLMETH** – Page Five

*Strengthening Enforcement Performance,* Annual Meeting of the Federation of State Medical Boards (April 21, 2006; Boston, MA).

*Ben Shimberg Memorial Lecture,* Annual Meeting of the Citizen Advocacy Center (November 4, 2005; Denver, CO).

*Effective Disciplinary Programs,* Keynote Speech at 2002 Annual Meeting of the Citizen Advocacy Center (November 15, 2002; San Francisco, CA).

*Agency Enforcement Programs: Protecting the Public Interest,* Opening Speech at 2004 Annual Conference of the Council on Licensure, Enforcement and Regulation (CLEAR) (September 30, 2004; Kansas City, MO).

Numerous presentations to and testimony before California legislative committees and regulatory boards, some of which are posted at <www.cpil.org>.

## AWARDS / APPOINTMENTS / PROFESSIONAL ACTIVITIES:

Recipient of the Ben Shimberg Public Service Award from the Citizen Advocacy Center "for her strong leadership at the Center for Public Interest Law, leading to major improvements in the effectiveness and accountability of health regulatory boards not only in California but across the nation" (November 4, 2005).

Medical Board of California Enforcement Program Monitor, under appointment by California Department of Consumer Affairs Director Kathleen Hamilton pursuant to Business and Professions Code section 2220.1 (2003–05).

Member, Title Act Study Task Force, California Board for Professional Engineers and Land Surveyors (2003–04).

Member, California Board of Accountancy Peer Review Task Force (2003–05).

Member, California Board of Accountancy Task Force on Audit Standards and Practices (2002).

Principal Consultant, Contractors State License Board Enforcement Program Monitor Project pursuant to Business and Professions Code section 7092 (2001–03).

Member, California Insurance Commissioner's Consumer Complaints and Unfair Practices Task Force (1991–92).

Principal Consultant, State Bar Discipline Monitor Project (1987–92).

## Exhibit A

# ROBERT C. FELLMETH
(Legal Ethics, Consumer, Unfair Competition Related)

University of San Diego School of Law
5998 Alcalá Park
San Diego, California 92110
(619) 260-4806, fax (619) 260-4753, cpil@sandiego.edu

**EDUCATION:**     Stanford University
A.B. 1967 With Distinction
Honors in Humanities

Harvard University Law School
J.D. 1970
Editor, *Harvard CR-CL Law Review*

**LEGAL EXPERIENCE:**
1968          **Intern** for the Arms Control and Disarmament Agency of the U.S. State Department

Professor Fellmeth worked on Non-Proliferation Treaty ratification, and reviewed classified international cables and early memoranda relevant to SALT-type agreements under General Counsel George Bunn.

1969-72       **Associate,** Center for Study of Responsive Law

In 1968, Professor Fellmeth  co-authored *The Nader Report on the Federal Trade Commission* with John Schulz and Edward Cox. The report criticized the FTC Act for its limited "cease and desist" remedies, and the FTC for inaction.  The year after the report's release, President Nixon requested an inquiry by a committee of the American Bar Association.  Several recommendations in the two reports were enacted into law in 1973 and 1975. During the release of the FTC report, the Nader researchers were called "Nader's Raiders" by the press.

In 1969, Professor Fellmeth raised foundation funds, recruited, and organized groups of law students and young professionals investigation to work with Ralph Nader. The subsequent research produced books including: *Vanishing Air, Water Wasteland, Sewing the Wind, Chemical Feast,* and legislative drafts to address consumer and  environmental problems documented ( *e.g.,* early drafts of the Water Pollution Control Act of 1970). Professor Fellmeth also directed a group in a study of the Interstate Commerce Commission, resulting in the book: *The Interstate Commerce Omission.*

In 1970, Professor Fellmeth directed a study of land use policies in California, which was rewritten in book form as *The Politics of Land.*

1972-73       **Director,** Nader Congress Project

In 1972-73, Professor Fellmeth directed the Nader Congress Project, recruiting journalists, students, and professors for work in Washington, D.C., and in each of the fifty states and 435 congressional districts.  The Project produced profiles on each member of Congress.  Profiles included census and election data, district spending by agency, floor and committee votes, campaign contributors, background, legislation authored,

and other information.  The Project published the best-selling paperback *Who Runs Congress?* (Zwick, Fallows, and Green) in 1972, and published the major part of its work in 1976: a six-volume study of the Congress and its major committees — *Ruling Congress*, *The Finance Committees*, *The Money Committees*, *The Commerce Committees*, The Environment Committees, and *The Judiciary Committees*.

| | |
|---|---|
| 1973-81 | **Deputy District Attorney**, San Diego County Office of the District Attorney |
| 1979-81 | **Assistant United States Attorney**, U.S. Attorney's Office, Southern District of California |

In 1975, Professor Fellmeth formed the nation's first unit to prosecute antitrust violations out of a local prosecutor's office.  The new unit filed 22 civil and criminal antitrust cases against entities such as Revlon Corporation, TFI Companies, Inc., Atlantic Richfield Company (ARCO), and the National Association of Realtors, alleging price-fixing, kickbacks, exclusive dealing, group boycotts, tie-ins, predatory practices, and other white collar crimes which injure small business, the marketplace, and consumers. Reported cases include *People v. National Association of Realtors*, 120 Cal. App. 3d 459 (1981), and *People v. Mobile Magic Sales Inc.*, 96 Cal. App. 3d 1 (1980).  In 1975 and 1976, Professor Fellmeth drafted bills to revise California's antitrust and unfair competition statutes. In 1977, four of those bills were enacted into law (Assembly Bills 1158, 1159, 1160, and 1162).

In 1977-80, Professor Fellmeth argued *People v. Pacific Land Research*, 20 Cal. 3d 10 (1977), before the California Supreme Court; this case declared a public civil Unfair Competition Act prosecution to be separate and distinct from private counterparts. He also argued *Corsetti v. Rice*, 21 Cal. 3d 431 (1978), before the California Supreme Court; this case sustained the vertical price-fixing prohibition on liquor notwithstanding alleged state authority for required resale prices.  Also during this period, Professor Fellmeth drafted local bidding and regulatory ordinances; and published, lectured, and consulted to assist other local prosecutors in the enforcement of state antitrust and unfair competition statutes.

In 1979, Professor Fellmeth was cross-commissioned as a special Assistant United States Attorney to begin a program of federal antitrust prosecutions from U.S. Attorney's offices lacking Antitrust Division presence.

| | |
|---|---|
| 1977-Present | **Professor of Law**, University of San Diego School of Law |
| 1992-Present | **Price Professor of Public Interest Law**, University of San Diego School of Law |

Since 1977, Professor Fellmeth has taught a variety of courses at the University of San Diego (USD) School of Law — including Consumer Law, California Administrative Law and Practice, Public Interest Law Clinic, White Collar Crime, Criminal Procedure, Trade Regulation, Regulated Industries, Child Rights and Remedies, and Child Advocacy Clinic.  In 1983, Professor Fellmeth was awarded full tenure as a School of Law faculty member.  In 1990, Professor Fellmeth was designated as the inaugural holder of the Price Chair in Public Interest Law, an endowed faculty chair created by a $1.8 million gift from philanthropists Sol and Helen Price.  In 1997, Professor Fellmeth was named a "University Professor" for "outstanding, balanced, cumulative career contributions supporting the mission and goals of USD."

| | |
|---|---|
| 1980-Present | **Director**, Center for Public Interest Law |
| 1980-95 | **Editor-in-Chief**, *California Regulatory Law Reporter* |

In 1980, Professor Fellmeth created the Center for Public Interest Law (CPIL), an academic center of research, teaching, and advocacy in public interest and administrative law at the USD School of Law.  The

Center focuses its efforts on the study of state agencies and boards which regulate business, professions, trades, and the environment. Through its student interns, CPIL examines and analyzes the activities of fifty state regulatory agencies, and — between 1980 and 1995 — educated the public on the decisions of these agencies in its legal journal, the *California Regulatory Law Reporter*. CPIL's goal is to make the regulatory functions of state government more efficient, visible, and accountable by serving as a public monitor of state administrative agencies, and by representing otherwise unrepresented interests in government and judicial proceedings.

