1
2
3
4
5
6
7

8          **IN THE UNITED STATES DISTRICT COURT**

9          **SOUTHERN DISTRICT OF CALIFORNIA**

10   MICHAEL SHAMES; GARY GRAMKOW,          Case No. 07-CV-2174-MMA(WMc)
     on behalf of themselves and on behalf of all
11   persons similarly situated,                        **AMENDED ORDER PRELIMINARILY
                                                         APPROVING SETTLEMENT,**
12                              Plaintiffs,             **CERTIFYING SETTLEMENT CLASS,
                                                         APPOINTING CLASS**
13   v.                                                 **REPRESENTATIVE AND LEAD
                                                         COUNSEL, AND PROVIDING FOR**
14   THE HERTZ CORPORATION, *et al.*,                   **NOTICE**
15                              Defendants.
                                                        [Doc. No. 310]
16

17          Having reached settlement of the instant action (the "Litigation"), Plaintiffs now seek

18   preliminary approval of the settlement pursuant to Federal Rule of Civil Procedure 23(e),

19   certification of a settlement class, appointment of class representatives and lead counsel, and

20   provisions for class notice.  Plaintiffs' motion includes an executed settlement agreement, which

21   they refer to as the Stipulation of Settlement dated May 15, 2012 (the "Stipulation"), which,

22   together with the exhibits annexed thereto, sets forth the terms and conditions for a proposed

23   settlement of the Litigation.[1]  [Exh. A to Motion for Preliminary Approval, Doc. No. 310-2.]  The

24   Court **GRANTS** Plaintiffs' motion as set forth below.

25

26

27          [1] Except where otherwise defined in this Order, all capitalized terms herein have the same meanings as set
     forth in the Stipulation.
28

                                                   1                                          07CV2174

1.     The Court preliminarily **APPROVES** the Stipulation and the settlement set forth therein, subject to further consideration at the Final Approval Hearing described below.

2.     The Court certifies a Class, for settlement purposes only, defined as: "all Persons (other than those Persons who timely and validly request exclusion from the Class) who rented a car directly from a Rental Car Defendant for pick up at a California Airport Location during the period from January 1, 2007 through November 14, 2007, and were charged and paid to the Rental Car Defendant an Airport Concession Fee, Tourism Commission Assessment Fee, or both, for that rental car as a separate line item or items on their invoices.  Excluded from the Class are: (i) rentals made pursuant to a pre-existing agreement between a business or governmental entity and a Rental Car Defendant pursuant to which the rental charge was determined; and (ii) rentals in which the customer paid a package price to a third party tour operator or on-line booking agency rather than a Rental Car Defendant.  Also excluded from the Class are the Defendants, the directors, officers, subsidiaries, and affiliates of Defendants, any person, firm, trust, corporation, officer, director or other individual or entity in which any Defendant has a controlling interest, and the legal representatives, affiliates, heirs, successors-in-interest or assigns of any such excluded person, Related Parties as well as any judges or mediators involved in the Litigation (including the Hon. Michael M. Anello, Magistrate Judge McCurine, and the Hon. Ronald Sabraw (ret.))."

3.     Pursuant to Rule 23 of the Federal Rules of Civil Procedure, and solely for the purposes of settlement, the Court preliminarily certifies Gary Gramkow as Class Representative ("Class Representative") for the Class and appoints Hulett Harper Stewart LLP, Dennis Stewart and Sullivan Hill Lewin Rez and Engel, Donald G. Rez as Lead Counsel.

4.     Solely for purposes of  the settlement, the Court preliminarily finds that the prerequisites for a class action under Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure have been satisfied in that:  (a) the members of the Class are so numerous that joinder of all Class Members in the Litigation is impracticable; (b) there are questions of law and fact common to the Class which predominate over any individual questions; (c) the claims of the Class Representative are typical of the claims of the Class; (d) Class Representative and his

07CV2174

1    counsel have fairly and adequately represented and protected the interests of all of the Class

2    Members; and (e) a class action for purposes of settlement is superior to other available methods

3    for the fair and efficient adjudication of the controversy, considering (i) the interests of the

4    members of the Class in individually controlling the prosecution of the separate actions; (ii) the

5    extent and nature of any litigation concerning the controversy already commenced by members of

6    the Class; and (iii) the desirability or undesirability of continuing the litigation of these claims in

7    this particular forum.

8        5.      A hearing (the "Final Approval Hearing") shall be held before this Court on

9    **October 29, 2012, at 2:30 p.m.**, at the United States District Court for the Southern District of

10   California, 940 Front Street, San Diego, California 92101, to determine whether the proposed

11   settlement of the Litigation on the terms and conditions provided for in the Stipulation is fair,

12   reasonable, and adequate to the Class and should be approved by the Court; whether a Judgment

13   as provided in ¶ 1.17 of the Stipulation should be entered and to determine the amount of fees and

14   expenses that should be awarded to Plaintiffs' Counsel and whether to award a service award

15   payment to the Class Representative.  The Court may adjourn the Final Approval Hearing without

16   further notice to the Class Members.

17       6.      The Court approves, as to form and content, the Notice of Proposed Settlement of

18   Class Action, substantially in the forms of Exhibits A-1 through A-6, as appropriate, (individually

19   or collectively, the "Notice"),  and finds that the e-mailing or mailing and distribution of the

20   Notice and publishing of the  Notice substantially in the manner and form set forth in ¶ 7 of this

21   Order meet the requirements of Federal Rule of Civil Procedure 23 and due process, and is the

22   best notice practicable under the circumstances and shall constitute due and sufficient notice to all

23   Persons entitled thereto.

24       7.      The firm of Kurtzman Carson Consultants ("Administrator") is hereby appointed

25   to supervise and administer the notice procedure as well as the processing of claims as more fully

26   set forth below:

27           (a)      The Administrator shall make reasonable efforts to identify all Class

28   Members based on the rental data provided by the Rental Car Defendants, as set forth in the

1   Stipulation. **No later than July 6, 2012** (the "Notice Date"), the Administrator shall cause a copy

2   of the Notice, substantially in the forms annexed to this Order as Exhibit A-1 or A-3, to be e-

3   mailed or mailed by standard-class mail to all Class Members who are identified;

4           (b)      **No later than July 27, 2012**, the Administrator shall cause the Publication

5   Notice annexed to this Order as Exhibit A-4 to be published in accordance with the Plan for

6   Publication Notice annexed to this Order as Exhibit B;

7           (c)      **No later than October 22, 2012**, Lead Counsel shall cause to be served on

8   Defendants' counsel and filed with the Court proof, by affidavit or declaration, of such mailing

9   and publishing; and,

10           (d)      Provided the settlement is finally approved by this Court, then subsequent

11   to such approval and no later than 60 days before the expiration of the Election Period, the

12   Administrator shall cause the Supplemental Notice, substantially in the form annexed to this

13   Order as Exhibits A-2 and A-5, to be provided as set forth in the Stipulation.

14           8.      All Class Members shall be bound by all determinations and judgments in the

15   Litigation concerning the settlement, whether favorable or unfavorable to the Class.

16           9.      Class Members who wish to participate in the settlement shall complete and

17   submit, electronically on the Administrator's settlement website or by mail, an Election of

18   Benefits Form, in accordance with the instructions contained in the Notice, on the Administrator's

19   settlement website, or both.  Unless the Court orders otherwise, all Election of Benefits Forms

20   must be submitted electronically or postmarked **no later than January 25, 2013**.  Any Class

21   Member who does not timely submit an Election of Benefits Form within the time provided shall

22   be barred from receiving the benefits of the settlement, unless otherwise ordered by the Court.

23           10.      Any Class Member may enter an appearance in the Litigation, at their own

24   expense, individually or through counsel of their own choice.  If they do not enter an appearance,

25   they will be represented by Lead Counsel.

26           11.      Any Person falling within the definition of the Class may, upon request, be

27   excluded from the Class.  Any such Person must submit to the Administrator a request for

28   exclusion ("Request for Exclusion"), postmarked **no later than October 1, 2012**.  A Request for

07CV2174

1  Exclusion must state: (a) the name, address, and telephone number of the Person requesting

2  exclusion; and (b) that the Person wishes to be excluded from the Class.  All Persons who submit

3  valid and timely Requests for Exclusion in the manner set forth in this paragraph shall have no

4  rights under the Stipulation, shall not share in the distribution of the benefits of the settlement,

5  and shall not be bound by the Stipulation or the Judgment entered in the Litigation.

6        12.    Any Class Member who does not properly and timely submit a Request for

7  Exclusion as set forth above shall be included in the Class and shall be bound by all the terms and

8  provisions of the Stipulation, whether or not such Class Member shall have objected to the

9  settlement and whether or not such Class Member makes a claim upon or participates in the

10  settlement.

11        13.    Any Class Member may appear and show cause, if he, she or it has any, why the

12  proposed settlement of the Litigation should or should not be approved as fair, reasonable, and

13  adequate, why a judgment should or should not be entered thereon, why attorneys' fees and

14  expenses should or should not be awarded to Plaintiffs' Counsel or why an service award should

15  or should not be made to the Class Representative; provided, however, that no Class Member or

16  any other Person shall be heard or entitled to contest such matters, unless that Person has filed

17  written objections with the Clerk of the United States District Court for the Southern District of

18  California **on or before October 1, 2012**.  Any Class Member who does not file objections shall

19  be deemed to have waived such objection and shall be foreclosed from making any objection to

20  the fairness or adequacy of the proposed settlement as set forth in the Stipulation, or to the award

21  of attorneys' fees and expenses to Plaintiffs' Counsel, or to any service award to the Class

22  Representative unless otherwise ordered by the Court.

23        14.    The parties shall file briefs and supporting documents in support of the settlement

24  and any application for attorneys' fees **no later than September 10, 2012**.  Any party may

25  concurrently file a 5-page maximum objection to the joint Final Approval Hearing briefs.  A

26  response, if any, to objections to the settlement and any application for attorneys' fees shall be

27  filed **no later than October 15, 2012**.

28

07CV2174

15.     At or after the Final Approval Hearing, the Court shall determine whether the application for attorneys' fees or payment of expenses and service awards to the Class Representative shall be approved.

16.     All reasonable expenses incurred in identifying and notifying Class Members, as well as the Administrator's other responsibilities as specified herein or in the Stipulation, shall be paid as set forth in the Stipulation.  In the event the settlement is not approved by the Court, or otherwise fails to become effective, neither Plaintiffs nor any of their counsel shall have any obligation to repay any amounts incurred or properly disbursed pursuant to ¶¶ 4.7 or 5.5 of the Stipulation.

17.     Neither the Stipulation, nor any of its terms or provisions, nor any of the negotiations or proceedings connected with it, shall be construed as an admission or concession by the Defendants of the truth of any of the allegations in the Litigation, or of any liability, fault, or wrongdoing of any kind and neither the Stipulation nor any submission by any party in connection with the motion(s) for preliminary or final approval or application for attorneys fees and expenses or appeal therefrom or any related motions or proceedings may be used in this Litigation or in any other proceeding for any purpose other than as specified in the Stipulation.

18.     The Court reserves the option to adjourn the date of the Final Approval Hearing without further notice to the Class Members, and retains jurisdiction to consider all further applications arising out of or connected with the proposed settlement.  The Court may approve the settlement, with such modifications as may be agreed to by the Settling Parties, if appropriate, without further notice to the Class.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

07CV2174

1    19.    If the Stipulation and the settlement set forth therein is not approved or

2  consummated for any reason whatsoever, the Stipulation and settlement and all proceedings had

3  in connection therewith shall be without prejudice to the rights of the Settling Parties *status quo*

4  *ante*.

5  **IT IS SO ORDERED.**

6  DATED:  May 22, 2012

7                                                    Hon. Michael M. Anello
                                                     United States District Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

07CV2174

# Exhibit A-1

To:
From: administrator@ACFTCAsettlement.com
Subject: Legal Notice about Vehicles Rented at California Airports

**To file your Election of Benefits Form online:**
**ID Number: XXXXXXX**

### You can file a claim for cash or vouchers from a class action settlement about your rental of a vehicle at a California airport location from January 1, 2007 to November 14, 2007.

A settlement has been reached with The Hertz Corporation, Dollar Thrifty Automotive Group, Inc., Avis Budget Group, Inc., Vanguard Car Rental USA, LLC, Enterprise Holdings, Inc., Fox Rent A Car, Inc. and the California Travel and Tourism Commission in a class action lawsuit claiming that these companies agreed with each other to pass on the Airport Concession Fee (ACF) and Tourism Commission Assessment (TCA) to customers for rentals at certain California airport locations. The Defendants deny all of the claims in the lawsuit, but have agreed to the settlement to avoid the cost and risk of a trial.

WHO IS INCLUDED? Defendants' records show that you are included in the settlement. Generally, the settlement includes people who rented a vehicle directly from corporate-owned locations of Alamo, Avis, Budget, Dollar, Enterprise, Fox Rent A Car, Hertz, National, or Thrifty for pick up at a California airport location from January 1, 2007 through November 14, 2007, and who were charged and paid an ACF and/or TCA as a separate line item on their invoice. Rentals from non-corporate owned airport locations, rentals made as part of a pre-existing agreement with a business or governmental body according to which the rental charge was determined, and rentals where a package price was paid to a tour operator or online booking agency (like Priceline or Hotwire) are not included and are not entitled to cash payments or vouchers.

WHAT CAN YOU GET? You can elect to receive one of the cash or voucher options below based on the total number of days you rented one or more vehicles directly from that rental car defendant at a California airport location from January 1, 2007 to November 14, 2007, and paid an ACF and/or TCA as a separate line item on your invoice. Benefit options are:

| Total number of rental days | Option | Description |
|---|---|---|
| Any | Cash | $2 per day ($5 minimum payment) |
| Less than eight | One—One Day Voucher | one voucher good for free time and mileage for one rental day |
| Eight or more | Two—One Day Vouchers | two vouchers, each good for free time and mileage for one rental day; or |

| | One—Two Day Voucher | one voucher good for free time and mileage for <u>two</u> rental days |
|---|---|---|

Vouchers will be issued in the brand name of the rental car company that charged and collected the ACF and/or TCA, and will be available for use at any of that rental car company's U.S. corporate-owned locations. Avis and Budget vouchers may be redeemed at an Avis or Budget U.S. corporate-owned location. The settlement will also require the California Travel and Tourism Commission to adopt certain practices related to meetings and its communications with the public and rental car companies about Tourism Commission Assessments.

**How to Get Benefits?** You must submit an Election of Benefits Form by **Month 00, 2012** to get a cash payment or vouchers. Using the ID number above, you can submit a form online at <u>www.ACFTCAsettlement.com</u>. You may also request one by calling 1-000-000-0000 or by sending a letter by mail to the claims administrator.

**Your Other Options?** If you submit an Election of Benefits Form or do nothing, you will be legally bound by the settlement and you will give up your right to sue the Defendants for any claim asserted in this lawsuit or released by the Stipulation of Settlement. If you do not want to be legally bound by the settlement or be able to get a cash payment or voucher from it, you must exclude yourself by **Month 00, 2012**. If you do not exclude yourself, you may object to the settlement or you may ask for permission for you or your lawyer to appear and speak at the hearing—at your own cost—but you don't have to. The deadline to submit objections and requests to appear is **Month 00, 2012**. The detailed notice, available at the website, explains how to act on all of your options.

The Court will hold a hearing on **Month 00, 2012** to consider whether to approve: the settlement; attorneys' fees, costs, and expenses of up to $5,870,000; and a $2,000 payment to the Class Representative. These fees, costs, expenses and payments will be paid separately by the Defendants and will not reduce the amount of cash or vouchers available. The complete terms of the settlement, including the benefits you may be entitled to receive and the rights you may be giving up are contained in the Stipulation of Settlement, which may be found online at www.ACFTCAsettlement.com.

**File your claim online at <u>www.ACFTCAsettlement.com</u>. You may also request an Election of Benefits Form and more information by calling 1-000-000-0000.**

# Exhibit A-2

To:
From: administrator@ACFTCAsettlement.com
Subject: Reminder Notice about Vehicles Rented at California Airports

**To file your Election of Benefits Form online:**
**ID Number: XXXXXXX**

<u>**Reminder: Submission deadline is Month 00, 2012**</u>
**You can file a claim for cash or vouchers from a class action settlement about your rental of a vehicle at a California airport location.**

Records show that you rented a vehicle directly from a corporate-owned location of Alamo, Avis, Budget, Dollar, Enterprise, Fox Rent A Car, Hertz, National, or Thrifty for pick up at a California airport location between January 1, 2007 and November 14, 2007, and were charged and paid an Airport Concession Fee (ACF) and/or Tourism Commission Assessment (TCA) as a separate line item on your invoice. You can elect to receive one of the cash or voucher options below based on the total number of days you rented one or more vehicles directly from that rental car defendant at a California airport location from January 1, 2007 to November 14, 2007, and paid an ACF and/or TCA as a separate line item on your invoice. Benefit options are:

| Total number of rental days | Option | Description |
|---|---|---|
| Any | Cash | $2 per day ($5 minimum payment) |
| Less than eight | One—One Day Voucher | one voucher good for free time and mileage for <u>one</u> rental day |
| Eight or more | Two—One Day Vouchers | two vouchers, each good for free time and mileage for <u>one</u> rental day; or |
| | One—Two Day Voucher | one voucher good for free time and mileage for <u>two</u> rental days |

Rentals from non-corporate owned airport locations, rentals made as part of a pre-existing agreement with a business or governmental body according to which the rental charge was determined, and rentals where a package price was paid to a tour operator or online booking agency (like Priceline or Hotwire) are <u>not</u> included and are <u>not</u> entitled to cash payments or vouchers.

Vouchers will be issued in the brand name of the rental car company that charged and collected the ACF and/or TCA, and will be available for use at that rental car company's U.S. corporate-owned locations. Avis and Budget vouchers may be redeemed at an Avis or Budget U.S. corporate-owned location.

To get your cash payment or voucher you must submit an Election of Benefits Form. Using the ID number above, you can submit a form online at www.ACFTCAsettlement.com. You may also request one by calling 1-000-000-0000 or by sending a letter by mail to the claims administrator. **Remember, the deadline to submit or mail your Election of Benefits Form is Month 00, 2012**.

The cash payments and vouchers are the result of a settlement that was reached with The Hertz Corporation, Dollar Thrifty Automotive Group, Inc., Avis Budget Group, Inc., Vanguard Car Rental USA, LLC, Enterprise Holdings, Inc., Fox Rent A Car, Inc. and the California Travel and Tourism Commission in a class action lawsuit claiming that these companies agreed with each other to pass on the Airport Concession Fee and Tourism Commission Assessment to customers for rentals at certain California airport locations. The Defendants deny all of the claims in the lawsuit, but have agreed to the settlement to avoid the cost and risk of a trial.  The settlement will also require the California Travel and Tourism Commission to adopt certain practices related to meetings and its communications with the public and rental car companies about Tourism Commission Assessments.

**File your claim online at <u>www.ACFTCAsettlement.com</u>.
You may also request an Election of Benefits Form and
more information by calling 1-000-000-0000.**

# Exhibit A-3

A settlement has been reached with The Hertz Corporation, Dollar Thrifty Automotive Group, Inc., Avis Budget Group, Inc., Vanguard Car Rental USA, LLC, Enterprise Holdings, Inc., Fox Rent A Car, Inc. and the California Travel and Tourism Commission in a class action lawsuit claiming that these companies agreed with each other to pass on the Airport Concession Fee (ACF) and Tourism Commission Assessment (TCA) to customers for rentals at certain California airport locations. The Defendants deny all of the claims in the lawsuit, but have agreed to the settlement to avoid the cost and risk of a trial.

**Who's Included?** Defendants' records show that you are included in the settlement. Generally, the settlement includes people who rented a vehicle directly from corporate-owned locations of Alamo, Avis, Budget, Dollar, Enterprise, Fox Rent A Car, Hertz, National, or Thrifty for pick up at a California airport location from January 1, 2007 through November 14, 2007, and were charged and paid an ACF and/or TCA as a separate line item on their invoice. Rentals from non-corporate owned airport locations, rentals made as part of a pre-existing agreement with a business or governmental according to which the rental charge was determined, and rentals where a package price was paid to a tour operator or online booking agency (like Priceline or Hotwire) are not included and are not entitled to cash payments or vouchers.

