Brett L. Gibbs, Esq. (SBN 215000)
38 Miller Avenue, #263
Mill Valley, CA 94941
415-325-5900

*Attorney for Objector,*
*Gordon Hansmeier*

## IN THE UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL SHAMES; GARY GRAMKOW, on behalf of themselves and on behalf of all persons similarly situated,<br><br>    *Plaintiffs*,<br><br>  vs.<br><br>THE HERTZ CORPORATION, *et al.*,<br><br>    *Defendants*. | No. 3:07-cv-02174-MMA-WMC<br><br>**CLASS ACTION**<br><br>**REPLY TO SETTLING PARTIES' RESPONSES TO OBJECTIONS TO SETTLEMENT APPROVAL AND MOTION FOR ATTORNEY'S FEES**<br><br>Judge:  Hon. Michael M. Anello<br>Date:   October 29, 2012<br>Time:   2:30 PM<br>Courtroom: 5 |

   Pursuant to Local Civil Rule 7.1(e)(3) and 7.1(h), Objector Gordon Hansmeier submits this Reply Memorandum of Points and Authorities in support of his Objection. (Dkt. No. 331.)

**I.  THE BOTTOM LINE OF THIS SELF-DEALING SETTLEMENT IS THAT THE ATTORNEYS WILL TAKE HALF OF THE CONSTRUCTIVE COMMON FUND**

   In their response, Class Counsel acknowledge that *even using their own $40 estimate* for the value of vouchers, the total value the class is currently slated to receive would be $4,835,632.[1] The foregoing number is Class Counsel's *own* estimate of the relief the class is currently slated to receive, through the 170,579 current claims. Yet Class Counsel simultaneously defends an

---

[1] *See* Class Counsel Resp., Dkt. No. 343, at 15 n.17; Passarella Decl., Dkt. No. 343-3, ¶ 39. ($1,800,432 + $3,035,200 = $4,835,632.)

indefensible request for $5,870,000 in attorneys' fees and expenses. This fact alone should prompt a deep and searching analysis of this settlement by the Court.

A more realistic valuation of the vouchers, as explained at length in Mr. Hansmeier's initial objection and further *infra*, Part III.B, is $12.43—the average value of the cash payments class members are eligible to receive. (Hansmeier Obj., Dkt. No. 331, at 18.) If the vouchers were really worth significantly more than the cash offered, as the Settling Parties claim, how can they explain the fact that nearly two-thirds of the class members submitting claim forms have chosen to receive cash? (*See* Passarella Decl., Dkt. No. 343-3, ¶ 39.) They do not and cannot, and the judgment of the class members belies Class Counsel's specious $40 estimate.

Valuing the vouchers at $12.43 shows that the 61,732 current voucher claimants will receive coupons worth approximately $767,328.76. Added to the current cash claims totaling $1,800,432.00, the total compensation class members will receive for the release of their claims currently stands at $2,567,760.76—a little more than half of Class Counsel's own estimate.

Neither the Settling Parties nor the administrator ventures an estimate as to how many more class members will submit claims over the coming months. Even if claims exactly doubled before the close of the claims period—which is extremely unlikely—total compensation would still be only about $5 million. We believe it is reasonable to conclude that claim submission rates will decline as time passes since the initial issuance of notice, and that the total claims are likely to increase by approximately 50%. Extrapolating from the current $2,567,760.76 value, that increase would lead to a total class compensation of $3,851,641.14.

Administration costs are now estimated to total in the end, at most, $1,727,200.00. (Passarella Decl., Dkt. No. 343-3, ¶ 45.) And Class Counsel claims attorneys' fees and expenses totaling $5,870,000.00. This means the total amount to be expended by Defendants for a release of all liability currently stands at $10,164,960.76, and will in the end be between $11,448,841.14 (with a 50% increase in claims) and $12,732,721.52 (with a highly-unlikely 100% increase in claims).

