CENTER FOR PUBLIC INTEREST LAW
UNIVERSITY OF SAN DIEGO SCHOOL
  OF LAW
ROBERT C. FELLMETH (49897)
cpil@sandiego.edu
ED HOWARD (151936)
JULIANNE D'ANGELO FELLMETH
(109288)
5998 Alcala Park
San Diego, CA  92110
Telephone:    (619) 260-4806
Facsimile:     (619) 260-4753

SULLIVAN HILL LEWIN REZ & ENGEL          HULETT HARPER STEWART LLP
A Professional Law Corporation                      DENNIS STEWART (99152)
DONALD G. REZ (82615)                               dstewart@hulettharper.com
rez@shlaw.com                                                225 Broadway, Suite 1350
550 West C Street, Suite 1500                        San Diego, CA  92101
San Diego, CA  92101                                    Telephone:   (619) 338-1133
Telephone:    (619) 233-4100                         Facsimile:    (619) 338-1139
Facsimile:     (619) 231-4372

Attorneys for Plaintiffs
[Additional Counsel on Signature Page]

## IN THE UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL SHAMES; GARY GRAMKOW, on behalf of themselves and on behalf of all persons similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> THE HERTZ CORPORATION, et al., <br><br> Defendants. | Case No. 07cv2174-MMA(WMc) <br><br> **CLASS ACTION** <br><br> **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR BOND AND ALTERNATIVE MOTION FOR LIMITED DISCOVERY ON BOND RELATED ISSUES** <br><br> DATE:      June 24, 2013 <br> TIME:      2:30 p.m. <br> JUDGE:    Honorable Michael M. Anello <br> CTRM:     3A |

# **TABLE OF CONTENTS**

I.   STATEMENT OF FACTS.................................................................. 1

    A.   Prior Proceedings in This Case ............................................. 1

    B.   Recent Occurrences Bearing on Need for Bond from Objector Hansmeier: the May 6, 2013 Order Issuing Sanctions against Paul Hansmeier in *Ingenuity 13 LLC v. John Doe* ............................. 5

    C.   Other Relevant Facts............................................................. 7

    D.   The Dilatory Appellate Proceedings ..................................... 8

II.  LEGAL ARGUMENT ..................................................................... 9

    A.   Financial Ability to Post a Bond.......................................... 10

    B.   Risk that Objectors Would Not Pay Appellee's Costs ....................... 10

III. MERITS OF THE APPEAL ......................................................... 14

IV.  STANDARD FOR AMOUNT OF RULE 7 APPEAL BOND ................... 15

V.   THE COURT MAY GRANT DISCOVERY ON THE PROPRIETY OF A BOND IF IT DEEMS NECESSARY ................................................. 16

VI.  CONCLUSION ......................................................................... 17

i

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

<u>C</u>ASES

4

5

*AF Holdings LLC v. John Doe*,
   No. 12-cv-1661, 2012 WL 2921356 (E.D. Cal. July 17, 2012) .......................... 6

6

7

*Arthur Andersen LLP v. Carlisle*,
   556 U.S. 624 (2009) ..................................................................... 11

8

*Azizian v. Federated Dep't Stores, Inc.*,
   499 F.3d 950 (9th Cir. 2007) ............................................... 9, 10, 11, 15

9

10

*In re Currency Conversion Fee Antitrust Litig.*,
   No 01-01409, 2010 WL 1253741 (S.D.N.Y. Mar. 5, 2010) .............................. 16

11

12

*In re Easysaver Rewards Litig.*,
   Case No. 09cv2094 AJB (WVG) (S.D. Cal. May 6, 2013) .................... 9, 11, 16

13

14

*Fleury v. Richemont N. Am., Inc.*,
   No. C-05-4525, 2008 WL 4680033 (N.D. Cal. Oct. 21, 2008)................... *passim*

15

16

*Glasser v. Volkswagen of Am., Inc.*,
   645 F.3d 1084 (9th Cir. 2011) ......................................................... 15

17

18

*Hall v. AT&T Mobility, LLC*,
   No. 07-5325, 2010 WL 4053547 (D.N.J. Oct. 13, 2010)..................................... 2

19

20

*Hard Drive Prods., Inc. v. Does 1-90*,
   No. C11-03825, 2012 WL 1094653 (N.D. Cal. Mar. 30, 2012) .......................... 6

21

*Heekin v. Anthem, Inc.*,
   No. 05-cv-01908, 2013 WL 752637 (S.D. Ind. Feb. 27, 2013) .................. 12, 14

22

23

*Ingenuity 13 LLC v. John Doe*,
   No. 12-cv-8333, 2013 WL 1898633 (C.D. Cal. May 6, 2013) .................. *passim*

24

25

*In re Initial Pub. Offering Sec. Litig.*,
   728 F. Supp. 2d 289 (S.D.N.Y. 2010) .............................................. 11

26

27

*In re Ins. Brokerage Antitrust Litig.*,
   No 04-5184, 2007 WL 1963063 (D.N.J. July 2, 2007)..................................... 16

28

*Knisley v. Network Assocs., Inc.*,
   312 F.3d 1123 (9th Cir. 2002) ......................................................................... 15

*Lane v. Facebook, Inc.*,
   696 F.3d 811 (9th Cir. 2012) ........................................................................... 14

*In re Magsafe Apple Power Adapter Litig.*,
   Case No. C 09-01911, 2012 WL 2339721 (N.D. Cal. May 29, 2012) .............. 16

*Miletak v. Allstate Ins. Co.*,
   Case No. C 06-03778, 2012 WL 3686785 (N.D. Cal. Aug. 27, 2012) .............. 16