In addition to its research and scholarship, CPIL functions as a statewide public interest law firm on behalf of consumers. Through its professional staff located in San Diego and Sacramento, and assisted by student interns, CPIL drafts and sponsors legislation, litigates test cases, and engages in public advocacy on behalf of underrepresented diffuse and future interests. CPIL projects have included the creation by regulatory petition of the Utility Consumers' Action Network (UCAN), a 65,000-member entity now representing ratepayers before the California Public Utilities Commission; the creation of the Privacy Rights Clearinghouse, focusing on personal informational privacy; court defense of Proposition 103, the 1988 insurance rate reform initiative (*Calfarm Ins. Co. v. Deukmejian*, 48 Cal. 3d 805 (1989)); advocacy on behalf of open meetings and related "sunshine" statutes (AB 214 (Connelly) (Chapter 936, Statutes of 1985) and AB 2476 (Connelly) (Chapter 641, Statutes of 1986)); institution of a legislative "sunset review" process for state occupational licensing agencies (SB 2036 (McCorquodale) (Chapter 908, Statutes of 1994) and subsequent active participation in the sunset process); government campaign contribution and ethics reform (*e.g.*, Propositions 68 and 131); special prosecutor legislation (AB 410 (Killea)); reform of the state's physician discipline system (SB 2375 (Presley) (Chapter 1597, Statutes of 1990), SB 916 (Presley) (Chapter 1267, Statutes of 1993), and SB 609 (Rosenthal) (Chapter 708, Statutes of 1995)); economic crime legislation (AB 2249 (Friedman) (Chapter 1616, Statutes of 1990, which enacted the California Corporate Criminal Liability Act); and other legislation, rulemaking, and litigation projects.

1984-85     **Partner**: Lorenz, Alhadeff, Fellmeth, Arkin & Multer (private law firm)

1985-87     **Partner**: Clark & Gumpel (private law firm)

1987-92     **California State Bar Discipline Monitor**

Professor Fellmeth was appointed to a 1986 legislatively created position of State Bar Discipline Monitor by then-state Attorney General John Van de Kamp in January 1987. The position was charged to investigate California's attorney discipline administered by the State Bar and to recommend reforms to the legislature and the Chief Justice of the California Supreme Court. Assisted by CPIL, Professor Fellmeth drafted and published reports on the system every six months for five years, commencing with the first report issued on June 1, 1987. During his term, Professor Fellmeth assisted with the drafting and legislative advocacy of SB 1498 (Presley) (Chapter 1159, Statutes of 1988), and other reform proposals. These included the creation of a State Bar Court appointed by the Supreme Court and independent of the practicing bar.

1989-Present **Executive Director**, Children's Advocacy Institute

In 1989, Professor Fellmeth created the Children's Advocacy Institute (CAI) as part of the Center for Public Interest Law at the USD School of Law. CAI operates the Child Advocacy Clinic at the School of Law representing allegedly abused and neglected children. As an academic center, CAI trains future lawyers to represent the interests of children, and as a statewide law firm, advocates on their behalf in the courts, the

legislature, before administrative agencies, and through public education programs.

**REPORTED CASES LITIGATED:**

*People v. Pacific Land Research*, 20 Cal. 3d 10 (1977) (*amicus* for CDAA)
Private and public antitrust/unfair competition cases not subject to mandatory consolidation

*Corsetti v. Rice*, 21 Cal. 3d 431 (1978) (*amicus*)
Vertical price fixing in wine sales, state action defense not available without bona fide independent state supervision

*People v. Mobile Magic Sales Inc.*, 96 Cal. App. 3d 1 (1979)
Antitrust; tie ins, required market power and product definition, preliminary injunction criteria

*People v. National Association of Realtors*, 120 Cal.App. 3d 459 (1981)
Price fixing, tie-ins, group boycotts, restraints pertain to multiple listing services

*People v. National Association of Realtors*, 155 Cal. App. 3d 578 (1984)
Scope of Unfair Competition Act includes antitrust, calculation of civil penalties liberal

*Tom Hudson and Associates v. City of Chula Vista* 746 F.2d 1370 (9th Cir., 1984)
A statute may confer "state action" immunity to a city to grant trash haul exclusive contracts (monopolies) without separate state supervision

*Pacific Gas and Electric v. Public Utilities Commission* 475 U.S. 1 (1986) (*amicus*)
Utility free speech rights limit billing insert rights granted by PUC to consumer group

*49er Chevrolet v. General Motors*, 803 F. 2d 1463 (9th Cir., 1986).
A franchisor may influence the prices set by franchisees

*Calfarm Ins. Co. v. Deukmejian*, 48 Cal. 3d 805 (1989) (w/ Cotchett, Rosenfield, *et al.)*
Proposition 103 constitutional except for CUB provision and limited by fair rate of return assurance as to rollbacks and maximum rates

*Center for Public Interest Law v. Fair Political Practices Commission* 210 Cal.App.3d 1476 (1989)
Proposition 68 (campaign finance reform) not reconcilable with proposition 73 which received more votes on similar subject area, canceling 68

*Austin v. Michigan State Chamber of Commerce* 494 U.S. 652 (1989) (*amicus*)
Right of state to control political campaign contributions

*Leon S. Kaplan v. County of Los Angeles* 894 F.2d 1076 (9th Cir., 1990)
High assessment ($80,000) to gain access to official voter's pamphlet for judicial candidate not a constitutional violation

*State of California v. American Stores Company* 495 U.S. 271 (1990) (*amicus*)
Application of merger/monopoly law to retail grocery chains

*Le Bup Thi Dao v. Board of Medical Quality Assurance* (w/ Wheaton) (1st Dist.Ct. Of Appeal Case No. A046101 (1990)    Civil rights may lie in categorical denial of licensure by Medical Board to Vietnamese physicians educated in Saigon who escaped to US and met all examination and internship qualifications

*Belth v. Gillespie (w/ Oshiro)* 232 Cal.App.3d 896 (1991)
Public Records Act request regarding junk bond related records of Department of Insurance not exempt and attorney's fees appropriate

*Moore v. California State Bd.of Accountancy* (w/ J.D'Angelo) 2 Cal. 4th 999 (1992) (*amicus*)
Board rule that only CPAs may use term "accountant" in describing themselves overly broad and in restraint of trade

*Lyon v. Franchise Tax Board* 4 Cal.App.4th 267 (1992)
Solar power tax credit not available although qualified under adopted rules

*Gerald Rubin v. Norma Green* 4 Cal.4th 1187 (1993) (*amicus*)
State Bar Act not amenable to private enforcement through the Unfair Competition Act

*MWD v. Imperial Irrigation District, et al.*   80 Cal.App.4th 1403
Transfer of water to higher use must be facilitated by MWD wheeling at out-of- pocket rates where space available under applicable law; MWD denied confirmation of rates at high levels which blocked transfer and water conservation.   CPIL served as public interest intervenor and granted party status. The trial court adopted CPIL's argument concerning the interpretation of state wheeling statutes, but the Los Angeles based Second District Court of Appeal reversed, upholding MWD prices at many times marginal cost effectively inhibiting the transfer of water to best, highest and most environmentally sound use.   MWD then settled the case prior to Supreme Court disposition and CPIL collected private attorney general fees.

*James W. OBrien v. Bill Jones* 23 Cal. 4th 40 (2000)  (*amicus* for CPIL)
Revisions to the State Bar Act allowing legislative appointment of two of the five State Bar Court judges and eliminating the one non-attorney judge from the Review Panel upheld.

*United States of America v. Visa, et al.* 344 F.3d 229 (2d Cir. 2003) *Amicus* brief written with Yale Law School Professor Ian Ayres on behalf of many consumer groups seeking Second Circuit affirmation of the trial court finding of antitrust violations in the capture of all banking based credit card marketing by Visa and Mastercard.   See U.S, District Court for the Southern District of NY, No. 9807076 (BSJ). Second Circuit Docket No. 02-6074(L). The plaintiffs allege that Visa and MC operate largely in concert, and preclude by explicit boycott arrangement by any bank with American Express, Discover, or other new entrants. Brief supports government position that antitrust offenses have occurred and remediation is necessary and was filed on July 3, 2002, resulting decision affirmed prosecution.