**What Can You Get?** You can elect to receive one of the options below based on the total number of days you rented one or more vehicles directly from that rental car defendant at a California airport location from 1/1/07 to 11/14/07, and paid an ACF and/or TCA as a separate line item on your invoice. Options are: (1) $2 for each day the vehicles were rented ($5 minimum payment); or (2) if the vehicles were rented for less than 8 days, one voucher good for free time and mileage for one rental day; or (3) if the vehicles were rented for 8 or more days, either (a) two—one day vouchers each good for free time and mileage for one rental day, or (b) one—two day voucher good for free time and mileage for two rental days. Vouchers will be issued in the brand name of each rental car company that charged you the ACF and/or TCA, and will be available for use at any of that rental car company's U.S. corporate-owned locations.

**How to Get Benefits?** Use the code on the front of this postcard to submit your Election of Benefits Form online by **Month 00, 2012**. Forms are also available at www.ACFTCAsettlement.com or by calling 1-000-000-0000.

**Your Other Options**. If you do nothing, your rights will be affected. If you don't want to be legally bound by the settlement, you must exclude yourself from it by **Month 00, 2012**. Unless you exclude yourself you won't be able to sue the Defendants for any claim asserted in this lawsuit or released by the Stipulation of Settlement. If you stay in the settlement (i.e., don't exclude yourself), you may object to it or you may ask for permission for you or your own lawyer to appear and speak at the hearing—at your own cost—but you don't have to. Objections and requests to appear are due by **Month 00, 2012**. More information is in the detailed notice and Stipulation of Settlement which are available at the website.

The Court will hold a hearing on Month 00, 2012 to consider whether to approve: the settlement; attorneys' fees, costs, and expenses of up to $5,870,000; and a $2,000 payment to the Class Representative.

**File your Election of Benefits Form online at www.ACFTCAsettlement.com or get one by calling 1-000-000-0000.**

LEGAL NOTICE

**You can file a claim for cash or vouchers from a class action settlement because you rented a vehicle from a California airport location between January 1, 2007 and November 14, 2007.**

**1-000-000-0000**
**www.ACFTCAsettlement.com**

HZS

ACF/TCA
Settlement Administrator
P.O. Box 0000
City, ST 00000-0000

Presorted
First-Class Mail
U.S. Postage
PAID
City, ST
Permit No. 0000

Postal Service: Please Do Not Mark Barcode

{BARCODE}
JOHN Q CLASSMEMBER
123 ABC STREET
NOVATO, CA 94948-0000

Election of Benefits ID#: [XXXXXXXXXXXX]
(use ID to file your claim online)

# Exhibit A-4

LEGAL NOTICE

# If you rented a vehicle at a California airport location between January 1, 2007 and November 14, 2007, you may be entitled to cash or vouchers from a class action settlement.

A settlement has been reached with The Hertz Corporation, Dollar Thrifty Automotive Group, Inc., Avis Budget Group, Inc., Vanguard Car Rental USA, LLC, Enterprise Holdings, Inc., Fox Rent A Car, Inc. and the California Travel and Tourism Commission in a class action lawsuit claiming that these companies agreed with each other to pass on the Airport Concession Fee (ACF) and Tourism Commission Assessment (TCA) to customers for rentals at certain California airport locations. The Defendants deny all of the claims in the lawsuit, but have agreed to the settlement to avoid the cost and risk of a trial.

**WHO IS INCLUDED?** Generally, the settlement includes people who rented a vehicle directly from corporate-owned locations of Alamo, Avis, Budget, Dollar, Enterprise, Fox Rent A Car, Hertz, National or Thrifty for pick up at a California airport location from 1/1/07-11/14/07, and were charged and paid to the rental car company an ACF and/or TCA as a separate line item on their invoice. Rentals from non-corporate owned airport locations, rentals made as part of a pre-existing agreement with a business or governmental body according to which the rental charge was determined, and rentals where a package price was paid to a tour operator or online booking agency (like Priceline or Hotwire) are not included and are not entitled to cash payments or vouchers.

**WHAT DOES THE SETTLEMENT PROVIDE?** Those included in the settlement can elect to receive one of the following options based on the total number of days they rented one or more vehicles directly from that rental car defendant at a California airport location from 1/1/07 to 11/14/07, and paid an ACF and/or TCA as a separate line item on their invoice. Options are: (1) $2 for each day the vehicles were rented ($5 minimum payment); or (2) if the vehicles were rented for less than eight days, one voucher good for free time and mileage for one rental day; or (3) if the vehicles were rented for eight or more days, the choice of either (a) two—one day vouchers each good for free time and mileage for one rental day, or (b) one—two day voucher good for free time and mileage

for two rental days. Vouchers will be issued in the brand name of the rental car company that charged and collected the ACF and/or TCA, and will be available for use at any of that rental car company's U.S. corporate-owned locations.

**HOW DO YOU ASK FOR A CASH PAYMENT OR VOUCHER?** Submit an Election of Benefits Form online by **Month 00, 2012**. Forms are also available at the website or by calling 1-000-000-0000.

**WHAT ARE YOUR OPTIONS?** If you submit an Election of Benefits Form or do nothing, you will be legally bound by the settlement and give up your right to sue the Defendants for any claim asserted in this lawsuit or released by the Stipulation of Settlement. If you do not want to be legally bound by the settlement or be able to get a cash payment or voucher from it, you must exclude yourself by **Month 00, 2012**. If you do not exclude yourself, you may object to the settlement or you may ask for permission for you or your lawyer to appear and speak at the hearing—at your own cost—but you don't have to. The deadline to submit objections and requests to appear is **Month 00, 2012**.

**THE COURT'S FAIRNESS HEARING.** The U.S. District Court for the Southern District of California will hold a hearing in this case (*Shames v. The Hertz Corp.*, No. 07cv2174-MMA), on Month 00, 2012 to consider whether to approve the settlement, payment of attorneys' fees, costs, and expenses of up to $5,870,000 and a $2,000 payment to the Class Representative.

**HOW DO YOU GET MORE INFORMATION?** More information is in the detailed notice and Stipulation of Settlement which are available at the website. You can also call or write to ACF/TCA Settlement Administrator, c/o KCC LLC, PO Box 0000, City, ST 00000-0000.

## 1-000-000-0000
## www.ACFTCAsettlement.com

# Exhibit A-5

LEGAL NOTICE

# Reminder: Submission deadline is Month 00, 2012

## If you rented a vehicle at a California airport location between January 1, 2007 and November 14, 2007, you may be entitled to cash or vouchers.

If you rented a vehicle directly from corporate-owned locations of Alamo, Avis, Budget, Dollar, Enterprise, Fox Rent A Car, Hertz, National, or Thrifty for pick up at a California airport location from January 1, 2007 through November 14, 2007, and you were charged and paid an Airport Concession Fee (ACF) and/or Tourism Commission Assessment (TCA) as a separate line item on your invoice you may be entitled to a cash payment or vouchers from a class action settlement. Benefit options are: (1) $2 for each day the vehicles were rented ($5 minimum payment); or (2) if the vehicles were rented for less than eight days, one voucher good for free time and mileage for one rental day; or (3) if the vehicles were rented for eight or more days, the choice of either (a) two—one day vouchers each good for free time and mileage for one rental day, or (b) one—two day voucher good for free time and mileage for two rental days. Rentals from non-corporate owned airport location, rentals made as part of a pre-existing agreement with a business or governmental body according to which the rental charge was determined, and rentals where a package price was paid to a tour operator or online booking agency (such as Priceline or Hotwire) are not included and are not entitled to cash payments or vouchers.

Vouchers will be issued in the brand name of the rental car company that charged and collected the ACF and/or TCA, and will be available for use at any of that rental car company's U.S. corporate-owned locations.

To get your cash payment or voucher you must submit an Election of Benefits Form. You may submit a form online or request one by calling 1-000-000-0000. Remember, the deadline to submit or mail your Election of Benefits Form is **Month 00, 2012**.

The cash payments and vouchers are the result of a settlement that was reached with The Hertz Corporation, Dollar Thrifty Automotive Group, Inc., Avis Budget Group, Inc., Vanguard Car Rental USA, LLC, Enterprise Holdings, Inc., Fox Rent A Car, Inc. and the California Travel and Tourism Commission in a class action lawsuit claiming that these companies agreed with each other to pass on the ACF and TCA to customers for rentals at certain California airport locations. The Defendants deny all of the claims in the lawsuit, but have agreed to the settlement to avoid the cost and risk of a trial. The settlement will also require the California Travel and Tourism Commission to adopt certain practices related to meetings and its communications with the public and rental car companies about Tourism Commission Assessments.

## File your Election of Benefits Form online at www.ACFTCAsettlement.com or get one by calling 1-000-000-0000.

# Exhibit A-6

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF CALIFORNIA

# If you rented a vehicle at a California airport location between January 1, 2007 and November 14, 2007, you may be entitled to cash or vouchers from a class action settlement.

*A court authorized this Notice. This is <u>not</u> a solicitation from a lawyer.*

- A settlement has been reached in a class action lawsuit claiming that certain car rental companies agreed with each other to pass on the Airport Concession Fee and Tourism Commission Assessment to customers who rented vehicles from certain California airport locations.

- The settlement provides cash payments or vouchers to those included in the settlement.

- The settlement will also require the California Travel and Tourism Commission to adopt certain practices related to meetings and its communications with the public and rental car companies about Tourism Commission Assessments.

- This notice summarizes the proposed settlement. The complete terms of the settlement, including information describing the benefits you may be entitled to receive and the rights you may be giving up, are contained in the Stipulation of Settlement, which may be found online at www.ACFTCAsettlement.com.

- Your legal rights are affected whether you act or don't act. Read this notice carefully.

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT: | |
|---|---|
| SUBMIT AN ELECTION OF BENEFITS FORM | The only way to get a cash payment or voucher. |
| EXCLUDE YOURSELF | Get no payment or voucher. This is the only option that allows you to ever be part of another lawsuit against the Defendants about the legal claims asserted in this lawsuit or released through the settlement. |
| OBJECT | Write to the Court about why you don't like the settlement. |
| GO TO A HEARING | Ask to speak in Court about the fairness of the settlement. |
| DO NOTHING | Get no payment or voucher. Give up rights. |

- These rights and options—**and the deadlines to exercise them**—are explained in this notice.

- The Court in charge of this case still has to decide whether to approve the settlement. Cash payments will be made and vouchers will be distributed only if the Court approves the settlement and after any appeals are resolved. Please be patient.

## WHAT THIS NOTICE CONTAINS

BASIC INFORMATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . PAGE 3

    1.   Why was this notice issued?
    2.   What is this lawsuit about?
    3.   What is a class action?
    4.   Why is there a settlement?

WHO IS INCLUDED IN THE SETTLEMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . PAGE 3

    5.   How do I know if I am part of the settlement?
    6.   Are there exceptions to being included in the settlement?
    7.   What if I am still not sure if I am included?

THE SETTLEMENT BENEFITS—WHAT YOU CAN GET . . . . . . . . . . . . . . . . . . . . . . . . . . . PAGE 4

    8.   What does the settlement provide?
    9.   Tell me more about the vouchers.

HOW TO GET BENEFITS—SUBMITTING AN ELECTION OF BENEFITS FORM. . . . . . . . . . . PAGE 5

    10.   How can I get a cash payment or voucher?
    11.   When will I get my cash payment or voucher?
    12.   What rights am I giving up to get a cash payment or voucher and stay in the Class?

EXCLUDING YOURSELF FROM THE SETTLEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . PAGE 5

    13.   How do I get out of the settlement?
    14.   If I exclude myself, will I still get a cash payment or voucher from this settlement?
    15.   If I don't exclude myself, can I sue the Defendants for the same claims later?

THE LAWYERS REPRESENTING YOU . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . PAGE 6

    16.   Do I have a lawyer in this case?
    17.   How will the lawyers be paid?

OBJECTING TO THE SETTLEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . PAGE 6

    18.   How do I tell the Court if I don't like the settlement?
    19.   What's the difference between objecting to the settlement and excluding myself from it?

THE COURT'S FAIRNESS HEARING. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . PAGE 6

    20.   When and where will the Court decide whether to approve the settlement?
    21.   Do I have to come to the hearing?
    22.   May I speak at the hearing?

IF YOU DO NOTHING . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . PAGE 7

    23.   What happens if I do nothing at all?

GETTING MORE INFORMATION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . PAGE 7

    24.   Are there more details about the settlement?
    25.   How do I get more information?

## BASIC INFORMATION

### 1. Why was this notice issued?

A Court authorized this notice because you have a right to know about the proposed settlement of this class action lawsuit and about all of your options before the Court decides whether to approve the settlement. This notice explains the lawsuit, the settlement, your legal rights, what benefits are available, and who can get them.

Judge Michael M. Anello of the United States District Court for the Southern District of California is overseeing this class action. The case is known as *Shames v. The Hertz Corporation*, Case No. 07cv2174-MMA. The people who sued are called the Plaintiffs and the companies they sued, The Hertz Corporation, Dollar Thrifty Automotive Group, Inc., Avis Budget Group, Inc., Vanguard Car Rental USA, LLC, Enterprise Holdings, Inc., Fox Rent A Car, Inc. and the California Travel and Tourism Commission, are called the Defendants. The Hertz Corporation, Dollar Thrifty Automotive Group, Inc., Avis Budget Group, Inc., Vanguard Car Rental USA, LLC, Enterprise Holdings, Inc., and Fox Rent A Car, Inc. may also be referred to as the Rental Car Defendants.

### 2. What is this lawsuit about?

The lawsuit claims that the Defendants violated antitrust and other laws by raising rental car prices at California airports by agreeing with each other to pass on the Airport Concession Fee (ACF) and Tourism Commission Assessment (TCA) to customers for rentals at certain California airport locations. The Defendants deny all of the claims in the lawsuit and deny that they did anything wrong.

### 3. What is a class action?

In a class action, one or more people, called a Class Representative (in this case Gary Gramkow), sue on behalf of all people who have similar claims. The people included in the class action are called a Class or Class Members. A single court resolves the issues for all Class Members, except for those who exclude themselves from the Class.

### 4. Why is there a settlement?

The Court did not decide in favor of the Plaintiffs or the Defendants. Instead, both sides agreed to a settlement. This way, they avoid the cost and risk of a trial and the Class can get benefits. The Class Representative and his attorneys think the settlement is best for all Class Members.

## WHO IS INCLUDED IN THE SETTLEMENT

### 5. How do I know if I am part of the settlement?

If you received a notice in the mail or by email, at least one of the Rental Car Defendants' records shows that you are included in the settlement. Generally, the settlement includes people who rented a vehicle directly from corporate-owned locations of Alamo, Avis, Budget, Dollar, Enterprise, Fox Rent A Car, Hertz, National or Thrifty for pick up at a California airport location from January 1, 2007 through November 14, 2007, and were charged and paid an ACF and/or TCA as a separate line item on their invoice to one of those companies.

### 6. Are there exceptions to being included in the settlement?

Yes. Rentals from non-corporate owned airport locations, rentals made as part of a pre-existing agreement with a business or governmental body according to which the rental charge was determined, and rentals where the customer paid a package price to a tour operator or online booking agency (such as Priceline or Hotwire) are not included in the Class and are not entitled to cash payments or vouchers from this settlement.

Rentals made at California airport licensee locations are not included in the settlement. A list of the licensee locations is available at www.ACFTCAsettlement.com.

**7. What if I am still not sure if I am included?**

Visit www.ACFTCAsettlement.com, call 1-800-000-0000 or write to ACF/TCA Settlement Administrator, c/o KCC LLC, PO Box 0000, City, ST 00000-0000 for more information.

## THE SETTLEMENT BENEFITS—WHAT YOU CAN GET

**8. What does the settlement provide?**

The settlement provides the option of a cash payment or voucher from each Rental Car Defendant that the Class Member rented a vehicle from, at a California airport location, between January 1, 2007 and November 14, 2007, and paid an ACF and/or TCA as a separate line item on their invoice. The benefit options are based on the total number of days each vehicle was rented. Benefit options are:

| Total number of rental days (from 1/1/07 to 11/14/07) | Option | Description |
|---|---|---|
| Any | Cash | $2 per day ($5 minimum payment) |
| Less than eight | One—One Day Voucher | one voucher good for free time and mileage for one rental day |
| Eight or more | Two—One Day Vouchers | two vouchers, each good for free time and mileage for one rental day; or |
| | One—Two Day Voucher | one voucher good for free time and mileage for two rental days |

Rental days for vehicles rented from Avis or Budget may be combined when selecting benefit options.

**9. Tell me more about the vouchers.**

Vouchers:

- will be issued in the brand name of each of the rental car companies that charged the Class Member an ACF and/or TCA (Avis and Budget will issue vouchers as Avis/Budget);
- will be printed with the name and address of the Class Member and may be redeemed only by the Class Member or someone living in the same household at the same address;
- cannot be transferred or reassigned to a different person;
- may be used for the rental of a compact, midsize (intermediate), standard, or full size car class of vehicle;
- are valid with applicable daily, weekly and other multi-daily rates and can be used with most other rate discounts the renter may be eligible for;
- will expire 18 months after the date of issue;
- are for time and mileage charges only and do not include one-way or drop charges, taxes, fees, charges, insurance and any optional products; and
- may be redeemed at the brand of any of the issuing rental car company's U.S. corporate-owned locations (Avis/Budget vouchers may be redeemed at an Avis or Budget U.S. corporate-owned location), but not at Independent Licensed Locations.

Please note that there is a relatively small list of Independent Licensed Locations where the vouchers may not be redeemed, which will be available at www.ACFTCAsettlement.com.

## How to Get Benefits—Submitting an Election of Benefits Form

**10. How can I get a cash payment or voucher?**

To get a cash payment or voucher you must submit an Election of Benefits Form. You can complete and submit your form online at www.ACFTCAsettlement.com, or by mail. You may also print a form from the website or request one by calling 1-800-000-0000 or by sending a letter by mail to the claims administrator. You must complete and submit your Election of Benefits Form online or mail it so it is postmarked no later than **Month 00, 2012**. If you received a postcard in the mail or notice by email, you can use the Election of Benefits ID# provided on the front of the card or at the top of the email to access your rental records and submit your election of benefits online.

**11. When will I get my cash payment or voucher?**

The Court will hold a hearing on Month 00, 2012, to decide whether to approve the settlement. If Judge Anello approves the settlement, there may be appeals. It is always uncertain whether the appeals can be resolved and resolving them can take time. Cash payments will be made and vouchers will be issued only after the Court grants approval of the settlement and any appeals are resolved. Please be patient.

If you change your mailing or email address before settlement benefits are issued, you should update your information online at www.ACFTCAsettlement.com or by sending a letter to the ACF/TCA Administrator to ensure you receive your cash payment or voucher. Remember, vouchers will be printed with the address the Administrator has on file, so it is important that you update your mailing address if it changes before the settlement benefits are distributed.

**12. What rights am I giving up to get a cash payment or voucher and stay in the Class?**

Unless you exclude yourself, you are staying in the Class. If the settlement is approved and becomes final, all of the Court's orders will apply to you and legally bind you. This means you won't be able to sue, continue to sue, or be part of any other lawsuit against the Defendants for any claim asserted in this lawsuit or released by this settlement. The specific rights you are giving up are called Released Claims. The Released Claims are described in detail in section 6 of the Stipulation of Settlement which is available at www.ACFTCAsettlement.com.

## Excluding Yourself from the Settlement

If you want to keep the right to sue or continue to sue the Defendants about the claims released by this settlement, you must take steps to get out of the settlement. This is called excluding yourself or is sometimes called opting out of the settlement Class.

**13. How do I get out of the settlement?**

To exclude yourself from the settlement, you must send a letter by mail saying that you want to be excluded from *Shames v. The Hertz Corporation*, Case No. 07cv2174-MMA. Be sure to include your name, address, telephone number, and signature. You must mail your exclusion request so that it is postmarked by **Month 00, 2012**, to: ACF/TCA Settlement Exclusions, c/o KCC LLC, PO Box 0000, City, ST 00000-0000.

**14. If I exclude myself, will I still get a cash payment or voucher from this settlement?**

No. If you exclude yourself, you are telling the Court that you don't want to be part of the Class in this settlement. You can only get a cash payment or voucher if you stay in the Class, submit an Election of Benefits Form, and the settlement is approved by the Court and becomes final.