Defendants have very clearly indicated that they considered the Proposed Settlement as a constructive common fund—i.e., from the perspective of their total cost. Defendants have indicated

that they *expected* a claims rate of 3–5%. (Def. Reponse, Dkt. No. 346, at 20.) It is well-settled that "a defendant is interested only in disposing of the total claim asserted against it." *In re Bluetooth Prods. Liab.*, 654 F.3d 935, 949 (9th Cir. 2011); *Staton v. Boeing*, 327 F.3d 938, 964 (9th Cir. 2003). The Ninth Circuit in *Bluetooth* compels the Court to "take into account the defendant's overall willingness to pay." 654 F.3d at 949. This is absolutely necessary, because if that amount is disproportionately distributed between Class Counsel and class members, "the likelihood is that the defendant obtained an economically beneficial concession with regard to the merits provisions, in the form of lower monetary payments to class members or less injunctive relief for the class than could otherwise have been obtained." *Staton*, 327 F.3d at 964. Thus, Defendants negotiated this claims-made settlement expecting to pay approximately what these numbers show—a grand total of somewhere between $10–13 million. And after negotiating class relief, which they expected to total only somewhere between $2.5 million and $5 million, they were only too happy to reserve $5.87 million for Class Counsel.

That $5.87 million requested in attorneys' fees is, under all realistic scenarios, *greater* than the direct compensation to the class, and quite possibly more than *double*. $5.87 million represents somewhere between 45% and 58.7% of the total amount Defendants were willing to pay to settle this case, including administration costs—much more, if such costs are not included. For comparison, the percentage that provoked the skepticism of the Ninth Circuit in *Bluetooth* was *a mere 37.2%*, inclusive of administrative costs. 654 F.3d 935, 945 (9th Cir. 2011). This is an impermissibly self-dealing settlement under the standards and guidelines set by the Ninth Circuit in *Bluetooth*—even more so than the actual settlement considered in that case was. The attorney fees reserved in the "clear sailing" agreement are so completely out of proportion to class recovery as to render the entire settlement unfair, inadequate, and unreasonable. The bottom line is that the Court must reject it.

## II.   THE SETTLING PARTIES HAVE MISSTATED THE LAW

The Settling Parties have, in their response briefs, repeatedly misstated and misinterpreted the governing law. The Objector here briefly corrects the most egregious of these errors.

1   *First*, Class Counsel asserts that the failure of Objectors to specifically analyze their

2   settlement under the *Churchill* factors "should be taken to admit that consideration of those factors

3   supports the settlement." (Class Counsel Resp., Dkt. No. 343, at 8.) This is wrong in every

4   conceivable way. An objection is not "an opposition brief," and Class Counsel has not cited, nor has

5   the Objector found, *any* authority to support their contention.[2] Rather, Class Counsel's response brief

6   is an opposition brief, and they tacitly admit as such by using precisely the 25 pages allotted for such

7   in the local rules. (*See generally id.*) The burden is on the Settling Parties to justify every aspect of

8   the settlement, and Objectors have no duty to specifically contest every part of it. Rather, the Court

9   must independently assure itself of the fairness, adequacy, and reasonableness of the settlement

10  under the *Churchill* factors, policing the "inherent tensions among class representation, defendant's

11  interests in minimizing the cost of the total settlement package, and class counsel's interest in fees."

12  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). And ultimately, the "settlement must

13  stand or fall in its entirety"—regardless of whether a given objector addressed any component part in

14  particular. *Id.*

15  *Second*, both Defendants and Class Counsel wholly misconstrue *In re Bluetooth Products*

16  *Liability Litigation*, 654 F.3d 935 (9th Cir. 2011). Defendants make the absurd claim that the entire

17  case is distinguishable because it involved only *cy pres* benefits and no individual payments to class

18  members. (Def. Resp., Dkt. No. 346, at 16–17.) Of course, the specific circumstances in *Bluetooth*

19  differ in some ways from those here, but that hardly makes the Ninth Circuit's many general