*In re Nutella Marketing & Sales Practices,*
   No. 11-1086, 2012 WL 6013276 (D.N.J. Nov. 10, 2012) ................................... 2

*O'Keefe v. Mercedes-Benz USA, LLC,*
   214 F.R.D. 266 (E.D. Pa. 2003) ....................................................................... 13

*In re Oil Spill By Oil Rig Deepwater Horizon,*
   MDL 2179, 2013 WL 144042 (E.D. La. Jan. 11, 2013) ............................ 2, 7, 12

*In re Pharmaceutical Indus. Average Wholesale Price Litig.*,
   520 F. Supp. 2d 274 (D. Mass. 2007) ............................................................... 10

*Roadway Express, Inc. v. Piper*,
   447 U.S. 752 (1980) ........................................................................................... 7

*U.S. ex. rel Robinson Rancheria Citizens Council v. Borneo, Inc.*,
   971 F.2d 244 (9th Cir. 1992) .............................................................................. 2

*Shames v. The Hertz Corp.*,
   No. 07-2174, 2012 WL 4903680 (S.D. Cal. Oct. 15, 2012) ......................*passim*

*Shames v. The Hertz Corp.*,
   No. 07-cv-2174, 2012 WL 5392159 (S.D. Cal. Nov. 5, 2012) .......................... 14

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
   MDL 1827, 2013 WL 621791 (N.D. Cal. Feb. 19, 2013) ................... 2, 7, 12, 16

*In re UnitedHealth Group, Inc. PSLRA Lititg.*,
   643 F. Supp. 2d 1107 (D. Minn. 2009) ............................................................. 13

*In re Wal-Mart Wage & Hour Emp't Prac. Litig.*,
   No. 2:06-CV-00225, 2010 WL 786513 (D. Nev. Mar. 8, 2010) ....................... 13

iii

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### STATUTES, RULES & REGULATIONS

28 USC
§ 1912 .......................................................................................... 7, 11
§ 1927 .......................................................................................... 7, 11

Federal Rules of Civil Procedure
Rule 7 ............................................................................................. *passim*
Rule 23(e) .................................................................................... 14
Rule 38 ........................................................................ 7, 10, 11, 16
Rule 39(e) .................................................................................... 15

Ninth Circuit Rule
Rule 31-2.2(b) ............................................................................. 8

### SECONDARY AUTHORITIES

Brian Fitzpatrick, *The End of Objector Blackmail?*,
62 Vand. L. Rev. 1623 (2009) ............................................ 13

Bruce Greenberg, *Keeping the Flies Out of the Ointment:*
*Restricting Objectors to Class Action Settlements*,
84 St. John's L. Rev. 949 (2010) ........................................ 13

Plaintiff, on behalf of the certified class in this case, moves the Court pursuant to Federal Rule of Appellate Procedure ("FRAP") Rule 7 for an Order requiring each of the objectors currently prosecuting appeals to either post a bond of $15,000 apiece securing the payment of costs on appeal or to dismiss their respective appeals.

## I. **STATEMENT OF FACTS**

### A. **Prior Proceedings in This Case**

This class action is currently on appeal from this Court's Order and Final Judgment approving settlement. Order Granting Motion for Final Approval of Class Action Settlement Attorneys' Fees Costs and Incentive Award, Judgment and Dismissal [Docket No. 357]. The proceeds are ready (and have been ready) for distribution to the class members. That distribution is being held up now only by the appeals interposed by a handful of objectors. There are currently three pending objector appeals: 1) Objector Gordon Hansmeier, now represented by Paul Hansmeier;[1] 2) Putative objector Thomas Lavery, represented here by Mark Lavery and on appeal by attorney Chris Langone; and 3) Objectors Cery Perle, Gary Bishop, Frank De Julius, and Andrew Cesare, represented by attorney Darrel Palmer. As previously demonstrated with respect to Hansmeier,[2] as is likely with

---

[1] Gordon Hansmeier was previously represented by attorney Brett Gibbs (who was an associate of Paul Hansmeier). Gibbs substituted out of the appeal and Paul Hansmeier purported to substitute into the case in his place. (9th Cir. Case No. 12-57026, [Docket No. 39] (Apr. 05, 2013)). Paul Hansmeier is, to our knowledge, neither admitted to practice in California nor before the Ninth Circuit or this Court. Given the discussion, *infra*, his admission before either Court should not be assumed. *See Ingenuity 13 LLC v. John Doe*, No. 12-cv-8333, 2013 WL 1898633, at *5 (C.D. Cal. May 6, 2013) (Referring his conduct (and former counsel Gibbs's) in that case to the bars of all States to which they have been admitted, all courts before which they have appeared and to federal prosecutorial authorities, and stating: "Hansmeier . . . suffer[s] from a form of moral turpitude unbecoming an officer of the court."). *See also* § I, B, *infra*.

[2] *See* Order Denying *Ex Parte* Motion for Leave to File Motion to Intervene of October 15, 2012 [Docket No. 345] (reported at *Shames v. The Hertz Corp.*, No. 07-2174, 2012 WL 4903680 (S.D. Cal. Oct. 15, 2012)).

1

respect to the other objectors, and as has become almost routine in class action cases, the Class believes the appeals are being prosecuted in the hope of securing payments to their counsel to dismiss them.[3]   Objectors Hansmeier, Perle, Cesare, and Lavery did not even bother to file a claim in the case showing that their only interest in this case is to gain something from their objection and not anything from the settlement.   Declaration of Stefanie Gardella Re: FRAP Rule 7 Motion ("Gardella Decl"), ¶ 3.   Filing a claim would not have affected their ability to pursue

---

[3]   *See*, *e.g.*, *infra* note 12.   *See* discussion at Docket No. 343 at 22 n.25 (and accompanying text) (Plaintiff's Consolidated Response to Objections to Settlement, filed Oct. 12, 2012).