*Scripps Clinic v. Superior Court (Patricia Thompson, et al.)*  108 Cal.App.4th 917 (2003) an *amicus* brief advocating reversal of a demurrer to plaintiff's complaint.  Plaintiff contended that a major medical provider group (over 600 physicians) implements a policy automatically terminating from all provider services any patient who files an "intent to file suit notice" against any of the physician members.  The policy automatically terminates such plaintiffs, and all members of their immediate family, from subsequent treatment by any participating physician without reference to the merits of the complaint.  CPIL argued that this practice was violative of constitutionally grounded public policy and was voidable as an unfair act in competition.  The decision of the Fourth District Court of Appeal held that no business practice can be "unfair" under the Unfair Competition Act (Bus. & Profs. Code Section 17200) unless also violating an existing statute or rule, effectively foreclosing the plaintiff's action.  CPIL drafted an *amicus* letter for the Supreme Court to review this erroneous holding (Section 17200 by origin is a remedy for common law  – nonstatutory – business tort offenses).  The petition received two of the four votes necessary for its granting. .

*Sinaiko v. Medical Board of California*  C045502  an *amicus* brief to the Third Appellate District urging the granting of a petition for review by a disciplined physician.  The Medical Board disciplined Robert Sinaiko, M.D. for administering common anti-fungal treatment to an alleged ADHD child in order to test a possible allergen based cause for his symptoms.  The trial court upheld the discipline because Sinaiko failed to follow the expert advisory "step ladder approach" of Ritalin or other amphetamine administration.  The *amicus* brief of CAI argued that reflexive amphetamine prescriptions to children now include over 4 million under treatment and cited the extensive and recent evidence of problems, harms and overuse – relying primarily on National Institutes of Health findings over the last two years.  It urged reconsideration of the Board-imposed regimen of amphetamine administration and the sanctioning of those who seek – without harm or danger – scientifically based alternatives.  In January of 2004, the petition was granted to hear the case, in November of 2004 the court of appeal reversed the decision of the ALJ and remanded for reconsideration, holding that the hearing failed to consider the expert testimony of the Respondent.

*David Mittleholtz v. IMR* (SDSC Case No. GIC846200/BC267700), counsel for the plaintiff class (Norman Blumenthal and David Arias lead counsel) in case brought in Los Angeles and transferred to the Honorable John Meyer in San Diego superior court.  Case was filed on 2-7-02 and alleged contamination of alleged herbal remedies outside of FDA regulation by small quantities of prescription drugs to affect symptoms of prostate cancer (product PC-Spes), arthritis (RA-Spes), breast cancer and other alleged cures.  The contaminants included DES, xanax and coumadin.  Court awarded $28 million to the class in August of 2007.

*Shames v. Hertz*, in United States District Court for the Southern District of California, No. 07CV 2174H, Counsel (as CPIL) for plaintiff class alleging antitrust price fixing offenses by the 7 rental car corporations operating out of California airports, and Bagley-Keene Open Meeting Act violations by the California Travel and Tourism Commission.  Case pending.

*Devin Daniels v. Phillip Morris*, No. 07-740, *amici curiae* brief to the U.S. Supreme Court on behalf of petitioners seeking writ of certiorari contesting a California Supreme Court on behalf of both CPIL and CAI, December 29, 2007.  The case involves a state supreme court precedent

that a class action challenging a tobacco industry marketing effort that targets youth for purchase and addiction must be dismissed. The court held that even the state's broad Unfair Competition Law cannot be applied to such tobacco marketing because it is preempted by the Federal Tobacco Labeling Act and by commercial free speech rights of tobacco as enunciated in the U.S. Supreme Court *Lorillard* precedent.   Case is pending.

## CONSULTING EXPERT TESTIMONY [Selected Cases]

Jan. 1991    Consultant to U.S. Attorney's Office (William Hayes) to serve as expert witness for the federal government on legal ethics in   *U.S. v. Stites* (prosecution of attorneys in Orange County for abuse of *Cumis* counsel status, mail fraud and overbilling. Prepared rebuttal for anticipated defense of "custom and practice."  No testimony was offered,  but was retained as an expert to testify in rebuttal depending on the nature of the defense.

Jan. 1991    Expert witness for defendants in  *In Re Technical Equities Coordinated Litigation* (Santa Clara County Superior Court No. 600306, Coordination Proceeding Master File No. 1991); hired by Thelan, Marrin, Johnson & Bridges in approximately October 1990; was deposed on January 15, 1991, regarding the nature and intent of section 17200 of the Business and Professions Code defining unfair competition.

Dec. 1992    Expert witness for Fireman's Fund Insurance Company in *Tarkington, O'Connor & O'Neill v. Firemen's Fund Insurance Company*  , Alternative Adjudication No. 91-3 (Robert Kroninger, Arbitrator) regarding attorney billing practices and fair competition. Retained by McNitt, Edwards & Schraner, 701 B Street, 10th Floor, San Diego, CA 92101; opposing counsel was  Tarkington, O'Connor & O'Neill, One Market Plaza, Spear Street Tower, 41st Floor, San Francisco, CA 94015. Was deposed on December 2, 1992; testified at arbitration hearing on January 20, 1993.

Feb. 1993    Consultant in areas of ethics and professional responsibility; retained by Rosenfeld, Meyer & Susman, 9601 Wilshire Blvd., Fourth Floor, Beverly Hills, CA 90210-5288, in *Armitrage v. Pope*, San Diego County Superior Court case no. 689073, on behalf of Gibson, Dunn & Crutcher in connection with professional negligence/breach of fiduciary duty litigation. Opposing counsel includes Jennings & Drakulich, 12770 High Bluff Drive, Suite 270, San Diego, CA 92130; Levine, Stenberg & DePasquale, 1200 Third Avenue, Suite 1400, San Diego, CA 92101; and Call, Clayton & Jensen, 610 Newport Center Drive, Suite 700, Newport Beach, CA 92660.

Nov. 1993    Served as expert witness for the Attorney General in disciplinary proceedings against a Superior Court judge in San Diego; details of the proceedings of the Commission on Judicial Performance are confidential.  Testified before the Commission panel.

Jan. 1996    Expert consultant/witness at request of the United States in  *U.S.v. Malkus  et al.*; federal RICO prosecution of three San Diego judges and attorney Patrick Frega for alleged corruption. Did not testify.  Conviction occurred November of 1996.

Aug. 1996    Retained as expert on merger mitigation matter in  Public Utilities Proceeding (Pacific Bell-SWBell Merger) by the Utility Consumers' Action Network (UCAN). Submitted Testimony

September 26, 1996, Reply Testimony November 21, 1996.

Mar. 1999    Retained as expert in *Bosco* and *Saskia Smith* cases before Montana Supreme Court by Ross and Hardies, of Chicago (Bob Carter, Patricia Moots) representing St. Paul Insurance. 312-750-2769. Case involves requested rule of court by petitioners "In the Mater of the Rules of Professional Conduct and Insurer Imposed Billing Rules and Procedures" Montana Supreme Court #98-612. The request would void use of outside independent auditors in reviewing attorney fee bills, in particular the standards of review undertaken (prior approval to hire expert, approval of discovery plan, etc). Filed Affidavit Report with the court to be used by principal expert Prof. Hazard in April 1999. .

Mar. 1999    Retained as expert by Steinbock & Hoffman, 408-298-3800 re Unfair Competition Act investigation involving First Alliance Mortgage Company (FAMCO) dealing with elderly consumers. Case filed by AARP, settled in 2001.

Feb. 1999    Retained by Much, Shelist, Freed, Denenberg, Ament & Rubenstein of Chicago 312-346-3100 re *Landin v. LA Cellular*, LA superior court #BV143305; case concerns "dropped call" policy of Deft. and application of Unfair Competition Act, primary jurisdiction doctrine et al. submitted expert declaration in April 1999. Case settled in 2001.

1993-1998    Retained by District Attorney of San Diego County and by State Attorney General to consult on white collar crime offense investigations and prosecutions, and remedies; leading to *People v. Cox Cable* and 3 companion cases, and *People v. Oso Niguel* and 8 companion cases, *et al.* Cases settled for civil penalties, injunctive and restitutionary relief. The cable companies are compelled to offer *cy pres* relief including the wiring of individual classrooms throughout their territories for broad band education reception, arranged through the County Office of Education.

Jan. 2000    Retained by Don Hildre, DHildre@aol.com; 232-9131, cell phone 954-2212; fax 232-7317 re *Castano and Related Litigation: Fee Award Arbitration*, concerning national tobacco litigation, the Master Settlement Agreement, and proper attorney fee award under applicable law , focusing on the *Davis, Ellis v. Philip Morris* setttlement in California as the vehicle for fees. Consulted with plaintiff counsel in hearing preparation in New Orleans, testified at the hearing in New York. The three judge panel awarded substantial fees to the California counsel, including the 200 Castano attorneys litigating the case nationally. Although binding arbitration, a New York trial court has voided the award on technical grounds, and it is currently on appeal.