**15. If I don't exclude myself, can I sue the Defendants for the same claims later?**

No. Unless you exclude yourself, you are giving up the right to sue the Defendants for the claims that this settlement resolves. You must exclude yourself from *this* Class to start or continue with your own lawsuit or be part of any other lawsuit.

## THE LAWYERS REPRESENTING YOU

### 16. Do I have a lawyer in this case?

Yes. The Court appointed Dennis Stewart of Hulett Harper Stewart LLP and Donald G. Rez of Sullivan Hill Lewin Rez & Engel to represent you and other Class Members. Together, these lawyers are called Class Counsel. You will not be charged for these lawyers. If you want to be represented by your own lawyer, you may hire one at your own expense.

### 17. How will the lawyers be paid?

Class Counsel has not been paid for their work on this case. They will ask the Court to approve a payment of attorneys' fees and expenses of up to $5,870,000. They will also ask for a payment of $2,000 to be paid to the Class Representative for his help on behalf of the entire Class. If approved, these fees, costs, expenses and payments will be paid separately by the Defendants and will not reduce the amount of cash or vouchers available to Class Members.

## OBJECTING TO THE SETTLEMENT

You can tell the Court if you don't agree with the settlement or any part of it.

### 18. How do I tell the Court if I don't like the settlement?

If you're a Class Member, you can object to the settlement. You can give reasons why you think the Court should not approve it. The Court will have the opportunity to consider your views before making a decision. To object, you must send a letter stating that you object to the settlement in *Shames v. The Hertz Corporation*, Case No. 07cv2174-MMA. Be sure to include your name, address, telephone number, signature and the reasons why you object to the settlement. Mail your objection to each of the addresses below so that it is postmarked by **Month 00, 2012**.

| Clerk of the Court | Class Counsel | Defense Counsel |
|---|---|---|
| U.S. District Court<br>Southern District of California<br>940 Front Street<br>San Diego, CA 92101-8900 | Donald G. Rez<br>Sullivan Hill Lewin Rez & Engel<br>550 West C Street, 15th Floor<br>San Diego, CA 92101 | Michael F. Tubach<br>O'Melveny & Myers LLP<br>Two Embarcadero<br>Center, 28th Floor<br>San Francisco, CA 94111 |

### 19. What's the difference between objecting to the settlement and excluding myself from it?

Objecting is simply telling the Court that you don't like something about the settlement. You can object only if you stay in the Class (meaning you do not exclude yourself). Excluding yourself is telling the Court that you don't want to be part of the Class. If you exclude yourself, you cannot object because the case no longer affects you.

## THE COURT'S FAIRNESS HEARING

The Court will hold a hearing to decide whether to approve the settlement. You may attend and you may ask to speak, but you don't have to.

### 20. When and where will the Court decide whether to approve the settlement?

The Court will hold a Fairness Hearing at _:__ _.m. on ___day, **Month 00, 2012**, at the United States District Court, Southern District of California, 940 Front Street, San Diego, CA 92101-8900. At this hearing, the Court will consider whether the settlement is fair, reasonable, and adequate. If there are objections, the Court will consider them. Judge Anello will listen to people who have asked to speak at the hearing (*see* Question 21). The Court may also decide whether to approve the agreed upon fees, cost and expense. After the hearing, the Court will decide whether to approve the settlement. We do not know how long these decisions will take.

**21. Do I have to come to the hearing?**

No. Class Counsel will answer any questions the Judge may have. But, you are welcome to come at your own expense. If you send an objection, you don't have to come to Court to talk about it. As long as you mailed your written objection on time, the Court will consider it. You may also pay your own lawyer to attend, but it's not necessary.

**22. May I speak at the hearing?**

Yes. You may ask the Court for permission to speak at the Fairness Hearing. To do so, you must send a letter saying that it is your "Notice of Intention to Appear in *Shames v. The Hertz Corporation*, Case No. 07cv2174-MMA." Be sure to include your name, address, telephone number, and signature. Your letter must be postmarked by **Month 00, 2012**, and sent to the addresses in Question 18.

## IF YOU DO NOTHING

**23. What happens if I do nothing at all?**

If you do nothing you won't get a cash payment or voucher from this settlement. You will also be giving up your right to start a lawsuit, continue with a lawsuit, or be part of any other lawsuit against the Defendants about any of the claims asserted in this lawsuit or released by this settlement, ever again.

## GETTING MORE INFORMATION

**24. Are there more details about the settlement?**

This notice summarizes the proposed settlement. More details are in the Stipulation of Settlement. You can get a copy of the Stipulation of Settlement by visiting www.ACFTCAsettlement.com.

**25. How do I get more information?**

You can call 1-000-000-0000 toll free; write to ACF/TCA Settlement Administrator, c/o KCC LLC, PO Box 0000, City, ST 00000-0000; or visit the website at www.ACFTCAsettlement.com.

DATE: Month 00, 0000

# Exhibit B



**Legal Notification Services**

_____

# Settlement Notice Plan

## *Shames v. The Hertz Corporation*

## Case No. 07cv02174

U.S. District Court, Southern District of California

**Prepared: May 16, 2012**

_____

© 2012 KCC LLC
Proprietary and Confidential

# Table of Contents

|                              | Page |
|------------------------------|------|
| Legal Notification Services  | 3    |
| Our Experts                  | 4    |
| Relevant Case Experience     | 5    |
| Expert Services              | 6    |
| Media Terms                  | 7    |
| Media Resources              | 8    |
| Program Overview             | 9    |
| Notice Schedule              | 11   |
| Target Analysis              | 12   |
| Media Selection              | 13   |
| Individual/Direct Notice     | 14   |
| National Newspaper           | 15   |
| Consumer Magazines           | 16   |
| Supplemental Notice          | 18   |
| Additional Support           | 19   |
| Notice Design Strategies     | 20   |
| Draft Forms of Notice        | 22   |
| Conclusion                   | 23   |

Attachment A – Legal Notice c.v.

Attachment B – Draft Forms of Notice

© 2012 KCC LLC
Proprietary and Confidential

## Legal Notification Services

KCC's Legal Notice experts, Gina M. Intrepido-Bowden and Carla A. Peak, specialize in the design and implementation of class action notice programs devised to reach class members with clear, concise, plain language notices. With over a decade of legal notice consulting experience, Ms. Intrepido-Bowden and Ms. Peak have been directly responsible for more than 100 effective and efficient notice programs, including some of the largest and most complex in history, reaching class members or claimants around the globe and providing notice in over 35 languages.

Their programs satisfy due process requirements, as well as all applicable state and federal laws. Judges, including in published decisions, have recognized the reach calculation methodology and notice design strategies they use. Their notices follow the principles in the Federal Judicial Center's (FJC) illustrative model notices, which were written and designed to embody the satisfaction of the plain language requirements of Federal Rule of Civil Procedure 23(c)(2).

© 2012 KCC LLC
Proprietary and Confidential
3

## Our Experts

Consistent with the judicial standards set forth by *Daubert* and *Kumho* and as illustrated in the FJC's *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide*, KCC's experts utilize the same practices and statistical analyses that are relied upon in the advertising industry when they design and measure the effectiveness of the notice programs they develop. Gina M. Intrepido-Bowden and Carla A. Peak have personally designed the "Notice Plan" (Plan) and proposed notice documents (Notice or Notices) that follow, and will directly oversee its implementation.

### Gina Intrepido-Bowden

With more than 20 years of media research, planning and buying experience, Gina brings substantive expertise to her role as Director, Legal Notification Services. A leading expert, she is responsible for the design and implementation of evidence-based legal notice campaigns.

Gina has personally designed more than 75 media campaigns across the United States and Canada for antitrust, consumer and other class action matters. As an expert witness, she provides Courts with the reach evidence they need to determine the adequacy of notice. In addition, she has successfully critiqued other notice plans causing Courts to modify programs to better meet due process obligations.

She began her advertising career working for one of New York's largest advertising agency media departments. Gina is a frequent author and speaker on class notice issues including effective reach, notice dissemination as well as noticing trends and innovations. She earned a Bachelor of Arts in Advertising from Penn State University, graduating summa cum laude.

### Carla Peak

With nearly a decade of industry experience, Carla specializes in the design of plain language legal notice documents to effectively address the challenges of communicating complex information to class members in a manner that they can understand.

Carla's notices satisfy the plain language requirements of Rule 23 and adhere to the guidelines set forth in the Manual for Complex Litigation, Fourth and by the Federal Judicial Center (FJC), as well as applicable state laws. She has successfully provided notice in both U.S. and international markets including communications in more than 35 languages.

She has presented on and written numerous articles about class notification programs, the design of effective notice documents as well as industry trends and innovations. Carla holds a Bachelor of Arts in Sociology from Temple University, graduating cum laude.

## Relevant Case Experience[1]

Our experts have designed and implemented numerous notice programs targeting consumer Class Members, for example:

- *Molina v. Intrust Bank, N.A.*, 18th J.D. Ct. Ks., No. 10-CV-3686
  - Judge Jeffrey Goering, January 17, 2012: *The Court approved the form and content of the Class Notice, and finds that transmission of the Notice as proposed by the Parties meets the requirements of due process and Kansas law, is the best notice practicable under the circumstances, and constitutes due and sufficient notice to all persons entitled thereto.*

- *Allen v. UMB Bank, N.A.*, Cir. Ct. Mo., No. 1016-CV34791
  - Judge Charles E. Atwell, October 31, 2011: *The form, content, and method of dissemination of Class Notice given to the Class were adequate and reasonable, and constituted the best notice practicable under the circumstances. The Notice, as given, provided valid, due, and sufficient notice of the proposed settlement, the terms and conditions set forth in the Settlement Agreement, and these proceedings to all persons entitled to such notice, and said notice fully satisfied the requirements of Rule 52.08 of the Missouri Rules of Civil Procedure and due process.*

  - Judge Charles E. Atwell, June 27, 2011: *The Court approves the form and content of the Class Notice, and finds that transmission of the Notice as proposed by the Parties meets the requirements of due process and Missouri law, is the best notice practicable under the circumstances, and constitutes due and sufficient notice to all persons entitled thereto.*

- *Ko v. Natura Pet Products, Inc.*, N.D. Cal , No. 5:09cv2619
  - Judge Jeremy Fogel, June 24, 2011: *The Court approves, as to form and content, the Long Form Notice of Pendency and Settlement of Class Action ("Long Form Notice"), and the Summary Notice attached as Exhibits to the Settlement Agreement, and finds that the e-mailing of the Summary Notice, and posting on the dedicated internet website of the Long Form Notice, mailing of the Summary Notice post-card, and newspaper and magazine publication of the Summary Notice substantially in the manner as set forth in this Order meets the requirements of Rule 23 of the Federal Rules of Civil Procedure, and due process, and is the best notice practicable under the circumstances and shall constitute due and sufficient notice to all persons entitled to notice.*

- *Shaffer v. Continental Casualty Co.*, C.D. Cal., SACV-06-2235-PSG
  - Judge Philip S. Gutierrez, June 11, 2008: *…was reasonable and constitutes due, adequate, and sufficient notice to all persons entitled to receive notice; and met all applicable requirements of the Federal Rules of Civil Procedure, the Class Action Fairness Act, the United States Constitution (including the Due Process Clauses), the Rules of the Court, and any other applicable law.*

See **Attachment A** for additional recognition and example cases.

---

[1] Includes work performed by our experts when employed at other firms.

© 2012 KCC LLC
Proprietary and Confidential

# Expert Services

Our Legal Notification Services include:

**Pre-Settlement Consulting**
- Review and advise clients of any potential obstacles relative to class definition or legal notification processes
- Develop a noticing plan strategy
- Provide judicial decisions that are relevant to the case or terms of the settlement

**Demographic Analysis**
- Define the target audience through research and analysis of class demographics
- Identify the geographic location of potential class members giving specific consideration to the class period
- Research class member media usage to define the communication channels that will be most effective

**Notice Programs**
- Create custom notice programs that incorporate media such as newspapers, magazines, trade journals, radio, television and the internet to meet due process requirements
- Develop press releases, broadcast public service announcements (PSAs), and a content-rich, case-specific website, as needed
- Track media activity to verify the adequacy of placements

**Plain Language Communication**
- Consider audience's level of understanding and devise communications strategy accordingly
- Design, draft and distribute plain-language notices that capture attention and are easily understood by class members
- Incorporate response mechanisms, such as a toll-free number, case website address, and/or QR code into notice documents

**Expert Testimony**
- Provide defensible opinions and testimony from subject-matter experts to verify the effectiveness of notice programs
- Supply mailing certifications and proof of performance for each notice served, as required by the Courts
- Provide evidence and judicial decisions to overcome objections

## Media Terms

The following provides the meaning of media terms highlighted throughout the Notice Plan:

**Audience:** Net number of persons or different persons exposed to a media vehicle. It is larger than a publication's circulation because it includes pass-along readers who may obtain the publication second hand (e.g., from a reception room, neighbor, friend).

**Circulation:** Total number of publication copies sold through all channels of distribution (e.g. subscriptions, newsstand, bulk).

**Frequency:** Estimated average number of times a population group is exposed to a media vehicle or combination of media vehicles containing a notice within a given period of time.

**Impressions or Exposures:** Total number of opportunities to be exposed to a media vehicle or combination of media vehicles containing a notice. It is a gross or cumulative number that may include the same person more than once. Impressions can exceed the population size.

**Reach or Coverage:** Net percentage of a specific population group exposed to a media vehicle or a combination of media vehicles containing a notice at least once within a given period of time. Reach factors out duplication, representing the total different/net persons.

**Selectivity Index:** Shows the concentration of a specific population group relative to the general adult population. For example, a publication selectivity index of 175 among men indicates that the publication's readers are 75% more likely to be men as compared to the general adult population.

# Media Resources

The resources we use to quantify our plan approach include the same resources used by media professionals to guide the billions of dollars of advertising we see today:

## Audit Bureau of Circulations (ABC)

ABC maintains the world's foremost electronic database of audited-circulation information and an array of verified readership, subscriber demographics and online activity data. Established in 1914, ABC is a forum of the world's leading magazine and newspaper publishers, advertisers and advertising agencies boasting more than 4,000 members in North America.

## GfK Mediamark Research & Intelligence, LLC (MRI)

MRI is a nationally accredited research firm that provides consumer demographics, product and brand usage, and audience/exposure in all forms of advertising media. Established in 1979, MRI measures the usage of nearly 6,000 product and service brands across 550 categories, along with the readership of hundreds of magazines and newspapers, internet usage, television viewership, national and local radio listening, yellow page usage, and out-of-home exposure. Based on a yearly face-to-face interview of 26,000 consumers in their homes, MRI's *Survey of the American Consumer™* is the primary source of audience data for the U.S. consumer magazine industry and the most comprehensive and reliable source of multi-media audience data available.

## Telmar

Telmar is the world-leading supplier of computer based advertising media information services. Its software provides for survey analysis, data integration, media planning and optimization. With over 5,000 users in 85 countries, Telmar's clients include many of the world's leading advertising agencies, publishers, broadcasters and advertisers.

## Program Overview

**Objective**

To design a notice program that will effectively reach Class Members and capture their attention with notices communicated in clear, concise, plain language so that their rights and options may be fully understood. The FJC's *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide* considers 70-95% reach among class members reasonable.

**Class Definition**

The Class (or Class Members) consists of all Persons (other than those Persons who timely and validly request exclusion from the Class) who rented a car directly from a Rental Car Defendant for pick up at a California Airport Location during the period from January 1, 2007 through November 14, 2007, inclusive, and were charged and paid to the Rental Car Defendant an Airport Concession Fee and/or Tourism Commission Assessment for that rental car as a separate line item(s) on their invoices.[2] Excluded from the Class are: (i) rentals made pursuant to a pre-existing agreement between a business or governmental entity and the Rental Car Defendant pursuant to which the rental charge was determined; and (ii) rentals in which the customer paid a package price to a third party tour operator or on-line booking agency rather than the Rental Car Defendant. Also excluded from the Class are the Defendants, the directors, officers, subsidiaries, and affiliates of Defendants, any person, firm, trust, corporation, officer, director or other individual or entity in which any Defendant has a controlling interest, and the legal representatives, affiliates, heirs, successors-in-interest or assigns of any such excluded person, Related Parties as well as any judges or mediators involved in the Litigation (including the Hon. Michael M. Anello, Magistrate Judge McCurine, and the Hon. Ronald Sabraw (ret.)). Class membership shall be determined based on the Rental Car Defendants' rental transaction databases produced in this Litigation from data kept in the ordinary course of business.

**Case Analysis**

The following known factors were considered when determining our recommendation:

1. The Class consists of approximately four million Class Members.
2. Class Members are located throughout the U.S.
3. Postal and/or email addresses are available for virtually the entire Class.
4. Effective reach and notice content is vital to convey the importance of the information affecting Class Members' rights, as well as to withstand possible challenge and collateral review.
5. Multiple exposures to notice are desirable so that Class Members are reminded to act before deadlines approach.

**Target Audience**

To verify the notice program's effectiveness, MRI data was studied among adults who rented a car at or

---

[2] Rental Car Defendants means The Hertz Corporation, Dollar Thrifty Automotive Group, Inc., Avis Budget Group, Inc., Vanguard Car Rental USA, LLC, Enterprise Holdings, Inc., and Fox Rent A Car, Inc. The brands Enterprise, Alamo and National (currently operated by subsidiaries of Enterprise Holdings, Inc.) and Dollar and Thrifty (operated by a subsidiary of Dollar Thrifty Automotive Group, Inc.) shall each be treated as separate Rental Car Defendants.. Rental Car Defendants excludes any Person that owns or operates one or more Independent Licensed Locations, and locations where Payless Car Rental System, Inc. is a franchisor.

© 2012 KCC LLC
Proprietary and Confidential

near an airport for personal or business use from Alamo, Avis, Budget, Dollar, Enterprise, Hertz, National, or Thrifty and traveled to California by plane ("California Airport Car Renters"). Although the MRI target is broader than the Class, it is a target group that best represents the Class.[3]

**Strategies**

Email and/or mailed notice will be sent directly to all known Class Members. In addition, paid notices in well-read national consumer publications will provide additional reach and frequency of exposure among the Class. Coverage will be further enhanced by supplemental notice just prior to the Election of Benefits deadline.

**Plan Delivery**

The direct notice effort alone is expected to reach 91.0% of the Class.[4] The paid media effort will reach an estimated 36.4% of California Airport Car Renters, and therefore likely Class Members. Combined, the direct notice and media efforts will reach approximately 94.3% of Class Members on average 1.5 times each. Although not measureable, coverage will be further enhanced by the supplemental notice.

**Notice Design**

The Notices have been designed to provide a clear, concise, plain language summary statement of Class Members' legal rights and options. To facilitate responses to notices, a toll-free number and website address will be provided in all printed notice documents. For the initial Publication Notice, the ad units are adequately sized to attract attention to the notice:

- Half-page units in standard sized publications
- 1/6 page unit in the national newspaper

---

[3] Data among adults who rent from Fox Rent A Car was not measured by MRI; however, because we are analyzing data on a percentage basis, there is no reason to believe the demographics or media usage of adults who rented cars from Fox Rent A Car to be significantly different than those of the defined target.

[4] 1.2 million Notices will be emailed to Class Members, of which an estimated 25% will likely bounce back. Class Members whose emails bounce back or are otherwise not delivered will be mailed a notice, of which an estimated 10% will be returned as undeliverable. As a result, an estimated 1.08 million of the notices will likely deliver successfully. Another 2.8 million notices will be mailed to Class Members, of which an estimated 10% will be returned undeliverable. As a result, 2.52 million of the mailed notices are estimated to be delivered successfully. Combined, 3.6 million direct notices are expected to be delivered successfully, thereby reaching approximately 91.0% of the Class.