20  statements of principle and law therein irrelevant. Class Counsel claims that "the process of

21  negotiation demonstrates the absence of any *quid pro quo*." (Class Counsel Resp., Dkt. No. 343, at

22  12–13.) This wholly misconstrues the nature of the *Bluetooth* inquiry. Actual explicit collusion is

23  emphatically not the issue here, and proving its absence does not end the inquiry when the subtle

24  signs of implicit collusion are present. *See, e.g.*, *Bluetooth*, 654 F.3d at 948 ("[T]he mere presence of

25  a neutral mediator . . . is not on its own dispositive . . . ."); *Staton v. Boeing Co.*, 327 F.3d 938, 964

26

27  ───────────────

[2] The only authority cited by Class Counsel, *Stichting Pensioenfonds ABP v. Countrywide Fin.*, 802 F. Supp. 2d 1125 (C.D. Cal. 2011), is not a class action case, and it certainly does not have any relevance to the treatment of objections to settlement of a class action.

28

(9th Cir. 2003) ("Even if the plaintiff's attorney does not consciously or explicitly bargain for a higher fee at the expense of the beneficiaries, it is very likely that this situation has indirect or subliminal effects on the negotiations."); *True v. Am. Honda Motor Co.*, 749 F. Supp. 2d 1052, 1078 (C.D. Cal. 2010) ("The Court does not suggest any intentional fiduciary breach by class counsel . . . ."). *Bluetooth* states very clearly that the inquiry is "not only for explicit collusion," of the kind that may "be evident on the face of a settlement," but "for more subtle signs . . . ." 654 F.3d at 947. The issue is *implicit* collusion, and "the Rule 23(e) reasonableness inquiry is designed precisely to capture instances of unfairness not apparent on the face of the negotiations." The Objector does not merely argue that explicit collusion actually occurred, but that the result reveals a substantively collusive, impermissibly self-dealing settlement.

*Third*, Class Counsel continues to incorrectly insist that the Court may award it lodestar fees which dwarf the amount the class will recover, based on the fact that they have brought Clayton Act antitrust claims. (Class Counsel Resp., Dkt. No. 343, at 15–17.) This roundly contradicts Ninth Circuit precedent. In considering attorneys' fees in the context of antitrust, the Ninth Circuit explicitly told district courts to "compare the lodestar fee, or sum of lodestar fees, to the 25% benchmark, as one measure of the reasonableness of the attorneys' hours and rates. . . . If the lodestar amount overcompensates the attorneys according to the 25% benchmark standard, then a second look to evaluate the reasonableness of the hours worked and rates claimed is appropriate." *In re Coordinated Pretrial Proceedings*, 109 F.3d 602, 607 (9th Cir. 1997). In other words, contrary to Class Counsel's assurances, *even in an antitrust action*, the Court must assure itself that the attorneys' fees awarded are reasonable in relation to class recovery—and the best way to do this is by reference to the total constructive common fund. This procedure was adopted and re-affirmed in *Bluetooth*. 654 F.3d 935, 945 (9th Cir. 2011). For reference, 25% of the $10–13 million constructive common fund that Defendants expect to pay, and which the numbers provided suggest that they will pay, would be $2.50–3.25 million—far less than $5.87 million.

*Fourth*, Class Counsel cannot claim—even under its own definition—that its car rental vouchers do not fall within CAFA. Class Counsel argues that their vouchers are not coupons because

"the class member does not need to purchase additional services or otherwise spend money to receive the benefit." (Class Counsel Resp., Dkt. No. 343, at 19–20.) While definitions of "coupons" vary across courts, this is an odd one for Class Counsel to have chosen, since it is patently obvious that class members *will* need to spend money to receive the benefit of a car rental voucher. For example, at California airport locations, consumers would be responsible for the Airport Concession Fee (~11%), the California Tourism Assessment (~3%), and the $10 Customer Facility Charge, as well as taxes and gasoline costs. Note that the first two fees are precisely the fees at issue in this litigation. It is also important to note that courts have found that even where certain forms of in-kind compensation are not technically coupons, CAFA is nevertheless instructive. For example, in *Synfuel Technologies v. DHL Express (USA), Inc.*, the Seventh Circuit found that pre-paid Letter Express envelopes—even though they represented an entire product rather than a voucher or coupon—were "a form of in-kind compensation" close enough to coupons to undermine the court's confidence in the fairness of the settlement. 463 F.3d 646, 654 (7th Cir. 2006).