Both attorneys Langone and Palmer (counsel for all other objectors) have been characterized as serial objectors (or counsel thereof) elsewhere: Langone – *In re Nutella Marketing & Sales Practices,* No. 11-1086, 2012 WL 6013276, at *1 (D.N.J. Nov. 10, 2012) (objectors required to post appeal bond, contention that "the appealing objectors are 'serial objectors'"; attorney Langone counsel); *Hall v. AT&T Mobility, LLC,* No. 07-5325, 2010 WL 4053547, at *12, *17, *18 (D.N.J. Oct. 13, 2010) (rejecting and overruling Langone's objections as objector; represented by attorney Lavery).   Palmer – *In re Oil Spill By Oil Rig Deepwater Horizon,* MDL 2179, 2013 WL 144042, at *48 n.40 (E.D. La. Jan. 11, 2013) ("Mr. Palmer has been deemed a 'serial objector' by several courts [citation omitted]. (Mr. Palmer admitting it was 'regrettable' that he had been found to have engaged in 'bad faith and vexatious conduct.')."); *In re TFT-LCD (Flat Panel) Antitrust Litig.,* MDL 1827, 2013 WL 621791 (N.D. Cal. Feb. 19, 2013) (attorney Palmer and his objector client (his wife) held in contempt of court's order compelling depositions).   Recently a list of Palmer and Langone's objector activity was set forth as part of a filing in the *In re TFT-LCD (Flat Panel) Antitrust Litig.*, i.e., "Indirect-Purchaser Plaintiffs' and Settlement States' Joint Response to Objections to Combined Class *Parons Patriae*, and Governmental Entity Settlements with AUO, LG Display, and Toshiba Defendants."   The relevant excerpt of that filing dealing with attorneys Palmer, Lavery, and Langone (some appearing alternatively as client and lawyers) is attached to the Declaration of Dennis Stewart in Support of Plaintiff's Motion for Bond and Alternative Motion for Limited Discovery on Bond Related Issues ("Stewart Decl."), as Ex. B, filed concurrently herewith.   The Court may take judicial notice of these other proceedings as they are relevant to the matters at issue.   *U.S. ex. rel Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992).

2

their objections but would have preserved their right to recover in the likely event that this Court's approval of the settlement is upheld on appeal.[4]  This further attests to their lack of interest in this Settlement and the fact that the true aim of all of these appeals is to further the economic interests of their counsel in securing cash payoffs. None of the objectors submitted a Declaration in support of their objections, none appeared at the hearing – themselves or through counsel – and other than the filing of objections by their professional objector counsel, none otherwise participated in the approval proceedings.

The extortive conduct of Paul Hansmeier, was the subject of a separate opinion by this Court and is relevant to both the need for a bond and its amount.  *See* Order Denying *Ex Parte* Motion for Leave to File Motion to Intervene of October 15, 2012 [Docket No. 345], (reported at *Shames v. The Hertz Corp.*, No. 07-cv-2174, 2012 WL 4903680 (S.D. Cal. Oct. 15, 2012)).  As recounted in that opinion, on the eve of the last day for filing objections, Paul Hansmeier, purporting to represent class member Gordon Hansmeier, sent a letter to class counsel demanding the payment to him of $30,000 dollars in exchange for not filing objections to the fairness of the settlement and the award of attorneys' fees and setting the objection filing deadline as the deadline for acceptance of his demand.  In that letter he threatened to file the enclosed objections "if [class counsel did] not attempt to resolve this matter," i.e., by paying the $30,000 demanded.  Specifically the letter stated:

> I will extend to you an offer to settle this matter with my client [his father] for $30,000.00 if the settlement terms are reached by 5:00 PM CST on Monday, Oct. 1, 2012 [the claim filing deadline].  If you reject this settlement and the objection is filed, the offer to settle is revoked and will not be extended at the pre-filing settlement amount.
>
> Govern yourself accordingly.

*Shames*, 2012 WL 4903680, at *1-*2.  As confirmed in an interview subsequently

---

[4] De Julius filed a late claim which consequently will be denied.  Gardella Decl., ¶ 3.

given by Paul Hansmeier about his conduct in this case, the money he demanded was for him "to go live and fight another day" and not to compensate his client for any perceived injury.  The "live to fight another day" is, in every likelihood, a reference to funding the activities of the copyright case payoff "enterprise" which is the subject of the sanctions and criminal referral discussed below (*see* § I, B, *infra*), or his new class action payoff business venture, or perhaps both.[5]

After class counsel replied to that letter informing Mr. Paul Hansmeier of their view that, based on that letter, it appeared the objection would be sanctionable, Gordon Hansmeier, through his then local counsel Brett Gibbs, moved for leave to file a motion to intervene for the purpose of filing a motion for "Removal of Lead Counsel, for Issuance of Supplemental Notice and for Appointment of *Ad Litem* Counsel" [Docket No. 341] (filed Oct. 11, 2012).  Request to file that motion was based on Hansmeier's fanciful claim that class counsel had acted improperly in responding to Paul Hansmeier's payoff demand by having suggested in response that threatening to file an objection unless the lawyer was paid off was a sanctionable mis-use of the judicial process.  After finding no merit in the justifications offered in support of objector Hansmeier's untimely motion, the Court commented on the "merits" of the underlying motion as follows:

---

[5]   *See*  http://arstechnica.com/tech-policy/2013/04/ars-qs-paul-hansmeier-just-not-about-copyright.  Stewart Decl., Ex. C.  Hansmeier's comments attempting to justify his payoff demand in this case, while couched in the same reality "disconnect . . . between Objector's perception of the events that transpired" observed by this Court (*Shames*, 2012 WL 4903680, at *4) stated to the questioner: "If someone offered you $30,000 to go away from a case, I'm pretty sure you would take that money and go live to fight another day."  We note that Hansmeier, accustomed as he is to distorting reality, characterizes the events as his having been "offered to go away for $30,000," when in fact, as this Court found, it was he who demanded $30,000 to "go away."  *Id.*  As evidenced by the Declarations on file in opposition to the Motion to Intervene (and as not contested by Hansmeier), class counsel never offered Hansmeier anything to not file his objections, but instead rejected Hansmeier's extortionate demand.