April 2000    Retained by John Van de Kamp, President and General Counsel, Thoroughbred Owners of California W. Huntington Drive, Arcadia, CA 91007, consultation re technical matters relevant to purse calculations, regulatory standards, enforcement policies, and other organizational needs requiring statutory/regulatory/case law analysis.

Feb. 2001    Retained by the District Attorney of San Diego County to investigate possible economic crimes involving gasoline pricing within San Diego County. Report on impediments to competitive pricing submitted to the District Attorney in 2002, testimony before the

Port District Board in 2002.

Mar. 2001    Retained by the District Attorney to investigate possible antitrust offenses by Duke Energy and other power producers during the 2000-2002 energy crisis. Drafted prefiling document discovery in five successive waves, evaluated documents, made confidential recommendations. Case settled in October of 2004 statewide for $207 million. Office of District Attorney receives $3.2 million, $440,000 for costs and the remainder to fund and endow the Energy Policy Initiatives Center (EPIC) in San Diego County to work for solar and other renewable energy, educate the public and officials and represent the interests of county ratepayers.

Aug. 2002    Member of Attorney General Task Force on the Reform of California's Unfair Competition Act.

Sept. 2002   Retained by the Los Angeles Office of District Attorney, consumer fraud division (Michael Kraut and Allan Fork) on criminal prosecution of "Ponzi Scheme" sold to low-income women in Los Angeles. Testified at trial on October 15, 2002. Defendants convicted of criminal fraud.

Oct. 2002    *State Bar of California v. Trevor Law Group, et al.* Expert Witness for the Office of Trial Counsel of the State Bar in investigating certain counsel allegedly bringing mass Unfair Competition Act cases against small businesses and demanding settlements.

Feb. 2003    Retained by the Office of Chief Trial Counsel of the State Bar of California as an expert witness in the case of *State Bar vs. Trevor Law Group* and involving alleged abuses of the private attorney general authority conferred under the state's Unfair Competition Act (Bus. & Profs. Code Section 17204), including the submission of settlement demands to over 1,000 auto shops based on minor citations issued by the Bureau of Automotive Repair and other mass demands for compensation. Interim suspension order granted by the State Bar Court in May of 2003.

Nov. 2004    Retained by the State Bar (President John VanDeKamp) to review documents and interview enforcement personnel and advise the Board of Governors on the performance of the disciplinary system and on recommended improvements.

January 2006  Retained by the State Bar of Washington for expert testimony in the disbarment case of Shane Han, one of the partners of the Trevor Law Group (see above).

June 2006    Retained by the District Attorney of San Diego County to assist in the investigation and possible prosecution of antitrust and commercial bribery offenses by major insurance carriers and insurance brokers in the area of employer sponsored life, disability and health insurance. Ongoing.

**TEACHING:**

Faculty of the National Judicial College (1978)

Faculty of National College of District Attorneys (Antitrust and Trade Regulation) (1975-77, 1979-80)

Faculty of the California Judicial College (1991)

Faculty of University of San Diego School of Law (1977-present)
Price Professor of Public Interest Law (1992-present)

## APPOINTMENTS / SERVICE:

1976-81 **Commissioner, Athletic Commission**, State of California

In December 1976, Professor Fellmeth was appointed to a four-year term as one of five commissioners regulating boxing, wrestling, and karate in California, serving as Chair in 1978 and 1979. He was reappointed in 1981 to complete the drafting of a statute creating a comprehensive disability and pension plan for professional boxers (California Business and Professions Code § 18880 *et seq*.), and served as chair that year, resigning in 1982. During Professor Fellmeth's tenure, the Commission conducted a competition study leading to deregulation, established a medical review committee, and approved the nation's first boxer pension plan.

1981-85 **Board of Directors**, Consumers Union of U.S. (publisher of *Consumer Reports*)

1986-91 **Board of Directors**, California Common Cause; Litigation Chair 1989-91

1994-1997 **Member, Committee on Judicial Appointments for the Southern District**

1995-1998 **Consultant,** Unfair Competition Act Project, California Law Revision Commission

2000-2001 **Member,** San Diego County Election Campaign Finance and Control Commission

2001-2003 **Member,** Judicial Appointments Committee for the Southern District of California

2001-Present **Member, Board of Directors,** First Star Foundation, (child advocacy),  D.C.

1991-Present **Board of Directors,** National Association of Counsel for Children, 2005 - present Executive Committee. 2009 - present Chair of the Board.

1992-Present **Chair, Board of Directors,** Public Citizen Foundation, Washington, D.C.

BOOKS

THE NADER REPORT ON THE FEDERAL TRADE COMMISSION, with Schulz and Cox (Baron 1968)

THE INTERSTATE COMMERCE OMISSION (Grossman 1970)

THE VOTER'S GUIDE TO ENVIRONMENTAL POLITICS (contributor) (Ballantine 1970)

WITH JUSTICE FOR SOME (contributor) (Beacon 1971)

THE POLITICS OF LAND (Grossman 1972)

AMERICAN GOVERNMENT, edited by Peter Woll (contributor) (Little, Brown 1972)

PROFILES OF MEMBERS OF CONGRESS (editor) (Congress Project 1972)

CORPORATE ACCOUNTABILITY AND THE AMERICAN CONSUMER, edited by Ralph Nader (contributor) (Grossman 1973)

THE COMMERCE COMMITTEES, edited by David Price (contributor) (Grossman 1976)

A TREATISE ON STATE ANTITRUST LAW, with Papageorge (Bureau of National Affairs 1978)

CALIFORNIA ANTITRUST LAW AND PRACTICE, with Folsom (treatise) (Butterworths 1983)

CALIFORNIA REGULATORY LAW AND PRACTICE, with Folsom (treatise) (Butterworths 1983, Supplements 1985, 1987, 1989)

CALIFORNIA ADMINISTRATIVE AND ANTITRUST LAW, with Folsom (treatise) (Butterworths 1991)

CALIFORNIA WHITE COLLAR CRIME, with Papageorge (treatise) (Parker 1995, Supplements Lexis/Michie, 1997, 1999, 2d Ed. 2001, 2003, 3d Ed. 2010).

HEALTH AND WELFARE FOR FAMILIES IN THE 21ST CENTURY, Edited by Helen Wallace (contributor) (Jones & Bartlett, 1998, 2d edition, 2001.4th edition, 2007)

CHILD RIGHTS AND REMEDIES (text) (Clarity Press, 2002, 2d Ed. 2006, 3d Ed. 2010).

**PUBLISHED REPORTS:** [For Recent Reports and Articles, see www.cpil.org or www.caichildlaw.org *The Interstate Commerce Commission, The Public Interest And The ICC: The Ralph Nader Study Group Report On The Interstate Commerce Commission And Transportation* (New York: Grossman Publishers 1970)

*Power And Land In California: Preliminary Draft* (Washington, D.C.: Center for Study of Responsive Law 1971)

*Robert H. Mollohan: Democratic Representative From West Virginia* (New York: Grossman Publishers 1972)

*Antitrust Practice for the Business Lawyer* (CEB, March 1975)

*California State Antitrust Law* (CEB, February 1982)

*Developments in California Regulatory Law* (CEB, August 1982)

11

*Proposition 103* (CEB, August 1989)

*Initial Report of the State Bar Discipline Monitor* (June 1,1987)
*First Progress Report of the State Bar Discipline Monitor* (November 1, 1987)
*Second Progress Report of the State Bar Discipline Monitor* (April 1, 1988)
*Third Progress Report of the State Bar Discipline Monitor* (September 1, 1988)
*Fourth Progress Report of the State Bar Discipline Monitor* (March 1, 1989)
*Fifth Progress Report of the State Bar Discipline Monitor* (September 1, 1989)
*Sixth Progress Report of the State Bar Discipline Monitor* (March 1, 1990)
*Seventh Progress Report of the State Bar Discipline Monitor* (September 1, 1990)
*Eighth Progress Report of the State Bar Discipline Monitor* (March 1, 1991)
*Final Report of the State Bar Discipline Monitor* (September 1, 1991)

*A Code Blue Emergency: Physician Discipline in California*, (1992)

Unfair Competition Litigation, Recommendation and Report, CALIFORNIA LAW REVISION COMMISSION, State of California, November 1996