© 2012 KCC LLC
Proprietary and Confidential

## Notice Schedule

No more than 45 days after Preliminary Approval, direct notice (email and/or mailed notice, as applicable) will be distributed to Class Members. Published Notice will appear no later than 60 days after Preliminary Approval, and Supplemental Notice will appear 60 days prior to the Election of Benefits deadline. The case website will be maintained throughout the Election Period. An exclusion and objection deadline will be scheduled approximately 30 days from the last notice appearance and a final fairness hearing date sometime after.

| Notice Method | Issued | Week 1 | Week 2 | Week 3 | Week 4 | Week 5 | Week 6 | Week 7 |
|---|---|---|---|---|---|---|---|---|
| **Individual/Direct Notice:** | | | | | | | | |
| Email Notice, as applicable | | ███ | ███ | | | | | |
| Mailed Notice , as applicable | | ███ | ███ | | | | | |
| **Publication Notice:** | | | | | | | | |
| *USA Today* | Daily | | | ███ | | | | |
| *Newsweek* | Weekly | | | ███ | ███ | ███ | | |
| *People* | Weekly | | | | ███ | ███ | | |
| **Case Website** | Constant | ███ | ███ | ███ | ███ | ███ | ███ | ███ |
| **Supplemental Notice:*** | | | | | | | | |
| Email Notice, as applicable | | | | | | | | |
| *USA Today* | Daily | | | | | | | |

Blocks indicate when persons first receive the direct notice or publications (the on-sale date, not the issue/cover date). All media subject to change based on availability at the time of placement and cost. Cost of the Initial Publication Notice and Supplemental Publication Notice shall not exceed $250,000.

**Supplemental Notice will appear 60 days prior to the Election of Benefits deadline.

© 2012 KCC LLC
Proprietary and Confidential

## Target Analysis

Knowing the characteristics, interests, and habits of a target group aids in the media selection process.

**Demographic Highlights**
Demographic highlights of California Airport Car Renters include the following:
- 87.2% are white
- 85.6% have attended or graduated from college or beyond
- 84.9% are between the ages of 25-64 and 66.6% are between the ages of 35-64
- 83.2% own their home
- 78.1% have a household income of $75,000 or more and 60.7% have a household income of $100,000 or more
- 78.4% live in a household consisting of 2-4 persons
- 72.7% are married
- 65.8% own a home valued at $200,000 or more
- 57.6% have lived at their current address for five or more years
- 52.9% are men
- 51.0% work as managers or professionals
- 47.8% live in the West Census Region
- Average age is 47.9
- Average household income is $129,969
- Average owned home value is $375,965

Compared to the general adult population, California Airport Car Renters are:
- 3.16 times more likely to have a household income of $150,000 or more
- 2.81 times more likely to own a home valued at $500,000 or more
- 2.25 times more likely to work as managers or professionals
- 2.27 times more likely to have graduated from college or beyond
- 2.09 times more likely to live in the West Census Region
- 74.3% more likely to be Asian
- 54.0% more likely to be between the ages of 55-64
- 32.6% more likely to be married
- 31.7% more likely to live in a household consisting of two persons
- 28.6% more likely to live in County Size A[5]
- 18.3% more likely to own a home
- 14.2% more likely to be white
- 9.5% more likely to be men

*Source: 2011 MRI Doublebase Study*

---

[5] All counties in the largest metropolitan areas which together account for 40% of U.S. households according to the 2000 Census.

## Media Selection

To create the optimal notice program, we evaluated the strengths and weaknesses of the various media, as well as their reach and frequency potential, composition, format/content and efficiencies. Our recommended media mix provides:

- Additional reach among Class Members, beyond the effective direct notice efforts, via the measurable paid print media (approximately 36.4% of California Airport Car Renters).

- Repeat notice exposures as a result of the overlapping media audiences.

- A written summary of key information that may be easily referred to or passed on to others as a result of placements in some of the largest and most well-read publications in the country

- Easy access to additional information through a toll-free number and website address which is provided in all printed notice documents

## Individual/Direct Notice

### Email Notice

An Email Notice containing a summary of the settlement in the body of the email, as well as a link to the settlement website and a toll-free number will be sent to all email addresses provided to KCC by the Rental Car Defendants. It is our understanding that email addresses are available for approximately 1.2 million Class Members. Class Members whose emails bounce back or are otherwise not delivered will be mailed a Postcard Notice via postal mail to their corresponding postal address.

### Mailed Notice

A Postcard Notice will be sent via postal mail to the addresses of all known potential Class Members for whom KCC was not provided an email address. It is our understanding that individual mailing addresses are available for all or nearly all Class Members for whom no email addresses will be provided (approximately 2.8 million Class Members).

Prior to mailing the Postcard Notice, the names and addresses will be:

- Checked against the USPS National Change of Address (NCOA)[6] database
- Certified via the Coding Accuracy Support System (CASS)[7]
- Verified through Delivery Point Validation (DPV)[8]

Combined, 3.6 million direct notices are expected to be delivered successfully, thereby reaching approximately 91.0% of the Class.

---

[6] The NCOA database contains records of all permanent change of address submissions received by the USPS for the last four years. The USPS makes this data available to mailing firms and lists submitted to it are automatically updated with any reported move based on a comparison with the person's name and last known address.

[7] Coding Accurate Support System is a certification system used by the USPS to ensure the quality of ZIP+4 coding systems.

[8] Records that are ZIP+4 coded are then sent through Delivery Point Validation to verify the address and indentify Commercial Mail Receiving Agencies. DPV verifies the accuracy of addresses and reports exactly what is wrong with incorrect addresses.

# National Newspaper

| Newspaper | Issuance | Notice Size | # of Insertions |
|-----------|----------|-------------|-----------------|
| *USA Today* | Daily | 1/6 page | 1 |



- Offers a circulation of 1.8 million
- Provides readership of 3.3 million
  - Male/Female: 67%/33%
  - Median age: 49
  - College graduate+: 51%
  - Professional/Managerial: 40%
  - Median HHI: $91,725
- Reaches 3.7% of California Airport Car Renters
- Readers are 2.6 times more likely to be California Airport Car Renters, compared to the general adult population
- Extends reach among a unique group of readers who like to travel a lot and are usually on-the-go

© 2012 KCC LLC
Proprietary and Confidential

# Consumer Magazines

| Consumer Magazine | Issuance | Notice Size | # of Insertions |
|---|---|---|---|
| *Newsweek* | Weekly | Half page | 3 |
| *People* | Weekly | Half page | 1 |
| **TOTAL** | | | **4** |

- Includes three insertions in *Newsweek* and one insertion in *People*, for a total of four insertions
- Provides more than 88 million adult exposures
- Includes leading publications among California Airport Car Renters
- Includes publications with a high concentration of California Airport Car Renters, as compared to the general population
- Includes half page notices to attract attention and enhance readership with adequately sized text
- Positioning will be sought opposite articles, cover stories, or editorial features with documented high readership
- All placements will be tracked to ensure that they appear exactly as planned as well as meet our high standards in terms of quality and positioning

The following provides details for each of the recommended consumer magazines:



- Circulation: 1,530,486
- Adult Audience: 14,363,000
- Weekly news magazine covering politics, current events and global issues
- Reaches 9.2% of California Airport Car Renters
- Readers are 46.8% more likely to be California Airport Car Renters, compared to the general adult population
- Provides appropriate news-oriented editorial



- Circulation: 3,556,753
- Adult Audience: 45,318,000
- Weekly entertainment magazine featuring celebrity news, biographies and gossip
- Reaches 23.4% of California Airport Car Renters

- Readers are 17.7% more likely to be California Airport Car Renters, compared to the general adult population
- Provides a large number of pass along readers

## Supplemental Notice

Supplemental Notice reminding Class Members of the approaching Election of Benefits deadline, will be issued no later than 60 days before the expiration of the Election Period.

The Supplemental Notice will include:

- A one-eighth page Notice in the national edition of *USA Today*

- An Email Notice to Class Members for whom the Rental Car Defendants have provided to the Administrator an email address

The Supplemental Email Notice will not be sent to Class Members who previously filed an election of benefits form or opt-out request or to Class Members to whom Notice was previously sent via postal mail.

## Additional Support

**Case Website**
- Provides an easy to remember domain, such as www.ACFTCAsettlement.com
- Allows Class Members the ability to submit an Election of Benefits Form, as well as obtain additional information and documents including the Detailed Notice, Settlement Agreement, and any other information that the parties may agree to provide or that the Court may require
- Will be prominently displayed in all printed notice materials

**Toll-Free Telephone Support**
- Provides a simple way for Class Members to obtain additional information
- Allows Class Members the opportunity to learn more about the case in the form of frequently asked questions and answers
- Allows Class Members to request to have more information mailed directly to them
- Will be prominently displayed in all notice materials

.

# Notice Design Strategies

The design and content of all of the notice materials are consistent with the FJC's "illustrative" forms of model plain language notices, available at www.fjc.gov.

**Publication Notice**
- Bold headline captures attention and speaks directly to Class Members, alerting them that they should read the Notice and why it is important
- Prominent notice size promotes attention, readership, and comprehension
- Legal significance is highlighted to ensure readers that the communication carries legitimate information from the court and not commercial advertising
- Concise plain language without "legalese" enhances comprehension
- Content includes all critical information in simple format
- Toll-free number and case website invite response, allowing Class Members the opportunity to obtain additional information

**Detailed Notice**
- Prominent "Your Rights and Options" table on first page immediately informs readers of their rights and options in the case
- Table of Contents and question and answer format allow Class Members to easily locate information
- Bold headline captures attention and speaks directly to Class Members, alerting them that they should read the Notice and why it is important
- Concise plain language without "legalese" enhances comprehension
- Provides more detailed information than that of a Summary Notice
- Content includes all essential information in simple format
- Toll-free number and case website invite response, allowing Class Members the opportunity to obtain additional information

**Postcard Notice**
- Bold headline on the front of the postcard captures attention and speaks directly to Class Members, alerting them that they may claim benefits
- Legal significance is highlighted to ensure readers that the communication carries legitimate information from the court and not commercial advertising
- Concise plain language without "legalese" enhances comprehension
- Content includes all critical information in simple format
- Toll-free number and case website invite response, allowing Class Members the opportunity to obtain additional information

**Email Notice**
- Bold headline in the beginning of the message captures attention and speaks directly to Class Members, alerting them that they may claim benefits
- Legal significance is highlighted to ensure readers that the communication carries legitimate

information from the court and not commercial advertising
- Concise plain language without "legalese" enhances comprehension
- Content includes all critical information in simple format
- Toll-free number and case website invite response, allowing Class Members the opportunity to obtain additional information

## Draft Forms of Notice

**Attachment B** contains the draft forms of the following notice documents:

- The **Email Notice** that will be sent to all known Class Members that can be reasonably identified

- The **Postcard Notice** that will be sent to all known Class Members whose contact information does not contain an email address

- The **Publication Notice** as it will appear in the publications identified in this Notice Plan

- The **Supplemental Email Notice** that will be sent to all known Class Members who did not file an Election of Benefits Form or opt-out request. The Supplemental Email Notice will not be sent to Class Members to whom Notice was previously sent via postal mail.

- The **Supplemental Publication Notice** that will appear in the national edition of *USA Today*

- The **Long Form Notice** that will be sent to those who call the toll-free number to request one, as well as made available at the website

## Conclusion

Our recommended Notice Plan:

- Was designed by experts who are trained and experienced in their specific area of expertise
- Is consistent with other effective settlement notice programs
- Is consistent with the "desire to actually inform" due process communications standard of *Mullane*
- Provides the best notice practicable
- Meets due process requirements
- Provides the same reach and frequency evidence that Courts have approved, is recommended by the FJC, and that has withstood appellate scrutiny, other expert critiques, as well as collateral review
- Leaves no holes or vulnerabilities that would leave the parties open to challenge

Attachment A



_____

KCC's Legal Notice Division provides expert legal notice services in class action, mass tort and bankruptcy settings. We specialize in the design and implementation of notice programs with plain language notices; expert opinions and testimony on the adequacy of notice; and critiques of other notice programs and notices. With over a decade of experience, our legal noticing team has been directly responsible for more than a hundred effective and efficient notice programs reaching class members and claimants in almost every country, dependency and territory in the world, and providing notice in over 35 languages. Our programs satisfy due process requirements, as well as all applicable state and federal laws. Some landmark case examples our experts have been involved with include:

- **In re Trans Union Corp. Privacy Litigation**, MDL No. 1350 (N.D. Ill.) The largest discretionary class action notice campaign involving virtually every adult in the United States and informing them about their rights in the $75 million data breach settlement.

- **In re TJX Companies, Inc., Customer Data Security Breach Litigation**, MDL No. 1838 (D. Mass.) The largest U.S. and Canadian retail consumer security breach notice program.

- **Lockwood v. Certegy Check Services, Inc**., No. 8:07-CV-1434-T-23TGW (M.D. Fla.) A complex national data theft class action settlement involving millions of class members.

- **In re Residential Schools Litigation**, No. 00-CV-192059 (Ont. S.C.J.) The largest and most complex class action in Canadian history incorporating a groundbreaking notice program to disparate, remote aboriginal persons qualified to receive benefits in the multi-billion dollar settlement.

- **Thompson v. Metropolitan Life Ins. Co.**, No. 216 F.R.D. 55, 62-68 (S.D. N.Y. 2003) The largest race-based pricing case with national settlement notice to 25 million policyholders.

- **Scott v. Blockbuster**, No. D 162-535 (Tex., 136th Jud. Dist.) The national settlement notice to 40 million class members, which withstood collateral review, _Peters v. Blockbuster_, 65 S.W.3d 295, 307 (Tex. App.-Beaumont 2001).

- **Williams v. Weyerhaeuser Co.**, No. 995787 (Cal. Super. Ct.) The national hardboard siding settlement notice, in which notice withstood appellate challenge, 2002 WL 373578, at 10 (Cal. App. 1 Dist.).

# Our Experts

**Gina M. Intrepido-Bowden**

With more than 20 years of media research, planning and buying experience, Gina M. Intrepido-Bowden brings substantive expertise to her role as Director, Legal Notification Services. A leading expert, she is responsible for the design and implementation of evidence-based legal notice campaigns.

Gina has personally designed more than 70 media campaigns across the United States and Canada for antitrust, consumer and other class action matters. As an expert witness, she provides Courts with the reach evidence they need to determine the adequacy of notice. In addition, she has successfully critiqued other notice plans, causing Courts to modify programs to better meet due process obligations.

She began her advertising career working for one of New York's largest advertising agency media departments. Gina is a frequent author and speaker on class notice issues including effective reach, notice dissemination as well as noticing trends and innovations. She earned a Bachelor of Arts in Advertising from Penn State University, graduating summa cum laude. Gina can be reached at gintrepidobowden@kccllc.com.

**Carla A. Peak**

With nearly a decade of industry experience, Carla A. Peak specializes in the design of plain language legal notice documents to effectively address the challenges of communicating complex information to class members in a manner that they can understand.

Carla's notices satisfy the plain language requirements of Rule 23 and adhere to the guidelines set forth in the Manual for Complex Litigation, Fourth and by the Federal Judicial Center (FJC), as well as applicable state laws. She has successfully provided notice in both U.S. and international markets including communications in more than 35 languages.

She has presented on and written numerous articles about class notification programs, the design of effective notice documents as well as industry trends and innovations. Carla holds a Bachelor of Arts in Sociology from Temple University, graduating cum laude. Carla can be reached at cpeak@kccllc.com.

# Judicial Recognition of Our Experts' Work

**Judge Ann D. Montgomery,** *In Re: Uponor, Inc., F1807 Plumbing Fittings Products Liability Litigation*, (January 18, 2012) No. 11-MD-2247 (D. Minn.):

> *The Notice Plan detailed by KCC in the Affidavit of Gina M. Intrepido-Bowden provides the best notice practicable under the circumstances and constitutes due and sufficient notice of the Settlement Agreement and the Final Fairness Hearing to the Classes and all persons entitled to receive such notice as potential members of the Class…The Notice Plan's multi-faceted approach to providing notice to Class Members whose identity is not known to the Settling Parties constitutes 'the best notice that is practicable under the circumstances' consistent with Rule 23(c)(2)(B)…Notice to Class members must clearly and concisely state the nature of the lawsuit and its claims and defenses, the Class certified, the Class member's right to appear through an attorney or opt out of the Class, the time and manner for opting out, and the binding effect of a class judgment on members of the Class. Fed. R. Civ. P. 23(c)(2)(B). Compliance with Rule 23's notice requirements also complies with Due Process requirements. 'The combination of reasonable notice, the opportunity to be heard, and the opportunity to withdraw from the class satisfy due process requirements of the*

*Fifth Amendment.' Prudential, 148 F.3d at 306. The proposed notices in the present case meet those requirements.*

**Judge Jeffrey Goering, *Molina v. Intrust Bank, N.A.***, (January 17, 2012) No. 10-CV-3686 (18th J.D. Ct. Ks.):

> *The Court approved the form and content of the Class Notice, and finds that transmission of the Notice as proposed by the Parties meets the requirements of due process and Kansas law, is the best notice practicable under the circumstances, and constitutes due and sufficient notice to all persons entitled thereto.*

**Judge Charles E. Atwell, *Allen v. UMB Bank, N.A.***, (October 31, 2011) No. 1016-CV34791 (Cir. Ct. Mo.):

> *The form, content, and method of dissemination of Class Notice given to the Class were adequate and reasonable, and constituted the best notice practicable under the circumstances. The Notice, as given, provided valid, due, and sufficient notice of the proposed settlement, the terms and conditions set forth in the Settlement Agreement, and these proceedings to all persons entitled to such notice, and said notice fully satisfied the requirements of Rule 52.08 of the Missouri Rules of Civil Procedure and due process.*

**Judge Charles E. Atwell, *Allen v. UMB Bank, N.A.***, (June 27, 2011) No. 1016-CV34791 (Cir. Ct. Mo.):

> *The Court approves the form and content of the Class Notice, and finds that transmission of the Notice as proposed by the Parties meets the requirements of due process and Missouri law, is the best notice practicable under the circumstances, and constitutes due and sufficient notice to all persons entitled thereto.*

**Judge Jeremy Fogel, *Ko v. Natura Pet Products, Inc.***, (June 24, 2011) No. 5:09cv2619 (N.D. Cal.):

> *The Court approves, as to form and content, the Long Form Notice of Pendency and Settlement of Class Action ("Long Form Notice"), and the Summary Notice attached as Exhibits to the Settlement Agreement, and finds that the e-mailing of the Summary Notice, and posting on the dedicated internet website of the Long Form Notice, mailing of the Summary Notice post-card, and newspaper and magazine publication of the Summary Notice substantially in the manner as set forth in this Order meets the requirements of Rule 23 of the Federal Rules of Civil Procedure, and due process, and is the best notice practicable under the circumstances and shall constitute due and sufficient notice to all persons entitled to notice.*

**Judge M. Joseph Tiemann, *Billieson v. City of New Orleans***, (May 27, 2011) No. 94-19231 (Civ. D. Ct. La.):

> *The plan to disseminate notice for the Insurance Settlements (the "Insurance Settlements Notice Plan") which was designed at the request of Class Counsel by experienced Notice Professionals Gina Intrepido-Bowden and Carla A. Peak…various forms of notices for the insurance settlements (the "Insurance Settlements Notice Documents");…IT IS ORDERED as follows: 1. The Insurance Settlements Notice Plan is hereby approved and shall be executed by the Notice Administrator; 2. The Insurance Settlements Notice Documents, substantially in the form included in the Insurance Settlements Notice Plan, are hereby approved.*

**Judge James Robertson,** *In re Department of Veterans Affairs (VA) Data Theft Litig.*, (February 11, 2009) MDL No. 1796 (D.C.):

> The Court approves the proposed method of dissemination of notice set forth in the Notice Plan, Exhibit 1 to the Settlement Agreement. The Notice Plan meets the requirements of due process and is the best notice practicable under the circumstances. This method of Class Action Settlement notice dissemination is hereby approved by the Court.

**Judge Louis J. Farina,** *Soders v. General Motors Corp.*, (December 19, 2008) No. CI-00-04255 (C.P. Pa.):

> The Court has considered the proposed forms of Notice to Class members of the settlement and the plan for disseminating Notice, and finds that the form and manner of notice proposed by the parties and approved herein meet the requirements of due process, are the best notice practicable under the circumstances, and constitute sufficient notice to all persons entitled to notice.