## III.  QUESTIONS THE COURT MUST ANSWER, AND WHY IT CANNOT SUFFICIENTLY ANSWER THEM

### A.  What Is The Value Of The Claims Class Members Will Surrender—*i.e.*, The Value Of Plaintiff's Case?

In its response, Class Counsel for the very first time asserts a definitive estimate of class members' individual damages: $3 per rental day. While Class Counsel claims that this has been "addressed at length" in various of its filings, the simple fact is that neither the $3 number—nor any definitive estimate—was ever previously stated in any of the briefs cited by Class Counsel, nor in any other brief in support of this settlement.[3] Can this $3 number be relied upon? Class Counsel has referred obliquely to expert economic analyses and reports that Plaintiffs commissioned from their principal experts, Michael Harris and Robert Tollison, and included their *curricula vitae* for the

---

[3] *See generally* Joint Decl. of Stewart & Rez (Dkt. No. 328-8) (noting that damages "could well be determined to average a few dollars per rental day" at ¶ 15 but otherwise not specifying damages); Memo. In Supp. Of Pl.'s Mot. For Final Approval Of Settlement (Dkt. No. 327-1) (noting "estimated average daily damages of a few dollars" at pg. 3 but otherwise not specific); Memo. In Supp. Of Mot. For Award Of Att'y Fees (Dkt. No. 328-1) (writing that relief "is significant relative to the amount of that consumer's individual provable damages" at pg. 1 and that the cash payment "approaches [the damages] value" at pg. 20 but otherwise not specific); Decl. Of Judge Ronald M. Sabraw [Ret.] (Dkt. No. 328-6) (not specifically addressing damages).

Court's review. (*E.g.*, Joint Decl. Of Stewart & Rez, Dkt. No. 327-2, ¶ 85, Ex. A, Ex. B.) Yet what *hasn't* been made available in the materials on the Court's docket are any statements from either of these experts, or any other Plaintiffs' expert. Even Defendants have seen fit to file a Declaration from their own expert in support of the settlement, and in that light the continued absence of Plaintiffs' experts is unexplainable. (*See* Decl. of Daniel Rubinfeld, Dkt. No. 346-9.) Unexplainable, that is, unless the results of Plaintiffs' expert analysis would have shown damages significantly greater than $3 and therefore would have been unfavorable to settlement approval.

Even assuming that Class Counsel did utilize these absent expert reports in good faith in the process of coming to its $3 estimate, what were these analyses based upon? Class Counsel's present statements that extensive discovery was completed belies the record. On June 16, 2011, Class Counsel Dennis Stewart filed a letter Motion to Compel Discovery from the Defendants. (Dkt. No. 267.) In that letter, Mr. Stewart wrote that Defendants were resisting production of information required for Plaintiffs to meet their burden of proving the fact and amount of damages. (*See id.* at 5–6.) Specifically, Mr. Stewart wrote that "transaction data, directly relevant to damages has yet to be produced for over two years of the class period." (*Id.* at 6.) The evidence available at the time to prove common impact (fact of damage) and damages was "mostly generalized proof." (*Id.*) Mr. Stewart further wrote that this evidence was necessary to "promote[] meaningful case evaluation and settlement discussions." On July 14, 2011, Mr. Rez wrote in a reply that the missing information was "directly relevant to . . . the economic analysis which will serve as the foundation for estimating the impact and amount of damages in the "but for world" absent the conspiracy." (Dkt. No. 282, at 7.) Although briefed through letter practice, Plaintiffs' Motion to Compel Discovery was never resolved, and it appears that this evidence was never produced. Instead, settlement negotiations began—without this supposedly crucial evidence. (*See* Order Extending Stay, etc. (Dkt. No. 299), Dec. 21, 2011.) This is yet another similarity between the present settlement and *Sobel v. Hertz*, where the court concluded that Class Counsel's failure to pursue crucial discovery on damages, in combination with the pre-certification timing and the presence of coupons, destroyed the presumption of fairness to which the settlement might otherwise have been entitled:

> Plaintiffs fail to acknowledge, however, that when settlement negotiations were pursued, discovery had only just begun as to damages—the very issue that the parties tout as presenting the greatest weakness in Plaintiffs' case, thereby diminishing the case's value and necessitating settlement. Because highly relevant discovery had not in fact taken place, it is highly doubtful that a presumption of fairness should apply here.

*Sobel v. Hertz*, No. 3:06-cv-00545-LRH-RAM, 2011 WL 2559565, at *6. (D. Nev. June 27, 2011). The same reasoning applies here. The Court should discard any presumption of fairness when Plaintiffs' experts are missing-in-action and Class Counsel is missing "over two years" of necessary and directly relevant discovery on the issue of damages.

As to Defendants' insistence that Plaintiffs could not prove *any* damages whatsoever (Def. Resp., Dkt. No. 346, at 7), the Court must remember "[t]hat the claims are contested . . . is not to say the claims are weak." *Figueroa*, 517 F. Supp. 2d 1292, 1324 (S.D. Fla. 2007). Defendants' claim of zero provable damages is belied by their willingness to pay $10–13 million total to obtain the release of the class members' claims. Ultimately, what the Court has is a one-sided view of the claims at issue here—only Defendants' perspective is adequately represented and supported in the record, which in turn suggests that Defendants' views on the merits of this litigation were given greater weight than they otherwise would have been, given the impermissibly self-dealing results.

**B.    What Is The Value Of The Relief To The Class—*i.e.*, The Class Recovery?**

It is notable that neither Class Counsel nor Defendants dispute the Objector's rough calculations. They cannot—for as it turns out, the Objector's original estimated figures were far too optimistic about the actual benefits this settlement would provide to the class. Class Counsel criticizes the Objector for not "offering any countervailing evidence of his own" on the value of the free rental car vouchers. (Class Counsel Resp. at 19 n.21.) To be clear, as a matter of law, the burden of establishing the value of the relief offered to the class is wholly on the Settling Parties. (*See* Hansmeier Obj. at 11–12.) An estimate accompanied by the disclaimer that "precise valuation [is] impossible" hardly merits a lengthy counter-investigation. (Class Counsel Resp. at 19 n.21.) Class Counsel does not address their failure to solicit and provide any expert analysis which could have

REPLY TO OBJECTION RESPONSES                    CASE NO. 3:07-cv-02174-MMA-WMC

provided a more precise value, except to claim that it was not necessary. (*Id.*) This admitted and unexplained lack of accuracy counsels strongly in favor of discarding Class Counsel's estimate.

Furthermore, Class Counsel still refuses to recognize or account for the well-established principle that "compensation in kind is worth less than cash of the same nominal value." *Synfuel Techs. v. DHL Express (USA)*, 463 F.3d 646, 654 (7th Cir. 2006). "Courts have generally rejected the idea that face value of coupons or rebates should be used for settlement valuation purposes . . . . Where a coupon or rebate is not freely transferable on the open market, as is the case here, it has even less value." *True v. Am. Honda Motor Co.*, 749 F. Supp. 2d 1052 (C.D. Cal. 2010). This holds true with the free-time-and-mileage car rental vouchers—whether or not they are "coupons," they are still a form of in-kind compensation with highly restricted transferability and must be discounted in valuation as such.