4

> Further, having reviewed the "Underlying Motion," it is apparent that it is without merit and would not succeed even if it were allowed to proceed. . . .  In reviewing the letters between Objector's counsel and class counsel the only "bold and improper" conduct the Court can identify is Objector's counsel's attempt to extract $30,000 from class counsel in exchange for Objector not filing objections that Objector's counsel suggested could derail approval of the class settlement and award of attorneys' fees.

*Shames*, 2012 WL 4903680, at *4.  As the Court further observed, the lack of any independently-actionable claims combined with the small amount of the "client's" individual claim and the "out of thin air" $30,000 figure demanded, indicated that

> the only "matter" [objector's] counsel could wish to "settle" for $30,000, is the arguably inappropriate *quid pro quo* – essentially, "We'll go away in exchange for $30,000; otherwise we'll file lengthy objections" – Objector's counsel demanded. *See, e.g., Vollmer v. Selden*, 350 F. 3d 656, 659-60 (7th Cir. 2003) (observing that attorneys intervening to object to a settlement in the hope of causing expensive delay and getting paid to go away would be an improper purpose that would justify sanctions).

*Id*. at n.4.

For reasons that are readily apparent below, Brett Gibbs has substituted out of the case and Paul Hansmeier has now purported to substitute into the case as counsel, (under the rubric of "Class Action Justice Institute LLC") (9th Cir. Case No. 12-57026 [Docket Nos. 39 and 46]).  As of the writing of this motion, the Ninth Circuit had yet to grant Hansmeier's (or his "Institute's") admission to the Circuit and, as also will be readily apparent below, it is far from assured it will.[6]

**B.     Recent Occurrences Bearing on Need for Bond from Objector Hansmeier: the May 6, 2013 Order Issuing Sanctions against Paul Hansmeier in *Ingenuity 13 LLC v. John Doe***

As suggested in the Class's responsive papers in support of approval of the

---

[6] *See* text, *supra* note 1 and *infra* note 8.

5

Settlement[7] and as evidenced by a May 6, 2013 Order granting sanctions against Paul Hansmeier and others entered by Judge Otis Wright in the Central District of California, Paul Hansmeier's demand for a payoff "to go away" in this case is simply a more recent "product offering" in a broader pre-existing enterprise designed to use the offices and procedures of the courts to secure payoffs for lawyers. *Ingenuity 13 LLC v. John Doe*, No. 12-cv-8333, 2013 WL 1898633 (C.D. Cal. May 6, 2013) ("Order Issuing Sanctions"). After proceedings which included an Order to Show Cause at which Paul Hansmeier and others involved invoked, through counsel, their Fifth Amendment privilege against testifying, *id*. at *2 and n.3, Judge Wright of the Central District of California found that an "enterprise" resembling a "RICO enterprise," *id*. at *5, which included Gordon Hansmeier's former counsel of record in this case, Brett Gibbs, and his current counsel, Paul Hansmeier, engaged in a fraudulent scheme centered on the filing and prosecution of "vexatious litigation designed to coerce settlement." *Id*. at *2 (Finding of Fact 5). This conduct, according to Judge Wright's findings, included a "willingness to deceive not just this Court, but other courts where they have appeared" and involved "representations about their operations, relationships, and financial interests [which] have varied from feigned ignorance to misstatements to outright lies." *Id*. at *3 (Finding of Fact 11). The sanctions include a significant joint and several monetary sanction (over $80,000) against Paul Hansmeier and others. The Court indicated its intention to refer Hansmeier's (and the others') conduct to their respective state and federal bars (including the Standing Committee on Discipline for the Central District

---

[7]  Plaintiff's Consolidated Response to Objections to Settlement and to Application for Approval of Attorneys Fees, Expenses and Incentive Award to Representative Plaintiff at 21-23 and n.25.   [Docket No. 343] (filed Oct. 12, 2012) (noting similarity of his conduct in this case to conduct observed by courts in copyright infringement cases, *Hard Drive Prods., Inc. v. Does 1-90*, No. C11-03825, 2012 WL 1094653, at *7 (N.D. Cal. Mar. 30, 2012) and *AF Holdings LLC v. John Doe*, No. 12-cv-1661, 2012 WL 2921356, at *1 n.1 (E.D. Cal. July 17, 2012)).

1  of California), the Criminal Investigative Division of the Internal Revenue Service,

2  the United States Attorney's Office for the Central District of California, as well as

3  all other Courts before whom the attorneys have pending cases.  *Id*. at *5.[8]

4      The similarities in purpose and method between the scheme uncovered by

5  Judge Wright and those described by this Court are evident.  Based on the bad faith

6  and improper purpose infecting the Hansmeier objection here, the class will seek not

7  only ordinary costs on appeal should they prevail, but they will ask the Court to award

8  all available sanctions under FRAP Rule 38, 28 USC §§ 1912, 1927, and the court's

9  inherent authority.  *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 765-67 (1980).