## ACADEMIC/PROFESSIONAL ARTICLES:

*The Freedom of Information Act and the Federal Trade Commission: A Study in Malfeasance*, 4 HARV. CIV. RTS.-CIV. LIB. L. REV. 345 (Spring 1968)

*Local Prosecution of Antitrust Violators: A Survey of State Laws*, CLASS ACTION REPORTS, Vol. 4, No. 3, at 376 (1976)

*A Public Agency Antitrust Manual*, National Association of District Attorneys (June 1977)

*Antitrust Enforcement by Local Prosecutors*, 14 CAL. W. L. REV. 1 (1978)

*Regulation By Local Government — A Case Study of Monopoly, State Nonfeasance and Promised Corruption*, 3:1 CAL. REG. L. REP. 3 (Winter 1983)

*A Theory of Regulation: A Platform for State Regulatory Reform*, 5:2 CAL. REG. L. REP. 3 (Spring 1985)

*The Discipline System of the California State Bar: An Initial Report*, 7:3 CAL. REG. L. REP. 1 (Summer 1987)

*Regulation of Telecommunications Utility Modernization Investments: A Proposal to Require an Economic Impact Statement*, 8:1 CAL. REG. L. REP. 1 (Winter 1988)

*Beyond Regulation: The Indigenous Problem of Attorney Self-Importance and Abuse of the English Language*, 8:2 CAL. REG. L. REP. 8 (Spring 1988)

*What's Wrong with Lawyers?*, L.A. DAILY J., August 31, 1988 at 3

*Ethics and the Law*, 1:4 ETHICS (Josephson Institute) (1989)

*Physician Discipline in California: A Code Blue Emergency*, 9:2 CAL. REG. L. REP. 1 (Spring 1989)

*The Seminal Regulatory Issue of the '90s: Media Regulation and Competition*, 9:4 CAL. REG. L. REP. 9 (Fall 1989)

*On the Decline of the American Model: The Ascendancy of the False Ideologues*, 10:4 CAL. REG. L. REP. 8 (Fall 1990)

*Six Radical Ideas*, 11:4 CAL. REG. L. REP. 16 (Fall 1991)

*Airline Deregulation: Crash Landings and the Parachute of Aristotle*, 12:2&3 CAL. REG. L. REP. 1 (Spring/Summer 1992)

*Beyond Airlines: The Failures of Modern Deregulation*, 12:2&3 CAL. REG. L. REP. 4 (Spring/Summer 1992)

*How to Litigate for Children*, 4:1 Child Advocates' Information Exchange 6 (Winter 1993)

*The Attorney General's "Circle of Error" Casts a Shadow Over California's Sunshine Laws*, 13:1 CAL. REG. L. REP. 1 (Winter 1993) (with D'Angelo).

*On Reforming the Regulation of Lawyers*, Bulletin of the Federation of State Medical Boards (Spring 1993)

*A Perspective on California's Regulation of Tax Preparers, Certified Public Accountants, Architects, and Landscape Architects*, 13:4 CAL. REG. L. REP. 5 (Fall 1993) (with D'Angelo)

*Do It Yourself: How Businesses Can Bypass the Legislative Process*, L. A. DAILY J., February 15, 1995

*Agency Access: Rule-Making Procedures Are Complex But Manageable*, L.A. DAILY J., March 15, 1995

*Having An Agenda: How to Gain Notice of Proposed Agency Action*, L. A. DAILY J., April 19, 1995

*Freedom and License: Examining Agencies' Power to Discipline Licensees*, L.A. DAILY J., May 17, 1995

*Changing the Rules: The Office of Administrative Law Faces Defunding*, L.A. DAILY J., June 21, 1995.

*Representation of the General Public Under California's Unfair Competition Act*, 5:1 COMPETITION (the journal of the Antitrust and Trade Regulation Section of the State Bar of

California) (Summer 1995)

*Food Fight: On Challenges to Marketing Order Requirements*, L.A. DAILY J., September 20, 1995

*Sunset Screen: Determining a Board's Life Span*, L.A. DAILY J., October 18, 1995

*Bar Tending: How Agencies May Justify Their Existence*, L.A. DAILY J., November 15, 1995

*Walking the Line: Holding Agency Counsel to Professional Standards*, L. A. DAILY J., December 20, 1995

*Unfair Competition Act Enforcement by Agencies, Prosecutors, and Private Litigants: Who's On First?*, 15:1 CAL. REG. L. REP. 1 (Winter 1995)

*No Class: Advantages of Mandamus Actions*, L. A. DAILY J., January 17, 1996

*Utter Truth: Regulation and the First Amendment*, L. A. DAILY J., February 21, 1996

*Countering Charges: How to Respond to Agency Enforcement*, L.A. DAILY J., March 20, 1996

*Lessons of the Dues Debacle*, CALIFORNIA BAR JOURNAL, June 1998

*The Optimum Remedy for Constitutional Breaches: Multi-Accessed Civil Penalties in Equity*, PEPPERDINE LAW REVIEW, Volume 26: 923, No. 4, 1999

*Preserve a Quiet Place for Decisions*, CALIFORNIA BAR JOURNAL, September 2000, at 8.

*Summit: Taking the Offensive [Proceedings of the 2001 National Public Interest Law Summit]* 40 San Diego L. Rev. 1-244, editor of the compendium of transcripts, briefing materials, *et al.*  The proceedings, broadcast over the internet, included four topics: campaign finance reform, court reform, agency reform, and legislative process reform.  Twenty national leaders from organizations such as the ACLU, NAACP Legal Defense Fund, Natural Resources Defense Council, Common Cause, Public Citizen, and 15 others joined the Center for Public Interest Law to discuss in public the future of public interest advocacy, set priorities, and plan collaborations.

*Big September 11 Contingency Fee Highlights Percentage Recovery Problems*, Forum Essay, LOS ANGELES DAILY JOURNAL, page 6, September 22, 2006.

*State-haters, State-lovers, and Orly Lobel*, 120 HARV. L. REV. F. 36 (2007).

**OPINION PIECES:**
*Let the Sun Shine on Open Meeting Laws*, THE DAILY RECORDER, December 16, 1987, at 16

*Here They Go Again*, CITY MAGAZINE, April/May 1989

*Cancer of Special Interests Infects State Legislature*, S.D. TRIB., December 20, 1988, at B-7

*Balancing the State Budget: Just Get It From The Children*, S.D. UNION, July 21, 1990, at B-11

*Getting a Grip on Illegal Drug Trade*, S.D. UNION-TRIB., May 24, 1992

*The Bad Guys Behind Workers' Comp* (with Corinne D. Clark), S.D. UNION-TRIB., August 15, 1993, at G-3

*Kids Are Losers In Sacramento Budget Battle*, S.D. UNION-TRIB., April 3, 1994, at G-3

*Take Back the Game*, S.D. UNION-TRIB., September 19, 1994

*Sequester Us All, Not Just the Jury*, L.A. TIMES, October 21, 1994

*Alarcon Report: Out at the Plate*, CAL. BAR J., October, 1994

*Just Another Nice Guy?*, L.A. TIMES, November 16, 1994

*California: A Society That Cuts Child Welfare But Boosts Jails*, L. A. TIMES, July 5, 1995, at B-7

*Who Will Pay For the Kids?*, SACRAMENTO BEE, August 1, 1995

*Back to Square One, State Bar Discipline System*, CAL. BAR J., October 1995

*Beyond the Buzzwords, What Reform Really Means*, L.A. TIMES, November 24, 1995

*Reweaving the Safety Net*, S.D. UNION-TRIB., November 26, 1996, G-3

*SAT Scores Show Kids Are Trying Hard*, S.D. UNION-TRIB., May 26, 1996

*Wilson Calls For Sun to Set on Consumer Protections That Don't Serve Consumers*, SACRAMENTO BEE, August 6, 1996

*Up In Smoke: The Tobacco Industry Sets Itself Afire*, S.D. UNION-TRIB., September 12, 1996

*The County Should Mix Democracy With Water*, S.D. UNION-TRIB., January 30, 1997

*Freewheeling: All Californians Should Be Aware of MWD's Water-Pricing Case*, L.A. DAILY J., July 14, 1997

To the Media: Get Serious, Forget Lewinsky, SAN DIEGO UNION TRIBUNE, February 10, 1998

Board Should Protect Patients, Not Treatment, SAN FRANCISCO EXAMINER, August 12, 1998, A-19

*The State-haters: Rationalizing Our Selfishness*, SAN DIEGO UNION TRIBUNE, December 4, 1998, B-7

*Merger Mania and the Dangers of the Emerging Media Monopoly*, SAN DIEGO UNION TRIBUNE, March 2, 2000, B-11.