**Judge Robert W. Gettleman,** *In Re Trans Union Corp.*, (September 17, 2008) MDL No. 1350 (N.D. Ill.):

> The Court finds that the dissemination of the Class Notice under the terms and in the format provided for in its Preliminary Approval Order constitutes the best notice practicable under the circumstances, is due and sufficient notice for all purposes to all persons entitled to such notice, and fully satisfies the requirements of the Federal Rules of Civil Procedure, the requirements of due process under the Constitution of the United States, and any other applicable law…Accordingly, all objections are hereby OVERRULED.

**Steven D. Merryday,** *Lockwood v. Certegy Check Services, Inc.*, (September 3, 2008) No. 8:07-cv-1434-T-23TGW (M.D. Fla.):

> The form, content, and method of dissemination of the notice given to the Settlement Class were adequate and reasonable and constituted the best notice practicable in the circumstances. The notice as given provided valid, due, and sufficient notice of the proposed settlement, the terms and conditions of the Settlement Agreement, and these proceedings to all persons entitled to such notice, and the notice satisfied the requirements of Rule 23, Federal Rules of Civil Procedure, and due process… the notice to the Settlement class directed by the order of preliminary approval and the governmental notice required by the Class Action Fairness Act, Pub. L. 109-2, 119 Stat. 4 (2005), 28 U.S.C. § 1715, have been approved.

**Judge William G. Young,** *In re TJX Companies*, (September 2, 2008) MDL No. 1838 (D. Mass.):

> …as attested in the Affidavit of Gina M. Intrepido…The form, content, and method of dissemination of notice provided to the Settlement Class were adequate and reasonable, and constituted the best notice practicable under the circumstances. The Notice, as given, provided valid, due, and sufficient notice of the proposed settlement, the terms and conditions set forth in the Settlement Agreement, and these proceedings to all Persons entitled to such notice, and said Notice fully satisfied the requirements of Fed. R. Civ. P. 23 and due process.

**Judge Philip S. Gutierrez,** *Shaffer v. Continental Casualty Co.*, (June 11, 2008) SACV-06-2235-PSG (C.D. Cal.):

> …was reasonable and constitutes due, adequate, and sufficient notice to all persons entitled to receive notice; and met all applicable requirements of the

> *Federal Rules of Civil Procedure, the Class Action Fairness Act, the United States Constitution (including the Due Process Clauses), the Rules of the Court, and any other applicable law.*

**Judge David De Alba,** ***Ford Explorer Cases***, (May 29, 2008) JCCP Nos. 4226 & 4270 (Cal. Super. Ct.):

> *[T]he Court is satisfied that the notice plan, design, implementation, costs, reach, were all reasonable, and has no reservations about the notice to those in this state and those in other states as well, including Texas, Connecticut, and Illinois; that the plan that was approved -- submitted and approved, comports with the fundamentals of due process as described in the case law that was offered by counsel.*

**Judge Robert L. Wyatt,** ***Gunderson v. AIG Claim Services, Inc.***, (May 29, 2008) No. 2004-002417 (14th Jud. D. Ct. La.):

> *Notices given to Settlement Class members…were reasonably calculated under all the circumstances and have been sufficient, as to form, content, and manner of dissemination…Such notices complied with all requirements of the federal and state constitutions, including the due process clause, and applicable articles of the Louisiana Code of Civil Procedure, and constituted the best notice practicable under the circumstances and constituted due and sufficient notice to all potential members of the Settlement Class.*

**Judge Mary Anne Mason,** ***Palace v. DaimlerChrysler Corp.***, (May 29, 2008) No. 01-CH-13168 (Cir. Ct. Ill.):

> *The form, content, and method of dissemination of the notice given to the Illinois class and to the Illinois Settlement Class were adequate and reasonable, and constituted the best notice practicable under the circumstances. The notice, as given, provided valid, due, and sufficient notice of the proposed Settlement, the terms and conditions set forth in the Settlement Agreement, and these proceedings, to all Persons entitled to such notice, and said notice fully satisfied the requirements of due process and complied with 735 ILCS §§5/2-803 and 5/2-806.*

**Judge Ronald. B. Leighton,** ***Grays Harbor Adventist Christian School v. Carrier Corp.***, (April 22, 2008) No. 05-05437 (W.D. Wash.):

> *The Court finds and concludes that the Notice Program as a whole provided the best practicable notice to the members of the Class under the circumstances, and satisfies the requirements prescribed by the United States Supreme Court… The Court finds that this notice was the best notice practicable under the circumstances, that it provided due and adequate notice of the proceedings and of the matters set forth therein, and that it fully satisfied all applicable requirements of law and due process.*

**Judge Kirk D. Johnson,** ***Webb v. Liberty Mutual Insurance Co.***, (March 3, 2008) No. CV-2007-418-3 (Cir. Ct. Ark.):

> *The Court finds that there was minimal opposition to the settlement. After undertaking an extensive notice campaign to Class members of approximately 10,707 persons, mailed notice reached 92.5% of potential Class members.*

**Judge Kirk D. Johnson,** ***Sweeten v. American Empire Insurance Co.***, (August 20, 2007) No. CV-2007-154-3 (Cir. Ct. Ark.):

> *The Court does find that all notices required by the Court to be given to class*

> members was done within the time allowed and the manner best calculated to give notice and apprise all the interested parties of the litigation. It was done through individual notice, first class mail, through internet website and the toll-free telephone call center.

**Judge Kirk D. Johnson,** *Hunsucker v. American Standard Ins. Co. of Wisconsin*, (August 10, 2007) No. CV-2007-155-3 (Cir. Ct. Ark.):

> Having admitted and reviewed the Affidavits of Carla Peak and Christine Danielson concerning the success of the notice campaign, including the fact that written notice reached approximately 86% of the potential Class Members, the Court finds that it is unnecessary to afford a new opportunity to request exclusion to individual class members who had an earlier opportunity to request exclusion but failed to do so…Specifically, the Court received and admitted affidavits from Carla Peak and Christine Danielson, setting forth the scope and results of the notice campaign. Based on the Court's review of the evidence admitted and argument of counsel, the Court finds and concludes that the Class Notice and settlement website as disseminated to members of the Settlement Class in accordance with provisions of the Preliminarily Approval Order was the best notice practicable under the circumstances to all members of the Settlement Class.

**Judge Lewis A. Kaplan,** *In re Parmalat Securities Litig.*, (July 19, 2007) MDL No. 1653-LAK (S.D. N.Y.):

> The Court finds that the distribution of the Notice, the publication of the Publication Notice, and the notice methodology…met all applicable requirements of the Federal Rules of Civil Procedure, the United States Constitution, (including the Due Process clause), the Private Securities Litigation Reform Act of 1995 (15 U.S.C. 78u-4, et seq.) (the "PSLRA"), the Rules of the Court, and any other applicable law.

**Judge Robert Wyatt,** *Gunderson v. F.A. Richard & Associates, Inc.,* (July 19, 2007) No. 2004-2417-D (14th Jud. D. Ct. La.):

> Okay. Let me sign this one. This is the final Order and Judgment regarding the fairness, reasonableness and adequacy. And I am satisfied in all respects regarding the presentation that's been made to the Court this morning in the Class memberships, the representation, the notice, and all other aspects and I'm signing that Order at this time. Congratulations, gentlemen.

**Judge Ronald B. Leighton,** *Grays Harbor Adventist Christian School v. Carrier Corporation,* (May 29, 2007) No. 05-05437 (W.D. Wash.):

> Based on the foregoing, the Court finds Plaintiffs' Motion for Approval of Proposed Form of Notice and Notice Plan is appropriate and should be granted.

**Judge John D. Allen,** *Carter v. North Central Life Insurance Co.,* (April 24, 2007) No. SU-2006-CV-3764-6 (Ga. Super. Ct.):

> The Notices prepared in this matter were couched in plain, easily understood language and were written and designed to the highest communication standards. The Notice Plan effectively reached a substantial percentage of Class Members and delivered noticeable Notices deigned to capture Class Members attention.

**Judge John D. Allen,** *Desportes v. American General Assurance Co.,* (April 24, 2007) No. SU-04-CV-3637 (Ga. Super. Ct.):

> *[T]he Court finds that [the notice]…fully satisfied the requirements of the Georgia Rules of Civil Procedure (including Ga. Code Ann. § 9-11-23(c)(2) and (e)), the Georgia and United States Constitutions (including the Due Process Clause), the Rules of the Court, and any other applicable law.*

**Judge Lewis A. Kaplan,** *In re Parmalat Securities Litig.,* (March 1, 2007) MDL 1653 (S.D.N.Y):

> *The court approves, as to the form and content, the Notice and the Publication Notice, attached hereto as Exhibits 1 and 2, respectively, and finds that the mailing and distribution of the Notice and the publication of the Publication Notice in the manner and form set forth in Paragraph 6 of this Order…meet the requirements of Rule 23 of the Federal Rules of Civil Procedure, the Securities Exchange Act of 1934, as emended by Section 21D(a)(7) of the Private Securities Litigation reform Act of 1995, 15 U.S.C. § 78u-4(a)(7), and due process, and is the best notice practicable under the circumstances and shall constitute due and sufficient notice to all persons and entities entitled thereto.*

**Judge Anna J. Brown,** *Reynolds v. The Hartford Financial Services Group, Inc.*, (February 27, 2007) No. CV-01-1529-BR (D. Ore):

> *[T]he court finds that the Notice Program fairly, fully, accurately, and adequately advised members of the Settlement Class and each Settlement Subclass of all relevant and material information concerning the proposed settlement of this action, their rights under Rule 23 of the Federal Rules of Civil Procedure, and related matters, and afforded the Settlement Class with adequate time and an opportunity to file objections to the Settlement or request exclusion from the Settlement Class. The court finds that the Notice Program constituted the best notice practicable under the circumstances and fully satisfied the requirements of Rule 23 and due process.*

**Judge Richard J. Holwell,** *In re Vivendi Universal, S.A. Securities Litig.*, 2007 WL 1490466, at *34 (S.D.N.Y.):

> *In response to defendants' manageability concerns, plaintiffs have filed a comprehensive affidavit outlining the effectiveness of its proposed method of providing notice in foreign countries. According to this…the Court is satisfied that plaintiffs intend to provide individual notice to those class members whose names and addresses are ascertainable, and that plaintiffs' proposed form of publication notice, while complex, will prove both manageable and the best means practicable of providing notice.*

**Judge Eldon E. Fallon,** *Turner v. Murphy, USA, Inc.*, 2007 WL 283431, at *5 (E.D. La.):

> *Most of the putative class members were displaced following hurricane Katrina…With this challenge in mind, the parties prepared a notice plan designed to reach the class members wherever they might reside…to ensure that adequate notice was given to class members in light of the unique challenges presented in this case..*

**Judge Sarah S. Vance,** *In re Educational Testing Services PLT 7-12 Test Scoring Litig.*, 47 F.Supp.2d. 617 (E.D. La. 2006):

> *The Court is satisfied that notice to the class fully complied with the requirements of Rule 23.*

**Judge Samuel Conti,** *Ciabattari v. Toyota Motor Sales, U.S.A., Inc.*, (November 17, 2006) No. C-05-04289-SC (N.D. Cal.):

> *After reviewing the evidence and arguments presented by the parties…the Court*

> *finds as follows…The class members were given the best notice practicable under the circumstances, and that such notice meets the requirements of the Due Process Clause of the U.S. Constitution, and all applicable statutes and rules of court.*

**Judge Ivan L.R. Lemelle,** *In re High Sulfur Content Gasoline Prods. Liability Litig.*, (November 8, 2006) MDL No. 1632 (E.D. La.):

> *This Court approved a carefully-worded Notice Plan…The Notice Plan for this Class Settlement was consistent with the best practices developed for modern-style "plain English" class notices; the Court and Settling Parties invested substantial effort to ensure notice to persons displaced by the Hurricanes of 2005; and as this Court has already determined, the Notice Plan met the requirements of Rule 23 and constitutional due process.*

**Judge Catherine C. Blake,** *In re Royal Ahold Securities and "ERISA" Litig.*, (November 2, 2006) MDL No.1539 (D. Md.):

> *The global aspect of the case raised additional practical and legal complexities, as did the parallel criminal proceedings in another district. The settlement obtained is among the largest cash settlements ever in a securities class action case and represents an estimated 40% recovery of possible provable damages. The notice process appears to have been very successful not only in reaching but also in eliciting claims from a substantial percentage of those eligible for recovery.*

**Judge Elaine E. Bucklo,** *Carnegie v. Household International*, (August 28, 2006) No. 98 C 2178 (N.D. Ill.):

> *[T]he Notice was disseminated pursuant to a plan consisting of first class mail and publication developed by Plaintiff's notice consultant…who the Court recognized as experts in the design of notice plans in class actions. The Notice by first-class mail and publication was provided in an adequate and sufficient manner; constitutes the best notice practicable under the circumstances; and satisfies all requirements of Rule 23(e) and due process.*

**Judge William A. Mayhew,** *Nature Guard Cement Roofing Shingles Cases*, (June 29, 2006) J.C.C.P. No 4215 (Cal. Sup. Ct.):

> *The method for dissemination of notice…constitute the fairest and best notice practicable under the circumstances of this case, comply with the applicable California Rules of Court, and satisfy due process.*

**Judge Catherine C. Blake,** *In re Royal Ahold Securities & "ERISA" Litig.*, (June 16, 2006) MDL 1539 (D. Md.):

> *In that regard, I would also comment on the notice. The form and scope of the notice in this case, and I'm repeating a little bit what already appeared to me to be evident at the preliminary stage, but the form and scope of the notice has been remarkable…The use of sort of plain language, the targeting of publications and media, the website with the translation into multiple languages, the mailings that have been done, I think you all are to be congratulated…*

**Judge Joe E. Griffin,** *Beasley v. Hartford Insurance Company of the Midwest*, (June 13, 2006) No. CV-2005-58-1 (Cir. Ct. Ark.):

> *Based on the Court's review of the evidence admitted and argument of counsel, the Court finds and concludes that the Individual Notice and the Publication Notice, as disseminated to members of the Settlement Class in accordance with*

8

> provisions of the Preliminarily Approval Order, was the best notice practicable under the circumstances…and the requirements of due process under the Arkansas and United States Constitutions.

**Judge Joe E. Griffin, *Beasley v. Hartford Insurance Company of the Midwest***, (June 13, 2006) No. CV-2005-58-1 (Cir. Ct. Ark.):

> Although the Notice Campaign was highly successful and resulted in actual mailed notice being received by over 400,000 Class Members, only one Class Member attempted to file a purported objection to either the Stipulation or Class Counsels' Application for Fees. The Court finds it significant that out of over 400,000 Class Members who received mailed Notice, there was no opposition to the proposed Settlement or Class Counsels' Application for Fees, other than a single void objection. The lack of opposition by a well-noticed Class strongly supports the fairness, reasonableness and adequacy of the Stipulation and Class Counsels' Application for Fees…

**Judge Norma L. Shapiro, *First State Orthopaedics, et al. v. Concentra, Inc.***, (May 1, 2006) No. 2:05-CV-04951-NS (E.D. Pa.):

> The Court finds that dissemination of the Mailed Notice, Published Notice and Full Notice in the manner set forth here and in the Settlement Agreement meets the requirements of due process and Pennsylvania law.

**Judge Thomas M. Hart, *Froeber v. Liberty Mutual Fire Ins. Co.***, (April 19, 2006) No. 00C15234 (Cir. Ct. Ore.):

> The court has found and now reaffirms that dissemination and publication of the Class Notice in accordance with the terms of the Third Amended Order constitutes the best notice practicable under the circumstances.

**Senior Justice Winkler, *Baxter v. Canada (Attorney General)***, (March 10, 2006) No. 00-CV-192059-CPA (Ont. Super. Ct.):

> …the English versions of the Notices provided to the court on this motion are themselves plainly worded and appear to be both informative and designed to be readily understood. It is contemplated that the form of notice will be published in English, French and Aboriginal languages, as appropriate for each media vehicle.

**Judge Catherine C. Blake, *In re Royal Ahold Securities & "ERISA" Litig.***, (January 6, 2006) MDL No. 1539 (D. Md.):

> I think it's remarkable, as I indicated briefly before, given the breadth and scope of the proposed Class, the global nature of the Class, frankly, that again, at least on a preliminary basis, and I will be getting a final report on this, that the Notice Plan that has been proposed seems very well, very well suited, both in terms of its plain language and in terms of its international reach, to do what I hope will be very thorough and broad-ranging job of reaching as many of the shareholders, whether individual or institutional, as possible can be done to participate in what I also preliminarily believe to be a fair, adequate and reasonable settlement.

**Judge Catherine C. Blake, *In re Royal Ahold Securities & "ERISA" Litig.***, 2006 WL 132080, at *4 (D. Md.):

> The Court finds that the form of Notice, the form of Summary Notice, and the Notice Plan satisfy the requirements of Fed.R.Civ.P. 23, due process, constitute the best notice practicable under the circumstances, and shall constitute due and sufficient notice to all members of the Class.

**Judge Robert H. Wyatt, Jr.,** ***Gray v. New Hampshire Indemnity Co. Inc.***, (December 19, 2005) No. CV-2002-952-2-3 (Cir. Ct. Ark.):

> *Notice of the Settlement Class was constitutionally adequate, both in terms of its substance and the manner in which it was disseminated…Notice was direct mailed to all Class members whose current whereabouts could be identified by reasonable effort. Notice was also effected by publication in many newspapers and magazines throughout the nation, reaching a large majority of the Class members multiple times. The Court finds that such notice constitutes the best notice practicable.*

**Judge Michael J. O'Malley,** ***Defrates v. Hollywood Entm't Corp.***, (June 24, 2005) No. 02 L 707 (Cir. Ct. Ill.):

> *[T]his Court hereby finds that the notice program described in the Preliminary Approval Order and completed by HEC complied fully with the requirements of due process, the Federal Rules of Civil Procedure and all other applicable laws.*

**Judge Wilford D. Carter,** ***Thibodeaux v. Conoco Phillips Co.***, (May 26, 2005) No. 2003-481 F (14th J.D. Ct. La.):

> *Such notices complied with all requirements of the federal and state constitutions, including the due process clause, and applicable articles of the Louisiana Code of Civil Procedure, and constituted the best notice practicable under the circumstances and constituted due process and sufficient notice to all potential members of the Class as Defined.*

**Judge Michael Canaday,** ***Morrow v. Conoco Inc.***, (May 25, 2005) No. 2002-3860 G (14th J.D. Ct. La.):

> *The objections, if any, made to due process, constitutionality, procedures, and compliance with law, including, but not limited to, the adequacy of notice and the fairness of the proposed Settlement Agreement, lack merit and are hereby overruled.*

**Judge John R. Padova,** ***Nichols v. SmithKline Beecham Corp.***, (April 22, 2005) No. 00-6222 (E.D. Pa.):

> *After reviewing the individual mailed Notice, the publication Notices, the PSAs and the informational release, the Court concludes that the substance of the Notice provided to members of the End-Payor Class in this case was adequate to satisfy the concerns of due process and the Federal Rules.*

**Judge John R. Padova,** ***Nichols v. SmithKline Beecham Corp.***, (April 22, 2005) No. 00-6222 (E.D. Pa.):

> *…End-Payor Plaintiffs used published Summary Notice to reach consumer members of the End-Payor Class, not individual mailed Notice…that Notice has reached 81.9% of all Paxil users…Such notice to class members of the Class is hereby determined to be fully in compliance with requirements of Fed. R. Civ. P. 23(e) and due process and is found to be the best notice practicable under the circumstances and to constitute due and sufficient notice to all entities entitled thereto.*

**Judge Douglas L. Combs,** ***Morris v. Liberty Mutual Fire Ins. Co.***, (February 22, 2005) No. CJ-03-714 (D. Okla.):

> *I am very impressed that the notice was able to reach—be delivered to 97 ½*

10

> *percent members of the class. That, to me, is admirable. And I'm also—at the time that this was initially entered, I was concerned about the ability of notice to be understood by common, nonlawyer person, when we talk about legalese in a court setting. In this particular notice, not only the summary notice but even the long form of the notice were easily understandable, for someone who could read the English language, to tell them whether or not they had the opportunity to file a claim.*