Nevertheless, the Objector decided to indulge this criticism and to more closely parse Class Counsel's "industry survey evidence and anecdotal evidence." What the Objector found was, put frankly, shocking. In our double-check of Class Counsel's figures, the Objector's counsel completed a search for the price for one day's time and mileage for the same car class, on the same day, at the same airport (LAX), on the same Defendants' websites. (Decl. of Brett Gibbs, attached, ¶¶ 4–6.) What we found were prices that were consistently lower than those reported by Class Counsel—by amounts ranging from $9.79 to a stunning $39.83. (*Id.*) We also investigated prices in San Diego and on weekends as opposed to weekdays, and each finding in turn suggested that Class Counsel's $40 estimate is wildly inflated. (*Id.* at ¶¶ 7–19.) Ultimately, we believe our initial estimate of $12.43 is both conservative and reasonable—and that Class Counsel's estimate of $40 is neither.

## IV. THE REPEATED ACCUSATIONS OF AN IMPROPER PURPOSE ON THE PART OF THE OBJECTOR ARE UNSUPPORTED BY LAW OR FACT

Class Counsel repeatedly accuses the Objector of having "interposed for an improper purpose in an attempt to misuse the processes of the Court to obtain a payment." This accusation is completely counter-factual, for three reasons. *First* and most importantly, having made his Objection on the record, Mr. Hansmeier's Objection cannot be withdrawn without leave of the Court under Fed. R. Civ. P. 23(e)(5)—as counsel for the Settling Parties surely know. Thus, the only possible

purpose for filing an Objection with the District Court is to have it heard on the merits. There is no possibility of "misusing the processes of the Court to obtain a payment," and the Settling Parties are absolutely wrong to assert otherwise.

*Second*, Class Counsel Hulett Harper Stewart, Dennis Stewart, freely admits—in fact, gloats about—creating controversy by misleading the Objector. In a letter to Paul Hansmeier following his threat of sanctions, Mr. Stewart wrote: "I *asked you* for a demand to settle your client's claim *anticipating* that instead of making a demand for an opt-out settlement of your client's claim for communication to the Defendants, you would put your payoff request in writing; which you did." (Letter of October 2, 2012 from Dennis Stewart to Paul R. Hansmeier, Dkt. No. 343-2, Ex. G (emphasis added).) Why Mr. Stewart believes that his conduct was proper in misleadingly soliciting a demand which he planned in advance to reject out of hand, threaten sanctions over, and level repeated *ad hominem* attacks about—but the Objector's conduct in taking the bait, so to speak, was improper—is quite unclear. Perhaps in this Court, down is up, black is white, and entrapment is ethical conduct—but in Objector's counsel's experience, that has not been the case.

*Third*, Mr. Hansmeier has not filed a canned objection. As the Court has recognized, Mr. Hansmeier's was "by far the lengthiest objection filed," and his arguments in favor of applying the reasoning of *Bluetooth*, *Sobel v. Hertz*, and the Class Action Fairness Act of 2005 were: (a) first brought to the Court's attention by Mr. Hansmeier, and (b) sufficiently substantive to draw extensive (though legally incorrect) responses from Defendants and Class Counsel. And as can be seen by this (and other) filings, the Objector has been diligently litigating his rights.

The Court should ignore the Settling Parties' attempts to make the Objector the issue here. The issue is the impermissibly self-dealing settlement they have concocted.

Respectfully Submitted,

**DATED: October 22, 2012**

By:     /s/  Brett L. Gibbs, Esq.

Brett L. Gibbs, Esq. (SBN 251000)
38 Miller Avenue, #263
Mill Valley, CA 94941
*Attorney for Objector, Gordon Hansmeier*

10

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on **October 22, 2012**, all individuals of record who are deemed to have consented to electronic service are being served a true and correct copy of the foregoing document using the Court's ECF system.

/s Brett Gibbs

REPLY TO OBJECTION RESPONSES                    CASE NO. 3:07-cv-02174-MMA-WMC