10      **C.**    **Other Relevant Facts**

11      None of Hansmeier, Palmer nor Lavery thought enough of their objections to

12  even appear at the Final Approval Hearing.  Neither Hansmeier (from Minnesota) nor

13  Langone (from New York/Chicago) are within either this District or the Ninth Circuit

14  so collecting costs from them may be problematic.  Attorney Palmer, who represents

15  Perle, Cesare, Bishop, and De Julius has been criticized as a serial objector and has

16  most recently been found to be in contempt of an Order of a District Court in this

17  Circuit.  *In re Oil Spill By Oil Rig Deepwater Horizon*, MDL 2179, 2013 WL 144042,

18  at *48 n.40 (E.D. La. Jan. 11, 2013) ("Mr. Palmer has been deemed a 'serial objector'

19  by several courts [citation omitted].  (Mr. Palmer admitting it was 'regrettable' that he

20  had been found to have engaged in 'bad faith and vexatious conduct.').");  *In re TFT-

21  LCD (Flat Panel) Antitrust Litig.*, MDL 1827, 2013 WL 621791 (N.D. Cal. Feb. 19,

22  2013) (attorney Palmer and his objector client (his wife) held in contempt of court's

23  order compelling depositions).  *See also* Stewart Decl., Ex. B.

24

25  [8]  Hansmeier is also obligated to report this sanction to the Ninth Circuit as part of

26  his pending application for admission.  Ninth Circuit Application and Oath for

27  Admission, Question 4: "Are you currently under investigation by, or have you received a reprimand from any court or government agency?"

28  http://cdn.ca9.uscourts.gov/datastore/uploads/forms/Atty_Application_and_Oath.pdf.

None of the appeals are likely to succeed in anything other than imposing a vexatious and extensive delay in the distribution of benefits.  Each of the objections was painstakingly examined by this Court in the course of its 36 page opinion and each was found to be without merit.

### D.     The Dilatory Appellate Proceedings

The prosecution so far of the appeal from this Court's approval by these Objectors is consistent with their desire for delay as opposed to resolution.  We are six months out from the Court's Final Judgment and all opening briefs have not yet been filed.   The three objector/objector groups filed separate appeals *seriatim*; Hansmeier filed his Notice of Appeal on November 6, 2012, Lavery on December 5, 2012, and the Palmer group on December 5, 2012.  A fourth untimely Appeal was dismissed.  Separate briefing schedules were initially set for each of the appeals.  On January 25, 2013 the Ninth Circuit granted the Class's motion to consolidate the appeals and in so doing, the Court set a briefing schedule which keyed off the last of the three filed appeals stating that the consolidated opening briefs and excerpts of record should be filed on March 15, 2013.  A streamlined request to extend that time was approved on March 7, 2013, such that the opening briefs became due on April 12, 2013.  An Order dated April 11, 2013 extended that date to April 26, 2013 to accommodate a proceeding with the Ninth Circuit mediator's office.  Hansmeier filed his opening brief on April 26.  Palmer, after initially impermissibly filing for a second streamlined extension (which was denied) (9th Cir. Case No. 12-57026, Docket No. 42), in violation of Ninth Circuit Rule 31-2.2(b),[9] filed an untimely request for further extension on April 25, 2013 which was granted over the Class's objection setting May 24, 2013 as the date for the filing of his opening brief.  Lavery, also in violation of the Ninth Circuit rules filed a motion for an extension after the due date for the filing of his brief.  Again over the Class's objection, that

---

[9]   Ninth Circuit Rule 31-2.2(b) requires that motions to extend the time to file an opening brief be made at least seven days before the due date of the brief.

1   motion too was granted and his opening brief is also now due on May 24, 2013.

2   Answering briefs are currently scheduled to be filed on June 24, 2013, and reply

3   briefs 14 days thereafter.  Needless to say, it is now apparent that very substantial

4   time remains before these appeals will be finally decided and the class will see the

5   benefits of this settlement;[10] precisely the delay of which the objectors' counsel seek

6   to advantage themselves and leverage into a large fee settlement.  *See supra* note 2.

7   ## II.   LEGAL ARGUMENT

8          Federal Rule of Appellate Procedure, Rule 7 provides that "the district court

9   may require an appellant to file a bond or provide other security in any form and

10  amount necessary to ensure payment of costs on appeal."  *See Azizian v. Federated*

11  *Dep't Stores, Inc.*, 499 F.3d 950, 954-55 (9th Cir. 2007).  The purpose of the rule is

12  to "'protect [] . . . an appellee against the risk of nonpayment by an unsuccessful

13  appellant."  *Fleury v. Richemont N. Am., Inc.*, No. C-05-4525, 2008 WL 4680033, at

14  *6 (N.D. Cal. Oct. 21, 2008) (citation omitted).  The need for a bond as well as its

15  amount are left to the discretion of the trial court.  *Id.*; *Azizian*, 499 F.3d at 955

16  ("Ordinarily, '[w]e review objections to the amount of a bond for abuse of

17  discretion.'") (quoting *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1028

18  (9th Cir. 2001)).  When considering whether to require an appeal bond, district

19  courts examine the following factors: "(1) the appellant's financial ability to post a

20  bond; (2) the risk that the appellant would not pay the appellee's costs if the appeal

21  loses; [and] (3) the merits of the appeal . . . ."  *Fleury*, 2008 WL 4680033, at *6; *In*

22  *re Easysaver Rewards Litig.*, Case No. 09cv2094 AJB (WVG), slip op. at 2 (S.D.

23

24

25

26

---

27  [10]  The Frequently Asked Questions section of the Ninth Circuit's web site indicates
    that decisions on appeal are usually rendered between 15-32 months from when an
28  appeal is filed.  *See* http://www.ca9.uscourts.gov/content/faq.php.