Proposition 64 Limits Use of Unfair Competition Statute, LA DAILY JOURNAL, September 23, 2004, p. 6.

Time for the Public to Buy Back Its Politicians, Op Ed, SAN DIEGO UNION TRIBUNE,  September 29, 2005, B-9.

*Ballot is Missing Democratic Reform*, Op Ed, SAN DIEGO UNION TRIBUNE, November 7, 2005, B-7.

**Commentaries** in the CALIFORNIA REGULATORY LAW REPORTER:

*Concern from the Department of Real Estate*, 1:3 CAL. REG. L. REP. 7 (Fall 1981)
*OAL — A Red Tape Hydra?*, 1:3 CAL. REG. L. REP. 5 (Fall 1981) (with Erbin).
*The Board of Behavioral Science Examiners*, 2:1 CAL. REG. L. REP. 6 (Winter 1982)
*The Contractors State Licensing Board Specialties*, 2:1 CAL. REG. L. REP. 5 (Winter 1982)
*The Hiring Freeze*, 2:1 CAL. REG. L. REP. 5 (Winter 1982)
*An Arbitrary Hiring Freeze*, 2:2 CAL. REG. L. REP. 17 (Spring 1982)
*Dental Auxiliaries*, 2:2 CAL. REG. L. REP. 17 (Spring 1982)
*Food and Agriculture*, 2:2 CAL. REG. L. REP. 17 (Spring 1982)
*OAL Again*, 2:2 CAL. REG. L. REP. 17 (Spring 1982) (with Erbin)
*The Barber Board*, 2:3 CAL. REG. L. REP. 15 (Summer 1982)
*The Board of Cosmetology: Ever Vigilant*, 2:3 CAL. REG. L. REP. 15 (Summer 1982) (with Erbin)
*Food and Agriculture*, 2:3 CAL. REG. L. REP. 15 (Summer 1982)
*The Hiring Freeze*, 2:3 CAL. REG. L. REP. 14 (Summer 1982)
*Board of Registration for Professional Engineers*, 2:3 CAL. REG. L. REP. 15 (Summer 1982)
*Use the Name 'California Kiwifruit Commission' — Go To Jail*, 2:3 CAL. REG. L. REP. 16 (Summer 1982) (with Erbin)
*Winegrape Growers' Storage Licenses!*, 2:3 CAL. REG. L. REP. 16 (Summer 1982) (with Erbin)
*Board of Cosmetology Considers Ban on Dyslexia-Afflicted Licensees*, 2:4 CAL. REG. L. REP. 10 (Fall 1982)
*The New Motor Vehicle Board*, 2:4 CAL. REG. L. REP 11 (Fall 1982)
*OAL Again*, 2:4 CAL. REG. L. REP 9 (Fall 1982)
*OAL Delay*, 2:4 CAL. REG. L. REP 12 (Fall 1982)
*The Realtors*, 2:4 CAL. REG. L. REP 12 (Fall 1982)
*Solid Waste Management Board: Public Financing for Private Use*, 2:4 CAL. REG. L. REP 10 (Fall 1982)

*The Board of Geology Stumbles Again*, 3:1 CAL. REG. L. REP 13 (Winter 1983) (with Erbin)

*The Licensing Juggernaut Rolls On*, 3:1 CAL. REG. L. REP 12 (Winter 1983) (with Erbin)

*OAL: Paper-Pusher Nonpareil*, 3:1 CAL. REG. L. REP. 13 (Winter 1983) (with Erbin)

*The Contractors State Licensing Board: A Policy of Revealing No Evil*, 3:2 CAL. REG. L. REP. 16 (Spring 1983)

*Guess Who They're Licensing Now?*, 3:2 CAL. REG. L. REP. 17 (Spring 1983) (with Erbin)

*Osteopaths Bar Public Members*, 3:2 CAL. REG. L. REP. 15 (Spring 1983) (with Erbin)

*Osteopaths, Chiropractors and Boxing Promoters*, 3:2 CAL. REG. L. REP. 16 (Spring 1983)

*Agriculture Industry Tries to Avoid Bidding*, 3:3 CAL. REG. L. REP. 12 (Summer 1983) (with Erbin)

*The Board of Fabric Care Finds Eternity*, 3:3 CAL. REG. L. REP. 8 (Summer 1983) (with Erbin)

*Food and Agriculture: Keeping Out Imported Food; A Wheat Commission; and Subsidized Beef Education*, 3:3 CAL. REG. L. REP. 12 (Summer 1983)

*Guess Who They're Licensing Now?*, 3:3 CAL. REG. L. REP. 12 (Summer 1983)

*How to Cut State Spending: Irrational Freezes*, 3:3 CAL. REG. L. REP. 13 (Summer 1983)

*Federal District Court Throws Out Trash Hauling Statute*, 4:1 CAL. REG. L. REP. 12 (Winter 1984)

*The Open Meetings Act (Continued)*, 4:1 CAL. REG. L. REP. 12 (Winter 1984)

*Progress Made on UCAN*, 4:1 CAL. REG. L. REP. 13 (Winter 1984)

*Sunset Turned on Its Head, Part II*, 4:1 CAL. REG. L. REP. 11 (Winter 1984) (with Erbin)

*Bill to Abolish Board of Fabric Care*, 4:2 CAL. REG. L. REP. 15 (Spring 1984)

*The Door Closes on the Open Meetings Act*, 4:2 CAL. REG. L. REP. 16 (Spring 1984) (with Erbin)

*Guess Who They're Licensing Now?*, 4:2 CAL. REG. L. REP. 16 (Spring 1984) (with Erbin)

*Paternalism*, 4:2 CAL. REG. L. REP. 14 (Spring 1984)

*Public Notice Under Attack*, 4:3 CAL. REG. L. REP. 17 (Summer 1984)

*Regulation by Local Government*, 4:3 CAL. REG. L. REP. 15 (Summer 1984)

*Scraping the Bottom of the Licensing Barrel*, 4:3 CAL. REG. L. REP. 19 (Summer 1984) (with Erbin)

*State Bar, A Step in the Right Direction*, 4:3 CAL. REG. L. REP. 17 (Summer 1984)

*When A Bumper Sticker Just Won't Do*, 4:3 CAL. REG. L. REP. 18 (Summer 1984) at 18 (with Erbin).

*The Board of Engineers: Milton Berle in Drag*, 4:4 CAL. REG. L. REP. 8 (Fall 1984) (with Erbin)

*A Loaf of Bread, A Jug of Wine, and a New Marketing Order*, 4:4 CAL. REG. L. REP. 13 (Fall 1984) (with Erbin)

*State Attorney General Apologizes to Reporter*, 4:4 CAL. REG. L. REP. 9 (Fall 1984)

*The Battle of the Bulge: The Board of Fabric Care Launches Counter-Offensive*, 5:1 CAL. REG. L. REP. 8 (Winter 1985)

*Guess Who They're Going to Try to License Next?*, 5:1 CAL. REG. L. REP. 8 (Winter 1985)

*The State Bar: Should People Be Required to Feed the Political Fund of a Group  5:1 CAL. REG. L. REP. 9 (Winter  1985)

*State Bar Entry Standards: When and How Do We Apply Prior Restraints?, 5:1 CAL. REG. L. REP. 10 (Winter 1985)

*Licensing Campaign Consultants: What To Do About a Troubling Problem, 5:2 CAL. REG. L. REP. 21 (Spring 1985)

*Licensing Alternatives Still Popular, 5:3 CAL. REG. L. REP. 17 (Summer 1985)

*Nonfeasance, 5:3 CAL. REG. L. REP. 16 (Summer 1985)

*State Contractor Licenses: A Message from the Board, 5:3 CAL. REG. L. REP. 18 (Summer 1985)

*Banking Regulation Nonfeasance, 5:4 CAL. REG. L. REP. 6 (Fall 1985)

*Public Financing of Campaigns is Essential, 5:4 CAL. REG. L. REP. 7 (Fall 1985)

*Unnecessary Regulation, 5:4 CAL. REG. L. REP. 8 (Fall 1985)

*Public Utilities Administrative Law Judge Proposes Cartel Price Proposals and *Minimum Floors for Trucking, 6:1 CAL. REG. L. REP. 7 (Winter 1986)