**Judge Joseph R. Goodwin, *In re Serzone Products Liability Litig.*,** 231 F.R.D. 221, 236 (S.D. W.Va. 2005):

> *Not one of the objectors support challenges to the adequacy of notice with any kind of evidence; rather, these objections consist of mere arguments and speculation. I have, nevertheless, addressed the main arguments herein, and I have considered all arguments when evaluating the notice in this manner. Accordingly, after considering the full record of evidence and filings before the court, I FIND that notice in this matter comports with the requirements of Due Process under the Fifth Amendment and Federal Rules of Civil Procedure 23(c)(2) and 23(e).*

**Judge Richard G. Stearns, *In re Lupron*® *Marketing and Sales Practice Litig.*,** (November 24, 2004) MDL No. 1430 (D. Mass.):

> *After review of the proposed Notice Plan…is hereby found to be the best practicable notice under the circumstances and, when completed, shall constitute due and sufficient notice of the Settlement and the Fairness Hearing to all persons and entities affected by and/or entitled to participate in the Settlement, in full compliance with the notice requirements of Rule 23 the Federal Rules of Civil Procedure and due process.*

**Judge Richard G. Stearns, *In re Lupron*® *Marketing and Sales Practice Litig.*,** (November 23, 2004) MDL No. 1430 (D. Mass.):

> *I actually find the [notice] plan as proposed to be comprehensive and extremely sophisticated and very likely be as comprehensive as any plan of its kind could be in reaching those most directly affected.*

**Judge Paul H. Alvarado, *Microsoft I-V Cases*,** (July 6, 2004) J.C.C.P. No. 4106 (Cal. Super. Ct.):

> *[T]he Court finds the notice program of the proposed Settlement was extensive and appropriate. It complied with all requirements of California law and due process…The Settlement notice plan was ultimately more successful than anticipated and it now appears that over 80% of the class was notified of the Settlement.*

**Judge Robert E. Payne, *Fisher v. Virginia Electric & Power Co.*,** (July 1, 2004) No. 3:02CV431 (E.D. Va.):

> *The success rate in notifying the class is, I believe, at least in my experience, I share Ms. Kauffman's experience, it is as great as I have ever seen in practicing or serving in this job…So I don't believe we could have had any more effective notice...The record here shows that the class members have been fully and fairly notified of the existence of the class action, of the issues in it, of the approaches taken by each side in it in such a way as to inform meaningfully those whose rights are affected and to thereby enable them to exercise their rights intelligently.*

**Judge John Kraetzer, *Biaz v. Mountain View Cemetery*,** (April 14, 2004) No. 809869-2 (Cal.

Super. Ct.):

> *The notice program was timely completed, complied with California Government Code section 6064, and provided the best practicable notice to all members of the Settlement Class under the circumstances.*

**Judge Joseph R. Goodwin,** *In re Serzone Prods. Liability Litig.*, 2004 U.S. Dist. LEXIS 28297, at *10 (S.D. W. Va.):

> *The Court has considered the Notice Plan and proposed forms of Notice and Summary Notice submitted with the Memorandum for Preliminary Approval and finds that the forms and manner of notice proposed by Plaintiffs and approved herein meet the requirements of due process and Fed.R.Civ.P. 23(c) and (e), are the best notice practicable under the circumstances, constitute sufficient notice to all persons entitled to notice, and satisfy the Constitutional requirements of notice.*

**Judge Carter Holly,** *Richison v. Am. Cemwood Corp.*, (November 18, 2003) No. 005532 (Cal. Sup. Ct.):

> *The notice was reasonable and the best notice practicable under the circumstances, was due, adequate, and sufficient notice to all Class members, and complied fully with the laws of the State of California, the Code of Civil Procedure, due process, and California Rules of Court 1859 and 1860…Not a single Class member—out of an estimated 30,000—objected to the terms of the Phase 2 Settlement Agreement, notwithstanding a comprehensive national Notice campaign, via direct mail and publication Notice.*

**Judge Louis J. Farina,** *Soders v. General Motors Corp.*, (October 31, 2003) No. CI-00-04255 (C.P. Ct. Pa.):

> *After balancing the factors laid out in Rule 1712(a), I find that Plaintiff's publication method is the method most reasonably calculated to inform the class members of the pending action...their plan will reach 84.8% of the class members. Defendant provided the Court with no information regarding the potential reach of their proposed plan…There is no doubt that some class members will remain unaware of the litigation, however, on balance, the Plaintiff's plan is likely to reach as many class members as the Defendant's plan at less than half the cost. As such, I approve the Plaintiff's publication based plan.*

**Judge Thomas A. Higgins,** *In re Columbia/HCA Healthcare Corp.*, (June 13, 2003) MDL No.1227 (M.D. Tenn.):

> *Notice of the settlement has been given in an adequate and sufficient manner. The notice provided by mailing the settlement notice to certain class members and publishing notice in the manner described in the settlement was the best practicable notice, complying in all respects with the requirements of due process.*

**Judge Harold Baer, Jr.,** *Thompson v. Metropolitan Life Ins. Co.*, 216 F.R.D. 55, 62 (S.D. N.Y. 2003):

> *In view of the extensive notice campaign waged by the defendant, the extremely small number of class members objecting or requesting exclusion from the settlement is a clear sign of strong support for the settlement…The notice campaign that defendant agreed to undertake was extensive…I am satisfied, having reviewed the contents of the notice package, and the extensive steps taken to disseminate notice of the settlement, that the class notice complies with*

*the requirements of Rule 23 (c)(2) and 23(e). In summary, I have reviewed all of the objections, and none persuade me to conclude that the proposed settlement is unfair, inadequate or unreasonable.*

**Judge Edgar E. Bayley,** ***Dimitrios v. CVS, Inc.***, No. 99-6209; ***Walker v. Rite Aid Corp.***, No. 99-6210; and ***Myers v. Rite Aid Corp.***, No. 01-2771 (November 27, 2002) (Pa. Ct. C.P.):

*The Court specifically finds that: fair and adequate notice has been given to the class, which comports with due process of law.*

**Judge Dewey C. Whitenton,** ***Ervin v. Movie Gallery, Inc.***, (November 22, 2002) No. 13007 (Tenn. Ch.):

*[T]he in-store notice alone accounted for an approximate 34% of all MGA class members and the combined efforts of the in-store notice and the other notice mechanisms reached at least 84.5% of the entire MGA settlement class..the effectiveness of the notice campaign and the very high level of penetration to the settlement class were truly remarkable…The notice campaign was highly successful and effective, and it more that satisfied the due process and state law requirements for class notice.*

**Judge Marina Corodemus,** ***Talalai v. Cooper Tire & Rubber Co.***, (September 13, 2002) No. L-008830.00 (N.J. Super. Ct.):

*Here, the comprehensive bilingual, English and Spanish, court-approved Notice Plan provided by the terms of the settlement meets due process requirements. The Notice Plan used a variety of methods to reach potential class members. For example, short form notices for print media were placed…throughout the United States and in major national consumer publications which include the most widely read publications among Cooper Tire owner demographic groups.*

**Judge Harold Baer, Jr.,** ***Thompson v. Metropolitan Life Ins. Co.***, (September 3, 2002) No. 00-CV-5071 (S.D.N.Y.):

*In sum, the Court finds that the proposed notice texts and methodology are reasonable, that they constitute due, adequate and sufficient notice to all persons entitled to be provided with notice, and that they meet the requirements of the Federal Rules of civil Procedure (including Fed. R. Civ. P. 23(c)(2) and (e)), the United States Constitution (including the Due Process Clause, the Rules of the Court, and any other applicable law.*

**Judge Milton Gunn Shuffield,** ***Scott v. Blockbuster Inc.***, (January 22, 2002) No. D 162-535 (Tex. Jud. Dist. Ct. Jefferson Co.) Ultimately withstood challenge to Court of Appeals of Texas. *Peters v. Blockbuster* 65 S.W.3d 295, 307 (Tex. App.-Beaumont, 2001):

*This Court concludes that the notice campaign was the best practicable, reasonably calculated, under all the circumstances, to apprise interested parties of the settlement and afford them an opportunity to present their objections…The notice campaign was highly successful and effective, and it more than satisfied the due process and state law requirements for class notice.*

***Williams v. Weyerhaeuser Co.***, 2002 WL 373578, at *10 (Cal. App. 1 Dist.):

*The hybrid notice given here–a combination of individual notice and notice by publication–was, as the trial court found, the best practicable method under the circumstances. The mass media campaign in this case appears to have been far more extensive than that approved in* <u>Dunk, supra, 48 Cal.App.4th at pp. 1800, 1805, 56 Cal.Rptr.2d 483.</u> *Objectors' own experience indicates the campaign was effective. Three of them received individual notices, two learned of the*

> *settlement through advertisements, and the others apparently learned of the settlement when one of them went around the neighborhood and told his neighbors about the settlement.*

**Judge Marina Corodemus,** *Talalai v. Cooper Tire & Rubber Co.*, (October 30, 2001) No. MID-L-8839-00-MT (N.J. Super. Ct.):

> *The parties have crafted a notice program which satisfies due process requirements without reliance on an unreasonably burdensome direct notification process…The notice program is specifically designed to reach a substantial percentage of the putative settlement class members…the proposed notice plan is design to effectively reach 83.2% of owner's of defendant's tires as well as the broader target of adults 35+, and 82.9% of key groups that account for the largest share of tire purchasers such as men 35+.*

**Judge Marina Corodemus,** *Talalai v. Cooper Tire & Rubber Co.*, (October 29, 2001) No. L-8830-00-MT (N.J. Super. Ct.):

> *I saw the various bar graphs for the different publications and the different media dissemination, and I think that was actually the clearest bar graph I've ever seen in my life…it was very clear of the time periods that you were doing as to each publication and which media you were doing over what market time, so I think that was very clear.*

**Judge Stuart R. Pollak,** *Microsoft I-V Cases*, (April 1, 2001) J.C.C.P. No. 4106 (Cal. Super. Ct.):

> *[C]oncerning dissemination of class notice; and I have reviewed the materials that have been submitted on that subject and basically I'm satisfied. I think it's amazing if you're really getting 80 percent coverage. That's very reassuring. And the papers that you submitted responded to a couple of things that had been mentioned before and I am satisfied with all that.*

**Judge Stuart R. Pollak,** *Microsoft I-V Cases*, (March 30, 2001) J.C.C.P. No. 4106 (Cal. Super. Ct.):

> *Plaintiffs and Defendant Microsoft Corporation have submitted a joint statement in support of their request that the Court approve the plan for dissemination of class action notice and proposed forms of notice, and amend the class definition…The Court further finds that the methods for dissemination of the notice are the fairest and best practicable under the circumstances, and comport with due process requirements.*

**Judge Alfred G. Chiantelli,** *Williams v. Weyerhaeuser Co.*, (December 22, 2000) No. 995787 (Cal. Super. Ct.):

> *Based upon the uncontroverted proof Class Counsel have submitted to the Court, the Court finds that the settling parties undertook an extensive notice campaign…*

**Judge Sarah S. Vance,** *In re Babcok & Wilcox Co.*, (August 25, 2000) No. 00-0558 (E.D. La.):

> *[t]he (debtor's notice) plan's reach and frequency methodology is consistent with other asbestos-related notice programs, mass tort bankruptcies, and other significant notice programs…After reviewing debtor's Notice Plan, and the objections raised to it, the Court finds that the plan is reasonably calculated to appraise unknown claimants of their rights and meets the due process requirements set forth in Mullane…Accordingly, the Notice Plan is approved.*

# Articles and Speaking Engagements

Gina Intrepido-Bowden and Robert Taylor-Manning, *Ethical Considerations in Canadian Class Actions*, CLE Program. Accredited in Toronto and presented at Rochon Genova, LLP (April 2012).

Gina Intrepido-Bowden and Rob Taylor-Manning, *The Fundamentals of Settlement Administration*, CLE Program. Accredited in Pennsylvania and presented in Philadelphia at Spector Roseman Kodroff & Willis, P.C. (December 2011).

Carla Peak, *Is your legal notice designed to be noticed?* WESTLAW JOURNAL CLASS ACTION Vol.18 Issue 10 (2011).

Gina Intrepido-Bowden, presenter/panelist, *Reaching Class Members & Driving Take Rates*, CONSUMER ATTORNEYS OF SAN DIEGO, 4th Annual Class Action Symposium (October 2011).

Gina Intrepido-Bowden, Carla Peak, and Elizabeth Grande, *Legal Notice Ethics*, CLE Program. Accreditation received in California, Colorado, Illinois, Minnesota, New Jersey, New York, North Carolina, Pennsylvania, and Texas. Presented at law firms in New York (May 2010), Chicago (May 2010), Philadelphia (October 2010) and Minneapolis (January 2011). Broadcast via satellite to law firms in California, North Carolina, Texas, and London (October 2010). Sent via video to law firms in China (October 2010).

Brian Christensen, Gina Intrepido, and Richard Simmons, *Class Actions 101: Best Practices and Potential Pitfalls in Providing Class Notice*, Kansas Bar Association CLE Program (March 2009).

John B. Isbister, Todd B. Hilsee, & Carla A. Peak, *Seven Steps to a Successful Class Action Settlement*, AMERICAN BAR ASSOCIATION, SECTION OF LITIGATION, CLASS ACTIONS TODAY 16 (2008).

Todd B. Hilsee, Gina M. Intrepido, & Shannon R. Wheatman, *Hurricanes, Mobility and Due Process: The "Desire-to-Inform" Requirement for Effective Class Action Notice Is Highlighted by Katrina*, 80 TULANE LAW REV. 1771 (2006); reprinted in course materials for: AMERICAN BAR ASSOCIATION, 10th Annual National Institute on Class Actions (2006); NATIONAL BUSINESS INSTITUTE, Class Action Update: Today's Trends & Strategies for Success (2006); CENTER FOR LEGAL EDUCATION INTERNATIONAL, Class Actions: Prosecuting and Defending Complex Litigation (2007).

Gina M. Intrepido, *Notice Experts May Help Resolve CAFA Removal Issues, Notification to Officials*, 6 CLASS ACTION LITIG. REP. 759 (2005).

Todd B. Hilsee, Shannon R. Wheatman, & Gina M. Intrepido, *Do You Really Want Me to Know My Rights? The Ethics Behind Due Process in Class Action Notice Is More Than Just Plain Language: A Desire to Actually Inform*, 18 GEORGETOWN JOURNAL LEGAL ETHICS 1359 (2005).

# Legal Notice Case Examples

Following is a partial list of cases our expert(s) have been directly involved in the design of the notice program and/or notice documents:

| | |
|---|---|
| *Naef v. Masonite Corp (Hardboard Siding)* | Cir. Ct. Ala., CV-94-4033 |
| *Williams v. Weyerhaeuser Co. (Hardboard Siding)* | Cal. Super. Ct., CV-995787 |
| *In re Babcock and Wilcox Co. (Asbestos Related Bankruptcy)* | E.D. La., 00-10992 |
| *Brown v. Am. Tobacco* | Cal. Super. Ct., J.C.C.P. 4042 No. 711400 |
| *Microsoft I-V Cases (Antitrust Litig. Mirroring Justice Dept.)* | Cal. Super. Ct., J.C.C.P. No. 4106 |
| *Scott v. Blockbuster, Inc. (Extended Viewing Fees)* | 136th Tex. Jud. Dist., No. D 162-535 |
| *Talalai v. Cooper Tire & Rubber Co. (Tire Layer Adhesion)* | N.J. Super. Ct., No. MID-L-8839-00 MT |
| *Thompson v. Metropolitan Life Ins. Co. (Race Related Sales Practices)* | S.D. N.Y., No. 00-CIV-5071 HB |
| *Ervin v. Movie Gallery Inc. (Extended Viewing Fees)* | Tenn. Ch. Fayette Co., No. CV-13007 |
| *Walker v. Rite Aid of PA, Inc. (PA Act 6)* | C.P. Pa., No. 99-6210 |
| *Myers v. Rite Aid of PA, Inc. (PA Act 6)* | C.P. Pa., No. 01-2771 |
| *Baker v. Jewel Food Stores, Inc. & Dominick's Finer Foods, Inc. (Milk Price Fixing)* | Cir. Ct. Ill. Cook Co., No. 00-L-9664 |
| *In re Columbia/HCA Healthcare Corp. (Billing Practices Litig.)* | M.D. Tenn., MDL No. 1227 |
| *Soders v. General Motors Corp. (Marketing Initiative)* | C.P. Pa., No. CI-00-04255 |
| *Nature Guard Cement Roofing Shingles Cases* | Cal. Super. Ct., J.C.C.P. No. 4215 |
| *Defrates v. Hollywood Entertainment Corp.* | Cir. Ct. Ill., St. Clair. Co., No. 02L707 |
| *West v. G&H Seed Co. (Crawfish Farmers)* | 27th Jud. D. Ct. La., No. 99-C-4984-A |
| *Baiz v. Mountain View Cemetery (Burial Practices)* | Cal. Super. Ct., No. 809869-2 |
| *Richison v. American Cemwood Corp. (Roofing Durability)* | Cal. Super. Ct., No. 005532 |
| *Friedman v. Microsoft Corp. (Antitrust)* | Ariz. Super. Ct., No. CV 2000-000722 |
| *Davis v. Am. Home Prods. Corp. (Norplant Contraceptive)* | Civ. D. Ct. La., Div. K, No. 94-11684 |
| *Gordon v. Microsoft Corp. (Antitrust)* | D. Minn., No. 00-5994 |
| *Fisher v. Virginia Electric & Power Co.* | E.D. Va., No 3:02-CV-431 |
| *Bardessono v. Ford Motor Co. (15 Passenger Vans Outreach)* | Wash. Super. Ct., No. 32494 |
| *Gardner v. Stimson Lumber Co. (Forestex Siding)* | Wash. Super. Ct., No. 00-2-17633-3SEA |
| *Nichols v. SmithKline Beecham Corp. (Paxil)* | E.D. Pa., No. 00-6222 |
| *In re Educ. Testing Serv. PLT 7-12 Test Scoring* | E.D. La., 2:04md1643 |
| *In re Serzone Products Liability* | S.D. W. Va., 02-md-1477 |
| *Ford Explorer Cases* | Cal. Super. Ct., JCCP Nos. 4226 & 4270 |
| *In re Lupron Marketing & Sales Practices* | D. Mass., MDL No.1430 |
| *Morris v. Liberty Mutual Fire Ins. Co.* | D. Okla., NO. CJ-03-714 |