1  Cal. May 6, 2013) (same) (Battaglia, J.), attached as Exhibit A to the Stewart Decl.[11]

2  These factors all favor the imposition of a bond on each of the objectors.

3  ### A.    Financial Ability to Post a Bond

4  There is no reason to believe that any of the objectors lack the financial ability

5  to post a bond.  Though we have limited information about the objectors, they are

6  represented by experienced objector counsel and have doubtlessly been advised of

7  the routine imposition of appeal bonds in cases such as this.  None have, to date,

8  indicated any financial reason why they could not each post a bond.  Where there is

9  "'no indication that [a] plaintiff is financially unable to post bond . . . this factor

10  weighs in favor of a bond.'"  *Fleury*, 2008 WL 4680033, at *7 (citation omitted); *In*

11  *re Pharmaceutical Indus. Average Wholesale Price Litig.*, 520 F. Supp. 2d 274, 279

12  (D. Mass. 2007) (ordering posting of bond where no evidence of undue hardship on

13  objector).  To the extent however that the objectors dispute this point, the Class

14  alternatively moves for limited discovery (a deposition) into that issue.  *See* § V,

15  *infra*.

16  ### B.    Risk that Objectors Would Not Pay Appellee's Costs

17  Where the appellants are located outside the jurisdiction, class counsel may

18  well have to institute foreign collection actions to recover their costs from an

19  uncooperative appellant.  Those efforts would likely require the costs of filing suit,

20  the retention of local counsel to pursue the collection action and/or travel to another

21  jurisdiction for an amount which will seriously diminish the net recovery or may not

22

23  ───────────────

[11]   It has been argued that *Azizian* is inconsistent with the frequently stated
24  proposition that a Court may consider the merits of appeal on the bond motion
because in *Azizian*, the Court declined to include an amount for recovery of
25  attorneys fees on appeal in the bond based on the argument that fees were likely to
be awarded under FRAP Rule 38.  *See Azizian*, 499 F.3d at 961.  While that likely
26  reads too much into the holding in *Azizian*, whether the merits of the appeal is a
27  relevant factor is not dispositive of this motion.  A bond is supported by
consideration of factors 1 and 2 alone.
28

10

even justify the effort and expense of collection.  It is precisely this guarantee of collectability that the provision of a bond is meant to secure.  *In re Initial Pub. Offering Sec. Litig.*, 728 F. Supp. 2d 289, 293 (S.D.N.Y. 2010) ("[T]he Objectors are dispersed around the country and none has offered to guarantee payment of costs that might be assessed against them.  In the event the Objectors are unsuccessful on appeal, Plaintiff would need to institute collection actions in numerous jurisdictions to recover their costs.  As a result, there is a significant risk of non-payment."); *Fleury*, 2008 WL 4680033, at *7 (to same effect); *Easysaver Rewards*, slip op. at 2 (out of state objector weighs in favor of imposing an appeal bond).  Here both Hansmeiers (objector and counsel) appear to reside in Minnesota, not California. (*See* Hansmeier Appellate brief, 9th Cir. Case No. 12-57026, Docket No. 46; Gordon Hansmeier Objection, Docket No. 331 at 2 line 19).  Objector Lavery is from Tinley Park, Illinois and his attorney (Chris Langone) is from Chicago/Ithaca, New York (9th Cir. Case No. 12-57211, Docket No. 45).  De Julius appears to be located in Ohio and the other objectors (with the exception of Cesare) appear to be located out of the District (Perle) or out of either the District or the state (Bishop). Gardella Decl., ¶ 4.

The risk that objectors will not pay is increased in this case for a variety of reasons.  The class intends to seek recovery of sanctions, damages, and enhanced costs pursuant to FRAP Rule 38, 28 USC §§ 1912 and 1927, and the Court's inherent powers.  *See Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 629 (2009). They will seek these sanctions against both the objectors and counsel.  Given Paul Hansmeier's potential liabilities associated with the findings of fraud and potential tax evasion and RICO enterprise activity described in Judge Wright's recent Order (*Ingenuity 13*, 2013 WL 1898633), the risks of collecting such an award are multiplied.  While the potential liability for attorneys' fees awarded under FRAP Rule 38 may not be included in the Rule 7 bond (*Azizian*, 499 F.3d at 961), the

nature of the conduct observed by Judge Wright, the enhanced potential liability flowing therefrom, and Hansmeier's "bold and improper" conduct in this case (*Shames*, 2012 WL 4903680, at *4) all bear on the likelihood of collection of any costs assessed and the need for a bond.

Attorney Palmer has not yet seen fit to disclose the locations of his clients. He is, however, in the words of multiple courts a "serial objector" who has admittedly been "found to have engaged in bad faith vexatious conduct" and disobeying court orders. *Deepwater Horizon*, 2013 WL 144092, at *48 n.40; *TFT-LCD (Flat Panel)*, 2013 WL 621791 (attorney Palmer and his objector client (his wife) held in contempt of court's order compelling depositions). He has recently been ordered to post a $250,000 appeal bond in conjunction with a class action objector with the court there noting "this Court finds such [Palmer's] behavior in bad faith and also potentially violative of local and ethical rules." *Heekin v. Anthem, Inc.*, No. 05-cv-01908, 2013 WL 752637, at *3 (S.D. Ind. Feb. 27, 2013).