*Contractors State Licensing Board: Let's Have More Commotion and Less *Promotion, 6:2 CAL REG. L. REP. 19 (Spring 1986)

*A Proposed Solution to Both the Injustice of Current Joint and Several Liability and the Prospective Injustice of Proposition 51, 6:2 CAL. REG. L. REP. 20 (Spring 1986)

*Regulation by Requiring Disclosure: Item Pricing, 6:2 CAL. REG. L. REP. 19 (Spring 1986)

*Guess Who They're Licensing Now? Reprise, 6:3 CAL. REG. L. REP. 7 (Summer 1986)

*'Impaired' Physicians: The Hitherto Unseen World of Drunk and Addicted Doctors, 6:3 CAL. REG. L. REP. 6 (Summer 1986)

*It's Not Nice to Fool with Maxine Waters, 6:3 CAL. REG. L. REP. 6 (Summer 1986)

*Collecting from the Deadbeat Legislature: A New Tactic, 6:4 CAL. REG. L. REP. 8 (Fall 1986)

*The Decline of Public Members: The Cartels Retake the Field, 6:4 CAL. REG. L. REP. 9 (Fall 1986)

*The State As Deceiver: The Tawdry Business of State-Promoted Gambling, 6:4  CAL. REG. L. REP. 9 (Fall 1986)

*Where Are The Elections?, 7:1 CAL. REG. L. REP. 9 (Winter 1987)

*Solving Disputes Without Lawyers: It's About Time, 7:2 CAL. REG. L. REP. 14 (Spring 1987)

*Some Agencies Need An 'Attitude Adjustment,' 7:2 CAL. REG. L. REP. Vol. 7, No. 2 13 (Spring 1987)

*The Office of Administrative Law: Who's Watching the Watchdog?, 7:4 CAL. REG. L. REP. 10 (Fall 1987)

*New Year's Resolutions for the Legislature: A Consumer Manifesto, 8:1 CAL. REG. L. REP. 12 (Winter 1988)

*An Open Letter to Our Colleagues in the Media, 8:3 CAL. REG. L. REP. 10 (Summer 1988)

*The Agencies of California Speak Out About the Office of Administrative Law: A Startling Survey*, 8:4 CAL. REG. L. REP. 8 (Fall 1988)

*The Need for a New APA*, 9:3 CAL. REG. L. REP. 6 (Summer 1989)

*Administrative Procedure Act Reform*, 10:1 CAL. REG. L. REP. 12 (Winter 1990)

*The Problem With Propositions*, 10:1 CAL. REG. L. REP. 16 (Winter 1990)

*The Governor's Mindless Veto Binge*, 10:4 CAL. REG. L. REP. 13 (Fall 1990)

*No Failures After the S&L Crisis? Don't Bank On It*, 11:1 CAL. REG. L. REP. 11 (Winter 1991)

*The Antidote for Sacramento Corruption: A Wall of Integrity*, 11:2 CAL. REG. L. REP. 19 (Spring 1991)

*The Role of CUBs in the Reclamation of American Government*, 11:3 CAL. REG. L. REP. 19 (Summer 1991)

*The Board of Psychology: We're Okay, You're Not*, 12:1 CAL. REG. L. REP. 1 (Winter 1992)

*Judicial Check of Agency Abuse: The Third District Moots Itself*, 12:1 CAL. REG. L. REP. 3 (Winter 1992)

*Indirect Taxation Through Expropriation of Regulatory Agency Special Funds: The Budget Gets Ugly and The Legislature Gets Mean*, 12:4 CAL. REG. L. REP. 1 (Fall 1992)

*The Regulation of Child Care and California's New "Kids' Plates,"* 13:2&3 CAL. REG. L. REP. 23 (Spring/Summer 1993)

*Public Disclosure of Physician Information: Who Knows What's Best for Whom?*, 13:4 CAL. REG. L. REP. 1 (Fall 1993) (with D'Angelo)

*An Open Letter to DCA Officials and Other Users of Office of Administrative Hearings Administrative Law Judges*, 14:4 CAL. REG. L. REP. 1 (Fall 1994) (with D'Angelo)

*Walking the Line: Holding Agency Counsel to Professional Standards*, 15:4 CAL. REG. L. REP. 12 (Fall 1995) Concern from the Department of Real Estate, Vol. 1, No. 3 (Fall 1981) at 7 (Commentary).

## TESTIMONY, ADDRESSES, COMMENTS:

"The FTC and the Consumer" before the Federal Trade Commission (1968)

"A Critique of the FTC" before the U.S. Senate Operations Committee (1969)

"A Consumer Report on the Interstate Commerce Commission" before the U.S. Senate Commerce Committee (1970)

"Antitrust" in *Consumer '75, A Report of the State Consumer Conference*, California Department of Consumer Affairs (1975)

"Occupational and Vocational Licensing" in *Consumer '76, A Report of the State Consumer Conference*, California Department of Consumer Affairs (November 21-22, 1976)

"Pacific Bell Rate Proceedings: Modernization, Utilization and Productivity" before the Public Utilities Commission in Case No. 85-01-034 (April 18, 1986; July 9, 1986; July 28, 1986; November 18, 1986);  see esp. D. 86-01-026 (Jan. 10, 1986) 20 CPUC 2d 237;

See also D. 89-10-031 (October 12, 1987) 33 CPUC2d 43.

"The Future of Regulation of Local Exchange Carriers" before the Public Utilities Commission (en banc) (September 25, 1987)

"Local Exchange Carrier Alternative Regulatory Frameworks" before the Public Utilities Commission in Case No. 87-11-033 (January 11, 1988)

"A Policy for Trucking Regulation" before the Public Utilities Commission (en banc) (February 17, 1988)

"A Deregulated Rate Policy" before the Public Utilities Commission in Case No. 87-11-033 (September 19, 1988)

"Trucking Deregulation" before the Public Utilities Commission in Case No. 88-08-046 (October 31, 1988)

"Insurance Regulation" before the Insurance Commissioner in File No. REB-1002 (consolidated) (December 11, 1989)

"What's Wrong with Lawyers?" — keynote address at the HALT Convention, Washington, D.C. (1989)

"Sunrise Criteria" — testimony before the California Commission on California State Government Organization and Economy ("Little Hoover Commission") (February 24, 1989)

"A Wall of Integrity" — testimony before California Assembly Select Committee on Ethics (April 5, 1989)

"A Commentary on Media Trends" before the Annual Sacramento Media Awards Banquet (May 18, 1989)

"The Case for Legal Reform" — keynote address at the HALT Convention, San Francisco, CA (September 9, 1989)

"Our Legacy: On Children's Rights" — keynote address to the Second North American Menninger Youth Care Conference, Menninger Villages, KS (October 20, 1989)

"Professional Discipline, California Administrative Law in the Nineties: On the Cutting Edge," ABA Section on Administrative Law and Regulatory Practice (February 10, 1990)

"Affordable Legal Services in California" — testimony before the Senate Judiciary Committee (October 24, 1990)

"What Nader Stands For," 25th Anniversary of *Unsafe at Any Speed* (September 14, 1990)

# Exhibit E

**FREEDMAN BOYD HOLLANDER GOLDBERG IVES & DUNCAN, P.A.**

### JOSEPH GOLDBERG

Joseph Goldberg is a shareholder in the law firm of Freedman Boyd Hollander Goldberg Ives & Duncan, P.A., and is licensed to practice in the state courts of New Mexico and Connecticut and in the federal courts in the Districts of Connecticut, Vermont and New Mexico, the Second, Eighth and Tenth Circuits, as well as in the United States Supreme Court.