| | |
|---|---|
| *Thibodeaux v. Conoco Philips Co.* | D. La., No. 2003-481 |
| *Morrow v. Conoco Inc.* | D. La., No. 2002-3860 |
| *Tobacco Farmer Transition Program* | U.S. Dept. of Agric. |
| *Froeber v. Liberty Mutual Fire Ins. Co.* | Cir. Ct. Ore., No. 00C15234 |
| *Carnegie v. Household Int'l, Inc.* | N. D. Ill., No. 98-C-2178 |
| *In re Royal Ahold Securities and "ERISA"* | D. Md., MDL 1539 |
| *First State Orthopaedics et al. v. Concentra, Inc., et al.* | E.D. Pa., No. 2:05-CV-04951-AB |
| *Meckstroth v. Toyota Motor Sales, U.S.A., Inc.* | 24th Jud. D. Ct. La., No. 583-318 |
| *In re High Sulfur Content Gasoline Products Liability* | E.D. La., MDL No. 1632 |
| *Desportes v. American General Assurance Co.* | Ga. Super. Ct., No. SU-04-CV-3637 |
| *In re Residential Schools Litigation* | Ont. Super. Ct., 00-CV-192059 CPA |
| *Turner v. Murphy Oil USA, Inc.* | E.D. La., No. 2:05-CV-04206-EEF-JCW |
| *Carter v. North Central Life Ins. Co.* | Ga. Super. Ct., No. SU-2006-CV-3764-6 |
| *Spence v. Microsoft Corp. (Antitrust Litig.)* | Cir. Ct. Wis., No. 00-CV-003042 |
| *Ciabattari v. Toyota Motor Sales, U.S.A., Inc.* | N.D. Cal., No. C-05-04289-BZ |
| *Peek v. Microsoft Corporation* | Cir. Ct. Ark., No. CV-2006-2612 |
| *Reynolds v. The Hartford Financial Services Group, Inc.* | D. Ore., No. CV-01-1529 BR |
| *Zarebski v. Hartford Insurance Co. of the Midwest* | Cir. Ct. Ark., No. CV-2006-409-3 |
| *In re Parmalat Securities* | S.D. N.Y., MDL No. 1653 (LAK) |
| *Beasley v. The Reliable Life Insurance Co.* | Cir. Ct. Ark., No. CV-2005-58-1 |
| *Sweeten v. American Empire Insurance Company* | Cir. Ct. Ark., No. 2007-154-3 |
| *Gunderson v. F.A. Richard & Associates, Inc. (FARA)* | 14th Jud. D. Ct. La., No. 2004-2417-D |
| *Gunderson v. F.A. Richard & Associates, Inc. (Focus)* | 14th Jud. D. Ct. La., No. 2004-2417-D |
| *Hunsucker v. American Standard Ins. Co. of Wisconsin* | Cir. Ct. Ark., No., CV-2007-155-3 |
| *Burgess v. Farmers Insurance Co., Inc.* | D. Okla., No. CJ-2001-292 |
| *Grays Harbor v. Carrier Corporation* | W.D. Wash., No. 05-05437-RBL |
| *Donnelly v. United Technologies Corp.* | Ont. S.C.J., 06-CV-320045CP |
| *Wener v. United Technologies Corp.* | QC. Super. Ct., 500-06-000425-088 |
| *Brookshire Bros. v. Chiquita (Antitrust)* | S.D. Fla., No. 05-CIV-21962 |
| *Johnson v. Progressive* | Cir. Ct. Ark., No. CV-2003-513 |
| *Bond v. American Family Insurance Co.* | D. Ariz., CV06-01249-PXH-DGC |
| *Angel v. U.S. Tire Recovery (Tire Fire)* | Cir. Ct. W. Va., No. 06-C-855 |
| *In re TJX Companies Retail Security Breach* | D. Mass., MDL No. 1838 |
| *Webb v. Liberty Mutual Insurance Co.* | Cir. Ct. Ark., No. CV-2007-418-3 |
| *Shaffer v. Continental Casualty Co. (Long Term Care Insurance)* | C.D. Cal., SACV06-2235-PSG (PJWx) |
| *Palace v. DaimlerChrysler (Neon Head Gaskets)* | Cir. Ct. Ill., Cook Co., No. 01-CH-13168 |

| *Beringer v. Certegy Check Services, Inc. (Data Breach)* | M.D. Fla., No. 8:07-cv-1657-T-23TGW |
|---|---|
| *Lockwood v. Certegy Check Services, Inc. (Data Breach)* | M.D. Fla., No. 2:07-CV-587-FtM-29-DNF |
| *Sherrill v. Progressive Northwestern Ins. Co.* | 18th D. Ct. Mont., No. DV-03-220 |
| *Gunderson v. F.A. Richard & Associates, Inc. (AIG)* | 14th Jud. D. Ct. La., No. 2004-2417-D |
| *Jones v. Dominion Transmission, Inc.* | S.D. W. Va., No. 2:06-cv-00671 |
| *Gunderson v. F.A. Richard & Associates, Inc. (Walmart)* | 14th Jud. D. Ct. La., No. 2004-2417-D |
| *In re Trans Union Corp. Privacy (Data Breach)* | N.D. Ill., MDL No. 1350 |
| *Gunderson v. F.A. Richard & Associates., Inc. (Amerisafe)* | 14th Jud. D. Ct. La., No. 2004-002417 |
| *Bibb v. Monsanto Co. (Nitro)* | Cir. Ct. W.Va., No. 041465 |
| *Carter v. Monsanto Co. (Nitro)* | Cir. Ct. W.Va., No. 00-C-300 |
| *In re U.S. Department of  eterans Affairs (  A) Data Breach* | D. D.C., MDL 1796 |
| *In re Countrywide Financial Corp. Customer Data Security Breach* | W.D. Ky., MDL No. 1998 |
| *Dolen v. ABN AMRO Bank N.  . (Callable CDs)* | Nos. 01-L-454 & 01-L-493 |
| *Griffin v. Dell Canada Inc.* | Ont. Super. Ct., No. 07-CV-325223D2 |
| *Plubell v. Merck & Co., Inc.* | Cir. Ct. Mo., No. 04CV235817-01 |
| *Billieson v. City of New Orleans* | Civ. D. Ct. La., No. 94-19231 |
| *Anderson v. Government of Canada* | Sup. Ct. NL, No. 2008NLTD166 |
| *  o v. Natura Pet Products, Inc.* | N.D. Cal., No. 5:09cv02619 |
| *Allen v. UMB Bank, N.A.* | Cir. Ct. Mo., No. 1016-CV34791 |
| *Blue Cross of California Website Security Cases* | Sup. Ct. Cal., No. JCCP 4647 |
| *Alvare  v. Haseko Homes, Inc.* | Cir. Ct. HI., No. 09-1-2691-11 |
| *LaRocque v. TRS Recovery Services, Inc.* | D. Maine, No. 2:11cv00091 |
| *In re: Zurn Pex Plumbing Products Liability Litig.* | D. Minn., MDL No. 08-1958 |
| *Molina v. Intrust Bank, N.A.* | 18th Jud. D. Ct., 10-cv-3686 |
| *In Re: Uponor, Inc., F1807 Products Liability Litigation* | D. Minn, MDL No. 2247 |

Following is a partial list of notice programs and/or notices that are expert(s) have critiqued:

| *Barbanti v. W.R. Grace and Co. (Zonolite/Asbestos Litig.)* | Wash. Super. Ct., 00201756-6 |
|---|---|
| *In re W.R. Grace Co. (Asbestos Related Bankruptcy)* | Bankr. D. Del., No. 01-3293-JCS |
| *In re USG Corp. (Asbestos Related Bankruptcy)* | Bankr. D. Del., No. 01-02094-RJN |
| *Johnson v. Ethicon, Inc. (Product Liability Litigation)* | Cir. Ct. W. Va., Nos. 01-C-1530, 1531, 1533, 01-C-2491 to 2500 |
| *Parsons/Currie v. McDonalds* | Ont. S.C.J. d2004 |
| *Chambers v. DaimlerChrysler Corp. (Neon Head Gaskets)* | N.C. Super. Ct., No. 01:CVS-1555 |
| *West v. Carfax, Inc.* | Ohio C.P., No. 04-CV-1898 (ADL) |
| *Perrine v. E.I. Du Pont De Nemours & Co.* | Cir. Ct. W. Va., No. 04-C-296-2 |

| *Clark v. Pfi er, Inc. (Neurontin)* | C.P. Pa. Phila. Co., No. 9709-3162 |
| --- | --- |
| *In re Motor Fuel Temperature Sales Practices Litig.* | D. Kan., MDL No. 1840 |
| *Gallucci v. Boiron, Inc.* | S.D. Ca., No. 3:11-cv-02039 |
| *Tchoboian v. FedEx ffice and Print Services, Inc.* | C.D. Cal., No.10-CV01008 |

Attachment B

To:
From: administrator@ACFTCAsettlement.com
Subject: Legal Notice about Vehicles Rented at California Airports

**To file your Election of Benefits Form online:**
**ID Number: XXXXXXX**

**You can file a claim for cash or vouchers from a class action settlement**
**about your rental of a vehicle at a California airport location from**
**January 1, 2007 to November 14, 2007.**

A settlement has been reached with The Hertz Corporation, Dollar Thrifty Automotive Group, Inc., Avis Budget Group, Inc., Vanguard Car Rental USA, LLC, Enterprise Holdings, Inc., Fox Rent A Car, Inc. and the California Travel and Tourism Commission in a class action lawsuit claiming that these companies agreed with each other to pass on the Airport Concession Fee (ACF) and Tourism Commission Assessment (TCA) to customers for rentals at certain California airport locations. The Defendants deny all of the claims in the lawsuit, but have agreed to the settlement to avoid the cost and risk of a trial.

WHO IS INCLUDED? Defendants' records show that you are included in the settlement. Generally, the settlement includes people who rented a vehicle directly from corporate-owned locations of Alamo, Avis, Budget, Dollar, Enterprise, Fox Rent A Car, Hertz, National, or Thrifty for pick up at a California airport location from January 1, 2007 through November 14, 2007, and who were charged and paid an ACF and/or TCA as a separate line item on their invoice. Rentals from non-corporate owned airport locations, rentals made as part of a pre-existing agreement with a business or governmental body according to which the rental charge was determined, and rentals where a package price was paid to a tour operator or online booking agency (like Priceline or Hotwire) are not included and are not entitled to cash payments or vouchers.

WHAT CAN YOU GET? You can elect to receive one of the cash or voucher options below based on the total number of days you rented one or more vehicles directly from that rental car defendant at a California airport location from January 1, 2007 to November 14, 2007, and paid an ACF and/or TCA as a separate line item on your invoice. Benefit options are:

| Total number of rental days | Option | Description |
|---|---|---|
| Any | Cash | $2 per day ($5 minimum payment) |
| Less than eight | One—One Day Voucher | one voucher good for free time and mileage for one rental day |
| Eight or more | Two—One Day Vouchers | two vouchers, each good for free time and mileage for one rental day; or |

| | One—Two Day Voucher | one voucher good for free time and mileage for <u>two</u> rental days |
| --- | --- | --- |

Vouchers will be issued in the brand name of the rental car company that charged and collected the ACF and/or TCA, and will be available for use at any of that rental car company's U.S. corporate-owned locations. Avis and Budget vouchers may be redeemed at an Avis or Budget U.S. corporate-owned location. The settlement will also require the California Travel and Tourism Commission to adopt certain practices related to meetings and its communications with the public and rental car companies about Tourism Commission Assessments.

**Ho   to Get Benefits?** You must submit an Election of Benefits Form by     onth 00, **2012** to get a cash payment or vouchers. Using the ID number above, you can submit a form online at <u>www.ACFTCAsettlement.com</u>. You may also request one by calling 1-000-000-0000 or by sending a letter by mail to the claims administrator.

**Your Other Options?** If you submit an Election of Benefits Form or do nothing, you will be legally bound by the settlement and you will give up your right to sue the Defendants for any claim asserted in this lawsuit or released by the Stipulation of Settlement. If you do not want to be legally bound by the settlement or be able to get a cash payment or voucher from it, you must exclude yourself by     **onth 00, 2012**. If you do not exclude yourself, you may object to the settlement or you may ask for permission for you or your lawyer to appear and speak at the hearing—at your own cost—but you don't have to. The deadline to submit objections and requests to appear is     **onth 00, 2012**. The detailed notice, available at the website, explains how to act on all of your options.

The Court will hold a hearing on     **onth 00, 2012** to consider whether to approve: the settlement; attorneys' fees, costs, and expenses of up to $5,870,000; and a $2,000 payment to the Class Representative. These fees, costs, expenses and payments will be paid separately by the Defendants and will not reduce the amount of cash or vouchers available. The complete terms of the settlement, including the benefits you may be entitled to receive and the rights you may be giving up are contained in the Stipulation of Settlement, which may be found online at www.ACFTCAsettlement.com.

**File your claim online at _____.ACFTCAsettlement.com. You may also re uest an Election of Benefits Form and more information by callin  1 000 000 0000.**

A settlement has been reached with The Hertz Corporation, Dollar Thrifty Automotive Group, Inc., Avis Budget Group, Inc., Vanguard Car Rental USA, LLC, Enterprise Holdings, Inc., Fox Rent A Car, Inc. and the California Travel and Tourism Commission in a class action lawsuit claiming that these companies agreed with each other to pass on the Airport Concession Fee (ACF) and Tourism Commission Assessment (TCA) to customers for rentals at certain California airport locations. The Defendants deny all of the claims in the lawsuit, but have agreed to the settlement to avoid the cost and risk of a trial.

**Who's Included?** Defendants' records show that you are included in the settlement. Generally, the settlement includes people who rented a vehicle directly from corporate-owned locations of Alamo, Avis, Budget, Dollar, Enterprise, Fox Rent A Car, Hertz, National, or Thrifty for pick up at a California airport location from January 1, 2007 through November 14, 2007, and were charged and paid an ACF and/or TCA as a separate line item on their invoice. Rentals from non-corporate owned airport locations, rentals made as part of a pre-existing agreement with a business or governmental according to which the rental charge was determined, and rentals where a package price was paid to a tour operator or online booking agency (like Priceline or Hotwire) are not included and are not entitled to cash payments or vouchers.

**What Can You Get?** You can elect to receive one of the options below based on the total number of days you rented one or more vehicles directly from that rental car defendant at a California airport location from 1/1/07 to 11/14/07, and paid an ACF and/or TCA as a separate line item on your invoice. Options are: (1) $2 for each day the vehicles were rented ($5 minimum payment); or (2) if the vehicles were rented for less than 8 days, one voucher good for free time and mileage for one rental day; or (3) if the vehicles were rented for 8 or more days, either (a) two—one day vouchers each good for free time and mileage for one rental day, or (b) one—two day voucher good for free time and mileage for two rental days. Vouchers will be issued in the brand name of each rental car company that charged you the ACF and/or TCA, and will be available for use at any of that rental car company's U.S. corporate-owned locations.

**How to Get Benefits?** Use the code on the front of this postcard to submit your Election of Benefits Form online by **Month 00, 2012**. Forms are also available at www.ACFTCAsettlement.com or by calling 1-000-000-0000.

**Your Other Options**. If you do nothing, your rights will be affected. If you don't want to be legally bound by the settlement, you must exclude yourself from it by **Month 00, 2012**. Unless you exclude yourself you won't be able to sue the Defendants for any claim asserted in this lawsuit or released by the Stipulation of Settlement. If you stay in the settlement (i.e., don't exclude yourself), you may object to it or you may ask for permission for you or your own lawyer to appear and speak at the hearing—at your own cost—but you don't have to. Objections and requests to appear are due by **Month 00, 2012**. More information is in the detailed notice and Stipulation of Settlement which are available at the website.

The Court will hold a hearing on Month 00, 2012 to consider whether to approve: the settlement; attorneys' fees, costs, and expenses of up to $5,870,000; and a $2,000 payment to the Class Representative.

**File your Election of Benefits Form online at www.ACFTCAsettlement.com or get one by calling 1-000-000-0000.**

<u>LEGAL NOTICE</u>

**You can file a claim for cash or vouchers from a class action settlement because you rented a vehicle from a California airport location between January 1, 2007 and November 14, 2007.**

**1-000-000-0000**
**www.ACFTCAsettlement.com**

HZS

ACF/TCA
Settlement Administrator
P.O. Box 0000
City, ST 00000-0000

| Presorted |
| First-Class Mail |
| U.S. Postage |
| PAID |
| City, ST |
| Permit No. 0000 |

Postal Service: Please Do Not Mark Barcode

{BARCODE}
JOHN Q CLASSMEMBER
123 ABC STREET
NOVATO, CA 94948-0000

Election of Benefits ID#: [XXXXXXXXXXXX]
(use ID to file your claim online)

LEGAL NOTICE

# If you rented a vehicle at a California airport location between January 1, 2007 and November 14, 2007, you may be entitled to cash or vouchers from a class action settlement.

A settlement has been reached with The Hertz Corporation, Dollar Thrifty Automotive Group, Inc., Avis Budget Group, Inc., Vanguard Car Rental USA, LLC, Enterprise Holdings, Inc., Fox Rent A Car, Inc. and the California Travel and Tourism Commission in a class action lawsuit claiming that these companies agreed with each other to pass on the Airport Concession Fee (ACF) and Tourism Commission Assessment (TCA) to customers for rentals at certain California airport locations. The Defendants deny all of the claims in the lawsuit, but have agreed to the settlement to avoid the cost and risk of a trial.

**WHO IS INCLUDED?** Generally, the settlement includes people who rented a vehicle directly from corporate-owned locations of Alamo, Avis, Budget, Dollar, Enterprise, Fox Rent A Car, Hertz, National or Thrifty for pick up at a California airport location from 1/1/07-11/14/07, and were charged and paid to the rental car company an ACF and/or TCA as a separate line item on their invoice. Rentals from non-corporate owned airport locations, rentals made as part of a pre-existing agreement with a business or governmental body according to which the rental charge was determined, and rentals where a package price was paid to a tour operator or online booking agency (like Priceline or Hotwire) are not included and are not entitled to cash payments or vouchers.

**WHAT DOES THE SETTLEMENT PROVIDE?** Those included in the settlement can elect to receive one of the following options based on the total number of days they rented one or more vehicles directly from that rental car defendant at a California airport location from 1/1/07 to 11/14/07, and paid an ACF and/or TCA as a separate line item on their invoice. Options are: (1) $2 for each day the vehicles were rented ($5 minimum payment); or (2) if the vehicles were rented for less than eight days, one voucher good for free time and mileage for one rental day; or (3) if the vehicles were rented for eight or more days, the choice of either (a) two—one day vouchers each good for free time and mileage for one rental day, or (b) one—two day voucher good for free time and mileage

for two rental days. Vouchers will be issued in the brand name of the rental car company that charged and collected the ACF and/or TCA, and will be available for use at any of that rental car company's U.S. corporate-owned locations.

**HOW DO YOU ASK FOR A CASH PAYMENT OR VOUCHER?** Submit an Election of Benefits Form online by **Month 00, 2012**. Forms are also available at the website or by calling 1-000-000-0000.

**WHAT ARE YOUR OPTIONS?** If you submit an Election of Benefits Form or do nothing, you will be legally bound by the settlement and give up your right to sue the Defendants for any claim asserted in this lawsuit or released by the Stipulation of Settlement. If you do not want to be legally bound by the settlement or be able to get a cash payment or voucher from it, you must exclude yourself by **Month 00, 2012**. If you do not exclude yourself, you may object to the settlement or you may ask for permission for you or your lawyer to appear and speak at the hearing—at your own cost—but you don't have to. The deadline to submit objections and requests to appear is **Month 00, 2012**.

**THE COURT'S FAIRNESS HEARING.** The U.S. District Court for the Southern District of California will hold a hearing in this case (*Shames v. The Hertz Corp.*, No. 07cv2174-MMA), on Month 00, 2012 to consider whether to approve the settlement, payment of attorneys' fees, costs, and expenses of up to $5,870,000 and a $2,000 payment to the Class Representative.

**HOW DO YOU GET MORE INFORMATION?** More information is in the detailed notice and Stipulation of Settlement which are available at the website. You can also call or write to ACF/TCA Settlement Administrator, c/o KCC LLC, PO Box 0000, City, ST 00000-0000.

# 1-000-000-0000
# www.ACFTCAsettlement.com

To:
From: administrator@ACFTCAsettlement.com
Subject: Reminder Notice about Vehicles Rented at California Airports

**To file your Election of Benefits Form online:**
**ID Number: XXXXXXX**

<u>**Reminder: Submission deadline is Month 00, 2012**</u>
**You can file a claim for cash or vouchers from a class action settlement about your rental of a vehicle at a California airport location.**

Records show that you rented a vehicle directly from a corporate-owned location of Alamo, Avis, Budget, Dollar, Enterprise, Fox Rent A Car, Hertz, National, or Thrifty for pick up at a California airport location between January 1, 2007 and November 14, 2007, and were charged and paid an Airport Concession Fee (ACF) and/or Tourism Commission Assessment (TCA) as a separate line item on your invoice. You can elect to receive one of the cash or voucher options below based on the total number of days you rented one or more vehicles directly from that rental car defendant at a California airport location from January 1, 2007 to November 14, 2007, and paid an ACF and/or TCA as a separate line item on your invoice. Benefit options are:

| Total number of rental days | Option | Description |
|---|---|---|
| Any | Cash | $2 per day ($5 minimum payment) |
| Less than eight | One—One Day Voucher | one voucher good for free time and mileage for <u>one</u> rental day |
| Eight or more | Two—One Day Vouchers | two vouchers, each good for free time and mileage for <u>one</u> rental day; or |
| | One—Two Day Voucher | one voucher good for free time and mileage for <u>two</u> rental days |

Rentals from non-corporate owned airport locations, rentals made as part of a pre-existing agreement with a business or governmental body according to which the rental charge was determined, and rentals where a package price was paid to a tour operator or online booking agency (like Priceline or Hotwire) are <u>not</u> included and are <u>not</u> entitled to cash payments or vouchers.

Vouchers will be issued in the brand name of the rental car company that charged and collected the ACF and/or TCA, and will be available for use at that rental car company's U.S. corporate-owned locations. Avis and Budget vouchers may be redeemed at an Avis or Budget U.S. corporate-owned location.