The business model of serial objectors is to abuse the process in order to delay the conclusion of a class action case through appeal with the aim of securing an attorneys' fee payoff as ransom for release of the proceeds of the case to the Class

and class counsel.[12]   Objector counsel like these are logically less likely to have

attracted clients (particularly in a case such as this where individual damages are

relatively minor) with such a keen commitment to the case that they would willingly

pay costs should they fail to prevail on appeal.   Again, to the extent the objectors

contest this point, limited discovery into the ability and willingness of the objectors

to pay a cost award is appropriate as is inquiry into whether these objectors are

_____

[12]   *See*, *e.g.*, Brian Fitzpatrick, *The End of Objector Blackmail?*, 62 Vand. L. Rev.
1623, 1624-25 (2009) (and cases cited) (Explaining the "hold-up" problem,
figuratively, but not inaccurately described as "blackmail," presented by objectors
who file "objections and appeals for no other reason than to induce . . . side
payments from [class] counsel" and observing that this has led "courts and
commentators [to] believe that objector blackmail is a serious problem.   Objector
blackmail is often seen as something of a 'tax' that class action lawyers must pay in
order to settle class action litigation, and it has been decried in numerous court
opinions and scholarly commentaries."); Bruce Greenberg, *Keeping the Flies Out of
the Ointment: Restricting Objectors to Class Action Settlements*, 84 St. John's L.
Rev. 949, 950 (2010) ("[A]ll too frequently, objectors and their counsel see an
opportunity to extract money from the parties or class counsel, whose efforts
brought about the settlement, by threatening to upset or seriously detour the
settlement.   Objectors make arguments that are groundless yet sufficient to delay
the settlement approval process for months or years unless class counsel or the
parties agree to 'buy off' the objector or the objector's counsel.   Objector tactics
can prove lucrative because the other parties may prefer to 'buy off' the objectors
rather than suffer the delay and additional expense necessary to defeat the
objection.").   "Federal courts are increasingly weary of professional objectors:
'[S]ome of the objections were obviously canned objections filed by professional
objectors who seek out class actions to simply extract a fee by lodging generic,
unhelpful protests. . . .'"   *O'Keefe v. Mercedes-Benz USA, LLC,* 214 F.R.D. 266,
295 n.26 (E.D. Pa. 2003) (citation omitted).   *See also In re UnitedHealth Group,
Inc. PSLRA Lititg.*, 643 F. Supp. 2d 1107, 1108 (D. Minn. 2009) (describing
practices of serial objector counsel and likening their activities to those of
"remoras"); *In re Wal-Mart Wage & Hour Emp't Prac. Litig.*, No. 2:06-CV-00225,
2010 WL 786513, at *1 (D. Nev. Mar. 8, 2010) (finding that practices of objector
counsel in filing appeals and then dismissing them upon securing a payoff persuade
it that "collecting costs from the four Objectors would be extremely difficult if not
unlikely"); *Manual for Complex Litigation* (Fourth) § 21.643 (2004) (noting
problem of objections being prosecuted or improper purposes).

13

1  members of the class and authorized the filing and continued prosecution of the

2  objections.

3  **III.    <u>MERITS OF THE APPEAL</u>**

4      To the extent the merits of appeal is a relevant factor, the objections were

5  considered at length by this Court in its lengthy opinion approving the settlement.

6  They were all found to be without merit.  *Shames v. The Hertz Corp.*, No. 07-cv-

7  2174, 2012 WL 5392159 (S.D. Cal. Nov. 5, 2012).  There is no reason to repeat here

8  all of the reasons extensively briefed on the motion for Final Approval why the

9  interposed objections lack merit.   It is sufficient to note that given the broad

10 discretion afforded the District Court in judging the fairness of a settlement,[13] the

11 inherently erroneous legal analysis underpinning those objections, and the enhanced

12 and careful scrutiny the Court applied to its evaluation of this settlement, including

13 the attorneys' fee provision, we believe that it is unlikely that the objections will

14 receive favorable reception in the Court of Appeals.  *See Fleury*, 2008 WL 4680033,

15 at *8 (Court referring back to its consideration of objections on the motion for final

16 approval concluded: "[T]he Court has considered each of Ms. Meyer's objections

17 and finds them meritless.  The Court finds Ms. Meyer is not likely to succeed on the

18 merits of her appeal."); *Heekin v. Anthem, Inc.*, No. 05-cv-07968, 2013 WL 752637,

19

20

21

22

23

---

24 [13] Rule 23(e) of the Federal Rules of Civil Procedure directed this Court to approve

25 the class action settlement upon the Court's finding that it was "fair, reasonable, and adequate."   On appeal the approval will be reviewed for "clear abuse of

26 discretion"  and only a "strong showing" will warrant setting aside a decision to approve a settlement, because "[a]ppellate review of the district court's fairness

27 determination is 'extremely limited.'"  *Lane v. Facebook, Inc.,* 696 F.3d 811, 818

28 (9th Cir. 2012).

at *3 (S.D. Ind. Feb. 27, 2013).[14]  To the extent Hansmeier, Lavery, or the Palmer objectors who failed to file a claim objected to the attorneys' fees, it is highly questionable that they even have Article III standing given the absence of a common fund and their failure to either file a claim or allege an even colorable "constructive fund" argument below.  *See Glasser v. Volkswagen of Am., Inc.*, 645 F.3d 1084, 1088 (9th Cir. 2011); *Knisley v. Network Assocs., Inc.*, 312 F.3d 1123, 1126 (9th Cir. 2002).