Since 1987, Mr. Goldberg has been in full-time practice, limited to complex commercial litigation. Since that time, Mr. Goldberg has taken a leadership position in class actions and other complex litigation which have settled or resulted in jury verdicts in a collective amount in excess of one and one-half billion dollars. He is co-lead counsel in the *Polypropylene Carpet Antitrust Litigation*, **MDL Docket No. 1075** and the *Nylon Carpet Antitrust Litigation*, **No. 4-98-CV-0267-HLM**, pending in the Northern District of Georgia, Rome Division; and in the *Commercial Explosives Antitrust Litigation*, **MDL No. 1093**, pending in the District of Utah. Mr. Goldberg is also co-lead counsel in the *Visa/Mastercard Antitrust Litigation*, **01CV10027**, pending in the Southern District of New York; in the *Resident Physicians Antitrust Litigation*, **No. 02-0873 (PLF)**, pending in the District of Columbia; and in the *New Mexico Vitamins Indirect Purchasers Antitrust Litigation*, **No. CV 99-12056**, pending in the Second Judicial District Court, in Bernalillo County. New Mexico. He is also chair of the Expert Committee in the *Flat Glass Antitrust Litigation*, **Master File Misc. No. 97-550 & MDL No. 1200**, pending in the Western District of Pennsylvania. Mr. Goldberg also serves on the Executive Committee in the *Linerboard Antitrust Litigation*, **MDL No. 1261**, pending in the Eastern District of Pennsylvania. In addition, Mr. Goldberg is actively involved in the *Magnetic Audiotape*

*Antitrust Litigation*, **Master File No. 99-CV-1580**, pending in the Southern District of New York; in the *Vitamins Antitrust Class Actions*, **MDL No. 1285**, pending in the District of Columbia; in the *Carbon Fiber Antitrust Class Action*, **No. CV-99-07796-GHK(RNBx)**, pending in the Central District of California, Western District; and in *Monosodium Glutamate Antitrust Litigation*, **MDL No. 00-1328**, pending in the District of Minnesota.

Mr. Goldberg was plaintiffs' lead counsel in the Philip Morris Securities Class Action, *Lawrence v. Philip Morris*, **Civil No. 94-1494 (JG) (E.D.N.Y.)**, and chair of the Expert Committee in the *Nasdaq Market-Makers Antitrust Class Action*, **94-3996(RWS) & MDL No. 1023 (S.D.N.Y.)**.   In addition, Mr. Goldberg was liaison counsel in *Sun Healthcare Group, Inc., Securities Litigation*, **Master File No. 95-7005 JC/WWD (D.N.M.);** *In Re Diagnostek, Inc., Securities Litigation*, **Master File No. CIV 92-1274 JB/WWD (D.N.M.);** and the PNM Securities Fraud Class Action, *In Re Public Service Company of New Mexico Securities Actions*, **Master Case No. 91-0536-K, (S.D. Cal.)**.   He was one of the lead trial counsel in the *Catfish Antitrust Class Action*, **Master File No. 2:92CV175-D-O & MDL No. 928 (N.D. Miss.)**; and in the Specialty Steel Antitrust Litigation, *TransAmerican Refining Corp. et al. v. Dravo Corp. et al.*, **CA No. H-88-789 consolidated with CA No. 88-0017 (S.D. Tex.)**.   Mr. Goldberg was on the steering committee for plaintiffs' counsel in the *Domestic Air Transportation Antitrust Litigation*, **Master File No. 1:90-CV-2485-MHS & MDL No. 861 (N.D. Ga.)** and the Drill Bits Antitrust Litigation, *Red Eagle Resources Corp. v. Baker Hughes, Inc., et al.*, **CA No. H-91-627 (S.D. Tex.)**.   In addition, he was actively involved in the Chain Link Fence Antitrust Class Action, *Amco Steel Fence Co. et al. v. Master Halco, Inc., et al.*, **CA No. 89-B-1997**, Consolidated (D. Col.); the Infant Formula Antitrust Litigation, *In Re Infant Formula Antitrust Litigation*, **MDL No. 878 (N.D. Fla.)**; the *Potash Antitrust Litigation*, **Civil File No. 3-93-197**

2

**(D. Minn.) & MDL. No. 981**; the ***Commercial Tissue Products Antitrust Litigation***, **MDL No. 1189 (N.D. Fla.)**; and the ***Carbon Dioxide Antitrust Litigation***, **MDL No. 940 (M.D. Fla.)**.

Mr. Goldberg has an AV rating from Martindale-Hubbell and has been listed in <u>The Best Lawyers in America</u> since 1995.

### DAVID A. FREEDMAN

David Freedman is a 1966 graduate of Columbia University (Columbia College) and a 1973 graduate of the University of New Mexico School of Law, where he was an editor of the New *Mexico Law Review*. Since 1973, he has been in full time practice, including complex commercial and criminal litigation.

Mr. Freedman was one of the lead counsel in ***In Re New Mexico Vitamins Indirect Purchasers Antitrust Litigation***, **No. CV 99-12056**, in the Second Judicial District Court in Bernalillo county, New Mexico. Mr. Freedman was liaison counsel in ***In Re Mesa Airlines, Inc., Securities Litigation***, **Master File No. CV 94-690 JC (D.N.M.)** and in ***In Re Horizon/CMS Healthcare Corporation Securities Litigation***, **Master File No. 96-442 BB/LCS (D.N.M.)**. Mr. Freedman was one of the attorneys representing the named plaintiff in the ***Philip Morris Securities Class Action Lawrence v. Philip Morris***, **Civil No. 94-1494 (JG) (E.D.N.Y.)**. The firm was lead counsel in that case. In addition, Mr. Freedman was one of plaintiffs' counsel in ***In Re Diagnostek, Inc., Securities Litigation***, **Master File No. CIV 92-1274 JB/WWD (D.N.M.)**; the ***Domestic Air Transportation Antitrust Litigation***, **Master File No. 1:90-CV-2485-MHS & MDL No. 861 (N.D. Ga.)**; the Drill Bits Antitrust Litigation, ***Red Eagle Resources Corp. v. Baker Hughes, Inc., et al.***, **CA No. H-91-627 (S.D. Tex.)**; the ***Potash Antitrust Litigation,*** **Civil File No. 3-93-197 (D. Minn.) & MDL No. 981**; and the ***Carbon Dioxide Antitrust Litigation***, **MDL No. 940 (M.D. Fla.)**. Mr. Freedman also represented defendants in the Moncor Securities

Class Action, ***In Re Moncor Securities Litigation***, **Civ. No. 84-1329 C, Consolidated (D.N.M.).** Mr. Freedman has an AV rating in Martindale-Hubbell and is listed in <u>The Best Lawyers in America</u>.


### JOHN W. BOYD

Mr. Boyd is a 1969 graduate of Columbia University (Columbia College) and a 1973 *cum laude* graduate of the University of New Mexico School of Law, where he was editor of the Natural Resources Law Review.   Mr. Boyd is the author of the chapter on Rule 68 Offers of Judgment in "Settlement Agreements In Commercial Disputes," Richard Rosen, Ed. (Aspen Law & Business).   Since 1973, he has been in full-time practice, including complex commercial litigation.   Mr. Boyd was lead counsel for one of the defendants in ***Honeywell v. Unisys, et al.***, **Civil No. 3-88-Civil-697 (D. MN.).**   He represented two defendants in the Moncor Securities Class Action, ***In Re Moncor Securities Litigation***, **Civil No. 84-1329-C, Consolidated (D.N.M.).**   Mr. Boyd was active in representing a class of 400 retail pharmacies in the Wisconsin Pharmacy Class Action Litigation, ***K-S Pharmacies et al. v. American Home Products, et al.***, **No. 94 CV 2384 (Wis. Cir. Ct., Dane County, filed Jul. 27, 1994).**   He was one of the attorneys representing the named plaintiff in the class action ***Lawrence v. Philip Morris***, **Civil No. 94-1494 (E.D.N.Y.).**   The firm was lead counsel in that case.   Mr. Boyd has an AV rating from Martindale-Hubbell and has been listed in <u>The Best Lawyers in America</u> since 1993.

### DAVID H. URIAS

Mr. Urias is an associate in the Freedman Boyd firm and has worked for the firm since 2008.   Prior to that time, Mr. Urias was a litigator with MALDEF, a national non-profit civil rights

4

organization based in San Antonio, Texas, and an associate at Fried, Frank, Harris, Shriver & Jacobson, LLP in New York, New York.   At Fried Frank, his practice focused on representing various clients in commercial, securities, and shareholder litigation matters as well as securities enforcement matters before the Securities and Exchange Commission.   At Freedman, Mr. Urias' practices in various civil litigation areas including securities litigation, class actions, employment, and other complex civil matters.   Along with Mr. Goldberg, Mr. Urias represented the state investment funds in the Countrywide litigation.

Mr. Urias has extensive experience in all aspects of complex, commercial and antitrust litigation, including document discovery, taking and defending depositions, and drafting and arguing motions.

Mr. Urias is licensed to practice in New Mexico and New York state courts, the District of New Mexico, the Southern and Eastern Districts of New York, the Southern and Northern Districts of Texas, the United States Circuit Court of Appeals as well as the Supreme Court of the United States.