To get your cash payment or voucher you must submit an Election of Benefits Form. Using the ID number above, you can submit a form online at www.ACFTCAsettlement.com. You may also request one by calling 1-000-000-0000 or by sending a letter by mail to the claims administrator. **Remember, the deadline to submit or mail your Election of Benefits Form is Month 00, 2012**.

The cash payments and vouchers are the result of a settlement that was reached with The Hertz Corporation, Dollar Thrifty Automotive Group, Inc., Avis Budget Group, Inc., Vanguard Car Rental USA, LLC, Enterprise Holdings, Inc., Fox Rent A Car, Inc. and the California Travel and Tourism Commission in a class action lawsuit claiming that these companies agreed with each other to pass on the Airport Concession Fee and Tourism Commission Assessment to customers for rentals at certain California airport locations. The Defendants deny all of the claims in the lawsuit, but have agreed to the settlement to avoid the cost and risk of a trial.  The settlement will also require the California Travel and Tourism Commission to adopt certain practices related to meetings and its communications with the public and rental car companies about Tourism Commission Assessments.

**File your claim online at _____.  CFTC  settlement.com. You may also re  uest an Election of Benefits Form and more information by callin   1 000 000 0000.**

LEGAL NOTICE

# Reminder: Submission deadline is Month 00, 2012

## If you rented a vehicle at a California airport location between January 1, 2007 and November 14, 2007, you may be entitled to cash or vouchers.

If you rented a vehicle directly from corporate-owned locations of Alamo, Avis, Budget, Dollar, Enterprise, Fox Rent A Car, Hertz, National, or Thrifty for pick up at a California airport location from January 1, 2007 through November 14, 2007, and you were charged and paid an Airport Concession Fee (ACF) and/or Tourism Commission Assessment (TCA) as a separate line item on your invoice you may be entitled to a cash payment or vouchers from a class action settlement. Benefit options are: (1) $2 for each day the vehicles were rented ($5 minimum payment); or (2) if the vehicles were rented for less than eight days, one voucher good for free time and mileage for <u>one</u> rental day; or (3) if the vehicles were rented for eight or more days, the choice of either (a) two—one day vouchers each good for free time and mileage for <u>one</u> rental day, or (b) one—two day voucher good for free time and mileage for <u>two</u> rental days. Rentals from non-corporate owned airport location, rentals made as part of a pre-existing agreement with a business or governmental body according to which the rental charge was determined, and rentals where a package price was paid to a tour operator or online booking agency (such as Priceline or Hotwire) are <u>not</u> included and are <u>not</u> entitled to cash payments or vouchers.

Vouchers will be issued in the brand name of the rental car company that charged and collected the ACF and/or TCA, and will be available for use at any of that rental car company's U.S. corporate-owned locations.

To get your cash payment or voucher you must submit an Election of Benefits Form. You may submit a form online or request one by calling 1-000-000-0000. Remember, the deadline to submit or mail your Election of Benefits Form is **Month 00, 2012**.

The cash payments and vouchers are the result of a settlement that was reached with The Hertz Corporation, Dollar Thrifty Automotive Group, Inc., Avis Budget Group, Inc., Vanguard Car Rental USA, LLC, Enterprise Holdings, Inc., Fox Rent A Car, Inc. and the California Travel and Tourism Commission in a class action lawsuit claiming that these companies agreed with each other to pass on the ACF and TCA to customers for rentals at certain California airport locations. The Defendants deny all of the claims in the lawsuit, but have agreed to the settlement to avoid the cost and risk of a trial.  The settlement will also require the California Travel and Tourism Commission to adopt certain practices related to meetings and its communications with the public and rental car companies about Tourism Commission Assessments.

## File your Election of Benefits Form online at www.ACFTCAsettlement.com or get one by calling 1-000-000-0000.

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF CALIFORNIA

# If you rented a vehicle at a California airport location between January 1, 2007 and November 14, 2007, you may be entitled to cash or vouchers from a class action settlement.

*A court authorized this Notice. This is <u>not</u> a solicitation from a lawyer.*

- A settlement has been reached in a class action lawsuit claiming that certain car rental companies agreed with each other to pass on the Airport Concession Fee and Tourism Commission Assessment to customers who rented vehicles from certain California airport locations.

- The settlement provides cash payments or vouchers to those included in the settlement.

- The settlement will also require the California Travel and Tourism Commission to adopt certain practices related to meetings and its communications with the public and rental car companies about Tourism Commission Assessments.

- This notice summarizes the proposed settlement. The complete terms of the settlement, including information describing the benefits you may be entitled to receive and the rights you may be giving up, are contained in the Stipulation of Settlement, which may be found online at www.ACFTCAsettlement.com.

- Your legal rights are affected whether you act or don't act. Read this notice carefully.

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT: | |
|---|---|
| SUBMIT AN ELECTION OF BENEFITS FORM | The only way to get a cash payment or voucher. |
| EXCLUDE YOURSELF | Get no payment or voucher. This is the only option that allows you to ever be part of another lawsuit against the Defendants about the legal claims asserted in this lawsuit or released through the settlement. |
| OBJECT | Write to the Court about why you don't like the settlement. |
| GO TO A HEARING | Ask to speak in Court about the fairness of the settlement. |
| DO NOTHING | Get no payment or voucher. Give up rights. |

- These rights and options—**and the deadlines to exercise them**—are explained in this notice.

- The Court in charge of this case still has to decide whether to approve the settlement. Cash payments will be made and vouchers will be distributed only if the Court approves the settlement and after any appeals are resolved. Please be patient.

## WHAT THIS NOTICE CONTAINS

BASIC INFORMATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . PAGE 3
1. Why was this notice issued?
2. What is this lawsuit about?
3. What is a class action?
4. Why is there a settlement?

WHO IS INCLUDED IN THE SETTLEMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . PAGE 3
5. How do I know if I am part of the settlement?
6. Are there exceptions to being included in the settlement?
7. What if I am still not sure if I am included?

THE SETTLEMENT BENEFITS—WHAT YOU CAN GET . . . . . . . . . . . . . . . . . . . . . . . . . . . . PAGE 4
8. What does the settlement provide?
9. Tell me more about the vouchers.

HOW TO GET BENEFITS—SUBMITTING AN ELECTION OF BENEFITS FORM. . . . . . . . . . . . PAGE 5
10. How can I get a cash payment or voucher?
11. When will I get my cash payment or voucher?
12. What rights am I giving up to get a cash payment or voucher and stay in the Class?

EXCLUDING YOURSELF FROM THE SETTLEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . PAGE 5
13. How do I get out of the settlement?
14. If I exclude myself, will I still get a cash payment or voucher from this settlement?
15. If I don't exclude myself, can I sue the Defendants for the same claims later?

THE LAWYERS REPRESENTING YOU . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . PAGE 6
16. Do I have a lawyer in this case?
17. How will the lawyers be paid?

OBJECTING TO THE SETTLEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . PAGE 6
18. How do I tell the Court if I don't like the settlement?
19. What's the difference between objecting to the settlement and excluding myself from it?

THE COURT'S FAIRNESS HEARING. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . PAGE 6
20. When and where will the Court decide whether to approve the settlement?
21. Do I have to come to the hearing?
22. May I speak at the hearing?

IF YOU DO NOTHING . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . PAGE 7
23. What happens if I do nothing at all?

GETTING MORE INFORMATION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . PAGE 7
24. Are there more details about the settlement?
25. How do I get more information?

## BASIC INFORMATION

**1. Why was this notice issued?**

A Court authorized this notice because you have a right to know about the proposed settlement of this class action lawsuit and about all of your options before the Court decides whether to approve the settlement. This notice explains the lawsuit, the settlement, your legal rights, what benefits are available, and who can get them.

Judge Michael M. Anello of the United States District Court for the Southern District of California is overseeing this class action. The case is known as *Shames v. The Hertz Corporation*, Case No. 07cv2174-MMA. The people who sued are called the Plaintiffs and the companies they sued, The Hertz Corporation, Dollar Thrifty Automotive Group, Inc., Avis Budget Group, Inc., Vanguard Car Rental USA, LLC, Enterprise Holdings, Inc., Fox Rent A Car, Inc. and the California Travel and Tourism Commission, are called the Defendants. The Hertz Corporation, Dollar Thrifty Automotive Group, Inc., Avis Budget Group, Inc., Vanguard Car Rental USA, LLC, Enterprise Holdings, Inc., and Fox Rent A Car, Inc. may also be referred to as the Rental Car Defendants.

**2. What is this lawsuit about?**

The lawsuit claims that the Defendants violated antitrust and other laws by raising rental car prices at California airports by agreeing with each other to pass on the Airport Concession Fee (ACF) and Tourism Commission Assessment (TCA) to customers for rentals at certain California airport locations. The Defendants deny all of the claims in the lawsuit and deny that they did anything wrong.

**3. What is a class action?**

In a class action, one or more people, called a Class Representative (in this case Gary Gramkow), sue on behalf of all people who have similar claims. The people included in the class action are called a Class or Class Members. A single court resolves the issues for all Class Members, except for those who exclude themselves from the Class.

**4. Why is there a settlement?**

The Court did not decide in favor of the Plaintiffs or the Defendants. Instead, both sides agreed to a settlement. This way, they avoid the cost and risk of a trial and the Class can get benefits. The Class Representative and his attorneys think the settlement is best for all Class Members.

## WHO IS INCLUDED IN THE SETTLEMENT

**5. How do I know if I am part of the settlement?**

If you received a notice in the mail or by email, at least one of the Rental Car Defendants' records shows that you are included in the settlement. Generally, the settlement includes people who rented a vehicle directly from corporate-owned locations of Alamo, Avis, Budget, Dollar, Enterprise, Fox Rent A Car, Hertz, National or Thrifty for pick up at a California airport location from January 1, 2007 through November 14, 2007, and were charged and paid an ACF and/or TCA as a separate line item on their invoice to one of those companies.

**6. Are there exceptions to being included in the settlement?**

Yes. Rentals from non-corporate owned airport locations, rentals made as part of a pre-existing agreement with a business or governmental body according to which the rental charge was determined, and rentals where the customer paid a package price to a tour operator or online booking agency (such as Priceline or Hotwire) are not included in the Class and are not entitled to cash payments or vouchers from this settlement.

Rentals made at California airport licensee locations are not included in the settlement. A list of the licensee locations is available at www.ACFTCAsettlement.com.

**7. What if I am still not sure if I am included?**

Visit www.ACFTCAsettlement.com, call 1-800-000-0000 or write to ACF/TCA Settlement Administrator, c/o KCC LLC, PO Box 0000, City, ST 00000-0000 for more information.

# THE SETTLEMENT BENEFITS—WHAT YOU CAN GET

**8. What does the settlement provide?**

The settlement provides the option of a cash payment or voucher from each Rental Car Defendant that the Class Member rented a vehicle from, at a California airport location, between January 1, 2007 and November 14, 2007, and paid an ACF and/or TCA as a separate line item on their invoice. The benefit options are based on the total number of days each vehicle was rented. Benefit options are:

| Total number of rental days (from 1/1/07 to 11/14/07) | Option | Description |
|---|---|---|
| Any | Cash | $2 per day ($5 minimum payment) |
| Less than eight | One—One Day Voucher | one voucher good for free time and mileage for <u>one</u> rental day |
| Eight or more | Two—One Day Vouchers | two vouchers, each good for free time and mileage for <u>one</u> rental day; or |
| | One—Two Day Voucher | one voucher good for free time and mileage for <u>two</u> rental days |

Rental days for vehicles rented from Avis or Budget may be combined when selecting benefit options.

**9. Tell me more about the vouchers.**

Vouchers:

- will be issued in the brand name of each of the rental car companies that charged the Class Member an ACF and/or TCA (Avis and Budget will issue vouchers as Avis/Budget);
- will be printed with the name and address of the Class Member and may be redeemed only by the Class Member or someone living in the same household at the same address;
- cannot be transferred or reassigned to a different person;
- may be used for the rental of a compact, midsize (intermediate), standard, or full size car class of vehicle;
- are valid with applicable daily, weekly and other multi-daily rates and can be used with most other rate discounts the renter may be eligible for;
- will expire 18 months after the date of issue;
- are for time and mileage charges only and do not include one-way or drop charges, taxes, fees, charges, insurance and any optional products; and
- may be redeemed at the brand of any of the issuing rental car company's U.S. corporate-owned locations (Avis/Budget vouchers may be redeemed at an Avis or Budget U.S. corporate-owned location), but not at Independent Licensed Locations.

Please note that there is a relatively small list of Independent Licensed Locations where the vouchers may not be redeemed, which will be available at www.ACFTCAsettlement.com.

## HOW TO GET BENEFITS—SUBMITTING AN ELECTION OF BENEFITS FORM

| **10. How can I get a cash payment or voucher?** |
|---|

To get a cash payment or voucher you must submit an Election of Benefits Form. You can complete and submit your form online at www.ACFTCAsettlement.com, or by mail. You may also print a form from the website or request one by calling 1-800-000-0000 or by sending a letter by mail to the claims administrator. You must complete and submit your Election of Benefits Form online or mail it so it is postmarked no later than **Month 00, 2012**. If you received a postcard in the mail or notice by email, you can use the Election of Benefits ID# provided on the front of the card or at the top of the email to access your rental records and submit your election of benefits online.

| **11. When will I get my cash payment or voucher?** |
|---|

The Court will hold a hearing on Month 00, 2012, to decide whether to approve the settlement. If Judge Anello approves the settlement, there may be appeals. It is always uncertain whether the appeals can be resolved and resolving them can take time. Cash payments will be made and vouchers will be issued only after the Court grants approval of the settlement and any appeals are resolved. Please be patient.

If you change your mailing or email address before settlement benefits are issued, you should update your information online at www.ACFTCAsettlement.com or by sending a letter to the ACF/TCA Administrator to ensure you receive your cash payment or voucher. Remember, vouchers will be printed with the address the Administrator has on file, so it is important that you update your mailing address if it changes before the settlement benefits are distributed.

| **12. What rights am I giving up to get a cash payment or voucher and stay in the Class?** |
|---|

Unless you exclude yourself, you are staying in the Class. If the settlement is approved and becomes final, all of the Court's orders will apply to you and legally bind you. This means you won't be able to sue, continue to sue, or be part of any other lawsuit against the Defendants for any claim asserted in this lawsuit or released by this settlement. The specific rights you are giving up are called Released Claims. The Released Claims are described in detail in section 6 of the Stipulation of Settlement which is available at www.ACFTCAsettlement.com.

## EXCLUDING YOURSELF FROM THE SETTLEMENT

If you want to keep the right to sue or continue to sue the Defendants about the claims released by this settlement, you must take steps to get out of the settlement. This is called excluding yourself or is sometimes called opting out of the settlement Class.

| **13. How do I get out of the settlement?** |
|---|

To exclude yourself from the settlement, you must send a letter by mail saying that you want to be excluded from *Shames v. The Hertz Corporation*, Case No. 07cv2174-MMA. Be sure to include your name, address, telephone number, and signature. You must mail your exclusion request so that it is postmarked by **Month 00, 2012**, to: ACF/TCA Settlement Exclusions, c/o KCC LLC, PO Box 0000, City, ST 00000-0000.

| **14. If I exclude myself, will I still get a cash payment or voucher from this settlement?** |
|---|

No. If you exclude yourself, you are telling the Court that you don't want to be part of the Class in this settlement. You can only get a cash payment or voucher if you stay in the Class, submit an Election of Benefits Form, and the settlement is approved by the Court and becomes final.

| **15. If I don't exclude myself, can I sue the Defendants for the same claims later?** |
|---|

No. Unless you exclude yourself, you are giving up the right to sue the Defendants for the claims that this settlement resolves. You must exclude yourself from *this* Class to start or continue with your own lawsuit or be part of any other lawsuit.

## THE LAWYERS REPRESENTING YOU

**16. Do I have a lawyer in this case?**

Yes. The Court appointed Dennis Stewart of Hulett Harper Stewart LLP and Donald G. Rez of Sullivan Hill Lewin Rez & Engel to represent you and other Class Members. Together, these lawyers are called Class Counsel. You will not be charged for these lawyers. If you want to be represented by your own lawyer, you may hire one at your own expense.

**17. How will the lawyers be paid?**

Class Counsel has not been paid for their work on this case. They will ask the Court to approve a payment of attorneys' fees and expenses of up to $5,870,000. They will also ask for a payment of $2,000 to be paid to the Class Representative for his help on behalf of the entire Class. If approved, these fees, costs, expenses and payments will be paid separately by the Defendants and will not reduce the amount of cash or vouchers available to Class Members.

## OBJECTING TO THE SETTLEMENT

You can tell the Court if you don't agree with the settlement or any part of it.

**18. How do I tell the Court if I don't like the settlement?**

If you're a Class Member, you can object to the settlement. You can give reasons why you think the Court should not approve it. The Court will have the opportunity to consider your views before making a decision. To object, you must send a letter stating that you object to the settlement in *Shames v. The Hertz Corporation*, Case No. 07cv2174-MMA. Be sure to include your name, address, telephone number, signature and the reasons why you object to the settlement. Mail your objection to each of the addresses below so that it is postmarked by **Month 00, 2012**.

| Clerk of the Court | Class Counsel | Defense Counsel |
|---|---|---|
| U.S. District Court<br>Southern District of California<br>940 Front Street<br>San Diego, CA 92101-8900 | Donald G. Rez<br>Sullivan Hill Lewin Rez & Engel<br>550 West C Street, 15th Floor<br>San Diego, CA 92101 | Michael F. Tubach<br>O'Melveny & Myers LLP<br>Two Embarcadero<br>Center, 28th Floor<br>San Francisco, CA 94111 |

**19. What's the difference between objecting to the settlement and excluding myself from it?**

Objecting is simply telling the Court that you don't like something about the settlement. You can object only if you stay in the Class (meaning you do not exclude yourself). Excluding yourself is telling the Court that you don't want to be part of the Class. If you exclude yourself, you cannot object because the case no longer affects you.

## THE COURT'S FAIRNESS HEARING

The Court will hold a hearing to decide whether to approve the settlement. You may attend and you may ask to speak, but you don't have to.

**20. When and where will the Court decide whether to approve the settlement?**

The Court will hold a Fairness Hearing at _:__ _.m. on ___day, **Month 00, 2012**, at the United States District Court, Southern District of California, 940 Front Street, San Diego, CA 92101-8900. At this hearing, the Court will consider whether the settlement is fair, reasonable, and adequate. If there are objections, the Court will consider them. Judge Anello will listen to people who have asked to speak at the hearing (*see* Question 21). The Court may also decide whether to approve the agreed upon fees, cost and expense. After the hearing, the Court will decide whether to approve the settlement. We do not know how long these decisions will take.

**21. Do I have to come to the hearing?**

No. Class Counsel will answer any questions the Judge may have. But, you are welcome to come at your own expense. If you send an objection, you don't have to come to Court to talk about it. As long as you mailed your written objection on time, the Court will consider it. You may also pay your own lawyer to attend, but it's not necessary.

**22. May I speak at the hearing?**

Yes. You may ask the Court for permission to speak at the Fairness Hearing. To do so, you must send a letter saying that it is your "Notice of Intention to Appear in *Shames v. The Hertz Corporation*, Case No. 07cv2174-MMA." Be sure to include your name, address, telephone number, and signature. Your letter must be postmarked by **Month 00, 2012**, and sent to the addresses in Question 18.

## IF YOU DO NOTHING

**23. What happens if I do nothing at all?**

If you do nothing you won't get a cash payment or voucher from this settlement. You will also be giving up your right to start a lawsuit, continue with a lawsuit, or be part of any other lawsuit against the Defendants about any of the claims asserted in this lawsuit or released by this settlement, ever again.

## GETTING MORE INFORMATION

**24. Are there more details about the settlement?**

This notice summarizes the proposed settlement. More details are in the Stipulation of Settlement. You can get a copy of the Stipulation of Settlement by visiting www.ACFTCAsettlement.com.

**25. How do I get more information?**

You can call 1-000-000-0000 toll free; write to ACF/TCA Settlement Administrator, c/o KCC LLC, PO Box 0000, City, ST 00000-0000; or visit the website at www.ACFTCAsettlement.com.

DATE: Month 00, 0000