## IV.   <u>STANDARD FOR AMOUNT OF RULE 7 APPEAL BOND</u>

The Court may require a bond "in any form and amount necessary to ensure payment of costs on appeal."  FRAP Rule 7.  These costs include those identified in FRAP Rule 39(e), namely for the preparation and transmission of the record, the reporter's transcript, if needed to determine the appeal, premiums paid for a *supersedeas* bond or other bond to preserve rights pending appeal and the fee for filing the notice of appeal.  FRAP Rule 39(e).  "Costs other than those identified in FRAP 39(e) can qualify as 'costs' for purposes of Rule 7 if they are so defined by some positive law, such as a fee-shifting statute."  *Fleury*, 2008 WL 4680033, at *8; *Azizian*, 499 F.3d at 958 ("We read this language [Advisory Committee Notes to 1967 adoption of Rule 39(e)] to mean that the costs identified in Rule 39(e) are among, but not necessarily the only, costs available on appeal.").  The Class will incur printing and administrative costs associated with the merits appeal as well as motions.  There are 11 parties to this appeal, the Class, the three objectors/objector groups and seven defendants, some with multiple counsel.  There have already been four motions filed in connection with this Appeal and more are likely.  The Court

---

[14]  While the Class believes the objections to be frivolous, they do not seek nor need a finding from this Court to that effect to support the motion.  *Fleury*, 2008 WL 468033, at *6.  The history of bad faith and vexatious conduct on the part of at least certain objector counsel and their repeat objector status combined with the lack of any participation of the "clients" in the proceeding (none so much as submitted a Declaration) are, however, factors highly relevant to collectability and need.

15

1  will have the discretion under Rule 38 to order double those costs as well as "just

2  damages."

3       Rule 7 does not expressly require Plaintiff to make any showing of costs for a

4  bond motion.  FRAP Rule 7; *In re Ins. Brokerage Antitrust Litig.*, No 04-5184, 2007

5  WL 1963063, at *3 (D.N.J. July 2, 2007).   Courts have required bonds in the

6  $5,000-$15,000 range and higher.[15]

## V.  THE COURT MAY GRANT DISCOVERY ON THE PROPRIETY OF A BOND IF IT DEEMS NECESSARY

9        Where the court is not satisfied that the record is sufficient to base the

10  determination of whether a bond should be posted and the bond request is contested,

11  some courts have permitted limited discovery of the objectors relevant to the facts at

12  issue.  *See, e.g., TFT-LCD (Flat Panel)*, 2013 WL 621791 (holding Palmer and his

13  objector wife in contempt for refusing to provide depositions of objectors while case

14  on appeal); *In re Magsafe Apple Power Adapter Litig.*, Case No. C 09-01911, 2012

15  WL 2339721 (N.D. Cal. May 29, 2012) (ordering objectors there to submit to

16  deposition regarding their membership in the class and their ability to post bond in the

17  amount of $25,000).  To the extent the Objectors resist the posting of bonds and this

18  Court believes more factual development of an issue is required, we move in the

19  alternative for such limited discovery.  Given the long delay and consequent damage

20  being caused to the Class by these meritless appeals, short depositions of the

21  Objectors who contest the basis for imposition of a bond are not unduly burdensome.

---

[15]  *Easysaver Rewards*, slip op. at 2 ($15,000 bond); *Miletak v. Allstate Ins. Co.*, Case No. C 06-03778, 2012 WL 3686785 (N.D. Cal. Aug. 27, 2012) (ordering appellate costs bond of $10,000); *In re Magsafe Apple Power Adapter Litig.*, Case No. C 09-01911, 2012 WL 2339721 (N.D. Cal. May 29, 2012) (ordering each of four objectors to post appellate bond in the amount of $15,000); *Fleury*, 2008 WL 468033 ($5,000); *Initial Public Offering*, 2010 WL 2884794, at *5 (imposing Rule 7 cost bond of $25,000); *Insurance Brokerage*, 2007 WL 1963063, at *3-*5 ($25,000 appeal bond); *In re Currency Conversion Fee Antitrust Litig.*, No 01-01409, 2010 WL 1253741, at *3 (S.D.N.Y. Mar. 5, 2010) ($50,000 appeal bond).

## VI.   <u>CONCLUSION</u>

For all of the foregoing reasons, the Class respectfully requests that the Court order that each objector, Cery Perle, Gary Bishop, Frank De Julius, Andrew Cesare, Thomas Lavery, and Gordon Hansmeier post an appellate bond in the amount of $15,000 apiece or dismiss their respective appeals.  In the alternative, if either ability to pay or likelihood of collection are disputed, the Class respectfully requests leave to take a deposition of each objector who contests the appropriateness of a bond addressed to 1) their membership in the class, 2) their authorization to file and prosecute the objection, 3) their purposes in making and prosecuting the objections, 4) the financial relationships with their counsel, and 5) their ability and willingness to pay an adverse cost award.

DATED: May 14, 2013                    HULETT HARPER STEWART LLP
                                       DENNIS STEWART


                                        <u>/s/ Dennis Stewart</u>
                                       DENNIS STEWART

                                       225 Broadway, Suite 1350
                                       San Diego, CA  92101
                                       Telephone:  (619) 338-1133
                                       Facsimile:   (619) 338-1139

                                       CENTER FOR PUBLIC INTEREST LAW
                                       UNIVERSITY OF SAN DIEGO
                                         SCHOOL OF LAW
                                       ROBERT C. FELLMETH
                                       ED HOWARD
                                       JULIANNE D'ANGELO FELLMETH
                                       5998 Alcala Park
                                       San Diego, CA  92110
                                       Telephone:  (619) 260-4806
                                       Facsimile:   (619) 260-4753

17

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FREEDMAN BOYD HOLLANDER
  GOLDBERG IVES & DUNCAN, P.A.
JOSEPH GOLDBERG
jg@fbdlaw.com
DAVID H. URIAS
dhu@fbdlaw.com
200 3rd Street NW, Suite 700
Albuquerque, NM  87102
Telephone:  (505) 842-9960
Facsimile    (505) 842-0761

SULLIVAN, HILL, LEWIN, REZ &
  ENGEL
A Professional Law Corporation
DONALD G. REZ
550 West C Street, Suite 1500
San Diego, CA  92101
Telephone:  (619) 233-4100
Facsimile:   (619) 231-4372

Attorneys for Plaintiffs

18